UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | CIVIL ACTION |
| VERSUS | No. 12-1924 |
| CITY OF NEW ORLEANS,<br>Defendant | Judge S. Morgan<br>Mag. Judge J. Wilkinson |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**I.      INTRODUCTION: MAJOR SURGERY ON NOPD IS NEEDED**

Community United for Change (CUC) submits this to support its motion to intervene in this case involving efforts to transform the New Orleans Police Department (NOPD).

The NOPD is recognized nationwide as a department with deep institutional problems that have gone on for decades.  The NOPD has proven it can resist the efforts of reformers by its actions and inactions in the past.  Only with deep, fundamental, institutional change can this Court expect that real improvements will be possible.

CUC represents the voices of the people and the communities who have borne the brunt of the illegal and unconstitutional abuses of the NOPD for decades.  These people and these communities are not satisfied with mild changes where the NOPD polices its own improvements.  This is not a situation for rearranging band aids.  This is a human rights situation that calls for major surgery.

Only the CUC and the victim communities are advocating major surgery on the NOPD.  That voice must be listened to and respected if this process is to have a chance for success.

1

## II. WHY COMMUNITY UNITED FOR CHANGE MUST BE ALLOWED TO INTERVENE

CUC filed to intervene into this case because there are several very important methods of accountability that are left out of the consent decree negotiated between the US Department of Justice and the City of New Orleans.

As the timeline below indicates, CUC has been involved in the quest for fundamental police accountability since before this current litigation was even considered. CUC has been involved in the process of trying to change the NOPD since April 2010, even before the City of New Orleans Mayor called for the DOJ to review its problematic policies and actions.

CUC has canvassed citizens, held meetings, worked with the media, done research and created a Peoples Consent Decree hoping to guide the DOJ in its work in this community.

## III. TIMELINE FOR THIS CONSENT DECREE

- April 20, 2010.  CUC writes to Attorney General Holder asking for Department of Justice investigation into patterns and practices of killings and brutality by NOPD over last 30 years.

- May 5, 2010.  Newly elected Mayor of New Orleans requested DOJ help in transformation of NOPD.

- May 17, 2010.  DOJ announced it was going to investigate NOPD for constitutional and civil rights violations.

- June – November 2010.  Citizens United for Change, in cooperation with many other organizations, holds numerous public meetings in New Orleans to hear victims of police abuse.

- November 2010.  CUC finalizes its 31 page Peoples Consent Decree for NOPD.

- December 3, 2010.  CUC sends Peoples Consent Decree to Thomas E. Perez, Assistant Attorney General in DOJ.  This consent decree is the result of months of testimony and interviews with victims and families of victims of police terror from the NOPD.

- January 14, 2011.  CUC writes City Council Chair Fielkow requesting to address the New Orleans City Council for 20 minutes on the Peoples Consent Decree and the investigation that lead to it.

- March 16, 2011. DOJ writes City of New Orleans and releases Report and Recommendations on NOPD.

- March 21, 2011.  CUC writes letter to DOJ Thomas Perez asking DOJ to include a strong grassroots monitoring committee to the proposed consent decree for NOPD and thanking DOJ for the investigation so far.

- March 23, 2011.  Councilmember Guidry refuses to allow CUC to present its findings and conclusions and suggestions to the Criminal Justice Committee of the New Orleans City Council.

- May 2011 – May 2012.  CUC continues to advocate for police transparency and accountability through the proposed consent decree.

- July 24, 2012.  DOJ and City of New Orleans agree to proposed Consent Decree in this matter.

- Yet the proposed consent decree does not really reflect the serious, institutional faults of the NOPD.  That is why the CUC must be allowed to intervene and to raise the voices of the people who are the primary victims of the NOPD.

### IV.    RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 24 of the Federal Rules of Civil Procedure allows Intervention of right and permissive intervention.  CUC's motion fits under both of these options.

Rule 24(a) allows intervention of right when four conditions are met.  First the application must be timely.  In the absence of a unconditional right to intervene by federal statute, the applicant must second, claim an interest relating to the transaction which is the subject of the action.  Third, as a practical matter, disposition of the matter may impair or impede the movant's ability to protect its interest.  Fourth, there is no existing party which adequately represents that interest.

CUC has applied timely in accordance with the orders of this court of July 31, 2012.

CUC claims an interest in the consent decree based on its outreach to the public, its work with many community organizations, its work with victims of police abuse, and its work creating and submitting a Peoples Consent Decree nine full months before the proposed consent decree in this case was made public.

CUC advises this Court that disposition of this matter along the lines agreed upon by the DOJ and the City of New Orleans will not address the fundamental problems of the NOPD. That missed opportunity will, based on the history over the last several decades, result in more deaths at the hands of NOPD and more illegal actions at the hands of the NOPD. Those problems will impede CUC's ability and its members' abilities to protect their interests.

CUC squarely meets the fourth requirement – there is no other existing party which adequately represents the interests of the people who are the primary victims of the culture of corruption pointed out by the DOJ. Only CUC is asking for fundamental change. Only CUC is insisting on transparency and accountability at the very core of the power structure in the NOPD.

V.        THERE IS NO DISPUTE THAT NOPD NEEDS FUNDAMENTAL CHANGE

The US Department of Justice made many findings of illegality by NOPD in its 125 + page Report of March 2011. The DOJ characterized the deficiencies as not merely individual but structural as well. "Basic elements of effective policing – clear policies, training, accountability, and confidence of the citizenry – have been absent for years….NOPD"s failure to ensure that its officers routinely respect the Constitution and the rule of law undermines trust within the very communities whose cooperation the Department most needs to enforce the law and prevent crime." (Executive Summary, paragraph one, page v, March 16, 2011 Report by DOJ on NOPD).

The DOJ investigation revealed:

- "a clear pattern of unconstitutional uses of force by NOPD officers." (page vi – Executive Summary, supra).

- Shootings and other serious uses of force "are investigated inadequately or not at all." (page vii).

- A pattern of unconstitutional stops, searches and arrests due in part to lack of training of officers which has been going on for at least ten years since a previous DOJ investigation. (pages vii and viii).

- NOPD engages in a pattern of discriminatory policing and profiling based on race, ethnicity or LGBT status and fails to adequately investigate violence against women including sexual assaults and domestic violence. (pages ix – x).

- There is significant racial disparity in the arrests of whites and African Americans in all age categories but especially with dramatic disparity for African American youth under the age of 17. (pages ix-x).

- NOPD has "virtually no capacity to provide meaningful access to police services" to members of the community with limited English proficiency. (pages xi – xii).

- The ability of NOPD to handle complaints "does not function as an effective accountability measure…apparent misconduct by officers is inadequately investigated and has in the past too rarely been prosecuted." (pages xvii-xviii).

## VI. ONLY THE CUC ADVOCATES FOR FUNDAMENTAL CHANGE

The CUC agrees with the DOJ findings but does not agree that the proposals in the consent decree are adequate to address these findings.

The proposed Consent Decree between the USDOJ and the NOPD does not respect the wishes for fundamental police reform expressed by the residents of New Orleans who are part of CUC.

CUC firmly desires the NOPD to become a constitutional policing department that respects the rights of all residents. Unfortunately, the proposed Consent Decree is deficient in several

areas especially as regards to civilian oversight of the police department.  CUC does not believe the necessary reforms will come from the existing or proposed structure where the trigger mechanism for early warning of deprivation of rights is isolated to an "in-house" process that permits the prevailing conditions outlined in the DOJ report to continue.

The unconstitutional and brutal policing policies of the NOPD that occasioned intervention by USDOJ have occurred over the years under the current structure where the police chief is selected by and answers to the Mayors of New Orleans.  CUC came into existence in protest of the "Culture of Terror" when in April of 2010, a group of activists, advocates, grass-rooted organizations, victims, and family members of victims petitioned the USDOJ to investigate more than just the Danziger Bridge Massacre by including all of the corruption throughout the City of New Orleans.  After the victims of NOPD petitioned the leaders of the call to action, CUC was born.  The direction of the CUC was focused on moving the USDOJ mandate to include the other pressing issues facing the police victim population of New Orleans.

From the many hours of testimony from victims and family of victims to the countless months of engaging the New Orleans Community CUC firmly believes the proposed Consent Decree does not employ "best practices."

CUC conducted a series of community hearings in 2010 and 2011 in all parts of the city to ascertain the facts about NOPD behavior and to solicit residents' recommendations on needed reforms. These gatherings at churches and community centers were attended by hundreds of people and most of the times were observed by a representative of the DOJ. Overwhelmingly residents described the NOPD as a racist, brutal, murderous force that harassed rather than served residents, especially the Black majority. The testimony and complaints submitted at these hearings were mirrored in the DOJ's March, 2011 report of findings on the NOPD.

The attendees at the citizen forums demanded fundamental reforms. The centerpiece of these reforms was the call for a civilian oversight committee to oversee the NOPD and investigate resident's complaints about police abuse and murder. It was felt that we needed a consent decree that would bring an end to this reign of "police terror" and bring the NOPD under civilian control. We also demanded to the DOJ and the City that residents be present at any negotiations for a consent decree.

CUC is firmly of the belief that neither the DOJ nor the City administration fully represents the interests of the resident victims of NOPD terror. CUC believes it has a separate but vital interest to be at the table and to represent the views of the victims on necessary reforms. CUC made known its desire to be at the table form the very beginning of the Consent Decree processes. Citizens were intimately involved in the process that is working in Cincinnati Ohio with a Consent Decree and Atlanta, Georgia without a Consent Decree. CUC drafted up and submitted to the DOJ the People's Consent Decree which put forth the fundamental reforms residents felt necessary. In CUC's attempt to share with the City of New Orleans the People's Consent Decree, CUC was flatly denied an opportunity to be heard.

CUC has fundamental disagreements with the proposed reforms of the DOJ/NOPD Consent Decree. In addition to the lack of civilian oversight CUC objects to investigations of the use of force remaining within the NOPD. It only adds layers of NOPD investigation to the present system which has not sustained a charge of homicide against a NOPD officer in over a decade. CUC believes that the investigation of use of force complaints must come from an independent investigation body.

Fundamentally, CUC sees many problems with the proposed Consent Decree and seeks to have an opportunity to address these differences through intervention.

CUC petitions this court to consider the rights of the residents who have been the victims of unconstitutional policing. The City and the DOJ have not considered the voices of victims in fashioning this consent decree.

The parties must earn the respect of the ordinary New Orleans residents who have suffered under the current unconstitutional police regime for decades. Inclusion of the voices of the Peoples Consent Decree is a fundamental solution that achieves that goal.

## VII.   CONCLUSION

For all of the foregoing reasons, this motion to intervene should be granted.

DATED:  August 7, 2012

Respectfully Submitted,

/s/ Davida Finger

William P. Quigley, LSBN 7769 Email: Quigley77@gmail.com
Davida Finger, LSBN 30889  Email: dfinger@loyno.edu
Loyola University New Orleans College of Law
7214 St. Charles Avenue, Campus Box 902
New Orleans, LA 70118
504.861.5590; fax 504.861.5440
Lead Attorney – Quigley

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served upon counsel for all parties via ECF this 7th day of August, 2012

/s Davida Finger
_____

Davida Finger