UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | No. 12-1924 |
| CITY OF NEW ORLEANS,<br>    Defendant | SECTION "E" |

### ORDER AND REASONS

Before the Court are the Joint Motions for Entry of Decree filed by the United States of America ("United States") and the City of New Orleans, Louisiana (the "City") (collectively, the "Parties").[1] For the following reasons, the motions are **GRANTED** and the Parties' proposed Consent Decree filed by the Parties on July 24, 2012,[2] is **APPROVED AS AMENDED** by changes shown on the Parties' Errata Sheet filed on September 14, 2012.[3] Copies of the approved Consent Decree and Errata Sheet are attached to this order.

### *Background*

The United States filed the complaint in this matter against the City, after an extensive investigation of the New Orleans Police Department ("NOPD"),[4] pursuant to the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141 ("Section 14141"); the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d (the "Safe Streets Act"); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d-7, and its

---

[1] R. Docs. 2 (filed July 24, 2012) and 114 (filed September 14, 2012).

[2] R. Doc. 2-1.

[3] R. Doc. 114-2.

[4] R. Doc. 1 at ¶¶ 14-16.

1

implementing regulations, 28 C.F.R. §§ 42.101-.112 ("Title VI"). The United States seeks to remedy an alleged pattern or practice of conduct by the NOPD that subjects individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, and discriminatory policing practices in violation of the Fourteenth Amendment, the Safe Streets Act, and Title VI. The Parties' proposed Consent Decree contains detailed provisions concerning changes in NOPD policies and practices related to: (1) the use of force; (2) investigatory stops and detentions, searches, and arrests; (3) custodial interrogations; (4) photographic lineups; (5) bias-free policing; (6) community engagement; (7) recruitment; (8) training; (9) officer assistance and support; (10) performance evaluations and promotions; (11) supervision; (12) the secondary employment system, also known as the paid detail system; (13) misconduct complaint intake, investigation, and adjudication; and (14) transparency and oversight. In addition, the proposed Consent Decree includes detailed provisions regarding the implementation and enforcement of the Consent Decree.

On July 31, 2012, this Court entered an order requiring any person wishing to seek intervention in this case under Rule 24 of the Federal Rules of Civil Procedure to file a contradictory motion to intervene no later than August 7, 2012, and any party opposing any such motion(s) to intervene to file an opposition to the motion(s) no later than August 14, 2012.[5]

Crescent City Lodge No. 2, Fraternal Order of Police, Inc., and Walter Powers, Jr. in his official capacity as Acting President of FOP ("FOP"); Walter Powers, Jr. in his individual capacity ("Powers"); Community United for Change ("CUC"); the Police Association of New

---

[5] R. Doc. 7.

Orleans and Michael Glasser in his official capacity as President of PANO ("PANO"); Michael Glasser in his individual capacity ("Glasser"); the Office of the Independent Police Monitor ("OIPM") and Susan Hutson in her official capacity as Independent Police Monitor for the City of New Orleans ("IPM"); and Susan Hutson in her individual capacity ("Hutson") (collectively, the "Proposed Intervenors"), filed motions to intervene.[6] The City and the United States opposed the motions to intervene.[7] The Court heard oral argument on all four motions on August 20, 2012.[8]

The Court found that the Proposed Intervenors could not intervene as of right in this matter, and declined to permit them to permissively intervene. Specifically, the Court found that CUC, FOP and PANO did not have any legally protectable interests that would be impaired by the proposed Consent Decree, and thus that they were not entitled to intervene as of right.[9] The Court, in its discretion, did not permit them to permissively intervene because the Court determined that it had otherwise provided ample opportunity for the parties to assist the Court in its consideration of the proposed Consent Decree without prejudicing the Parties or delaying the proceedings. As for Powers and Glasser in their individual capacities, the Court found that they did not demonstrate any legally

---

[6] FOP and Powers filed their motion to intervene on August 6, 2012. *See* R. Doc. 9. CUC, PANO and Glasser, and OIPM, IPM and Hutson filed their motions to intervene on August 7, 2012. *See* R. Docs. 11, 13 and 15.

[7] R. Docs. 26 and 27.

[8] R. Doc. 37.

[9] With respect to FOP and PANO, organizations seeking to protect and represent the interests of NOPD officers, the Court underscored that "as it is currently written, the proposed Consent Decree in no way modifies the Civil Service system for NOPD officers." R. Doc. 102 at p. 18. Nevertheless, the Court provided that "[i]f changes are proposed to any NOPD policies that may conflict with the Civil Service rules and procedures, FOP and/or PANO may move to intervene for the limited purpose of assert their Civil Service property rights." *See* R. Doc. 102 at pp. 21-22.

protectable interest separate from that of FOP and PANO and, for the same reasons, they could not intervene as of right or permissively. With respect to OIPM, the Court determined that the office lacked juridical capacity under Louisiana law and thus was legally incapable of intervening. Finally, because Hutson failed to provide the Court with any argument regarding her individual interest and how any such interest would be impaired as a result of the proposed Consent Decree, the Court determined that she could not intervene as of right or permissively. Accordingly, the Court denied the motions to intervene on August 31, 2012.[10] By the same order, the Court further provided that it would allow the Proposed Intervenors to present live testimony and documentary evidence at the Fairness Hearing and would permit the Proposed Intervenors to submit questions for the Court to ask the United States and the City.[11] In addition, the Court created a publicly-accessible website where all motions, pleadings, orders, public comments, the City's Request for Proposals to serve as Consent Decree Court Monitor ("RFP"), and copies of the proposed Consent Decree can be downloaded without charge and without the need to access the Eastern District of Louisiana's CM/ECF system.[12] The Court regularly updates the website to provide notice of activity in the case to the public.

The Court's July 31, 2012 Order also set the Parties' Joint Motions for Entry of Decree for hearing on August 29, 2012, at 10:00 a.m., in order to assist the Court in determining whether the proposed Consent Decree is "fair, adequate and reasonable" (the

---

[10] R. Doc. 102.

[11] R. Doc. 102 at p. 25.

[12] *See* http://www.laed.uscourts.gov/Consent/consent.htm.

4

"Fairness Hearing").[13] The Court advised that any person wishing to comment upon the proposed Consent Decree would be permitted to do so by filing a written submission with the Court no later than August 24, 2012, at 4:30 p.m.[14] Public notice of the Court's order and the Fairness Hearing was published in *The Times-Picayune*.[15]

On September 21, 2012, the Court conducted the Fairness Hearing.[16] The United States, the City and the Proposed Intervenors presented six hours of live testimony and documentary evidence to the Court.[17] OIPM presented the live testimony of Hutson and Jasmine Groves, and OIPM's Exhibit 1 was admitted into evidence.[18] FOP presented the live testimony of Sergeant Christopher Landry and Dr. Bart Leger, and FOP's Exhibits 1 through 11 were admitted into evidence.[19] CUC presented the live testimony of W.C. Johnson, Malcolm Suber, Randolph J. Scott, Cynthia Parker and Terry Simpson, and CUC's

---

[13] R. Doc. 7.

[14] The Court later continued the Fairness Hearing until September 21, 2012, at 10:00 a.m., because Hurricane Isaac made landfall in Louisiana on August 28, 2012. *See* R. Docs. 54 and 109. The Court published notice that the Fairness Hearing had been rescheduled on the website for the U.S. District Court for the Eastern District of Louisiana.

[15] R. Doc. 42.

[16] *See supra* n.11.

[17] *See* R. Doc. 132 and its attachments. Emily A. Gunston, Christy E. Lopez, Corey M. Sanders, Stephen C. Parker, Jude Volek, Roy L. Austin, Jr., and James B. Letten appeared on behalf of the United States; Richard F. Cortizas, Brian J. Capitelli, Erica N. Beck, Ralph Capitelli, Sharonda R. Williams, and Churita H. Hansell appeared on behalf of the City; C. Theodore Alpaugh, III, and Claude A. Schlesinger appeared on behalf of FOP and Powers; Eric J. Hessler appeared on behalf of PANO and Glasser; William P. Quigley appeared on behalf of CUC; and John S. Williams appeared on behalf of OIPM and Hutson.

[18] R. Docs. 132-1 to 132-2.

[19] R. Docs. 132-3 to 132-16.

Exhibits 1 through 8 were admitted into evidence.[20] Counsel for PANO made a presentation to the Court on the organization's behalf. The United States presented the live testimony of Santos Alvarado, Delmy Palencia, Alfred Marshall, Tania Tetlow, and Ira Thomas, and the United States' Exhibits 1 through 7 were admitted into evidence.[21] Finally, the City presented the live testimony of New Orleans Police Superintendent Ronal Serpas, and the City's Exhibits A, B, and C were admitted into evidence.[22] In addition, 158 comments from individuals and organizations were submitted for the Court's consideration.[23]

## Law and Analysis

Settlement is to be encouraged. *United States v. Cotton*, 559 F.2d 1326, 1331 (5th 1977). "Because of the consensual nature of [a consent decree], voluntary compliance is rendered more likely . . . . At the same time, the parties . . . minimize costly litigation and adverse publicity and avoid the collateral effects of adjudicated guilt." *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1152 n.9 (5th Cir. 1975). Indeed, "the value of voluntary compliance is doubly important when it is a public employer that acts, both because of the example its voluntary assumption of responsibility sets and because the remediation of governmental discrimination is of unique importance." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 290, 106 S.Ct. 1842 (1986) (O'Connor, J., concurring). Nonetheless, "[a] consent decree, although founded on the agreement of the parties, is a judgment." *United*

---

[20] R. Docs. 132-17 to 132-24, and 132-37. Exhibits 3 and 6 were admitted into evidence with redactions agreed to by counsel for the City and CUC. Exhibit 8 was admitted as a proffer and ordered placed under seal. R. Doc. 132 at p. 2.

[21] R. Docs. 132-25 to 132-32.

[22] R. Docs. 132-33 to 132-36.

[23] *See* R. Docs. 58 to 100, 105-106, 111-112, 141 and 145.

*States v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (citing *United States v. Kellum*, 523 F.2d 1284, 1287 (5th Cir. 1975)).  Thus, a court "must not merely sign on the line provided by the parties.  Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval." *Miami*, 664 F.2d at 440-441.

When presented with a proposed consent decree, a court must ascertain that the settlement is "fair, adequate and reasonable" and is not the product of "fraud, collusion, or the like." *Id.* at 441; *Cotton*, 559 F.2d at 1330.  "The court must also consider the nature of the litigation and the purposes to be served by the decree. If the suit seeks to enforce a statute, the decree must be consistent with the public objectives sought to be attained by Congress." *Miami*, 664 F.2d at 441.

In order to determine whether the settlement between the United States and the City as set forth in the proposed Consent Decree is "fair, adequate and reasonable" and not the product of "fraud, collusion, or the like," the Court has solicited comments from the public and the Proposed Intervenors, and conducted an extensive Fairness Hearing in which the OIPM, CUC, FOP and PANO were allowed to participate.  In addition, the Court also has carefully reviewed the 158 written public comments received.[24]

As the Court emphasized at the hearing on the motions to intervene, in the Court's order denying intervention, and at the Fairness Hearing, the Court has given the evidence presented at the Fairness Hearing, as well as the comments from the public and the Proposed Intervenors, serious consideration when determining whether the proposed Consent Decree is fair, adequate and reasonable.  The Parties have represented to the Court

---

[24] *See* R. Docs. 58 to 100, 105-106, 111-112, 141 and 145.  The comments provided by CUC, PANO, FOP and OIPM are filed in the record at R. Docs. 66, 85, 86 and 141, and 92, respectively.

that the concerns expressed will be given due consideration as policies and procedures are developed.  Moreover, as the proposed Consent Decree is implemented, the continued involvement of the Court and the Consent Decree Court Monitor ("Monitor") will ensure that this is the case.  Given that the Court must approve the City's contract with the Monitor, and the Monitor will report to the Court, the Monitor will be a crucial, independent entity aiding the Court in supervising the proposed Consent Decree's implementation.[25]  In addition, reports from the City and the Monitor will be provided to the Court and to the public on a regular basis, ensuring a transparent and rigorous process.

Having considered the proposed Consent Decree, the comments received from the public and the Proposed Intervenors, the testimony and evidence presented at the September 21, 2012 Fairness Hearing, the Parties' representations, and the fact that the City has committed adequate funding to implement the proposed Consent Decree, the Court finds that the proposed Consent Decree, as amended, is fair, adequate and reasonable, and is not the product of fraud, collusion, or the like.  As a result, the Court **APPROVES** the parties' proposed Consent Decree as amended as attached hereto.

The Court retains jurisdiction over this matter, including but not limited to the right to interpret, amend and enforce the Consent Decree and to appoint a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure, until the final remedy contemplated by the Consent Decree has been achieved.  *See Chisom v. Jindal*, ___ F.Supp.2d ___, 2012 WL 3891594, at *9-10 (E.D. La. Sept. 1, 2012).

Accordingly,

---

[25] R. Doc. 110-1 at p. 5 (RFP) and Consent Decree, attached to this order, at ¶ 444 et seq.

The Parties' Joint Motions for Entry of Decree are **GRANTED** and the Parties' proposed Consent Decree is **APPROVED AS AMENDED** by the changes shown on the Errata Sheet.

A separate judgment will be entered by the Court.

The City has informed the Court that it intends to file a motion seeking relief from the judgment entered in connection with this order under the Federal Rules of Civil Procedure. Such motion shall be filed in this action no later than **January 31, 2013, at 5:00 p.m.** Any response to the City's motion shall be filed no later than **February 15, 2013, at 5:00 p.m.** The City's arguments and any response thereto shall be considered by the Court when the Court deems the motion submitted.

New Orleans, Louisiana, this  11th  day of January, 2013.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**