# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **No. 12-1924** |
| **CITY OF NEW ORLEANS,**  Defendant | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is the Motion to Stay filed by the Defendant, the City of New Orleans, Louisiana (the "City").[1] The City seeks to stay the implementation and enforcement of the Consent Decree this Court entered as a final judgment[2] on January 11, 2013, pending the Court's consideration of the City's Motion to Vacate such judgment.[3] Plaintiff, the United States of America ("United States"), opposes the City's Motion to Stay.[4] The Court previously informed the Parties that the "motion shall be submitted to the Court for consideration as soon as the Court is in receipt of the United States' response."[5] As the Court has received the United States' opposition memorandum, the Motion to Stay is ripe for decision. For the following reasons, the Motion to Stay is **DENIED**.

---

[1] R. Doc. 172.

[2] R. Docs. 159 and 160.

[3] R. Doc. 175.

[4] R. Doc. 177.

[5] R. Doc. 170.

1

***Background***

On July 24, 2012, the United States filed its complaint in this matter against the City after an extensive investigation of the New Orleans Police Department ("NOPD"),[6] pursuant to the Violent Crime Control and Law Enforcement Act (42 U.S.C. § 14141), the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. § 3789d, the "Safe Streets Act"), and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to 2000d-7) and its implementing regulations (28 C.F.R. §§ 42.101-.112) ("Title VI"), in order to remedy NOPD's alleged pattern or practice of conduct which subjects individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, and discriminatory policing practices in violation of the Fourteenth Amendment, the Safe Streets Act, and Title VI.

Less than one hour after the United States filed its complaint, the United States and the City (together, the "Parties") filed a Joint Motion for Entry of Decree. Attached to such motion was a proposed Consent Decree containing detailed provisions concerning changes in NOPD policies and practices related to: (1) the use of force; (2) investigatory stops and detentions, searches, and arrests; (3) custodial interrogations; (4) photographic lineups; (5) bias-free policing; (6) community engagement; (7) recruitment; (8) training; (9) officer assistance and support; (10) performance evaluations and promotions; (11) supervision; (12) the secondary employment system, also known as the paid detail system; (13) misconduct complaint intake, investigation, and adjudication; and (14) transparency and oversight. In addition, the proposed Consent Decree also included detailed provisions regarding the implementation and enforcement of the Consent Decree. The Parties' motion

---

[6] R. Doc. 1 at ¶¶ 14-16.

stated that they sought "to resolve [the] litigation with entry of the attached negotiated Consent Decree" because the document was "intended to ensure that police services are delivered to the people of New Orleans in a manner that complies with the Constitution and laws of the United States."[7] After careful deliberation to ensure that the proposed Consent Decree was "fair, adequate and reasonable," the Court entered it as a final judgment on January 11, 2013.[8] Because the City has moved to vacate the Court's entry of the Consent Decree, the City argues that the implementation and enforcement of the Consent Decree should be stayed while the Court considers the City's Motion to Vacate.

The City originally filed the instant Motion to Stay as an *ex parte* motion.[9] Because the City did not obtain the United States' consent to such motion, the Court instructed the City to refile it as an opposed motion in accordance with the Local Rules of the U.S. District Court for the Eastern District of Louisiana.[10] The Court further instructed the City to support its motion with a "memorandum of legal authority."[11] The City did so, arguing that a stay is warranted because "[t]he DOJ has suggested a timeline to begin implementing provisions of the Consent Decree, and the City should not be forced to begin implementing any costly measures while this Court is considering the City's position with regard to the Motion to Vacate. To allow otherwise would prejudice the City."[12] In support of its motion,

---

[7] R. Doc. 2 at pp. 1-2.

[8] R. Docs. 159 and 160.

[9] R. Doc. 168.

[10] R. Doc. 170.

[11] R. Doc. 170.

[12] R. Doc. 172.

the City's "memorandum of legal authority" states:

> [T]he City has filed a Motion to Vacate the Court's Order approving the Consent Decree. The Court has granted the United States of America, Department of Justice ("DOJ") until February 15, 2013 to file a response memorandum to the City's Motion to Vacate. In the absence of a stay, the City, however, may be required to begin implementing costly measures under the Consent Decree, which will prejudice the City and perhaps hamper its ability to meet other financial obligations.
>
> The DOJ has suggested a timeline to begin implementing provisions of the Consent Decree. In particular, the DOJ has suggested a timeline for forming an Evaluation Committee to select a Consent Decree Monitor, which is one of the most costly measures required by the Consent Decree. In fact, this Court has issued an order that the parties must provide the names of five individuals to serve on the Evaluation Committee by February 15, 2013—the same day the DOJ is to file its response to the City's Motion to Vacate. *See* Rec. Doc. No. 162. The City should not be required to begin the Monitor selection process before this Court has even received full briefing on the City's Motion to Vacate.
>
> Notably, the Consent Decree includes a provision stating that the City's procurement process would be utilized in selecting the Monitor. *See* ¶477 of Consent Decree. The Court, however, has modified the procurement process utilized to select the Monitor, redlining and editing the Request for Proposal used to solicit the Monitor and altering the disadvantaged business enterprise ("DBE") requirements for the Monitor. The City should not be required to engage in the Monitor selection process, which differs from what was contained in the Consent Decree, before this Court receives all briefing and makes a ruling on the City's Motion to Vacate.[13]

The United States has responded to the City's motion, arguing that the "City's three-paragraph motion has failed to set forth any legally-sufficient basis for staying implementation of the Decree."[14] The Court agrees with the United States.

---

[13] R. Doc. 172-1 at pp. 1-2.

[14] R. Doc. 177.

## *Law and Analysis*

Rule 62(b) of the Federal Rules of Civil Procedure provides that a court may stay the execution of a judgment pending disposition of a motion brought pursuant to Rule 60. Fed. R. Civ. P. 62(b)(4) ("On appropriate terms for the opposing party's security, the court may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of [a motion] . . . under Rule 60, for relief from a judgment or order."). Whether to grant such a stay is discretionary. *See* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2903 (3d ed.); *see also Boyd v. Occidental Fire & Cas. Co. of N.C.*, 2011 WL 4062383, at *1 (M.D. La. Sept. 13, 2011) (stating that district courts "enjoy the discretionary authority to stay proceedings 'in the interest of justice and in control of their dockets.' ") (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)).

The Fifth Circuit has set forth four factors a court may consider in determining if it should stay relief pending appeal: " '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' " *Moore v. Tangipahoa Parish Sch. Bd.*, 2013 WL 141791, at *2 (5th Cir. Jan. 14, 2013) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Nat'l Treasury Emp. Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir. 1987). Other U.S. District Courts have found these factors instructive when considering whether to grant a motion to stay pursuant to Rule 62(b). *See AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 2012 WL 3745625, at *1 (M.D. Tenn., Aug. 28, 2012) (applying these factors to a Rule 62(b) motion requesting a stay pending the outcome of the court's orders regarding movant's Rule 50 motion for judgment as a matter

of law and Rule 59 motion for a new trial); *SEC v. Retail Pro, Inc.*, 2011 WL 3515910, at *2 (S.D. Cal. Aug. 11, 2011) (same). This Court likewise finds these factors instructive given the relief requested in the instant motion to stay.

First, the Court addresses the City's assertion that the "Consent Decree includes a provision stating that the City's procurement process would be utilized in selecting the Monitor," citing paragraph 477 of the July 24, 2012 version of the proposed Consent Decree.[15] The Court did not approve the Consent Decree as filed July 24, 2012. Rather, the Court's January 11, 2013 order stated that the "proposed Consent Decree filed by the Parties on July 24, 2012, is **APPROVED AS AMENDED** by changes shown on the Parties' Errata Sheet filed on September 14, 2012."[16] The September 14, 2012 Errata Sheet – which the Parties presented to the Court for approval by joint motion[17] – removed the sentence the City relies on for this argument.[18] As a result, contrary to the City's argument, the Consent Decree entered as a final judgment of this Court does not state that the Parties will use the City's procurement process in selecting the Court Monitor.

Turning to the crux of the City's argument why the Court should grant its Motion to Stay, the City contends that, in the absence of a stay, it "may be required to begin implementing costly measures under the Consent Decree, which will prejudice the City and perhaps hamper its ability to meet other financial obligations."[19] The City fails to

---

[15] *See* R. Doc. 172-1 at p. 2; R. Doc. 2-1 at ¶ 477 ("The Parties have agreed to use New Orleans's procurement process in selecting the Monitor.").

[16] R. Doc. 159 at p. 1 (bold in original).

[17] R. Doc. 114.

[18] R. Doc. 114-2 at p. 7.

[19] R. Doc. 177 at p. 1.

6

demonstrate that it is at risk of suffering irreparable harm if implementation of the Consent Decree is not stayed. The City and NOPD must comply with the U.S. Constitution and laws of the United States. To that end, the City has represented to the Court that it intends to move forward with reforming the NOPD so that it will be in compliance with all applicable laws.[20] Regardless of how such reform may be achieved, whether via collaboration between the United States and the City, or via another process, it will never be without cost. As the Fifth Circuit has consistently underscored, "inadequate resources can never be an adequate justification for depriving any person of his constitutional rights." *Udey v. Kastner*, 805 F.2d 1218, 1220 (5th Cir. 1986); *see also Smith v. Sullivan*, 553 F.2d 373, 378 (5th Cir. 1977) (rejecting argument that "lack of funds to implement the trial court's order" justified failure to remedy ongoing constitutional violations); *Gates v. Collier*, 501 F.2d 1291, 1319 (5th Cir. 1972) ("Where state institutions have been operating under unconstitutional conditions and practices, the defense of fund shortage(s) . . . [has] been rejected by the federal courts.").

By contrast, the United States and residents of New Orleans will suffer substantial harm to their interests in having a constitutional police force if the Court grants the City's motion. The United States conducted an extensive pattern or practice investigation, beginning in May 2010, that resulted in a comprehensive report issued March 16, 2011, detailing how NOPD allegedly engages in a pattern or practice of excessive force; unlawful stops, searches and arrests; and discriminatory policing based on race, ethnicity, gender and sexual orientation, all in violation of the Constitution and federal law.[21] The United

---

[20] R. Doc. 175-1 at p. 1 ("Mayor Mitchell J. Landrieu began reforming the New Orleans Police Department ('NOPD') when he took office in May 2010 and remains committed to implementing reforms to ensure that the NOPD is the best police department in the nation.").

[21] *See* R. Doc. 1-1 at pp. 28-77.

States' investigation attributed these ongoing constitutional violations to entrenched deficiencies within "a wide swath of City and NOPD systems and operations," including failures to:

> adopt and enforce appropriate policies; properly recruit, train, and supervise officers; adequately review and investigate officer uses of force; fully investigate allegations of misconduct; identify and respond to patterns of at-risk officer behavior; implement community policing; oversee and control the system of Paid Details; provide officer assistance and support; or enact appropriate performance review and promotional systems.[22]

According to the United States, these systemic failures "have created an environment that permits and promotes constitutional harm."[23] Violations of constitutional rights constitute irreparable harm, an even stronger showing than what is required.[24] *See Elrod v. Burns*, 427 U.S. 347, 373-374 (1976); Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2948.1 (2d ed. 1995) (finding that, in the context of preliminary injunctions, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"). In addition, implementing the reforms set forth in the Consent Decree clearly is in the public interest. Nothing before the Court indicates that the City has remedied the serious deficiencies identified in the United States' investigation, much less that the City has devised an alternative plan, with which it is prepared to move forward on its own volition, in order to address these deficiencies.

Finally, the remaining factor examines "whether the stay applicant has made a

---

[22] R. Doc. 1-1 at pp. 13-14.

[23] R. Doc. 1-1 at p. 13.

[24] Again, a party requesting a stay must show that it "will be *irreparably* injured absent a stay," whereas, with respect to other parties, the Court must determine whether such parties will be "*substantially* injure[d]" if a stay is granted. *See Moore*, 2013 WL 141791, at *2 (emphasis added).

*strong showing* that [it] is likely to succeed on the merits." *Moore*, 2013 WL 141791, at *2 (emphasis added). The City has not made any showing whatsoever that it is likely to succeed on the merits of its Motion to Vacate. Because the City has not met its burden as to this factor, the Court does not consider it. *See also Retail Pro, Inc.*, 2011 WL 3515910, at *3 (declining, where movant failed to show possibility of irreparable harm, to consider movant's likelihood of success on the merits of the underlying motion in denying Rule 62(b) stay request).[25]

As the Court has found that (1) the United States and residents of New Orleans will suffer substantial harm if a stay is granted, (2) declining to grant a stay is in the public interest, (3) the City will not suffer irreparable harm if the Court denies its Motion to Stay, and (4) the City has made no argument regarding the likelihood of its success on the merits regarding its Motion to Vacate, the Court concludes that the balance of the equities weighs heavily against granting the City's Motion for Stay.

Accordingly, **IT IS ORDERED** that the motion be and hereby is **DENIED.**

**New Orleans, Louisiana, this __8th__ day of February, 2013.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[25] The Court anticipates ruling on the City's Motion to Vacate in a timely manner so that, in the event the motion is denied, the Parties will not be prevented from moving forward with selecting the Court Monitor and executing the professional services agreement with same. In declining to grant the City's request for a stay, the Court expresses no opinion as to the likelihood of the City's ultimate success on the merits of its Motion to Vacate.