UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | No. 12-1924 |
| CITY OF NEW ORLEANS,<br>    Defendant | SECTION "E" |

### ORDER AND REASONS

Before the Court is a motion for relief filed by the Police Association of New Orleans and Michael Glasser in his official capacity as President of PANO ("PANO" or "the organization").[1] PANO seeks relief, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, from this Court's prior order denying PANO leave to intervene in the above-captioned matter.[2] The United States of America ("United States") opposes the motion.[3] For the following reasons, the motion is **DENIED**.

### *Background*[4]

On July 24, 2012, the United States of America ("United States") filed its complaint in this matter against the City of New Orleans ("City") after an extensive investigation of the New Orleans Police Department ("NOPD")[5] pursuant to the Violent Crime Control and Law Enforcement Act (42 U.S.C. § 14141), the Omnibus Crime Control and Safe Streets Act of

---

[1] R. Doc. 165.

[2] *See* R. Doc. 102.

[3] R. Doc. 174.

[4] For a more detailed procedural history of this case, *see* R. Doc. 256.

[5] R. Doc. 1 at ¶¶ 14-16.

1

1968 ("Safe Streets Act" 42 U.S.C. § 3789d), and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to 2000d-7) and its implementing regulations (28 C.F.R. §§ 42.101-.112) ("Title VI"), in order to remedy the NOPD's alleged pattern or practice of conduct which subjects individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, and discriminatory policing practices in violation of the Fourteenth Amendment, the Safe Streets Act, and Title VI.

Less than one hour after the United States filed its complaint, the United States and the City (together, the "Parties") filed a Joint Motion for Entry of Decree. Attached to such motion was a proposed Consent Decree containing detailed provisions concerning changes in NOPD policies and practices related to (1) the use of force; (2) investigatory stops and detentions, searches, and arrests; (3) custodial interrogations; (4) photographic lineups; (5) bias-free policing; (6) community engagement; (7) recruitment; (8) training; (9) officer assistance and support; (10) performance evaluations and promotions; (11) supervision; (12) the secondary employment system, also known as the paid detail system; (13) misconduct complaint intake, investigation, and adjudication; and (14) transparency and oversight. In addition, the proposed Consent Decree also included detailed provisions regarding the implementation and enforcement of the Consent Decree. The Parties' motion stated that they sought "to resolve [the] litigation with entry of the attached negotiated Consent Decree" because the document was "intended to ensure that police services are delivered to the people of New Orleans in a manner that complies with the Constitution and laws of the United States."[6]

To ensure the Court satisfied its duty to determine whether the proposed Consent

---

[6] R. Doc. 2 at pp. 1-2.

Decree was in fact "fair, adequate, and reasonable" before approving it, the Court afforded an opportunity for any interested party to move to intervene in the case pursuant to Rule 24 of the Federal Rules of Civil Procedure. The Court entered an order on July 31, 2013, instructing any such party to file a motion to intervene no later than August 7, 2012, and any party opposing any such motion(s) to intervene to file an opposition to the motion(s) no later than August 14, 2012.[7]

Crescent City Lodge No. 2, Fraternal Order of Police, Inc., and Walter Powers, Jr. in his official capacity as Acting President of FOP ("FOP"); Walter Powers, Jr. in his individual capacity ("Powers"); Community United for Change ("CUC"); PANO; Michael Glasser in his individual capacity ("Glasser"); the Office of the Independent Police Monitor ("OIPM") and Susan Hutson in her official capacity as Independent Police Monitor for the City of New Orleans ("IPM"); and Susan Hutson in her individual capacity ("Hutson") (collectively, the "Proposed Intervenors"), filed motions to intervene.[8] The City and the United States opposed the motions to intervene.[9] The Court heard oral argument on all four motions on August 20, 2012.[10]

Thereafter, the Court denied the Proposed Intervenors' intervention as of right, and declined to allow them to permissively intervene.[11] Specifically, the Court found that CUC,

---

[7] R. Doc. 7.

[8] FOP and Powers filed their motion to intervene on August 6, 2012. *See* R. Doc. 9. CUC, PANO and Glasser, and OIPM, IPM and Hutson filed their motions to intervene on August 7, 2012. *See* R. Docs. 11, 13 and 15.

[9] R. Docs. 26 and 27.

[10] R. Doc. 37.

[11] R. Doc. 102.

3

FOP and PANO did not have any legally protectable interests that would be impaired by the proposed Consent Decree, and thus that they were not entitled to intervene as of right. The Court, in its discretion, did not allow them to permissively intervene because the Court determined that it had otherwise provided ample opportunity for them to assist the Court in its consideration of the proposed Consent Decree without prejudicing the Parties or delaying the proceedings. As for Powers and Glasser in their individual capacities, the Court found that they did not demonstrate any legally protectable interest separate from that of FOP and PANO and, for the same reasons, they could not intervene as of right or permissively.

With respect to FOP and PANO, organizations seeking to protect and represent the interests of NOPD officers, the Court underscored that "as it is currently written, the proposed Consent Decree in no way modifies the Civil Service system for NOPD officers."[12] Nevertheless, the Court provided that "[i]f changes are proposed to any NOPD policies that may conflict with the Civil Service rules and procedures, FOP and/or PANO may move to intervene for the limited purpose of asserting their Civil Service property rights."[13]

With respect to OIPM, the Court determined that the office lacked juridical capacity under Louisiana law and thus was legally incapable of intervening. Finally, because Hutson failed to provide the Court with any argument regarding her individual interest and how any such interest would be impaired as a result of the proposed Consent Decree, the Court determined that she could not intervene as of right or permissively. Accordingly, the Court

---

[12] R. Doc. 102 at p. 18.

[13] *See* R. Doc. 102 at pp. 21-22.

4

denied the motions to intervene on August 31, 2012.[14] By the same order, the Court further provided that it would allow the Proposed Intervenors to present live testimony and documentary evidence at the Fairness Hearing and would permit the Proposed Intervenors to submit questions for the Court to ask the United States and the City.[15] FOP and CUC appealed the Court's order denying their motions to intervene to the U.S. Court of Appeals for the Fifth Circuit.[16] PANO filed a timely motion for relief from the Court's order pursuant to Rule 60, which is now before the Court for decision.

## *Law and Analysis*

PANO seeks relief from the Court's order pursuant to Rule 60(b)(2), (b)(3) and (b)(6), arguing that, given the surreptitious online comments of a former assistant U.S. Attorney, Salvador Perricone ("Perricone"),[17] PANO should be allowed to intervene in this matter. According to PANO, Perricone's negative comments – which concerned the NOPD, NOPD Superintendent Ronal Serpas ("Chief Serpas"), the Consent Decree, and the City – are newly discovered evidence of misconduct attributable to the United States. PANO submits that Perricone's behavior indicates that neither the United States nor the City can adequately protect PANO's interests.

Rule 60(b) provides that a court, "[o]n motion and just terms," may "relieve a party or its legal representative from a final judgment, order, or proceeding" due to

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

---

[14] R. Doc. 102.

[15] R. Doc. 102 at p. 25.

[16] R. Docs. 118 and 144.

[17] For a more detailed overview of Perricone's online activities, *see* R. Doc. 256 at pp. 29-34.

>discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6). The purpose of Rule 60(b) is to balance the principle of finality of a court order "with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

Granting relief under Rule 60 is "an extraordinary remedy which should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *see also Pease v. Pakhoed*, 980 F.2d 995, 998 (5th Cir. 1993) ("Courts are disinclined to disturb judgments under the aegis of Rule 60(b)."). Consequently, the "scope of relief that may be obtained under Rule 60(b) is strictly limited." The "decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court." *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010).

### I.     Rule 60(b)(2)

First, PANO argues that Perricone's comments are newly discovered evidence within the meaning of Rule 60(b)(2). Rule 60(b)(2) permits a Court to grant relief due to " newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." The new evidence actually must be relevant to the matter the Court is being asked to reconsider. Indeed, the movant must demonstrate he (1) "exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling*, 396 F.3d at 639 (internal quotation marks and citation

omitted). These requirements must be strictly met for relief to be granted. *See Ag Pro, Inc. v. Sakraida*, 512 F.2d 141, 143 (5th Cir. 1975), *judgment rev'd on other grounds*, 425 U.S. 273 (1976).

Perricone's comments are not a basis for relief under Rule 60(b)(2). First, Perricone's vitriol towards the NOPD, Chief Serpas, the Consent Decree, and the City was well known in the Eastern District of Louisiana at the time PANO sought to intervene in August 2012, and thus this evidence is not "newly discovered."[18] Second, PANO has failed to demonstrate that, had PANO focused on Perricone's comments when it sought leave to intervene, this "clearly would have produced a different result" such that the Court would have allowed PANO to intervene at that time. The Court denied PANO leave to intervene as of right because it found the organization had no legally protectable interest in the subject matter of the litigation. Furthermore, the Court denied PANO leave to permissively intervene because such intervention would unduly delay the proceedings and provided alternative means for PANO communicate its concerns regarding the proposed Consent Decree. Perricone's comments would not in any way have affected the Court's analysis and the denial of PANO's motion for leave to intervene. Thus, PANO may not avail itself of relief from the Court's order pursuant to Rule 60(b)(2).

## II.     Rule 60(b)(3)

Second, PANO argues that Perricone's comments are misconduct within the meaning of Rule 60(b)(3). Pursuant to Rule 60(b)(3), a court may relieve a party from an

---

[18] PANO admits that it was aware of Perricone's comments under the moniker Henry L. Mencken1951 at the time it filed its original motion to intervene in August 2012. *See* R. Doc. 165-2 at p. 8. *See also* R. Doc. 256 at pp. 29-34 (discussing when Perricone's comments became a matter of public knowledge in the Eastern District of Louisiana).

order due to fraud, misrepresentation, or other misconduct of an adverse party. A party making a Rule 60(b)(3) motion must establish, by clear and convincing evidence, "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling*, 396 F.3d at 641 (citation omitted). Rule 60(b)(3) is aimed at court decisions "which were unfairly obtained, not at those which are factually incorrect. The rule is remedial and should be liberally construed." *Hesling*, 396 F.3d at 641 (internal citations and quotation marks omitted).

PANO cannot demonstrate that Perricone's comments prevented it from fully and fairly presenting its case at the August 2012 hearing on its motion to intervene.[19] Perricone resigned in March 2012, and was immediately removed from the team negotiating the Consent Decree, when his comments became a matter of public knowledge. Thus, Perricone was no longer involved in Consent Decree negotiations after that time. In addition, as discussed above, the Court denied PANO leave to intervene because the organization could not show it had a legally protectable interest in the in the subject matter of the litigation and the Court provided the organization with an opportunity to participate in the September 21, 2012 Fairness Hearing. Perricone's comments do not somehow imbue the organization a legally protectable interest nor do they render PANO's participation in the Fairness Hearing ineffective. PANO was afforded time, in open court and on the record, to present PANO's concerns regarding the Consent Decree to the Court. In sum, because

---

[19] As discussed in the order denying the City's motion to vacate, *see* R. Doc. 256, because the Court finds PANO has failed to demonstrate how Perricone's alleged misconduct prevented it from fully and fairly presenting its case, there is no need for the Court to determine whether Perricone's behavior is misconduct imputed to the United States.

8

PANO cannot show the Court's order denying leave to intervene was unfairly obtained, the relief PANO seeks under Rule 60(b)(3) is not warranted.

### III. Rule 60(b)(6)

Third, PANO also asserts that it is entitled to relief pursuant to Rule 60(b)(6) because of Perricone's comments. Rule 60(b)(6), which permits a court to grant such a motion for "any other reason that justifies relief," is a "catchall" that has been referred to as a court's "grand reservoir of equitable power to do justice." *Rocha*, 619 F.3d at 400 (quoting *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010)). Nevertheless, a court may invoke Rule 60(b)(6) only for "any other reason than those contained in the preceding five enumerated grounds" and only in "extraordinary circumstances." *Rocha*, 619 F.3d at 400.

PANO argues that neither the United States nor the City can adequately represent PANO's interests, as the "now notorious misconduct of the government [i.e., Perricone], and the plain language bias displayed against the NOPD, its leadership and its members, justifiably lead to an overwhelming view that the [Consent Decree] has been 'poisoned.' "[20] PANO's reasoning why it is entitled to relief under Rule 60(b)(6) is identical to its reasoning advanced regarding 60(b)(2) and (b)(3). Because PANO fails to identify any independent basis for relief under Rule 60(b)(6), granting relief under that subsection is inappropriate. *See Solis v. Dretke*, 436 F. App'x 303, 306 (5th Cir. 2011) (denying relief under Rule 60(b)(6) because the movant's claim for relief was "based solely upon [movant's] claims of fraud and misrepresentation under Rule 60(b)(3) and of newly discovered evidence under Rule 60(b)(2)").

---

[20] R. Doc. 165-2 at pp. 9-10.

9

### *Conclusion*

Having reviewed PANO's arguments for relief from the Court's prior order due to Perricone's comments, the Court finds that PANO has not presented any legally cognizable basis for relief pursuant to Rule 60 of the Federal Rules of Civil Procedure, or otherwise. The Court declines to reconsider its decision to deny PANO's motion for leave to intervene in this matter.

Accordingly, for the reasons assigned,

**IT IS ORDERED** that PANO's motion for relief from the Court's order denying leave to intervene is **DENIED**.

New Orleans, Louisiana, this 29th day of May, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**