UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-1924** |
| **CITY OF NEW ORLEANS,**<br>    **Defendant** | **SECTION "E"** |

**ORDER AND REASONS**

After diligent and good faith efforts, the parties, Plaintiff, the United States of America ("United States") and Defendant, the City of New Orleans (the "City"), have been unable to agree on the selection of the Monitor to oversee implementation of the Consent Decree in this case. Because there is no doubt that the Monitor is necessary, and because the court finds it imperative that the Monitor begin its work without any further delay, the Court will select the Monitor from the two finalists chosen by the parties.[1] The Court has received and reviewed the proposals submitted by the City's choice, Hillard Heintze,[2] and the choice of the United States, Sheppard, Mullin, Richter & Hampton ("Sheppard Mullin"),[3] as well as the parties' memoranda,[4] the public's letters,[5] and the transcripts and

---

[1] R. Doc. No. 2-1, p. 119 ("If the Parties are unable to agree on a Monitor or an alternative selection within the timeframe agreed to by both parties as of the Effective Date, then the Court shall resolve the disagreement."); *see id.* at p. 118 (providing parties with 90 days from the effective date to agree).

[2] R. Doc. 269.

[3] R. Doc. 270.

[4] R. Docs. Nos. 276–77.

[5] R. Docs. Nos. 224–25, 230–31, 234–37, 240–42, 247–48, 250, 259, 274.

1

audio recordings of the five public meetings on the topic.[6] The issue is now ripe for decision, and the Court selects Sheppard Mullin as Monitor.

## BACKGROUND

The Consent Decree provides for a Monitor to oversee the City's implementation and enforcement efforts.[7] The Monitor's job is to "assess and report whether the requirements of [the Consent Decree] have been implemented, and whether this implementation is resulting in the constitutional and professional treatment of individuals by NOPD."[8] In order to perform its responsibility, the Monitor is required to conduct a number of "reviews, audits, and assessments."[9] These include compliance reviews to determine whether the City and NOPD have "incorporated [the Consent Decree's requirements] into policy," "trained all relevant personnel as necessary," and "ensured that the requirement[s] [are] being carried out in actual practice,"[10] as well as other assessments to determine the practical effect of the Consent Decree on a number of concrete outcomes.[11] In addition to other duties, the Monitor may also make recommendations to the parties and provide

---

[6] R. Docs. Nos. 271 (partial transcript of meeting of April 2, 2013), 272 (partial transcript of meeting of April 3, 2013), 273 (partial transcript of meeting of April 15, 2013). The Court has also reviewed the audio recordings of the March 7, April 2-3, April 15, and June 13, 2013, meetings.

[7] R. Doc. No. 2-1, pp. 108–20. The general background and history of this case, including the need for the Consent Decree and its procedural history, may be found in the Court's prior orders. *E.g.*, R. Docs. Nos. 179 (denying motion to stay), 256 (denying motion to vacate).

[8] R. Doc. No. 2-1, p. 108.

[9] R. Doc. No. 2-1, p. 109.

[10] R. Doc. No. 2-1, p. 109.

[11] R. Doc. No. 2-1, pp. 109–12.

technical assistance "to ensure timely, full, and effective implementation of [the Consent Decree] and its underlying objectives."[12]  These are weighty responsibilities, ones that require a "team . . . of individuals of the highest ethics."[13]

In light of the crucial role that the Monitor will play in overseeing the Consent Decree, the Court directed the parties to proceed with as public, as open, and as thorough a selection as was reasonable under the circumstances.  On September 6, 2013, the Court approved a Request for Proposals to Serve as Consent Decree Court Monitor of the New Orleans Police Department ("RFP") submitted by the parties, listing the following as qualifications for submitting a bid:  expertise in law enforcement practices, including training, community policing and problem-oriented policing, and complaint and use of force investigation; expertise in monitoring, auditing, evaluating, or otherwise reviewing performance of organizations, including experience in monitoring settlements, consent decrees, or court orders; expertise in evaluating the breadth and depth of organizational change, including the development of outcome measures; institutional transformation and change management; the development of a continuous quality improvement infrastructure; mediation and dispute resolution skills; as well as a variety of technical, communication, and social competencies.[14]

The parties received twelve responses to the RFP and formed a joint Evaluation Committee ("Committee"), with five members appointed by the City and five by the United

---

[12]   R. Doc. No. 2-1, p. 113.

[13]   R. Doc. No. 2-1, p. 119.

[14]   R. Doc. No. 110-1, p. 8.

States, to review the candidates.[15] The Committee held five public meetings with the first on March 7, 2013, and the last on June 13, 2013. The public was also invited to provide comments in writing to the City, which were filed into the record.[16]

The Committee winnowed the twelve candidates to five, and after interviewing the five candidates, to two finalists.[17] The City recommended a team from Hillard Heintze, a strategic security services and investigative services firm. The United States recommended a team from the law firm Sheppard Mullin. Both candidates made presentations during the public meetings, Hillard Heintze at the April 2, 2013, meeting, and Sheppard Mullin, at the April 3, 2013, meeting.[18] Two members of the Committee from the City and two from the United States have conducted over ten additional interviews with these finalists.[19] Both parties made efforts to construct a consensus team of professionals from the two proposed teams, but they were unable to accomplish this result for a number of reasons.

The Hillard Heintze team is led by former Chicago Police Department Superintendent Terry Hillard as Monitor and former Boston Police Commissioner Kathleen O'Toole and former San Jose Chief of Police Robert Davis as Deputy Monitors, supplemented by approximately eighteen other professionals and several consulting

---

[15] R. Doc. No. 162.

[16] R. Docs. Nos. 207, 224–25, 230–31, 234–37, 240–42, 247–48, 250, 259, 274.

[17] R. Doc. No. 273, p. 2.

[18] R. Docs. Nos. 271–72.

[19] R. Doc. No. 277, p. 5.

groups.[20]  The Sheppard Mullin team is led by the firm's partner Jonathan Aronie as Monitor and another partner David Douglass and former Charlotte-Mecklenburg Chief of Police Dennis Nowicki as Deputy Monitors, supplemented by approximately eight other professionals and at least one consulting group.[21]

## ANALYSIS

The proposals of both teams satisfy the requirements of the Consent Decree and the RFP.  Both teams are composed of competent professionals who the Court believes would be able to discharge the duty of Monitor with integrity.  This is hardly surprising, given that these two finalists rose to the top of an initial pool of twelve candidates from across the country.  After its review and consideration, the Court finds Sheppard Mullin is the better choice for several reasons.

First, the duties of the Monitor closely track the kinds of activities that are the bread and butter of legal practice.  The Monitor is not primarily responsible for *formulating* policies—that task falls to the City and the New Orleans Police Department ("NOPD") in the first instance. The Monitor is instead primarily responsible for *reviewing* the policies that the City and NOPD draw up to ensure that they comport with the requirements of the Consent Decree and constitutional policing—precisely the kind of advisory role that lawyers are accustomed to playing.  Similarly, the Monitor is not primarily responsible for *implementing* policies.  The Monitor instead has the obligation of *assessing* compliance with the policies.  That kind of institutional investigation and assessment, which involves the collection, review, and synthesis of large amounts of information, is also a task that

---

[20]    R. Doc. No. 270, pp. 4, 9–11.

[21]    R. Doc. No. 277, pp. 7–8.

lawyers, particularly lawyers at firms like Sheppard Mullin, routinely perform. The Monitor also has the responsibility to report to both the Court and the public in clear and concise terms. It goes without saying that lawyers are trained to communicate with and report to courts, and the Sheppard Mullin team makes a strong case for its competence in communicating with the public as well.

Second, the head of the Sheppard Mullin team has experience with performing this kind of task, having served as Deputy Monitor of the Metropolitan Police Department ("MPD") in Washington, D.C., under a memorandum agreement with the United States.[22] Although the Hillard Heintze team includes members who have had experience working in a monitoring capacity, the Court considers the prior monitoring experience of the team leader to be entitled to comparatively more weight, and Chief Hillard, the head of the Hillard Heintze team, has not served as a monitor. Third, the Hillard Heintze team includes a large number of highly qualified professionals, but the Court believes the streamlined nature of the Sheppard Mullin team will help ensure that each team member is intimately familiar with the Consent Decree. Finally, the public's comments, taken as whole, favor Sheppard Mullin.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Sheppard Mullin is selected as the Monitor required by the Consent Decree.

**IT IS FURTHER ORDERED** that the City negotiate in good faith the details of the professional services agreement with Sheppard Mullin, including a discussion of cost and

---

[22] R. Doc. No. 270, p. 10.

a cap on costs.[23]  The United States is to be kept advised of the progress and substance of the negotiations and may have a representative present during in-person meetings and conference calls between the City and Sheppard Mullin.

**IT IS FURTHER ORDERED** that a status conference is set for **July 19, 2013**, at **12:30 p.m.**, for the parties to report to the Court on the status of negotiations, which the Court expects will be concluded by that time.

**New Orleans, Louisiana, this 5th day of July, 2013.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[23]  R. Doc. No. 122, exhs. A & B.