# EXHIBIT A

WHEREAS, on July 24, 2012, the City and the United States Department of Justice (the "DOJ") (the City and the DOJ are, collectively, the "Consent Decree Parties") filed a proposed consent decree in the matter of *The United States of America v. The City of New Orleans*, Case No. 12-1924, in the United States District Court for the Eastern District of Louisiana (the "Case"), which has been assigned to the Honorable Susie Morgan (the "Court"); and

WHEREAS, pending approval of the proposed consent decree, on October 26, 2012, the Consent Decree Parties issued a Request for Proposals (the "RFP") seeking a monitor for the New Orleans Police Department (the "NOPD") and the implementation of the Consent Decree consistent with the terms of the Consent Decree; and

WHEREAS, following all due consideration, the Court approved the Consent Decree on January 11, 2013 (the "Consent Decree"); and

WHEREAS, in response to the RFP, Sheppard Mullin Richter & Hampton, LLP ("Sheppard Mullin") submitted its proposal (the "Proposal"), which Proposal was selected by the Court in accordance with the terms of the Consent Decree;

NOW THEREFORE, the terms under which Sheppard Mullin will serve as Monitor are as follows:

## I.    THE MONITORING TEAM.

A.    **Consent Decree**.  The Monitor shall serve pursuant to, and its obligations shall be performed in accordance with, the provisions of the Consent Decree and as set forth herein. Consistent with paragraph 445 of the Consent Decree, the Monitor shall be subject to the supervision and orders of the Court.  The Monitor shall have only the duties, responsibilities, and authority conferred by the Consent Decree and herein.  The Monitor shall not, and is not intended to, replace or assume the role and duties of the City and/or the NOPD, including the Superintendent of Police for the New Orleans Police Department.

B.    **Monitoring Team**.  The "Monitoring Team" shall be made up of the Primary Monitor, one or more Deputy Monitors, and other team members consistent with the terms of the Consent Decree and as set forth herein.  The current members of the Monitoring Team are set forth in **Exhibit B**.  As used herein, the term "Monitor" includes the collective members of the Monitoring Team.

C.    **Services**.  Monitor shall perform the tasks identified in the Consent Decree (the "Services").  Additionally, Monitor shall:

1.    Perform the services summarized in **Exhibit D** to the extent they do not conflict with the tasks explicitly identified in the Consent Decree.

2.    Submit complete and accurate invoices, maintain records, and adhere to all other obligations of the Monitor set forth herein;

3.    Monitor, supervise, and otherwise control and be solely responsible for all persons performing Services on its behalf;

4.      Perform all requirements set forth in La. Rev. Stat. § 38:2192, including without limitation the payment of any associated costs, and submit a copy of any recorded documents to the City within thirty (30) days after the approval of the associated plan change or amendment; and

5.      Cooperate with the Consent Decree Parties and the Court as indicated in the Consent Decree.

6.      Promptly correct any errors or omissions and complete any unsatisfactory or unacceptable Services at no additional cost to the City.  If there is a dispute between the City, the Monitor, and/or DOJ about whether an error or omission has occurred or whether a Service is unsatisfactory or unacceptable, any one of them may seek the Court's review of the dispute.

D.      **Requested Work**.  The City and its officers and employees are not authorized to request or instruct the Monitor to perform any work beyond the scope or duration of the Consent Decree or herein except with approval of the Court.

E.      **Personnel**.

1.      If the services of Jonathan S. Aronie ("Primary Monitor") with Monitor are terminated by Monitor for any reason whatsoever, with or without cause, or if the Primary Monitor is otherwise unavailable to perform the Services, or any part thereof, under the Consent Decree or hereunder, the City, with the Court's approval, or the Court reserve the right to terminate the Monitor's appointment.  To the extent reasonably practicable, Monitor agrees to provide ninety (90) days advance notice to the City, DOJ, and the Court of the effective date of the Primary Monitor's termination by Monitor.  If the Monitor is not reasonably able to provide 90 days advance notice of the effective date of termination, Monitor must inform the City, DOJ, and the Court as soon as possible of the termination of the Primary Monitor.  The Court may impose appropriate relief (up to and including termination) for any unreasonable failure to provide sufficient advance notice.

2.      Monitor shall maintain a physical presence in New Orleans, which may be satisfied by engaging a local entity as a member of the Monitoring Team.  Unless the Parties and DOJ agree otherwise, *e.g.*, to avoid duplication of effort or to otherwise reduce costs, Mr. Aronie and/or Mr. Douglass collectively shall spend a minimum of seventy (70) weekdays in New Orleans during the first year of the Monitor's appointment and shall be present in New Orleans at least once a month thereafter for the duration of the Monitor's service.  A senior member of the Monitoring Team shall be present in New Orleans every weekday of the year, except (a) federal, state, local holidays; (b) where agreed to by the Parties and DOJ; or (c) where not reasonably practical (*e.g.*, sickness, flight cancellations, weather, or major events such as the week of Mardi Gras).

3.      The hiring/engagement of team members beyond the current team members identified in Exhibit B shall be governed by Paragraph 482 and 483 of the Consent Decree.  Nothing shall limit the discretion and authority of the Monitor to terminate members of its team with advance notice to the City, DOJ, and the Court.

F.      **Compliance with Laws.**  The Monitor, and any person performing work on its behalf, will comply with all Court orders and applicable federal, state, and local laws and ordinances, including, without limitation, the Consent Decree.

G.      **Invoices**.

1.      The Monitor will submit invoices for work performed by Monitor and/or the Monitoring Team under the Consent Decree or hereunder to the City, with a copy to the Court and DOJ, no later than thirty (30) calendar days following the end of the month covered by the invoice.  Untimely invoices may result in delayed payment.  The City shall not be liable for any costs (beyond the invoice itself) resulting from such delayed payments.

2.      The City, upon request, shall be entitled to receive or inspect reasonable additional supporting documentation for the invoices.  The Court shall be entitled to receive or inspect additional supporting documentation for the invoices.

3.      The Monitor shall abide by the Consent Decree Monitor Billing Guidelines attached hereto as Exhibit C.

H.      **Records and Reporting**.

1.      The Contractor will maintain all documents (in any form, whether written or electronic) relating or pertaining to the Consent Decree or its service hereunder, including without limitation all ledgers, books, invoices, receipts, vouchers, canceled checks, wage records, timesheets, subcontracts, reports, correspondence, lists, notes, and memoranda, for the duration of its service as Monitor and for at least five (5) years following the completion or termination of its service, including all renewal periods.  Hard copies of drafts or files that relate to routine program or administrative operations or that contain only corrections or editorial or stylistic changes may be disposed of as nonrecord materials.

2.      The Monitor is solely responsible for the relevance and accuracy of all items and details included in any reports relating to the work performed, regardless of any review by the City, DOJ, or the Court.

I.      **Progress Meetings.**  Pursuant to paragraph 460 of the Consent Decree, the Monitor shall conduct monthly meetings with the Parties that shall include participation by the Superintendent, representatives of the City Attorney's office, and DOJ.  Among other things, the Monitor shall use these meetings to raise issues that, in the Monitor's view, present or may present a material and consequential impact on its ability to reasonably satisfy the goals, purposes, and requirements of the Consent decree, including cost considerations.

J.      **Audit and Inspection**.  The Monitor will submit to any Court-ordered audit, inspection, or review and, as authorized by the Court, will make available all documents relating or pertaining to its service which are maintained by or under the control of the Monitor, its employees, agents, assigns, subcontractors, and successors.  The Court will determine the extent of the productions as well as the time, day and location taking into account the nature and volume of records requested and the cost of their production.

K.      **Insurance**.  Except as otherwise noted, the Monitor will maintain the following insurance in full force and effect for the duration of its service as Monitor:

1.      Requirements

a.      Basic:

(1)     The  Monitor shall purchase in its name and maintain at its sole cost and expense, insurance policies as set out below. These insurance policies will, but only with respect to and to the extent of the obligations assumed by the Monitor under the Consent Decree or herein, provide primary coverage for claims and/or suits which may arise out of or result from the Monitor's performance and/or furnishing of the Services, whether performed and/or furnished by the Monitor, the Monitoring Team, and/or by anyone directly or indirectly employed by any of them to perform or furnish any of the Services.  Only with respect to and to the extent of the obligations assumed by the Monitor in the Consent Decree or herein, any insurance carried by the City shall be excess and not contributing insurance. The limits set forth herein may be met by purchasing an umbrella or excess policy meeting both requirements.

(2)     The total limit of insurance must be equal to or greater than the minimum acceptable and not less than the limits indicated below.  If any policies required to be obtained by the Monitor contain a deductible or self-insurance retention, then the evidence of insurance for those policies shall disclose the deductible/retention amount. Additionally, each line of insurance required may have its own set of requirements that must be met. "Claims made" policies of insurance are not acceptable for the general liability policy required, but are acceptable for the professional liability policy required herein.

(3)     Only with respect to and to the extent of the obligations assumed by the Monitor in the Consent Decree and herein, the City, its elected and appointed Officials, Boards, Commissions, agents, directors, servants, employees and volunteers shall be named as an Additional Insured on the Monitor's general liability insurance policy.

(4)     If the insurance policies required to be obtained by the Monitor do not contain the standard ISO separation of insureds provision, or a substantially similar clause, then the policies shall be endorsed to provide Cross Liability coverage but only with respect to and to the extent of the obligations assumed by the Monitor in the Consent Decree or herein.

(5)     Only with respect to and to the extent of the obligations assumed by the Monitor in the Consent Decree or herein, the Monitor shall endorse the insurance policies required to provide Wavier of Subrogation Endorsement for General Liability to include written contracts in favor of the City, its elected and appointed Officials, Boards, Commissions, agents, directors, servants, employees and volunteers.

b.     Types and Amounts

(1)     GENERAL LIABILITY:

(a)     Commercial General Liability Form CG 00 01, or pre-approved  alternative providing at least as broad coverage, insurance shall be written on an "occurrence" basis; with a minimal acceptable limit of not less than $500,000 per occurrence; $1,000,000 aggregate;

(b)     Cover contractual liability;

(c)     The insurance shall cover liability arising from independent contractors and liability assumed under an insured contract.

(d)     Note: The General Liability policy shall not exclude any standardized coverage included in the required basic form or limit Contractual Coverages for

the Services in any way that would prohibit or limit the reporting of any claim or suit and the subsequent defense and indemnity therefor which would normally be provided by the policy.

        (2)     PROFESSIONAL LIABILITY, AS APPLICABLE TO THE SERVICES TO BE PROVIDED BY THE MONITOR:

        (a)     Minimal acceptable limit of not less than $1,000,000 per occurrence and $2,000,000 aggregate;

        (b)     If written on a Claims-Made basis, the retroactive date of coverage shall be no later than the inception date of claims made coverage;

        (c)     Any retroactive date applicable to coverage will be maintained or an extended discovery period will be exercised for a period of three (3) years beginning when the Monitor is terminated;

        (d)     Sixty (60) days prior written notice shall be provided to the City of cancellation, non-renewal or any reduction in coverages or limits;

        (e)     Such insurance shall be renewed as to provide continuous coverage during the service of the Monitor and the purchase Extended Reporting Provision for a period of at least three (3) years after the termination of the Monitor;

        2.     General Specifications

        a.     The Monitor shall require all subcontractors to maintain, in limits set forth in Section K.1.b(1)(a) & (2)(a), insurance coverage for Services performed or materials provided for the Services. The Contractor shall insert this requirement in all contracts or agreements, whether written and/or oral, with all entities and/or persons who perform any Services hereunder. At no time shall the Monitor allow any subcontractors to perform Services without the required types and limits of insurance coverage. In the event of a sub-contractor's non-compliance with this requirement, the Monitor shall be responsible for any damages or liabilities arising from the subcontractors work, actions, or inactions.

        b.     Qualifications of Insurers: If any insurance company providing any insurance coverage furnished by the Monitor is declared bankrupt, becomes insolvent, or ceases to meet the requirements of this Agreement, the Monitor shall, within thirty (30) days thereafter, substitute another insurance company reasonably acceptable to the City. The City reserves the right, subject to approval by the Court, to mandate cessation of the Services until the receipt of acceptable replacement insurance.

        c.     Partnerships: If the Monitor is a partnership then the evidence of all primary and excess liability insurance required to be maintained during the term hereunder shall be furnished in the name of the partnership. Evidence of continuing primary commercial general liability insurance, which shall remain in effect in the name of the partnership, shall also be furnished.

        d.     Certificates of Insurance: The Monitor shall furnish to the City Certificates of Insurance effecting coverages required hereunder. The certificates for each insurance policy are to be signed by a person authorized by that insurer to bind coverage on its behalf. The certificates are to be on forms that are to be received and reasonably approved

by the City.  The City shall have the right to complete, certified copies of all required insurance policies, at any reasonable time with reasonable advance notice.

       e.    Objection by the City: If the City has any objection to the coverage afforded by, or any other provisions of, the insurance required to be purchased and maintained by the Monitor in accordance with the insurance requirements for the Services on the basis of non-conformance, City shall notify the Court of the objection in writing within twenty (20) days of its receipt of the Certificate(s) of Insurance.  If the Court determines that a written response is warranted, the Monitor shall provide a written response to City's objections within twenty (20) days of an Order of the Court.

       (1)    The Monitor's Failure: Upon failure of the Monitor to purchase, furnish, deliver or maintain such insurance as required after the City provides Monitor and the Court with written notice of any such default and Monitor's failure to cure after twenty (20) days, the Court may forthwith declare the Monitor's appointment suspended, discontinued, or terminated. Failure of the Monitor to purchase and maintain insurance shall not relieve the Monitor from any liability hereunder, nor shall the insurance requirements affect the obligations of the Monitor concerning indemnification.

       (2)    No Waiver of Liability: Acceptance of evidence of the insurance requirements as set forth herein by the City in no way relieves or decreases the liability of the Monitor for the performance of the Services hereunder.   The insurance requirements outlined herein shall in no way be construed to limit or eliminate the liability of the Monitor as set forth hereunder.

       (3)    No Recourse Against the City: The insurance companies issuing the policies required herein shall have no recourse against the City for payment of any premiums, deductibles, retentions or for assessments under any form of policy. These shall be borne by and be the sole responsibility of the Monitor.

       (4)    The City's Liability Insurance: In addition to the insurance required to be provided by the Monitor above, the City, at its option, may purchase and maintain at City's expense its own liability insurance as will protect the City against claims which may arise from operations under the Agreement.

       (5)    City's Insurance Requirements: All of City's insurance coverages shall be endorsed to provide that:

       (a)    City's insurers waive their right of subrogation (equitable or by assignment, express or implied, loan receipt or otherwise) against Monitor Group (as defined below).

       (b)    City's insurers name Monitor Group as additional insureds (except for Worker's Compensation Insurance).

       (c)    City's insurance coverages is primary over any insurance coverages maintained by Monitor Group.

## II.    Liability.

     Pursuant to Paragraph 466 of the Consent Decree, the Monitor shall not be liable for any claim, lawsuit, or demand arising out of the performance of its duties hereunder or pursuant to the

Consent Decree that is brought by any non-parties to the Consent Decree or hereunder. The Monitor is serving as an officer and agent of the Court, and shall have the same protections afforded other similar Federal judicial adjuncts, including but not limited to quasi-judicial immunity. The Monitor shall not be obligated or authorized to testify at any hearing, arbitration, trial or other proceeding, whether by compulsory process (*e.g.*, subpoena) or otherwise, without the prior approval of the Court.

## III.    REPRESENTATIONS AND WARRANTIES.

A.    The Monitor represents and warrants to the City that:

1.    The Monitor, through its duly authorized representative, has the full power and authority to agree to serve as Monitor under the Consent Decree and as set forth herein;

2.    The Monitor has the requisite expertise, qualifications, staff, materials, equipment, licenses, permits, consents, registrations, and certifications in place and available for the performance of Services required hereunder;

3.    The Monitor is not under any obligation to any other person that is inconsistent or in conflict with its agreement to serve as Monitor or that could prevent, limit, or impair the Monitor's performance hereunder;

4.    The Monitor has no knowledge of any facts that could prevent, limit, or impair the performance of its duties, except as otherwise disclosed to the City and incorporated herein;

5.    The Monitor is not in breach of any federal, state, or local statute or regulation applicable to the Monitor or its operations;

6.    The Monitor has read and fully understands the Consent Decree and is entering upon this engagement willingly and voluntarily; and

7.    All of the representations and warranties in this Article and elsewhere herein are true and correct as of the date of its appointment to serve as Monitor, and the execution of its agreement to serve by the Monitor's representative constitutes a sworn statement, under penalty of perjury, by the Monitor as to the truth of the foregoing representations and warranties.

8.    The Monitor shall submit complete and accurate invoices as set forth herein, maintain insurance as set forth herein, submit to audit and/or inspection as set forth herein, and perform all other obligations set forth herein.

B.    **The City Represents and Warrants to Monitor That**:

1.    The City, through its duly authorized representative, has the full power and authority to enter into this arrangement;

2.    The City has no knowledge of any facts that could prevent, limit, or impair its performance hereunder, except as otherwise disclosed to the Monitor and incorporated herein;

3.      The City has read and fully understands the Consent Decree and is executing this arrangement willingly and voluntarily; and

4.      The City intends to comply with the Consent Decree and its obligations hereunder in good faith.

C.      **Convicted Felon Statement.** The Monitor complies with City Code § 2-8(c) and no principal, member, or officer of the Monitor has, within the preceding five years, been convicted of, or pled guilty to, a felony under state or federal statutes for embezzlement, theft of public funds, bribery, or falsification or destruction of public records.

D.      **Non-Solicitation Statement.** The Monitor has not employed or retained any company or person, other than a bona fide employee working solely for it, to solicit or secure its appointment as Monitor. The Monitor has not paid or agreed to pay any person, other than a bona fide employee working for it, any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from its appointment as Monitor.

## IV.    THE CITY'S OBLIGATIONS.

A.      The City will

1.      Endeavor in good faith to implement all requirements of the Consent Decree and hereunder;

2.      Cooperate fully and in a timely fashion in all activities undertaken by the Monitor in accordance with the Consent Decree and hereunder;

3.      Respond fully and in a timely fashion to all requests (including, but not limited to, requests for documents, data, and other materials; requests for access to places, facilities, critical incident crime scenes, events, trainings, reviews, and meetings; and requests for interviews) made by the Monitor in accordance with the Consent Decree and hereunder;

4.      Provide the Monitor all documents, data, and other materials deemed necessary for the Monitor's performance of the Services required under the Consent Decree and herein;

5.      Provide access to Police Department personnel, as requested by the Monitor;

6.      Provide Monitor with appropriate credentials to obtain unfettered access to buildings, facilities, events, and meetings for the purpose of fulfilling Monitor's obligations under the Consent Decree and hereunder; and

7.      Act in a cooperative manner designed to ensure the success of the Consent Decree and hereunder.

B.      Payment.

1.      City will make payments to the Monitor at the rate of compensation established herein within thirty (30) days of the receipt of the Monitor's invoices.   The City's obligation to make any payment is contingent upon the Monitor's submission of a

complete and accurate invoice, including all required information and documents as set forth herein.

2.    Questions regarding the performance of the Services and conditions required herein shall be referred to the Court for resolution after a good faith effort is made by the Parties to resolve the issue between themselves.

3.    Unless specifically authorized by a validly executed amendment, the City is not obligated under any circumstances to pay for any work performed or costs incurred by the Monitor that:

a.    Exceed the maximum aggregate amount payable established herein;

b.    Are beyond the scope or duration of its appointment as determined by the Court;

c.    Arise from or relate to the correction of errors or omissions of the Monitor or members of the Monitoring Team as determined by the Court; or

d.    The City is not expressly obligated to pay hereunder as determined by the Court.

4.    The City may withhold payment of any reasonably disputed portion of an invoice, and no interest shall accrue on any such amount withheld pending the resolution of the dispute by the Court. Only the specific amount in dispute may be withheld. The Court may impose appropriate relief for any unreasonable withholding of payments by the City.

5.    If the Monitor's appointment is terminated for any reason, the Monitor shall be paid by the City for Services performed and expenses incurred as provided herein.

## V.    COMPENSATION.

A.    **Rate of Compensation.** The Monitor's compensation for the performance of work shall be as set forth in **Exhibit A** hereto.

B.    **Time Keeping**. Members of the Monitoring Team shall record and bill for time actually worked in 6 minute increments or using a daily rate based upon the rates set forth in Exhibit A for days that the timekeeper is physically present in New Orleans. The calculation of the daily rate shall be the individual's applicable hourly rate times eight (8) regardless of the hours actually worked. Any member of the Monitoring Team opting to bill at the daily rate while in New Orleans need not keep detailed time records for that day, but must represent on his/her timesheet that he/she actually worked at least 8 hours.

C.    **Tasks and Time**. The City understands that the identification of hours and tasks in the Proposal represented the Monitor's best estimates at that time. Actual tasks and hours may differ from those identified in the Proposal due to any number of factors, including, among other things, the resources NOPD devotes to implementation activities, the speed with which the NOPD comes into compliance with the Consent Decree, and the way the NOPD constitutes its implementation team.

D.    **Outside Work**. Nothing herein shall restrict the Monitor and/or the Monitoring Team from engaging in other work (*e.g.*, work on other, non-Consent-Decree-related matters)

provided such work does not interfere with their obligations pursuant to the Consent Decree and hereunder.

E. **Maximum Amount.** Notwithstanding anything herein to the contrary, the maximum aggregate amount payable by the City under this Agreement is $8.5 million.

F. **Travel**. Monitor shall bill the City for travel in a manner consistent with the Consent Decree Monitor Billing Guidelines attached as Exhibit C.

G. **Records**. Monitor shall maintain records, receipts, and other appropriate documentation of all expenses, costs, fees, services, and any appropriate taxes for the duration of its appointment. Such records shall be available for inspection by the City, with reasonable advance notice to the Monitor and the Court.

H. **Disputes.** In the case of disputes regarding payment of Monitor's fees and costs or the performance of Services, the City and the Monitor shall undertake to reach an amicable settlement. If an amicable settlement cannot be reached, the dispute shall be presented to and resolved by the Court.

## VI.   DURATION AND TERMINATION.

A. **Term.** The term of the Monitor's appointment is four (4) years from August 9, 2013, unless terminated prior to end of the four-year term as set forth herein or in the Consent Decree.

B. **Extension.** The City may extend the term of the Monitor's appointment only as approved by the Court.

C. **Termination**. The Monitor's appointment may be terminated only with approval of the Court. Such approval may be granted upon motion by the City, DOJ, or the Monitor, or at the Court's own initiative.

## VII.   DISADVANTAGED BUSINESS ENTERPRISE ("DBE") PROGRAM.

A. **DBE Program Compliance.** The Monitor hereby agrees to use its best efforts to fully and completely carry out the applicable requirements of the DBE Program as set forth in Attachment "B" (Required Contract DBE Provisions) of the RFP, including, without limitation, all reporting requirements and specific DBE participation goals, and the City agrees to cooperate fully in the Monitor's efforts to do so. The Monitor's or the City's failure to carry out their respective requirements, as determined by the Court, shall be deemed a material breach.

B. **DBE Compliance Reporting.** The Monitor will provide written reports to the City's Director of Supplier Diversity, with a copy the Court, on all expenditures made to achieve compliance with the DBE participation goals for this Agreement. The report shall, at a minimum, include the following:

1. The name and business address of each DBE involved;

2. A description of the work performed and/or the product or service supplied by each DBE;

3. The date and amount of each expenditure made to a DBE; and

4.      Such other reasonable information as may assist the DBE Compliance Officer in determining the Monitor's compliance with the DBE Program and the status of any DBE performing any portion of the work performed and/or the product or service supplied.

The Monitor and the members of the Monitoring Team awarded contracts may be required to use a secure web-based compliance management system to submit project information on all expenditures made to achieve compliance with the DBE Contract Goal for the RFP and herein.  The information regarding the compliance system to be used will be provided to the Monitor if required.

C.      **Access to Books and Records.** The Monitor agrees to grant the City and the Court reasonable access to its books and records specifically related to DBE compliance for purposes of verifying compliance with the DBE Contract Goal set forth in the RFP and set forth herein.

D.      **Best Efforts**.  The City has reviewed Monitor's DBE proposed approach and agrees that it satisfies the "best efforts" requirements of the DBE program.  Monitor will endeavor to fully comply with any ongoing DBE obligations hereunder.

## VIII.   NON-DISCRIMINATION.

A.      **Equal Employment Opportunity.** In all hiring or employment made possible by, or resulting from the Monitor's appointment, the Monitor (1) will not be discriminate against any employee or applicant for employment because of race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, gender identity or expression, creed, culture, or ancestry, and (2) where applicable, will take affirmative action to ensure that the Monitor's employees are treated during employment without regard to their race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, creed, culture, or ancestry. This requirement shall apply to, but not be limited to the following: employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. All solicitations or advertisements for employees shall state that all qualified applicants will receive consideration for employment without regard to race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, creed, culture, or ancestry.

B.      **Non-Discrimination.** In its performance hereunder, the Monitor will not discriminate on the basis, whether in fact or perception, of a person's race, color, creed, religion, national origin, ancestry, age, sex (gender), sexual orientation, gender identity or expression, domestic partner status, marital status, physical or mental disability, or AIDS- or HIV-status against (1) any employee of the City working with the Monitor in any of Monitor's operations within Orleans Parish or (2) any person seeking accommodations, advantages, facilities, privileges, services, or membership in all business, social, or other establishments or organizations operated by the Monitor. The Monitor agrees to comply with and abide by all applicable federal, state and local laws relating to non-discrimination, including, without limitation, Title VI of the Civil Rights Act of 1964, Section V of the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990.

C.      **Incorporation into Subcontracts.** The Monitor will incorporate the terms and conditions of this Article into all subcontracts, by reference or otherwise, and will require all members of the Monitoring Team to comply with those provisions.

D. **Termination for Failure to Comply**.  With advance approval from the Court, the City may terminate the Monitor's appointment for cause if Monitor is found by the Court to have failed to comply with any material obligation of VIII. A, B., or C.

## IX.   INDEPENDENT MONITOR.

A. **Independent Monitor Status.** The Monitor is an independent contractor appointed by the Court and shall not be deemed an employee, servant, agent, partner, or joint venture of the City and will not hold itself or any of its employees or agents to be an employee, partner, or agent of the City.

B. **City Status**.  The City is not and shall not become a client of the Monitor under the Consent Decree or pursuant to the provisions set forth herein, and will not hold itself or any of its employees or agents to be a client of the Monitor.

C. **DOJ Status**.  The DOJ is not and shall not become a client of the Monitor pursuant to the Consent Decree or the terms set forth herein, and will not hold itself or any of its employees or agents to be a client of the Monitor.

D. **Exclusion of Worker's Compensation Coverage.** The City will not be liable to the Monitor, as an independent contractor as defined in La. Rev. Stat. § 23:1021(7), for any benefits or coverage as provided by the Workmen's Compensation Law of the State of Louisiana. Under the provisions of La. Rev. Stat. § 23:1034, any person employed by the Monitor will not be considered an employee of the City for the purpose of Worker's Compensation coverage.

E. **Louisiana Statutory Employer.**  In all cases where Monitor's or its subcontractors' employees (defined to include Monitor's or its subcontractors' direct, borrowed, special, or statutory employees) (collectively, "Monitor's Employees") are covered by the Louisiana Worker's Compensation Act, La. R.S. 23:1021 *et seq*., City and Monitor agree that the Services, and all services and operations performed by Monitor and Monitor's Employees pursuant to the Consent Decree or as set forth herein are an integral part of and are essential to the ability of City to generate City's goods, products and services for purposes of La. R.S. 23:1061 (A)(1). Furthermore, City and Monitor agree that City is the principal or statutory employer of Monitor's Employees for purposes of La. R.S. 23:1061 (A)(3).  Irrespective of the City's status as the statutory employer or special employer (as defined in La. R.S. 23:1031(C)) of Monitor's Employees, Monitor shall remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from City.

F. **Exclusion of Unemployment Compensation Coverage.** The Monitor, as an independent contractor, is being hired by the City for hire as defined in La. Rev. Stat. § 23:1472(E) and neither the Monitor nor anyone employed by it will be considered an employee of the City for the purpose of unemployment compensation coverage, which coverage being hereby expressly waived and excluded by the Parties, because: (a) the Monitor has been and will be free from any control or direction by the City over the performance of the Services covered hereunder; (b) the Services to be performed by the Monitor are outside the normal course and scope of the City's usual business; and (c) the Monitor has been independently engaged in performing the Services required hereunder prior to August 9, 2013.

G. **Waiver of Benefits.** The Monitor, as an independent Monitor, will not receive from the City any sick and annual leave benefits, medical insurance, life insurance, paid vacations,

paid holidays, sick leave, pension, or Social Security for any Services rendered to the City hereunder.

## X.    NOTICE.

A.    **Notice Requirements.** Any notice or demand required hereunder or under the Consent Decree (which excludes any routine communications, which may be conducted by any means, including but not limited to telephone calls and e-mail) shall be in writing and delivered in person or by certified mail, return receipt requested, as follows:

| To the Monitor: | To the City: |
|---|---|
| Sheppard Mullin Richter & Hampton LLP<br>1300 I Street,N.W.<br>Washington, DC  20816<br>Attention:  Jonathan S. Aronie | City Attorney<br>City of New Orleans<br>1300 Perdido St. 5E03<br>New Orleans, LA 70112 |
| **To the DOJ:**<br>U.S. Department of Justice<br>Attn: Christy Lopez<br>601 D Street, NW Fifth Floor<br>Washington, DC 20004 | **To the Court:**<br>The Honorable Susie Morgan<br>U.S. District Court for the Eastern District of Louisiana<br>500 Poydras Street<br>New Orleans, LA 70130 |

All changes of address or recipient(s) must be provided to each Party in a writing that specifically identifies the Consent Decree.  Nothing contained in this Article shall be construed to restrict the transmission of routine communications between representatives of City and the Monitor.

B.    **Receipt of Notices.** Notices are effective upon receipt at the address specified above.  Any notice sent but not received by or delivered to the intended recipient because of any refusal or evasion of delivery shall be deemed effective on the date of the first attempted delivery.

## XI.    ADDITIONAL PROVISIONS.

A.    **Limitations of the Parties' Obligations.** Neither the City, DOJ, nor the Monitor has any obligations not explicitly set forth hereunder or any incorporated documents or expressly imposed by law.

B.    **Ownership Interest Disclosure.** The Monitor will provide a sworn affidavit listing all natural or artificial persons with an ownership interest in the Monitor and stating that no other person holds an ownership interest in the Monitor via a counter letter.  For the purposes of this provision, an "ownership interest" shall not be deemed to include ownership of stock in a publicly traded corporation or ownership of an interest in a mutual fund or trust that holds an interest in a publicly traded corporation. If the Monitor fails to submit the required affidavits, the  City  may, after thirty (30) days' written notice to the Monitor, take such action as may be necessary to cause the suspension of any further payments until such the required affidavits are submitted.  All documents submitted in compliance with this subsection shall be attached hereto as an Exhibit.

C.    **Prohibition of Financial Interest in Agreement**.  No elected official or employee of the City shall have a financial interest, direct or indirect, in the Consent Decree or hereunder. For purposes of this provision, a financial interest held by the spouse, child, or parent of any elected official or employee of the City shall be deemed to be a financial interest of such elected

official or employee of the City.  Any willful violation of this provision shall be grounds for termination by the City, subject to the approval of the Court.

      D.    **Prohibition on Political Activity.** None of the funds, materials, property, or services provided directly or indirectly under the terms hereof shall be used for any partisan political activity, or to further the election or defeat of any candidate for public office.

      E.    **Conflicting Employment.**  To ensure that the Monitor's efforts do not conflict with the City's interests, and in recognition of the Monitor's obligations to the City, the Monitor will decline any offer of other employment if the Monitor concludes that its performance hereunder is likely to be adversely affected by the acceptance of the other employment.  The Monitor acknowledges that it must comply with paragraph 464 of the Consent Decree.

      F.    **Conflicts**.  Nothing in this Agreement shall be deemed to preclude the attorneys of Sheppard Mullin Richter & Hampton LLP from taking on any matter adverse to the U.S. Department of Justice, or any other Government entity (other than the City of New Orleans), so long as such matter is not materially related to the work performed by the Monitor pursuant to the Consent Decree and herein.

      G.    **Non-Exclusivity.** The Monitor's agreement to serve is non-exclusive and the Monitor may provide services to other clients, subject only to the limitations set forth in paragraph XI.F hereunder.

      H.    **Assignment.** The Monitor's interest hereunder is not assignable or transferable without prior written consent and approval from the Court.

      I.    **Terms Binding.** The terms and conditions hereunder are binding on any heirs, successors, transferees, and assigns.

      J.    **Jurisdiction.** The Parties consent and yield to the exclusive jurisdiction of the Court, and formally waive any pleas or exceptions of jurisdiction on account of the residence of the Monitor.  The City and the Monitor agree that any dispute arising hereunder or under the Consent Decree shall be decided by the Court either in the Case or as a related matter consolidated with the Case.

      K.    **Exclusive Venue.**  In the event of a dispute over the meaning, interpretation or application hereof, it shall be construed fairly and reasonably and neither more strongly for nor against either Party.  The Parties agree and stipulate that the exclusive venue for any dispute arising out of or in connection herewith including, without limitation, the validity, interpretation, and performance hereunder, shall be the Court and, if necessary, the corresponding appellate courts.

      L.    **Choice of Law**.  The Consent Decree and all obligations hereunder will be construed and enforced in accordance with the law the Court determines to be applicable and appropriate in accordance with federal choice of law standards.

      M.    **Construction of Agreement.** Neither Party will be deemed to have drafted these provisions.  They have been reviewed by both Parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the Parties. No term hereunder shall be construed or resolved in favor of or against the City or the Monitor on the basis of which Party drafted the uncertain or ambiguous language. The headings and captions are provided for convenience only and are not intended to have effect

in the construction or interpretation hereof. Where appropriate, the singular includes the plural and neutral words and words of any gender shall include the neutral and other gender.

N.   **Severability.** Should the Court find any provision h e r e o f  to be unenforceable as written, the unenforceable provision shall be reformed, if possible, so that it is enforceable to the maximum extent permitted by law or, if reformation is not possible, the unenforceable provision shall be fully severable and the remaining provisions hereof remain in full force and effect and shall be construed and enforced as if the unenforceable provision was never a part hereof.

O.   **Ownership.** Monitor acknowledges and agrees that all written materials, documents, data, data base, data files, reports, records, and other information provided by the City or obtained by the Monitor from the City pursuant to the terms hereof or the Consent Decree shall remain property of the City.  Monitor agrees that, at the conclusion or termination hereof, the Monitor shall, at the request of the City, promptly return any and all original written materials, documents, data, data base, data files, reports, records, and other information obtained by the Monitor from the City during the course of work hereunder to the City.  Monitor shall be entitled to maintain a copy of all materials, documents, data, data base, data files, reports, records, and other information it received from the City for its files subject to Section I.H.1 hereof.

1.   It is understood and agreed that the City  and DOJ shall have the right to use, distribute, copy, disseminate, or otherwise utilize, without restriction or cost, all reports, documents, and information originated and prepared by the Monitor and submitted to the City, Court, or DOJ, pursuant hereto. The Monitor warrants and represents that it has full power and authority to grant the rights set forth herein with respect to all reports, documents, and information originated and prepared by the Monitor and submitted to the City, DOJ, or Court, without the consent of any person or entity and that the City's or DOJ's use, distribution, or dissemination will not in any manner constitute an infringement or other violation of any copyright, trademark, patent, or any confidential information of a third party.

2.   It is understood and agreed that all compliance analyses, studies, notes, information, raw review data, and forms generated by the Monitor as a result hereof or the Consent Decree, and not submitted to the City, DOJ, or Court shall remain the property of the Monitor. However, such compliance analyses, studies, notes, information, raw review data, and forms, or copies thereof, shall be provided by the Monitor to any subsequent consultant engaged as a Monitor by the City, or the City and DOJ, in the event Monitor's services are terminated prior to the termination of the Consent Decree. Moreover, such documents and information shall be maintained in a confidential manner for the duration of the Consent Decree or three years after termination of the Monitor, whichever is longer.

3.   It is understood and agreed that, in accordance with Paragraph 465 of the Consent Decree, none of the records prepared or maintained by the Monitor in connection herewith and the Consent Decree are public records and that such records shall not be subject to public inspection, including but not limited to all compliance analyses, studies, notes, information, raw review data, and forms.

P.   **Criminal History Information**. Monitor may, in the course of performing the Services hereunder, gain access to criminal history information. Accordingly, Monitor shall

comply with all applicable state and federal law with respect to access to and confidentiality of such information.

Q.    **Survival of Certain Provisions.** Notwithstanding the suspension or termination hereof or any Force Majeure event, the Parties shall continue to be bound by the provisions hereof that reasonably require some action or forbearance after such termination, including but not limited to all representations and warranties and all obligations hereunder or the Consent Decree concerning record retention, inspections, audits, ownership, confidentiality, compliance with state and federal laws regarding confidentiality of criminal history information, indemnification, payment, remedies, jurisdiction and choice of law. All such provisions shall survive the expiration, suspension, or termination hereof and continue in full force and effect.

R.    **No Third-Party Beneficiaries.** This relationship is entered into for the exclusive benefit of the City and the Monitor and the Parties expressly disclaim any intent to benefit anyone not a party hereto. This relationship creates no rights, whether under a third party beneficiary theory, stipulation pour autri, or otherwise, in any person or entity other than the City, DOJ, or the Monitor.

1.    **Amendment**. No amendment of or modification hereto shall be valid unless and until executed in writing by the duly authorized representatives of the City, DOJ, and the Monitor, and approved by the Court.

2.    **Non-Waiver.** The failure of either Party to insist upon strict compliance with any provision hereof, to enforce any right or to seek any remedy upon discovery of any default or breach of the other Party at such time as the initial discovery of the existence of such noncompliance, right, default or breach shall not affect or constitute a waiver of either Party's right to insist upon such compliance, exercise such right or seek such remedy with respect to that default or breach or any prior contemporaneous or subsequent default or breach.

3.    **Entire Agreement.** These terms, including all exhibits and incorporated documents, such as the RFP, the Proposal and the Consent Decree, constitute the final and complete agreement and understanding between the Parties. All prior and contemporaneous agreements and understandings, except as otherwise noted herein, whether oral or written, are superseded and are without effect to vary or alter any terms or conditions hereof.

4.    **Order of Documents**. In the event of any conflict between the provisions of the Consent Decree and the provisions set forth herein, including the exhibits attached hereto and incorporated documents, the provisions of the Consent Decree shall prevail.

5.    **Discrepancies**. If any discrepancy exists between the provisions hereof and the provisions of the Consent Decree, the provisions of the Consent Decree, as determined by the Court, shall prevail.

6.    **Force Majeure.** A delay in or failure to perform by a Party shall not constitute a default that exposes it to liability for breach if and to the extent the delay or failure to perform is caused by an occurrence beyond the reasonable control of the Party, including, but not limited to, an act of God or the public enemy; expropriation or confiscation of facilities; compliance with any order or requirement of any governmental authority; act of war, rebellion or sabotage or damage resulting therefrom; fire, flood,

hurricane, explosion or accident; riots or strikes or other concerted acts of workmen, whether direct or indirect; inability after diligent effort to obtain necessary licenses or permits; or any other cause, whether or not of the same class or kind as those specifically above named, which is not within the control of the Party and which, by the exercise of reasonable diligence, the Party is unable to prevent or remedy.

### Exhibit A

### Tables of Hourly Rates

| Category | Current Personnel | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|
| Primary Monitor | Aronie | $425.00 | $446.25 | $468.56 | $491.99 |
| Deputy Monitor | Douglass | $425.00 | $446.25 | $468.56 | $491.99 |
| Sheppard Mullin Senior Staff | Morris, Kennedy, and other Sheppard Mullin partners as approved | $425.00 | $446.25 | $468.56 | $491.99 |
| Sheppard Mullin Junior Staff | Roberts and other Sheppard Mullin associates as approved | $350.00 | $367.50 | $385.88 | $405.17 |
| Sheppard Mullin Paralegal Staff | Paralegals[1] | $100.00 | $105.00 | $110.25 | $115.76 |
| Deputy Monitor | Nowicki | $250.00 | $262.50 | $275.63 | $289.41 |
| Police Practices Experts | Bowman, McNeilly, Viverette, del Carmen | $200.00 | $210.00 | $220.50 | $231.53 |
| Academic Experts | Alpert | $250.00 | $262.50 | $275.63 | $289.41 |
| Local Counsel | TBD | $250.00[2] | $250.00 | $250.00 | $250.00 |
| Statistics Experts | TBD | $250.00 | $262.50 | $275.63 | $289.41 |
| Community Outreach | Dangerfield[3] | $100.00 | $105.00 | $110.25 | $115.76 |

---

[1]    Monitor shall not bill the City for secretarial or other administrative support services provided by Sheppard Mullin employees.

[2]    The $250.00 rate for Local Counsel is a maximum amount.  In the event that Local Counsel bills at an hourly rate below $250.00, the actual hourly rate will be charged to the City.

[3]    Ms. Dangerfield's rate is a blended rate.

**Exhibit B**

**<u>Initial Members Of Monitoring Team</u>**

Jonathan Aronie, the "Primary Monitor"
David Douglass, a "Deputy Monitor"
Peter Morris, Sheppard Mullin Senior Staff
Tracey Kennedy, Sheppard Mullin Senior Staff
Dennis Nowicki, a "Deputy Monitor"
Theron Bowman through Dr. Theron L. Bowman, Inc.
Robert McNeilly through The McNeilly Group, LLC
Mary Ann Viverette
Alejandro del Carmen through Del Carmen Consulting, LLC
Geoffrey Alpert
Other Sheppard Mullin personnel as approved
Judith Williams Dangerfield

**Exhibit C**

**Consent Decree Monitor Billing Guidelines**

The City views every bill from the Monitor as a certification by the firm that the services and disbursements reflected on the bill are, to the best of Monitor's judgment and ability, reasonable for the proper provision of the Consent Decree services.  Time and disbursements that are inconsistent with the scope of the Consent Decree should not be billed.  The Monitor should refrain from billing non-billable time or expenses as outlined in these Guidelines.

1.     The City will pay for actual services rendered in accordance with the terms of the Consent Decree.

2.     Administrative tasks will not be paid.  Support services (secretaries, word processors, proofreaders, managing clerks, information system technicians, librarians, computer operators, etc.), including overtime, are part of the Monitor's normal overhead and will not be reimbursed.

3.     Time spent preparing, discussing, or supporting invoices will not be reimbursed.

4.     The City expects staffing to be efficient and consistent with Monitor's obligations under the Consent Decree.  Attorneys should not be performing work more appropriately assigned to a paralegal.  Similarly, paralegals should not be assigned secretarial or other clerical tasks such as photocopying, filing, delivering materials, or arranging travel.

5.     Routine file maintenance is Monitor's responsibility and should not be billed to the City.

6.     The City expects the Monitor to exercise care to avoid overstaffing.

7.     The Monitor should review each invoice to ensure its accuracy and that it is written in plain English.

8.     The City will not reimburse the Monitor for routine training time, including time spent at seminars, unless specifically approved in advance.

9.     The City will not ordinarily pay for summer associate time unless such time has been approved in advance.

10.    The City will reimburse the Monitor for reasonable, documented, and itemized expenses incurred within the scope of the Consent Decree.  The Monitor's invoices should reflect the actual cost of expenses, and should not include any markup.

11.    The City discourages the use of express mail and courier services for both cost and environmental reasons.  When an alternative electronic means for exchange of documents (e.g., e-mail) is reasonably available and is consistent with the nature of the information being exchanged, the Monitor shall use such alternative means.

12.    If the Monitor has a volume discount arrangement with a vendor, the City should be charged on that basis.

13.    Charges for time spent preparing express mail packages are part of the Monitor's overhead and are not reimbursable.

14. Fees charged by electronic or other research services, e.g. Lexis Nexus and West Law charges and fees, library fees, or online connection charges, are considered general law firm overhead and are not reimbursable by or chargeable to the City.

15. The City will not pay for customary office supplies.

16. The City will not pay for long-distance charges or other telephone charges for phone calls made at your office or place of business. The City will pay for actual time spent on the phone conducting the Monitor's business.

17. The City will reimburse the Monitor for reasonable travel expenses, including airfare, hotel, meals, rental car or other transportation, etc.  The Monitor shall attempt to secure discounted airfare, car rental rates, and hotel rates (including Government rates) where reasonably available and consistent with the efficient performance of the Monitor's duties.  The Monitor will reserve standard hotel rooms (*e.g.*, non-suites) at non-luxury hotels such as Sheraton, Hilton, Hyatt, etc.  The Monitor shall invoice the City for meals at actual cost, but will cap meal allowances at $71 per person / per day while onsite in New Orleans.  Meal expenses above that cap will be paid by the Monitor and not submitted for reimbursement.   The monitor shall not mark up travel expenses.

18. The following items shall not be reimbursable by the City unless expressly approved in advance:

- Upgrades for airfare or hotel accommodations unless the airline or hotel is unable to provide the standard fares or rates at the time necessary to carry out the purpose of the travel
- Companion and/or spouse fares
- Honor bar
- Movies, fitness center, and other luxury items unrelated to performance of the monitoring tasks
- Hotel laundry unless the individual is in New Orleans performing services hereunder for seven (7) or more consecutive days
- Luggage fees for more than one checked bag unless the individual is in New Orleans performing services hereunder for six (6) or more consecutive days
- Ground transportation unrelated to the Services
- Flight insurance
- Additional travel expenses resulting from changes in travel plans caused by matters unrelated to the monitoring tasks (*e.g.,* additional costs resulting from travel changes caused by the needs of other clients of the Monitor)
- Expenses without receipts or similar adequate documentation

**Exhibit D**

**Summary of Consent Decree Services**

**Scope of Work:** Descriptions herein of the Monitor's duties are illustrative and non-exclusive. The fullest description of the Monitor's duties and responsibilities under the Consent Decree is in the Consent Decree itself, and Respondents should closely review the Consent Decree and ensure that their Proposals are responsive to it.  The Consent Decree is subject to court approval and may be modified by the Court from time to time.  The Monitor will be required to modify its activities as required pursuant to any such modifications.  Generally, the Consent Decree Court Monitor shall be responsible for independently and objectively assessing and reporting on whether the requirements of the Consent Decree are being implemented, and whether this implementation is resulting in the constitutional treatment of individuals and increased community trust of NOPD. The Consent Decree Monitor shall report directly to the Court and shall prepare reports to be distributed publicly.  The Monitor will be expected to serve at least four years, with extensions as necessary to fulfill the requirements of the Consent Decree.

Consistent with the Consent Decree, the Monitor may be removed during the course of the Consent Decree by Court order, either pursuant to a motion for removal by either Party or both Parties, or by a Court-initiated order of removal.

As set out in the Consent Decree, the Consent Decree Court Monitor's duties include the following:

• Monitor and evaluate NOPD's implementation of the Consent Decree (¶ 444);

• Regularly report to the Court on NOPD's progress implementing the Consent Decree and any obstacles to implementation (¶ 457);

• Develop and carry out a plan to conduct compliance audits and reviews to ensure the NOPD's compliance with the requirements and purpose of the Consent Decree (¶¶ 450-453);

• Conduct Outcome Assessments (¶ 448);

• Develop reliable methodologies for completing the audits and reviews necessary to assess compliance with provisions hereof and to conduct Outcome Assessments (¶¶ 450-453);

• Review and recommend modifications to Outcome Assessment measurements (¶ 451);

• Review and comment on policies developed pursuant hereto and work with Parties to resolve any disagreements regarding policy development (¶¶ 21-23);

• Review training materials (¶¶ 21-23, 250, 257);

• Review use of force and misconduct investigations (¶ 454);

• Conduct a comprehensive reassessment in two years (¶ 456);

• Recommend strategies to improve NOPD's implementation of the Consent Decree (¶ 455);

• Provide or facilitate the provision of technical assistance to NOPD (¶ 455);

• Issue regular public reports on NOPD's implementation of the Consent Decree (¶¶ 457-458);

• Regularly communicate with the City, NOPD, and DOJ as necessary to facilitate effective implementation hereof and regarding NOPD's progress implementing the Consent Decree and any obstacles to implementation (¶ 460);

• Receive from and provide information to the New Orleans community concerning the Consent Decree (¶¶ 231, 461);

• Coordinate and confer with the Public Integrity Bureau, the Independent Police Monitor, the Office of the Inspector General ("OIG"), and other civilian oversight entities to facilitate the efficient and effective use of oversight resources (¶ 443);

• Maintain all documents related to this project in a confidential manner to the extent required by the Consent Decree (¶ 476);

• Testify in litigation or proceedings as provided by the Consent Decree (¶ 463);

• Make public statements only as permitted by the terms of the Consent Decree (462); and

• Maintain the highest ethical standards (¶ 477).

The substantive requirements of the Consent Decree are grouped into the following general areas:

• Use of force;

• Stops, searches and arrests;

• Discriminatory policing (Race, Ethnicity, National Origin, Gender, LGBT Status);

• Recruitment;

• Training (In-Service and Recruit);

• Supervision (including systems for early intervention);

• Secondary employment (currently known as "Paid Details");

• Performance evaluations and promotions;

• Misconduct complaint intake and investigations;

• Community Engagement;

• Officer assistance and support services;

• Transparency and Oversight;

• Interrogation practices; and

• Photographic Lineups.