*Lakeview Crime Prevention District*
P.O. Box 24378
New Orleans, LA 70184

BY COURIER
Hon. Susie Morgan
Section E
United States District Court
Eastern District of Louisiana
500 Poydras St.
Room C508
New Orleans, LA 70130

September 16, 2013

Re: Lakeview Crime Prevention District

Dear Judge Morgan:

On behalf of and as Chairman of the Lakeview Crime Prevention District ("LCPD"), I write to express LCPD's concerns about the effect of the Consent Decree entered into by the City of New Orleans and, more specifically, the effect or potential effect that the Consent Decree has on the LCPD and its Cooperative Endeavor Agreement with the City of New Orleans. Simply put, for the reasons set forth below, the LCPD believes that the Consent Decree should not affect the Cooperative Endeavor Agreement between the LCPD and the City.

In view of these concerns, the LCPD also requests that you allow the LCPD to attend and/or participate in any status conference where the Consent Decree and its possible effects on the Cooperative Endeavor Agreement between the LCPD and the City are discussed and/or that you allow the LCPD to participate in any hearing, e.g., fairness hearing to discuss the effect of the Consent Decree on the Cooperative Endeavor Agreement.

First, a historic overview is necessary. The LCPD was created by the Louisiana Legislature in 1997 as a political subdivision of the State of Louisiana. It is not a private entity. Its purpose is to "aid in crime prevention and to add to the security of district residents by providing for an increase in the presence of law enforcement personnel in the district." La. R.S. 33:9091.1.C. It is governed by an eleven-member board of commissioners, which include the president of the Lakeview Civic Improvement Association (a non-profit corporation, hereinafter "LCIA") ex-officio and others appointed by the LCIA, the member or members of the Louisiana House of Representatives and Senate who represent the area in the LCPD, the Mayor of the City of New Orleans, and the City Council member or members who represent the area in the LCPD. La. R.S. 33:9091.1.D.

The LCPD is funded by a fee assessed on parcels of property in the geographic area of the district, which is assessed through the property taxes assessed by the City of New Orleans and for which the City of New Orleans is paid a one-percent fee on all amounts collected, as set

forth in the enabling legislation.

Second, and importantly, no fees are assessed unless they are approved by a majority of the voters in the district. This has occurred, consistently, since the LCPD's creation. It should be emphasized, once again, that these fees are collected by the LPCD as a political subdivision of the State of Louisiana, not as a private entity of any type.

Third, I would venture to say – having been a member of the LCPD board of commissioners since its inception – that one of the reasons the voters have consistently approved the parcel fees for the operation of the LCPD is that, after the LCPD's creation, its board decided that the best way to achieve the LCPD's purpose of "aid[ing] in crime prevention" and "add[ing] to the security of district residents" was to enter into an agreement with the City of New Orleans whereby the City would provide police officers – who were to be paid overtime, not for "paid details."

These agreements have been entered into consistently between the LCPD and the City since the LCPD's establishment. A copy of the most recent agreement entered into with the City of New Orleans is attached. As you will see, it is entitled "Cooperative Endeavor Agreement Between the City of New Orleans and Lakeview Crime Prevention District." The fact that this is a cooperative-endeavor agreement is important because that is the avenue, in accord with the Louisiana Constitution, that two public entities can agree to "contract," for lack of a better word.

The agreement provides that the New Orleans Police Department will provide a full-time LCPD Coordinator, who is an NOPD employee and officer of at least the rank of Sergeant and who is selected by ***mutual agreement*** of the NOPD and the LCPD. In other words, NOPD does not foist its selection of a coordinator on the LCPD. The NOPD and the LCPD work collaboratively to select the coordinator. The LCPD Coordinator schedules officers on overtime with the purpose to provide supplemental and enhanced police services over and above that provided by the Third District of the NOPD, in accord with the nature of the Louisiana Legislature's establishment of the LCPD. The LCPD pays for the services of both the Coordinator and the officers, as indicated. Further, the LCPD Coordinator works with the NOPD with the clear understanding that the needs of the NOPD as to officers take precedence. Further, no NOPD officer is allowed to work LCPD patrols beyond the overtime limits placed on NOPD officers by the City/NOPD, and all officers of the NOPD are eligible to work overtime in LCPD patrols.

In addition, Section VIII of this mutual agreement makes it clear that officers are employees and agents of the City and not LCPD. Section II provides a payment schedule that states LCPD pays the City and not the officers or coordinator directly. The City then pays the officers patrolling the LCPD area. The definition of paid details in the NOPD Ops. Man. Ch. 22.8 makes it clear that details are not paid by the City. It defines a detail as "off-duty employment for compensation . . . by another individual, business, establishment or organization where the employee is performing the duties of a police officer...." This language is quoted in the DOJ report (p. 70) in the proceedings before the court, attached as a document to the first document in the record. Accordingly, LCPD should not be considered an "employer" under the consent decree (para. 350). Clearly, the officers who patrol the LCPD are not working "off

duty," "paid details" and "secondary employment," as those terms are contemplated and/or used in the Consent Decree but receive overtime pay through the City of New Orleans and are not paid directly by the LCPD.

Fourth, since the inception of LCPD patrols, crime in the LCPD has been reduced dramatically. In 1998 prior to the inception of the LPCD's patrols, there were 626 UCR total crimes reported in the geographical area of the LCPD, including 40 "persons crimes" and 586 property crimes. In 2012, with the LCPD patrols, those figures dropped significantly to only 275 UCR crimes, with only 9 "persons" crimes and 266 property crimes. As of June 26, 2013, the figures were only 122 total UCR crimes, with 4 "persons" crimes and 122 property crimes. Needless to say, the LCPD believes it has had an enormous effect on lowering crimes in the LCPD through its use of NOPD patrols through its Cooperative Endeavor Agreements with the City.

Fifth, the Consent Decree contains a section (XVI) entitled "Secondary Employment System" and distinctly requires the City to completely "restructure . . . its Paid Detail system to ensure that officers' and other NOPD employees' off-duty secondary employment does not compromise or interfere with the integrity and effectiveness of NOPD employees' primary work as sworn police officers. . . ." Further, one of the concerns of the Consent Decree, per its requirements, is the ability of the City to develop an auditable system of payment to NOPD officer and employees who work "off duty," Paid Details. (Consent Decree, Section 338, p. 865) Section 351, p. 88) as well as maintenance of a tracking system of where and when which officers work. (Consent Decree, Section 347, p. 87). Further, such "second employment" as contemplated by the Consent Decree is to be coordinated by the Secondary Employment Coordinating Office, although even that office can grant certain exemptions (Consent Decree, Section XVI, subsections A., B., D. and F.)

Sixth, by comparing the purpose of the Consent Decree as to "Secondary Employment"/"Paid Details" with the nature and purpose of the LCPD and its operations through its agreement with the City of New Orleans, it is clear that per the terms of the LCPD/City contract, any issues that arise and/or are of concern in the Consent Decree do not exist in the interactive relationship between the LCPD and the City. As a result, and as said above, the LCPD/City Cooperative Endeavor Ageement should not be affected by the Consent Decree.

More specifically, because LCPD officers are paid overtime, there is an auditable system of payment. Further, the City has a database of which officers work overtime for the LCPD, and the amount of that overtime and nature of their LCPD patrols is controlled and supervised by the LCPD coordinator, who is, himself an NOPD employee and officer of at least the rank of Sergeant, and, as stated, LPCD patrols are open to all NOPD officers. Further, the LCPD Coordinator, because he knows and is bound by NOPD restrictions on overtime that can be worked, only schedules officers up to but never over the overtime limits.

In sum, it is clear that NOPD officers on LCPD patrols are not working "off duty," "secondary employment" and "paid details" where payments come from non-governmental third parties, which is what is contemplated by the Consent Decree. Additionally, any concerns

inherent in the Consent Decree are not concerns in regard to the LCPD because of the nature, purpose, and provisions of the Cooperative Endeavor agreement between the LCPD and the City.

Therefore, for all of these reasons, on behalf of the LCPD, the LCPD believes that it does not fall within the strictures of the Consent Decree and your office. As a result, the LCPD requests that it be able to attend any status conferences held by the Court that discuss the effects of the Consent Decree on the LPCD-City Cooperative Endeavor Agreement, including but not limited to the scope of the Office of Secondary Employment's role in regard to that agreement. Additionally, the LCPD requests that the Court set a fairness hearing or other type of hearing so that the LCPD may express its concerns directly to the Court.

Respectfully,

Henry F. "Freddy" Yoder, Jr.

Enc.

c: (via e-mail only)(w/enc.)
Sharon R. Williams, Esq. (shrwilliams@nola.gov)
Ralph Capitelli, Esq. (rc@capitelliandwicker.com)
Emily A. Gunston, Esq. (emily.gunston@usdoj.gov)
Christy E. Lopez, Esq. (christy.lopez@usdoj.gov)
Jude Volek, Esq. (jude.volek@usdoj.gov)
Stephen C. Parker, Esq. (steve.parker@usdoj.gov)
David Douglass, Esq. (ddouglas@sheppardmullin.com)
Jonathan Aronie, Esq. (jaronie@sheppardmullin.com)
Hon. Mitchell J. Landrieu
City Council, City of New Orleans
Commissioners, Lakeview Crime Prevent District

K10-742

**COOPERATIVE ENDEAVOR AGREEMENT**
**BETWEEN**
**THE CITY OF NEW ORLEANS**
**AND**
**LAKEVIEW CRIME PREVENTION DISTRICT**

THIS AGREEMENT, made and entered into this 1st day of January, 2010, by and between the City of New Orleans, hereinafter referred to as the "City" and herein represented by Mitchell J. Landrieu, Mayor, and the Lakeview Crime Prevention District, hereinafter referred to as the "LCPD" and herein represented by Charles P. Ciaccio, President.

WHEREAS, the LCPD is a public body created by Acts of the Louisiana Legislature, 1997, No. 1132, La. R.S. 33:2740.35 et. seq., to aid in crime prevention and to add to the security of district residents by providing for an increase in the presence of law enforcement personnel in the LCPD.

WHEREAS, said Act specifies that the LCPD shall have the power to enter into contracts with individuals or entities, private or public, for the provision of security patrols in the LCPD; and

WHEREAS, said Act further specifies that the additional law enforcement personnel and their services provided for through the fees to be generated by the LCPD, shall be supplemental to and not in lieu of personnel and services provided in the LCPD by the New Orleans Police Department, hereinafter referred to as the "NOPD"; and,

WHEREAS, since 1998, the City of New Orleans has been the beneficiary of increased police presence and service in the LCPD, which, in turn, has resulted in increased arrests, increased investigations, increased traffic enforcement (with an increase in fines paid to the City of New Orleans, and experienced double digit reductions in UCR crimes in the LCPD over the

years (Uniform Crime Report); additionally, the City of New Orleans has received 1% of the amount collected on behalf of the LCPD, or approximately $7,000.00 in the past calendar year; and

WHEREAS, pursuant to the authority contained in Article 7, Section 14 (C) of the Louisiana Constitution of 1974, and statutory authority supplemental thereto, the State of Louisiana and its political subdivisions, including City, may enter into cooperative endeavors with each other, or with any public or private corporation or individual; and further, pursuant to Section 9-314 of the Home Rule Charter of the City of New Orleans, City may enter into cooperative endeavors with any public or private association, corporation or individual for activities in support of economic growth and other public purposes; and

NOW, THEREFORE, the parties agree as follows:

**SECTION I**

**GENERAL PURPOSE OF SUPPLEMENTAL ENHANCED POLICE SERVICES FOR THE LAKEVIEW CRIME PREVENTION DISTRICT**

A) Underlying Police Services:

The City agrees that, in addition to all of the obligations stated herein, it shall at a minimum continue to provide what is referred to as the "underlying police services". The "underlying police services" is the number of police assigned to the geographical boundaries of the Lakeview Crime Prevention District, as set forth in Section VI herein, exclusive of the officers assigned under this agreement (i.e. level of Third District police personnel absent the LCPD). The LCPD, and the LCPD Full Time Coordinator shall have the authority to review and copy, without cost, any and all documentation generated by the City or the NOPD, deemed necessary by the LCPD, the LCPD Full Time Coordinator to establish the base line of NOPD

underlying police services.

B) Supplement and Enhancement of Underlying Police Services, "LCPD Services":

The purpose of this Agreement is to supplement and enhance the underlying police services, as defined above, by the deployment by the City of additional patrol cars within the LCPD, as deemed appropriate by the LCPD Full Time Coordinator "Commander", for up to 24 hours a day, 7 days per week including holidays, hereinafter referred to as "LCPD services". The LCPD Full Time Coordinator "Commander" will strive to maximize the number of patrolmen and to minimize the number of ranking officers who are scheduled for any given shift, in order to achieve the most economical provision of security services to the LCPD area. The City and the LCPD shall agree upon the selection of the LCPD Full Time Coordinator, who shall be an active member of the NOPD and whose duties shall be as set forth below. If the LCPD Full Time Coordinator ceases to serve for any reason including retirement, resignation, or discharge by the City or the LCPD, a successor LCPD Full Time Coordinator shall be selected by mutual agreement between the City and LCPD, within twenty (20) days of said vacancy.

**SECTION II**

**LCPD FULL TIME COORDINATOR**

A. Powers and Duties:

The powers and duties of the LCPD Full Time Coordinator, who shall be of the rank of at least Sergeant, shall consist of the following:

1. To schedule those officers to work for the LCPD;

2. To supervise those officers and rank when working for the LCPD;

3. To develop any policies and procedures he feels are necessary for the improvement of the services provided to the LCPD;

4. To be accessible by phone number or pager number to the President of the Board of Commissioners of the LCPD.

5. To attend all regular and special meetings called by the Board of Commissioners of the LCPD.

6. To provide to the Commissioners of the LCPD the documentation as set forth in Section VIII and any other information that the LCPD is entitled to by operation of law, and/or pursuant to this Agreement.

B. <u>Compensation</u>

The LCPD Full Time Coordinator shall, at all times, be an employee of and officer of the rank of at least Sergeant on the New Orleans Police Department, who shall be assigned full time as the coordinator of the LCPD. The LCPD shall be responsible for reimbursing the City for the salary of the LCPD Full Time Coordinator, as set forth in Section III (B).

## SECTION III

## PAYMENT SCHEDULE

A. <u>LCPD Officers and Rank:</u>

The LCPD will make available for payment to the City the costs for providing the LCPD service, billed at the end of each city pay cycle, for the costs associated for providing the service during that pay cycle, based on a unit cost equal to the actual hourly rate of pay incurred (i.e. straight time or overtime), multiplied by the number of hours worked by each patrolman or ranking officer for the LCPD for the billing period at issue.

B. <u>LCPD Full Time Coordinator :</u>

The LCPD will make available for payment to the City, reimbursement for the salary of the LCPD Full Time Coordinator, who shall be of the rank of at least Sergeant, billed at the end of each city pay cycle (14 days) for the billing period at issue.

## SECTION IV

## OPERATIONAL SPECIFICS OF LCPD

A) Deployment - Those officers assigned to the LCPD under this Agreement shall only patrol the geographic area of the LCPD as defined below.

The district shall be comprised of the area of the:

> Parish of Orleans lying within the following perimeter: commencing at the corner of City Park Avenue and Orleans Avenue and proceeding in a westerly direction along City Park Avenue to the Pontchartrain Expressway, thence in a northerly direction to the intersection of Veterans Memorial Boulevard, thence in a westerly direction to the 17th Street Canal, thence in a northerly direction to Lake Pontchartrain, thence in an easterly direction to West End Boulevard, thence in a southerly direction to Robert E. Lee Boulevard, thence in an easterly direction to Orleans Avenue, and thence in a southerly direction to City Park Avenue and the point of beginning.

B) Personnel Costs - The LCPD's payment for enhanced LCPD services under this Agreement described in Section V, shall cover only straight time payments and over-time payments of the officers and rank when providing LCPD services, and shall exclude all other labor costs, labor burdens, or benefits of said personnel.

C) Equipment - The LCPD shall purchase three (3) vehicles for the exclusive use in the LCPD. The LCPD shall title the vehicles to the City upon purchase of said vehicles. Said vehicles are to be decaled by the City with NOPD insignia. Additionally, said vehicles are to bear LCPD insignia, which are to be designed and furnished by the LCPD to the City for decaling. The LCPD may, at its own expense, provide cell phones and/or MDT's (Mobile Data Terminals) for installation in the LCPD vehicles. The City shall provide replacement vehicles,

immediately, during the time that the aforesaid vehicles are out of service. The City shall provide exclusive use to the LCPD of any other vehicles purchased by the LCPD, wherein the title to same has been placed in the name of the City. The LCPD shall replace, at its cost, each LCPD patrol vehicle upon the expiration of the useful life of said vehicle.

## SECTION V

## UNDERLYING POLICE SERVICES

A) General Provision - Under the terms of this Agreement, it is understood that the LCPD services funded by the LCPD are special and in addition to all underlying police services which the City is obligated to furnish or provide absent the funding by the Lakeview Crime Prevention District, as set forth in the miscellaneous provision contained in Act 1132 of the 1997 Legislature. The legislative act specifies that "it is the purpose and intent of this Section that the additional law enforcement personnel and their services provided for through the fees authorized herein shall be supplemental to and not in lieu of personnel and services provided in the [LCPD] District by the New Orleans Police Department."

B) Definition - The "underlying" level of services the City is obligated to provide, as set forth in Section I(A) above, is defined for purposes of this Agreement as the number of police assigned to the geographical boundaries of the Lakeview Crime Prevention District, as set forth in Section IV herein, exclusive of the officers assigned under this agreement, and is also referred to herein as "underlying police services" (i.e. level of Third District police personnel absent the LCPD). Any

reduction by the City in underlying police services below this base-level figure set forth in Section I (A), herein above shall be in violation of this Agreement and grounds for termination hereof. In the event of any such reduction, the LCPD shall give written notice to the Chief Administrative Officer of the City and the Superintendent of the New Orleans Police Department that a reduction of underlying police services has come to its attention, and the City shall have ten (10) days from receipt of notice to correct the reduction and to explain to the satisfaction of the District the reason therefore, failing either of which, and notwithstanding the provisions of Section X below, the LCPD may terminate this Agreement effective on the date of the reduction by giving written notice to the City to that effect and shall have the right to recover any and all amounts paid to the City but yet unearned. as of the date of such reduction.

C) Function of City and LCPD Police - It is further understood, under the terms of this Agreement, that the police assigned within the boundaries of the Lakeview Crime Prevention District as a part of their normal Third District assignment, referred to herein above as "underlying police services" (not those on LCPD assignment), will handle routine police functions such as responses to service calls, routine patrols, investigations of complaints, etc., all traffic work, special events coverage, undercover/stakeout work, and any follow-up investigations, including but not limited to investigations involving vice and homicides. **Those officers, while on assignment to the LCPD, shall not be given routine dispatch calls for service in the Third District, nor shall they be dispatched**

**<u>outside of the LCPD boundaries, except upon notification and approval by the LCPD Full Time Coordinator, the LCPD Liaison, and/or the LCPD Supervisor on duty.</u>**

The dispatch of officers for routine calls for service in the Third District, or the dispatch of officers outside of the LCPD boundaries, while said officers are on assignment to the LCPD, shall be a violation of this Agreement and grounds for termination hereof. In the event of any such violation, the LCPD shall give written notice to the Chief Administrative Officer of the City and the Superintendent of the New Orleans Police Department that a violation has come to its attention, and the City shall have ten (10) days from receipt of notice to correct the violation and to explain to the satisfaction of the District the reason therefore, failing either of which, and notwithstanding the provisions of Section XI below, the LCPD may terminate this Agreement effective on the date of the violation by giving written notice to the City to that effect and shall have the right to recover any and all amounts paid to the City but unearned as of the date of the violation.

**<u>SECTION VI</u>**

**<u>MONITORING</u>**

A) The LCPD shall be provided weekly with computer print-outs of Trip Systems and Unit History for the time worked by each of the LCPD officers for that week, free of charge.

B) The LCPD shall be provided weekly with copies of the Trip Sheets of all

LCPD officers for that week, free of charge.

C) The LCPD Full Time Coordinator shall have the authority to obtain crime statistics data and share same with the LCPD.

D) The LCPD shall be provided with quarterly crime statistics for all categories of reported crime, (including Part I and Part II offenses).

E) The LCPD shall be provided at the end of each city pay cycle with an invoice from the City for amounts due to the City for the services provided to the LCPD for that pay cycle. The City shall attach to the invoice all backup documentation in support of the invoice. The LCPD shall make payment to the City on said invoice within fourteen (14) days of the receipt of said invoice.

F) The LCPD shall have the right to receive copies of reports generated by LCPD officers from the City without cost to the LCPD.

## SECTION VII

## DEFENSE, HOLD HARMLESS AND INDEMNIFICATION

Subject to the limitations imposed by LSA-R.S. 38:2195 with regards the obligations of the City of New Orleans, the City agrees to defend, indemnify and hold harmless LCPD from any and all claims, causes of action and/or lawsuits, including but not limited to any such claims, causes of action and/or lawsuits alleging bodily injury, personal injury, pain, mental anguish and/or death, and/or property loss or damage, arising from City of New Orleans' negligence, fault or willful misconduct, or its performance of and/or failure to perform its obligations under

this agreement and to pay reasonable attorneys' fees related thereto.

Subject to the limitations imposed by LSA-R.S. 38:2195 with regards the obligations of the LPCD, the LCPD agrees to defend, indemnify and hold harmless City of New Orleans from any and all claims, causes of action and/or lawsuits, including but not limited to any such claims, causes of action and/or lawsuits alleging bodily injury, personal injury, pain, mental anguish and/or death, and/or property loss or damage, arising from LCPD's negligence, fault or willful misconduct, medical malpractice or its performance of and/or failure to perform its obligations under this agreement and to pay reasonable attorneys' fees related thereto.

**SECTION VIII**

**INDEPENDENT CONTRACTOR STATUS**

It is especially agreed and understood between the parties hereto, in entering into this Agreement, that the City is an independent contractor with the LCPD for purposes of this Agreement, and that neither the City nor anyone employed by the City shall be considered an agent or employee of the LCPD, but rather is hereby acknowledged by the City to be an agent or employee of the City, for proposes of worker's compensation and unemployment compensation, and all other benefits arising out of that employment, and all other purposes.

**SECTION IX**

**TERM OF AGREEMENT**

The term of this Agreement shall be from January 1, 2010 through December 31, 2020, Any change or amendment to the terms of this Agreement must be in writing and must be signed by the proper duly authorized representatives of the parties hereto.

**SECTION X**

**TERMINATION**

The parties hereto reserve the right to terminate this Agreement upon thirty (30) days written notice one to the other, the said notice to be given by certified mail, return receipt requested, and the said notice period to commence on the date of receipt.

**SECTION XI**

The laws of the State of Louisiana shall apply to any and/or all provisions of this Agreement.

**SECTION XII**

If any provision here is held invalid by a court of law, such invalidity shall only apply to that provision.

**SECTION XIII**

Notice under this Agreement shall be sent as follows:

To the LCPD:

Charles P. Ciaccio, President
Lakeview Crime Prevention District
127 Camp Street
New Orleans, LA 70130

To the City:

Chief Administrative Officer
City of New Orleans
Room 9E01 - City Hall
1300 Perdido Street
New Orleans, Louisiana 70112

With a copy to:

Nannette Jolivette-Brown
City Attorney
1300 Perdido Street, Suite 5E03
New Orleans, LA 70112

With a copy to:

Richard Bordelon, Esq.
Denechaud & Denechaud, LLP
1010 Common Street, Suite 3010
New Orleans, LA 70112

Superintendent of Police
Police Headquarters
715 South Broad Street
New Orleans, Louisiana 70119

**SECTION XIV**

The Contractor understands and will abide by all provisions of the Code of the City of New Orleans, Chapter 2, Article XIII, Section 1120 (20), as adopted by City Ordinance No. 22,888 M.C.S., (relative to the operations and authority of the City Inspector General), incorporated herein by reference.

THE PARTIES HERETO made and executed this Agreement, as of the day and year first above written.

LAKEVIEW CRIME PREVENTION DISTRICT

BY: ______________________
CHARLES P. CIACCIO
PRESIDENT

CITY OF NEW ORLEANS LAW DEPARTMENT

BY: ______________________
NANNETTE JOLIVETTE BROWN
CITY ATTORNEY

CITY OF NEW ORLEANS

BY: ______________________ 1-24-11
MITCHELL J. LANDRIEU
MAYOR