

**Attorneys at Law**

Baton Rouge
Birmingham
Houston
Jackson
Memphis
Mobile
Nashville
**New Orleans**
Sarasota
St. Petersburg
Tampa
Washington, DC


**Lee C. Reid**
Direct (504) 585-0317
lee.reid@arlaw.com

**VIA HAND DELIVERY**

September 17, 2013

The Honorable Susie Morgan
U.S. District Court for the Eastern District of Louisiana
500 Poydras St., Suite C322
New Orleans, La 70130

Dear Judge Morgan:

I write to you today as counsel for the Mid City Security District ("MCSD" or "District") to request that I be present at the next status conference on the NOPD Consent Decree. It is my understanding that implementation of the Consent Decree with respect to the newly created Office of Secondary Employment will be discussed at the next status conference. For the reasons discussed below, MCSD has a significant interest in the implementation of the OSE and should be allowed to participate in the status conference.

The MCSD was created by the Legislature in 2008 and is a political subdivision of the State of Louisiana.[1] The boundaries of the MCSD are Tulane Ave., Interstate 10, City Park Ave., West Moss St., Orleans Ave., North Broad. St., and South Broad St.[2] In November of 2008, a ballot measure was approved by 63.51% of the voters residing within the District authorizing the MCSD to impose and collect a parcel fee within the District. The fees collected by the MCSD are used to "provide or enhance security patrols in the district, and to provide for improved lighting, signage, or matters relating to the security of the district."[3]

Since 2009, the MCSD has contracted with the City of New Orleans ("City") to "supplement and enhance the underlying police services" the City currently provides within the

---

[1] *See* Exhibit "A," La. R.S. 33:9091.14.
[2] *Id.* at Section B.
[3] La. R.S. 33:9091.14(E)(5).

1

boundaries of the District.[4] This is accomplished through increased NOPD security patrols within the District. NOPD officers assigned to MCSD security patrols are at all times on duty. This is evidenced by specific language in the Cooperative Endeavor Agreement ("CEA") between the City and MCSD providing 1) that payments made by MCSD to the City shall cover "straight time payments and over-time payments"[5] and 2) that Officers assigned to MCSD patrols are at all times employees of the City.[6] At no point in the CEA are the assignments referred to as off-duty or paid details nor is it meant to be inferred that they are off duty or paid details.

The Consent Decree specifically requires the City to "Completely restructure what is currently known as its Paid Detail system to ensure that officers' and other NOPD employees' off-duty secondary employment does not compromise or interfere with the integrity and effectiveness of NOPD employees' primary work as sworn police officers serving the entire New Orleans community."[7]   The term "Paid Detail" is not defined in the Consent Decree but it is defined in the NOPD Operations Manual as "off-duty employment for compensation, of any employee of the Department by another individual, business, establishment, or organization where the employee is performing the duties of a police officer."[8] The policy reason behind this reform is to remove the assignment of off duty details from the NOPD chain of command and to ensure that payment of details is "fully auditable."[9] The reforms also seek to ensure that "no NOPD employee is supervising another employee of higher rank."[10] The City implemented these reforms in August of 2013 through an Ordinance creating the Office of Secondary Employment ("OSE").

Based on the plain language of the Consent Decree, it is clear that the NOPD security patrols provided to MCSD do not fall under the purview of the OSE. This is because the security patrols are on-duty or overtime and not off duty as specifically contemplated by the Consent Decree. The on duty nature of these patrols and the procedures put in place under the CEA ensure that abuses which may occur under the paid detail system do not occur in the assignment of officers to the MCSD. Specifically, the assignment of officers to MCSD patrols is performed by a coordinator, who performs this task on a full time basis.[11] Under the terms of the CEA, the MCSD reimburses the city for the salary of the coordinator.[12] Under the CEA, the coordinator shall be of the rank of at least Sergeant,[13] and pursuant to NOPD policy, the coordinator may not supervise any officers of a higher rank.

---

[4] See Exhibit "B," August 7, 2010 Cooperative Endeavor Agreement Between the City of New Orleans and Mid City Security District
[5] Id. at p. 5.
[6] See Exhibit "B" at p.10.
[7] See Consent Decree at p. 84-85.
[8] See Exhibit "C," New Orleans Police Department Operations Manual, Chapter 22.8.
[9] See Consent Decree at ¶332.
[10] Id. at ¶ 346.
[11] See Exhibit "B" at pages 3-4.
[12] Id. at p. 4.
[13] Id.

All payments made by the MCSD to the City are fully auditable. The payment method is outlined in the CEA, with the City billing the MCSD at the end of each city pay cycle.[14] The MCSD must make payment within 14 days of receiving an invoice. Pursuant to state law, the MCSD is subject to audit by the legislative auditor,[15] and to the Office of Inspector General under the terms of the CEA.[16]

Based on the foregoing, it is clear that the MCSD patrols do not fall under the Consent Decree because they are on duty assignments. Even though the MCSD is not governed by the Consent Decree, the policy goals of the Consent Decree are accomplished through the CEA and state law. Despite these facts, the Department of Justice recently wrote to the City and characterized the MCSD patrols as "secondary law enforcement work" and that such work must be governed by the OSE.[17]

Accordingly, I request the opportunity to participate in the next status conference to discuss these issues, and if appropriate, receive the Court's guidance. If it is not possible to participate in the conference, then please advise me of the most appropriate way to put these issues before the Court. If you should have any questions, do not hesitate to contact me.

Respectfully,

ADAMS AND REESE LLP

Lee C. Reid

ENCLOSURES
CC: (via e-mail only)(w/encl.)

Sharonda R. Williams, Esq. (shrwilliams@nola.gov)
Ralph Capitelli, Esq. (rc@capitelliandwicker.com)
Emily A. Gunston, Esq. (emily.gunston@usdoj.gov)
Christy E. Lopez, Esq. (christy.lopez@usdoj.gov)
Jude Volek, Esq (jude.volek@usdoj.gov)
Stephen C. Parker, Esq. (steve.parker@usdoj.gov)
David Douglass, Esq. (ddouglas@sheppardmullin.com)
Jonathan Aronie, Esq. (jaronie@sheppardmullin.com)

---

[14] Id. at p.4.
[15] La. R.S. 33:9091.14(G)(2)
[16] See Exhibit "B" at p.11.
[17] See Exhibit "D," August 7, 2013 Correspondence from Deputy Attorney General Roy Austin to Sharonda Williams, City Attorney.

§ 9091.14. Mid-City Security District, LA R.S. 33:9091.14

West's Louisiana Statutes Annotated
  Louisiana Revised Statutes
    Title 33. Municipalities and Parishes (Refs & Annos)
      Chapter 29. Neighborhood Improvement Districts (Refs & Annos)
        Part II. Orleans Parish (Refs & Annos)
          Subpart C. Crime Prevention and Security Districts

LSA-R.S. 33:9091.14

§ 9091.14. Mid-City Security District

Effective: July 15, 2008

Currentness

**A. Creation.** There is hereby created within the parish of Orleans, as more specifically provided in Subsection B of this Section, a body politic and corporate which shall be known as the Mid-City Security District, referred to in this Section as the "district". The district shall be a political subdivision of the state as defined in the Constitution of Louisiana.

**B. Boundaries.** The boundaries of the district shall be that area within and including the following perimeter: Tulane Avenue (both sides), Interstate 10 (interior side), City Park Avenue (interior side), West Moss Street (interior side), Orleans Avenue (both sides), and North Broad Street and South Broad Street (both sides).

**C. Purpose.** The district is established for the purpose of promoting and encouraging security in the area included within the district.

**D. Governance.** (1) The district shall be governed by a five-member board of commissioners, referred to in this Section as the "board". The board shall be composed as follows:

(a) The Mid-City Neighborhood Organization shall appoint two members.

(b) The Parkview Neighborhood Association shall appoint one member.

(c) The two members of the governing authority of the city of New Orleans who are elected from Council District A and Council District B shall each appoint one member.

(2) All members appointed pursuant to Paragraph (1) of this Subsection shall be qualified voters and residents of the district.

(3) Board members appointed pursuant to Paragraph (1) of this Subsection shall serve three-year terms.

(4)(a) Upon the expiration of the terms of members serving pursuant to Paragraph (1) of this Subsection, board members shall be appointed as provided in this Paragraph.

EXHIBIT

A

(i) The Mid-City Neighborhood Organization shall appoint four members, one of whom shall be from the City Park Triangle.

(ii) The Parkview Neighborhood Association shall appoint one member.

(b) All members appointed pursuant to Subparagraph (a) of this Paragraph shall be qualified voters and residents of the district.

(c) Board members appointed pursuant to Subparagraph (a) of this Paragraph shall serve three-year terms after serving initial terms as provided in this Subparagraph. One member shall serve an initial term of one year; two shall serve initial terms of two years; and two shall serve an initial term of three years, as determined by lot at the first meeting of the board held after the members are appointed as provided in Subparagraph (a) of this Paragraph.

(5) Any vacancy which occurs prior to the expiration of the term for which a member of the board has been appointed shall be filled for the remainder of the unexpired term in the same manner as the original appointment. Board members shall be eligible for reappointment.

(6) The board shall elect from its members a chairman, a vice chairman, a secretary-treasurer, and such other officers as it may deem necessary. The duties of the officers shall be fixed by the bylaws adopted by the board.

(7) The minute books and archives of the district shall be maintained by the secretary-treasurer of the board. The monies, funds, and accounts of the district shall be in the official custody of the board.

(8) The board shall adopt such rules and regulations as it deems necessary or advisable for conducting its business affairs. Rules and regulations of the board relative to the notice and conduct of meetings shall conform to applicable law, including, if applicable, R.S. 42:11 et seq., relative to open meetings. The board shall hold regular meetings as shall be provided for in the bylaws and may hold special meetings at such times and places within the district as may be prescribed in the bylaws.

(9) A majority of the members of the board shall constitute a quorum for the transaction of business. The board shall keep minutes of all meetings and shall make them available through the secretary-treasurer of the board.

(10) The members of the board shall serve without compensation but shall be reimbursed for reasonable out-of-pocket expenses directly related to the governance of the district.

**E. Powers and duties.** The district shall have the following powers and duties:

(1) To sue and be sued.

(2) To adopt, use, and alter at will a corporate seal.

(3) To receive and expend funds collected pursuant to Subsection F of this Section and in accordance with a budget adopted as provided by Subsection G of this Section.

(4) To enter into contracts with individuals or entities, private or public.

(5) To provide or enhance security patrols in the district, and to provide for improved lighting, signage, or matters relating to the security of the district.

(6) To enter into contracts and agreements with one or more other districts for the joint security, improvement, or betterment of all participating districts.

(7) To provide for such services and make such expenditures as the board deems proper for the upkeep of the district.

(8) To acquire or lease items and supplies which the board deems instrumental to achieving the purposes of the district.

(9) To acquire, lease, insure, and sell real property within the boundaries of the district in accordance with district plans.

(10) To perform or have performed any other function or activity necessary or appropriate to carry out the purposes of the district.

**F. Parcel fee.** The governing authority of the city of New Orleans may impose and collect a parcel fee within the district subject to and in accordance with the provisions of this Subsection.

(1) The amount of the fee shall be as requested by duly adopted resolution of the board. The fee shall be a flat fee per improved parcel of land of not less than two hundred dollars and not to exceed two hundred fifty dollars per year for each improved residential parcel and not less than three hundred dollars and not to exceed three hundred seventy-five dollars for each improved commercial parcel. Any improved parcel consisting of both commercial and residential uses shall be considered commercial for purposes of this Section.

(2) The fee shall be imposed on each improved parcel located within the district.

(a) For purposes of this Section, "parcel" means a lot, a subdivided portion of ground, an individual tract, or a "condominium parcel" as defined in R.S. 9:1121.103.

(b) The owner of each parcel shall be responsible for payment of the fee.

(3)(a) The fee shall be imposed only after the question of its imposition has been approved by a majority of the registered voters of the district who vote on the proposition at an election held for that purpose in accordance with the Louisiana Election Code. The amount of the fee may be changed by duly adopted resolution of the board, not to exceed the maximum amount authorized by this Subsection. No other election shall be required except as provided by this Paragraph.

(b) The initial election on the question of the imposition of the fee shall be held at the same time as a regularly scheduled election in the city of New Orleans.

§ 9091.14. Mid-City Security District, LA R.S. 33:9091.14

(c) If approved, the fee shall expire on December 31, 2014, but the fee may be renewed if approved by a majority of the registered voters of the district voting on the proposition at an election as provided in Subparagraph (a) of this Paragraph. Any election to authorize the renewal of the fee shall be held at the same time as a regularly scheduled mayoral election in the city of New Orleans. If the fee is renewed, the term of the imposition of the fee shall be as provided in the proposition authorizing such renewal, not to exceed eight years.

(4) The fee shall be collected at the same time and in the same manner as ad valorem taxes on property subject to taxation by the city are collected.

(5) Any parcel fee which is unpaid shall be added to the tax rolls of the city and shall be enforced with the same authority and subject to the same penalties and procedures as unpaid ad valorem taxes.

(6)(a) The proceeds of the fee shall be used solely and exclusively for the purpose and benefit of the district; however, the city may retain one percent of the amount collected as a collection fee.

(b) The city of New Orleans shall remit to the district all amounts collected not more than sixty days after collection.

**G. Budget.** (1) The board shall adopt an annual budget in accordance with the Louisiana Local Government Budget Act, R.S. 39:1301 et seq.

(2) The district shall be subject to audit by the legislative auditor pursuant to R.S. 24:513.

**H. Miscellaneous.** (1) It is the purpose and intent of this Section that any additional security patrols, public or private, or any other security or other services or betterments provided by the district shall be supplemental to and not be in lieu of personnel and services to be provided in the district by the state or the city of New Orleans or their departments or agencies or by other political subdivisions.

(2) If the district ceases to exist, all funds of the district shall be transmitted by the board to the city of New Orleans, and such funds, together with any other funds collected by the city of New Orleans pursuant to this Section, shall be maintained in a separate account by the city and shall be used only to promote, encourage, and enhance the security of the area included in the district.

**Credits**
Added by Acts 2008, No. 925, § 1, eff. July 15, 2008.

LSA-R.S. 33:9091.14, LA R.S. 33:9091.14
Current through the 2012 Regular Session.

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

*K11-848*

## COOPERATIVE ENDEAVOR AGREEMENT
### BETWEEN
### THE CITY OF NEW ORLEANS
### AND
### MID-CITY SECURITY DISTRICT

THIS AGREEMENT, effective the 7th day of August 2010, by and between the City of New Orleans, hereinafter referred to as the "City" and herein represented by Mitchell J. Landrieu, Mayor, and the Mid-City Security District, hereinafter referred to as the "MCSD" and herein represented by Colleen Boyle Gannon, Chairman;

WHEREAS, the MCSD is a public body created by Act 925 of the Louisiana Legislature, 2008, La.R.S. 33:9091.14, to aid in crime prevention and to add to the security of district residents by providing for an increase in the presence of law enforcement personnel in the MCSD; and

WHEREAS, the said Louisiana Act No. 925, specifies that the MCSD shall have the power to enter into contracts with individuals or entities, private or public, for the provision of security patrols in the MCSD; and

WHEREAS, the said Louisiana Act, further specifies that the additional law enforcement personnel and their services provided for through the fees to be generated by the MCSD shall be supplemental to and not in lieu of personnel and services provided in the MCSD by the New Orleans Police Department, hereinafter referred to as the "NOPD"; and

WHEREAS, pursuant to the authority contained in Article 7, Section 14 (C) of the Louisiana Constitution of 1974, and statutory authority supplemental thereto, the State of Louisiana and its political subdivisions, including City, may enter into cooperative endeavors with each other, or with any public or private corporation or individual; and further, pursuant to Section 9-314 of the Home Rule Charter of the City of New Orleans, City may enter into cooperative endeavors with any public

1



or private association, corporation or individual for activities in support of economic growth and other public purposes; and

WHEREAS, the City has determined that the reasonably anticipated tangible and intangible benefits to the City to be derived from this agreement, including increased police presence and protection, increased citizens' sense of well-being, reduced crime and crime rates, funds to the City generated from citations written by officers on MCSD patrols, and 1% of collections to the City, as well as the tangible benefits to the City outlined herein, are equivalent to or exceed the value of the City's obligations contained herein;

NOW, THEREFORE, the City and the MCSD agree as follows:

## SECTION I

## GENERAL PURPOSE OF SUPPLEMENTAL AND ENHANCED POLICE SERVICES FOR THE MID-CITY SECURITY DISTRICT

A)    Underlying Police Services:

The City agrees that, in addition to all of the obligations stated herein, it shall at a minimum continue to provide what is referred to as the "underlying police services." The "underlying police services" are as set forth in Section V herein. Upon reasonable request to the NOPD, the Board of Commissioners of the MCSD, hereinafter the "MCSD Board," and the MCSD Full Time Coordinator shall have the authority to review and copy, without cost, the documentation generated by the City or the NOPD that is needed to establish the base line and the status of NOPD underlying police services.

B)    Supplementation and Enhancement of Underlying Police Services: "MCSD Services":

The purpose of this Agreement is to supplement and enhance the underlying police services, as defined in Section V herein, by the deployment by the City of additional patrol cars within the MCSD, as deemed appropriate by the MCSD Board and the MCSD Full Time Coordinator, for up to

2

24 hours a day, 7 days per week including holidays, hereinafter referred to as "MCSD services".

The City and the MCSD Board shall agree upon the selection of the MCSD Full Time Coordinator,

who shall be an active member of the NOPD with a rank of Sergeant or above and whose duties shall

be as set forth in Section II herein.

## SECTION II

## MCSD FULL TIME COORDINATOR

A)    Powers and Duties:

    The powers and duties of the MCSD Full Time Coordinator shall consist of the following:

        1.     To schedule those officers to work for the MCSD;

        2.     To supervise those officers and rank when working for the MCSD;

        3.     To develop any policies and procedures he/she feels are necessary for the improvement of the services provided to the MCSD;

        4.     To be accessible by phone number or pager number to the MCSD Board;

        5.     To attend all regular and special meetings called by the MCSD Board.

        6.     To provide to the MCSD Board the documentation as set forth in Section VI and any other information that the MCSD is entitled to by operation of law, and/or pursuant to this Agreement.

    The MCSD Full Time Coordinator will strive to maximize the number of patrolmen and to minimize the number of ranking officers who are employed by the MCSD on any given shift, in order to achieve the most economical provision of security services to the MCSD area.

B)    Compensation:

    The MCSD Full Time Coordinator shall, at all times, be an employee of and officer of the rank of at least Sergeant on the New Orleans Police Department, who shall be assigned full time as the

3

coordinator of the MCSD.  The MCSD shall be responsible for reimbursing the City for the salary of the MCSD Full Time Coordinator, as set forth in Section III (B).

C)   <u>Replacement:</u>

If the MCSD Full Time Coordinator ceases to serve for any reason including retirement, resignation, or discharge by the City or the MCSD, a successor MCSD Full Time Coordinator shall be selected by mutual agreement between the City and MCSD Board, within twenty (20) days of said vacancy.

<u><strong>SECTION III</strong></u>

<u><strong>PAYMENT SCHEDULE</strong></u>

A)   <u>MCSD Officers and Rank:</u>

The MCSD will make available for payment to the City the costs for providing the MCSD service, billed at the end of each city pay cycle, for the costs associated for providing the service during that pay cycle, based on a unit cost equal to the actual hourly rate of pay incurred (i.e. straight time or overtime), multiplied by the number of hours worked by each patrolman or ranking officer for the MCSD for the billing period at issue.

B)   <u>MCSD Full Time Coordinator:</u>

The MCSD will make available for payment to the City, reimbursement for the salary of the MCSD Full Time Coordinator, billed at the end of each city pay cycle (14 days) for the billing period at issue.

C)   <u>Payment by the MCSD:</u>

The MCSD shall make payment to the City on said invoice within fourteen (14) days of the receipt of said invoices.

4

## SECTION IV

## OPERATIONAL SPECIFICS OF MCSD SERVICES

A)    Deployment:

Those officers assigned to the MCSD under this Agreement shall only patrol the geographic

area of the MCSD as defined below.

The district shall be comprised of the area of the Parish of Orleans lying within the
following perimeter:  The boundaries of the district shall be that area within and
including the following perimeter street and avenues: Tulane Avenue (both sides),
Interstate 10 (interior side), City Park Avenue (interior side), West Moss Street
(interior side), Orleans Avenue (both sides), and North Broad Street (both sides).

B)    Personnel Costs:

The MCSD's payment for MCSD services under this Agreement described in Section III, shall

cover only straight time payments and over-time payments of the officers and rank when providing

MCSD services, and shall exclude all other labor costs, labor burdens, or benefits of said personnel.

C)    Equipment:

At the request of the MSCD, the City shall furnish four (4) vehicles to the MCSD for the

exclusive use in the MCSD.  The title to these vehicles will be in the name of the City, and MCSD

shall reimburse the City for the cost of the vehicles.  The vehicles are fully identified in the affixed

attachment, styled "EXHIBIT A - MCSD Vehicle Identification Numbers" and affixed hereto.  Said

vehicles are to be decaled by the City with NOPD insignia.  Additionally, said vehicles are to bear

MCSD insignia, which are to be designed and furnished by the MCSD to the City for decaling.  The

MCSD may provide, at its own expense, additional equipment, such as cell phones and/or MDT's

(Mobile Data Terminals), for installation in the MCSD vehicles.  The City shall provide replacement

vehicles, immediately, during the time that the aforesaid vehicles are out of service. The MCSD shall

5

replace, at its cost, each MCSD patrol vehicle upon the expiration of the useful life of said vehicle.

## SECTION V

## UNDERLYING POLICE SERVICES

A)    General Provision:

Under the terms of this Agreement, it is understood that the MCSD services funded by the MCSD are special and in addition to all underlying police services which the City is obligated to furnish or provide absent the funding by the Mid-City Security District, as set forth in the miscellaneous provision contained in La. R.S. 33:9091.14. The statute specifies that "It is the purpose and intent of this Section that any additional security patrols, public or private, or any other security or other services or betterments provided by the district shall be supplemental to and not in lieu of personnel and services to be provided in the district by the state or the city of New Orleans or their departments or agencies or by other political subdivisions."

B)    Definition:

The "underlying police services," the level of services the City is obligated to provide as set forth in Section I(A) above, is defined for purposes of this Agreement as the number of police assigned to the geographical boundaries of the Mid-City Security District, as set forth in Section IV(A) herein, exclusive of the officers assigned under this agreement, (i.e. level of First and Third District police personnel absent the MCSD). The "underlying police services" do not represent a static figure determined at the outset of this agreement, but rather, should the City increase or decrease the number of patrol officers in the various police districts within the City, the City agrees that the existence of the MCSD will not be taken into consideration in the determination of the number of patrol officers to add to the First and Third Districts.

6

C)   <u>Failure to Provide Underlying Police Services:</u>

Any reduction by the City in underlying police services shall be in violation of this Agreement and grounds for termination hereof. In the event of any such reduction, the MCSD shall give written notice to the Chief Administrative Officer of the City and the Superintendent of the New Orleans Police Department that a reduction of underlying police services has come to its attention, and the City shall have ten (10) days from receipt of notice to correct the reduction and to explain to the satisfaction of the District the reason therefor, failing either of which, and notwithstanding the provisions of Section X below, the MCSD may terminate this Agreement effective on the date of the reduction by giving written notice to the City to that effect and shall have the right to recover any and all amounts paid to the City but not yet earned as of the date of the reduction.

D)   <u>Functions of City and MCSD Police:</u>

It is further understood, under the terms of this Agreement, that the police assigned within the boundaries of the MCSD as a part of their normal First and Third District assignments, referred to herein above as "underlying police services" (not those on MCSD assignment), will handle routine police functions such as responses to service calls, routine patrols, investigations of complaints, etc., all traffic work, special events coverage, undercover/stakeout work, and any follow-up investigations, including but not limited to investigations involving vice and homicides. **<u>Officers on assignment to the MCSD shall not be given routine dispatch calls for service in the First and Third Districts, nor shall they be dispatched outside of the MCSD boundaries, except upon notification and approval by the MCSD Full Time Coordinator.</u>**

The dispatch of officers for routine calls for service in the First and Third Districts, or the dispatch of officers outside of the MCSD boundaries, while said officers are on assignment to the

7

MCSD, without the approval required in the preceding paragraph, shall be a violation of this Agreement and grounds for termination hereof. In the event of any such violation, the MCSD shall give written notice to the Chief Administrative Officer of the City and the Superintendent of the New Orleans Police Department that a violation has come to its attention, and the City shall have ten (10) days from receipt of notice to correct the violation and to explain to the satisfaction of the District the reason therefor, failing either of which, and notwithstanding the provisions of Section X below, the MCSD may terminate this Agreement effective on the date of the violation by giving written notice to the City to that effect and shall have the right to recover any and all amounts paid to the City but yet unearned as of the date of such violation.

## SECTION VI

## MONITORING

A)    During operations hereunder, and without cost to the MCSD, the City shall supply the following documents to the MCSD:

1.    Weekly reports showing computer print-outs of Trip Systems and Unit History for the time worked by each of the MCSD officers for that week, and copies of the Trip Sheets of all CSD officers for that week.

2.    Monthly reports showing crime statistics for all categories of reported crime (including Part I and Part II offenses) in the First and Third Districts.

3.    At the end of each City pay cycle, an invoice from the City for amounts due to the City for the services provided to the MCSD for that pay cycle. The City shall attach to the invoice all backup documentation in support of the invoice.

4.    All other reports generated by MCSD officers.

8

B)    Other documents: As stated in Section I (A), and any other documentation that the MCSD is entitled to by operation of law or pursuant to this Agreement.

## SECTION VII

## DEFENSE, HOLD HARMLESS AND INDEMNIFICATION

A)    Subject to the limitations imposed by LSA-R.S. 38:2195 with regard to the obligations of the City of New Orleans, the City shall defend, indemnify and hold harmless the MCSD, its officers, employees and the MCSD Board, individually and collectively, against any and all claims, demands, suits, and judgments made or owing to any parties, whether alleging bodily or mental injury, death, property loss or damage, as well as the costs, attorneys' fees, legal interest, and any other expenses associated therewith, resulting from or by reason of any negligent or intentional act or omission or negligent or intentional operation of work of the City, its agents, servants, employees, including the MCSD Full Time Coordinator, while engaged upon or in connection with the services required or performed by the City under the terms of this Agreement, and any ancillary agreements, or its performance of and/or failure to perform its obligations under this agreement, and to pay reasonable attorneys fees related thereto.

B)    The MCSD shall defend, indemnify, and hold harmless the City against any and all claims, demands, suits, and judgments made or owing to any parties, whether alleging bodily or mental injury, death, property loss or damage, as well as the costs, attorneys fees, legal interest, and any other expenses associated therewith, resulting from or by any reason of any negligent or intentional act or omission or negligent or intentional operation of work of the MCSD, including its officers, employees, volunteers and the MCSD Board, individually or collectively, while engaged upon or in connection with the services required or performed by the MCSD under the terms of this Agreement,

9

and any ancillary agreements, or its performance of and/or failure to perform its obligations under this agreement, and to pay reasonable attorneys fees related thereto.

This provision shall not apply to any claim, demand, suit or judgment arising out of or related to any act or omission of any MCSD patrolling officer, while such officer is performing or engaged in law enforcement duties or functions.

## SECTION VIII

## INDEPENDENT CONTRACTOR STATUS

It is especially agreed and understood between the parties hereto, in entering into this Agreement, that the City is an independent contractor with the MCSD for purposes of this Agreement, and that neither the City nor anyone employed by the City shall be considered an agent or employee of the MCSD, but rather is hereby acknowledged by the City to be an agent or employee of the City, for purposes of worker's compensation and unemployment compensation, and all other benefits arising out of that employment, for liability purposes and all other purposes.

## SECTION IX

## TERM OF AGREEMENT

The term of this Agreement shall be from August 7, 2010 through August 6, 2011. Any modification or amendment to the terms of this Agreement must be in writing and must be signed by the proper duly authorized representatives of the parties hereto.

## SECTION X

## TERMINATION

The parties hereto reserve the right to terminate this Agreement upon thirty (30) days written notice one to the other, the said notice to be given by certified mail, return receipt requested, and the

said notice period to commence on the date of receipt.

## SECTION XI

### JURISDICTION

The laws of the State of Louisiana shall apply to any and/or all provisions of this Agreement.

## SECTION XII

If any provision here is held invalid by a court of law, such invalidity shall only apply to that provision.

## SECTION XIII

### AUDIT AND OTHER OVERSIGHT

The MCSD understands and will abide by all provisions of the Code of the City of New Orleans, Chapter 2, Art. XIII, Sect. 2-1120 (20), as adopted by City Ordinance No. 22,888 M.C.S., (relative to the operations and authority of the City Inspector General), incorporated herein by reference.

## SECTION XIV

### SOLICITATION

The MCSD has not employed or retained any company or person, other than a bona fide employee working solely for him, to solicit or secure the subject contract. The MCSD has not paid or agreed to pay any person, other than a bona fide employee working for him, any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from the subject contract. (Code Section 70-509)

## SECTION XV

### NOTICE

11

Notice under this Agreement shall be sent as follows:

|                   |                                                  |
|-------------------|--------------------------------------------------|
| To the District:  | Colleen Boyle Gannon, Chairman                   |
|                   | Mid-City Security District                       |
|                   | c/o Business Development Partners, LLC           |
|                   | 111 Veterans Blvd., Suite 710                    |
|                   | Metairie, Louisiana 70005                        |
|                   |                                                  |
| To the City:      | Andrew D. Kopplin, Chief Administrative Officer  |
|                   | City of New Orleans                              |
|                   | City Hall - Room 9E01                            |
|                   | 1300 Perdido Street                              |
|                   | New Orleans, Louisiana 70112                     |
|                   |                                                  |
| With a Copy to:   | Nannette V. Jolivette-Brown, City Attorney       |
|                   | City of New Orleans                              |
|                   | City Hall - Room 5E03                            |
|                   | 1300 Perdido Street                              |
|                   | New Orleans, Louisiana   70112                   |
|                   |                                                  |
|                   | Ronal W. Serpas, Superintendent of Police        |
|                   | Police Headquarters                              |
|                   | 715 South Broad Street                           |
|                   | New Orleans, Louisiana 70119                     |

IN WITNESS WHEREOF, the parties have hereunto made and executed this Agreement, as of the day and year first above written.

**MID-CITY SECURITY DISTRICT**

BY: _____
COLLEEN BOYLE GANNON
Chairman

**CITY OF NEW ORLEANS**

BY: _____
MITCHELL J. LANDRIEU
Mayor

FORM AND LEGALITY APPROVED:

_____
Law Department, City of New Orleans

12

# EXHIBIT A

**MID-CITY SECURITY DISTRICT (MCSD) VEHICLE IDENTIFICATION NUMBERS**

| VEHICLE IDENTIFICATION NUMBER | VEHICLE MAKE/MODEL |
|---|---|
| 2FABP7BV8AX105836 | FORD/CROWN VICTORIA |
| 2FABP7BV2AX105833 | FORD/ CROWN VICTORIA |
| 2FABP7BV4AX105834 | FORD/ CROWN VICTORIA |
| 2FABP7BV1AX141786 | FORD/ CROWN VICTORIA |



# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER:    22.8

## TITLE:    PAID DETAILS

**EFFECTIVE:  February 1, 2004    (Previously ASOP 85.0)**
**REVISED:    08/08/2004; 09/05/2004; 10/31/2004; 07/10/2005**                     Page 1 of 11

## PURPOSE

The purpose of this section is to establish guidelines for the working of paid details by department employees.  Employees working paid details do so as representatives of the New Orleans Police Department.  Inasmuch as public perception, moral character, and public associations affect the overall professional appearance of the department, it is the intent of the Superintendent of Police that any and all details are reviewed and approved by his office for appropriateness.  Permission to work paid details is a privilege available to all commissioned police officers and certain non-commissioned employees meeting the high standards of this department.

## DEFINITIONS

1.    **Paid Detail**: The off-duty employment, for compensation, of any employee of the Department by another individual, business, establishment, or organization where the employee is performing the duties of a police officer or a function of the police department.  For the purpose of this regulation, compensation means the receiving of anything of value, however slight, (tangible or intangible) by either the employee or the individual or company requesting the services of the officer.

2.    **Permanent Detail**: Work on a recurring schedule for the same employer having the same duties and responsibilities on each work day.

3.    **Short Term Detail**: Work on a non-recurring schedule.

4.    **Yearly Renewal**: The resubmitting, for the purpose of approval, of a Paid Detail Authorization Form allowing an officer to continue working a permanent paid detail.  The renewal shall be submitted during the officer's birth month.  Authorization to work a permanent paid detail shall expire on the last day of the month of the requesting officer's birth each year.

5.    **Detail Location(s)**: The municipal address of a stationary detail location.
   a.    Multiple locations if the detail requires the officer to move from one municipal address to another.
   b.    The areas if the detail requires the officer to be on patrol.



**EXHIBIT**

_C_

6. **District(s)**: The number of the district in which the detail is located.
   a.  The numbers of the district(s) if the detail involved mobile patrol or relocation to another specific location.

7. **Business Name / Business Address**: The name and address of the individual or company for which the officer is providing service.
   a.  The name and address of the individual for whom the officer is providing service if not a business.

8. **Owner**: The name of the individual who owns the business.  If the business is a franchise, furnish the name of a local owner.  If the business is a corporation, furnish the name of a representative of the corporation for the detail.

9. **Specific detail duties**: The specific duties and responsibilities provided by the officer.  For example; traffic control, point security, building or equipment security, customer or guest security.  If other than those listed, explain.

10. **Number of hours worked per day**: The total number of hours worked on the listed detail on each particular day.

11. **Number of days worked per week**: Number of days worked per week on the requested detail.

12. **N.O.P.D. Equipment used on detail**: Any City of New Orleans or New Orleans Police Department property, excluding radios and weapons. (Example: vehicle, animal, barricades, etc.)

13. **Civilian supervisor on detail**: The name of the civilian to whom the officer reports, or who directs the officer's work.

14. **Police supervisor on detail**: The police supervisor or police officer having supervisory responsibility for other officers working the detail

15. **Police detail coordinator**: The officer who is responsible for scheduling the working hours and/or assignments for the detail.

16. **Reviewing Authority**: The supervisors in the officer's chain of command who approve or disapprove the officer's request to work a paid detail.

17. **Alcoholic Beverage Outlet**: For the purposes of this Chapter, an Alcoholic Beverage Outlet (ABO) is defined as any bar, lounge, or other establishment where the primary source of revenue is derived from the sale of alcoholic beverages to be consumed on the premises.

## GENERAL

18. The Superintendent of Police, or his designee, shall review all detail request forms for suitability, conflicts of interest, and other considerations where the presence of a New Orleans Police Officer or other department employee may not be appropriate.  Paid details at alcoholic beverage outlets shall not be approved.  Additionally, paid details may be denied at businesses or locations otherwise approved depending on the nature of the business conducted during the dates and/or hours of the requested detail.

19. Authorization to work a paid detail shall be automatically temporarily suspended if the nature of business being conducted changes from that of its previously indicated nature. (Example: A paid detail has been authorized at a clothing store between the hours of 5:00PM to 9:00PM six days per week. On one or more of the days, the clothing store suspends its normal operations or modifies its operations during the detail hours to engage in an activity not normally associated with the retail clothing trade.)

20. If the nature of the business being conducted changes from that of its previously indicated nature, the previously approved detail officer must submit a paid detail authorization form indicating the new business function before working the detail.

21. Only P.O.S.T. certified commissioned employees who have successfully completed their F.T.O. training and obtained the permanent status of Police Officer I may work paid details unsupervised.

    a. P.O.S.T. certified commissioned employees who have completed their F.T.O. training but have not obtained the permanent status of Police Officer I may work paid details if supervised by a ranking officer at the grade of sergeant or above.

    b. P.O.S.T. certified commissioned employees hired as lateral transfers who have successfully completed their F.T.O. training may work authorized paid details unsupervised.

22. Decommissioned, restricted commissioned, or suspended members, including those in the Reserve Division, shall not accept or engage in paid details.

23. Commissioned reserve police officers are not permitted to work permanent paid details nor can reserve officers work paid details in plainclothes.

    a. Reserve officers shall not work paid details for their current employer.

    b. Reserve officers shall not work paid details during the first year after graduation from the Reserve Police Academy.

    c. Reserve officers who volunteer a minimum of thirty-six (36) hours in a calendar month will be eligible to work a maximum of twenty-eight (28) hours of paid details in the following calendar month. (For example, a reserve officer who volunteers 36 hours in August will be eligible to work a maximum of 28 hours of paid details in September.)

    d. Reserve officers who volunteer a minimum of forty (40) hours in a calendar month will be eligible to work a maximum of thirty-two (32) hours of paid details the following calendar month.

    e. Reserve ranking officers are not authorized to approve paid details. All paid detail request forms shall be submitted to the Commander of the Reserve Division for approval and forwarding through the chain of command.

    f. Reserve officers shall attach a copy of their monthly time report to their paid detail request.

    g. Reserve officers shall abide by all rules and regulations of the New Orleans Police Department and the Reserve Division while engaging in paid details.

    h. Reserve officers are not permitted to submit a permanent paid detail request, with the following specific exceptions: paid details located at the Louisiana Superdome and the New Orleans Arena. An annual permanent paid detail request shall be submitted for these details. For all other details, reserve officers shall submit a short-term paid detail request for each detail.

i.      Reserve officers are prohibited from coordinating paid details for any member of the department, either regular or reserve members. Reserve officers are further prohibited from collecting coordination fees for any authorized details.

24.    Regardless of prior approval, employees shall not engage in paid details while absent sick, I.O.D., Workmen's Compensation, Maternity Leave, Leave Without Pay, Suspended or while under Administrative Reassignment if their police commission is restricted. Employees must return to full duty and must have completed working a full tour of duty prior to working a paid detail.

25.    Commissioned employees in non-police classes and non-commissioned employees may be authorized to work details provided all requirements of this regulation are met.

**INSTRUCTIONS**

26.    Approval to work paid details shall not be automatic. Employees wishing to work a paid detail shall complete the current New Orleans Police Paid Detail Authorization Form #21 (revised 02/01/2004) in advance, prior to working the paid detail. Upon approval by the officer's Division Commander, the officer will be allowed to work the requested detail pending final approval of the Superintendent of Police. There are no exemptions from this requirement.

a.    The completed N.O.P.D. Form 21 with a copy of the member's attendance record for the previous twelve (12) months will be routed through the chain of command to the Superintendent of Police for final approval. It will be the responsibility of the officer's Division Commander to ensure that the form is correctly and accurately completed.

b.    Each reviewing authority in the requesting officer's chain of command shall consider the following when reviewing a Paid Detail Request Form:

1.    The location of the paid detail;
2.    The scope of duties scheduled to be performed;
3.    The use of police equipment;
4.    The requesting officer's overall attendance record over the previous twelve (12) months. All sick leave usage will be considered, including those instances which are documented per Chapter 22.1;
5.    The requesting officer's overall work performance, including productivity and disciplinary record; and
6.    If the requesting officer is a Police Officer I, each reviewing authority shall ensure that the requesting officer has achieved permanent Police Officer I status, if the detail is not supervised by a ranking officer. (Note: Only members of Police Officer I status are required to complete the "Date Off FTO" section on the paid detail authorization form.)

c.    In instances where a reviewing authority disapproves a Paid Detail Request, (s)he shall note the reason(s) for disapproval (such as poor attendance record, poor performance, disciplinary problems, etc.) on the form and continue routing the request through the chain of command for final approval/disapproval by the Superintendent of Police. A copy of the disapproval shall be forwarded to the requesting officer by the supervisory officer disapproving the request and shall include the reason(s) for the disapproval. The officer will have the option of submitting a Form 105 in response to the disapproval as outlined in paragraph 27(c).

d.    Members working traffic escort details assigned through the Traffic Division "Escort Book" shall complete a permanent Paid Detail Request listing "Traffic Division - Escort Book" as the employer on the form. All other areas of the form will be completed. The

form will be submitted through the member's chain of command as outlined elsewhere in this chapter.  For the purposes of this chapter, each paid detail worked through the "Traffic Division - Escort Book" shall be considered as being a minimum one (1) hour paid detail counting towards the member's overall weekly paid detail limit, as outlined elsewhere in this chapter.

e.      Members working paid details scheduled, coordinated, and/or paid through the "SOD Permits" account shall complete a permanent paid detail request listing "SOD Permits" as the employer on the Paid Detail Request Form. All other areas of the form will be completed.  The form will be submitted through the member's chain of command as outlined elsewhere in this chapter.

27.    Commanding officers and immediate supervisors will regularly review the employee's performance including sick usage (both documented and undocumented) over the previous twelve (12) months and overall attendance record, disciplinary actions, and yearly evaluation records of the personnel under their command to assess the member's suitability to continue to work previously approved paid details.

a.      Authorization to work paid details may be revoked or denied at any time by the member's Division Commander, Bureau Chief, or the Superintendent of Police.  In the case of such revocation or denial, the employee shall be verbally informed as to the reason for the revocation.  Additionally, the employee shall be supplied with said reason(s) (poor attendance, poor performance, disciplinary problems, or any conduct that may affect the efficient operation of the department) in writing, within seven (7) days of the revocation or denial using N.O.P.D. Form 105.

b.      The member will be notified of the detail revocation via N.O.P.D. Form 105 and it shall be signed by the member acknowledging its content.  The signed notification shall be forwarded to the Inspections Division via the chain of command.  A copy of the 105 shall be sent to each reviewing authority listed on the detail form.

c.      The revocation/denial will become effective immediately upon verbal notification.  To seek reconsideration of the decision, the aggrieved member may appeal the decision in writing directly to the Superintendent of Police.  To be considered, all written requests must be made within ten (10) days of the date of notice of revocation or denial.  The Superintendent of Police is the final arbiter of all appeals.

d.      A member may be relieved of his detail responsibilities during the course of the detail by any ranking officer if, in the opinion of the ranking officer, the duties observed being performed are contrary to the guidelines set forth in this regulation or the officer appears unfit to perform said duties.

e.      The Superintendent of Police may revoke a paid detail at any time.

28.    Once a completed detail form has been approved or disapproved by each reviewing authority, the Superintendent's office will forward the completed form to the Inspections Division.  The Inspections Division will file the original, forwarding a copy of same to the member's Bureau Chief.  The member's Bureau Chief shall forward a copy of the approved/disapproved detail form to be maintained indefinitely to:

a.      The Commander of the District where the detail is located;

b.      The member's Commanding Officer for filing in the member's personnel file; and

c.      The requesting employee.

29.    A copy of every Paid Detail Authorization Form approved/disapproved at the Unit/Division level shall be kept in the Unit/Division records. The original Paid Detail Authorization Form shall be forwarded to the respective Bureau Commander and Superintendent for consideration.  Upon

approval/disapproval of the Paid Detail Authorization Form by the Superintendent or his designee, the Inspections Division shall return a copy of the form through the respective Bureau Chief (as outlined in paragraph 28) to the Unit/Division which submitted the form. When the form is received by the Unit/Division from the Bureau Chief, a copy shall be made of the form with all necessary signatures, and shall be placed in the Unit/Division records, replacing the partially approved form, along with a copy provided to the requesting member. A copy will be placed in the member's district personnel file and maintained indefinitely.

30.    Officers or other employees authorized to work paid details may perform or engage in authorized paid details only during those times when they are off-duty and only in Orleans Parish (with the specific exception of Traffic and/or Reserve Division officers working traffic escorts authorized and coordinated by the SOD Permits Section). Regular duty hours shall not be split in order to work details. While working paid details, employees shall be governed by all Department rules, orders and procedures.
   a.    Officers working a uniformed detail will be attired in the full Class A or B winter/summer uniform and armed with an authorized issued weapon. The detail officer shall conform to all department regulations governing uniforms and appearance.
   b.    Officers are not authorized to work a detail in the Task Force uniform.
   c.    Officers requesting to work a detail in plain clothes must attach an interoffice correspondence explaining the reasons for the request. Plain clothes details can only be approved by the Superintendent of Police or his designee and must be approved prior to working any detail in plain clothes.
   d.    Members working paid details where the duties involve traffic control or direction shall wear their garrison hat and traffic control vest while performing these duties.
   e.    Civilian members working paid details shall be attired in their uniform of the day or as directed by the detail supervisor.

31.    Details worked by N.O.P.D. personnel will be limited to a maximum of twenty-four (24) hours per seven day work week (Sunday through Saturday). Exceptions to the hour limitation may be granted for special events (e.g., Jazz Fest, conventions, Mardi Gras, etc.) where the manpower requirements are so intensive, sufficient resources may not be available for the safe operation of the event. Application for such an event exception will be made via Form 105 from the detail coordinator, forwarded through the chain of command, for final approval by the Superintendent of Police. Details in excess of the 24 hour limitation shall not be worked until the exception is approved by the Superintendent.

## PAID DETAIL LOG BOOK REQUIREMENTS

32.    All officers or other employees who are working an authorized paid detail shall be responsible for notifying the district where the detail is physically located. The officer or employee shall provide the desk officer of his/her name, badge number, detail location, and hours the detail is worked. It shall be the reporting officer or employee's responsibility to obtain the name of who he/she notified.
   a.    Under no circumstance shall a detail be called in for inclusion in the detail log book more than three (3) hours prior to the starting time of the detail, nor more than one (1) hour after the detail begins.

33. District Commanders are responsible for maintaining a Paid Detail Log Book.
    a. Each book and the pages therein shall be numbered sequentially.
    b. Details called into the station will be entered in the book and will include the information outlined in paragraph 34. The information will be entered by a ranking supervisor or the station duty officer.
    c. At the commencement of each day (first platoon), including weekends and holidays, the District Commander shall ensure that the station duty officer or a ranking supervisor prints his/her name and date on the next line immediately following the last detail entry.
    d. The pages of the log listing the previous 24 hours, from 0700 hours until 0700 hours on the date next to the printed name, shall be copied.
    e. The copy shall be faxed to the Inspections Division on the date printed on the log.
    f. A file shall be kept in the district station containing the faxed copies.

34. Exemptions to the reporting requirements outlined in paragraph 33 may be granted for paid details at the Louisiana Superdome, the New Orleans Arena, and other paid details involving a large number of officers. Detail commanders requesting an exemption from the reporting requirements shall submit a written request through their chain of command to the Superintendent of Police prior to working the paid details. If the request is approved, the following actions will be the responsibility of the detail commander:
    a. For each paid detail event, a copy of the "event lineup" shall be forwarded to the Inspections Division no later than the next working day. Included on the "event lineup" will be the date of the detail, names, badge numbers, and work schedule of each officer working the paid detail.

35. All district supervisory personnel shall make themselves aware of those details being worked in their district during their tour of duty.

36.. Commissioned members working paid details will investigate all incidents which occur within the boundaries of the detail area, including parking lots and exterior areas, and will be responsible for writing all reports (excluding auto accidents).
    a. When obtaining an item number, if the member is assigned a unique radio call number, the member will use that number as the primary car number on the item. If the member does not have a unique radio call number, he/she will use their badge number as the call number and advise the dispatcher of their name and place of assignment, which will be entered into the complaint history.
    b. Members will submit written incident reports in connection with paid detail duties through their normal supervisory chain. All reports, including state arrest reports, shall be processed by the member's regular unit of assignment, including the consultation with and receipt of the report to the District Attorney's Office. The approving supervisor will forward a copy of the approved report to the commander of the district where the incident occurred within seventy-two (72) hours of the incident.
    c. In incidents where the initial investigation would require the member to leave the paid detail area or the complaint is against the member, Operations Bureau officers from the district of occurrence or specialized units, as required, will be responsible for the investigations and writing of all necessary reports.
    d. In the event a member working a paid detail is required to handle an incident which is classified as a UCR, the member shall make immediate notification to the on-duty supervisor in the district of occurrence by radio or by telephone of the incident.

37.    Employees are responsible for negotiating compensation for details with the detail employer.

38.    It shall be the responsibility of employees working paid details to maintain appropriate financial records of their paid details.

## SUPERVISORY REQUIREMENTS

39.    The minimum supervisory requirements for paid details shall be:
    g.    Details of less than five (5) members may be worked without a ranking officer, with each member accepting responsibility for the detail.
    h.    Details which require five (5) to thirteen (13) members shall have at least one ranking officer of at least the grade of sergeant.
    i.    Details which require fourteen (14) or more members shall have the following ranking supervisory officers:
        1.    One sergeant or above for every seven (7) members ;
        2.    One lieutenant or above for every four (4) sergeants;
        3.    One captain or above for every three (3) lieutenants.
    c.    No police supervisory officer will be supervised on a detail by an officer of a lower supervisory rank.
    d.    Paid details requiring a ranking supervisory detail officer shall ensure all reporting requirements are met in accordance with paragraph 35 of this chapter.

40.    District supervisors and Integrity Control Officers shall familiarize themselves with the locations of active paid details in their respective districts, and shall conduct random checks at these details to ensure compliance with departmental regulations.

## RESTRICTIONS

41.    Under no circumstances will a member be permitted to engage in a paid detail inside of bars, lounges, alcoholic beverage outlets (ABO's), and other establishments whose primary source of revenue is derived from the sale of alcoholic beverages to be consumed on the premises.

42.    Members shall not work for a company or business which provides private guard services, brokers, or individuals who profit from the services of a detail member.

43.    Members of this department are prohibited from forming any corporation, company, trust, fund, or cooperative banking account for the purpose of billing, receiving compensation, or offering services of paid details.

44.    Members shall not work, and will not be given authorization to work, the following occupations as paid details;
    a.    Any occupation where a conflict of interest with the City can reasonably be demonstrated, including Psychological Stress Evaluation, Computerized Voice Stress Analysis, and Polygraph examinations;
    b.    Private investigators;
    c.    Bartenders, cocktail waiters or waitresses;
    d.    Doormen, bouncers, barkers, or ticket takers;
    e.    Bail or bonding companies, or agents for same (bounty hunters);
    f.    Collection agents for any private person or company; or

   g.     Couriers for the transportation of cash, receipts, or deposits for private companies.

45.   Members of the New Orleans Police Department are prohibited from working paid details or
      outside employment in any facet of land-based or river boat casino-type gaming establishments
      as listed below, without prior approval of the Superintendent of Police:
      a.     At any type of land based or river boat gaming establishment including parking lots
             and/or shuttle locations owned or leased by any casino or gaming consortium; and
      b.     Where their duties include providing security for patrons attending or departing land
             based or river boat gaming establishments.

46.   Members of the New Orleans Police Department are prohibited from working paid details or
      outside employment in any facet of the electronic and/or video poker industry, including
      electronic repair, maintenance or servicing of video poker machines, without prior approval of
      the Superintendent of Police.

**Yearly Renewal:** Completion necessary only if request is for permanent paid detail.  If request is for permanent paid detail approved in the previous year, check "yes".  If request is for a new permanent paid detail, check "no".

**Detail Location(s):** Place the municipal address of the detail location.  If the detail involved mobile patrol at non-specific locations, place the municipal address where the detail begins.  If the detail involved multiple specific locations, each must be listed.  If more space is needed, a form 105 should be used for the additional listings and attached to this request.

**District(s):** Place the number of the district in which the detail is located.  If the detail involves mobile patrol at non-specific locations that cross district boundaries, place "city wide" in that blank.  If the detail involves specific locations in more than one district, each district should be listed.

**Business Name/Business Address:** Place business name and business address.  If the detail is a private party at, or for a business, list business name and indicate "Private Party".  Business address should still be listed.

**Owner:** Place the name of the individual who owns the business.  If the business is a franchise, furnish name of local owner.

**Specific detail duties:** Explain specific duties and responsibilities.  For example, traffic control, point security, building or equipment security, customer or guest security.  If other, explain.

**Number of hours worked per day:** Number of hours worked per day on the requested detail.

**Number of days worked per week:** Number of days worked per week on the requested detail.

**N.O.P.D. equipment used on detail:** Excludes uniform, radio and weapons issued to officers working detail.  Any other City of New Orleans or New Orleans Police Department equipment used must be listed, including, but not limited to, any city vehicles (includes cars, trucks, tow wagons, motorcycles, motor scooters, etc.).  If vehicle is used, car number shall be indicated.  Any use of a department animal (horse, canine) shall be listed.  If N.O.P.D. barricades are utilized on the detail, they should be indicated.

**Civilian Supervisor on detail:** Furnish name of civilian to whom officer reports or who supervises or directs officers work.  If none, indicate "None".

**Police supervisor on detail:** The police supervisor, or senior designated police officer, working the detail.  If only one officer is working a paid detail, the officer will indicate "Self" in that blank.

**Police detail coordinator:** The officer who has scheduled, or who is responsible for scheduling, the individual officer(s) and/or their working hours for the detail.  If there is no such officer, indicate "None" in that blank.

**I.C.O. APPROVAL/DATE:** The Integrity Control Officer in the member's Chain of Command shall review and initial each Paid Detail Authorization Form (along with member's attendance record) for accuracy and completeness prior to Commander's approval.



**U.S. Department of Justice**

Civil Rights Division

*Deputy Assistant Attorney General*
*950 Pennsylvania Ave, NW - RFK*
*Washington, DC 20530*

Sharonda Williams                                  August 7, 2013
New Orleans City Attorney
1300 Perdido Street
New Orleans, LA 70112

> Re:    Proposed Ordinance to amend Sections 90-121 and 90-122 of the Code of the
>          City of New Orleans

Dear Ms. Williams:

     As you are aware, the New Orleans City Council currently is considering an ordinance to amend Sections 90-121 and 90-122 of the Code of the City of New Orleans ("City") related to secondary employment of New Orleans Police Department ("NOPD") officers. The current version of the ordinance appears to conflict with the New Orleans Police Department Consent Decree ("Decree"). We write to remind you of your obligations to comply with the Decree, including your duty to adequately advise the New Orleans City Council of its obligations to comply with the terms of the Decree.

     The Consent Decree was negotiated and agreed to by the City and has since been entered as an order of the Federal District Court for the Eastern District of Louisiana. The City cannot circumvent the authority of a federal court exercising its statutory or constitutional authority by "unilaterally amend[ing] the bargain it struck in the Decree through the passage of a municipal ordinance." *Police Ass'n of New Orleans v. City of New Orleans*, 100 F.3d 1159, 1167 (5th Cir. 1996). Rather, the Decree provides for a bilateral process by which the Decree may be modified, when appropriate. Decree ¶ 487. If the proposed ordinance passes, it will not apply to NOPD officers to the extent it conflicts with the Decree. *Police Ass'n of New Orleans v. City of New Orleans*, No. 94-0065, 1995 WL 155678, at 11 (E.D. La. Apr. 5, 1995). Moreover, as you are aware, the City can be held in contempt if it violates the Decree, particularly if this violation is knowing or deliberate.

     We believe that enactment of the proposed ordinance would constitute a violation of the City's obligations under the Decree, as several sections of the proposed ordinance appear to conflict with the Decree. Paragraph 332 of the Decree requires that a Secondary Employment Coordinating Office, established by the City as the Office of Police Secondary Employment ("OPSE"), have the sole authority to arrange, coordinate, arrange fully-auditable payment, and perform all other administrative functions related to NOPD employees' off-duty secondary law enforcement employment. Proposed § 90-121(b)(8) conflicts with this paragraph because it removes some secondary law-enforcement work from OPSE's purview. Additionally, paragraph 340 of the Decree requires rotation of NOPD employees working most types of

1



recurring secondary employment every 365 days, unless OPSE's director grants an exception. Proposed § 90-121(b)(9) exempts some additional types of recurring secondary employment assignments from the Decree's rotation requirement. Similarly, proposed § 90-121(b)(6) conflicts with paragraph 340 because it allows the periodic rotation requirement to be waived by ordinance of the City Council.[1]

The United States will continue to work with the City and all other stakeholders to implement the Decree. In particular, we will continue our efforts to resolve all legitimate concerns regarding secondary employment, and welcome conversation with the City about how to do so. However, as part of the process of implementing the Decree, it is the City Attorney's duty to adequately advise the City regarding its obligations pursuant to the Decree. We therefore request that you examine the proposed ordinance, which is scheduled for a vote on August 8, 2013, and advise the City Council whether the enactment of this ordinance may conflict with the Decree and thus potentially subject the City to contempt proceedings. We further request that you share this letter with the City Council.

Sincerely,

s/ Roy L. Austin, Jr.
ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division
United States Department of Justice

---

[1] These apparent conflicts are not intended to constitute an exhaustive list. We also are concerned, for example, about the proposed definition of "Major Special Events." Pursuant to the Decree, certain rules regarding secondary employment, including the rotation requirement, do not apply to secondary employment assignments at Major Special Events. The Decree explicitly grants to the City Council the power to designate Major Special Events beyond those enumerated in the Decree. However, the City may not expand the definition so broadly as to eviscerate the requirements of the Decree. *See Police Ass'n of New Orleans v. City of New Orleans*, 100 F.3d 1159, 1170 (5th Cir. 1996) (finding City's promotional scheme violated a consent decree where City's interpretation of the decree would eviscerate the promotional system it had agreed to in the decree).

2