UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| versus | * | NO. 12-1924 |
| | * | |
| THE CITY OF NEW ORLEANS | * | SECTION "E" |
| | * | |
| | * | MAGISTRATE DIVISION "2" |

* * * * * * * * * * * * * * * * * * * * * * * *

### AMICUS CURIAE MEMORANDUM IN OPPOSITION TO MOTION TO AMEND CONSENT DECREE

**MAY IT PLEASE THE COURT:**

Crescent City Lodge No. 2, Fraternal Order of Police, Incorporated and Walter Powers, Jr. (collectively "FOP") file this *Amicus Curiae* Memorandum in opposition to the City's recent Motion to Amend Consent Decree. While the FOP welcomes and supports providing more realistic rates of pay for police officers working secondary employment, the way in which the City is attempting to enact these additional rates of pay goes beyond simply that one purpose.

The City contends that it needs the Court to intervene and amend the Consent Decree due to a so-called "emergency." However, this "emergency" did not just happen - it was created by the City to further its own ends. The City's Motion, if granted, would not just enact new pay rates. In fact it would enable the executive branch of City government to completely bypass the provisions of the City Charter which gives the power to enact spending measures and set pay rates to the City Council, not the Mayor, all in the name of expediency. It would deprive the citizens of the City of New Orleans the protections of the legislative process. It would enact a significant change to the Consent Decree with no consideration to or input from the people most affected, *i.e.*, the officers of the New Orleans Police Department, as well as the citizens of New Orleans.

The executive branch of the City is attempting to use this Court to do what it cannot otherwise legally do - bypass the City Council.

## BACKGROUND

When the Office of Police Secondary Employment ("OPSE") was created, the executive branch of the City went to the City Council to propose a pay schedule for the police officers who would be working secondary employment as well as a fee to fund the OPSE. The City Council approved the pay schedule and it was codified as Municipal Code Ordinances 90-121 and 90-122.

The City now claims that the Court must take control of the pay rates expeditiously because of the necessity to obtain sufficient officers to work secondary employment during the upcoming Essence Festival. The City would have the Court believe that this problem just sprang up out of nowhere. That is not the case. The issue of the need for additional rates has been one which has been realized for some time and was, in actuality, the subject of discussions between the FOP, City Attorney Sharonda Williams and Col. Salomone of the Office of Police Secondary Employment ("OPSE") in April of this year. Subsequently a virtually identical proposal to that which is before this Court was put before the Criminal Justice Committee of the City Council almost two months ago.

Attached is the draft Ordinance which was proposed in late April of this year (Exhibit "A"). As the Court will note, the pay rates, bonuses and discounts are identical, except for the Tier 4 rate which is $68.00 in the proposed ordinance and $67.00 in the proposal before this Court and some minor tweaks to the administrative fee. This proposed Ordinance came before the the Criminal Justice Committee on April 30, 2014 (See Interoffice Memorandum to Council members, Exhibit "B"). At that latter meeting Col. Salomone appeared and made a presentation to the Committee

addressing the need for additional rates of pay higher than those currently in force. Part of the presentation was a PowerPoint slide show (Exhibit "C") which set forth a proposed four tier pay system (Exhibit "C", p. 5). However, the proposed Ordinance was deferred and the issue has not raised its head until almost two months later when the City filed its Motion to Amend Consent Decree.

The City knew that this was coming over *two months ago*, yet it sat by and did nothing. It now claims that there is an "emergency" and that the only way out is for this Court to act and take the budgeting power in this area away from the City Council. The executive branch of the City created this "emergency." This Court should not allow it to use this self-created "emergency" to bypass the City Council.

## ARGUMENT

**I. THIS COURT MUST NOT ALLOW THE CITY TO BYPASS IT'S OWN HOME RULE CHARTER.**

The City of New Orleans is governed by a Home Rule Charter pursuant to Article VI, Sections 4 - 6. Article III lf the Charter establishes the Council as the legislative body with the control over the purse strings:

> Section 3-101. Legislative Powers.
>
> (1) All legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations hereinafter set forth.
> (2) The Council shall have the right to levy any and all classes of taxes, excises, licenses, liens and fees necessary for the proper operation and maintenance of the municipality for the payment of debt, and for capital improvements that are not expressly prohibited by the Constitution...

The Charter gives the *Council* (not the Mayor) the power to levy, among other things, fees (Charter, Article III, Section 3-101), control over the budget (Charter, Article III, Sections 3-115-117)

and control over pay plans, to the extent that they do not conflict with Civil Service (Charter, Article III, Section 3-118).

Pursuant to its authority over monetary matters, the Council considered and passed the current rate schedule for OPSE. These rates were those proposed by OPSE, despite complaints that the "one size fits all" approach was not workable nor was it in accordance with then-current practices of setting different rates depending on the type of detail being worked. FOP submits that this unworkable pay schedule has contributed to the fall off in detail hours worked by NOPD officers.

The City apparently realized that its "one size fits all" approach was not working, so again, pursuant to the mandates of the Charter, went before to the Council in April of this year to implement a virtually identical four-tier pay schedule for secondary employment. For some reason the proposed ordinance did not make it to the full council and now, two months later, the City claims that this Court must modify the Consent Decree due to what it claims is an emergency based on what it also claims are unforeseen complications with the "one size fits all" rate schedule, *i.e.*, the inability to staff positions, and the need for "flexibility." Absent this Court, this would not even be an issue. The City Charter clearly sets forth procedures which must be followed in establishing fees, pay rates, etc. One of those mandated steps is City Council approval. For some unknown reason the City just sat on this issue for months, knowing full well that the time was coming that the rates would need to be addressed. Now, at the 11th hour, it comes to this Court asking to be bailed out by bypassing the Charter and the City Council, in violation of the Louisiana Constitution and the Charter.

This Court should not entertain the City's request. It is not only in direct violation of the Charter but, if granted, would open the door to a total bypass of the Council for any issue even tangentially related to this case. The stated intent of the Consent Decree is to support constitutional

policing, not to run roughshod over City government and supplant its legally mandated procedures.

## II.    THE CITY HAS NOT ESTABLISHED THE NECESSARY EVIDENTIARY BASIS TO OBTAIN A MODIFICATION OF THE CONSENT DECREE.

Modification of a Consent Decree is governed by Federal Rule of Civil Procedure 60(b). The Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748 (1992) developed a two-prong test for modification of a Consent Decree. The test was succinctly set forth by the Fifth Circuit in *League of United Latin American Citizens, District 19 v. City of Borne*, 675 F.3d 433 (5th Cir. 2012) ("*LULAC*"):

> First, the party seeking modification must show that "a significant change either in factual conditions or in law" that "make compliance with the decree substantially more onerous [or] ... unworkable because of unforeseen obstacles[,] ... or when enforcement of the decree without modification would be detrimental to the public interest." *Rufo,* 502 U.S. at 384, 112 S.Ct. 748. Second, the court must then "consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383, 112 S.Ct. 748.[1]

The Court went on to note that :...[t]o meet the first part of the test, the party seeking modification must show that the change in circumstance is "significant," and not merely that "it is no longer convenient to live with [the decree's] terms."[2]  Further:

> The burden is on the moving party to prove that modification is warranted, regardless of whether the party seeks to lessen its own responsibilities under the decree, impose a new and more effective remedy, or vacate the order entirely. *Rufo,* 502 U.S. at 384, 112 S.Ct. 748; *United Shoe,* 391 U.S. at 249, 88 S.Ct. 1496; *see Sierra Club v. Meiburg,* 296 F.3d 1021, 1033–34 (11th Cir.2002) (affirming the denial of a motion to modify a consent decree because the plaintiff failed to show a change in law and failed to show either that there was a change in factual circumstances or that the decree's purpose had not

---

[1] *LULAC*, 675 F.3d at 437.

[2] *Id*.

been achieved). The district court must therefore examine the evidence on the record and consider whether the moving party met its burden.[3]

In a vain attempt to carry its burden, the City has introduced the Affidavit of John Salomone, the head of OPSE (Record Document 362-2). In that document, Col. Salomone has stated that he has received comments from customers that they have paid and are willing to pay more for services (¶ 5); that some jobs demand higher pay due to the nature of the job (¶ 5); that some jobs are difficult to fill because of "high demand" (¶ 6); that the current fee schedule does not provide sufficient flexibility (¶ 7); and, that the new fee schedule "cures" these and other problems (¶ 8). He also cites the "immediate need" due to the Essence Festival (¶ 12). The problem is that not one of these situations warrants modification of the Consent Decree.

The first prong of the *Rufo* test requires that there be "a significant change either in factual conditions or in law" that "make compliance with the decree substantially more onerous [or] ... unworkable because of unforeseen obstacles[,] ... or when enforcement of the decree without modification would be detrimental to the public interest." *Rufo,* 502 U.S. at 384, 112 S.Ct. 748. The City does not contend that there has been a change in the law. Rather, it apparently contends that there has been a change in the factual conditions and that modification is therefore in the public interest and seeks to use Col. Salomone's affidavit as evidence to establish a change in circumstances. However, the affidavit does not show that anything has changed. Rather, it is in actuality an admission by Col. Salomone that he did not do his homework before establishing the "one size fits all" pay rate set forth in Ordinance 90-121. *Every one of the comments* that he says he has obtained from talking with customers *existed at the time the Consent Decree was entered*. Differing rates of

---

[3]*LULAC*, 675 F.3d at 438.

pay for different types of secondary employment was the norm. The *only* issue that he establishes that has reared its head *after* the entry of the Consent Decree is the "one size fits all" approach to secondary employment rates.

At the time these rates were being discussed and enacted, the City was told that one rate was unrealistic and would not work. Nevertheless, as was the case throughout the negotiation of the Consent Decree, those voices were not heard and the "one size fits all" pay scale was adopted. Now, because of its own mistake, the City now realizes that it needs the ability to set differing rates. This is nothing new and is a "problem" wholly created by the City's arrogance.

The evidence before the Court, *i.e.*, the Affidavit of John Salomone, does not carry the City's burden under *Rufo* and *LULAC*. There has been no "significant" change. Everything Col. Salomone notes and the City complains of existed at the time the Consent Decree was entered. The only change was based on the actions of the City, through OPSE, in enacting the "one size fits all" pay schedule. The City followed the proper, mandated procedure to enact the current pay scale by having the Council enact an ordinance. It should follow that same mandated procedure to enact a different pay scale.

## CONCLUSION

The City should not be rewarded for "sitting" on this issue and artificially creating an "emergency" solely to foster its own ends. It has known about the need for a flexible pay system for months, yet here we are. If the City wants to change the pay rates, it should pick up where it left off - with the Council. Amendment of the Consent Decree is not warranted and is unsupported by the facts and the law. There has been no change in circumstances. Rather, the City has now recognized circumstances that existed all along and about which it was warned and, until recently, did nothing.

The FOP agrees and supports the efforts to provide a more realistic pay schedule. However, it also believes that the City should go about it the right way in a process that would allow debate and comment as the law intends. It should follow its own Charter.

This Court should deny the Motion.

Respectfully submitted:

/s/ C. Theodore Alpaugh, III
**C. THEODORE ALPAUGH, III, T.A. (#02430)**
**CLAUDE A. SCHLESINGER (#15042)**
GUSTE, BARNETT, SCHLESINGER, HENDERSON & ALPAUGH, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone:     (504) 529-4141
Facsimile:      (504) 561-0326
Email:            cta@gustebarnett.com

**Attorneys for *Amici Curiae*,**
**CRESCENT CITY LODGE NO. 2, FRATERNAL ORDER OF POLICE, INCORPORATED and WALTER POWERS, JR., INDIVIDUALLY AND AS PRESIDENT OF CRESCENT CITY LODGE NO. 2, FRATERNAL ORDER OF POLICE, INCORPORATED**

# CERTIFICATE OF SERVICE

I do hereby certify that on this 29th day of June, 2014 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ C. Theodore Alpaugh, III   **C. THEODORE ALPAUGH, III, T.A. (#02430)**
**CLAUDE A. SCHLESINGER (#15042)**
GUSTE, BARNETT, SCHLESINGER, HENDERSON & ALPAUGH, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone:   (504) 529-4141
Facsimile:    (504) 561-0326
Email:         cta@gustebarnett.com

**Attorneys for *Amici Curiae*,**
**CRESCENT CITY LODGE NO. 2, FRATERNAL ORDER OF POLICE, INCORPORATED and WALTER POWERS, JR., INDIVIDUALLY AND AS PRESIDENT OF CRESCENT CITY LODGE NO. 2, FRATERNAL ORDER OF POLICE, INCORPORATED**

C:\Work\FOP.Consent Decree\MMO.opp.mtn.amend.CTA.06282014.wpd