UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CIVIL ACTION NO.** |
| | | **12-CV-01924** |
| **VERSUS** | : | |
| | | **SECTION E** |
| | : | **JUDGE SUSIE MORGAN** |
| **CITY OF NEW ORLEANS** | | |
| | : | **DIVISION 2** |
| | | **MAGISTRATE WILKINSON** |

### RESPONSE TO AMICUS CURIAE IN OPPOSITION TO MOTION TO AMEND CONSENT DECREE

Defendant, the City of New Orleans ("City"), respectfully submits this Response to the Amicus Curiae filed by the Crescent City Lodge No. 2, Fraternal Order of Police, Incorporated and Walter Powers, Jr. (jointly "FOP") in opposition to the City's Motion to Amend the Consent Decree. Yet again, FOP is attempting to thwart any efforts by the City to comply with the secondary employment provisions of the Consent Decree. FOP recognizes that "[d]iffering rates of pay for different types of secondary employment was the norm" before the entry of the Consent Decree. Rec. Doc. No. 374, pp. 6-7. FOP also asserts that it "welcomes and supports providing more realistic rates of pay for police officers working secondary employment." Rec. Doc. No. 374, p. 1. In spite of these statements, FOP opposes the City's Motion to Amend, which seeks to do precisely what FOP acknowledges is needed--providing officers the opportunity to receive different pay for secondary employment jobs that warrant it from employers willing to pay it.

1

I.  **The City's Motion Does Not Seek to Circumvent the Legislative Process or the Provisions of the Home Rule Charter**

As this Court is aware, just a few short months ago, FOP filed a lawsuit challenging the ordinances passed by the City Council related to the fee schedule utilized by the Office of Police Secondary Employment ("OPSE"). *See Powers v. City of New Orleans*, 2014 WL 1366023 (E.D. La. April 17, 2104). In *Powers*, FOP argued that the City Council improperly enacted the ordinances setting the fee schedule the City is required to establish under the Consent Decree. Now, FOP has changed course and asserts that the City Council properly enacted the ordinances and is the only body capable of changing the rates set forth in the ordinances. FOP incorrectly states that the executive branch is attempting to bypass Home Rule Charter provisions and the City Council to amend pay rates. Nothing is farther from truth. The City acknowledges the Council's legislative powers as set forth in the Charter. The City agrees with FOP that the Council has the power to levy fees necessary for the proper operation and maintenance of the municipality and to establish pay plans for certain City employees. *See* Home Rule Charter, §§ 3-101, 3-115-117, and 3-118. The City is not asking this Court to trample the Council's authority under these provisions. What the City is asking this Court to do is to amend its own order--the Consent Decree.

FOP's assertion that the City is bypassing the Charter is based on the incorrect premise that the City is seeking to change pay rates for City employees, which unquestionably is a function within the Council's authority. Section 3-118 of the Charter provides:

> All persons employed by the City or any of its boards, whether as officers or otherwise, and paid either in part or in whole from appropriations made by the Council, except those whose compensation is fixed in this Charter, shall be compensated only in accordance with pay plans adopted by the Council.

Home Rule Charter, §3-118.

As this Court held in *Powers*:

17. Secondary employment after approval of the Consent Decree, even as modified by the Challenged Ordinances and overseen by OPSE, is still **work at the officer's election for private non-City entities while off-duty**. **Therefore, secondary employment is not city service** and remains outside the CSC's jurisdiction. The rates for secondary employment set by the Challenged Ordinances do not infringe on any matter within the CSC's jurisdiction.

18. The Challenged Ordinances and **the creation of OPSE do not modify the nature of secondary employment in a manner that makes NOPD officers employees of OPSE or the City when doing that off-duty work. Payment for secondary employment still comes from third-party private citizens or entities**. The fact that the hourly rate paid by third parties for secondary employment is transmitted to NOPD officers through the NOPD payroll system does not change the source or character of those payments, and does not make NOPD officers the employees of OPSE or the City while doing that secondary employment work.

19. Participation in secondary employment is still at the officer's option and OPSE cannot make any NOPD officer work secondary employment. Once an officer is matched to a secondary employment job, the third-party private citizen or entity directs how that officer performs the job, not OPSE. In short, OPSE is no more the "employer" of officers performing secondary employment than was the coordinating officer their employer under the pre-Consent Decree paid detail system.

*Powers*, 2014 WL 1366023, *6.

Based upon this Court's well-reasoned ruling, the schedule of fees for secondary employment are not pay rates or part of a pay plan for City employees. Instead, it is a schedule of amounts paid by third-party private citizens. As this Court noted, "[t]he fact that the hourly rate paid by third parties for secondary employment is transmitted to NOPD officers through the NOPD payroll does not change the character or source of those payments." *Id.* Officers working secondary employment are not employed by the City and are not paid by appropriations made by the Council. Accordingly, Section 3-118 of the Charter does not apply, and the Council's legislative authority or employee pay is not implicated by the City's Motion.

Section 3-101 of the Charter provides "[t]he Council shall have the right to levy any and all classes of taxes, excises, licenses, liens and fees necessary for the proper operation and maintenance of the municipality for the payment of debt…." Presumably, FOP's argument rests on the premise that the administrative fee charged by the OPSE is a fee necessary for the proper operation of the City, and such fee must be levied by the Council. The Council established an administrative fee of 15% of the hourly rate or not more than $5.00. *See* New Orleans Municipal Code §90-121. The City is not asking the Court to change the administrative fee imposed by the Council. The City is seeking this Court's order adding additional fees that a third-party citizen may pay officers performing secondary employment. The City is requesting the following schedule of rates:[1]

| Tier | Standard Pay/Fee/Price Schedule | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PO | | | Sgt | | | Lt | | | Capt/Maj/Cmdr | | |
| | Officer Pay | Admin Fee | Customer Price | Officer Pay | Admin Fee | Customer Price | Officer Pay | Admin Fee | Customer Price | Officer Pay | Admin Fee | Customer Price |
| 1 (Standard) | $29.33 | $4.35 | $33.68 | $32.10 | $4.80 | $36.90 | $35.00 | $5.00 | $40.00 | $39.00 | $5.00 | $44.00 |
| 2 (Plus) | $34.00 | $5.00 | $39.00 | $37.50 | $5.00 | $42.50 | $41.00 | $5.00 | $46.00 | $46.00 | $5.00 | $51.00 |
| 3 (Holiday) | $46.33 | $5.00 | $51.33 | $49.10 | $5.00 | $54.10 | $52.00 | $5.00 | $57.00 | $56.00 | $5.00 | $61.00 |
| 4 (Max) | $68.00 | $5.00 | $73.00 | $68.00 | $5.00 | $73.00 | $68.00 | $5.00 | $73.00 | $68.00 | $5.00 | $73.00 |

In addition, the City has requested that the Court allow the Director of the OPSE to seek one-time pay rate exceptions that deviate from the above schedule when events require a different pay by a third-party employer. The Court should note that the administrative fee associated with the requested additional pay categories is consistent with the 15% or not more than $5.00 fee established by the Council.

The City also has requested that officers working forty (40) or more hours of secondary employment events within any two week pay period be entitled to receive additional pay of 50% of the administrative fee charged to the customer for all hours worked during that pay period.

---

[1] The City's original motion included a table that contained incorrect figures. The City hereby submits the corrected figures that the City seeks the Court to order.

4

The City also requested that, in instances in which a customer schedules one hundred (100) or more hours of secondary employment within any two week pay period, the Court authorize the OPSE Director to discount such customer's hourly rate by an amount not to exceed 30% of the standard administrative fee applicable to the event.  Even if the Court allows these requested discounts to the hourly rate and increased payments to officers, the City is not changing the administrative fee that is being applied, which is consistent with the fee established by the Council.  Further, to the extent that FOP asserts that applying such bonuses and discounts alters the administrative fee imposed by the Council, the Court should note that the Charter recognizes that a court of competent jurisdiction may issue an order "affect[ing], augment[ing], diminish[ing], or modif[ying]" rates and matters under the regulation, control or supervision of the Council.  Home Rule Charter, §3-130(9).  As this Court is aware, this Court maintains jurisdiction over the Consent Decree "for all purposes", and this Court has jurisdiction to enter orders affecting the operations of the OPSE, which was established by the express terms of the Consent Decree.  Consent Decree, ¶ 486.  Accordingly, the City is not seeking an order from this Court that circumvents the Charter or the Council's authority.  The City is simply seeking an order from this Court amending the Consent Decree that it entered and adding hourly rates of pay for officers who are performing work for third-party employers.

**II.      FOP's Own Statements Substantiate Colonel Salomone's Affidavit in Support of the City's Motion, and the City Has Met its Burden With Regard to Amending the Consent Decree.**

FOP attempts to undermine the weight of the Affidavit of Col. John Salomone, the Director of the OPSE, but FOP has not presented any evidence that contradicts Col. Salomone's affidavit. While challenging Col. Salomone's affidavit, FOP makes inconsistent assertions that support Col. Salomone's statements:

- FOP welcomes and supports providing more realistic rates of pay for officers working secondary employment. *See* Rec. Doc. No. 374, p. 1.
- The current pay schedule is "unworkable" and "has contributed to the fall in detail hours worked by NOPD officers." Rec. Doc. No. 374, p. 4.
- The current pay schedule is not in accordance with prior practices of setting different rates depending on the type of detail being worked. *See id.*
- The *Rufo* test for modifying the Consent Decree requires that compliance with the Consent Decree be "unworkable" due to unforeseen obstacles. Rec. Doc. No. 374, p. 6.

FOP's own assertions support the City's position that the Consent Decree should be modified under *Rufo*. In particular, if the Court accepts the FOP's assertion that the current pay schedule is unworkable and that there is a fall in detail hours worked by NOPD officers, the *Rufo* requirement that an unforeseen obstacle that makes compliance unworkable is met. As such, the Consent Decree should be modified.

### III.    Conclusion

The City's Motion seeks an order from the Court amending the Consent Decree it entered to allow additional rates of pay by third-party employers to off-duty officers working secondary employment. This Court has jurisdiction over the Consent Decree for all purposes, and the Court can set pay rates for third-party employers hiring officers for secondary employment, as those officers are not acting as employees of the City while doing secondary employment assignments. The City is not seeking to usurp the Council's legislative authority. The City seeks this Court's order to allow a pay schedule that will address the very concerns highlighted by FOP regarding the rates of pay. The City's Motion should be granted.

Respectfully submitted,

/s/ Sharonda R. Williams
CHRISTY HAROWSKI (LSB #30712)
DEPUTY CITY ATTORNEY
CHERRELL R. SIMMS, 28227
SR. CHIEF DEPUTY CITY ATTORNEY
SHARONDA R. WILLIAMS (LSB#28809)
CITY ATTORNEY
1300 Perdido Street, Ste. 5E03
New Orleans, Louisiana  70112
Telephone:  504-658-9920
Facsimile:  504-658-9868
shrwilliams@nola.gov

*Attorneys for the City of New Orleans*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record through the Court's CM/ECF electronic filing system this 24th day of July, 2014.

/s/  Sharonda R. Williams
SHARONDA R. WILLIAMS