MINUTE ENTRY
MORGAN, J.
February 26, 2015

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **No. 12-1924** |
| | |
| **CITY OF NEW ORLEANS,** | **SECTION "E"** |
| **Defendant** | |

A status conference was held on the record on February 26, 2015 at 1:30

p.m. in the chambers of Judge Susie Morgan.

Present:  Emily Gunston and Jude Volek (via telephone); Jonas Geissler and Theodore Carter (in person), on behalf of Plaintiff, the United States of America ("United States");

Sharonda Williams, City Attorney; Andy Kopplin, Deputy Mayor and Chief Administrative Officer of the City of New Orleans; John Salomone, Director Lieutenant Colonel of the Office of Police Secondary Employment ("OPSE"); and Jonathan Wisbey, on behalf of Defendant, the City of New Orleans ("City");

Commander John Thomas and Commander Richard Williams, on behalf of the New Orleans Police Department ("NOPD");

Deputy Superintendent Jay Ginsberg, Benjamin Horwitz and Alexandra Skaggs, on behalf of the Consent Decree Compliance Bureau ("Compliance Bureau");

Jonathan Aronie, Geoff Alpert and Alex del Carmen (in person) and David Douglass (via telephone), Office of the Consent Decree Monitor ("Monitor").

Arnauldo Claudio, monitor from Puerto Rico.

1

The parties discussed various issues related to OPSE and secondary employment. The Court is concerned that officers working details typically do not wear cameras. NOPD will explore whether it is feasible to require these officers to wear body-worn cameras. NOPD shall consider the cost of purchasing additional cameras and the cost of storing the recorded video on NOPD's servers.

French Quarter Festival ("FQF") and Jazz Festival ("JF") will be handled by OPSE this year. Both festivals intend to compensate officers at the same rate as in years past. FQF and JF have also indicated a preference to maintain their current staffing ratios. The City will circulate a proposal with these changes to the parties before filing it with the Court.

Colonel Salomone explained OPSE's process for assigning officers to FQF and JF. Officers with experience working these events are given preference. Any remaining positions are posted for all officers registered with OPSE.

The Consent Decree limits officers from working—whether on duty or through OPSE—more than 16 hours in a 24-hour period. Mr. Kopplin explained the special problems this limitation presents during FQF and JF. The City requested a limited exception to the work-hour limitation. The City will circulate a proposal to the parties before filing it with the Court.

Colonel Salomone explained the disciplinary process for officers who violate OPSE policy. For example, if an officer fails to attend an assigned detail, he or she is given a warning. If the officer fails to attend a second assigned detail, he or she receives

a seven-day suspension from task-based details.  Colonel Salomone expressed his belief that the disciplinary process is serving its intended goal of deterrence.

OPSE has developed a proposal to co-manage motorcycle escorts with the traffic division of NOPD.  The traffic division would be responsible for day-to-day deployment under OPSE supervision.  The proposal will limit the traffic division's discretion to assign motorcycle details to officers.  By developing a set of objective criteria, OPSE will ensure motorcycle details are assigned in a fair and transparent manner.  Under the current proposal, Colonel Salomone reported OPSE would need to hire at least one additional supervisor.  The Monitor will discuss OPSE's proposal with DOJ.

The parties discussed various issues related to the development of NOPD policies. The following policies have been approved: (1) body-worn cameras; (2) in-car cameras; (3) domestic violence; (4) disciplinary investigations; and (5) non-disciplinary counseling.

The parties continue to work on the canine policy.  Off-leash deployment is an issue that remains to be resolved.

DOJ is currently reviewing the pursuit policy.  DOJ will provide any feedback to the Monitor shortly.

The parties will continue to work on the policies for misconduct, and searches and arrests.

All use of force policies shall be completed by the next status conference.  No extensions will be granted.  The parties shall meet next week to discuss outstanding issues related to use of force and the canine policy.  By the end of the day tomorrow, NOPD will confirm it has given all revisions and comments to DOJ and the Monitor.

3

The Monitor reported on the status of community surveys. The police officer survey, the detainee survey, and the community survey are finished. The Monitor is now analyzing the surveys and hopes to issue a stand-alone report within four weeks.

The parties discussed various issues related to application for employment with NOPD. The Court was dismayed to learn that NOPD eliminated the college-credit requirement without giving prior notice to the Court. NOPD shall not make major policy decisions like this in the future without first discussing the matter with the Court. The Court also reminded NOPD of its obligation to provide information to the Monitor whenever and wherever requested, including an explanation of how NOPD has enhanced the interview process to compensate for the elimination of the college credit requirement.

The New Orleans Civil Service administers various tests at the beginning of the application process, including an oral interview, a written test, and a multiple choice test. The Monitor explained the oral interview is conducted pursuant to a rigid set of questions that does not allow for follow-up questions by the interviewer. The Monitor feels these restrictions unduly limit the interviewer's information to obtain important information about a candidate for the NOPD.

NOPD and the Monitor have tried unsuccessfully to obtain a copy of the tests administered by the Civil Service. Michelle Craig is the Civil Service chairman, and Lisa Hudson is the executive director of the Civil Service. The parties will continue to seek access to the tests through Ms. Craig and Ms. Hudson. If necessary, the Court will get involved.

The parties discussed various issues related to officer training.  The Court ordered the Training Academy to  ensure all classrooms are equipped with microphones.

Mr. Kopplin provided an update on the development of new training facilities. The City will provide the Court with a list of all capital projects related to NOPD.  The City and NOPD will meet tomorrow at 2:00 p.m. to discuss the development of a new shooting range for officer training.  Mr. Kopplin will provide an update on this issue at the next status conference.

The Training Advisory Committee is in the process of developing a written training plan, as required by Paragraph 249 of the Consent Decree.  The Committee will receive assistance from a variety of sources, including the Monitor, Ms. Alexandra Skaggs, C.O.P.S., and outside consultants.  The training plan shall include a set of timelines by which the goals set forth will be accomplished.  The City will provide the plan to DOJ immediately upon completion.

The Training Academy will provide the Monitor and Ms. Skaggs with lesson plans and course materials for in-service training by March 12, 2015.  The Monitor will review those plans and respond with any feedback.  In-service training will continue even though not all lesson plans have been rewritten.

The parties discussed various issues related to body-worn cameras.  NOPD currently has 553 body-worn cameras, 425 of which have been assigned to officers. NOPD has ordered an additional 100 cameras.  32 officers currently do not have cameras.  NOPD plans to outfit every patrol officer and general assignment officer with body-worn cameras.  Cameras will be assigned individually to officers, rather than to a

particular police district.  All officers doing proactive work will be required to wear a camera unless specifically exempted.  NOPD will draft a document that clearly sets forth when officers are not required to wear cameras.  This document shall address an officer's camera obligations when he or she is working as part of a federal task force.

NOPD updated the Court on its tagging system for cameras.  NOPD now has the software it needs.  The next step is to instruct officers on how to use the software.

NOPD reported on the status of updates to its in-car camera systems. NOPD has acquired the servers and equipment to which video from the in-car cameras will be uploaded.  NOPD has been authorized to purchase additional software necessary for this system.  The final piece of equipment to be procured is a Stream Hub.  A request has been made to the procurement officer.  The procurement officer will be advised the Court would like a final decision as soon as possible.  The new in-car camera system should be fully functional within one to two months.  Mr. Wisbey will provide an update at the next status conference.

Chief Harrison will update the Court on his system for holding supervisors accountable at the next status conference.

NOPD updated the Court on the early warning system (the "EWS").  The EWS project continues to move forward.  The parties have held three weekly conference calls. The contractor recently visited to discuss its long-term vision for EWS in New Orleans.

The Monitor continues to review NOPD's use of Signal 21 and other codes for police calls.

The Monitor met yesterday with Deputy Chief Landry regarding NOPD's budget. Chief Landry agreed to provide the Monitor with updated information as soon as possible.

Chief Harrison will review whether the Public Integrity Bureau needs more resources to carry out its mission.  Chief Harrison will report back to the Court.

The Court clarified that Mr. Kopplin must attend all future status conferences including public status conferences.  The Court also requested that Chief Landry attend all status conferences.

**New Orleans, Louisiana, this 16th day of March, 2015.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

JS10 (3:36)

7