CITY OF NEW ORLEANS
LAW DEPARTMENT
1300 PERDIDO STREET, 5TH FLOOR EAST
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
TELECOPIER: (504) 658-9868

LATOYA CANTRELL
MAYOR

SUNNI LeBEOUF
CITY ATTORNEY

December 6, 2018

*Via Email* susiemorgan@laed.uscourts.gov *& U.S. Mail*
The Honorable Susie Morgan
United States District Court
Eastern District Court of Louisiana
500 Poydras Street, Room C322
New Orleans, Louisiana 70130

*Via Email* jude.volek@usdoj.gov *& U. S. Mail*
Mr. Jude James Volek
United Stated Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*Via Email* jaronie@sheppardmullin.com *& U.S. Mail*
Mr. Jonathan S. Aronie
Sheppard Mullin Richter and Hampton, LLP
2099 Pennsylvania Avenue, NW Suite 100
Washington, DC 20006-6801

    Re:    *United States of America v. City of New Orleans*, CA. No. 12-1924
              ***(New Orleans Police Department Consent Decree)***

Dear Judge Morgan, Mr. Volek and Mr. Aronie:

    I write on behalf of the City of New Orleans, the Mayor and New Orleans City Council, and the New Orleans Police Department ("NOPD" or the "Department") (collectively, the "City"), regarding the referenced matter. The purpose of this correspondence is to object to the proposed January 25, 2019 televised public hearing in this ongoing litigation matter. The City further objects to NOPD's participation in a televised public hearing in advance of a compliance determination. The City has no objection to the public hearings ordinarily occurring in United States District Court which are open to the public but not televised. The City respectfully suggests that a televised public hearing should more appropriately occur concurrent with a compliance determination. The City believes such a determination is ripe to occur in the very near future as illustrated by the NOPD Compliance Bureau's assessment, which currently shows NOPD to be at 93% compliance.

    As you know, NOPD has unequivocally emerged as a nationwide leader on police reform, with NOPD personnel currently traveling around the country training and working with other

departments on police reform efforts. This speaks to its success as a Department committed to accomplishing constitutional policing, while simultaneously ensuring public safety, and working with other police departments around the country in their efforts to accomplish the same.

The City of New Orleans is extremely proud of the turnaround reforms accomplished by the Department through the tireless, dedicated, and hardworking efforts of Chief Michael Harrison and the men and women of NOPD. Notably, these successful reforms have only been made possible through the City's continuing financial and manpower investment in the Department, while working in collaboration with the Court, monitors, parties and stakeholders. These investments date back to at least 2013, with substantial progress beginning in 2014 under Chief Harrison's leadership. The goal is and has always been, to accomplish compliance, and more importantly, to accomplish continuous and sustained improvement in constitutional policing. We believe NOPD has accomplished continuous and sustained improvement in constitutional policing, as required by the Consent Decree's outcome measures.

In further illustration of the City's ongoing commitment to the reforms outlined in the Consent Decree, it should be noted the City will have spent approximately $10,275,674.00 on Court appointed monitoring team fees and costs alone, over the life of the Consent Decree. The monitoring team is comprised of approximately ten (10) individuals (lawyers, academics and retired police chiefs from other jurisdictions) some of whom fly in monthly, at the City's expense. From 2013 to date, monitoring costs to the City have included, but are not limited to, the Court appointed monitors' hourly billing fees (ranging from $468/hr per monitor to $243/hr per monitor), the Court appointed monitors' monthly airfare/travel costs (ranging monthly depending on the date of purchase, time of year, holiday, festival, etc.), the Court appointed monitors' monthly Sheraton Hotel costs (ranging monthly), the Court appointed monitors' daily meals while in New Orleans (costs range monthly), and the Court appointed monitors' monthly ground transportation costs (Uber and taxi costs vary monthly). On average, the City has paid approximately $161,360.00 per month in Court-appointed monitoring fees and costs, without a substantive reduction in costs, dating back to 2013.

The Court appointed monitors are paid directly by the City and have been invaluable in assisting the Department with achieving successful reforms. However, the monitors take orders from, and report directly to, the Judge (and not the City). Thus, it is difficult for the City to manage the monitors' billing and associated costs in a manner which ensures that they are only working on Consent Decree/constitutional policing related issues, and not on NOPD and/or City management related matters – which NOPD and/or City personnel should handle exclusively. The Consent Decree stipulates the Court appointed monitors shall not replace or assume the role and duties of the City and NOPD, including the Superintendent. Yet, it appears that lines have been blurred over the years, and the City's questions about certain matters in which the monitors and Court are currently dedicating time and resources are often met with disdain.

While the City is responsible for bearing all "reasonable" costs for the monitors, the City asks that the Court and the monitors direct all monitoring efforts to Consent Decree/constitutional policing issues only. The City specifically objects to the Court and/or the monitors exercising authority over City Departments, including decisions regarding City contracts, office set-up, and

other such particulars, as well as any and all NOPD responsibilities that are not related to constitutional policing, as set forth in the Consent Decree (e.g., deployment strategies, etc).

To provide some additional context regarding the City's financial investment, Consent Decree spending is expected to total $55,047,293.00 by the end of 2019 (over the life of the Consent Decree). Importantly, however, these monetary amounts pale in comparison to the ongoing investment of NOPD time, energy, manpower and resources dedicated to accomplishing the work of the Consent Decree. NOPD personnel meets with and reports to the Court at least monthly, meets with and reports to the monitors at least monthly, host the monitors during their recurring and continuing NOPD visits, and on some occasions, host the United States District Court Judge during unannounced visits to NOPD offices.

Because the Consent Decree is ongoing litigation, the City specifically requests the following: 1) the City Attorney (or her designee) be copied on any and all correspondence, which includes correspondence to NOPD, as well as correspondence to personnel with any and all City departments; 2) the City Attorney (or her designee) be advised of any scheduled meetings with the Court and/or with the monitors; and 3) the work of the monitors be focused exclusively on accomplishing the work of the Consent Decree/constitutional policing matters going forward.

The City wholly, and without reservation, remains committed to the monumental reforms accomplished by our very own NOPD. The City reiterates its commitment to ensuring that NOPD is equipped with the tools and resources necessary to ensure the Department's success and constitutional policing efforts, notwithstanding the City's limited resources. The men and women of the Department have made us proud, and we are collectively obligated to acknowledge their accomplishments as a model Department, and will look forward to doing so via a televised proceeding concurrent with a substantial compliance or compliance determination in the near future. While there are many criticisms associated with consent decrees, NOPD stands as a model of what can be accomplished through collaboration, and a dedicated commitment to getting it right. We trust that NOPD will be appropriately acknowledged for their hard work, dedication, collaboration, and commitment, in the very near future, and that all of our collaborative partners are committed to same.

We want the men and women of NOPD to know that we stand with them, and wholeheartedly commend them, for their accomplishments in elevating the Department to heights admired by other Departments throughout the Country.

_____
SUNNI J. LEBEOUF
CITY ATTORNEY

_____
MAYOR, LATOYA CANTRELL
CITY OF NEW ORLEANS

_____
CHIEF OF POLICE, MICHAEL HARRISON
NEW ORLEANS POLICE DEPARTMENT

_____
COUNCIL PRESIDENT, JASON WILLIAMS
CITY OF NEW ORLEANS

_____
COUNCIL VICE PRESIDENT, HELENA MORENO
CITY OF NEW ORLEANS

cc:   The New Orleans City Council
      Chief Administrative Officer, City of New Orleans