

# Order of Presentation

- Matt Segraves – Introduction and Overview of Paragraphs

- Lt. Powell – Field Operations Bureau Compliance Plan

  - Including SSA Inspection Process (Slide 30)

  - Including DA Case Refusal Tracking and Process in FOB (Slide 21)

- Sgt. Boone – How DSA Conducts District SSA Inspection

- Chief Goodly – Overview of Accountability for Corrective
  Actions by Districts (Slide 32)

- Captain Banks – Closing Remarks

# Outstanding SSA Tracker Items

- 2021 Stop & Search Annual Report

- Training Re Updates to 1.2.4

- Release 10.1 Public Safety Rides

- Review of Data Privacy Standards (CD 154)

- Review of DA Refusal Follow-up

- Vehicle Exits

- Review 2021 Perf Eval Audit

- Review Notify PSS Log

- Review SSA-Related Supervision Memo

- FOB Inspection Verification

- FOB Inspection Guidance Doc



## CD SSA Intro paragraph -

Based on review of video:
The officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop:
94% in May 2021 and rose to 99% thru May of 2022.

Did the officer say something that is possibly offensive about/to LGBTQ individuals and did the officer address the subject by their chosen name, title, and pronoun:
May 2021 -100% for both.

Was a Miranda Warning given if required by law and policy. Was the Miranda Warning given at the appropriate time?
Has risen from 94% in Oct 2021 to 98% as of May 2022.
Miranda Warning audit criteria added after May 2021 SSA Audit.

| 1 | All NOPD investigatory stops, searches, and arrests are conducted in accordance with the rights secured or protected by the Constitution and laws of the United States. |
|---|---|
| 2 | Investigatory stops, searches, and arrests are part of an effective overall crime prevention strategy. |
| 3 | Investigatory stops, searches, and arrests are consistent with community priorities for enforcement |
| 4 | Investigatory stops, searches, and arrests are carried out with fairness and respect |
| 5 | To achieve these outcomes, NOPD agrees to implement the requirements set out below. |



- Paragraphs 122
  A. Investigatory Stops & Detentions

  Did the officer(s) have reasonable suspicion or probable cause to stop this subject:
  Rose from 94% in May 2021 to 100% in May 2022.

  Does the report clearly articulate reasonable suspicion or probable cause to stop this subject:
  Rose from 92% in May of 2021 to 100% in May 2022.

Paragraph 122

NOPD officers may only conduct investigatory stops or detentions where the officer has reasonable suspicion that a person has been, is, or is about to be engaged in the commission of a crime. Chapters 1.2.4 & 1.2.4.1 .

- Paragraphs 123
  A. Investigatory Stops & Detentions

No boilerplate, officers use description language in reports
100% May 2021, 99% in May 2022.

The video(s) and reports significantly consistent :
Rose from 65% in May 2021 to 99% in May 2022.

Pat down justification sufficient
Rose from 60% in May 2021 to 98% in May 2022.

Description of evidence matches video:
100% in May 2021

Reason for handcuffs documented in the FIC:
Rose from 85% in May 2021 to 99% in May 2022

Valid legal basis for search documented:
Rose from 83% in May 2021 to 99% in May 2022

Paragraph 123

NOPD officers shall use accurate and specific descriptive language and not rely solely on "boilerplate" or "pat" language in any reports documenting investigatory stops, detentions, or searches. Articulation of reasonable suspicion and probable cause shall be specific and clear.

Chapter 1.2.4

- Paragraph 124
  SSA Audit form instructions require immediate action
  None observed during audits

Paragraph 125
Rely on bias-free audit/data analysis,
See vehicle exits findings and corrective action in Bias-free ppt

**Paragraph 124**

NOPD officers shall not use or rely on information known to be materially false or incorrect in effectuating an investigatory stop or detention.
Chapter 1.2.4.

**Paragraph 125**

NOPD officers shall not use race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, or gender identity as a factor, to any extent or degree, in establishing reasonable suspicion or probable cause, except as part of an actual and apparently credible description of a specific suspect or suspects in any criminal investigation.
Chapter 1.2.4 & 1.2.4.1.

- Paragraph 126
  FIC Exists if Required
  Rose from 93% in May 2021 to 99% May 2022

  RS/PC to Stop in Report
  Rose from 92% in May 2021 to 100% in May 2022

  Videos and Reports are Consistent
  Rose from 65% in May 2021 to 99% in May 2022



Paragraph 126

NOPD officers shall continue to require reasonable suspicion to conduct field interviews, and document investigatory field contacts, including field interviews, in accordance with the stop and search data collection requirements of this Agreement.

Chapters 1.2.4, 1.2.4.1, and 41.12

- Paragraphs 127
Rely on bias-free audit/data analyses
See pat downs disparity analysis

Paragraph 128
(Low number of incidents cause steep change in percentages.)

If a consent to search occurred, the video showed the officer notified a supervisor before he/she conducted a search based on consent: Done in 9 of 10 cases between May and December of 2021.

If a consent to search occurred,  the video showed the supervisor approved the consent to search before the search was conducted: Done in 8 of 9 cases between May and December of 2021.

| Paragraph 127 | NOPD officers shall not use race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, or gender identity in exercising discretion to conduct a warrantless search or to seek a search warrant, except as part of an actual and apparently credible description of a specific suspect or suspects in any criminal investigation. Chapters 1.2.4.2<br><br>Continued emphasis on Constitutional Policing during both Supervisor In-Service and Officer In-Service Training.  Specifically conducted in Problem Based Learning (PBL) scenarios. |
|---|---|
| Paragraph 128 | An officer shall immediately notify a supervisor when considering a search based on consent, and the supervisor shall approve the search before it is conducted. Chapter 1.2.4. |

- Paragraphs 129
  B. Searches

  If a consent to search occurred, a Form 146 exists for the consent to search: Done in 9 of 10 cases from May thru December 2021 and was signed 100% of the time.

  If a consent to search occurred, does video show the officer informing the subject of his or her right to refuse and to revoke consent at any time: 67% (2/3). (1 deemed non-compliant because the CTS form 146 was not read aloud to the subject, but it was given to the subject and signed by the subject.) If a consent to search occurred, does form 146 include the signature of the person granting consent: 9/9 from May-Dec 2021

Paragraph 129

Where an officer seeks consent for a search, the officer shall affirmatively inform the subject of his or her right to refuse and to revoke consent at any time and document the subject's consent on a written form that explains these rights. Chapter 1.2.4.

- Paragraph 130
  May 2021 Search Legal –
  9/9 (P&P sample), 7/7 (SSA Sample)
  May 2021 Legal basis for search documented –
  9/9 (P&P sample), 6/7 (SSA Sample)

  Paragraph 131
  May-Dec 2021 Subject Signed Form
  9/9
  May-Dec 2021 Officer Signed Form
  9/9

| Paragraph 130 | NOPD officers shall only conduct searches of individuals on probation or parole where legal authority for the search has been established. Chapters 1.2.4, 41.13 |
|---|---|
| Paragraph 131 | NOPD agrees to ensure that the consent to search form includes separate signature lines for civilians to affirm that they understand they have a right to refuse, and for officers to certify that they have read and explained the right to refuse to the civilian. Chapter 1.2.4, Form 146 |

- Paragraphs 132
  B. Searches

Relevant audit questions:
Does this incident involve a strip or cavity search?
If yes, if the strip or cavity search documented in an FIC or EPR?
Based on the evidence available to you, was there probable cause to conduct the strip or cavity search?
If the incident involved a strip search in the field, does the FIC or EPR explain "exigent circumstances where the life of officers or others may be placed at risk"

NOPD 100% Compliant ( 2020 Audit, none in May 2021 when SSA audit conducted, results expected for June 2022 SSA Audit).

Training modified to reflect updates to Chapter 1.2.4

Paragraph 132

NOPD agrees to ensure that officers understand how strip and body cavity searches are different than regular searches and are trained on how to conduct proper field strip searches. NOPD shall ensure that field strip searches of arrestees are performed only in the rarest of circumstances under exigent circumstances where the life of officers or others may be placed at risk, under conditions that provide privacy, and with the explicit approval of a supervisory officer. NOPD agrees to ensure that strip searches are only performed when the officer has articulable probable cause that a subject is concealing a weapon or contraband.

Chapter 1.2.4

Paragraphs 133
B. Searches

NOPD 100% Compliant ( 2020 Audit, none in May 2021 when SSA audit conducted, results expected for June 2022 SSA audit)

Relevant audit questions:

If the incident involved a strip search, does video or the report show the officer <u>received approval</u> to conduct the strip search?
If the incident involved a strip search, did the officer receive <u>written approval</u> from a supervisor for the strip search?
If the incident involved a strip search and the officer received approval from a supervisor, does video or the report show the <u>supervisor make the scene</u>?
If the incident involved a strip search, do reports or video show the <u>minimum number of officers</u> necessary to conduct the strip search?
If the incident involved a strip search, did the officer take the necessary steps to <u>identify the subject's identified gender</u>?
If the incident involved a strip search, do reports or video show the strip search was <u>performed by officers of the same gender</u> as the identified-gender of the subject?
If the incident involved a strip search, do reports or video show it was conducted <u>under conditions that provided privacy</u> from all but those authorized to conduct the search?
If the incident involved a strip search, does video show it was <u>conducted in a professional manner</u>?

Training modified to reflect updates to Chapter 1.2.4

Paragraph 133

When approval to conduct a strip search is requested, the supervisor shall immediately respond to the scene to approve the strip search. In situations where strip searches are legally justified, necessary under NOPD policy, and authorized by a supervisor, the search shall be conducted in a professional manner by trained personnel; include the least number of personnel necessary; be performed only by those of the same sex as the identified sex of the individual; and under conditions that provide privacy from all but those authorized to conduct the search.
Chapter 1.2.4.

Paragraphs 134
B. Searches

Does this incident involve a strip or cavity search?

If the incident involved a cavity search, do reports show it was conducted by medical personnel?

If the incident involved a cavity search, do reports show the officer got a search warrant?

Last instance was in 2017.

All are audited, if they occur (SSA audit sampling methods includes queries of FICs and EPRs for instances to audit)

Paragraph 134

NOPD agrees to ensure that body cavity searches are performed only after obtaining a search warrant and by specially trained medical personnel.

Chapter 1.2.4

Audit conducted by OCDM.

- Paragraph 135
  SW Audit - Q7 Warrant Includes App 100%
  SW Audit - Q8 App has PC 100%
  SW Audit - Q9 App Specifies Place or Thing 100%
  SW Audit - Q10 App Specifies Target Items 100%
  SW Audit - Q11 No Avoidable Mistakes in App 100%
  SW Audit - Q21 Reports and Videos Consistent 99%

  Paragraph 136
  SW Audit - Q3 Reviewed Before Filing 100%
  SW Audit - Q8 App has PC 100%
  SW Audit - Q12 No Boilerplate in App 100%

  Paragraph 137
  Was Non-compliance in search warrants
  addressed by Supervisor:
  (Not specifically assessed by OCDM, but
  Chief Murphy indicated no issues found,
  group reviewing other evidence).

  Quality of Search Warrants addressed in
  Performance Evaluation Audit (Q6) and
  assessed at 86% (2020). 2021 audit results
  under review

**Paragraph 135**

An affidavit or sworn declaration supporting an application for a search warrant shall provide an accurate and clear description of the reasons for the request for the search, the place or thing to be searched, and items or possible evidence that are the purpose of the search.
Chapters 1.2.4.2
Audit conducted by OCDM.

**Paragraph 136**

A supervisor shall review each request for a search or arrest warrant, including each affidavit or declaration, before it is filed by an officer in support of a warrant application, for appropriateness, legality, and conformance with NOPD policy and this Agreement. The supervisor shall assess the information contained in the warrant application and supporting documents for authenticity, including an examination for "boilerplate" or "pat" language, inconsistent information, and lack of articulation of a legal basis for the warrant.
Chapter 1.2.4 & 1.2.4.2.
Audit conducted by OCDM.

**Paragraph 137**

As part of the supervisory review, the supervisor shall document in an auditable format those warrant applications that are legally unsupported, are in violation of NOPD policy or this Agreement, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. The supervisor shall take appropriate action to address violations or deficiencies, including recommending non-disciplinary corrective action for the involved officer, and/or referring the incident for administrative or criminal investigation. The quality and accuracy of search warrants and supportive affidavits or declarations shall be taken into account in officer performance evaluations.
Chapter 1.2.4.
Audit conducted by OCDM.

Paragraphs 138
B. Searches

When reviewing Operations Plans for execution of a Search Warrant:
Op Plan Exists 67% (2/3)
Op Plan Prepared in Advance 100% (2/2)
Supervisor Assisted with Op Plan 100% (2/2)
Supervisor Present for Execution 100% (2/2)
After Action Report Exists 67% (2/3)
After Action Report Documented by Supervisor 67% (2/3)
After Action Report w/in 24 Hrs 67% (2/3)
Risk Assessment Appropriate 67% (2/3)

NOPD conducted a targeted audit of high-risk search warrants and found full compliance (tracker item, reviewed by OCDM)

OCDM/DOJ to review results of audit scheduled for July 2022.

Paragraph 138

A supervisor shall assist in developing an operational plan for the execution of a search warrant, be present for execution of the search warrant, and review and document the search in an after-action report within 24 hours of the execution of the warrant.

Chapter 1.2.4.2, Warrant Log

2021 Audit conducted by OCDM

B. Searches

Paragraph 139

Non-occupants detained no longer than necessary
1/1 [June 2021 SW Audit]
RS for detaining non-occupants
1/1 [June 2021 SW Audit]

Paragraph 140

Search Warrant Logged
Rose from 88%  in June 2021 SW Audit to 98%  in Jan 2022
Log Includes Officer
100%  [June 2021]
Log Includes Supervisor
100% [June 2021]
Log Includes Item Number
100% [June 2021]
Warrant Includes Application
100% [June 2021]

**Paragraph 139**

NOPD officers shall not detain non-occupants present at the location where a search warrant is executed for longer than reasonably necessary to secure the area, or to determine whether they are occupants of the premises being searched, or where the officer has individualized reasonable suspicion that the non-occupant is involved in criminal activity or poses a danger to officer safety.
Chapters 1.2.4.2
Audit conducted by OCDM.

**Paragraph 140**

NOPD shall maintain, centrally and in each NOPD District and specialized unit, a log listing each search warrant, the case file where a copy of such warrant is maintained, the officer who applied for the search warrant, and each supervisor who reviewed the application for a search warrant.
Chapter 1.2.4.2.
Audit conducted by OCDM.

- C. Arrests
  Paragraph 141
  Officer had PC to Arrest
  May 2021 100%

  Paragraph 142
  Relies on bias-free audit, SSA Materially
  False Instructions - none observed, SW
  Instructions- none observed

  Paragraph 143
  Supervisor made scene of arrest, rose from
  91% in May 2021 to 97% in May 2022

  Paragraph 144
  Arrest gist approved prior to booking
  May 2021 100%
  Officer had PC to Arrest
  May 2021 100%
  PC to arrest clearly articulated in report:
  May 2021 97%, May 2022 100%

  Group reviewing other evidence of SSA-
  related supervision

| | |
|---|---|
| **Paragraph 141** | An NOPD officer shall only arrest an individual where the officer has probable cause.<br>Chapters 1.9 |
| **Paragraph 142** | In effectuating an arrest, NOPD officers shall not rely on information known to be materially false or incorrect. Officers may not consider race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, or gender identity in effecting an arrest, except as part of an actual and apparently credible description(s) of a specific suspect or suspects in any criminal investigation.<br>Chapter 1.9 |
| **Paragraph 143** | An officer shall immediately notify a supervisor when effectuating a felony arrest; an arrest where the officer used force; an arrest for obstructing or resisting an officer; a custodial arrest where the most serious violation was a vehicle infraction, simple drug possession, or, outside the French Quarter and Central Business District, any of the following city or state laws: Disturbing the Peace (City Code 54-103; LSA-R.S. 14:103); Criminal Trespass (City Code 54-153; LSA-R.S. 14:63); Obstructing Public Passages (City Code 54-40; LSA-R.S. 14:100.1); or Begging/Vagrancy (City Code 54-411; 14:107). Upon notification, the supervisor shall respond to the scene.<br>Chapter 1.9 |
| **Paragraph 144** | The responding supervisor shall approve or disapprove the officer's arrest recommendation based on the existence of probable cause and NOPD policy. The supervisor shall take appropriate action to address violations or deficiencies in the officer's arrest recommendation, including releasing the subject, recommending non-disciplinary corrective action for the involved officer, and/or referring the incident for administrative or criminal investigation.<br>Chapter 1.9 |

Paragraph 145
Arrest Gist Approved Prior to booking - May 2021 SSA 100%
No Boilerplate - May 2021 SSA 100%, May 2022 99%
PC to Arrest - May 2021 SSA 100%
PC Clearly Articulated in Report - May 2021 SSA  97%, May 2022 99%

Paragraph 146

OCDM Supervision audit: Supervisors Provide Counseling/Redirection
100% (8/8)

PSAB Supervision Audit: Supervisors Redirect/Counsel Subordinates 100% (11/11)

**Review of other evidence in progress**

Paragraph 145

NOPD patrol officers shall complete all arrest reports before the end of shift. NOPD field supervisors shall review each arrest report of officers under their command and shall memorialize their review in writing within 12 hours of receiving the report, absent exceptional circumstances. Supervisors shall review reports and forms for "boilerplate" or "pat" language, inconsistent information, lack of probable cause, or other indications that the information in the reports or forms is not authentic or correct.

Chapters 1.9

Paragraph 146

As part of the supervisory review, the supervisor shall document in an auditable format those arrests that are unsupported by probable cause, are in violation of NOPD policy or this Agreement, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. The supervisor shall take appropriate action to address violations or deficiencies in making arrests, including recommending non-disciplinary corrective action for the involved officer, and/or referring the incident for administrative or criminal investigation.  For each subordinate, the supervisor shall track each violation or deficiency and the corrective action taken, to identify officers needing repeated corrective action. The supervisor shall ensure that each violation or deficiency is noted in the officer's performance evaluations. The quality of these supervisory reviews shall be taken into account in the supervisor's own performance evaluations. NOPD shall take appropriate corrective or disciplinary action against supervisors who fail to conduct reviews of adequate and consistent quality.

Chapter 1.9

- C. Arrests
  
  <u>Paragraph 147</u>
  
  -FOB Inspection: The reviewer concurs w/ inspection results in 97% of the cases (387/399) [Oct '21 – Jun '22].
  
  -All Supervisor Feedback Log entries are reviewed and approved by the member's chain of command.
  
  -Most recent audit found no arrests without PC
  
  -Other evidence of SSA-related supervision currently under review

| Paragraph 147 | A command-level official shall review, in writing, all supervisory reviews related to arrests that are unsupported by probable cause, are in violation of NOPD policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. The commander's review shall be completed within seven days of receiving the document reporting the event. The commander shall evaluate the corrective action and recommendations in the supervisor's written report and ensure that all appropriate corrective action is taken, including referring the incident to PIB for investigation, if appropriate.<br><br>Chapters 1.9, PRR Form |



- C. Arrests

Paragraph 148
-DA Screening Data and Refusal tracker under review by OCDM and DOJ
-Bi-annual PSAB audit proposed
-Meetings with A-Case Officers
-Monthly meetings with the DA

-2021 Refusal rate for officer reasons: 0.49% of the 9,944 charges screened
-2022 YTD as of 6/24/22 refusal rate for officer reasons: 0.56% of the 8,644 charges screened

Paragraph 148

NOPD shall track centrally and at the District level the DA's acceptance and refusal rates of arrests made by NOPD and reasons for refusals, when made available by the DA, including those factors and information indicating that a failure to prosecute was due to the quality of officer arrests or concerns regarding officer conduct. Each District Commander shall be held accountable for referring to PIB for investigation any information regarding specific incidents of possible officer misconduct related to officer arrests noted in the DA's refusal reasons.
Chapter 1.9

FOB DA Refusal Process and A-Case Review (Lt. Powell)

2021-2022: 37 cases with refusals for "officer reasons":
- 22 did not require follow-up (not NOPD issue after reviewing case notes)
- SFL's done on 9
- FDI's done on 3
- Verbal re-direction for 1
- 1 still under discussion with OPDA
- 1 still unaddressed (from 6/14/22)

- Paragraph 149
  D. Stop and Search Data Collection & Review

  Field Interview Card (FIC) form has all required information

  FIC data integrated with Insight (NOPD's EWS)

  FICs can be searched within the app and via NOPD's data servers.

  Data summarized in the Stop and Search Annual Report.

  Data used for audit sampling, dashboards, bias-free analyses, ad-hoc reports, public records requests, crime analytics

**Paragraph 149**

Within 270 days of the Effective Date, NOPD shall develop a written or electronic report format to collect data on all investigatory stops and searches, whether or not they result in an arrest or issuance of a citation. This system shall allow for summarization and searches and also shall be integrated into the EWS. NOPD's stop and search data collection system shall be subject to the review and approval of the Monitor and DOJ, and shall require officers to document the following:a) officer's name and badge number;

b) date and time of the stop;

c) location of the stop;

d) duration of the stop;

e) subject's apparent race, ethnicity, gender, and apparent age;

f) if a vehicle stop, presence and number of any passengers and the apparent race, ethnicity, gender, and age of each passenger; if a non-vehicle stop (e.g., pedestrian or bicycle), number of individuals stopped and the apparent race, ethnicity, gender, and age of each person; g) reason for the stop, including a description of the facts creating reasonable suspicion;

h) if a vehicle stop, whether the driver or any passenger was required to exit the vehicle, and reason;

i) whether any individual was asked to consent to a search and whether such consent was given;

j) whether a probable cause search was performed on any individual, including a brief description of the facts creating probable cause;

k) whether a pat-and-frisk or other search was performed on any individual, including a description of the facts justifying the pat-and-frisk or other search;

l) whether any contraband or evidence was seized from any individual, and nature of the contraband or evidence; and

m) disposition of the stop, including whether a citation or summons was issued to, or an arrest was made of, any individual.

Chapters 41.12., FIC App

## Paragraphs 150 -
## C. Arrests

If required, an FIC exists for the stop:
Rose from 93% in May 2021 to 99% in May 2022.

The officer submitted the FIC to the supervisor by the end of the shift:
Rose from 82% in May 2021 to 98% in May 2022.

The supervisor reviewed the FIC within 72 hours:
Rose from 78% in May 2021 to 99% in May 2022.

Evidence Documented - 100% May 2021
Evidence Matches Description – 100% May 2021

| Paragraph 150 | Officers shall document investigatory stops and detentions, and any searches resulting from or proximate to the stop or detention. In all instances where property or evidence is seized, the officer shall immediately complete a police incident report documenting a complete and accurate inventory of the property or evidence seized, and submit the property or evidence seized to Central Property and Evidence before the end of shift. All documentation of stops, detentions, searches, and seizures shall be submitted to the officer's supervisor by the end of shift. Absent exceptional circumstances, field supervisors shall review investigatory stops and detention or search reports by field officers within 12 hours of receiving this report. Supervisors shall report and shall document: (1) those investigatory stops and detentions that appear unsupported by reasonable suspicion; (2) those searches that appear to be without legal justification; (3) stops or<br><br>Chapters 41.12, 1.9, 1.2.4.2 & 84.1.<br><br>All Audit Data maintained in an MS Access database;  In addition, all finalized data is uploaded into the MAX V2 database for dashboard view. |
|---|---|
| Paragraph 150 continued | searches in violation of NOPD policy or this Agreement, or (4) stops or searches that indicate a need for corrective action or review of agency policy, strategy, tactics, or training.<br><br>Chapters 41.12, 1.2.4.2 & Form 358 (PRR).<br><br>PSS Notify Database (Audit Review Specific). |

- Paragraphs 151 - 154
  C. Arrests
  -Supervisors Provide counseling/redirection
  8/8 per OCDM Supervision Audit 2021, 10/10 per PSAB Supervision Audit in 2021
  -Supervisor Addressed Non-Compliance
  Supervisory Response not audited in 2020-21 due to SFL and IAPro not being available. Attempt with FOB Inspections not successful. Group reviewing other evidence.
  -Supervisor Listed Noncompliance from SSA Audits -  81% 2020 Perf Eval
  -Supervisor Addressed Noncompliance in SSA Audits - 77% 2020 Perf Eval
  -Stop and Search Annual Report released annually with input from group
  -SSA Audit protocol approved
  -CD 154 compliance still under review by OCDM

**Paragraph 151**

The supervisor shall take appropriate action to address all violations or deficiencies in investigatory stops, detentions, or executions of searches, including recommending non-disciplinary corrective action for the involved officer, and/or referring the incident for administrative or criminal investigation. For each subordinate, the supervisor shall track each violation or deficiency and the corrective action taken, if any, in order to identify officers needing repeated corrective action. The supervisor shall ensure that each violation or deficiency is noted in the officer's performance evaluations. The quality and completeness of these supervisory reviews shall be taken into account in the supervisor's own performance evaluations. NOPD shall take appropriate corrective or disciplinary action against supervisors who fail to conduct complete, thorough, and accurate reviews of officers' investigatory detentions and searches.

Chapters 41.12 & Form 358.

**Paragraph 152**

NOPD shall develop a protocol for comprehensive analysis, on at least an annual basis, of the stop and search data collected. This protocol shall be subject to the review and approval of the Monitor and DOJ, and shall identify and incorporate appropriate benchmarks for comparison.

**Paragraph 153**

On at least an annual basis, NOPD shall issue a report summarizing the stop and search data collected, the analysis of that data, and the steps taken to correct problems and build on successes. The report shall be publicly available.

**Paragraph 154**

NOPD shall ensure that all databases containing individual-specific data comply fully with federal and state privacy standards governing personally-identifying information. NOPD shall develop a process to restrict database access to authorized, identified users who are accessing the information for a specific and identified purpose.

Chapter 82.1.1

- Paragraphs 155 - 158
  E. FIRST AMENDMENT RIGHT TO OBSERVE AND RECORD OFFICER CONDUCT

  SSA Audit Form Instructions Require Immediate Action (New for 2022)

  Feb 13-19 2022 Roll Call on Chapter 1.2.10

  SSA Tracker Group Reviewed Policy, Training, and Complaints

| | |
|---|---|
| **Paragraph 155** | NOPD shall ensure that, in accordance with their rights secured or protected by the Constitution and laws of the United States, onlookers or bystanders may witness, observe, record, and/or comment on officer conduct, including stops, detentions, searches, arrests, or uses of force. Officers shall respect the right of civilians to observe, record, and/or verbally comment on or complain about the performance of police duties occurring in public, and NOPD shall ensure that officers understand that exercising this right serves important public purposes.<br>Chapters 46.2.1 & 1.2.10.<br>Audit conducted by OCDM |
| **Paragraph 156** | Individuals observing stops, detentions, arrests, and other incidents shall be permitted to remain in the proximity of the incident unless one of the conditions in paragraph 160 is met.<br>Chapter 1.2.10 |
| **Paragraph 157** | Individuals shall be permitted to record police officer enforcement activities by camera, video recorder, cell phone recorder, or other means, unless one of the conditions in paragraph 160 is met.<br>Chapter 1.2.10 |
| **Paragraph 158** | Officers shall not threaten, intimidate, or otherwise discourage an individual from remaining in the proximity of or recording police officer enforcement activities.<br>Chapter 1.2.10 |

- Paragraphs 159 - 161
  E. FIRST AMENDMENT RIGHT TO OBSERVE AND RECORD OFFICER CONDUCT

  SSA Audit Form Instructions Require Immediate Action (New for 2022)

  Feb 13-19 2022 Roll Call on Chapter 1.2.10

  SSA Tracker Group Reviewed Policy, Training, and Complaints

**Paragraph 159**

Officers shall not detain, prolong the detention of, or arrest an individual for remaining in the proximity of, recording, or verbally commenting on officer conduct directed at the individual or a third party, unless one of the conditions in paragraph 160 is met.
Chapters 1.2.10

**Paragraph 160**

Officers shall take appropriate law enforcement action against a bystander only if a bystander's presence would jeopardize the safety of the officer, the suspect, others in the vicinity or crime scene integrity; the bystander violates the law; or the bystander incites others to violate the law.
Chapter 1.2.10

**Paragraph 161**

Officers shall not seize or otherwise coerce production of recorded sounds or images without obtaining a warrant, or order an individual to destroy such recordings. Where an officer has a reasonable belief that a bystander or witness has captured a recording of critical evidence related to a felony, the officer may secure such evidence for no longer than required to obtain a legal subpoena, search warrant, or other valid order.
Chapter 1.2.10

Paragraphs 162 -
F. Stop, Search & Arrest Training

<u>E-Learning Modules Completed:</u> Making the Arrest Decisions; Search & Seizure; Documenting Probable Cause; Safeguarding Fairness in Citizen Stops   -
100% completed

<u>PBL Curriculum (Continued to 2021):</u>
Applied Problem Oriented Policing; Documenting Probable Cause; MDTS Tactics; Procedural Justice Solutions; Suspicious Person and Vehicle Stops; Field Interview Card Review; Suspicious Person and Vehicle Stops Practical Exercises.   -
100% completed

Paragraph 162

NOPD shall provide all officers with at least 24 hours within 365 days of the Effective Date, and at least four hours on at least an annual basis thereafter, of training on stops, searches, and arrests, including the requirements of this Agreement. Such training shall be taught by a qualified legal instructor with significant experience in Fourth Amendment issues, and shall:

a) address Fourth Amendment and related law, NOPD policies, and requirements in this Agreement regarding searches and seizures;

b) address First Amendment and related law, NOPD policies, and requirements in this Agreement on the rights of individuals to verbally dispute, observe, and record officer conduct;

c) address the difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable suspicion, and mere speculation; and between

d) provide guidance on the facts and circumstances that should be considered in initiating, conducting, terminating, and expanding an investigatory stop or detention;

e) provide guidance on the level of permissible intrusion when conducting searches, such as "pat-downs" or "frisks;"

f) provide guidance on the legal requirements for conducting searches, with and without a warrant;

g) provide guidance on the permissible nature and scope of searches based on the level of intrusion on an individual's privacy interests, including searches conducted pursuant to probation or parole release provisions;

h) specify the procedures for executing searches, including handling, recording, and taking custody of seized property or evidence;

i) provide guidance on effecting an arrest with and without an arrest warrant; and

j) provide guidance regarding the nature and scope of searches incident to an arrest.

Master Training Plan (Annual) and on-going In-Service Training.

- Paragraphs 181
  F. Stop, Search & Arrest Training

  Officer introducing themselves rose from 70% in May 2021 to 96% thru March 2022.
  Officers were reasonably courteous rose from 94% in May 2021 to 99% thru March 2022.
  Officer Explained the reason for the stop: May 2021: 100%
  Officer Allowed the Subject to Explain: May 2021: 99%
  Officer Responded to Subject's Qs: May 2021: 100%
  Officer Explained the Result of the Stop: May 2021: 97%
  Stop No Longer Than Necessary: May 2021 to March 2022 at 99%

Paragraph 181

NOPD agrees to incorporate the following elements in its training of officers: (1) **introducing themselves** at the initiation of contact with a civilian; (2) stating the **reason** for an investigatory stop or detention as soon as practicable; (3) ensuring that an investigatory **stop or detention is no longer than necessary** to take appropriate action; and (4) acting with **professionalism** and courtesy throughout the interaction regardless of any provocation.



# Field Operations Bureau
## Compliance Plan Overview





# Field
# Operations
# Bureau

Compliance Plan
October 4, 2021





Deputy Assistant Superintendent Christopher Goodly

Field Operations Bureau

Issues with Stop, Search & Arrest /
Bias-Free Policing

How addressed in:

MAX meetings each week

FOB Captains Meetings

Accountability for FOB Inspections findings and
corrective actions.

NOPD remains firmly committed to sustaining the reforms that we have achieved with the help of the Monitor Team (OCDM) and the DOJ. We will strive to identify positive changes to benefit our community and promote progressive, constitutional and transparent policing.