1 | P a g e

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> Plaintiff, | **CIVIL ACTION NO.** <br> **2:12-CV-01924-SM-DPC** |
| **V.** | **JUDGE SUSIE MORGAN** |
| **CITY OF NEW ORLEANS,** <br> Defendant. | **MAG. DONNA PHILLIPS CURRAULT** |

**MOTION TO RECONSIDER
BY THE CITY OF NEW ORLEANS**

**NOW INTO COURT**, through undersigned counsel, comes the City of New Orleans to seek reconsideration from the Court of the following orders:

1.   Pursuant to Federal Rules of Civil Procedure 59 and 60, the City of New Orleans requests that recent orders of the Court be reconsidered based on facts and arguments unavailable to the City as there was no motion practice or hearing for the City to voice its objections.

2.   On September 6, 2022, the Court held a status conference[1] *via* the Zoom video service regarding the City's motion to terminate the Consent Decree.[2] During that conference, the Court announced that the City had abandoned its right to file a motion to terminate under Paragraph 492 of the Consent Decree. As such, the DOJ will not be obligated to respond to the City's motion to terminate within the sixty (60) day period set forth at Paragraph 492.

3.   The undersigned requested a formal written order to this effect as the City strongly disputed that it waived, or even had the ability to waive, the requirements under Paragraph 492 that the DOJ review and audit any areas it desires after notice by the City. The

---

[1] Rec. Doc. 641.
[2] Rec. Doc. 629.

1 | P a g e

Court instructed that an order would not be forthcoming as the DOJ had not yet excepted to the City's motion to terminate as premature.

4. The City moves the Court to reconsider this ruling given the plain language of Paragraph 492 and the express written notice provided to DOJ on November 30, 2019 at (Rec. Doc. 629-5.

5. Despite the lack of a pending motion, the Court created a discovery period *via* scheduling order (Rec. Doc. 641) that exceeds the sixty (60) day period set forth in the Consent Decree at Paragraph 492 for DOJ to oppose the City's motion to terminate. If the DOJ prevailed on a prematurity motion, it would be allowed time to audit or review information before the City could file its motion to terminate. That is the relief the Court ordered via the scheduling order despite the fact no motion has been filed.

6. It is the City's position that DOJ abandoned its ability to conduct audits and reviews (if none were done) in response to the City's formal notice of compliance. (Rec. Doc. 629-5) By granting the DOJ six months to do "discovery" plus an additional month to prepare its brief before filing an opposition to the motion to terminate, the Court has granted the relief DOJ's motion would seek without that motion being filed.

7. The Consent Decree only allows modifications to that agreement through the joint stipulation of the parties. *See* Paragraph 487. Neither party moved to amend the timelines set out in Paragraph 492 through the agreed upon amendment process found at Paragraph 487. The Consent Decree is an agreement of the parties (DOJ and the City) that is enforced by the Court. The parties did not agree to unilateral any changes by the Court.

8. The City moves the Court to reconsider its *sua sponte* abandonment finding and to enforce the City's rights under the Consent Decree to have a hearing within 60 days without

the benefit of briefing or other due process. The seven-month delay (five months beyond the 60-day limit) violates the Consent Decree and creates a direct cost to the City that warrants reconsideration.

9. The Scheduling Order of the Court (Rec. Doc. 641) further orders that *if* the DOJ files a prematurity challenge to the City's motion by October 6, 2022, all of the delays ordered for discovery shall be vacated pending a ruling. The City moves for reconsideration of this order. The relief sought by such a motion would be the same seven-month period already ordered and underway. There is no reason to restart that period if DOJ's motion is granted as the Court has already declared abandonment and granted the relief for that finding – all before a DOJ motion has been placed before the Court. If DOJ's motion is granted, the parties will already be on that new "abandonment" timeline. If DOJ's motion is denied, DOJ's opposition brief should be due within the sixty (60) days agreed to and ordered at Paragraph 492.

10. DOJ has had open access to NOPD's documents since it began its investigation in 2010. It demands information on an almost daily basis and is given every bit of information it wants from NOPD. There is no need to delay the hearing of the City's motion as DOJ will continue to demand any data it wants under its infinitely broad reading of the Consent Decree. The only consequences will be: (a) unnecessary delay in hearing the City's motion to terminate the Consent Decree and appellate review of that ruling by the City or DOJ; and (b) added expense to the City. There will be no change in the amount of information available or delivered to DOJ.

11. Further, the Court instructed during the September 6, 2022, status conference that DOJ needed six months for discovery to evaluate the City's motion to terminate and an additional month to prepare its brief. The undersigned advised the Court that through meetings

with the DOJ and its trial attorneys before the status conference, the parties were working towards (*or had reached*) an agreement for the DOJ to file its opposition on October 18, 2022.

12. Because the DOJ did not request seven months to properly oppose the City's motion, and instead negotiated for October 18, 2022, the Court should reconsider the need for such a long delay in advancing this critical motion. The NOPD has worked tirelessly to respond materially to every single one of the DOJ extensive data requests within two (2) weeks of the request.

13. This was done in a good faith effort to meet the terms of the agreement reached with DOJ to resolve the City's motion quickly. DOJ does not need seven months to review this data, nor did it ever request that delay from the Court. The DOJ agreed to a multi-week review and then a discussion of what areas of agreement could be reached.

14. The City moves for reconsideration of this order.

15. The City further requests that the Court reconsider granting the court appointed monitor undefined "discovery" powers. Paragraph 492 allows for a traditional motion and opposition by the parties. The City and DOJ are the only parties. If the City fails to meet its burden at the hearing of its motion, the Court will deny the motion. The Consent Decree does not grant any discovery powers to the Monitor. Like DOJ, the Monitor has essentially no limits on the information it demands and receives from NOPD.

16. Participation in discovery by the Monitor is duplicative and puts the Monitor at odds with the City. The Monitor should be a neutral, like a judge, and the City should not have to pay for the Monitor to oppose its motion. If the Monitor is allowed to oppose the City's motion outside the bounds of the Consent Decree, that costs should be borne by the DOJ.

17. Further, the Monitor is charged with the duty to report on the compliance of NOPD as to each of the 17 categories of the Consent Decree "at least annually." Paragraph 450. The Monitor does not benefit from "discovery." The very core of its professional engagement is to gather information regarding compliance and be able to report on the compliance status in short order. There is nothing for it to discover that it does not already have ready access to and an existing obligation to publicly report on the current status of compliance. The City moves the Court to reconsider this order.

18. The City further moves the Court to reconsider its finding that NOPD is not yet compliant in **any** of the 17 areas of the Consent Decree. This startling announcement during the September 6, 2022, status conference directly contradicts the understanding of the most central issue in this case by every party involved.

19. The DOJ publicly acknowledged its understanding that the City is compliant in at least 15 of the 17 areas as recently as the public hearing on August 17, 2022. The Monitor has also repeatedly stated that specific areas were in Full and Effective Compliance, using the language of Paragraph 491 of the Consent Decree. As recently as April 20, 2022, the Monitor explained that 13 of the 17 areas had been "moved into the green" which the Monitor explained, means "they have achieved 'Full and Effective Compliance' with the Consent Decree."[3] In that same pronouncement the Monitor stated that on that day he was asking the Court to move two additional areas into full and effective compliance. As the Monitor summarized, "[a]fter today, assuming the Court approves our recommendations, the NOPD will be left with three areas of the CD not yet in full and effective compliance…"[4]

---

[3] Prepared Public Hearing Remarks of Jonathan S. Aronie, Lead Monitor, NOPD Consent Decree Before Judge Susie Morgan, U.S. District Court For The Eastern District of Louisiana, April 20, 2022, at http://consentdecreemonitor.com/reports
[4] *Id*.

20. To reverse course so many years into this process is a dramatic unjustified change that rocks the very foundation of the City's efforts, expectations, trust and considerable expenses. The parties and the Monitors had been working on plans for the anticipated sustainment period, built on the understanding that that only two[5] more areas needed a compliance determination, which was soon at hand.

21. Moreover, the only way under the Consent Decree for the Monitor to "skip" an audit of an areas is by agreement of the parties that said area is already compliant. *See* Paragraph 452. It is patently unfair to the City, and in violation of the black letter text of the Consent Decree, to allow the Monitor announce full and effective compliance, and thus not audit areas as required, and then demand that NOPD prove compliance going back years.

22. The fundamental understanding that the City was already compliant in almost all areas of the Consent Decree is why the section of the City's motion to terminate under Paragraph 492's "sustained and continuous improvement in constitutional policing" focused on only two remaining areas, not all 17 areas. The compliance review, audits and outcome assessments of the Consent Decree are the agreed upon tools to show compliance. *See* Paragraphs 444 – 458. NOPD has paid millions of dollars for this work and should not be forced to do it now from scratch at additional costs to prove compliance yet again. The City moves the Court to reconsider this determination and confirm that 15 of the 17 areas have been found to be in Full and Effective Compliance with Consent Decree.

23. The City moves this Court to reconsider its order that the Chief Administrative Officer of the City of New Orleans appear and report before the Court monthly. The Court has the power to direct outcomes that trigger financial impacts on the City. Respectfully, it is not

---

[5] Community Engagement was understood to have been moved to Full and Effective Compliance after this April public hearing.

appropriate for an Article III judge to order executive branch staff of the City to appear in chambers to discuss the allocation of taxpayer funds in a closed-door session. This is the quintessential role of elected officials and there are important transparency rules in place to assure such decisions are made in the open by those elected to make such decisions. The operations and budget of the City of New Orleans are not under a consent decree, nor are its elected City Council members.

24. The City was not provided with any due process opportunity to object to this order. No motion was filed, and the oral report of the Monitor on August 17, 2022, was given in violation of the Consent Decree as no written report or draft was ever provided to NOPD or the City as required by Paragraph 458. The City moves the Court to reconsider this order.

25. For this same reason, the City moves the Court to reconsider the setting of a public compliance hearing on September 27, 2022. It is now less than ten days before the scheduled hearing and the City still has not been told what will be before the Court at this hearing. The undersigned requested this information from the Monitor on September 8, 2022. The Monitor responded that "As soon as I have the agenda, I will forward it." To date, the Monitor has not issued a report, and no motion is pending.

26. The City moves the Court to reconsider the order setting a hearing without proper notice of its purpose or content so that a party to this litigation may prepare and present its side.

27. The City objects to the Monitor issuing an oral report on the status of compliance at the scheduled public hearing on September 27, 2022, without complying with Paragraph 458 of the Consent Decree as occurred on August 17, 2022.

28. Press conferences are not allowed by the Consent Decree without the approval of the City, which approval has not been sought or granted. *See* Paragraph 462. A public hearing

without reasonable notice of its contents or the opportunity to effectively refute the Monitor's report is a *de facto* press conference. All parties to *all* litigation are entitled to due process and the City objects to this violation of its due process rights.

29. The City also moves the Court to reconsider its publicly announced finding that the City has backslid from its prior compliance achievements. The Court made this finding in open court on August 17, 2022, without any motion pending or any public report from the Monitor. The Court appears to have based its finding on a report to be issued by the Monitor at a future date. If there is no report for the Court, the public or NOPD to consider, the Court should reconsider its finding. Again, the City has due process rights, and it cannot effectively avail itself of such rights when it is not given the information or opportunity to respond. Transparency is a critical aspect of the Consent Decree, and the City moves this Court to reconsider its announced findings.

30. The City moves the Court to reconsider its order that the Monitor embed its technical assistance team members into various functions of the City and NOPD, including: staffing, officer retention, recruiting, transparency, alternative police response, and burden reduction, all at the City's expense.

31. The Consent Decree makes clear that "technical assistance" may be provided in response to a request from the City or DOJ. *See* Paragraph 455. There is no provision for the involuntary imposition of the cost and control of a technical assistance team onto NOPD or the City.

32. The Court's order is further concerning when considered in the context of the Court's order of August 17, 2022, that the Monitor will report on the extent to which NOPD has adopted the Monitor's "recommendations" from its April 2022 Technical Assistance Report –

another technical assistance exercise not requested by the City. The combination of an embedded monitoring team with an apparent obligation on the City to incorporate the "recommendations" of that team is *de facto* management of the NOPD. The Consent Decree makes clear that the Monitor is not empowered to manage NOPD. *See* Paragraph 445. "The Monitor may make recommendations to the Parties regarding measures necessary to ensure timely, full, and effective implementation of this Agreement and its underlying objectives. Such recommendations may include a recommendation to change, modify, or amend a provision of the Agreement; a recommendation for additional training in any area related to this Agreement; or a recommendation to seek technical assistance." Paragraph 455. Nothing in the Consent Decree envisions a Monitoring team embedding themselves in the various city functions to manage those functions as opposed to monitoring for compliance with the agreed terms of the Consent Decree. Such actions are clearly beyond the scope of the Consent Decree.

**WHEREFORE**, for the reasons presented in by the accompanying memorandum in support, the City of New Orleans respectfully moves this Court for reconsideration of:

A. The Court's ruling that the City abandoned its Paragraph 492 Notice;

B. The Court's scheduling order granting seven months for DOJ to respond to the City's motion to terminate the Consent Decree;

C. The Court's scheduling order preemptively vacating the seven-month period upon the filing of a motion by DOJ alleging the City abandoned its Paragraph 492 Notice;

D. The Court's order that the Monitor be entitled to "discovery" not provided for in the Consent Decree;

E. The Court's order that NOPD was not yet in full and effective compliance of any of the 17 areas of the Consent Decree;

F.  The Court's order that City's executive branch staff appear in closed-door meetings with the Court to address the means and methods of funding NOPD;

G.  The Court's order setting a public hearing for September 27, 2022, without the City having the ability to properly prepare;

H.  The Court's order directing press conferences explicitly by the Monitor, or by way of public hearings without the opportunity for the City to be heard;

I.  The Court's announcement and remedial orders to address concerns regarding NOPD no longer being in compliance without the benefit of a public report to substantiate those concerns; and

J.  The Court's order to embed Monitoring team members as technical assistants in such a way as to effectively take over management of the operations of NOPD, and the City.

*Respectfully submitted*, this 23rd day of September 2022.

*Davillier Law Group, LLC*

/s/ Charles F. Zimmer II
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

*Counsel of Record for
the City of New Orleans*

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the above and foregoing pleading via Notice of Electronic filing using this Court's CM/ECF system to counsel of record participating in the CM/ECF system on this 23rd day of September 2022.

/s/ Charles F. Zimmer II