## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,** | **CIVIL ACTION NO.**<br>**2:12-CV-01924-SM-DPC** |
| **V.** | **JUDGE SUSIE MORGAN** |
| **CITY OF NEW ORLEANS,**<br>**Defendant.** | **MAG. DONNA PHILLIPS CURRAULT** |

---

### RESPONSE TO DISCOVERY REQUEST

---

**NOW INTO COURT**, through undersigned counsel, comes the City of New Orleans, to respond to the request for information tendered by Plaintiff, the Department of Justice, on August 26, 2022, as follows:

**General Response:** On August 16, 2022, the City of New Orleans ("City") filed a motion to terminate the Consent Decree. (Rec. Doc. 629) Soon thereafter, representatives of the City of New Orleans and the Department of Justice ("DOJ") met to discuss the motion. DOJ requested information to assess whether the City has achieved and sustained "full and effective compliance" with the Amended and Restated Consent Decree to determine whether constitutional or statutory violations continue to occur, and to determine whether the intended outcomes of the Decree have been met.[1]

DOJ requested that its response to the City's motion be pushed back to October 18, 2022, to give DOJ sufficient time to analyze the information sought. The City agreed. The City has not abandoned, and expressly reserves, its rights pursuant to the Paragraph 492 Notice tendered to DOJ in November 2020. To facilitate the DOJ's requested schedule to consider the City's motion, the City agreed to an expedited data gathering project. The responses provided herein

---

[1] *See* DOJ information request letter of August 26, 2022, at Appendix A.

were prepared in the period proposed by DOJ, which is much shorter than allowed by the Federal Rules of Civil Procedure, in a good faith effort to meet the timelines proposed by DOJ. The Court has since set the responsive date for April 6, 2023. The City does not waive it rights to the Federal Rules for future discovery responses.

NOPD is producing 811 documents including over 57,000 pages. Many files are in native format and therefore the page count may vary greatly depending on the software used. NOPD reserves the right to supplement this information. NOPD is still processing hundreds of gigabytes of data responsive to DOJ's request numbers 13, 14, 35, 36, 47 and 48 for the *entire* litigation file of over a dozen litigations. That material will be produced as soon as processing is complete. All responsive documentation is deemed confidential pursuant to the Consent Decree.

**General Objection:** The City objects that the DOJ's requests generally lack any reference to the paragraph of the Consent Decree that gives rise to the request.  NOPD further objects to each request to the extent if asks for information already in the custody and control of DOJ.

**General Requests**

**Information Request No. 1:**     Organizational charts from August 1, 2020, to the present.

**Response No. 1:**   The City of New Orleans and its Police Department (hereinafter collectively "NOPD") object to this request as outside the four corners of the Amended and Restated Consent Decree Regarding the New Orleans Police Department ("CD") (Rec. Doc. 565). Further answering, and without waiving its objection moving forward, NOPD provides the responsive information at Folder No. 1 of the accompanying drive.

**Information Request No. 2:**     A list of all current vacancies, including bureau, division, position, whether the position is sworn or civilian, and the length of time the position has been unfilled.

**Response No. 2:**   NOPD objects to this request as outside the four corners of the CD. Further answering, and without waiving its objection moving forward, NOPD provides the responsive information at Folder No. 2 of the accompanying drive.

**Information Request No. 3:**     NOPD's current Policy and Procedures Manual. This should include all policies, standard operating procedures, general orders, directives, manuals, and other documents that provide guidance, direction, principles, or mandates to NOPD employees.

**Response No. 3:**   NOPD objects that most of this information is publicly available at https://nola.gov/nopd/policies/. Further, to the extent the requested information is covered by the CD, DOJ has reviewed, edited, and approved nearly every NOPD policy, standard operating procedure, general order, directives, manuals, and other documents that provide guidance, direction, principles, or mandates to NOPD employees that is currently in effect. It is unduly burdensome to demand that NOPD allocate personnel to accumulate documents that are publicly available and/or already in DOJ's possession.  Future requests should be limited to information not already in DOJ's possession or publicly available. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 3 of the accompanying drive.

**Information Request No. 4:**     NOPD's current Consent Decree Compliance Review Standards, including any audit protocols, tools, and methodologies.

**Response No. 4:**   The CD mandates that the Court Appointed Monitor ("Monitor") plan and conduct compliance audits and outcome assessments at least annually, not that NOPD prepare same. *See* Paragraph 453 ("At least 90 days prior to the initiation of any outcome measure assessment or compliance review or audit, the Monitor shall submit a proposed

methodology for the assessment, review, or audit to the Parties."); Paragraph 447 ("The Monitor shall conduct compliance reviews or audits as necessary to determine whether the City and NOPD have implemented and continue to comply with the material requirements of this Agreement."); Paragraph 450(c) ("[T ]he Monitor shall develop a plan…(c) set out a schedule for conducting a compliance review or audit of each requirement of this Agreement within the first two years of the Agreement, and a compliance review or audit of each requirement at least annually thereafter.")

NOPD objects to DOJ requiring NOPD to produce audits methodologies or reports to prove compliance. The only provision of the CD that allows the Monitor to *not* provide a public audit of each area of the CD at least annually is by agreement of the partis that the Monitor "refrain from conducting a compliance audit or review of a requirement previously found to be in compliance by the Monitor pursuant to audit or review, or where outcome assessments indicate that the outcome intended by the requirement has been achieved." *See* Paragraph 452. There has been no change to Paragraph 452 of the CD despite over twenty formal changes to the CD.[2] As such, NOPD objects to DOJ shifting this burden after agreeing NOPD was in compliance in all un-audited areas of the CD. Further, the Monitor maintains the most current version of all audit protocols. NOPD can only produce the drafts it has in its possession and uses to conduct its internal audits. NOPD has requested access to the current drafts from the Monitor, but DOJ has equal, if not better, access to those files than does NOPD.

Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 4 of the accompanying drive.

---

[2] *See* statements of DOJ at the August 17, 2022, public hearing, at p. 31: 1-4.

**Information Request No. 5:**      Identify any requirement imposed by the Consent Decree that the City and NOPD believe is imposing an unnecessary burden on NOPD or its officers, including any documentation requirements, and explain the basis for that belief. Identify which requirements you would change or eliminate if the Consent Decree is terminated.

**Response No. 5:**  NOPD objects to the compound and ambiguous nature of this request. Further answering, NOPD objects to this request as outside the four corners of the CD. Further answering, NOPD does not object to the requirements imposed by the CD. NOPD objects to the methods employed by DOJ and the Monitor under the guise of the CD. The CD does not give DOJ approval power to unilaterally block a compliance finding or finalization of NOPD polices, protocols or any other NOPD action. DOJ has consistently taken actions not authorized by the CD to vastly expand its role. As a direct result, DOJ has broadened the CD process far beyond the already onerous terms of the CD, which the City agreed to meet.

**Information Request No. 6:**      The Court previously found the City and NOPD achieved compliance with fifteen sections of the Consent Decree, including:

- o  Section II – Policies and Training Generally
- o  Section III – Use of Force
- o  Section IV – Crisis Intervention Team
- o  Section VI – Custodial Interrogations
- o  Section VII – Photographic Line-Ups
- o  Section IX – Policing Free of Gender Bias
- o  Section X – Community Engagement
- o  Section XI – Recruitment
- o  Section XII – Academy and In-Service Training
- o  Section XIII – Officer Assistance and Support
- o  Section XIV – Performance Evaluations and Promotions
- o  Section XV – Supervision
- o  Section XVI – Secondary Employment System
- o  Section XVII – Misconduct Complaint Intake, Investigation, and Adjudication

o  Section XVIII – Transparency and Oversight

For each of these [15] sections, provide [**a**] the audit reports covering the last two years to the extent that they exist, and [**b**] confirm whether the audit conforms to the Consent Decree Compliance Review Standards. Provide [**c**] the finalized audit protocol, [**d**] the completed auditing tools for each item audited and [**e**] identify the underlying data on which the auditor relied. We may select a sample of these items to review the underlying data to ensure the accuracy of the audit. If any of the requested audits do not exist, [**f**] state that affirmatively and [**g**] produce the data that, in the absence of the audit, the City believes shows sustained full and effective compliance for the required two years. If we have not listed the section below, it is because we are not aware of any audits having been conducted for that section.

**Response No. 6:**   NOPD objects that this request is overly broad, ambiguous, duplicative, and compound. Over one hundred individual requests are compounded into this 15 category request, with multiple subparts to each.  DOJ requested NOPD respond within two weeks. However, this data is two years of work the Monitor is specifically hired to perform. *See* CD Paragraphs 444 – 458. As stated in more detail in Response No. 4 above, the only provision of the CD that allows the Monitor to *not* provide a public audit of each of the areas identified in Request No. 5 is by agreement of the partis that the Monitor "refrain from conducting a compliance audit or review of a requirement previously found to be in compliance by the Monitor pursuant to audit or review, or where outcome assessments indicate that the outcome intended by the requirement has been achieved." *See* Paragraph 452.

There has been no change to Paragraph 452 of the CD and DOJ has not objected to the Monitor's auditing conduct. As such, NOPD objects to DOJ shifting this burden after agreeing NOPD was in compliance in all un-audited areas of the CD. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 6 of the accompanying drive, which includes links to each of the periodic reports of NOPD which were provided to, and edited by, DOJ before publication. If DOJ needs copies of its edits to each report, NOPD will prepare that material for production.

**Information Request No. 7:**      Provide any plan of correction following any problem identified during the above audits and all data which the City believes demonstrate that the plans of correction have been implemented.

**Response No. 7:**   Please see the Response No. 6. Further responding, "[t]he Monitor shall conduct compliance reviews or audits as necessary to determine whether the City and NOPD have implemented and continue to comply with the material requirements of this Agreement." CD Paragraph 447. The CD requires that compliance reviews and audits will demonstrate implementation of NOPD polices. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 7 of the accompanying drive, which includes links to each of the periodic reports of NOPD which were provided to, and edited by, DOJ before publication.

**Information Request No. 8:**      For each of these [15 in compliance[3]] sections, provide any annual reports covering the last two years that exist.

[3] DOJ acknowledges that "[t]he Court previously found the City and NOPD achieved compliance with fifteen sections of the Consent Decree…" *See* Appendix A, at p. 3.

7

**Response No. 8:**   See Response No. 6. Further answering, and without waiving its

objections, NOPD provides the responsive information at Folder No. 8 of the

accompanying drive, which includes links to each of the periodic reports of NOPD which

were provided to, and edited by, DOJ before publication.

**Information Request No. 9:**      To the extent that the City is asserting that it is in

compliance with these [15 in compliance] sections of the Consent Decree pursuant to the

outcome assessments method set forth in Paragraph 448, provide all data which the City

believes shows sustained full and effective compliance for the required two years.

**Response No. 9:**   See Response No. 4. The 15 sections listed in Request No. 6 have been

deemed in compliance pursuant to Paragraph 492. As noted by DOJ in open court, "[a]s

the monitor has found, and we have agreed, the City has achieved initial compliance in

15 of the 17 substantive areas covered by the consent decree."[4] NOPD is not obligated to

prove compliance by more than one method under the CD. The Monitor has not done a

public assessment of the measures included at Paragraph 448 as required by the CD. *See*

CD Paragraphs 444 – 458. NOPD reserves the right to supply data relevant to the

Outcome Assessments of Paragraph 448 as it deems necessary. Further answering, and

without waiving its objections, NOPD provides the responsive information at Folder No.

9 of the accompanying drive.

**Section III – Use of Force**

**Information Request No. 10:**      NOPD has posted the January-June 2021 and July-

December 2021 audits online. To the extent that use of force audit reports exist for

---

[4] *See* public statements of DOJ at the August 17, 2022, public hearing, at p. 29: 2-4.

January-December 2020 and January-July 2022, provide those audits along with the underlying documentation relied upon by auditors.

**Response No. 10:** NOPD repeats is objection to DOJ holding NOPD to conduct compliance audits assigned to the Monitors as stated in more detail in Response No. 4 above. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 10 of the accompanying drive, including updated Use of Force data trend summaries that show continued improvements in the use of force statistics of NOPD.

**Information Request No. 11:**    NOPD provided a revised draft Use of Force Annual Report for 2021 on August 19, 2022. To the extent that they exist, provide the finalized Use of Force Annual Report for 2020 and the finalized Use of Force Annual Report for 2021.

**Response No. 11:** See Response No. 4. The Monitor maintains the most current version of all audit protocols. NOPD can only produce the drafts it has in its possession and uses to conduct its internal audits. NOPD has requested access to the current drafts from the Monitor, but DOJ has equal, if not better, access to those files than does NOPD. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 11 of the accompanying drive.

**Information Request No. 12:**    All Use of Force Review Board minutes and the underlying case files reviewed by each board for the last two years.

**Response No. 12:** Without waiving its general objections, NOPD provides the responsive information at Folder No. 12 of the accompanying drive.

**Information Request No. 13:**   For any civil litigation that occurred within two years of the date of this letter, arising from NOPD's use of force, even if the underlying event occurred in a prior period, produce the following: (a.) all deposition transcripts; (b.) all of the City's written responses to Interrogatories; (c.) all of the City's written responses to Requests for Production; (d.) all of the City's written responses to Requests for Admission; and (e.) all of the City's written responses to Subpoenas Duces Tecum to or from nonparties.

**Response No. 13:** Without waiving its objections, NOPD provides the responsive information at Folder No. "13 14 35 36 47 48" of the accompanying drive.

**Information Request No. 14:**   For the litigation identified in the preceding request, [a] any court rulings or settlement agreements. Additionally, [b] all NOPD reviews of use of force in those civil claims. Include [c] any after-action review and action items in connection with such reviews. If the City did not complete any such review nor require any such action items following these civil claims, [d] state that affirmatively and explain the basis for not doing so.

**Response No. 14:** Without waiving its objections, NOPD provides the responsive information at Folder No. "13 14 35 36 47 48" of the accompanying drive.

### Section VI - Custodial Interrogations

**Information Request No. 15:**   The City and NOPD first achieved full and effective compliance with Section VI of Consent Decree on January 24, 2019 (Dkt. No, 574-1; 575). To facilitate our assessment of whether the City and NOPD have sustained compliance since that date, provide: (15.) NOPD has posted custodial interrogation audits covering April-September 2020, June 2021-August 2021, and September 2021-February

2022 online. To the extent that they exist, provide audits covering September 2020-June 2021 and February 2022-July 2022 along with the underlying documentation relied upon by auditors.

**Response No. 15:** See Response No. 4. No data exists for the period October 2020 – July 2021.  The 2022 March – August Audit has not taken place yet. L3 data is only available for 6 months back. It requires tremendous NOPD manpower to find and load offline data disks for this audit. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 15 of the accompanying drive.

### Section VII - Photographic Line-Ups

**Information Request No. 16:**    The City and NOPD first achieved full and effective compliance with Section VII of Consent Decree on January 24, 2019 (Dkt. No, 574-1; 575). To facilitate our assessment of whether the City and NOPD have sustained compliance since that date, provide: (16.) NOPD has posted photographic line-ups audits from Q1 2021 and Q2-Q3 2021 online. To the extent that they exist, provide the audit reports covering 2020, Q4 of 2021, and 2022.

**Response No. 16:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 16 of the accompanying drive.

**Information Request No. 17:**    Completion records for photographic line-ups related trainings for 2020 to the present.

**Response No. 17:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. "17 19 20 34 38 Training" of the accompanying drive.

## Section IX –Policing Free of Gender Bias

**Information Request No. 18:**    The City and NOPD first achieved full and effective

compliance with Section IX of Consent Decree on January 24, 2019 (Dkt. No, 574-1;

575). To facilitate our assessment of whether the City and NOPD have sustained

compliance since that date, provide: (18) The policing free of gender bias audit reports

(including the DVU Case File, Domestic Violence Patrol Response, Sexual Assault, and

Child Abuse Audits) covering the last two years. NOPD has previously provided some of

these audits, but provide the complete universe of audits related to Gender Bias so that

we can confirm that we have all the necessary information.

**Response No. 18:** See Response No. 4. Further answering, and without waiving its

objections, NOPD provides the responsive information at Folder No. 18 of the

accompanying drive.

**Information Request No. 19:**    Completion records for gender bias related trainings for

2020 to the present.

**Response No. 19:** See Response No. 4. Further answering, and without waiving its

objections, NOPD provides the responsive information at Folder No. "17 19 20 34 38

Training" of the accompanying drive.

**Information Request No. 20:**    The City and NOPD first achieved full and effective

compliance with Section X of Consent Decree on October 5, 2021, during an in-

chambers status conference with the Court. Because the City and NOPD were not found

to be in compliance by the Court until October 5, 2021, provide all data which the City

believes shows sustained full and effective compliance for the required two years,

including but not limited to: (20) Completion records for community engagement trainings offered in 2021 to the present.

**Response No. 20:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. "17 19 20 34 38 Training" of the accompanying drive.

**Information Request No. 21:**    We understand that the Biennial Community Survey was last conducted in 2019. Provide the Department's plan and methodology to complete the next Biennial Community Survey.

**Response No. 21:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 21 of the accompanying drive.

**Section XI - Recruitment**

**Information Request No. 22:**    The City and NOPD first achieved full and effective compliance with Section XI of Consent Decree on January 24, 2021 (Dkt. No. 613-1). Because the City and NOPD were not found to be in compliance by the Court until January 24, 2021, provide all data which the City believes shows sustained full and effective compliance for the required two years, including but not limited to: (22) NOPD has posted the 2021 recruitment audit online. To the extent that they exist, provide any audit reports covering 2020 along with the underlying documentation relied upon by auditors.

**Response No. 22:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 22 of the accompanying drive. See https://nola.gov/nopd/nopd-consent-decree/ for the 2020 and

2021 recruitment annual reports. NOPD has not completed a recruitment audit and is not aware of a recruitment audit by the Monitor.

### Section XIV - Performance Evaluations and Promotions

**Information Request No. 100:**   [5]The City and NOPD first achieved full and effective compliance with Section XIV of Consent Decree on April 20, 2022 (Dkt. No. 622). Because the City and NOPD were not found to be in compliance by the Court until April 20, 2022, provide all data which the City believes shows sustained full and effective compliance for the required two years.

**Response No. 100**: See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 100 of the accompanying drive.

### Section XV – Supervision

**Information Request No. 23:**    The City and NOPD first achieved full and effective compliance with Section XV of Consent Decree on April 20, 2022 (Dkt. No. 622). Because the City and NOPD were not found to be in compliance by the Court until April 20, 2022, provide all data which the City believes shows sustained full and effective compliance for the required two years, including, but not limited to: (23) NOPD has posted online the 2021 supervision audit. To the extent that they exist, provide any 2020 supervision audit reports and all completed INSIGHT sub-audits along with the underlying documentation relied upon by auditors.

---

[5] This request was not numbered by DOJ and therefore has been given a 100 series number for reference.

**Response No. 23:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 23 of the accompanying drive. Further answering, NOPD has not performed a new Supervision audit because the audit performed by the monitor found full and effective compliance in April 2022.

## Section XVI - Secondary Employment

**Information Request No. 24:**    The City and NOPD first achieved full and effective compliance with Section XVI of Consent Decree on January 24, 2019 (Dkt. No, 574-1; 575). To facilitate our assessment of whether the City and NOPD have sustained compliance since that date, provide: (24) The complete administrative investigation file, report, and record of imposition of discipline (if any) for all allegations of violations within the last two years of policy and personnel rules stemming from allegations related to secondary employment.

**Response No. 24:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. "24 25" of the accompanying drive.

**Information Request No. 25:**    The complete administrative investigation file, report, and record of imposition of discipline (if any) for all allegations of violations within the last two years of policy and personnel rules stemming from allegations related to interference with any of the above investigations regarding secondary employment.

**Response No. 25:** Without waiving its objections, NOPD provides the responsive information at Folder No. "24 25" of the accompanying drive.

### Section XVII - Misconduct Complaint Intake, Investigation, and Adjudication

**Information Request No. 26:**     The City and NOPD first achieved full and effective

compliance with Section XVII of Consent Decree on January 24, 2021 (Dkt. No. 613-1).

Because the City and NOPD were not found to be in compliance by the Court until

January 24, 2021, provide all data which the City believes shows sustained full and

effective compliance for the required two years, including, but not limited to: (26) NOPD

has posted online the Public Integrity Bureau Annual Report for 2020. To the extent that

it exists, provide the Public Integrity Bureau Annual Report for 2021.

**Response No. 26:** Without waiving its objections, NOPD provides the responsive

information at Folder No. 26 of the accompanying drive. NOPD has a draft that has been

reviewed by OCDM but has not been approved for publication as of this date. PIB is

working to update the 2021 data and NOPD will supplement this response accordingly.

### Section XVIII - Transparency and Oversight

**Information Request No. 27:**     The City and NOPD first achieved full and effective

compliance with Section XVIII of Consent Decree on April 10, 2018 (Dkt. No. 550-1).

(27) We are unaware of any audits or reports showing the status of NOPD's compliance

with the transparency and oversight provisions of the Consent Decree covering the last

two years, or of any audit protocol, tools, or methodologies in this area. If these audits do

not exist, state that fact affirmatively and produce the data that, in the absence of the

audit, the City believes shows sustained full and effective compliance for the required

two years.

**Response No. 27:** See Response No. 4. There have been no transparency and oversight

audits by the Monitor to our knowledge. Transparency and Oversight were found to be in

"Full and Effective Compliance" in April, 2018, and again in January 2019.[6]  The

Monitor's most recent annual report for Year End 2020 does not mention Transparency

and Oversight. The only provision of the CD that allows the Monitor to *not* provide a

public audit of each area of the CD at least annually is by agreement of the partis that the

Monitor "refrain from conducting a compliance audit or review of a requirement

previously found to be in compliance by the Monitor pursuant to audit or review, or

where outcome assessments indicate that the outcome intended by the requirement has

been achieved." *See* Paragraph 452. The Monitor has publicly noted that:

> Over the past few years, the New Orleans Police Department has
> made an unprecedented volume of data publicly available. Calls
> for service data and Use of Force data, for example, now are
> accessible at the click of a mouse. As a result, the New Orleans
> community has come to expect this sort of openness from its police
> department. We provide a lot of information to the public.[7]

Below are links to publicly available information that makes NOPD one of, if not the,

most transparent police departments in the country:

- Policies: NOPD - Policies - City of New Orleans (nola.gov)

    This page has all approved NOPD policies. Important documents are translated to

    Spanish and Vietnamese. The page also includes NOPD Rules and some SOPs.

- Dashboards: NOPD - Data - City of New Orleans (nola.gov)

---

[6] nopdconsent.azurewebsites.net/Media/Default/Documents/Reports
/Loyola%20Proceeding%20Deck%20-%20March%202021.pdf)
[7] From The Big Easy To The Big Ten, And Beyond, What The Process Of Reforming The New
Orleans Police Department Can Teach Colleges and Universities; Jonathan Aronie, David
Douglass, and Joseph Jay, the Washington, DC office of Sheppard Mullin.

This page has a crime map, a demographics dashboard, several management dashboards including: response times, integrity controls (recent misconduct complaints), use of force, vehicle risks (collisions and pursuits), internal performance audits (finalized audit results), and community policing. It also has a link to the raw public data and historical police records.

- Public Data (aka OPEN Data) Policing Data - NOPD News

    This site has anonymized raw data from NOPD's software systems, including: CAD (911 dispatch data), EPR (electronic police reports), FIC (field interview cards, stop and search database), Use of Force reports, Misconduct Complaints, In Car Camera metadata, and body worn camera metadata. The page also has links to our public reports.

- Annual Reports:  NOPD - Consent Decree - City of New Orleans (nola.gov)

    This page has all competed annual reports going back to 2014. The annual report topics include: Community engagement, recruitment, domestic violence, stop and search, uses of force, PIB, LEP services, bias-free policing, training, and sexual assault. The page also includes the community policing plans, links to other NOPD pages, links to Monitor reports, and a link to the Monitor's website.

    Additionally, there are many more pages with information about NOPD on these two sites:

- Home - NOPD News

- NOPD - City of New Orleans (nola.gov)

**Information Request No. 28:**     All Office of Independent Police Monitor audits of NOPD covering the last two years.

**Response No. 28:** Without waiving its objections, NOPD provides the responsive information at Folder No. 28 of the accompanying drive.

### Section V - Stops, Searches, and Arrests

**Information Request No. 29:**    We have received and reviewed the 2020 and 2021 stops, searches, and arrests audit reports. To the extent that it exists, provide the 2022 stops, searches, and arrests audit report along with the underlying documentation relied upon by auditors.

**Response No. 29:** See Response No. 4. Further answering, and without waiving its objections, this internal audit report is currently being written by NOPD. The draft scorecards and data have been given to the Districts for their review. Feedback from the Districts has not been fully reviewed at this date. Further responding, NOPD provides the responsive information at Folder No. 29 of the accompanying drive.

**Information Request No. 30:**    To the extent that it exists, the 2022 search warrant audit report along with the underlying documentation relied upon by auditors.

**Response No. 30:** See Response No. 4. Further answering, and without waiving its objections, NOPD provides the responsive information at Folder No. 30 of the accompanying drive.

**Information Request No. 31:**    Proof of compliance with Paragraph 154, which requires that NOPD ensure that databases containing individual-specific data comply with federal and state privacy standards governing personally-identifying information and develop a process to restrict database access to authorized, identified users who are accessing the information for a specific and identified purpose.

**Response No. 31:** Without waiving its objections, NOPD provides the responsive information at Folder No. 31 of the accompanying drive.

**Information Request No. 32:**    The Standard Operating Procedure or other document memorializing NOPD's process for receiving and sharing information with the DA.

**Response No. 32:** Without waiving its objections, NOPD provides the responsive information at Folder No. 32 of the accompanying drive.

**Information Request No. 33:**    The Standard Operating Procedures for the Field Operations Bureau Inspection Process.

**Response No. 33:** Without waiving its objections, NOPD provides the responsive information at Folder No. 33 of the accompanying drive.

**Information Request No. 34:**    Completion records for SSA-related trainings offered from 2020 to the present.

**Response No. 34:** Without waiving its objections, NOPD provides the responsive information at Folder No. "17 19 20 34 38 Training" of the accompanying drive.

**Information Request No. 35:**    For any civil litigation that occurred within two years of the date of this letter, arising from NOPD's stops, searches, and arrests, even if the underlying event occurred in a prior period, produce the following: (a.) all deposition transcripts; (b.) all of the City's written responses to Interrogatories; (c.) all of the City's written responses to Requests for Production; (d.) all of the City's written responses to Requests for Admission; and (e.) all of the City's written responses to Subpoenas Duces Tecum to or from nonparties.

**Response No. 35:** Without waiving its objections, NOPD provides the responsive information at Folder No. "13 14 35 36 47 48" of the accompanying drive.

**Information Request No. 36:**   For the litigation identified in the proceeding request, any court rulings or settlement agreements. Additionally, all NOPD reviews of stops, searches, and arrests in those civil claims. Include any after-action review and action items in connection with such reviews. If the City did not complete any such review nor require any such action items following these civil claims, state that affirmatively and explain the basis for not doing so.

**Response No. 36:** Without waiving its objections, NOPD provides the responsive information at Folder No. "13 14 35 36 47 48" and Folder No. "35 36" of the accompanying drive.

**Section VIII - Bias-Free Policing**

---

**Information Request No. 37:**   Outcome Assessments:

   a.   Homicide clearance rate: Provide a demographic breakdown by victim, including race, sex, and age.

      i.   **NOPD Response:** Without waiving its objections, NOPD provides the responsive information at Folder No. 37A.

   b.   Comparative response time: Provide a corrective action plan to address any disparities in response times between Limited English Proficiency/Non-Limited English Proficiency calls.

      i.   **NOPD Response:** To improve response times for Code 1 LEP calls NOPD will: (1) train APR to use Voiance with desk phones, and (2) train desk officers to use Voiance with desk phones.

   c.   Classification of reports of sexual assault and domestic violence: Provide Sexual Assault Annual or Semi-Annual reports for 2020 and 2021.

        i.   **NOPD Response:** See 2017 NOPD's Domestic Violence Patrol Response, and annual Sexual Assault and Domestic Violence reports at https://nola.gov/nopd/nopd-consent-decree/. Without waiving its objections, NOPD provides the responsive information at Folder No. 37C of the attached drive.

    d.  Clearance rate of sexual assault and domestic violence cases: Appendix A to the Motion to Terminate explains that NOPD's electronic police reports ("EPR") are the data source for the charts provided as evidence of compliance regarding clearance rates. We understand that NOPD's EPR data is publicly available at https://data.nola.gov/Public-Safety-and-Preparedness/Electronic-Police-Report-2022/9wdb-bznc. We would like to meet with a member of NOPD's Analytics Unit to get guidance on running and downloading reports so we can identify and assess the data sets relevant to the charts in Appendix A. Provide the name and contact information of the relevant individual and we will reach out to schedule a meeting next week.

        i.   **NOPD Response:** Without waiving its objections, NOPD provides the responsive information at Folder No. 37D. Further, NOPD has already scheduled the requested meeting with DOJ personnel.

**Information Request No. 38:**    Completion records for bias-free related trainings offered from 2020 to the present.

**Response No. 38:** Without waiving its objections, NOPD provides the responsive information at Folder No. "17 19 20 34 38 Training" of the accompanying drive.

**Information Request No. 39:**     Documentation showing that NOPD supervisors throughout

the Department consistently message to subordinates that discriminatory policing is an

unacceptable tactic from 2020 to the present.

**Response No. 39:** See Response No. 4. Further answering, and without waiving its

objections, NOPD provides the responsive information at Folder No. 39 of the

accompanying drive.

**Information Request No. 40:**     Documentation showing that NOPD incorporated

requirements regarding bias-free policing into hiring and promotions process from 2020

to the present.

**Response No. 40:** See Response No. 4. Further answering, and without waiving its

objections, NOPD provides the responsive information at Folder No. 40 of the

accompanying drive.

**Information Request No. 41:**     Documentation showing outreach conducted to LGTBQ+

stakeholders, including the meetings specifically geared towards receiving complaints

about the treatment of LGBTQ+ individuals, from 2020 to the present.

**Response No. 41:** Without waiving its objections, NOPD provides the responsive

information at Folder No. 41 of the accompanying drive.

**Information Request No. 42:**     The finalized audit protocol for Bias-Free, including the

audit protocol for the language access provisions. We understand that the Monitor is

currently reviewing this protocol, and we will need to review the final protocol to assess

compliance. Provide evidence of the Department's capability to perform the assessments

included in the Bias-Free audit protocol going forward (*e.g.*, whether Department will

partner with an academic institution or whether it will retain other subject matter experts
in order to complete the audit).

**Response No. 42:** See Response No. 4. NOPD Analytics and PSAB are trying to recreate
DOJ's analysis conducted by Dr. Ross. NOPD requested that DOJ provide conversion
information to allow NOPD to reproduce the Ross analysis. DOJ was unable to provide
that service and NOPD is working through that process on its own. See emails regarding
same in Folder No. 42. If NOPD cannot repeat the outcomes from the Ross analysis,
additional meetings and investigation will be needed to determine what NOPD is doing
differently. Until NOPD fully understands how to implement the analysis DOJ created, it
cannot agree to incorporate such elements into its internal audits. Further answering, and
without waiving its objections, NOPD provides the responsive information at Folder No.
42 of the accompanying drive.

**Information Request No. 43:**   The finalized language access sub-audits covering the last
two years along with the underlying documentation relied upon by auditors. We may
select a sample of these items to review the underlying data to ensure the accuracy of the
audit. If any of the requested audits do not exist, state that affirmatively and produce the
data that, in the absence of the audit, the City believes shows sustained full and effective
compliance for the required two years.

**Response No. 43:** See Response No. 4.  Further answering, and without waiving its
objections, NOPD provides the responsive information at Folder No. 43 of the
accompanying drive.

**Information Request No. 44:**     Any plan of correction following any problems identified during the language access sub- audit and all data which the City believes demonstrate that the plan of correction has been implemented.

**Response No. 44:** Without waiving its objections, NOPD provides the responsive information at Folder No. 44 of the accompanying drive.

**Information Request No. 45:**     The following NOPD policy chapters translated into Spanish and Vietnamese since identified by NOPD on June 28, 2022, as needing translation:

    a.  Chapter 1.3 Use of Force

    b.  Chapter 41.13 Bias-Free Policing

    c.  Chapter 55.1 Victim and Witness Assistance

**Response No. 45:** Without waiving its objections, NOPD provides the responsive information at Folder No. 45 of the accompanying drive.

**Information Request No. 46:**     Data showing all officers have now received the remedial training instructing on the use of NOPDAIs and Voiance (also known as CyraCom) as required by the corrective action plan currently in place.

**Response No. 46:** Without waiving its objections, NOPD provides the responsive information at Folder No. 46 of the accompanying drive.

**Information Request No. 47:**     For any civil litigation that occurred within two years of the date of this letter involving a discriminatory policing claim, even if the underlying event occurred in a prior period, produce the following:

    a.  all deposition transcripts;

    b.  all of the City's written responses to Interrogatories;

    c.   all of the City's written responses to Requests for Production;

    d.   all of the City's written responses to Requests for Admission; and

    e.   all of the City's written responses to Subpoenas Duces Tecum to or from

nonparties.

**Response No. 47:** Without waiving its objections, NOPD provides the responsive

information at Folder No. "13 14 35 36 47 48" of the accompanying drive.

**Information Request No. 48:**    For the litigation identified in the proceeding request, any

court rulings or settlement agreements. Additionally, all NOPD reviews of bias-free

policing in those civil claims. Include any after-action review and action items in

connection with such reviews. If the City did not complete any such review nor require

any such action items following these civil claims, state that affirmatively and explain the

basis for not doing so.

**Response No. 48:** Without waiving its objections, NOPD provides the responsive

information at Folder No. "13 14 35 36 47 48" of the accompanying drive.

*Respectfully submitted,* this 13ᵗʰ day of September 2022.

*Davillier Law Group, LLC*

/s/ Charles F. Zimmer II
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

*Counsel of Record for*
*the City of New Orleans*

26

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the above and foregoing pleading via Notice of Electronic filing using this Court's CM/ECF system to counsel of record participating in the CM/ECF system on this 13th day of August 2022.

<u>/s/ Charles F. Zimmer II</u>