```
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
***************************************************************
UNITED STATES OF AMERICA
                                        Docket No. 12-CV-1924
                                        Section "E"
v.                                      New Orleans, Louisiana
                                        Wednesday, August 17, 2022
NEW ORLEANS CITY
***************************************************************
                TRANSCRIPT OF PUBLIC HEARING PROCEEDINGS
                HEARD BEFORE THE HONORABLE SUSIE MORGAN
                       UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE MONITORING TEAM:        JONATHAN ARONIE
                                DAVID DOUGLASS
                                ASHLEY BURNS
                                MARY ANN VIVERETTE

FOR THE DEPARTMENT OF JUSTICE:  TIMOTHY MYGATT, ESQ.
                                R. JONAS GEISSLER, ESQ.
                                MEGAN R. MARKS, ESQ.
                                THEODORE R. CARTER, III, ESQ.

FOR THE OFFICE OF THE
INDEPENDENT POLICE MONITORING:  STELLA CZIMENT
                                BONYCLE SOKUNBI

FOR THE NEW ORLEANS
POLICE DEPARTMENT:              SUPERINTENDENT SHAUN FERGUSON
                                ARLINDA WESTBROOK
                                OTHA SANDIFER
                                CHRISTOPHER GOODLY

FOR THE CITY OF NEW ORLEANS:    DONESIA TURNER, CITY ATTORNEY
                                CHARLES ZIMMER, ESQ.
                                DANIEL DAVILLIER, ESQ.

Official Court Reporter:        Karen A. Ibos, CCR, RPR, CRR, RMR
                                500 Poydras Street, B-275
                                New Orleans, Louisiana 70130
                                (504) 589-7776


   Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

```
                          P R O C E E D I N G S
                         (WEDNESDAY, AUGUST 17, 2022)
                        (PUBLIC HEARING PROCEEDINGS)
```

13:19:37   (OPEN COURT.)
13:19:37           THE COURT:  Be seated.
13:19:39           THE DEPUTY CLERK:  Calling Civil Action 12-1924, *United States of America v. The City of New Orleans*.
13:19:47           THE COURT:  All right.  Good afternoon, everyone.  And welcome.  And thank you all for being here today.  I am really happy to see you.  I would like for the parties to make their appearances for the record.  If we could start with the NOPD and the City first.  I guess, Chief.
13:20:04           SUPERINTENDENT FERGUSON:  Superintendent -- I'm sorry, your Honor.  Superintendent Shaun Ferguson, New Orleans Police Department.
13:20:11           THE COURT:  Thank you.
13:20:13           MS. TURNER:  Donesia Turner, City Attorney.
13:20:18           MR. ZIMMER:  Charles Zimmer, outside counsel for the City of New Orleans.
13:20:23           MR. DAVILLIER:  Good afternoon, your Honor.  Daniel Davillier on behalf of the City of New Orleans and the NOPD.
13:20:28           MS. WESTBROOK:  Arlinda Westbrook, NOPD.
13:20:32           MR. SANDIFER:  Otha Sandifer, NOPD.
13:20:33           MR. GOODLY:  Christopher Goodly, NOPD.

13:20:38  1              THE COURT:  And the Department of Justice.
13:20:39  2              MR. MYGATT:  Tim Mygatt, your Honor, on behalf of the
13:20:43  3   United States.
13:20:44  4              MR. GEISSLER:  Good afternoon, your Honor.  Jonas
13:20:44  5   Geissler on behalf of the United States.
13:20:46  6              MS. MARKS:  Good afternoon, Megan Marks on behalf of the
13:20:49  7   United States.
13:20:50  8              MR. CARTER:  Good afternoon, your Honor.  Theodore Carter
13:20:52  9   also on behalf of the United States.
13:20:54 10              THE COURT:  And the monitoring team.
13:20:56 11              MR. ARONIE:  Your Honor, Jonathan Aronie with the
13:20:59 12   monitoring team.
13:21:01 13              MR. DOUGLASS:  David Douglass, your Honor, monitoring
13:21:03 14   team.
13:21:07 15              THE COURT:  Dr. Burns.
13:21:08 16              MS. BURNS:  Ashley Burns, monitoring team.
13:21:13 17              MS. VIVERETTE:  Mary Ann Viverette, monitoring team.
13:21:16 18              MR. ARONIE:  And, your Honor, would you like the IPM to
13:21:19 19   introduce themselves as well?
13:21:19 20              THE COURT:  Yes.  And then the Office of the Independent
13:21:20 21   Police Monitoring.
13:21:21 22              MS. CZIMENT:  Thank you, your Honor.  Good afternoon.
13:21:23 23   Stella Cziment on behalf of the Office of the Independent Police
13:21:26 24   Monitor for the City of New Orleans.
13:21:29 25              THE COURT:  Well, thank all of you -- did I miss anyone?

13:21:31  1          MR. ARONIE:  One more.
13:21:35  2          MS. SOKUNBI:  Good afternoon.  Bonycle Sokunbi of behalf
13:21:38  3  of IPM.
13:21:38  4          THE COURT:  Is that everyone?  All right.  Well, thank
13:21:41  5  you all for being here today - the parties, the NOPD officers who
13:21:48  6  are here today, the public, and the media.
13:21:50  7          As always, we appreciate your interest in these
13:21:53  8  proceedings because they're important to the citizens of New
13:21:56  9  Orleans and to our many visitors to our city, and we all -- we know
13:22:02 10  we all love this great city, and we're all here to support the
13:22:06 11  NOPD.
13:22:07 12          When we last met in April, the monitoring team and I
13:22:11 13  expressed optimism that NOPD was on track to move two significant
13:22:16 14  areas, bias-free policing and stop, searches and arrests into what
13:22:22 15  we call the green.  I also expressed my hope that I would be able
13:22:27 16  to hold public hearings on these topics in May and June.  As you
13:22:31 17  may have noticed, that did not happen.  It did not happen because
13:22:35 18  notwithstanding the ongoing effort and commitment of the monitoring
13:22:40 19  team, the Department of Justice, the NOPD, and frankly this Court,
13:22:46 20  completion of NOPD's audits of bias-free policing and stop,
13:22:51 21  searches, and arrests have simply taken longer to accomplish than
13:22:56 22  we expected.
13:22:57 23          Although these audits still are not complete, I scheduled
13:23:01 24  this hearing, first, to report to the public on the status of those
13:23:07 25  audits; second, to provide, to the extent possible, a plan for how

```
13:23:11  1   we proceed from here; and third, to address several troubling
13:23:15  2   issues that recently have arisen.
13:23:18  3             Before we turn to these issues, however, there is a
13:23:21  4   matter I must address.  As you are aware, on Tuesday the City filed
13:23:26  5   a motion to terminate the consent decree.  The Department of
13:23:31  6   Justice has not had an opportunity to respond to the motion and
13:23:35  7   this Court has not had the opportunity to assess whether the
13:23:39  8   procedure and standards for seeking termination of the consent
13:23:43  9   decree, which are set forth in paragraph 492 if you would like to
13:23:47 10   read them, have been met.
13:23:49 11             Despite some media reports to the contrary, today's
13:23:54 12   hearing is not about the City's motion to terminate the consent
13:23:59 13   decree.  The only time a motion is filed on one day and a hearing
13:24:03 14   is held the next day is on TV, and this is not TV.  For those
13:24:08 15   reasons, it would be premature for me to entertain any arguments
13:24:12 16   related to the City's motion today.  I will not expect the City or
13:24:17 17   the DOJ to make any statements at today's hearing in support of or
13:24:23 18   in opposition to that motion.
13:24:25 19             Nevertheless, it is my job to balance the parties' right
13:24:28 20   to a fair opportunity to be heard on the motion in the future,
13:24:34 21   against the public's right to know where things stand right now.
13:24:39 22   The monitoring team and I have a responsibility to report to the
13:24:42 23   public on the status of NOPD's compliance under the consent decree,
13:24:47 24   and that is what we're here to do today.  I will certainly give the
13:24:51 25   NOPD and the DOJ the opportunity to speak today, if they would like
```

1  to.
2           As I mentioned in April, I expected that bias-free
3  policing and stop, searches, and arrests would come into compliance
4  this summer.  The NOPD has made significant progress in both of
5  those closely-related areas, and the monitoring team and DOJ
6  currently are evaluating their progress, including the results of
7  the audits in those areas.
8           I'm hopeful we'll be in a position to schedule those
9  presentations soon.  I've asked the monitors to report today on the
10 progress made in those areas.
11          I've also asked the monitors to report today on several
12 issues that have arisen since the public hearing in April.  The
13 first issue involves serious questions regarding potential abuse by
14 NOPD officers performing off-duty details, also known as secondary
15 employment.  This raised concerns in my mind regarding the systems
16 in place to prevent this kind of abuse, as well as the level of
17 supervision over these implicated officers.
18          The second issue is NOPD's recruiting and retention
19 problems.  These issues are having an impact on the department's
20 ability to maintain compliance with several of the requirements of
21 the consent decree.  We'll hear from the monitoring team in a
22 moment regarding the steps NOPD and the City are taking to mitigate
23 these negative impacts.
24          Finally, the Court is aware of recent inaccurate
25 statements made by the City and other groups concerning the consent

13:26:36   1    decree's purported impact on NOPD personnel and their ability to
13:26:41   2    safely and effectively discharge their duties.  The Court is deeply
13:26:46   3    concerned that these statements risk misleading the public and NOPD
13:26:50   4    members with respect to whether the NOPD is fully committed to
13:26:55   5    achieving full and sustained implementation of the consent decree's
13:27:00   6    requirements.
13:27:04   7             The Court is also deeply concerned with the City's
13:27:07   8    implication, without support, that the consent decree is impairing
13:27:12   9    NOPD's ability to execute its law enforcement mission and placing
13:27:16  10    its officers lives at risk.  These inaccurate statements convey the
13:27:22  11    false impression that NOPD officers want to revert back to the NOPD
13:27:26  12    of old.  They don't.  Officers have told the monitoring team again
13:27:31  13    and again that they are proud of the department's transformation
13:27:36  14    since the outset of the consent decree.  Officers have not told us
13:27:40  15    that the consent decree is placing officers' lives at risk.
13:27:46  16             Instead, they are concerned that they have inadequate
13:27:50  17    resources to do their jobs.  They want and deserve working
13:27:54  18    equipment, modern facilities, and fair pay.  They say they need
13:27:59  19    more personnel, commissioned officers and civilians, to enable them
13:28:03  20    to protect and serve the public.  Suggesting that officers want the
13:28:08  21    consent decree to end so that they can return to policing the way
13:28:12  22    they did before 2013 is wrong and dangerous and does a disservice
13:28:19  23    to the men and women of the NOPD.
13:28:22  24             And let's all remember, many crucial reforms have been in
13:28:26  25    place for years without any negative impact on recruitment or

1  retention.  In fact, recruitment improved after implementation of
2  the consent decree.  Officer and public satisfaction improved after
3  implementation of the consent decree.  The current rising climb in
4  crime and decline in officer recruitment and retention are national
5  trends.  This is happening in cities all over the country, most of
6  which are not under consent decrees.
7          It is inaccurate and unfair to blame these problems on
8  the consent decree.  The Court expects the City's statements
9  concerning the consent decree, whether to the Court or to the
10 public, to be accurate, evidence-based, and consistent with the
11 City's own agreement to fully implement the consent decree's
12 reforms.
13         It is critical that the public, as well as the NOPD
14 personnel, who have worked so tirelessly to implement the needed
15 reforms remain confident that the City is not wavering from its
16 commitment to achieve full and sustained compliance with its
17 agreed-to obligations.
18         Since implementation of the consent decree, I have met
19 regularly with the parties, including rank and file officers.  The
20 monitor also meets regularly with the parties, at least weekly, and
21 sometimes daily, to discuss the status of NOPD's efforts and ensure
22 everyone is on the same page regarding exactly what the City and
23 NOPD need to do to achieve compliance.
24         Over the past seven or eight years, members of the
25 monitoring team have spent time with NOPD officers on ride alongs,

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 14:00:25 | 1  | significant progress the City has made in implementing the consent           |
| 14:00:29 | 2  | decree.  As the monitor has found, and we have agreed, the City has          |
| 14:00:33 | 3  | achieved initial compliance in 15 of the 17 substantive areas                |
| 14:00:37 | 4  | covered by the consent decree.  This is due to a tremendous amount           |
| 14:00:41 | 5  | of hard work by many people throughout the New Orleans Police                |
| 14:00:45 | 6  | Department.  There has not yet been any formal assessment of                 |
| 14:00:49 | 7  | whether the City and NOPD have sustained compliance with these               |
| 14:00:53 | 8  | 15 areas of the consent decree.                                              |
| 14:00:54 | 9  |          In its proposed motion to terminate, the City has argued            |
| 14:00:57 | 10 | that it has sustained compliance; and we will consider the                   |
| 14:01:00 | 11 | information and follow the process in the consent decree to assess           |
| 14:01:04 | 12 | whether compliance has been sustained.                                       |
| 14:01:06 | 13 |          In the two remaining areas of the consent decree, stops,            |
| 14:01:10 | 14 | searches, and arrests and bias-free policing, the City is nearing            |
| 14:01:14 | 15 | compliance under one of the methods set forth in the consent                 |
| 14:01:17 | 16 | decree, which requires that the provisions of the decree in these            |
| 14:01:23 | 17 | areas be incorporated into policy, that all relevant personnel be            |
| 14:01:27 | 18 | trained, and that NOPD has ensured that the requirements are being           |
| 14:01:29 | 19 | carried out in practice, which would usually be demonstrated                 |
| 14:01:34 | 20 | through audits.                                                              |
| 14:01:35 | 21 |          In its proposed motion to terminate, the City has also              |
| 14:01:38 | 22 | argued that it has already achieved and sustained compliance --              |
| 14:01:41 | 23 |          MR. DAVILLIER:  Objection, your Honor.  He is talking               |
| 14:01:42 | 24 | about the motion.  He said he was not going to talk about the                |
| 14:01:45 | 25 | motion.                                                                      |

14:01:46  1              THE COURT:  I don't want to get into the motion today --
14:01:49  2              MR. DAVILLIER:  Thank you, your Honor.
14:01:50  3              THE COURT:  -- so if you could -- because I've asked them
14:01:52  4   not to get up and argue their motion.  I want to wait until I've
14:01:57  5   read everything.
14:01:59  6              MR. MYGATT:  I absolutely understand, your Honor.  I just
14:02:01  7   wanted to acknowledge the work that's been done, and all I am
14:02:02  8   trying to say is we're going to follow the process in the consent
14:02:06  9   decree to assess that.  And that was actually the exact point that
14:02:08 10   I was about to make.
14:02:09 11              MR. DAVILLIER:  Thank you.
14:02:11 12              MR. MYGATT:  You've made an argument about that and we're
14:02:13 13   going to assess that.
14:02:14 14              THE COURT:  Okay, all right.  Let's go.  Let's proceed.
14:02:17 15              MR. MYGATT:  Over the past several months, some issues
14:02:19 16   have arisen that have raised concerns for us about whether NOPD has
14:02:22 17   sustained compliance in areas previously found in compliance and
14:02:25 18   whether NOPD can sustain compliance without ongoing technical
14:02:29 19   assistance from the monitor and us.  The Court has talked about
14:02:32 20   some of those issues already, and I don't want to go into length on
14:02:35 21   those.  Again, the City has made arguments about those, and we will
14:02:37 22   consider those at the proper time.
14:02:40 23              We also want to state clearly that if the City or NOPD
14:02:44 24   have any concerns about the implementation of the consent decree,
14:02:47 25   we are willing to discuss those concerns with the City and NOPD at

1    While it's not my job to tell the NOPD how to do its job,
2 it is my responsibility to weigh in when an action is putting the
3 reforms of the past eight years at risk.  That's in a nutshell is
4 why I scheduled today's hearing.
5    Since our last hearing in April, I've grown increasingly
6 concerned about the impact of NOPD's staffing shortages and lack of
7 resources are having on its ability to sustain the high level of
8 compliance we have grown accustomed to finding at these public
9 hearings.  In April, those concerns prompted me to direct the
10 monitoring team to put together a technical assistance report,
11 which you've heard discussed today.  It incorporates a series of
12 recommendations to the NOPD based on countless meetings with
13 officers, the police associations, and community members.
14    In May I began meeting with the City's Chief
15 Administrative Officer and City Attorney to discuss staffing,
16 civilianization, equipment, and facilities, and the impact those
17 things are having on officer retention, officer recruitment, and
18 consent decree compliance.  These meetings have proved very
19 valuable, and I know the CAO takes this matter quite seriously.
20 The City has come up with a concrete plan to fill unfilled
21 positions, hire new staff, improve equipment, fix dilapidated
22 facilities, and generally improve officer working conditions.
23    So I want to publicly thank the CAO for his efforts to
24 follow-up on the many concerns expressed by the NOPD and this
25 Court.

1          Notwithstanding these efforts, though, I still do not see
2   that the City or NOPD have a holistic plan to deal with the current
3   emergency, nor have I seen, until very recently, a unified focus on
4   officer retention.  This is unfair to the men and women of the NOPD
5   who have worked so hard for so long to turn the NOPD around, and
6   it's unfair to the New Orleans community to depend on the NOPD to
7   keep them safe.  This lack of a holistic plan not only hurts
8   officers and community members, it virtually assures the NOPD will
9   not be able to sustain its achievements under the consent decree.
10          To remedy this, I am going to take the following actions:
11  First, I am directing the monitor to assign members of his team to
12  provide technical assistance to the NOPD in the areas of staffing,
13  officer retention, recruiting, transparency, alternative police
14  response, and burden reduction.  I want a member of the monitoring
15  team embedded with the NOPD on each of these work streams.
16          Second, the monitor and I plan to continue meeting
17  monthly with the CAO for the foreseeable future to ensure the City
18  follows through on its plans to direct additional resources to the
19  NOPD and its officers, including, as I mentioned, proper equipment,
20  professional facilities, functioning information technology, and
21  reasonable pay.
22          Third, the monitor and I plan to continue meeting with
23  the NOPD, the CAO, and the Civil Service Commission until all
24  critical unfilled positions are filled and all necessary new
25  positions are approved.  These meetings will focus on the need for

14:14:56  1   expanded civilianization of NOPD personnel.  And I want a report to
14:15:02  2   you all that the Civil Service Commission has expressed the desire
14:15:07  3   to work with NOPD to make -- to achieve these goals faster than
14:15:14  4   we've been able to do in the past, so I am really hopeful that we
14:15:18  5   will make progress.
14:15:19  6             Fourth, I am directing the monitor to re-audit several
14:15:23  7   critical areas of the consent decree that I fear may have been
14:15:28  8   impacted by the lack of NOPD personnel.  These include the
14:15:32  9   integrity of crime reporting data, the downgrading of calls for
14:15:36 10   service, the impact of response times, the delays in sharing data
14:15:41 11   and reports with the public, and the reduction of innovative and
14:15:45 12   targeted crime fighting.
14:15:48 13             Fifth, I am encouraging the City to explore the use of
14:15:53 14   its emergency contracting powers to expedite as many of the
14:15:57 15   necessary remedial measures as possible.  For example, this Court
14:16:02 16   and the monitoring team have been pushing the City for many years
14:16:05 17   to make better use of civilianization, alternative police
14:16:11 18   reporting, and non-police handling of minor traffic accidents.  The
14:16:15 19   progress the City has made in these areas has been tragically slow.
14:16:20 20   This can't continue.  The City is facing an emergency.  NOPD cannot
14:16:25 21   continue to police the way it did when it had 1,300 officers.
14:16:31 22             Sixth, I am directing the monitoring team to publish its
14:16:35 23   April technical assistance report in early September, along with an
14:16:38 24   accounting of what steps the NOPD has taken to implement those
14:16:43 25   recommendations.

14:16:44  1              Seventh, I understand one or more members of the City
14:16:48  2    Council are working to bring together multiple stakeholders,
14:16:52  3    including the administration, the civil service, and the NOPD in an
14:16:58  4    effort to work together to help overcome the NOPD's current
14:17:02  5    challenges.  I've made it clear to those responsible for this
14:17:06  6    effort that I welcome the monitors' involvement in this effort.
14:17:12  7              Eighth, I am directing the monitoring team to work with
14:17:15  8    the NOPD to re-establish the burden reduction working groups that
14:17:20  9    proved so valuable in the past.  And I believe that some of the
14:17:24 10    officers here have served on those committees.  In an effort to
14:17:28 11    reduce wasted time and promote internal efficiencies, the
14:17:32 12    monitoring team in 2015, 2016, and 2017 held a series of burden
14:17:40 13    reduction working groups, with officers of all ranks.  These
14:17:44 14    meetings led to a number of very successful innovations.  I want to
14:17:48 15    see these meetings re-energized, and I want them expanded to focus
14:17:53 16    on alternative policing strategies as well.
14:17:57 17              As I said a moment ago, the NOPD cannot police with 950
14:18:02 18    officers the way it did with 1,300 officers.
14:18:06 19              Ninth, I've asked the monitoring team to schedule two
14:18:10 20    public meetings in September, one for the community and one more
14:18:13 21    the media.  It's critical that the people of New Orleans receive
14:18:17 22    current, accurate, and complete information regarding the state of
14:18:23 23    the consent decree and the state of NOPD's compliance with the
14:18:26 24    consent decree.  These two meetings will give the public directly,
14:18:30 25    and through the press, the opportunity to have their questions

1  answered by the individuals who have served as my eyes and ears
2  since the outset of the consent decree, the monitoring team.
3         Tenth, I plan to hold monthly public hearings until NOPD
4  and the City demonstrate to this Court that they have a strong plan
5  and are moving forward to implement that plan to resolve the
6  problems facing the NOPD.
7         I am hoping these actions will help the NOPD and the City
8  to get this process back on track.
9         Before I close today, I want to be clear about one thing
10 that is very important to me.  While I am frustrated by the recent
11 concerns I have in some areas and the lack of progress I've seen in
12 others, I do not say this to criticize the men and women who
13 continue to toil in the NOPD trenches to serve and protect the
14 people of New Orleans.  You have been asked to take on a critical
15 job with inadequate support, insufficient resources, poor
16 equipment, and crumbling buildings.  I want to thank you for not
17 giving up on our city, and I assure you we're not giving up on you.
18 You have been instrumental in transforming the department over the
19 past eight years, and I will make sure you get what you need to
20 continue this job.
21        Nor do I intend to criticize those NOPD supervisors and
22 leaders, a few of whom I mentioned in my opening remarks, who have
23 proven themselves to be true proponents of reform, true partners of
24 progress.  I can't thank you all enough for your commitment to
25 public service.  Please do not take any of my remarks as slights

1  against your hard work.  You all are being asked to undertaken a
2  very heavy lift without the resources you need to get the job done,
3  and as I said, that's going to change.
4           I've said before that my being assigned to this case was
5  the opportunity of a lifetime.  As judges, ordinarily we work on
6  one case and it's important to the parties to that case and it's
7  important to me and I enjoy that work, but this has given me an
8  opportunity to do something that's important to all of the citizens
9  of New Orleans.  And it's been a true opportunity.  I have met so
10 many hard working, dedicated, and smart people who work for the
11 NOPD, I've been so impressed, Chief Ferguson, with the talent that
12 you have, and I congratulate you on that.
13          And so it's been a real pleasure for me and an honor, and
14 I want you all to know that we're going to continue to do this and
15 together we're going to get it right.
16          Finally, thanks to the media and the City Council members
17 and the public for being here today, and to those members of our
18 community who will be reading about this hearing in the newspaper
19 or on other public media.  I want to thank you all for your
20 continued interest in this critical issue.  I look forward to
21 seeing you all again.  I want the courtroom to be full at our next
22 hearing.  Everybody raise your hand who is going to be here.  Not
23 all the hands went up.
24          But we will get you the dates of our next hearing, and
25 we'll try to keep you informed about progress as we continue.  And

```
14:22:23  1  as usual, I'll come down from the bench and spend a few minutes
14:22:27  2  saying hello to you all and thanking you for being here.
14:22:32  3            And with that, our hearing is adjourned.
14:22:37  4            MR. ARONIE:  Thank you, your Honor.
14:22:38  5       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
          6
          7                          * * * * *
          8
          9                     REPORTER'S CERTIFICATE
         10
         11       I, Karen A. Ibos, CCR, Official Court Reporter, United
         12  States District Court, Eastern District of Louisiana, do hereby
         13  certify that the foregoing is a true and correct transcript, to the
         14  best of my ability and understanding, from the record of the
         15  proceedings in the above-entitled and numbered matter.
         16
         17
         18                        ___/s/ Karen A. Ibos_____
         19                        Karen A. Ibos, CCR, RPR, CRR, RMR
         20                        Official Court Reporter
         21
         22
         23
         24
         25
```