**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> **Plaintiff,** <br><br> **V.** <br><br> **CITY OF NEW ORLEANS,** <br> **Defendant.** | **CIVIL ACTION NO.** <br> **2:12-CV-01924** <br><br><br> **SECTION E** <br> **JUDGE SUSIE MORGAN** <br> **DIVISION 2** <br> **MAG. DONNA PHILLIPS CURRAULT** |

**UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION**
**TO CITY OF NEW ORLEANS' MOTION TO RECONSIDER**

## TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................3

II.  STANDARD OF REVIEW ............................................................................................3

III. STAGE OF PROCEEDING AND FACTUAL BACKGROUND.....................................5

IV. THE CITY HAS NOT SHOWN RECONSIDERATION IS WARRANTED...................10

   A.   The City's November 2020 Memorandum Does Not Satisfy the Notice
      Requirements of Paragraph 492 and Was Abandoned ................................................10

   B.   The Court Appropriately Scheduled a Reasonable Period for Discovery on the
      City's Motion to Terminate the Consent Decree .........................................................13

   C.   The City's Challenge to the Court's Authority to Reset Filings Is Moot and Lacks
      Basis in the Law..........................................................................................................14

   D.   Assessing Compliance under Paragraph 492 and Conducting Discovery Related to
      the Motion to Terminate Is Not Unnecessary Delay ...................................................15

   E.   The Monitor Is Entitled to and Obliged to Assess Compliance ...................................17

   F.   The Court Has Not Entered an Order Regarding Compliance for Reconsideration ....18

   G.   The Court Has a Duty to Actively Enforce Compliance with Its Own Order .............20

   H.   The Monitor May Testify before the Court.................................................................21

   I.   The Monitor's Court Testimony and Public Meetings Are Not Press Conferences ....22

   J.   The Court May Properly Raise Compliance Concerns ................................................23

   K.   Technical Assistance Is Appropriate under the Decree ...............................................24

V.  CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Hill*, 707 F.2d 780 (4th Cir. 1983) .......................................................... 20

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976) .............................. 20, 24

*Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) ...................................................... 20

*Castrillo v. Am. Home Mortg. Serv'g, Inc.*, No. 09-4369 R, 2010 WL 1424398 (E.D. La.
    Apr. 5, 2010) ............................................................................................................ 4

*Cook v. Flight Servs. & Sys.*, No. 16-15759, 2018 U.S. Dist. LEXIS 210763 (E.D. La.
    Dec. 13, 2018) .......................................................................................................... 3

*Cressionnie v. Hample*, 184 Fed. App'x 366 (5th Cir. 2006) .................................... 3

*Dempster v. Lamorak Ins. Co.*, No. 20-95, 2021 U.S. Dist. LEXIS 130014 (E.D. La.
    July 13, 2021) ......................................................................................................... 15

*Dilmore v. Stubbs*, 636 F.2d 966 (5th Cir. 1981) ...................................................... 14

*Fairley v. Wal-Mart Stores, Inc.*, Civ. A. No. 15-0462, 2016 WL 2992534 (E.D. La.
    May 24, 2016) ........................................................................... 3, 4, 5, 10, 13

*In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002) ..................................... 4

*In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990) ...................................................... 15

*In re Stone*, 986 F.2d 898 (5th Cir. 1993) ................................................................ 13

*Landis v. North American Co.*, 299 U.S. 248 (1936) ................................................ 15

*Lee v. Hunt*, 483 F. Supp. 826 (W.D. La. 1979) ...................................................... 20

*Ott v. Allstate Ins. Co.*, 92-2769, 1992 U.S. Dist. LEXIS 14821 (E.D. La. Sep. 28, 1992) ......... 20

*Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390 (5th Cir. 1992) ................................ 13

*Rosemond v. AIG Ins.*, [No. 08-1145,] 2009 WL 1211020 (E.D. La. May 4, 2009) ................. 4

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ................................. 4, 11

*Shepherd v. Int'l Paper Co.*, 372 F.3d 326 (5th Cir. 2004) ...................................... 3

*Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327 (5th Cir. 2018) ....................... 21

*State Nat. Bank of El Paso* v. *United States*, 488 F.2d 890 (5th Cir. 1974) .............. 5

*Stotts v. Memphis Fire Dep't*, 679 F.2d 541 (6th Cir. 1982). ............................. 20, 24

*Templet v. Hydro Chem Inc.*, 367 F.3d 473 (5th Cir. 2004) ................................ 3, 10

*Ueckert v. Guerra*, 38 F.4th 446 (5th Cir. 2022) ...................................................... 5

## RULES

Fed. R. Civ. P. 54(b) ................................................................................................... 3

## TREATISES

12 James Wm. Moore et al., Moore's Federal Practice ¶ 59.30[4] (3d ed.) ................... 4

## OTHER AUTHORITIES

Fed. R. Civ. P. 60(b), Notes of Advisory Committee on Rules—1946 Amendment .................. 5

Order Granting Limited Discovery, *United States v. Tennessee*, 2:92-cv-02062 (W.D. Tenn.),
    June 3, 2011, ECF No. 2710) ................................................................................. 13

Scheduling Order, *United States v. Police Department of Baltimore City*, 1:12-cv-00099 (D. Md.),
    Dec. 22, 2021, ECF No. 469 .................................................................................. 23

## I.      INTRODUCTION

Reconsideration is an extraordinary remedy.  Such relief should be granted only when a movant "clearly establish[es]" it is necessary to prevent a "manifest injustice" or to correct a "manifest error of law or fact."  *Fairley v. Wal-Mart Stores, Inc.*, Civ. A. No. 15-0462, 2016 WL 2992534, at *2 (E.D. La. May 24, 2016) (citing *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).[1]  The City of New Orleans' September 23, 2022 Motion to Reconsider seeks this extraordinary relief from ten interlocutory orders of the Court, ECF No. 643, many of which are not "orders" at all.  The City's Motion falls short of meeting this heavy burden.  The challenged Court orders, to the extent that they are orders at all, are proper and within the Court's discretion to manage the case.  The Court should deny the City's Motion to Reconsider.

## II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not provide specifically for motions for reconsideration.  *Cressionnie v. Hample*, 184 Fed. App'x 366, 369 (5th Cir. 2006); *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004).  Courts in the Fifth Circuit have examined motions to reconsider interlocutory orders under Rule 54(b) of the Federal Rules of Civil Procedure, which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . .."  Fed. R. Civ. P. 54(b); *see also Cook v. Flight Servs. & Sys.*, No. 16-15759, 2018 U.S. Dist. LEXIS 210763 (E.D. La. Dec. 13, 2018) (quoting and applying Fed. R. Civ. P. 54(b)).  The Eastern District of Louisiana's general practice has been to assess Rule 54(b) motions to reconsider non-dispositive interlocutory

---

[1] The City is not asserting newly discovered evidence or a change in controlling law, the other potential bases for relief under Rule 59(e).

orders under the standards that govern Rule 59(e).  *See Cook.; Fairley* at *2 (citing *Castrillo v. Am. Home Mortg. Serv'g, Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010); *Rosemond v. AIG Ins.*, [No. 08-1145,] 2009 WL 1211020, at *2 (E.D. La. May 4, 2009)).

As explained in *Fairley v. Wal-Mart Stores, Inc.*:

> Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:  (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

> Importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments.  *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).  Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).  Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted.  *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

> Moreover, it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party.  *See Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990).  When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471 (M.D. La. 2002). . . . *See also, FDIC v. Cage*, 810 F. Supp. 745, 747 (D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

*Fairley* at *2; *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); 12 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 59.30[4] (3d ed.).[2]  In deciding whether to grant a Rule 59(e) motion, "courts

---

[2] The City also asserts that the Court may reconsider its orders under Rule 60(b)(6) for good cause shown.  ECF No. 643-1 at 8.  This is not the correct standard, because the orders listed in the City's motion do not meet the Fifth

must carefully balance the interests of justice with the need for finality." *Fairley* at *2.

### III.     STAGE OF PROCEEDING AND FACTUAL BACKGROUND

#### A.  Stage of Proceeding, Background, and Termination Provisions

The City filed its Motion to Reconsider, ECF No. 643, on September 23, 2022, against the background of the City's pending Motion to Terminate the Consent Decree, ECF No. 629.  The Consent Decree Regarding the New Orleans Police Department (NOPD), *see* ECF No. 565 (Decree), provides that a party may move to terminate the Decree when the City has achieved "full and effective compliance" and sustained it for a period of no less than two years.  Decree ¶¶ 492, 486.  The Decree sets forth two ways of demonstrating full and effective compliance.  Under the first path, the City can show "sustained compliance with all material requirements of this Agreement."  Decree ¶ 491.  Alternatively, under the second path, the City can show "sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures."  Decree ¶ 491; *see also* Decree ¶448.  Under either path, the City bears the burden of demonstrating that it has achieved and maintained full and effective compliance.  *See* Decree ¶ 486.  The City also bears the burden of collecting and maintaining reliable and complete data and records to document compliance with the Agreement.  *See* Decree ¶¶ 468, 449.

If the Parties agree that the City has achieved full and effective compliance and sustained it for two years, then they may jointly move to terminate the Consent Decree. Decree ¶ 491.  If the

---

Circuit's test of finality.  "[A] court's ruling is only 'final' if the judge 'intends to have nothing further to do'—with the motion (if an interlocutory appeal) or the case (if a conventional appeal)."  *Ueckert v. Guerra*, 38 F.4th 446 (slip op. at 6) (5th Cir. 2022) (*quoting State Nat. Bank of El Paso* v. *United States*, 488 F.2d 890, 893 (5th Cir. 1974)).  Rule 60(b) applies only to seeking relief from "a Final Judgment, Order, or Proceeding."  *See* Fed. R. Civ. P. 60(b), Notes of Advisory Committee on Rules—1946 Amendment ("The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires").

Parties disagree as to compliance, the Decree lays out a process by which either Party may request

termination:

> If after six years from the Effective Date, the Parties disagree whether the City has
> been in full and effective compliance for two years, either Party may seek to
> terminate this Agreement. In the case of termination sought by the City, prior to
> filing a motion to terminate, the City agrees to notify DOJ in writing when the City
> has determined that it is in full and effective compliance with this Agreement and
> that such compliance has been maintained for no less than two years. Thereafter,
> the Parties shall promptly confer as to the status of compliance. If, after a reasonable
> period of consultation and the completion of any audit or evaluation that DOJ
> and/or the Monitor may wish to undertake, including on-site observations,
> document review, or interviews with the City and NOPD's personnel, the Parties
> cannot resolve any compliance issues, the City may file a motion to terminate this
> Agreement. If the City moves for termination of this Agreement, DOJ will have 60
> days after the receipt of the City's motion to object to the motion. If DOJ does not
> object, the Court may grant the City's motion. If DOJ does make an objection, the
> Court shall hold a hearing on the motion and the burden shall be on the City to
> demonstrate that it is in full and effective compliance with this Agreement and has
> maintained such compliance for at least two years.

Decree ¶ 492.  The Decree's termination provisions make clear that:  (1) the City must provide

written notice that it has achieved and sustained full and effective compliance of the entire Consent

Decree; and (2) that United States Department of Justice (DOJ) and the Monitor are entitled to a

reasonable period of time after receiving notice to assess whether the City has achieved

compliance—all of which must occur before the City may file a motion to terminate.

### B.  City Efforts to Terminate the Consent Decree

On November 30, 2020,[3] the City sent the United States a memorandum asserting that it

had achieved and sustained full and effective compliance for two years, as shown by Decree's

outcome measures, and asking the United States to confer on the status of compliance.  *See* ECF

No. 629-5 at 7, 8. 24.  The City's memorandum did not provide the factual support needed to show

compliance.  *See generally*, *id.*  At that time, according to the Monitor's assessments, the City

---

[3] The City lists the memorandum's date as November 30, 2019 in ECF No. 643 at 2 & 643-1 at 10. The correct date
is November 30, 2020.

remained out of compliance with seven of the seventeen sections of the Decree, including critical sections such as those addressing stops, searches, and arrests, and bias-free policing.  *See, e.g.*, Annual Report of the Office of the Consent Decree Monitor for 2020, February 16, 2021, ECF No. 613-1 (including specific reference to NOPD's own November 2020 audit of stops, searches and arrests showing "troublingly low levels of compliance," significant policy violations discovered in June 2020 for supervision of task forces, and the March 2019 fatal pursuit that led to the discovery of additional unreported highspeed chases).

Following receipt of the November 30, 2020 memorandum, the United States participated in a January 14, 2021 phone call with the City to discuss the City's request and to request the data that the City believed demonstrated compliance under the agreement's outcome measures.  *See* Decree ¶ 491; ¶ 448.  During that call, the City committed to collecting and providing the data on outcome measures on a "parallel track" to the Parties' ongoing efforts to advance compliance under the paragraph-by-paragraph approach, and the United States agreed to review that data and then confer again with the City regarding next steps.  The City reiterated that they remained committed to this plan on at least three other occasions over the next four months, including during meetings with the Monitor.[4]  However, despite these ongoing reassurances, and despite the City's recent assertion that "NOPD has not withheld any data on any topic," ECF No. 643-1 at 10, the City never provided the promised data under Paragraph 448, and never followed up about its request that the United States join a motion to terminate.  In the months that followed, the Parties continued to

---

[4] For example, the City's outside counsel reiterated that the City still planned to provide the requested data during calls/meetings on February 5, 2021 (during a call with the United States, outside counsel for the City, and Monitor, the City's outside counsel reaffirmed that the City would compile and provide the data under 448 to the United States and the Monitor in a single document), March 9, 2021 (during a call with the United States, outside counsel for the City, and the Monitor, the City's outside counsel reiterated they were still working to put together the data the United States requested), and May 17, 2021 (during a call with the United States, City Attorney, and outside counsel for the City, when the United States asked if the City's commitment to ongoing plans had changed, the City's outside counsel said it had not).

work towards compliance with the Decree's substantive provisions, but the United States heard nothing more from the City about its efforts to terminate the Decree based on the outcome measures outlined in Paragraph 448.  Though the City continued to provide information about its progress with the various substantive provisions pursuant to the Decree's first path, the City never provided the data the United States requested in order to evaluate the City's assertion that it was in compliance pursuant to the outcome measures under the Decree's second path.

Almost two years later, on August 4, 2022, Mayor LaToya Cantrell and Superintendent of Police Shaun Ferguson hosted a press conference during which the Mayor called for the termination of the Consent Decree.[5]  As described in the United States' Notice Regarding Paragraph 492 ECF No. 652 at 2–3, the United States was surprised by the announcement.  The press conference came without any attempt by the City to notify the United States of the City's current plans to seek to terminate the Decree or the basis for such termination.  In response to the press conference, on August 8, 2022 the United States sent a letter to the City noting that "[f]rom the press conference reports, it appears that the City has determined that it has achieved full and effective compliance with the Decree and maintained that compliance for two years," specifically pointing out the requirement that the City provide written notice to initiate the Decree's termination process, and explaining that "[w]e would be particularly interested in understanding the basis for the City's determination in those areas of the Decree where the Monitor has determined that the City has not, yet, reached full and effective compliance."  ECF No. 629-6 at 3.  The City did not respond to the letter.  Instead, on August 18, 2022 the City filed its Motion to Terminate.  ECF No. 629.  In the Motion to Terminate, the City asserts that it provided written

---

[5] *See* John Simerman, Matt Sledge, and Missy Wilkinson, *Mayor LaToya Cantrell Will Move to Terminate NOPD Consent Decree*, NOLA.COM, Aug. 4, 2022, https://www.nola.com/news/crime_police/article_3d9e767c-1406-11ed-a7ab-afbea5f7bc0e.html.

notice to the United States—pointing to the November 30, 2020 memorandum it sent to the United States nearly two years earlier. *Id.* at 22, *see also* ECF No. 625-6.

On August 22, 2022, the Parties met to discuss a path forward.  During the meeting, the Parties agreed that the United States would send the City a request for information, the City would provide the information within two weeks, the United States would review the information within two weeks, and then the Parties would meet again to discuss next steps.  ECF No. 643-3 at 1–2. The City also agreed to push back the deadline for the United States' response to the Motion to Terminate to October 18, 2022.  *See id.*  Following the meeting, on August 26, 2022, the United States submitted a request for the data and information needed under Paragraph 492 to assess whether the City has achieved and sustained "full and effective compliance" with the Consent Decree.  *Id.*  As the Parties exchanged emails clarifying aspects of the United States' August 26, 2022 letter, *see id.*, the City informed the United States on August 29, 2022, that it would be seeking to introduce live witness testimony at any hearing on the Motion to Terminate.  In response, the United States stated that it would need discovery if the City sought to introduce evidence at the hearing on the Motion to Terminate.  The Parties began discussing what discovery would be necessary on August 31, 2022.

The Court held a status conference on September 6, 2022, and on September 12, 2022, and issued an order setting a schedule for discovery and instructing the United States to file "[a]ny motion . . . to deny the Motion to Terminate the Consent Decree because it fails to comply with the requirements ¶ 492 of the Consent Decree" by October 6, 2022.  *See* ECF No. 641 at 2.  In compliance with the deadline, the United States filed a notice explaining why it did not find it necessary to move to deny the Motion to Terminate on those grounds at this time.  ECF No. 652.

On September 23, 2022, the City filed the instant Motion to Reconsider, ECF No. 643,

raising concerns that overlap with those laid out in its Motion to Terminate, ECF No. 629.  Both motions touch upon whether the City complied with the process set forth in Paragraph 492.  The United States opposes the Motion to Reconsider, and in so doing, addresses some of the City's arguments also raised in the Motion to Terminate.  However, the United States expressly reserves the right to fully respond to the Motion to Terminate when responding directly to that motion by the deadline set by the Court.  *See* ECF No. 641 at 2.

## IV.     THE CITY HAS NOT SHOWN RECONSIDERATION IS WARRANTED

The City's attempt to reverse ten interlocutory orders fails because the City fails to meet the heavy burden of "clearly establish[ing]" that granting its Motion for Reconsideration of this Court's Orders is "necessary" to correct manifest errors of law or fact or to prevent a manifest injustice.  *Fairley* at *2 (citing *Templet*, 367 F.3d at 478–79).  To the extent that the "orders" identified by the City are, in fact, orders of the Court, each of them are supported by the facts in this case.  In the interest of judicial economy and preserving the finality of orders, the Court should not use its discretion to reconsider its previous decisions in this case.

### A.  The City's November 2020 Memorandum Does Not Satisfy the Notice Requirements of Paragraph 492 and Was Abandoned

The City contends that the memorandum it submitted to the United States on November 30, 2020—nearly two years prior to filing its Motion to Terminate—constitutes the "notice" required by Paragraph 492, ECF No. 629; ECF No. 629-1 at 22, and that the Court should reconsider its "ruling" during a September 6, 2022 status conference that the City abandoned its right to pursue termination under Paragraph 492 of the Consent Decree by failing to follow up on that notice.  ECF No. 643-1 at 9–10.  As an initial matter, there was no "ruling" on this topic, as reflected by the Court's September 12, 2022 scheduling order instructing the United States to file "[a]ny motion . . . to deny the Motion to Terminate the Consent Decree because it fails to comply

with the requirements of ¶ 492 of the Consent Decree" by October 6, 2022.  ECF No. 641 at 2.  As the City itself admits, "[t]he Court instructed that an order would not be forthcoming as the DOJ had not yet challenged the City's motion to terminate the Consent Decree as premature based on the abandonment argument."  ECF No. 643-1 at 10.  However, even assuming, *arguendo*, that this Court made such a ruling, the Motion for Reconsideration still must fail, as it does not clearly establish that reconsideration of the Court's order is "necessary" to correct manifest errors of law or fact or to prevent a manifest injustice.  *Rosenzweig*, 332 F.3d at 863–64.  The City did not comply with the requirements for Paragraph 492 before filing its Motion to Terminate for at least two reasons.

First, a memorandum written almost two years ago describing the City's assessment of compliance from November 2018 to November 2020 cannot establish notice today, because it provides no information about the City's *current* determination of its status of compliance and whether it has sustained it over the past two years.  The facts asserted in the City's November 2020 memorandum are stale and do not show whether the City is *currently* in compliance or whether that compliance has been sustained *through the present*, as the Consent Decree requires.  The City's November 30, 2020 memorandum does not provide the notice required by Paragraph 492 as applied to the City's recent Motion to Terminate.

Second, assuming that the City's memorandum was sufficient in November 2020 to put the United States on notice of the City's position, the City subsequently abandoned its efforts to pursue termination.  Following receipt of the City's memorandum, the United States conferred with the City as required by Paragraph 492.  The United States met by telephone with the City on January 14, 2021, and requested that the City provide data demonstrating compliance as shown through the Decree's outcome measures as the City asserted it had attained in the November 30,

2020 memorandum.  The City promised to provide the data on a "parallel track" to the Parties' ongoing efforts to advance compliance under the "all material requirements" approach so that this effort would not slow progress in moving towards compliance with the Decree's substantive provisions.  The Parties agreed to confer again as required by Paragraph 492 after the United States had had a chance to review the data.  Over a period of several months, as the Parties continued to work closely with the Monitor to advance compliance efforts with each section of the Decree on the other track, the City repeatedly reiterated that it still intended to provide the promised data on outcome assessments, and that it was working to put the data together, including during meetings on February 5, 2021, March 9, 2021, and May 17, 2021, two of which the Monitor attended. Despite these repeated assurances, the City took none of the additional steps that would be required to pursue termination under Paragraph 492 after sending the November 30, 2020 memorandum. The City never provided the United States with the promised data, never followed up any further about whether the United States would join a motion to terminate or agreed with its determination, and never filed a motion to terminate.  The City's inaction for almost two years resulted in it effectively abandoning its November 2020 notice.

Given this factual record, even if the Court did find that that City abandoned its November 2020 notice under Paragraph 492, which the Court did not, such a ruling would not be manifest error.  The City failed to act on its November 2020 notice and failed to provide information required by Paragraph 492, and the passage of time also renders the prior notice stale and silent as to the current record of compliance.  The City cannot meet its burden to show that reconsideration of that ruling is warranted to correct a "manifest injustice" or a "manifest error of law or fact." *Fairley* at *2.

**B.  The Court Appropriately Scheduled a Reasonable Period for Discovery on the City's Motion to Terminate the Consent Decree**

Next, the City seeks reconsideration of this Court's Scheduling Order, ECF No. 641, which set a six-month window for discovery and time thereafter for the filing of an opposition and response.  The Court's Scheduling Order was within its discretion and consistent with established law and the requirements of the Decree.  Accordingly, there is no manifest injustice or manifest error in law or fact in the Court setting forth a schedule for the litigation before it, and reconsideration is without basis.

It is well established that the Court has the authority to manage the litigation before it.  *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (concluding that federal courts have inherent authority "to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority"); *Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390, 392 (5th Cir. 1992) ("The district court has broad discretion in the management of its docket and the trial of lawsuits pending before it").  Here, the City asserted three bases for termination in the Motion to Terminate, one under Paragraph 448 of the Consent Decree, and two under Rule 60(b)(5) of the Federal Rules of Civil Procedure.  The United States has the right to discovery to understand the factual basis for City's Rule 60(b)(5) claims (*see, e.g.,* Order Granting Limited Discovery, *United States v. Tennessee*, 2:92-cv-02062 (W.D. Tenn.), June 3, 2011, ECF No. 2710), and it is well within the Court's discretion to set a schedule for that discovery.  Indeed, the City itself indicated that it intended to introduce witness testimony at the hearing on the Motion to Terminate, and the United States is entitled to discovery on such evidence, a right which the City did not contest when raised by United States.  Such discovery helps narrow the questions at issue in the litigation and preserves judicial economy.  *See Dilmore v. Stubbs*, 636 F.2d 966, 969 n.2. (5th Cir. 1981) (holding, "The rules of discovery are designed to narrow and clarify the issues

and give the parties mutual knowledge of all relevant facts, thereby preventing surprise"). The Court was within its discretion in establishing a schedule for discovery on the Motion to Terminate.

Additionally, this discovery period also allows for the "reasonable period" required by Paragraph 492 of the Decree. Though the City's prior notice is stale and abandoned, the City has since agreed to provide information to the United States relevant to its claims under Paragraph 448 of the Decree. This information will allow the United States to initiate the audits envisioned in Paragraph 492. After a notice from the City, the United States is entitled to "a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Monitor may wish to undertake, including on-site observations, document review, or interviews with the City and NOPD's personnel." Decree ¶ 492 (ECF No. 652). Not only is the right to a period of evaluation established by Paragraph 492 explicit, but given the scope and complexity of the Consent Decree, and the important constitutional rights protected therein, it is essential. The Parties designed termination provisions to ensure that there is sufficient time and access to information to assess compliance *before* the City may initiate litigation to terminate the agreement. Given the City's premature filing in the absence of a valid, current notice, the Court's scheduling order has given structure and certainty to this time for review and evaluation.

In the absence of clearly establishing that this Court's discovery order results in manifest injustice or was based on a manifest error of law or fact, the City is not entitled to reconsideration. Accordingly, the Court should deny the Motion for Reconsideration with respect to the discovery schedule set forth in the Scheduling Order.

### C.  The City's Challenge to the Court's Authority to Reset Filings Is Moot and Lacks Basis in the Law

The City also seeks reconsideration of the Court's ability to reset the period of time for review of the City's Motion to Terminate if the United States filed a motion asserting that the City

had not complied with the provisions of Paragraph 492.  Specifically, the City challenges footnote two of the September 12, 2022 Scheduling Order:  "In the event such a motion is filed, the remaining deadlines will be vacated, to be reset after a decision on the motion has been rendered." ECF No. 641 at 2, n.2.  This challenge is moot; the United States did not file such a motion.

Even if the City's Motion to Reconsider with respect to staying the proceedings were not moot, the Court has the authority to reasonably govern the litigation before it, even if that means staying a pending motion.

> There is no question that a district court has inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," and that this authority includes the district court's wide discretion to grant a stay in a pending matter.  When "the interests of justice seem[] to require such action," a court may exercise its discretion to stay civil proceedings.

*Dempster v. Lamorak Ins. Co.*, No. 20-95, 2021 U.S. Dist. LEXIS 130014, at *14–15 (E.D. La. July 13, 2021) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) and *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)).  Accordingly, the City has not shown that footnote two of the Court's scheduling order results in manifest injustice or error of law, and the City is not entitled to reconsideration.

### D.  Assessing Compliance under Paragraph 492 and Conducting Discovery Related to the Motion to Terminate Is Not Unnecessary Delay

The United States and the City share an interest in ensuring that this matter is promptly resolved once the purposes of the Consent Decree have been achieved. *See* Decree at 1 & ¶5. Accordingly, after the City filed its Motion to Terminate, the United States immediately met with the City and requested information to assess the City's assertion that it had achieved compliance. In doing so, however, the United States did not waive its right to discovery or its right to a reasonable period to review compliance under Paragraph 492.  The time period set forth in the Court's Scheduling Order is reasonable and necessary, and reconsideration is not warranted.

Following the filing of the Motion to Terminate, the United States met with the City on August 22, 2022.  At that meeting, the City agreed to provide the information necessary for the United States to evaluate whether the City had achieved and sustained "full and effective compliance" with the Consent Decree, to determine whether constitutional or statutory violations continue to occur, and to determine whether the intended outcomes of the Decree have been met. Though the City's Motion to Reconsider suggests that the United States agreed to complete its entire assessment under Paragraph 492 and Rule 60(b)(5) in two weeks, *see* ECF No. 643-1 at 13–14, the United States agreed only to "review the production" and then "meet against to discuss next steps."  ECF No. 643 at 2.  The United States did not waive its rights to discovery or to the review period contemplated in Paragraph 492.  Nor did the United States agree to substitute the Paragraph 492 review with this expedited review meant to further discussions between the Parties. To accommodate the United States' review of the City's production, the City agreed to push back the deadline for the United States' response to the Motion to Terminate to October 18, 2022.[6]  *See id.*  Following the meeting, the United States provided its request for information on August 26, 2022.  *Id.*  The City completed its initial production of the requested information on September 27, 2022, and the United States has been working to review the information.

As discussed above, discovery is necessary in order to appropriately litigate the Motion to Terminate should that prove to be necessary, and this period can run concurrently with the

---

[6] The Court's September 12, 2022 scheduling order later established a six-month period for discovery, and set the deadline for the United States' opposition to the Motion to Terminate for April 6, 2023.  ECF No. 641.  If the deadline had not been moved, the United States could have objected in its response that the Motion to Terminate was premature under Paragraph 492 and sought discovery.  However, because the six-month discovery period set by the Court is sufficient for both the Paragraph 492 review and discovery on the Motion to Terminate under Rule 60(b)(5), the United States did not move to deny the Motion to Terminate on those grounds, as explained in the United States' October 6, 2022 Notice. ECF No. 652 at 1.

"reasonable period" to complete the review contemplated Paragraph 492.[7]  This discovery and the Paragraph 492 review do not constitute unreasonable delay.  The United States has a duty to ensure the purposes of the agreement have been fulfilled before agreeing to termination, so the process of understanding the current status of compliance with the Consent Decree is a necessary step towards resolution.

Contrary to the City's assertion, the discovery period set by the Court is both necessary and reasonable.  Accordingly, the City has not clearly established that the Court's discovery order results in manifest injustice or is based on a manifest error of law or fact, and the Motion to Reconsider on these grounds should be denied.

### E.  The Monitor Is Entitled to and Obliged to Assess Compliance

The City also seeks reconsideration of the Court's Order that the Monitor have access to information during discovery on the City's Motion to Terminate.  Specifically, the City challenges footnote four of the September 12, 2022 Scheduling Order, which provides:  "The Court-appointed Monitors may participate in discovery and may, at the Court's request, provide the Court and the parties their observations on the merits of the motions."  ECF No. 641 at 2, n.4.

The United States understood the Court's Scheduling Order differently than the City.  We did not understand the Court to be authorizing the Monitor to propound discovery; indeed, such authority would be duplicative of the Monitor's access to information under Paragraphs 470–75 of the Decree.  Decree ¶¶ 470–75.  Instead, we understood the Court to be clarifying that the Monitor's access should include access to the information exchanged in discovery between the Parties, such as document requests and production, interrogatories requests and responses, and

---

[7] As discussed in the United States' October 6, 2022 Notice, Paragraph 492 also addresses the Monitor's consultation with the Parties and the Monitor's ability to conduct any audits or evaluations it may wish to undertake. The United States does not purport to speak for the Monitor about what time period will be sufficient for the Monitor to conduct this review under Paragraph 492.  ECF No. 652 at 4-5.

attendance at depositions.   This access is particularly important because the City moved to terminate the Decree under both Paragraph 492 and Rule 60(b)(5).   Under Paragraph 492, the Monitor is authorized to make its own assessments of the City's compliance:

> If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or **the Monitor** may wish to undertake, including on-site observations, document review, or interviews with the City and NOPD's personnel, the Parties cannot resolve any compliance issues, the City may file a motion to terminate this Agreement.

Decree ¶ 492 (emphasis added).   Indeed, the City admits the Monitor's right to conduct audits and evaluations.   ECF No. 643-1 at 15.   Excluding the Monitor from discovery would result in duplicative information sharing—once via discovery to the United States and separately via the Monitor's assessments—and therefore be more time consuming and potentially costlier to the City.

The Court's Scheduling Order does not expand the Monitor's authority, and instead provides greater efficiency and cost savings to the City as the Monitor and the United States evaluate whether termination is appropriate.[8]   The City has not clearly established that the Scheduling Order results in manifest injustice or is based on a manifest error of law or fact, and the Court should deny the City's Motion to Reconsider on this point.

### F.  The Court Has Not Entered an Order Regarding the Status of Compliance

The City seeks reconsideration of the Court's "order" during the September 6, 2022 status conference that NOPD was not yet in full and effective compliance of any of the 17 areas of the Consent Decree.   The Court did not issue such an order during the status conference, however, so there is no order to be reconsidered.

---

[8] The City asks the Court to shift the costs of monitoring to the United States:  "If the Monitor is allowed to oppose the City's motion outside the bounds of the Consent Decree, that cost should be borne by DOJ."  ECF No. 643-1 at 16.   The Court's Scheduling Order does not expand the Monitor's authority beyond that conferred in the Consent Decree, so this argument is without merit.   Moreover, the Consent Decree is clear that "The City shall bear all reasonable fees and costs of the Monitor."  Decree ¶ 480.

The Decree defines full and effective compliance as requiring "sustained compliance with all material requirements of this Agreement or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures."  Decree ¶ 491.  Like the City, the United States has understood that moving an area of the Decree into "the green" meant that the City had effectively achieved substantial compliance with that Section.  We also understood, however, that the Court had not yet made a formal determination about compliance, because the City had not met the terms of Paragraph 491—it was not in compliance with "all material requirements."  Indeed, the City itself admits that Court has not yet found that the City is in compliance with "all material requirements" or that the City has sustained this compliance for the required two years, because two areas have not yet been found in compliance.  ECF No. 643-1 at 16.  The reason that the Parties and the Monitor have been working on a "Sustainment Plan" was in anticipation that these areas may soon come into "the green," thus forming the predicate for the Court to find that the City was now in compliance with "all material requirements" of the Decree and allowing the two-year sustained compliance period to begin—a period in which the City must show ongoing compliance with all areas of the Decree.  Decree ¶¶ 486, 491–92.[9]

The Court has not made a ruling that the City is in compliance with the Decree, nor did it issue an order during the September 6, 2022 status conference regarding compliance, so there is no order to be reconsidered.  The Court should deny the City's Motion to Reconsider on this point as well.

---

[9] In the Motion to Reconsider, the City asserts that if the Monitor refrains from completing any given audit of any given section of the Decree for any period of time, then it must be presumed that the Monitor recommended and that Parties agreed that the portion of the Decree is in full and effective compliance.  ECF No. 643-1 at 16.  The City bases this position on Decree Paragraph 452, which allows the Parties to waive compliance audits of areas previously found in compliance.  The City makes this same argument in the Motion to Terminate, where it is more properly considered, and the United States will respond to this argument when briefing is due on the Motion to Terminate.

**G.  The Court Has a Duty to Actively Enforce Compliance with Its Own Order**

Next, the City seeks reconsideration of the Court's Order that City's executive branch staff meet with the Court.  The City casts the requirement that City personnel meet with Court as threat to the "very pillars of democracy."  ECF No. 643-1 at 21.  In making this argument, however, the City ignores the Court's inherent authority to enforce its own orders.  "It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976) (citations omitted).  *Accord Ott v. Allstate Ins. Co.*, 92-2769, 1992 U.S. Dist. LEXIS 14821, at *2 (E.D. La. Sep. 28, 1992) (*citing Aro Corp.,* 531 F.2d at 1371; *Lee v. Hunt*, 483 F. Supp. 826, 832 (W.D. La. 1979)).  "[A] court has an affirmative duty to protect the integrity of its decree. This duty arises where the performance of one party threatens to frustrate the purpose of the decree." *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 557 (6th Cir. 1982).  "Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt." *Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985) (citing *Alexander v. Hill*, 707 F.2d 780, 783 (4th Cir. 1983)).

Here, the Court is merely gathering information to determine whether the City is complying with the Decree.  The Order at issue, directs the City's Chief Administrative Officer to appear to furnish information relevant to the City's compliance with the Decree.  It is well within the Court's power to determine whether the Decree is being followed, and is consistent with the City's agreement to require compliance with the Decree by its respective officers, employees, agencies, assigns, or successors.  Decree ¶ 490.  The City's reference to *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 336 (5th Cir. 2018) is inapposite.  ECF No. 643-1 at 22.  There, the lower court was found to have improperly extended a consent decree to geographic areas that were not part of that case nor contemplated in that decree.  The Court is not, however, extending its authority to areas

20

beyond the Decree; it is seeking information from City Officials about areas covered by the Decree. This is within the Court's authority.

Additionally, the City's Motion to Reconsider on this issue is untimely. The practice of meeting with the Court to provide the Court information on implementation has occurred without objection since entry of the Decree. Rule 59 permits filing of a motion for reconsideration with 28 days of an order, and the City's time for challenge this practice is long since passed.[10]

Accordingly, the Court's longstanding practice of gathering compliance information is not a manifest injustice or based on a manifest error of law or fact meriting reconsideration, and the City Motion to Reconsider this practice should be denied.

### H. The Monitor May Testify before the Court

The City seeks reconsideration of the Court's order setting a public hearing for September 27, 2022, objecting to the Monitor giving an oral report at that hearing or any future date. ECF No. 643-1 at 23.[11] The City's assertion is based on an inaccurate reading of the Consent Decree. The Decree actually makes clear that the Monitor may testify before the Court. The City contends that Paragraph 458 requires that the Monitor issue a report before testifying to the Court, implying that any oral reporting to the Court would thereby be restricted to the contents of the written report. This is incorrect. Paragraph 458 merely requires that if there is a written quarterly report, then the Monitor must provide it "to the Parties in draft form at least 10 business days prior to Court filing and public release of the reports to allow the Parties to informally comment on the reports." Decree ¶ 458. Such quarterly reports are not a prerequisite to the Monitor appearing before the Court and reporting on compliance—nor has the City asserted such an understanding of Paragraph 458 since

---

[10] To the extent that the City's Motion to Reconsider applies merely to the single appearance of the Chief Administrative Officer, the Motion is moot on this point. That meeting has already occurred.

[11] The City's Objection to the September 27, 2022 hearing is moot. That hearing has occurred.

the Decree was entered, despite the Monitor's regular reporting to the Court on the City's progress. Indeed, Paragraph 458 is not the applicable provision of the Decree; the provision on point is Paragraph 463, which states:

> The Monitor may testify as to its **observations, findings, and recommendations before the Court** with jurisdiction over this matter, but shall not testify in any other litigation or proceeding with regard to any act or omission of the City or any of its agents, representatives, or employees related to this Agreement or regarding any matter or subject that the Monitor may have received knowledge of as a result of its performance under this Agreement. This paragraph does not apply to any proceeding before a court related to performance of contracts or subcontracts for monitoring this Agreement.

Decree ¶ 463 (emphasis added).  This provision of the Decree makes clear that the Monitor may testify at hearings before the Court, and the City's challenge based on Paragraph 458 is inapposite. In numerous other consent decree cases in which the monitor submits regular reports, the Monitor also reports publicly to the court at public hearings at times that are not linked to the issuance of the monitoring report.  *See, e.g.,* Scheduling Order, *United States v. Police Department of Baltimore City*, 1:12-cv-00099 (D. Md.), Dec. 22, 2021, ECF No. 469 (setting quarterly public hearings, even though monitoring reports are only semi-annual under Paragraph 471 of that consent decree).  The City does not clearly establish that reconsideration is necessary to avoid a manifest injustice or to correct a manifest error of law or fact based on the Court merely holding hearings on the City's compliance.  The Motion to Reconsider should be denied on this point.[12]

## I.   The Monitor's Court Testimony and Public Meetings Are Not Press Conferences

The City seeks reconsideration of what the City calls "the Court's Order directing press conferences explicitly by the Monitor, or by way of public hearings without the opportunity for

---

[12] While there is no basis for the City's Motion on this issue, we agree with the City that agendas for hearings, provided reasonably in advance, would be helpful to the Parties and the public.  Based on the Court's statements at the September 27, 2022, public hearing, we understand the Court is willing to provide such agendas and appreciate the Court's willingness to accept agenda suggestions from the Parties.

the City to be heard."  ECF No. 643 at 10.  Specifically, the City's Motion sought reconsideration of the September 27, 2022, public hearing and the Court's order that the monitoring team schedule two public meetings in September 2022.  Since those have passed, the City's motion is moot.

To the extent the City seeks to restrict further court hearings or public meetings, the City's motion does not present a basis for reconsideration.  First, a public court hearing is not a press conference, and, as discussed above, the Decree specifically allows the Monitor to testify to its observations, findings, and recommendations before the Court.  Decree ¶ 463.  The Decree also places no restrictions on the Court's authority to schedule public hearings at times the Court deems appropriate to receive a report from the Monitor.  Second, as the City acknowledges, the Decree also directs the monitor to engage in community stakeholder meetings.  Decree ¶ 461.  The Decree specifically articulates these roles in the interest of transparency, both to the Court and to members of the public.  In any event, the City's objection to the Court's direction permitting the Monitor to speak to the press through public meetings is beyond the 28 days permitted for motions to reconsider under Rule 59(e); this has been a years-long practice that the City has never previously challenged.  The City's Motion does not clearly establish that reconsideration of the Court's order setting public meetings is necessary to avoid a manifest injustice or to correct a manifest error of law or fact, the Motion to Reconsider this Order should be denied.

### J.  The Court May Properly Raise Compliance Concerns

The City seeks reconsideration of the Court expressing concern about whether the City has maintained compliance with the Decree during a public status conference.  ECF No. 643-1 at 22.  First, the Court did not even issue an order that could be reconsidered.  Second, the Court has an affirmative duty to protect the integrity of its Decree.  *Stotts,* 679 F.2d at 557.  If the Court has questions about whether compliance has been maintained, the Court is within its discretion to raise those concerns and request further information to determine whether its order is being followed.

*Aro Corp.*, 531 F.2d at 1371.  Accordingly, the City's Motion to Reconsider is without an order to

reconsider and, even if there were an order, the City can point to no manifest injustice or manifest

error of law or fact caused by the Court raising concerns about the City's compliance.

### K.  Technical Assistance Is Appropriate under the Decree

Lastly, the City seeks reconsideration of the Court's order that the monitoring team provide

technical assistance on staffing, officer retention, recruiting, transparency, and burden reduction,

asserting that they will effectively take over management of the operations of NOPD and the City.

The United States understood the Court to mean that monitoring team members should work

closely with NOPD members as Decree Paragraphs 470–75 envision, not that they would manage

NOPD.  Indeed, the Consent Decree makes clear that Monitor does not have authority to manage

NOPD or the City:  "The Monitor shall not, and is not intended to, replace or assume the role and

duties of the City and NOPD, including the Superintendent."  Decree ¶ 445.  The Court's order

should be understood consistently with its other orders in this case, including the Decree.

In any event, the City's Motion to Reconsider is founded on the incorrect assertion that the

Monitor may only provide technical assistance if requested by the City or the United States.  ECF

No. 643-1 at 23 (citing Decree ¶ 445).  However, Paragraph 483 is the operative provision, here,

and it permits the Monitor to provide technical assistance without a request from either Party:

> In the event that full and effective implementation of this Agreement requires
> technical assistance beyond the scope of the Monitor's duties, DOJ, NOPD, and/**or
> the Monitor shall inform the City of the need for technical assistance** and its
> relation to implementation of the Agreement.  **The Monitor, with assistance from
> the City, shall arrange for the prompt initiation of the required technical
> assistance**, to be performed by the Monitor or its agent or independent contractor;
> the IPM; or a separate entity.  The City shall set aside $100,000.00 for this purpose,
> and shall allocate additional funds as necessary. If either Party disagrees with the
> need for the technical assistance requested, the Party shall, within 15 days of being
> informed in writing of the requested technical assistance, inform the Court, which
> shall resolve the dispute.

Decree ¶ 483 (emphasis added).  If the City disagrees with the need for technical assistance, Paragraph 483 also contains the process to challenge it.  Ultimately, the City's Motion to Reconsider is a challenge to necessary technical assistance—designed to assist the City to come into compliance.  And, even if the Motion to Reconsider were the appropriate procedural vehicle, the City does not present evidence that a manifest injustice or manifest error of law or fact will occur if the Court does not reconsider helping the City by providing technical assistance.  The City's challenge to the Court's order requiring technical assistance should be denied.

## V.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the City's Motion to Reconsider be denied in all respects.

**Respectfully submitted this 18th day of October, 2022.**

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief

TIMOTHY D. MYGATT (DC 1021564)
Deputy Chief

*/s/ R. Jonas Geissler*
R. JONAS GEISSLER (NJ 025752001)
MEGAN R. MARKS (NY 5495676)
MEHVEEN RIAZ (DC 1030021)
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel.:  (202) 353-8866
Fax:  (202) 353-3522
Email:  jonas.geissler@usdoj.gov
*Attorneys for the United States*