UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1924** |
| **CITY OF NEW ORLEANS,**<br>    **Defendant** | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is the City's Motion for Reconsideration of certain of the Court's orders (hereinafter, the "Motion for Reconsideration").[1] Defendant United States Department of Justice ("DOJ") opposes the Motion for Reconsideration.[2]

Based on the timing of the City's motion, the City's request is based on Federal Rule of Civil Procedure 59.[3] It is largely unclear to which interlocutory orders the City objects and in many instances there is, in fact, no applicable order of the Court.

The City seeks reconsideration of the Court's order setting a public hearing on September 27, 2022.[4] The City seeks to delay the public hearing on September 27, 2022 and to cancel the public meetings held shortly thereafter. The motion is moot as the hearing and the public meetings already have occurred. In any event, the motion must be denied as the order setting the public hearing was docketed on September 7, 2022, 20 days before the hearing, which is sufficient time for the City to prepare for a hearing.[5] Furthermore, Paragraph 461 of the Consent Decree specifically directs the Monitor to "meet with community stakeholders to explain the Monitor's reports, to inform the public

---

[1] R. Doc. 643.
[2] R. Doc. 653.
[3] The result would not differ under Federal Rule of Civil Procedure 60.
[4] R. Doc. 634.
[5] *Id.*

1

about the Agreement implementation process, and to hear community perspectives of police interactions."[6] These public meetings, open to the public and to the press, are not "press statements" as contemplated by Paragraph 462. In any event, the Court retains its inherent authority to authorize communications from the Court and the Monitor to ensure the public is fully and accurately informed of the status of implementation of the Consent Decree.

To the extent the City seeks reconsideration of the Court's "order that City's executive branch staff appear in closed door meetings with the Court to address the means and methods of funding NOPD,"[7] the motion is denied as moot because the Court did not issue such an order. The Court did announce its plans to continue meeting with the City's Chief Administrative Officer to ensure the City is complying with its obligation under Paragraph 12 of the Consent Decree to provide the necessary support and resources to the NOPD to enable NOPD to fulfill its obligations under the Consent Decree,[8] which the CAO has continued to participate in voluntarily.

To the extent the City seeks reconsideration of the Court's "order that NOPD was not yet in full and effective compliance of any of the 17 areas of the Consent Decree,[9] the motion is denied as moot. The Court did not enter such an order finding the City was or was not in compliance with 17 areas of the consent decree. The Consent Decree requires full and effective compliance with the "Agreement," which is the entire Consent Decree, not portions of the Consent Decree.[10]  As the Court has repeatedly reminded the parties, before the City moves into the two-year sustainment period provided by the Consent

---

[6] R. Doc. 565 at p. 123.
[7] R. Doc. 643 at p. 4.
[8] R. Doc. 637 at p. 37.
[9] *Id.*
[10] R. Doc. 565 at p. 129.

Decree, the City must be in full and effective compliance with all sections of the Consent Decree. The Court has not issued orders finding the City is or is not in compliance with particular sections of the Consent Decree.

To the extent the City seeks reconsideration of the Court's "order that the Monitor be entitled to 'discovery' not provided for in the Consent Decree," the motion is denied. The Court's September 12, 2022 order provides that "The Court-appointed Monitors may participate in discovery and may, at the Court's request, provide the Court and the parties their observations on the merits of the motions."[11] Paragraph 492 of the Consent Decree specifically provides DOJ and/or the Monitor may undertake audits or evaluations, including on-site observations, document review, or interviews in connection with any motion to terminate the Consent Decree.[12] The activity authorized by the Court is consistent with Paragraph 492.[13] There was no error in the Court's order.

To the extent the City seeks reconsideration of the Court's "ruling that the City abandoned its Paragraph 492 Notice," the motion is denied. First, the Court did not issue such a ruling. Second, the City has no rights under Paragraph 492 to be abandoned. Paragraph 492 provides, "the City may file a *motion to terminate* this Agreement. If the City moves for termination of this Agreement, DOJ will have 60 days after the receipt of the City's *motion* to object to the motion."[14] The City sent a memorandum to the DOJ on November 30, 2020 which it captioned "Paragraph 492 Notice."[15] The memorandum is not a motion to terminate the Consent Decree and did not trigger the start of a 60 day

---

[11] R. Doc. 641 at n.4.
[12] *Id.*
[13] This objection may well be moot as the Monitor has not to date requested any discovery in connection with the Motion to Terminate the Consent Decree.
[14] R. Doc. 565 at p. 129.
[15] R. Doc. 629-5.

3

period for DOJ to object to a motion to terminate. The City did not assert in its memorandum to DOJ that it considered the memorandum to be the motion to terminate required under Paragraph 492 and that, as a result, DOJ had only 60 days from November 30, 2020 to object to the motion. The City did not file its motion to terminate the Consent Decree until August 18, 2022.[16] In the motion to terminate, the City argues for the first time that its letter to DOJ on November 30, 2020 constituted the motion to terminate required under Paragraph 492 of the Consent Decree.[17] The Court does not agree. Paragraph 492 clearly requires the filing of a motion to terminate; a memorandum sent to an opposing party and not filed in the record can never equate to a motion filed in the record. After the letter was sent on November 30, 2020, the parties continued to engage in monthly and sometimes weekly or daily status conferences both with the Monitor and with the Court. NOPD continued to seek and accept the extensive technical assistance of the Monitor and DOJ in an effort to come into compliance with the Consent Decree. Not once did the City, until the filing of the motion to terminate almost two years later, argue that DOJ's 60 day period to object to a motion had commenced or had run. The conduct of the parties clearly reflected their joint determination to concentrate their efforts on the City coming into full and effective compliance, rather than the City filing a motion to terminate the Consent Decree at that time. To the extent that the City argues it has been deprived of its due process rights with respect to this issue, the Court notes that the City fully briefed its arguments surrounding this issue in its motion to terminate filed on August 18, 2022,[18] before the status conference on September 6, 2022. The City also

---

[16] R. Doc. 629.
[17] R. Doc. 629-5.
[18] R. Doc. 629-1 at pp. 21-25.

4

briefed its arguments on this issue in its motion to reconsider.[19] The City has been provided a full opportunity to brief and argue its position and has not been deprived of due process of law.

To the extent the City moves the Court to reconsider its "order that the Monitor embed third-party technical assistance staff into various functions of the City and NOPD, including: staffing, officer retention, transparency, alternative police response, and burden reduction," the motion is denied. The Court's directive to the Monitor at the public hearing on August 17, 2022 was in response to the Court's concern that NOPD's efforts to come into compliance with the Consent Decree were lagging and that, at the same time, inaccurate statements were being made by representatives of the City concerning the status of NOPD's compliance. The Court was within its authority to take actions necessary to assess the status of NOPD's compliance with the Consent Decree and to ensure that both NOPD and the public were informed accurately about the status of NOPD's compliance.

To the extent the City seeks reconsideration of the Court's scheduling order "granting seven months for DOJ to respond to the City's motion to terminate the Consent Decree,"[20] the motion is denied.[21] The parties' joint motion for entry of the Consent Decree was filed over ten years ago.[22] The Consent Decree is 129 pages and includes 492 numbered paragraphs. Over 650 voluminous documents have been filed into the record, and the record documents are really only the tip of the iceberg in terms of the work done

---

[19] R. Doc. 643-1 at pp. 8-14.
[20] R. Doc. 641.
[21] To the extent the City objects to the Court vacating the dates in the scheduling order in the event DOJ filed a motion to deny the Motion to Terminate because it fails to comply with the requirements of Paragraph 492 of the Consent Decree, the motion is denied as moot as no such motion was filed.
[22] R. Doc. 2.

and documents exchanged in this action. The period provided by the Court is proportionate to the need of DOJ to evaluate and brief the Court on whether the City is in full and effective compliance with the Agreement.

The City has acknowledged that reconsideration is "an extraordinary remedy that should be used sparingly."[23] The Court agrees. The City has not met its burden of proving that any of the actions of the Court should be reconsidered.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration[24] is **DENIED**.

**New Orleans, Louisiana, this 8th day of February, 2023.**

                                                    _____
                                                            **SUSIE MORGAN**
                                                **UNITED STATES DISTRICT JUDGE**

---

[23] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, (La. App. 5th Cir. 2004).
[24] R. Doc. 127.