# Exhibit 20



Performance Standards Section
Professional Standards and Accountability Bureau

# May 2020 SSA Audit

## (FOB and ISB)

Report # SSA 2020-05
November 3, 2020

**Audit Team**

This audit was managed and conducted by the Audit and Review Unit individuals listed below:

   Innovation Manager Michael Sarver
   Innovation Manager Matt Segraves
   Auditor Betty Johnson
   Auditor Tim Lindsey
   Auditor Charmel Peterson
   Auditor Faith Thornton

## Summary

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of Stops, Searches, and Arrests related to documents created in May 2020. The stops, searches, and arrests audits are completed to ensure stops, searches, and arrests are constitutional and are within policy.  This audit is designed to ensure that all stops, searches, and arrests are consistent with NOPD policy and constitutional law, are documented appropriately, that documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect.

This is the first SSAPJ Audit using a new and enhanced protocol.  Previously, stop, search and arrest (SSA) audits were all completed independent of each other.  In December of 2019, stop, search and arrest audits were redesigned and consolidated into one audit.  The resulting audit was more comprehensive, and a deeper diving review of the most fundamental actions taken by officers.

The overall score on the SSA - Incidents Scorecard is 83%.  This score is lower than 95%, the score that we target for substantial compliance with the Consent Decree.  Most of the categories on this scorecard pertain to the officer documenting his/her action with the public.  FICs and EPRs should be complete, accurate and timely.  These deficiencies can be corrected with specific training with In-service Training classes or Daily Training Bulletins (DTBs) and reinforced by close and effective supervision in addition to Supervisor Feedback Logs.  Based on this review, there is no evidence to suggest a pattern and practice of unconstitutional stops, searches, and arrests.

**SSA** – Procedural Justice scorecard has an overall score of 93%.  The primary contributing deficit on this scorecard is the "Officer Introduced Themselves" category with a 64% compliance rate. When reasonably possible, officers should identify themselves as soon as practical on a stop.

**Stops** – Subjects scorecard has an overall score of 87%.  Both notable deficiencies are related to handcuffing subjects.  Reason for handcuffs documented in the report had a 78% compliance rate. Even if the handcuffing is deemed compliant with policy the reason still must be documented in the FIC.  Also, handcuffing within policy had a 75% compliance rate.  This can partially be attributed to the fact that the Department recently changed a process and once probable cause is established, only subjects that are transported to CLU and booked are handcuffed, as opposed to the issuing of a summons.

**Searches** – Subjects scorecard has an overall score of 79%.  One deficiency that was identified was that officers are searching subjects that have been found to be in simple possession of marijuana. Because a summons is issued for this violation under most circumstances, regulations currently do not allow for the search of the subject incident to arrest.   Although Louisiana and federal law allows for this search, the department changed its' policy to improve community relationships. According to current NOPD regulations subjects must be under custodial arrest for the search to be valid.

**Arrests** – Subjects scorecard has an overall score of 99%.

2

# Table of Contents

**Summary** .................................................................................................................... 2

**Introduction** ............................................................................................................... 4
*Purpose* ......................................................................................................................... 4
*Objectives* ..................................................................................................................... 4
***Background*** ................................................................................................................. 4
*Methodology* ................................................................................................................ 4

**Initiating and Conducting the SSA Audit** ................................................................. 6

**Reviews - Scorecards** ............................................................................................... 7

**Overall Combined Compliance Scores** ................................................................... 10

**Conclusion** ............................................................................................................... 15
*Recommendations* ...................................................................................................... 17

**Appendix A – SSAPJ Audit Forms** ........................................................................... 18

**Appendix B – Report Distribution** .......................................................................... 33

## Introduction

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of stops, searches, and arrests related to documents created in May 2020.

### Purpose

The Stops, Searches, and Arrests audits are completed to ensure stops, searches, and arrests are constitutional and are within policy.  Stops, Searches, and Arrests are regulated by, but not limited to, the following Chapters: 1.2.4 – Search and Seizure; 1.2.4.1 – Stops/Terry Stops; 1.2.4.2 – Search Warrant Content, Forms and Reviews; 1.3.1.1 – Handcuffing and Restraint Devices; 1.9 – Arrests; 35.1.7 Non-Disciplinary Responses to Minor Violations; 41.3.10 Body Worn Camera; 41.12 – Field Interview Cards; 41.13 Bias-Free Policing; 52.1.1 – Misconduct Intake and Complaint Investigation.

### Objectives

This audit is designed to ensure that all Stops, Searches, and Arrests are consistent with NOPD policy and constitutional law, ensure all are documented appropriately, ensure the documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect.  This audit procedure entails the review of stops, searches, and arrests. Consent searches, strip and cavity searches, search warrants, and performance evaluations are covered in separate audits.

### Background

This is the first SSAPJ Audit using a new and enhanced protocol.  Previously, Stops, Searches and Arrests were audited independently.  In December of 2019, Stop, Search and Arrest audits were redesigned and consolidated into one audit.  The resulting audit was more comprehensive, and a deeper diving review of the most fundamental actions taken by officers.

### Methodology

Auditors qualitatively assess each incident using the SSA forms listed below to ensure each stop, search, and arrest is compliant with legal requirements and NOPD policy. Auditors analyze reports, field interview Cards, body-worn cameras and or in-car cameras to ensure officers had a valid legal basis to conduct a stop, search or arrest; that officers documented such basis, and that documentation is complete and accurate.
The following SSA forms document the audit criteria:
1.   SSA Subject Audit Form
2.   SSA Incident Audit Form

Each stop (CAD or FIC), search (FIC), or arrest (FIC or EPR) document in the sample requires one SSA Incident form and one SSA subject form for each person suspected of a crime during the incident. For the purposes of this audit, every person an officer identifies who is not a victim or

4

witness is a suspect and requires an SSA subject form. For example, consider an incident involving an officer stopping a vehicle because he/she believes the driver matches a description of a wanted person. He/she identifies the driver and the front passenger in the vehicle and none of the rear passengers.  For this incident, an SSA subject form is required for the driver (suspected of being wanted) and for the front passenger (identified by the officer). Although the officer is required to document approximate demographics for the rear passengers in a FIC, SSA subject forms are not needed for them.

All documents and related incidents that are in the sample and are not audited must be deselected. All deselections will be recorded in the Deselection Log.

Auditors must search for and review all documentation related to the document sampled. This may involve:

1. Reading the documents sampled to determine which officers were on scene and when;
2. Searching Evidence.com by officer and time and by using multi-cam to find related videos that are labelled differently;
3. Reviewing the prior and proceeding CAD activity for the officers on scene;
4. Searching for FICs and EPRs using subject names and the date of the incident as documented on video or in reports;
5. Searching for FICs and EPRs using officer information and the date of the incident as documented on video or in reports; and
6. Reviewing the related item numbers as documented in FICs and EPRs.

If video is available for the incident, auditors must watch all interactions between officers and non-members. Auditors may skip through sections of video that do not involve interactions between officers and non-members. Auditors may need to watch videos recorded by other officers on scene to observe all interactions. Auditors must also watch the beginning and end of each officer's BWC video to determine whether the officer activated and deactivated her BWC as required by policy.

Auditors will read the guidance in the audit forms on a regular basis. Changes to audit forms will be clearly communicated to auditors by the audit supervisor. Auditors will re-read policies when guidance in audit forms recommends they do so or when the policy requirements are not clear enough to the auditor to allow him/her to confidently score an audit criterion.

When audit results require comments, auditors will thoroughly explain the evidence they observed that led to their determination of the result for the audit criteria in question. For example, if an auditor scores "Videos and Reports are Significantly Consistent" with a "No" indicating non-compliance, he/she will explain how the video shows something that is not consistent with the report. Such a comment may read like the following: "The FIC documents a pat down, however the BWC shows a search incident to arrest."

Drawing on their knowledge of NOPD policies, auditors will note any policy violations they observe that are not specifically addressed in the SSA audit tools in the "Notify PSS" section of the form.

## Initiating and Conducting the SSA Audit

The Sample size for this audit was determined to be 90 incidents.

1. The universe of Stops, Searches, and Arrests will be exported into an excel spreadsheet. Stops, searches and arrests will be sorted based on the date the digital document was created. Incidents will be assigned a random number using Excel's random number function (RAND).

2. Documents will be sampled starting from the smallest random number assigned and continuing from smallest to largest until the required sample size is reached.

3. Sample sizes will be representative of the Department, not each district/division, when reporting publicly. For reference, in May 2020, NOPD's Stops, Searches, and Arrests universes amounted to 15,000+ incidents. Per the sample size calculator given to NOPD by the Los Angeles Police Department Auditing Unit, a sample size of about 95 incidents is representative of a population of 15,000 when doing a one-tailed test, with a 95% degree of confidence, and a 4% error rate.

4. When reporting publicly, audit results will be stratified by division/district; the number of audit results per division/district will be proportionate to the actual activity by the division/district. The results will include at least one incident from each division/district with activity during the reporting time period to ensure all districts/divisions with activity are included in public reports.

5. Randomly sampled documents (CAD, FIC, or EPR) that do not document a stop, search, or arrest by NOPD will be deselected. For the purposes of this audit, anyone who is identified by an officer and who is not a witness or victim, is considered stopped. If the document is part of the arrest universe and an auditor determines the related incident does not include an arrest by NOPD, but does include a stop or search by NOPD, the document and related incident will be audited focusing on the stop and search. When a document is deselected, the auditor will continue to the document with the next lowest random number.

## Reviews - Scorecards

Audit results data in Excel spreadsheet, raw data based on individual questions on the SSA Forms.

### SSA Scorecard - Incidents (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents | FIC Exists, If Required | FIC Submitted By ETOD | FIC Approved in 72 Hrs. | No Boilerplate | Videos and Reports Are Consistent | # of Arrests in Residence | Arrested in Residence with Consent, Warrant, or Exigent Circumstances | Supervisor Made Scene, If Required | Overall |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8 | 100% | 80% | 60% | 88% | 63% | 0 | - | 50% | 73% |
| 2 | 13 | 91% | 70% | 89% | 83% | 36% | 0 | - | 100% | 78% |
| 3 | 11 | 91% | 78% | 100% | 100% | 70% | 1 | 100% | 0% | 77% |
| 4 | 9 | 100% | 71% | 63% | 100% | 67% | 0 | - | 100% | 83% |
| 5 | 8 | 83% | 80% | 40% | 100% | 43% | 0 | - | 0% | 58% |
| 6 | 13 | 89% | 86% | 88% | 100% | 100% | 2 | 100% | 100% | 95% |
| 7 | 12 | 89% | 86% | 63% | 90% | 50% | 0 | - | 75% | 75% |
| 8 | 9 | 75% | 100% | 71% | 100% | 75% | 1 | 100% | 50% | 82% |
| SOD | 4 | 100% | 100% | 67% | 100% | 100% | 1 | 100% | 100% | 95% |
| ISB | 2 | - | - | - | 100% | 100% | 0 | - | 50% | 83% |
| Overall | 89 | 90% | 80% | 73% | 95% | 65% | 5 | 113% | 63% | 83% |

### SSA Scorecard -Accuracy Table

Review Period: May 2020

Non-compliance count of video to report inconsistencies

| District | Passenger Info | Search Info | Exit Vehicle Info | Result Info | Reason for Stop Info | Subject Info | Evidence Info | Vehicle Description Info | Other | Total Count |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | - | 1 | - | - | - | - | 1 | 1 | 1 | 4 |
| 2 | 2 | 2 | - | - | - | 1 | 1 | - | 1 | 7 |
| 3 | 1 | 1 | - | 1 | - | - | - | - | - | 3 |
| 4 | 1 | 1 | - | - | 1 | - | 1 | - | 2 | 6 |
| 5 | 1 | 1 | - | - | - | - | - | - | 4 | 6 |
| 6 | - | - | - | - | - | - | - | - | - | 0 |
| 7 | - | 1 | - | - | - | 2 | - | 1 | 5 | 9 |
| 8 | - | 1 | 1 | - | - | - | - | - | 1 | 3 |
| SOD | - | - | - | - | - | - | - | - | - | 0 |
| Overall | 5 | 8 | 1 | 1 | 1 | 3 | 3 | 2 | 15 | 39 |

## SSA Scorecard - Procedural Justice (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents | Officers Introduced Themselves | Officers Explained Reason for Stop | Officers Allowed Subject to Explain | Officers Responded to Subject's Reasonable Questions | Officers Communicated Result | Stop Took No Longer than Necessary | Officers Were Reasonably Courteous and Professional | Overall |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 8 | 43% | 100% | 100% | 100% | 100% | 88% | 88% | 88% |
| 2 | 13 | 85% | 100% | 100% | 100% | 100% | 100% | 92% | 97% |
| 3 | 11 | 64% | 100% | 100% | 100% | 91% | 100% | 91% | 92% |
| 4 | 9 | 78% | 100% | 100% | 100% | 100% | 100% | 100% | 97% |
| 5 | 8 | 88% | 100% | 100% | 100% | 100% | 100% | 88% | 96% |
| 6 | 13 | 46% | 92% | 100% | 100% | 100% | 92% | 100% | 90% |
| 7 | 12 | 60% | 91% | 100% | 100% | 100% | 100% | 100% | 93% |
| 8 | 9 | 67% | 100% | 89% | 89% | 100% | 100% | 89% | 90% |
| SOD | 4 | 0% | 100% | 100% | 100% | 100% | 100% | 100% | 86% |
| ISB | 2 | 50% | 50% | 100% | 100% | 100% | 100% | 100% | 86% |
| Overall | 89 | 64% | 97% | 99% | 99% | 99% | 98% | 94% | 93% |

## Stops Scorecard - Subjects (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for stops

| District | # of Subjects Stopped | Officer had RS/PC for Stop | Officer Adequately Documented RS/PC to Stop | Count of Officer That Did Not Have RS/PC to Ask for ID | Reason for Handcuffs Documented in Report | Handcuffing Within Policy | Overall |
|---|---|---|---|---|---|---|---|
| 1 | 15 | 100% | 100% | 0 | 58% | 77% | 84% |
| 2 | 23 | 100% | 100% | 2 | 86% | 88% | 93% |
| 3 | 14 | 100% | 100% | 0 | 80% | 70% | 88% |
| 4 | 19 | 100% | 100% | 0 | 100% | 67% | 92% |
| 5 | 11 | 100% | 100% | 0 | 71% | 57% | 82% |
| 6 | 16 | 100% | 93% | 0 | 90% | 92% | 94% |
| 7 | 14 | 100% | 92% | 1 | 67% | 90% | 87% |
| 8 | 13 | 100% | 75% | 0 | 71% | 30% | 69% |
| SOD | 4 | 100% | 100% | 0 | 100% | 100% | 100% |
| ISB | 2 | 100% | 100% | 0 | - | 100% | 100% |
| Overall | 131 | 100% | 96% | 3 | 78% | 75% | 87% |

## Searches Scorecard - Subjects (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for searches

| District | # of Subjects Searched | Officer Had Valid Legal Basis to Search Subject | Officer Adequately Documented Legal Basis to Search | If Pat-Down Indicated, Officer Gave Specific Details Why Subject was Possibly Armed and Dangerous | Overall |
|---|---|---|---|---|---|
| 1 | 11 | 71% | 60% | - | 66% |
| 2 | 18 | 93% | 89% | 80% | 87% |
| 3 | 9 | 100% | 91% | 50% | 80% |
| 4 | 18 | 87% | 83% | 100% | 90% |
| 5 | 8 | 82% | 82% | 50% | 71% |
| 6 | 12 | 100% | 100% | 50% | 83% |
| 7 | 11 | 100% | 95% | 60% | 85% |
| 8 | 10 | 72% | 61% | 0% | 44% |
| SOD | 2 | 100% | 100% | - | 100% |
| ISB | 2 | 100% | 50% | - | 75% |
| Overall | 101 | 89% | 83% | 66% | 79% |

## Arrests Scorecard - Subjects (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for arrests

| District | # of Subjects Arrested | Supervisor Approved Gist Prior to Booking | Officer had Probable Cause to Arrest Subject | Officer Adequately Documented PC to Arrest | Overall |
|---|---|---|---|---|---|
| 1 | 7 | 100% | 100% | 100% | 100% |
| 2 | 10 | 100% | 100% | 90% | 97% |
| 3 | 7 | 100% | 100% | 100% | 100% |
| 4 | 7 | 100% | 100% | 100% | 100% |
| 5 | 5 | 100% | 100% | 100% | 100% |
| 6 | 8 | 100% | 100% | 100% | 100% |
| 7 | 8 | - | 100% | 100% | 100% |
| 8 | 7 | 100% | 100% | 100% | 100% |
| SOD | 2 | - | 100% | 100% | 100% |
| ISB | 2 | 100% | 100% | 100% | 100% |
| Overall | 63 | 100% | 100% | 98% | 99% |

## SSA Scorecard - Evidence (Preliminary Double-blind Sample)

Review Period: May 2020

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents Involving Evidence | Evidence Documented | Evidence Submitted Immediately | Evidence Description Matches Video | Overall |
|---|---|---|---|---|---|
| 1 | 3 | 100% | 100% | 100% | 100% |
| 2 | 6 | 100% | 100% | 100% | 100% |
| 3 | 0 | - | - | - | - |
| 4 | 3 | 100% | 100% | 67% | 89% |
| 5 | 2 | 100% | 100% | 100% | 100% |
| 6 | 3 | 100% | 100% | 100% | 100% |
| 7 | 4 | 100% | 100% | 100% | 100% |
| 8 | 3 | 100% | 100% | 100% | 100% |
| SOD | 1 | 100% | 100% | 100% | 100% |
| ISB | 0 | - | - | - | - |
| Overall | 25 | 100% | 100% | 96% | 99% |

## Overall Combined Compliance Scores

Audit results combined and ordered by Consent Decree paragraph numbers.

| CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|
| 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 127 | 130 | 97.7% | TRUE |
| 122, 123, 126, 149 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 115 | 129 | 89.1% | FALSE |
| 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 53 | 81 | 65% | FALSE |
| 123 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 25 | 26 | 96% | TRUE |
| 123, 145 | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 79 | 83 | 95% | TRUE |
| 126, 139 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 64 | 71 | 90% | FALSE |
| 130 | Subject | Search Subject on Probation or Parole, Search Legal Numerator, and Search | Was this subject on parole or probation? Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 3 | 3 | 100.0% | TRUE |

| | | Legal Denominator | | | | | |
|---|---|---|---|---|---|---|---|
| 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 63 | 63 | 100.0% | TRUE |
| 143 | Incident | Video Shows Supervisor Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 12 | 19 | 63% | FALSE |
| 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the report document a valid legal basis for every search of this subject? | 121 | 146 | 82.9% | FALSE |
| 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 48 | 60 | 80% | FALSE |
| 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 47 | 64 | 73% | FALSE |
| 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 26 | 26 | 100% | TRUE |
| 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 84 | 89 | 94% | FALSE |
| 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 55 | 86 | 64% | FALSE |

| 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 85 | 88 | 97% | TRUE |
|---|---|---|---|---|---|---|---|
| 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 86 | 88 | 98% | TRUE |
| Ch 1.9 P14; Ch 82.1 P4; Ch 41.1 2 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 62 | 63 | 98.4% | TRUE |
| Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstance s | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? | 8 | 8 | 100% | TRUE |
| Ch 41.1 2 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? | 21 | 32 | 65.6% | FALSE |
| Ch 41.1 3 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 85 | 86 | 99% | TRUE |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ch 41.3.10 P11 | Incident | Complete Vid Num and Complete Vid Denom | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 257 | 292 | 88% | FALSE |
| Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 129 | 145 | 89.0% | FALSE |
| Ch. 1.3.1.1 | Subject | Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 70 | 93 | 75.3% | FALSE |
| Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 57 | 88 | 64.8% | FALSE |
| NA | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 88 | 89 | 99% | TRUE |
| NA | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 87 | 88 | 99% | TRUE |
| | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | 0 | N/A |
| | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 63 | 63 | 100.0% | TRUE |

13

| | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 130 | 130 | 100.0% | TRUE |
|---|---|---|---|---|---|---|---|
| | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 130 | 130 | 100.0% | TRUE |
| | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 128 | 130 | 98.5% | TRUE |

## Conclusion

Results

The results of this audit were verified through two processes:

1. Double-blind auditor peer review
2. Audit supervisor review

In the double-blind auditor peer review, two auditors independently assess each incident and complete the initial SSA Incident and Subject form entries.   The two auditors then discuss and resolve any discrepancies between the two sets of results. Any discrepancy that cannot be resolved is escalated to their supervisor who will resolve the discrepancy, and who may draw on the expertise of others, including but not limited to: the PSAB Deputy Superintendent, the PSAB Captain, other PSAB Innovation Managers, members of the Education and Training Division, members of the District Attorney's office, members of the Office of the Consent Decree Monitor, and members of the Department of Justice.

During the Audit Supervisor review, an Innovation Manager reviews the resolved audit results for accuracy and completeness.  Any issues are sent back to auditors for corrections and the interaction is documented on the audit forms.

The following deviations from policy compliance were identified in the SSA audit results:

1. RS/PC to stop was scored at 97.7%.  But for 115 of the 129 subjects stopped, reasonable suspicion or probable cause was not clearly articulated in the report.  Detail regarding RS/PC to stop in the report scored 89.1%

2. Videos and Reports consistent scored just 65% (53 of 81).  The discrepancies range from minor errors, such as typographical errors, to more material issues. Examples include incomplete or no passenger information on the FIC for vehicle stops, and not documenting the proper category of the search that occurred (search, pat down, or consent).

FIC exists if required scored a 90% (64/71).

"Video Shows Supervisor Made the Scene" confirms if a supervisor arrived on scene where required.  All patrol sergeants are assigned a BWC, so this can be checked by looking at the sergeant's own BWC footage.  However, Lieutenants are not issued BWC's, and the auditor must watch the other officers' BWC footage to determine if a Lieutenant made the scene.  This category was scored 63% (12/19).

The category "Reason to Search" scores whether the reason for each search was documented in the report. This category does not address whether a valid reason to search existed, only the documentation.  For this audit, the category was scored 82.9% (121/146).

FICs should be submitted by the end of the shift and approved by a supervisor within 72 hours.  FIC submitted scored 80% (48/60) and approved scored 73% (47/64).

15

"Reasonably Courteous" determines if the video shows that the officer was reasonably courteous when interacting with the subject. This category was scored 94% (84/89).

If reasonably possible, officers should identify him/herself as soon as practical during an interaction. Auditors review if video shows that the officer verbally identified him/herself. This category was scored 64% (55/86).

For "Pat Down Justification," if a pat down was correctly indicated, auditors check if the officer gave specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the corresponding text box of the FIC. This category was scored 65.6% (21/32).

For the "Complete Video" question, auditors check if each officer that conducted a stop, search, or arrest activated his/her BWC as required. If the officer is not assigned a BWC, the question is NA. The includes supervisors who made the scene and have been issued a BWC. During this audit, it was identified that there may be some confusion when officers should turn their cameras off when entering Lockup. If the officer turned his/her camera off early, for instance, in the Sally Port before entering the receiving area of Lockup and being told by OPSO that they accepted the arrested subject, it was scored as a deficiency. This category was scored 88% (257/292).

For the "Search Legal" question, auditors determine, based on all the evidence available, did the officer(s) have a valid legal basis to search the subject. One issue that was identified was that officers are searching subjects that have been found to be in simple possession of marijuana. Because a summons is issued for this under most circumstances, regulations do not allow for the search of the subject incidental to arrest. Search legal was scored 89% (129/145).

Auditors check that when officers handcuff a subject, it is within policy based on the evidence available. The category was scored 75.3% (70/93). This can partially be attributed to the fact that the Department recently changed a process such that only subjects that are going to be transported to CLU and booked are handcuffed, once probable cause is established. It is no longer the policy of the department to Handcuff subjects that will only receive a summons.

Similarly, officers must document the reason for handcuffing a subject in the FIC. Even if the handcuffing is deemed compliant with policy, as in the previous question, the reason still must be documented in the FIC. If an officer has reasonable suspicion to stop a subject, the officer can handcuff the subject only when he/she has articulable facts that the subject may flee, the subject may present an immediate threat, or the subject will be physically uncooperative with the officer. This documentation question was scored 64.8% (57/88).

Egregious deficiencies identified in the review process were forwarded to the PSS Captain via the "Notify PSS" protocol for follow-up, redirection, or disciplinary action if needed.

Based on this review, there is no evidence to suggest a pattern and practice of unconstitutional stops, searches, and arrests.

**Recommendations**

1. Develop methods/programs/systems for auditing the questions that could not be audited.
2. Work with Academy and the Field Operations Bureau to provide additional training on:
    a. Handcuffing
    b. Search/Pat Down
    c. SITA only when Booking
    d. Procedural Justice
3. Work with Policy Standards Section to develop DTB's to address the training issues above.

*Michael Sarver*

**Innovation Manager and Audit Supervisor Michael Sarver, Lt. Retired/Reserve**
**Professional Standards and Accountability Bureau**

*Matt Segraves*

**Innovation Manager Matt Segraves, Civilian**
**Professional Standards and Accountability Bureau**

## Appendix A – SSAPJ Audit Forms

SSAPJ Audit Forms:

 **SSAPJ Incident Audit Form**

| Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review |
|---------|---------|-----|-----|------|-------|-------|-------|-------|------|-------|--------|

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

| Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review |
|---------|---------|-----|-----|------|-------|-------|-------|-------|------|-------|--------|

### Use?

If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

### Sample/Distribution Identifying Information

Field names (column names) are in grey text.

| Pick your name below. | In which sample is this incident? | Enter the Item # | If a FIC exists, enter the FIC ID # | If an EPR exists, enter the EPR ID # |
|---|---|---|---|---|
| Created By | Sample Type | Item Number | FIC ID | EPR ID |
| Tim Lindsey | ▮▮▮▮▮ | | | |
| Faith Thornton | Stop | | | |
| Charmel Peterson | Search | | | |
| Betty Johnson | Arrest | | | |
| Michael Sarver | | | | |
| Matt Segraves | | | | |

18

What is the reporting year, month, week, district, and platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
|  | Nov |  | 6 | Mounted |
|  | Dec |  | 8 | DWI |
|  | Jan |  | 7 | K9 |
|  | Feb |  | ISB | MC1 MC2 |
|  | Mar |  | MSB | VOWS |

## Known to Be Materially False

1   CD 124:  If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. CD 124 reads: NOPD officers shall not use or rely on information known to be materially false or incorrect in effectuating an investigatory stop or detention. Materially false information could be planted evidence or results from running a different plate.

## Stops Scorecard

2   If required, does an FIC exist for this stop?

CD 126, 139

See Ch. 41.12 FICs for guidance on when FICs are required.

FIC Exists If required

| |
|---|
| Yes |
| No |
| FIC Not Required |

If the FIC is under a different item number than the CAD item number, please record the itemnumber on the FIC.

FIC Item if Different than CAD

3   Did the officer submit the FIC to his/her supervisor by the end of the shift?

Review the BWC recording time and the FIC Submit Date. If a BWC does not exist, review the CAD times. For the purposes of this question, the end of the shift is when the officer left work.

[The FIC Submit date reflects the most recent submit date. When an FIC is kicked-back and an officer updates it and re-submits it, we lose the first submit date.]

CD 150, Ch. 41.12 P9

FIC Submitted By ETOD

| |
|---|
| Yes |
| No |
| No FIC |

4   Did the supervisor review the FIC within 72 hours? For the purposes of this question use the Submit Date and the Approval Date.

If the FIC is currently disapproved, use the Supervisor Last Modified Date.

CD 150 [modified interpretation, CD amendment likely], Ch. 41.12 P15

FIC Approved in 72Hrs

| |
|---|
| Yes |
| No |
| No FIC |

## Boilerplate Language

5   In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest?

CD 123, 145; Ch. 41.12 P1, 1.2.4 P16, 1.9 P14

Officers cannot use "boilerplate" or "pat" language, such as "traffic violation" or "officer safety" when explaining their actions.

Choose "Yes" if the officer did NOT use any boilerplate language. Choose "No" if the officer used boilerplate language.

No Boilerplate

| |
|---|
| Yes |
| No |
| NA No FIC/EPR |

If you selected "No", please record the boilerplate language in the FIC:

Boilerplate Explanation

|  |
|---|
|  |

6   Are the video(s) and reports significantly consistent?

If there is anything you see on video that proves as aspect of the report to be inaccurate, choose "No."

Use the Inconsistency Categories below like a checklist. Check that each category is reported accurately.

CD 123; Ch. 1.9 P14; Ch 1.2.4 P63,65; Ch 82.1 P7-8; Rule 2 P3B

If you chose "No," indicating something about the report is inaccurate, please explain below, including the relevant timestamp of the videos. Please list every inaccuracy.

**Videos and Reports Are Consistent**

Yes
No
NA No FIC/EPR
NA No Video

Discrepancy Explanation

Please pick all the inconsistency categories that apply. These categories should match your discrepancy explanation above.

**Inconsistency Categories**

☐ Passenger Info
☐ Search Info
☐ Subject Info
☐ Exit Vehicle Info
☐ Result Info
☐ Reason for Stop Info
☐ Evidence Info
☐ Vehicle Description Info
☐ Consent to Search not Documented
☐ Other

---

7   Do video or reports show the officer entered a residence to make the arrest?

See Chapter 1.9 paragraphs 27-29 for guidance.

**Arrest in Residence**

Yes
No
NA - No Arrest

If yes, which of the following apply?

**Arrest in Residence Circumstances**

Consent
Exigent Circumstances
Warrant
None of the above (Not Compliant)
NA - Not in Residence
NA - No Arrest

---

8 A   Do video or reports suggest a supervisor required to make the scene?

CD 143; Ch. 1.9 P9, 12

If the incident met the narcotics arrests exception in Ch. 1.9, choose "No."

Narcotics arrest exception requirements:
(a) The arrest only involved narcotics;
(b) The suspect was relocated to the station to test the narcotics;
(c) The supervisor was present at the station to review the arrest recommendation;
(d) And there were no injuries involved.

**SupervisorRequiredtoMakeScene**

Yes
No
No - Narcotics Exception
NA - No Arrest
Unknown/DV

---

8 B   If the supervisor was required to make the scene, please pick the reason below.

Reason Supe required to make scene

One or more charges can be charged as a felony. Look up the charge and see if it includes "with hard labor" or "with or without hard labor"
An officer used L2 or L3 force
Custodial arrest for crossing or traversing a police cordon(Municipal Code §54-442) or resisting an officer (Municipal Code § 54-441)
Custodial arrest and the most serious violation is vehicle infraction or simple drug possession
Custodial arrest that is not in FQ or CBD & the charge is Disturbing the Peace, Criminal Trespass, Obstructing Public Passages, or Begging/Vagrancy
Unknown/DV

---

8 C   If the supervisor is required to make scene, does video show the supervisor made the scene?

CD 143; Ch. 1.9 P9, 12

**VideoShowsSupeMadeScene**

Yes
No
NA - Not Required
NA - No Arrest
NA - No Video
NA - Unknown/DV

We use these questions to ensure our universe of uses of force is complete. Reportable uses of force identified here will be included in the use of force audit.

| 9 | Did any officer use reportable force during this officer-civilian interaction? | UseOfForce |
|---|---|---|

UseOfForce
████████████
Yes
No
No Video

| 10 | Is there a corresponding Blue Team Report?  There likely won't be an APPROVED Blue Team report. But there should be an incomplete one. | ForceReported |
|---|---|---|

[Because IAPro and BlueTeam are down and MAX is down, check the FTN log to see if a corresponding use of force report has been initiated.]

If you chose "No," indicating you believe this incident involves unreported reportable force, notify your supervisor.

ForceReported
████████████
Yes
No
No Use of Force
No Video

| 11 | If an officer used reportable force, give the video details including the min/sec mark of the force |
|---|---|

UoFVidDetails

We use these questions to ensure our universes of strip and cavity searches are complete. Such searches identified here will be included in the strip/cavity audit.

| 12 | Does the incident involve a strip or cavity search? | Strip Cavity Search Occurred |
|---|---|---|

Strip Cavity Search Occurred
████████████
Yes
No

| 13 | If yes, is the strip or cavity search documented in the FIC or EPR? | Strip Cavity Documented |
|---|---|---|

If you chose "No," inidicating this incident involved an undocumented strip or cavity search, notify your supervisor.

Strip Cavity Documented
████████████
Yes
No
NA-No Strip/Cavity

### Consent to Search Scorecard

| 14 | Did this incident involve a consent to search? | Consent Search Occurred |
|---|---|---|

Sometimes officers will ask for consent when they do not need consent. If the officer had another valid legal basis to perform the search, it was not a search by consent.

Consent Search Occurred
████████████
Yes
No

| 15 | If yes, is the consent to search documented in an FIC or EPR? | Consent Search Documented |
|---|---|---|

If you choose "No," indicating this incident involved an undocument consent to search, notify your supervisor.

Consent Search Documented
████████████
Yes
No
NA-No Consent Search

## Evidence

| 16 | If evidence was seized, is there a CE+P receipt?<br><br>A CE+P receipt should be attached to an EPR. They can also be in DTS.<br><br>CD 150; Ch 84.1 P8, 24 | Evidence Documented<br><br>Yes<br>No<br>No Evidence Seized<br>No EPR |
|---|---|---|
| 17 | If evidence was seized, was it submitted to CE+P before the next Code 1 call the officer(s) handled or ETOD, whichever is first?  Review the Chain of Custody History report in BEAST and the unit's CAD activity. The date/time the item was submitted into property must be before the unit's next Code 1 arrival time or ETOD, whichever is first.<br><br>[Audit method incomplete for evidence placed in dropboxes.]<br><br>CD 150 | Evidence Submitted Immediately<br><br>Yes<br>No<br>No Evidence Seized |
| 18 | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video?<br><br>CD 123; Ch 82.1 P7-8; RS 14-134.2, 14-130.1; Rule 2 P3B | Evidence Description Matches Video<br><br>Yes<br>No<br>No Evidence Seized<br>CE+P Receipt Not Available |

## Supervisory Review

Because this section pertains to the entire incident, complete the rest of this form and the subject forms prior to completing this section.

| 19 | Did you find any non-compliance related to this incident? | Non-Compliance Should Have Been Addressed<br><br>Yes<br>No |
|---|---|---|
| 20 | The following questions A-E determine whether a supervisor knew or should have known about the non-compliance: | |
| 20 A | Is there non-compliance because there is missing documentation (FIC, EPR, etc.)? | Missing Documentation<br><br>Yes<br>No<br>NA-Full Compliance |
| 20 B | Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved?<br><br>If a supervisor needed to watch video to know about the non-compliance, choose "No." | Non-compliance Evident in Approved Reports<br><br>Yes<br>No<br>NA-Full Compliance |
| 20 C | Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? | Supervisor On Scene During Non-Compliance<br><br>Yes<br>No<br>NA-Full Compliance |
| 20 D | Was a supervisor required to watch the video?<br><br>Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. | Supervisor Required to Watch Video<br><br>Yes<br>No<br>NA-Full Compliance |
| 20 E | Did the supervisor watch the video?  Review the audit trail for the videos in Evidence.com. | Supervisor Reviewed Video<br><br>Yes<br>No<br>NA-Full Compliance |

**20 F**   Did a supervisor know or should have known about the non-compliance?

Choose "Yes" if any of A-E are "Yes."

Supervisor Aware or Should Have Been Aware of Non-compliance

Yes
No
NA-Full Compliance

**21**   Please list the SFLIDs for any corresponding SFLs or Control numbers for any corresponding FDIs?

SFLIDs-CNTRL Nos

**22**   Did a supervisor address all the non-compliance you found related to this incident?

CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C

If a corresponding SFL or FDI exists but does not cover all non-compliance, please explain:

Non-Compliance Addressed by Supervisor

Yes
No
NA - Full Compliance

Supervisory Review Comments

## Procedural Justice

**23**   Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop?

CD 181; Ch 41.13 P9A; Civil Service Rule 3?

Enter "No," if the officer(s) should have been more professional or courteous.

If you selected "No", please explain::

NotCourteousEnoughExplanation

Reasonably Courteous

Yes
No
NA - No Video

**24**   If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical?

CD 181; Ch 41.13 P9B

Identified

Yes
No
NA - No Video

23

| 25 | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical?<br><br>CD 181; Ch 41.13 P9B | Explained<br><br>▬▬▬▬▬▬▬▬▬<br>Yes<br>No<br>NA - No Video |
|----|----|----|

| 26 | Does video show the office allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | Subject Could Explain<br><br>▬▬▬▬▬▬▬▬▬<br>Yes<br>No<br>NA - No Video |
|----|----|----|

| 27 | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them?<br><br>Ch 41.13 P9E | Responded to Subjects Qs<br><br>▬▬▬▬▬▬▬▬▬<br>Yes<br>No<br>NA - No Video<br>NA - No Qs |
|----|----|----|

| 28 | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | Conclusion<br><br>▬▬▬▬▬▬▬▬▬<br>Yes<br>No<br>NA - No Video |
|----|----|----|

| 29 | Does video show the stop was no longer than necessary to take appropriate action?<br><br>CD 181, Ch 1.2.4.1 P20, Ch 1.2.4.3 P8; ; Ch 41.13 P9C<br><br>Constitutional law requires that stops are no longer than necessary to carry out the purpose of the stop. See Rodriguez v. United States, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ("If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'. . . [A] traffic stop 'prolonged beyond' that point is 'unlawful.'"). | Stop No Longer than Necessary<br><br>▬▬▬▬▬▬▬▬▬<br>Yes<br>No<br>NA - No Video |
|----|----|----|

## Flag for Academy Training

**30 A**   Would this make a good training video?:

FlagforAcademy

Yes
No
No Video

**30 B**   If you are flagging the video for the academy, please identify the exact portion of the video you think the academy should consider using.

FlagforAcademyBWCInfo

**30 C**   If you want to flag this video for Academy, please select your reason(s):

FlagForAcademyReason

Video Shows Exemplary Police Actions
Video Shows Non-Exemplary Police Actions
Use of Force Tactics
Handcuffing
Arrest and Search
Other

## EPIC

**31**   Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Doing something encouraged by NOPD's EPIC program?)

EPICIncident

Yes
No
No Video

If yes please explain, including the video label and the minute of the example:

EPICExplain

## Video Coverage

**32**   Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required?  And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required?

Ch 41.3.10 P11

# of such officers who had complete video (numerator)

CompleteVidNum

/

# of such officers (denominator)

CompleteVidDenom

List the officers you included in the denominator. And describe any incomplete or missing video.

CompleteVidExplain

## Video Info

**33**   To help someone review your work, please record below the officer name and BWC ID (usually an Item #) for the best video coverage of the incident. Include minutes if the video is long and the important parts are hard to find. If L3 is critical, please include A# and starting time. If you did not watch all the videos, record the minutes of the videos you watched.

Video Info



# SSAPJ Subject Audit Form

**Instructions** | Identifying Info | Subject Info | Stop | Searches | Arrests | Miscellaneous | Immigration | LGBTQ | Review

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

***Complete this form for each subject stopped, searched, or arrested for every incident in the Stop, Search or Arrest sample. If the subject was not documented in the reports, complete the fields based on your observations.***

A stopped subject is:
- a suspect in an investigation with whom an officer is interacting in person
- someone an officer attempts to identify and who is not a victim or witness

| Reviewing Auditor | In which sample is this incident? | Enter the Item # | Enter FIC ID | Enter the EPR ID # |
|---|---|---|---|---|
| Reviewing Auditor | Sample Type | Item Number | FIC ID | EPR ID |
| Tim Lindsey | | | | |
| Faith Thornton | Stop | | | |
| Charmel Peterson | Search | | | |
| Betty Johnson | Arrest | | | |
| Michael Sarver | | | | |
| Matt Segraves | | | | |

26

What is the reporting year, month, week, district, platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
| | Nov | | 6 | Mounted |
| | Dec | | 8 | DWI |
| | Jan | | 7 | K9 |
| | Feb | | ISB | MC1 MC2 |
| | Mar | | MSB | VOWS |
| | Apr | | Other | TIGER |
| | May | | SOD | GANG |
| | | | | Other |

## Subject Info

If the subject was not documented in the reports, complete the fields based on your observations.

Subject First

Subject Last

Subject Sex

Male
Female
Unknown

Subject Race-Ethnicity

Black/African-American
White
Hispanic/Latino
Asian
Amer.Ind./Alaskan Nat.
Unknown

Subject DOB          -And-          Event Date          -Or-          Subject Age

27

## Subject Stop

**1 A**  Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject?

Ch. 1.2.4.1, Ch 41.13 P10 and others

Reasonable Suspicion (Definition)—Articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect that criminal activity has been or is about to be committed.. The standard for reasonable suspicion is less than probable cause but must be more than a hunch or a subjective feeling.

Probable Cause (Definition)—The facts and circumstances known to the officer at the time that would justify a reasonable person in believing the suspect committed or was committing an offense.

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

*RS/PC to Stop*

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect

**1 B**  If you chose "No" for 1 A, therefore indicating there was no reasonable suspicion or probable cause to stop the subject, please explain:

*No RS/PC to Stop Comments*

**2 A**  Does the report clearly articulate reasonable suspicion or probable cause to stop this subject?

Refer to guidance in 1 A. Additionally, if the officer relied on boilerplate language, choose "No."

CD 122, 123, 126, 149;  Ch 41.13 P10; Ch 41.12 P12H, Ch 1.9 P14

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

*RS/PC to Stop in Report*

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect
No-No FIC/EPR

**2 B**  If you chose "No" for 2 A, therefore indicating the officer did not document reasonable suspicion or probable cause to stop this subject, please explain:

*No RS/PC to Stop in Report Comments*

**3 A**  If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC?

Ch. 1.3.1.1 P25

If the FIC checkbox for "Arrest Made" under "Actions Taken" is checked and the video or FIC documents the subject was taken to lock-up, choose "Yes."

If an FIC does not exist and one was required per Ch 41.12, choose "No-No FIC."

If you chose "Yes," what was the reason for handcuffing documented in the FIC?

*Reason for Handcuffs Documented*

Yes
No
No-No FIC
NA-No Handcuffs
NA-FIC Not Required

*Reason for Handcuffs Text*

**3 B**   If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy?

Ch. 1.3.1.1

See Ch. 1.3.1.1 P 12, 13, 22 for guidance.  These paragraphs allow an officer to handcuff a subject if one of the following are true:

• the officer intended to book the subject (take to lock-up)
• the subject resisted detention
• the subject posed a safety concern
• the subject posed a flight concern, or
• the subject posed an interference concern.

However, also see P 30-41 for special circumstances under which subjects may not be handcuffed.

If based on your understanding of Ch 1.3.1.1 you think the subject was handcuffed in violation of policy, choose "No" and explain below. If you think the handcuffing was within policy, choose "Yes" and explain below.

Handcuffs Within Policy Comments

Handcuffs Within Policy

Yes
No
No Handcuffs

## Subject Searches

**4**   Based on all the evidence availabe to you, did the officer(s) have a valid legal basis to search the subject?

Ch. 1.2.4 P1

An officer must have a legal reason to stop a subject and a legal reason to search a subject in order to search a subject.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

If a search of a vehicle occurs, most of the time it will make the most sense to include the search on the driver's audit form. There may be scenarios in which it makes more sense to include the search on a passenger's audit form.

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance. Hypothetical text: "Vehicle Exception/Pat Down/Consent to Search Person/Search Incident to Arrest. There does not appear to be probable cause to justify the vehicle exception to the warrant requirement."

Search Legal Comments

Enter the number of searches conducted on this subject and this subject's property that had a valid legal basis.

Search Legal Numerator

/

Enter the number searches conducted on this subject and this subject's property.

Search Legal Denominator

**5**   Does the report document a valid legal basis for every search of this subject?

CD 149; Ch 41.12 P12I-L; Ch 1.2.4 P62A; Ch 82.1 P4

If the FIC indicates a pat down occurred the justification for the pat down must give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

See guidance above for vehicle searches.

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance.

Reason to Search in Report Comments

Enter the number of searches conducted on th subject and this subject's property for which FIC

Reason to Search in Report Numerator

/

Enter the number of searches conducted on th subject and this subject's property.

Reason to Search in Report Denominator

29

| | | |
|---|---|---|
| 6 | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box?<br><br>Ch 41.12 P12J<br><br>If one of the reasons the officer conducted the pat down was for contraband, choose "No."<br><br>If you chose "No" for "Justification Specifies Armed and Dangerous," please pick a noncompliant category. Leave blank if you chose "Yes." | PatDownJustification<br><br>▮▮▮▮▮▮▮▮▮▮▮▮<br>Yes<br>No<br>NA-No Pat Down<br><br>PatDownNotCompliantCat<br><br>Justification Insufficient<br>For More Than Weapons<br>Justification Insufficient & For more than Weapons |
| 7 | Was this subject on parole or probation?<br><br>Use the spreadsheet provided by the corrections department. Search by subject name, demographics, and address. | Search Subject on Probation or Parole<br><br>Yes<br>No<br>Subject Not Searched |
| 8 | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff?<br><br>[need to verify ability to audit]<br><br>CD 145; Ch 1.9 P13,49-50 | Supervisor Approved Gist Prior to Booking<br><br>Yes<br>No<br>NA-Existing Warrant<br>Subject Not Arrested |
| 9 | Based on all the evidence available to you, did the officer have probable cause to arrest this subject?<br><br>CD 141; Ch 1.9 P1<br><br>Is at least one charge good? Do you believe:<br>-the officer had a legal reason to stop the subject,<br>-the officer had a legal reason to search the subject, if relevant to the charge,<br>-and the facts and circumstances known to the officer at the time would justify a reasonable person in believing the suspect committed or was committing an offense?<br><br>Please explain PC for the arrest or the lack thereof.<br><br>OfficerHadPCtoArrest Comments | OfficerHadPCtoArrest<br><br>Yes<br>No<br>Subject Not Arrested |
| 10 | Did the officer clearly document the probable cause in the report (FIC or EPR)?<br>In other words, does the report give the facts and circumstances known to the officer at the time which would justify a reasonable person in believing the suspect committed or was committing an offense?<br><br>The report must also clearly articulate a legal reason to stop the subject, and a legal reason to search the subject, if a search was relevant to the arrest charge.<br><br>Ch 1.9 P14; Ch 82.1 P4; Ch 41.12 P15<br><br>Please explain PC for the arrest or the lack th as articulated in the report<br><br>PC Clearly Articulated Comments | PC Clearly Articulated<br><br>Yes<br>No<br>Subject Not Arrested |

## Subject Miscellaneous

**11**  Did the officer use their discretion to give the subject a break?

Just because an officer checks the verbal warning box in the stop result section of the FIC, doesn't mean a break was given. There must be an offense for which the officer chooses not to cite, summons, or arrest.

Break Given

Yes
No
No Video
NA-No Crime

If the officer gave this subject a break, please explain what officer could have done but decided not to.

Break Given Explain

---

**12**  Did the officer run the subject's ID?:

ID Check

Yes
No
No Video
The Offcer did not have a chance to

---

**13**  Did the officer request translation services, if needed?

LEP

Yes
No
No Video
No Translation Needed
Flag

## Subject Immigration

**14**  Was the subject arrested because of or in part due to the subject's immigration status?

ArrestImmigrationStatus

Yes
No
Not Arrested
No Video

---

**15**  Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question?

QuestionedImmigrationStatus

Yes
No
No Video

ImmigrationComments

#Name?

### Subject LGBTQ

| 16 | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | OfficerCommentLGBTQ |
|----|---|---|

Yes
No
No Video

| 17 | Did the officer address the subject by their chosen name, title, and pronoun? | OfficerAddressLGBTQ |
|----|---|---|

Yes
No
Gender Identity Unknown
No Video

LGBTQComments:

#Name?

## Appendix B – Report Distribution

Superintendent Shaun D. Ferguson

Chief Deputy Superintendent John Thomas – Filed Operations Bureau

Deputy Superintendent Otha Sandifer – Professional Standards and Accountability Bureau

Deputy Superintendent Arlinda Westbrook- Public Integrity Bureau

Deputy Superintendent Christopher Goodly- Management Services Bureau

City Attorney Sunni LeBeouf – City Attorney's Office

Assistant City Attorney Isaka Williams – Superintendent's Office