# Exhibit 1



Performance Standards Section
Professional Standards and Accountability Bureau

# Stops, Searches & Arrest Audit – June 2022

(FOB and ISB) **PUBLIC VERSION**

Report# SSA062022

Submitted by PSAB: 8/19/2022
Response from FOB/ISB: 8/29/2022
Report: 9/9/2022
Revised: 11/2/2022

## Executive Summary

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of Stops, Searches and Arrests (SSA) related to incidents which occurred between March and May 2022.  In addition to the SSA audit, three (3) sub-audits, Consent to Search, Strip/Cavity and Probation and Parole, are conducted as part of the overall SSA audit.  These sub-audits encompassed incidents which occurred between January and May of 2022.  The audit is designed to measure compliance to NOPD policies and the Consent Decree, thereby ensuring that all stops, searches, and arrests are conducted and executed consistent with those policies and constitutional law.  The audit also ensures all incidents are documented appropriately, that the documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect. This audit spans the period during which the NOPD Field Operations Bureau (FOB) SSA Corrective Action Plan (CAP) was being executed, following its implementation as an outcome of the May 2021 SSA audit results.

**Stops, Searches, and Arrests – Audit**

o  **SSA Incidents -** Scorecard has an overall score of **90%.**  It shows continuous improvement over previous audit score of 87%.  Most of the categories on this scorecard pertain to the officer documenting his/her action with the public. FICs and EPRs should be complete, accurate and timely. The deficiencies with regard to FIC submittals and approvals within policy timeframes, are currently being addressed in the CAP as well as during roll-call training as needed. Specific training with In-service Training classes or Daily Training Bulletins (DTBs) are also being utilized to reinforce close and effective supervision.  Video to report consistency is being addressed in the same manner.

o  **SSA Procedural Justice** - Scorecard has an overall score of **98%.** It shows continuous improvement over previous audit score of 94%.  The contributing deficit on this scorecard is the same as last audit: the "Officer Introduced Themselves" category with a 93**%** compliance rate.  However, this category shows considerable improvement as well from the previous score of 72%.  When reasonably possible, officers should identify themselves as soon as practical on a stop.  This improvement is indicative of concerted efforts by FOB to ensure officers identify themselves in an expeditious manner.

o  **Stops Subjects** - Scorecard has an overall score of **97%,** which shows continuous improvement over the previous score of 93%.  The previous notable deficiency related to handcuffing subjects has achieved compliance. The "Reason for handcuffs documented in the report" had scored 86% previously and scored **97%** in this audit.  This can be attributed to the fact that the Department has continued to educate officers, using DTBs, in-service training, as well as utilizing the FOB CAP (corrective action plan) developed after the preceding audit.

o  **Searches Subjects -** Scorecard has an overall score of **93%,** which shows continuous improvement over the previous score of 79%.  While the score for "Officers adequately

2

documenting a legal basis to search" was **90%**, it represents a considerable improvement from the previous score of 83%. This can be attributed to the fact that the Department has continued to educate officers, using DTBs, in-service training, as well as utilizing the FOB CAP developed after the preceding audit.

o   **Arrests Subjects -** scorecard has an overall score of **96%** which is still compliant.  The previous audit score of 99% did not include the new question regarding "Miranda Given, if required".  This metric scored **87%** in this initial review, which lowered the overall score of the audit area.

**Stops, Searches, and Arrests – Probation & Parole Sub-audit**

o   **SSA – Probation & Parole -** Scorecard has an overall score of **96%.**  It shows continuous improvement over previous audit score of 93%. The primary deficiencies with regard to FIC submittals (87%) and approvals (78%) within policy timeframes, Report/Video consistency (86%), and BWC completeness (88%) are currently being addressed in the CAP as part of the overall FOB inspection process, as well as during roll-call training as needed. Specific training with In-service Training classes or Daily Training Bulletins (DTBs) are also being utilized to reinforce close and effective supervision.  Video to report consistency is being addressed in the same manner.

**Stops, Searches and Arrests – Consent to Search Sub-audit**

o   **SSA - Consent to Search** –Scorecard has an overall score of **88%,** which shows nearly flat over the previous score of 87%.  The primary deficiencies with regard to FIC submittals (86%) and approvals (75%) within policy timeframes, Report/Video consistency (50%), RS to Stop & RS to Stop in Report (75% each), Valid Search & Valid Search in Report (56% each), Miranda Given (50%), and BWC completeness (88%) are currently being addressed in the CAP as part of the overall FOB inspection process, as well as during roll-call training as needed. Specific training with In-service Training classes or Daily Training Bulletins (DTBs) are also being utilized to reinforce close and effective supervision.  Video to report consistency is being addressed in the same manner.  Overall scores impacted by policy issues with Public Safety Rides.  Five of the 8 incidents audited were for courtesy rides, and 2 were Crisis Interventions, and 1 Incident to Arrest.

o   **Consent to Search** – Subject scorecard has an overall score of **20%.**  Overall scores impacted by policy issues with Public Safety Rides.  Five of the 8 incidents audited were for courtesy rides, and 2 were Crisis Interventions, and 1 Incident to Arrest. These deficiencies have been addressed with the publication of the new Public Safety Ride (PSR) Policy 10. 1.. The new policy regarding Public Safety Rides went into effect after the audit sample was selected. There was inconsistent direction and lack of policy which impacted how safety rides were to be handled.  The expectation is that the new policy will provide clear and consistent

guidelines going forward.

o   Specific cognizance training being addressed with General Order 1157 regarding PSRs.

**Stops, Searches and Arrests – Strip & Cavity**

o   **SSA – Strip & Cavity** –Scorecard has an overall score of **90%,** which shows slight improvement over the previous score of 87%.  The deficiencies with regard to the incident and subject deficiencies are currently being addressed in the FOB CAP as well as during roll-call training as needed. Specific training with In-service Training classes or Daily Training Bulletins (DTBs) are also being utilized to reinforce close and effective supervision.

o   **Strip & Cavity Search** – Subject scorecard has an overall score of **94%** compared to the previous score of 100%.  The one deficiency related to supervisor approval prior to conducting strip search (67%). The district explained that there were exigent circumstances for doing the search as suspect had gun slip down his waist and officers felt it unsafe to wait.  Auditors disagreed with the reasoning after viewing video and this incident was flagged. The audit found no specific issues with the strip searches as the officers followed policy and guidelines while conducting such searches.

4

# Table of Contents

Executive Summary...................................................................................................................................2

Introduction ..............................................................................................................................................6

Purpose .....................................................................................................................................................6

Objectives..................................................................................................................................................6

Background ................................................................................................................................................6

Methodology.............................................................................................................................................6

Initiating and Conducting the SSA Audit .................................................................................................9

Initiating and Conducting the Sub-audit (Consent to Search) .......................................................10

Initiating and Conducting the Sub-audit (Strip & Cavity Search)..................................................11

Initiating and Conducting the Sub-audit (Probation & Parole) ....................................................12

Reviews - Scorecards ...........................................................................................................................13

Conclusion.............................................................................................................................................52

Appendix A – SSAPJ Audit Forms .......................................................................................................64

Appendix B – Report Distribution ......................................................................................................94

## Introduction

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of Stops, Searches and Arrests (SSA) related to incidents which occurred between March and May 2022.  In addition, three (3) sub-audits, Consent to Search, Strip/Cavity and Probation and Parole, are conducted as part of the overall SSA audit and encompasses incidents which occurred between January and May of 2022.  This audit is designed to ensure that all stops, searches, and arrests are conducted and executed consistent with NOPD policy and constitutional law, are documented appropriately, that the documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect. This audit spans the period during which the NOPD Field Operations Bureau (FOB) corrective action plan was implemented following the May 2021 SSA audit.

### Purpose
The Stops, Searches, and Arrests audits are completed to ensure stops, searches, and arrests are constitutional and are within policy. Stops, Searches, and Arrests are regulated by, but not limited to, the following Chapters: 1.2.4 – Search and Seizure; 1.2.4.1 – Stops/Terry Stops; 1.2.4.2 – Search Warrant Content, Forms and Reviews; 1.3.1.1 – Handcuffing and Restraint Devices; 1.9 – Arrests; 35.1.7 Non-Disciplinary Responses to Minor Violations; 41.3.10 Body Worn Camera; 41.12– Field Interview Cards; 41.13 Bias-Free Policing; 52.1.1 – Misconduct Intake and Complaint Investigation.

### Objectives
This audit is designed to ensure that all Stops, Searches, and Arrests are consistent with NOPD policy and constitutional law. Also, to ensure all are documented appropriately, the documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect. This audit procedure entails the review of stops, searches, and arrests. Consent searches, strip and cavity searches, search warrants, and performance evaluations are covered in separate audits.

### Background
This comprehensive Stops, Searches and Arrest Procedural Justice (SSAPJ) Audit utilizing the standard protocol has now been further enhanced to ensure all relevant issues regarding the last audit have been addressed. Originally, Stops, Searches and Arrests were each audited independently. In December of 2019, Stop, Search and Arrest audits were redesigned and consolidated into one audit. Then, following the 2021 audit, further enhancements were made relative to the corrective actions implemented, as well as additional audit questions being added. This resulting audit was more detailed, and a deeper diving review of the most fundamental actions taken by officers.

### Methodology
Auditors qualitatively assessed each incident using the SSA forms listed below to ensure each stop, search, and arrest is compliant with legal requirements and NOPD policy. Auditors analyzed reports, field interview cards, body-worn cameras and or in-car cameras to ensure officers had a valid legal

6

basis to conduct a stop, search, or arrest, that officers documented such basis, and that documentation was complete and accurate.

The following SSA forms document the audit criteria:
1.          SSA Subject Audit Form
2.          SSA Incident Audit Form
3.          Consent to Search Form
4.          Strip/Cavity Search Form

Each stop (CAD or FIC), search (FIC), or arrest (FIC or EPR) incident the sample required one SSA Incident form and one SSA subject form for each person suspected of a crime during the incident. For the purposes of this audit, every person an officer identified who was not a victim or witness is a subject and requires an SSA subject form. For example, consider an incident involving an officer stopping a vehicle because he/she believed the driver matched a description of a wanted person. He/she identified the driver and the front passenger in the vehicle and none of the rear passengers. For this incident, an SSA subject form was required for the driver (suspected of being wanted) and for the front passenger (identified by the officer). Although the officer was required to document approximate demographics for the rear passengers in a FIC, SSA subject forms were not needed for them.

Each Consent to Search (FIC or EPR) incident in the sample required one SSA Incident form, one SSA subject form for each person suspected of a crime during the incident, and one Consent to Search form. For the purposes of this sub-audit, the process is the same as the SSA process.  This sample is reported separately from the SSA sample.

Each Strip/Cavity Search (FIC or EPR) Incident in the sample required one SSA Incident form, one SSA subject form for each person suspected of a crime during the incident, and one Strip/Cavity Search form. For the purposes of this sub-audit, the process is the same as the SSA process.  This sample is reported separately from the SSA sample.

Each Probation and Parole (FIC or EPR) Incident in the sample required one SSA Incident form and one SSA subject form for each person suspected of a crime during the incident. For the purposes of this sub-audit, the process is the same as the SSA process.  This sample is reported separately from the SSA sample.

All documents and related incidents that are in the sample and were not audited because there is no stop, search or arrest were to be deselected. All deselections were recorded in the Deselection Log.

Auditors searched for and reviewed all documentation related to the incident sampled. This involved:
1. Reading the documents sampled to determine which officers were on scene and when.
2. Searching Evidence.com by officer and time and by using multi-camera option to find related videos that were labelled differently.

3.   Reviewing the prior and proceeding CAD activity for the officers on scene.
4.   Searching for FICs and EPRs using subject names and the date of the incident as documented on video or in reports.
5.   Searching for FICs and EPRs using officer information and the date of the incident as documented on video or in reports.
6.   Reviewing the related item numbers as documented in FICs and EPRs.

If video is available for the incident, auditors watched all interactions between officers and non-members. Auditors skipped through sections of video that did not involve interactions between officers and non-members. Auditors watched videos recorded by other officers on scene to observe all interactions. Auditors also watched the beginning and end of each officer's BWC video to determine whether the officer activated and deactivated their BWC as required by policy.

Auditors read the guidance in the audit forms on a regular basis. Changes to audit forms were clearly communicated to auditors by the audit supervisor. Auditors re-read policies when guidance in audit forms recommended, they do so or when the policy requirements were not clear enough to the auditor to allow them to confidently score an audit criterion.

When audit results required comments, auditors thoroughly explained the evidence that they observed that led to their Response of the result for the audit criteria in question. For example, if an auditor scored "Videos and Reports as Significantly Consistent" with a "No" indicating non-compliance, they explained how the video shows something that is not consistent with the report. Such a comment read like the following: "The FIC documents a pat down, however the BWC shows a search incident to arrest."

Drawing on their knowledge of NOPD policies, auditors noted any policy violations they observe that are not specifically addressed in the SSA audit tools in the "Notify PSS" section of the form.

## Initiating and Conducting the SSA Audit

The final **SSA** sample size for this audit was determined to be **97** incidents due to stratification and rounding.

1. The universe of Stops, Searches, and Arrests are exported into an excel spreadsheet. Stops, searches and arrests are sorted based on the date the digital document is created. Incidents are assigned a random number using Excel's random number function (RAND).

2. Documents are sampled starting from the smallest random number assigned and continuing from smallest to largest until the required sample size is reached.

3. Sample sizes are representative of the Department, not each district/division, when reporting publicly. For reference, during March-May 2022, NOPD's Stops, Searches, and Arrests universe amounted to 37,000+ incidents. Per the sample size calculator given to NOPD by the Los Angeles Police Department Auditing Unit, a sample size of about 97 incidents is representative of a population of 37,048 when doing a one-tailed test, with a 95% degree of confidence, and a 4% error rate.

4. When reporting publicly, audit results are stratified by division/district; the number of audit results per division/district are proportionate to the actual activity by the division/district. The results include at least one incident from each division/district with activity during the reporting time period to ensure all districts/divisions with activity are included in public reports.

5. Randomly sampled documents (CAD, FIC, or EPR) that do not document a stop, search, or arrest by NOPD will be deselected. For the purposes of this audit, anyone who is identified by an officer and who is not a witness or victim, is considered stopped. If the document is part of the arrest universe and an auditor determines the related incident does not include an arrest by NOPD, but does include a stop or search by NOPD, the document and related incident will be audited focusing on the stop and search. When a document is deselected, the auditor will continue to the document with the next lowest random number.

9

## Initiating and Conducting the Sub-audit (Consent to Search)

The final **Consent to Search SSA** sample size for this sub-audit was determined to be **8** incidents in which either a consent to search was either flagged on an FIC/EPR or determined to have been conducted during the audit period of March 16 to May 31, 2022.  Note that the previous months of 2022 were audited separately as a check. This sub-audit follows the SSA guidelines for auditing.

1. The universe of Consent to Search is exported into an excel spreadsheet. No Randomization takes place.

2. The incidents are then reviewed prior to auditing to determine if consent to search is indicated on the reports.  Any incidents where the word "consent" is used in the narrative are verified for the purpose of removing those incidents where consent is mentioned in other contexts outside of the consent to search meaning.

3. Final sample sizes were the totality of all incidents which indicated a legal basis of "consent to search" or the narrative described a consent to search action or was otherwise noted.

4. When reporting publicly, audit results are not stratified by any division/district; The results include all incidents from with consent to search activity during the reporting time period to ensure all activity are included in public reports.

5. Sampled documents (CAD, FIC, or EPR) that do not document a "consent to search" by NOPD will be deselected. When a document is deselected, there is no replacement as the list is all inclusive.

## Initiating and Conducting the Sub-audit (Strip & Cavity Search)

The final **Strip/Cavity SSA** sample size for this sub-audit was determined to be **3** incidents in which either a strip or cavity search was determined to have been conducted during the audit period of January to May 2022.  This sub-audit follows the SSA guidelines for auditing.

1. The universe of Strip and Cavity are exported into an excel spreadsheet. No Randomization takes place.

2. The incidents are then reviewed prior to auditing to determine if Strip or Cavity is indicated on the reports.  Any incidents where the words "Strip" or "Cavity" used in the narrative are verified for the purpose of removing those incidents where "Strip" or "Cavity" is mentioned in other contexts outside of their meaning.

3. Final sample sizes were the totality of all incidents which indicated a "Strip" or "Cavity" search" or the narrative described a such action or is otherwise noted.

4. When reporting publicly, audit results are not stratified by any division/district; The results include all incidents with consent to search activity during the reporting time period to ensure all activity is included in public reports.

5. Sampled documents (CAD, FIC, or EPR) that do not document a "strip" or "cavity" search by NOPD will be deselected. When a document is deselected, there is no replacement as the list is all inclusive.

11

## Initiating and Conducting the Sub-audit (Probation & Parole)

The final **Probation and Parole SSA** sample size for this sub-audit was determined to be **42** incidents in which an individual was determined to have been on probation and/or parole when a stop and search was conducted during the audit period of January to May 2022.  This sub-audit follows the SSA guidelines for auditing.

1. The universe of Probation & Parole data is exported into an excel spreadsheet. The list is derived by cross-referencing the document from the office of the probation & parole with the NOPD data. No Randomization took place.

2. The incidents are then reviewed prior to auditing to determine if individuals listed in NOPD data are still actively on probation or parole.  This is determined by a review from the probation and parole office, and then indicated on the reports.  Any incidents where it is confirmed a person is still actively on P&P, those incidents are included in the sample.

3. Final sample sizes are the totality of all incidents which indicate a person was actively on P&P or otherwise noted.

4. When reporting publicly, audit results are not stratified by any division/district; The results include all incidents where persons are P&P, during the reporting time period to ensure all activity is included in public reports.

5. Sampled documents that do not document a stop of a person on probation & parole by NOPD will be deselected. When a document is deselected, there is no replacement as the list is all inclusive.

## Reviews - Scorecards

### SSA Audit Summary Table

| Audit Form # | CD ¶/Chapter | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CD 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | | | |
| 2 | CD 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 69 | 72 | 96% | TRUE | 25 | 97 |
| 3 | CD 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 59 | 64 | 92% | FALSE | 33 | 97 |
| 4 | CD 150 | Incident | FIC Approved in 72Hrs | Did the supervisor approved the FIC within 72 hours? | 54 | 69 | 78% | FALSE | 28 | 97 |
| 5 | CD 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 95 | 96 | 99% | TRUE | 1 | 97 |
| 6 | CD 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 79 | 95 | 83% | FALSE | 2 | 97 |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: | 7 | 7 | 100% | TRUE | 90 | 97 |

13

| | | | | (Consent, Exigent Circumstances, Warrant, None of the above (Not Compliant)) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8C (8A,8B) | CD 133, 143 | Incident | Video Shows Supervisor Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 23 | 23 | 100% | TRUE | 74 | 97 |
| 9 | CD 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? (Informational Only) | 5 | 95 | | | 2 | 97 |
| 10, 11 | CD 80, Ch 1,3 | Incident | Use of Force Reported | If Force Observed, Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | 5 | 5 | 100% | TRUE | 92 | 97 |
| 12 | CD 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? (Informational Only) | 0 | 97 | | | 0 | 97 |
| 13 | CD 132, 133, 134 | Incident | Strip Cavity Search Documented | If Strip/Cavity search is observed(yes), is the strip or cavity search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 97 | 97 |
| 14 | CD 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a consent to search? (Informational Only) | 0 | 97 | | | 0 | 97 |
| 15 | CD 131, 149 | Incident | Consent to Search Documented | If yes, is the consent to search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 97 | 97 |
| 16 | CD 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 20 | 20 | 100% | TRUE | 77 | 97 |
| 17 | CD 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, | 20 | 20 | 100% | TRUE | 77 | 97 |

14

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | whichever is first? | | | | | | |
| 18 | CD 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 20 | 20 | 100% | TRUE | 77 | 97 |
| 19 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Should Have Been Addressed by Supervisor | Did you find any non-compliance related to this incident? (Informational Only) | 30 | 97 | | | 0 | 97 |
| 20 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Missing Documentation | Is there non-compliance because there is missing documentation (FIC, EPR, etc.)? (Informational Only) | 8 | 30 | | | 67 | 97 |
| 21 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-compliance Evident in Approved Reports | Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved? If a supervisor needed to watch video to know about the non-compliance, choose "No." (Informational Only) | 19 | 30 | | | 67 | 97 |
| 22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor On Scene During Non-Compliance | Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? (Informational Only) | 1 | 30 | | | 67 | 97 |
| 23 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Required to Watch Video | Was a supervisor required to watch the video? Supervisors are required to watch videos if one or more of the following occurred: a use | 3 | 31 | | | 66 | 97 |

| | | | | of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. (Informational Only) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 24 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Reviewed Video | Did the supervisor watch the video? Review the audit trail for the videos in Evidence.com | 8 | 31 | | | 66 | 97 |
| 25 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Aware or Should Have Been Aware of Non-compliance | Did a supervisor know or should have known about the non-compliance? Choose "Yes" if any of the previous 5 questions are "Yes." | 22 | 30 | | | 67 | 97 |
| 27 | CD 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 92 | 96 | 96% | TRUE | 1 | 97 |
| 28 | CD 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 89 | 96 | 93% | FALSE | 1 | 97 |
| 29 | CD 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 96 | 96 | 100% | TRUE | 1 | 97 |

| 30 | Ch 41.13 P9E | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 96 | 96 | 100% | TRUE | 1 | 97 |
| 31 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 79 | 79 | 100% | TRUE | 18 | 97 |
| 32 | Ch 1.2.4.1 P18 | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 95 | 96 | 99% | TRUE | 1 | 97 |
| 33 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 96 | 96 | 100% | TRUE | 1 | 97 |
| 34A-D | N/A | Incident | Academy Training | Does this incident make a good training video (Informational Only) | 5 | 96 | | | 1 | 97 |
| 35 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Informational Only) | 3 | 96 | | | 1 | 97 |
| 36 | Ch 41.3.10 P11 | Incident | Complete Video Numerator and Complete Video Denominator | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate | 255 | 288 | 89% | FALSE | | |

17

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | his/her BWC as required? | | | | | | |
| 1A | CD 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 115 | 117 | 98% | TRUE | 0 | 117 |
| 2A | CD 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 114 | 117 | 97% | TRUE | 0 | 117 |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 67 | 69 | 97% | TRUE | 48 | 117 |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 15 | 15 | 100% | TRUE | 102 | 117 |
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 72 | 75 | 96% | TRUE | 42 | 117 |
| 4 | CD 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 93 | 96 | 97% | TRUE | 93 | 96 |
| 5 | CD 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report | Does the "Report" sufficiently document a valid legal basis for every search of this | 86 | 96 | 90% | FALSE | 86 | 96 |

| | | | Denominator | subject? | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? **Informational Only. Included in Search Report Q5.** | 13 | 20 | | | 97 | 117 |
| 7 & 4 | CD 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal Numerator, and Search Legal Denominator | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 8 | CD 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 42 | 42 | 100% | TRUE | 75 | 117 |
| 9 | CD 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 65 | 65 | 100% | TRUE | 52 | 117 |
| 10 | CD 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 66 | 67 | 99% | TRUE | 50 | 117 |
| 11 | | Subject | Stop Result | What was result of Stop? **Multiple choice** | Informational Only | | | | | |

| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? (Informational Only) | 12 | 89 | | | 28 | 117 |
|---|---|---|---|---|---|---|---|---|---|---|
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required? Officers shall advise suspects of their Miranda Rights at the time of arrest or prior to any custodial interrogation. See Chapter: 1.9.1; Note: Miranda does not apply to roadside questioning of a stopped motorist, or a person briefly detained on the street under a Terry stop. | 69 | 79 | 87% | FALSE | 38 | 117 |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | 110 | 112 | 98% | TRUE | 5 | 117 |
| 14 | CD 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE | 117 | 117 |
| 20 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Required to Exit Vehicle | Did an officer require this subject to exit a vehicle? (Informational Only) | 14 | 27 | | | 90 | 117 |
| 21 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Documented | If you chose yes for "Required to Exit Vehicle", did an officer document the justification to require this subject to exit the vehicle in the FIC? | 13 | 14 | 93% | FALSE | 103 | 117 |
| 22 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Compliant | If you chose yes for Vehicle Exit Justification Documented, is the justification specific to this subject, and/or was a legal vehicle search conducted requiring all occupants to | 13 | 13 | 100% | TRUE | 104 | 117 |

20

|  |  |  |  | exit the vehicle? |  |  |  |  |  |  |
|----|--------|---------|------------------------------|-----------------------------------------------------------------------------------------------------------------------|-----|-----|------|------|----|-----|
| 16 | CD 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 103 | 103 | 100% | TRUE | 14 | 117 |
| 17 | CD 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 116 | 116 | 100% | TRUE | 1 | 117 |
| 18 | CD 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 116 | 116 | 100% | TRUE | 1 | 117 |
| 19 | CD 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 116 | 116 | 100% | TRUE | 1 | 117 |

## SSA – Consent to Search Audit Summary Table

| Audit Form # | CD ¶/Chapter | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CD 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | | | |
| 2 | CD 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 3 | CD 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 6 | 7 | 86% | FALSE | 1 | 8 |
| 4 | CD 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 6 | 8 | 75% | FALSE | 0 | 8 |
| 5 | CD 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 6 | CD 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 4 | 8 | 50% | FALSE | 0 | 8 |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: | 0 | 0 | NA | TRUE | 8 | 8 |

| # | CD | Type | Category | Question | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | (Consent, Exigent Circumstances, Warrant, None of the above (Not Compliant)) | | | | | | |
| 8C (8A,8B) | CD 133, 143 | Incident | Video Shows Supervisor Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 0 | 0 | NA | TRUE | 8 | 8 |
| 9 | CD 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? (Informational Only) | 0 | 8 | | | 0 | 8 |
| 10, 11 | CD 80, Ch 1,3 | Incident | Use of Force Reported | If Force Observed, Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | 0 | 0 | NA | TRUE | 8 | 8 |
| 12 | CD 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? (Informational Only) | 0 | 8 | | | 0 | 8 |
| 13 | CD 132, 133, 134 | Incident | Strip Cavity Search Documented | If Strip/Cavity search is observed (yes), is the strip or cavity search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 8 | 8 |
| 14 | CD 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a consent to search? (Informational Only) | 3 | 8 | | | 0 | 8 |
| 15 | CD 131, 149 | Incident | Consent to Search Documented | If yes, is the consent to search documented in the FIC or EPR? | 3 | 3 | 100% | TRUE | 5 | 8 |
| 16 | CD 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 0 | 0 | NA | TRUE | 8 | 8 |
| 17 | CD 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before | 0 | 0 | NA | TRUE | 8 | 8 |

23

| # | Ref | Type | Name | Question | | | | | | |
|---|-----|------|------|----------|---|---|---|---|---|---|
| | | | | next Code1 call or ETOD, whichever is first? | | | | | | |
| 18 | CD 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 0 | 0 | NA | TRUE | 8 | 8 |
| 19 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Should Have Been Addressed by Supervisor | Did you find any non-compliance related to this incident? (Informational Only) | 5 | 8 | | | 0 | 8 |
| 20 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Missing Documentation | Is there non-compliance because there is missing documentation (FIC, EPR, etc.)? (Informational Only) | 3 | 5 | | | 3 | 8 |
| 21 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-compliance Evident in Approved Reports | Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved? If a supervisor needed to watch video to know about the non-compliance, choose "No." (Informational Only) | 5 | 5 | | | 3 | 8 |
| 22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor On Scene During Non-Compliance | Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? (Informational Only) | 1 | 5 | | | 3 | 8 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Required to Watch Video | Was a supervisor required to watch the video? Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. (Informational Only) | 2 | 5 | | | 3 | 8 |
| 24 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Reviewed Video | Did the supervisor watch the video? Review the audit trail for the videos in Evidence.com | 1 | 5 | | | 3 | 8 |
| 25 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Aware or Should Have Been Aware of Non-compliance | Did a supervisor know or should have known about the non-compliance? Choose "Yes" if any of the previous 5 questions are "Yes." | 5 | 5 | | | 3 | 8 |
| 27 | CD 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 28 | CD 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify | 7 | 8 | 88% | FALSE | 0 | 8 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | him/herself as a soon a practical? | | | | | | |
| 29 | CD 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 30 | Ch 41.13 P9E | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 31 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 6 | 6 | 100% | TRUE | 2 | 8 |
| 32 | Ch 1.2.4.1 P18 | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 33 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 34A-D | N/A | Incident | Academy Training | Does this incident make a good training video (Informational Only) | 0 | 8 | | | 0 | 8 |
| 35 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Informational Only) | 1 | 8 | | | 0 | 8 |

| 36 | Ch 41.3.10 P11 | Incident | Complete Video Numerator and Complete Video Denominator | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 16 | 17 | 94% | FALSE | | |
| 1A | CD 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 6 | 8 | 75% | FALSE | 0 | 8 |
| 2A | CD 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 6 | 8 | 75% | FALSE | 0 | 8 |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 3 | 3 | 100% | TRUE | 5 | 8 |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 1 | 1 | 100% | TRUE | 7 | 8 |
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 3 | 3 | 100% | TRUE | 5 | 8 |

27

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | CD 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 5 | 9 | 56% | FALSE | | |
| 5 | CD 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the "Report" sufficiently document a valid legal basis for every search of this subject? | 5 | 9 | 56% | FALSE | | |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? Informational Only. Included in Search Report Q5. | 3 | 4 | | | 4 | 8 |
| 7 & 4 | CD 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal Numerator, and Search Legal Denominator | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 0 | 0 | | TRUE | 9 | 9 |
| 8 | CD 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 1 | 1 | 100% | TRUE | 7 | 8 |
| 9 | CD 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 1 | 1 | 100% | TRUE | 7 | 8 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 | CD 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 2 | 2 | 100% | TRUE | 6 | 8 |
| 11 | | Subject | Stop Result | What was result of Stop? Multiple choice | Informational Only | | | | | |
| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? (Informational Only) | 1 | 2 | | | 6 | 8 |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required? Officers shall advise suspects of their Miranda Rights at the time of arrest or prior to any custodial interrogation. See Chapter: 1.9.1; Note: Miranda does not apply to roadside questioning of a stopped motorist, or a person briefly detained on the street under a Terry stop. | 1 | 1 | 100% | TRUE | 7 | 8 |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | 7 | 7 | 100% | TRUE | 1 | 8 |
| 14 | CD 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE | 8 | 8 |
| 20 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Required to Exit Vehicle | Did an officer require this subject to exit a vehicle? (Informational Only) | 0 | 0 | | | 8 | 8 |
| 21 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Documented | If you chose yes for "Required to Exit Vehicle", did an officer document the justification to require this subject to exit the vehicle in the FIC? | 0 | 0 | | TRUE | 8 | 8 |

29

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 22 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Compliant | If you chose yes for Vehicle Exit Justification Documented, is the justification specific to this subject, and/or was a legal vehicle search conducted requiring all occupants to exit the vehicle? | 0 | 0 | | TRUE | 8 | 8 |
| 16 | CD 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 5 | 5 | 100% | TRUE | 3 | 8 |
| 17 | CD 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 18 | CD 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 8 | 8 | 100% | TRUE | 0 | 8 |
| 19 | CD 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 8 | 8 | 100% | TRUE | 0 | 8 |

## Consent to Search Audit Summary Table

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 128 | Incident | FIC Checked Accurately | 1. In the FIC, did the officer accurately check the appropriate boxes to indicate a consent to search occurred?  If a consent to search did not occur choose "No - Consent to Search Did Not Occur." If a consent to search occurred but the FIC was not completed correctly choose "No - Consent to Search Occurred, FIC Not Accurate." If a consent to search occurred but an FIC does not exist for the incident choose "No - Consent to Search Occurred, No FIC."  NOPD FIC Policy Chapter 41.12 2(e) states that all searches conducted without a warrant, with some exceptions, requires an FIC be completed. | 4 | 8 | 50% | FALSE | 0 | 8 |
| 2 | 128 | Consent to Search | Supervisor Notified Before Search Conducted | 2. If a consent to search occurred, does video show the officer notified a supervisor before he/she conducted a search based on consent?  Please provide timestamp of the video. | 0 | 5 | 0% | FALSE | 3 | 8 |
| 3 | 128 | Consent to Search | Supervisor Approved Before Search Conducted | 3. If a consent to search occurred, does video show the supervisor approved the consent to search before the search was conducted? Please provide timestamp of the video. | 0 | 5 | 0% | FALSE | 3 | 8 |
| 4 | 129 | Consent to Search | Officer Informed Subject of His/her Rights | 4. If a consent to search occurred, does video show the officer informing the subject of his or her right to refuse and to revoke consent at any time? | 2 | 5 | 40% | FALSE | 3 | 8 |
| 5 | 129 | Consent to Search | Form 146 Exists | 5. If a consent to search occurred, does a Form 146 exist for the consent to search? | 0 | 5 | 0% | FALSE | 3 | 8 |
| 6 | 131 | Consent to Search | Subject Signed Form 146 | 6. If a consent to search occurred, does form 146 include the signature of the person granting consent? | 0 | 1 | 0% | FALSE | 7 | 8 |
| 7 | 131 | Consent to Search | Officer Signed Form 146 | 7. If a consent to search occurred, does form 146 include the signature of the officer requesting consent? | 0 | 1 | 0% | FALSE | 7 | 8 |

Note:  FIC Incorrect (D-13822-22 - CIT Medical Transport; C-27776-22 - SITA, not Consent to Search; D-14597-22 - CIT Medical Transport; D-25219-22 - Courtesy Ride requires consent to search on FIC, Not Pat-down;) (C-33603-22, D-11480-22, D-09457-22, D-02179-22 All courtesy rides). 5 courtesy rides, 2 CIT Transports, 1 SITA.

## SSA – Strip & Cavity Search Audit Summary Table

| Audit Form # | CD ¶/Chapter | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CD 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | | | |
| 2 | CD 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 2 | 3 | 67% | FALSE | 0 | 3 |
| 3 | CD 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 2 | 2 | 100% | TRUE | 1 | 3 |
| 4 | CD 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 2 | 2 | 100% | TRUE | 1 | 3 |
| 5 | CD 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 6 | CD 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 2 | 3 | 67% | FALSE | 0 | 3 |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: (Consent, Exigent Circumstances, Warrant, None of the above (Not Compliant)) | 0 | 0 | NA | TRUE | 3 | 3 |
| 8C (8A,8B) | CD 133, 143 | Incident | Video Shows Supervisor Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 3 | 3 | 100% | TRUE | 0 | 3 |

32

| # | CD | Type | Name | Question | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 9 | CD 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? (Informational Only) | 1 | 3 | | | 0 | 3 |
| 10, 11 | CD 80, Ch 1,3 | Incident | Use of Force Reported | If Force Observed, Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | 1 | 1 | 100% | TRUE | 2 | 3 |
| 12 | CD 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? (Informational Only) | 3 | 3 | | | 0 | 3 |
| 13 | CD 132, 133, 134 | Incident | Strip Cavity Search Documented | If Strip/Cavity search is observed(yes), is the strip or cavity search documented in the FIC or EPR? | 2 | 3 | 67% | FALSE | 0 | 3 |
| 14 | CD 131, 149 | Incident | Strip-Cavity Search Occurred | Does the incident involve a Strip-Cavity Search? (Informational Only) | 0 | 3 | | | 0 | 3 |
| 15 | CD 131, 149 | Incident | Strip-Cavity Search Documented | If yes, is the Strip-Cavity Search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 3 | 3 |
| 16 | CD 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 2 | 2 | 100% | TRUE | 1 | 3 |
| 17 | CD 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, whichever is first? | 2 | 2 | 100% | TRUE | 1 | 3 |
| 18 | CD 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 2 | 2 | 100% | TRUE | 1 | 3 |
| 19 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Should Have Been Addressed by Supervisor | Did you find any non-compliance related to this incident? (Informational Only) | 2 | 3 | | | 0 | 3 |

33

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 20 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Missing Documentation | Is there non-compliance because there is missing documentation (FIC, EPR, etc.)? (Informational Only) | 2 | 2 | | | 1 | 3 |
| 21 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-compliance Evident in Approved Reports | Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved? If a supervisor needed to watch video to know about the non-compliance, choose "No." (Informational Only) | 2 | 2 | | | 1 | 3 |
| 22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor On Scene During Non-Compliance | Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? (Informational Only) | 1 | 2 | | | 1 | 3 |
| 23 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Required to Watch Video | Was a supervisor required to watch the video? Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. (Informational Only) | 0 | 2 | | | 1 | 3 |

34

| # | Ref | Type | Category | Question | | | | | | |
|---|-----|------|----------|----------|---|---|---|---|---|---|
| 24 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Reviewed Video | Did the supervisor watch the video? Review the audit trail for the videos in Evidence.com | 0 | 2 | | | 1 | 3 |
| 25 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Aware or Should Have Been Aware of Non-compliance | Did a supervisor know or should have known about the non-compliance? Choose "Yes" if any of the previous 5 questions are "Yes." | 2 | 2 | | | 1 | 3 |
| 27 | CD 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 28 | CD 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 2 | 3 | 67% | FALSE | 0 | 3 |
| 29 | CD 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 2 | 3 | 67% | FALSE | 0 | 3 |
| 30 | Ch 41.13 P9E | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 31 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 32 | Ch 1.2.4.1 P18 | Incident | Conclusion | Does video show the officer communicate the result of the | 3 | 3 | 100% | TRUE | 0 | 3 |

35

| | | | | stop/interaction to the subject (arrest, ticket, etc.)? | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 33 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 3 | 3 | 100% | TRUE | 0 | 3 |
| 34A-D | N/A | Incident | Academy Training | Does this incident make a good training video (Informational Only) | 0 | 3 | | | 0 | 3 |
| 35 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Informational Only) | 0 | 3 | | | 0 | 3 |
| 36 | Ch 41.3.10 P11 | Incident | Complete Video Numerator and Complete Video Denominator | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required?  And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 15 | 17 | 88% | FALSE | | |
| 1A | CD 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 2A | CD 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 2 | 3 | 67% | FALSE | 2 | 5 |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the | 1 | 1 | 100% | TRUE | 4 | 5 |

36

| | | | | handcuffing was within policy? | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 3 | 3 | 100% | TRUE | 2 | 5 |
| 4 | CD 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 7 | 9 | 78% | FALSE | | |
| 5 | CD 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the "Report" sufficiently document a valid legal basis for every search of this subject? | 7 | 9 | 78% | FALSE | | |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? **Informational Only. Included in Search Report Q5.** | 2 | 3 | | | 2 | 5 |
| 7 & 4 | CD 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal Numerator, and Search Legal Denominator | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 0 | 0 | | TRUE | 9 | 9 |
| 8 | CD 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 3 | 3 | 100% | TRUE | 2 | 5 |
| 9 | CD 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the | 3 | 3 | 100% | TRUE | 2 | 5 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | officer have probable cause to arrest this subject? | | | | | | |
| 10 | CD 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 3 | 3 | 100% | TRUE | 2 | 5 |
| 11 | | Subject | Stop Result | What was result of Stop? **Multiple choice** | Informational Only | | | | | |
| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? (Informational Only) | 0 | 3 | | | 2 | 5 |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required? Officers shall advise suspects of their Miranda Rights at the time of arrest or prior to any custodial interrogation.  See Chapter: 1.9.1; Note: Miranda does not apply to roadside questioning of a stopped motorist, or a person briefly detained on the street under a Terry stop. | 3 | 3 | 100% | TRUE | 2 | 5 |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 14 | CD 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE | 5 | 5 |
| 20 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Required to Exit Vehicle | Did an officer require this subject to exit a vehicle? (Informational Only) | 0 | 0 | | | 5 | 5 |
| 21 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Documented | If you chose yes for "Required to Exit Vehicle", did an officer document the justification to require this subject to exit the vehicle in the FIC? | 0 | 0 | | TRUE | 5 | 5 |

| 22 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Compliant | If you chose yes for Vehicle Exit Justification Documented, is the justification specific to this subject, and/or was a legal vehicle search conducted requiring all occupants to exit the vehicle? | 0 | 0 | | TRUE | 5 | 5 |
| 16 | CD 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 17 | CD 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 18 | CD 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 5 | 5 | 100% | TRUE | 0 | 5 |
| 19 | CD 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 5 | 5 | 100% | TRUE | 0 | 5 |

# Strip & Cavity Search Audit Summary Table

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Ch. 41.4.1 P10 | Strip/Cavity | Video Complete | Complete Video Exists Did each officer(s) who made the scene and who has been issued a BWC activate his/her BWC as required?<br><br>Ch. 41.4.1 P10 | 15 | 16 | 94% | FALSE | | |
| 3 | 132 | Strip/Cavity | Probable Cause for Search | Based on the evidence available to you, was there probable cause to conduct the strip or cavity search?<br><br>CD 132 | 3 | 3 | 100% | TRUE | 0 | 3 |
| 4 | 132 | Strip/Cavity | Probable Cause Articulated in FIC, EPR or Warrant | In the FIC or EPR or Search Warrant, did the officer articulate probable cause that the subject was concealing a weapon or contraband?<br><br>CD 132 | 3 | 3 | 100% | TRUE | 0 | 3 |
| 5 | 132 | Strip/Cavity | Field Strip Search | If the incident involved a strip search in the field, does the FIC or EPR explain "exigent circumstances where the life of officers or others may be placed at risk"?<br><br>CD 132 | 3 | 3 | 100% | TRUE | 0 | 3 |

| 6 | 133 | Strip/Cavity | Supervisor Approved Strip Search | If the incident involved a strip search, does video or the report show the officer received approval to conduct the strip search?<br><br>CD 133 | 3 | 3 | 100% | TRUE | 0 | 3 |
|---|-----|--------------|----------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------|---|---|------|------|---|---|
| 7 | 133 Ch. 1.2.4 P 47 A | Strip/Cavity | Supervisor Approved Strip Search in Writing | If the incident involved a strip search, did the officer receive written approval from a supervisor for the strip search?<br><br>Ch. 1.2.4 P 47 A | 2 | 3 | 67% | FALSE | 0 | 3 |
| 8 | 133 | Strip/Cavity | Supervisor Made Scene | If the incident involved a strip search and the officer received approval from a supervisor, does video or the report show the supervisor make the scene?<br><br>CD 133 | 3 | 3 | 100% | TRUE | 0 | 3 |
| 9 | 133 | Strip/Cavity | Minimum # Officers Present for Strip Search | If the incident involved a strip search, do reports or video show the minimum number of officers necessary to conduct the strip search?<br><br>CD 133 | 3 | 3 | 100% | TRUE | 0 | 3 |
| 10 | 133 | Strip/Cavity | Strip Gender Identified | If the incident involved a strip search, did the officer take the necessary steps to identify the subject's identified gender?<br><br>The officer should say something like "Our policy | 2 | 3 | 67% | FALSE | 0 | 3 |

| | | | | requires the officer conducting the strip search to be the same gender as the person being searched. To ensure compliance with that policy, should we have a policeman or policewoman conduct the search?"<br><br>CD 133 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 133 | Strip/Cavity | Officer Who Conducted Search is Same Gender as Subject | If the incident involved a strip search, do reports or video show the strip search was performed by officers of the same gender as the identified gender of the subject?<br><br>This question corresponds to question 8 above. For example, if the subject informed the officer that a policeman should conduct the search, and all officers conducting the search were male, choose "Yes." | 3 | 3 | 100% | TRUE | 0 | 3 |
| 12 | 132 | Strip/Cavity | Privacy Was Provided for Search | If the incident involved a strip search, do reports or video show it was conducted under conditions that provided privacy from all but those authorized to conduct the search?<br><br>CD 132 | 3 | 3 | 100% | TRUE | 0 | 3 |

| 13 | 133 | Strip/Cavity | Strip Professional | If the incident involved a strip search, does video show it was conducted in a professional manner?<br><br>CD 133 | 3 | 3 | 100% | TRUE | 0 | 3 |
|----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 14 | 133 Ch. 1.2.4 P49 H | Strip/Cavity | Strip Location of Evidence | If the incident involved a strip search, does documentation include a list of the items, if any, recovered during the search and the location on the body where found?<br><br>Ch. 1.2.4 P49 H | 3 | 3 | 100% | TRUE | 0 | 3 |
| 15 | 134 | Strip/Cavity | Cavity Search Conducted by Medical Personnel | If the incident involved a cavity search, do reports show it was conducted by medical personnel?<br><br>CD 134 | 0 | 0 | | TRUE | 3 | 3 |
| 16 | 134 | Strip/Cavity | Cavity Search At Medical Facility | If the incident involved a cavity search, do reports show it was conducted by at a medical facility?<br><br>Ch. 1.2.4 P52 | 0 | 0 | | TRUE | 3 | 3 |
| 17 | 134 | Strip/Cavity | Warrant Obtained for Cavity Search | If the incident involved a cavity search, reports show the officer got a search warrant?<br><br>CD 134 | 0 | 0 | | TRUE | 3 | 3 |
| 18 | 134 | Strip/Cavity | Warrant Obtained for Cavity Search | If the incident involved a cavity search, reports show the officer got a search warrant?<br><br>CD 134 | 0 | 0 | | TRUE | 3 | 3 |

43

| 19-22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Addressed by Supervisor | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | To be used for Supervision Auditing | | | | | |

## SSA – Probation & Parole Audit Summary Table

| Audit Form # | CD ¶/Chapter | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) | Number NA | Total Reviewed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CD 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | | | |
| 2 | CD 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 40 | 40 | 100% | TRUE | 0 | 40 |
| 3 | CD 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 26 | 30 | 87% | FALSE | 10 | 40 |
| 4 | CD 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 31 | 40 | 78% | FALSE | 0 | 40 |
| 5 | CD 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 40 | 40 | 100% | TRUE | 0 | 40 |
| 6 | CD 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 32 | 37 | 86% | FALSE | 3 | 40 |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: (Consent, Exigent Circumstances, Warrant, None of the above (Not Compliant)) | 1 | 1 | 100% | TRUE | 39 | 40 |
| 8C (8A,8B) | CD 133, 143 | Incident | Video Shows Supervisor Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 14 | 15 | 93% | FALSE | 25 | 40 |
| 9 | CD 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? (Informational Only) | 7 | 38 | | | 0 | 38 |
| 10, 11 | CD 80, Ch 1,3 | Incident | Use of Force Reported | If Force Observed, Is there a corresponding Blue Team Report? | 7 | 7 | 100% | TRUE | 31 | 38 |

| # | CD | Type | Title | Question | | | | | | |
|---|----|------|-------|----------|---|---|---|---|---|---|
| | | | | (No could indicate it is unreported) 11. Provide Video Documentation. | | | | | | |
| 12 | CD 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? (Informational Only) | 0 | 40 | | | 0 | 40 |
| 13 | CD 132, 133, 134 | Incident | Strip Cavity Search Documented | If Strip/Cavity search is observed(yes), is the strip or cavity search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 40 | 40 |
| 14 | CD 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a consent to search? (Informational Only) | 0 | 40 | | | 0 | 40 |
| 15 | CD 131, 149 | Incident | Consent to Search Documented | If yes, is the consent to search documented in the FIC or EPR? | 0 | 0 | NA | TRUE | 40 | 40 |
| 16 | CD 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 15 | 16 | 94% | FALSE | 24 | 40 |
| 17 | CD 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, whichever is first? | 15 | 16 | 94% | FALSE | 24 | 40 |
| 18 | CD 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 15 | 15 | 100% | TRUE | 25 | 40 |
| 19 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Should Have Been Addressed by Supervisor | Did you find any non-compliance related to this incident? (Informational Only) | 11 | 40 | | | 0 | 40 |
| 20 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Missing Documentation | Is there non-compliance because there is missing documentation (FIC, EPR, etc.)? (Informational Only) | 1 | 11 | | | 29 | 40 |
| 21 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-compliance Evident in Approved Reports | Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved? If a supervisor needed to watch video to know about the non-compliance, choose "No." (Informational Only) | 4 | 11 | | | 29 | 40 |

46

| 22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor On Scene During Non-Compliance | Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? (Informational Only) | 3 | 11 | | | 29 | 40 |
| 23 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Required to Watch Video | Was a supervisor required to watch the video? Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. (Informational Only) | 4 | 11 | | | 29 | 40 |
| 24 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Reviewed Video | Did the supervisor watch the video? Review the audit trail for the videos in Evidence.com | 7 | 11 | | | 29 | 40 |
| 25 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Supervisor Aware or Should Have Been Aware of Non-compliance | Did a supervisor know or should have known about the non-compliance? Choose "Yes" if any of the previous 5 questions are "Yes." | 10 | 11 | | | 29 | 40 |
| 27 | CD 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 28 | CD 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 29 | CD 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the | 37 | 37 | 100% | TRUE | 3 | 40 |

| | | | | stop/interaction as soon as practical? | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Ch 41.13 P9E | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 31 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 32 | Ch 1.2.4.1 P18 | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 33 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 34A-D | N/A | Incident | Academy Training | Does this incident make a good training video (Informational Only) | 3 | 37 | | | 3 | 40 |
| 35 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Informational Only) | 0 | 37 | | | 3 | 40 |
| 36 | Ch 41.3.10 P11 | Incident | Complete Video Numerator and Complete Video Denominator | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required?  And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 138 | 157 | 88% | FALSE | | |
| 1A | CD 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 39 | 40 | 98% | TRUE | 0 | 40 |
| 2A | CD 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 39 | 40 | 98% | TRUE | 0 | 40 |

48

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 38 | 38 | 100% | TRUE | 2 | 40 |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 7 | 7 | 100% | TRUE | 33 | 40 |
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 33 | 33 | 100% | TRUE | 7 | 40 |
| 4 | CD 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 56 | 56 | 100% | TRUE | | |
| 5 | CD 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the "Report" sufficiently document a valid legal basis for every search of this subject? | 53 | 53 | 100% | TRUE | | |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? **Informational Only. Included in Search Report Q5.** | 6 | 8 | | | 32 | 40 |
| 7 & 4 | CD 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal Numerator, and Search Legal Denominator | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 49 | 49 | 100% | TRUE | 7 | 56 |
| 8 | CD 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 17 | 17 | 100% | TRUE | 23 | 40 |
| 9 | CD 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 28 | 28 | 100% | TRUE | 12 | 40 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 | CD 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 27 | 28 | 96% | TRUE | 12 | 40 |
| 11 | | Subject | Stop Result | What was result of Stop? **Multiple choice** | Informational Only | | | | | |
| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? (Informational Only) | 2 | 34 | | | 6 | 40 |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required?  Officers shall advise suspects of their Miranda Rights at the time of arrest or prior to any custodial interrogation.  See Chapter: 1.9.1; Note: Miranda does not apply to roadside questioning of a stopped motorist, or a person briefly detained on the street under a Terry stop. | 34 | 36 | 94% | FALSE | 4 | 40 |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 14 | CD 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE | 40 | 40 |
| 20 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Required to Exit Vehicle | Did an officer require this subject to exit a vehicle? (Informational Only) | 9 | 11 | | | 29 | 40 |
| 21 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Documented | If you chose yes for "Required to Exit Vehicle", did an officer document the justification to require this subject to exit the vehicle in the FIC? | 8 | 9 | 89% | FALSE | 31 | 40 |
| 22 | CD 149 (h) Ch 1.2.4.3 P19, Ch 41.12 P12(f) | Subject | Vehicle Exit Justification Compliant | If you chose yes for Vehicle Exit Justification Documented, is the justification specific to this subject, and/or was a legal vehicle search conducted requiring all occupants to exit the vehicle? | 8 | 8 | 100% | TRUE | 32 | 40 |
| 16 | CD 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 30 | 30 | 100% | TRUE | 10 | 40 |

| 17 | CD 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 18 | CD 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 37 | 37 | 100% | TRUE | 3 | 40 |
| 19 | CD 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 37 | 37 | 100% | TRUE | 3 | 40 |

## Conclusion

Results

The results of this audit were verified through two processes:

1. Double-blind auditor peer review
2. Audit supervisor review

In the double-blind auditor peer review, two auditors independently assessed each incident and completed the initial SSA Incident and Subject form entries. The two auditors then discussed and resolved any discrepancies between the two sets of results. Any discrepancy that cannot be resolved was escalated to their supervisor who then resolved the discrepancy, and who may have also drawn on the expertise of others, including but not limited to the PSAB Deputy Superintendent, the PSAB Captain, other PSAB Innovation Managers, members of the Education and Training Division, members of the District Attorney's office, members of the Office of the Consent Decree Monitor, and members of the Department of Justice.

During the Audit Supervisor review, an Innovation Manager reviewed the resolved audit results for accuracy and completeness.  Any issues were sent back to auditors for corrections and the interaction is documented on the audit forms.

The following deviations from compliance were identified in the SSA audit results:

FICs should be submitted by the end of the shift and approved by a supervisor within 72 hours. FIC submitted scored **92%**, an improvement over the previous score of 82%.  The FIC approved within 72 hours scored **78%**, same as previous audit.

Videos and reports consistent metric scored 79 of 95 **(83%)**. Most discrepancies involve minor errors, such as typographical errors. Examples include incomplete or inadequate documentation. This is an improvement to the previous audit which scored 55 of 85 consistent (65%).

If reasonably possible, officers should identify him/herself as soon as practical during an interaction. Auditors review if video shows that the officer verbally identified him/herself. This category was scored **93%**. This is an improvement to the previous audit score of 72%.

For the "Complete Video" question, auditors check if each officer that conducted a stop, search, or arrest activated his/her BWC as required. If the officer is not assigned a BWC, the question is NA. The includes supervisors who made the scene and have been issued a BWC. Of the 33 non-compliant videos reviewed, 22 were related to incomplete videos at CLU, 8 incidents where the officer was late in activating their BWC, and 3 missing or could not be found. This category was scored 89%. This is an improvement to the previous audit score of 81%.  Early BWC shut-off at CLU remains the focus of FOB in-service training and the CAP as there continues to be some confusion when officers should turn their cameras off when entering Lockup.

52

The category "Reason to Search in Report" scores whether the reason for each search was sufficiently documented in the report. This category does not address whether a valid reason to search existed, only whether a valid legal basis to search was documented in the corresponding report. For this audit, the category was scored **90%**. This is an improvement to the previous audit score of 83%.

> *For "Pat Down Justification," if a pat down was correctly indicated, auditors check if the officer gave specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the corresponding text box of the FIC. This category was scored was scored (13/20) compliant.  The previous audit score was (9/15).  Note that these audit counts are included in the categories "Search Legal" and "Reason to Search in Report".*

"Miranda Given, if required" determines if the subject was read their "Miranda Rights" following an arrest. This new metric was added following the previous audit review.  This new category was scored **87%.**

"Vehicle Exit Justification Documented" determines if the officer properly documented the reason they requested a subject to exit a vehicle during a stop. This new metric was added following the previous audit review.  This new category was scored **93%.**

With the ongoing FOB "Corrective Action Plan" currently being implemented, only material policy deficiencies identified in the review process were forwarded to the PSS Captain via the "Notify PSS" protocol for follow-up, redirection, or disciplinary action if needed.

All auditing deficiencies identified in the review process were documented in the PSAB reports and scorecards and sent directly to the various districts for review and action if needed.  Note the districts which responded back to PSAB with their follow-up actions and re-evaluations.

**Recommendations**

1. Continue to work with Academy and the Field Operations Bureau to provide additional training on:
    a. FIC/EPR documentation
    b. BWC activation and de-activation
    c. Search/Pat Down
2. Continue to work with Policy Standards Section to develop DTB's to address deficiencies.
3. Continue FOB Inspections (District SSA self-assessment audits) to reinforce training and take corrective actions to progress the consistent improvement.
4. The Field Operations Bureau is currently utilizing the Corrective Action Plan previously agreed to with OCDM.

**Re-Evaluation Results**

53

**8th District Review**: Under the SSA Scorecard Incident section the 8th District was marked for a video and report not being consistent. Audit used a supplemental report that was written by unit 147B that made the arrest. The auditor discovered some sequence of events on the Officers BWC that were not articulated in the EPR. Should be on the First District since their officer wrote the video and supplemental report was from a 1st District Officer.

**PSAB Response:** ARU confirmed that it was approved by 8th District DIU Sergeant.  The incident report was filed under the 8th District.  No change to the score.

**8th District Review**: Under the Subjects the 8th District was marked for reason for handcuffing documented in report. This is a supplemental report, and it is clear that the officer didn't have any contact with the arrested subject.  The report states he was arrested by the officer and was transported by another Officer. The report is documenting an existing warrant that the subject was also charged with after his arrest.

**PSAB Response:** ARU confirmed that it was an arrest supplemental report, and no FIC was required. This has been updated from No to Not Applicable.

**8th District Review**: Under the Probation and Parole, the 8th District was marked.  After reviewing the video, the FIC, and the report, there was no pat down conducted. The subject was acting irate, so the officer requested additional units, handcuffed the subject, conducted a quick search of the subject, and had to hold the subject until additional officers arrived to keep him from moving around. At that time the subject had already been placed under arrest. The FIC also states no pat down was conducted.  Under the search category the 8th was marked for the Officer having no legal basis to search. The auditor stated that the pat down justification was insufficient. There was no pat down conducted. The subject had been handcuffed and was already under arrest.

**PSAB Response:** After reviewing the BWC, ARU confirmed that the officer did a search incident to arrest, and not a pat-down of the arrested subject. This has been updated from No and NA.  Also, the number of legal searches updated to 2 of 2.

**8th District Review**: Under the Vehicle Exit the 8th was marked for vehicle exit justification documented.  In the narrative of both FIC's, it states why the officer had the subject exit the vehicle. The officer observed in plain sight narcotics in the vehicle with the subject. The subject was inside of an abandoned vehicle and was believed to be wanted

**PSAB Response:** After reviewing the BWC and reading FIC, ARU confirmed that the reasons for having the persons exit the vehicle were within policy and justified.  The entries were updated from No to Yes.

**4th District Review:** The Officer was on the scorecard for a missing BWC and a missing FIC.  Officers assisted the Detective with a 10-27 check marked up 21 NAT. The Detective arrested the subject for a stolen vehicle. The Officer charged the subject for a court capias. The Officer incorrectly labeled his BWC video. On the incident table, it says that an FIC was not required.  However, in the auditor notes on the last incident tab, it is noted that there was no FIC. The Officer or Detective should have

54

completed an FIC for the 10-27 check.

**Actions taken by District:** A SFL was generated for the Officer regarding the **BWC deficiency.**

**PSAB Response:** No further review required.

**4th District Review**: Officer indicated he did a pat down on his FIC but did not provide sufficient justification.  He made no mention of the subject possibly being armed.  He stated the subject was searched for weapons after being identified as the perpetrator of a shoplifting.  He should have just done a search incident to arrest and shouldn't have checked off pat down at all.

**Actions taken by District:** A SFL was generated for the Officer regarding the FIC deficiency.

**PSAB Response:** No further review required.

**4th District Review**: Sergeant reviewed the flag for non-compliance with policy for the public safety ride offered by SPO. Officer was assisting a consumer in crisis with bringing a loved one to them which would, in effect, neutralize their anxiety and allow for stabilization on-scene without involving psychiatric care. The following information was documented by PSAB staff:

"OFFICER CONDUCTED A SEARCH ON SUBJ PRIOR TO THE COURTESY RIDE (INCORRECTLY CATEGORIZED AS A PATDOWN ON THE FIC).

MM 1:00 OFFICER EXITS CRUISER AND INTRODUCES HIMSELF
MM 2:16 SEARCHES SUBJ
MM 2:40 PLACES SUBJ IN CRUISER
MM 3:38 TRANSPORTS SUBJ FROM 1500 (BLOCK OF) S. RAMPART TO 3500 GARDEN OAKS DR
MM 11:18 10-97 AT 3500 GARDEN OAKS DR W/ SUBJ
MM 11:40 REMOVES SUBJ FROM HIS CRUISER

AUDITED ON 06JUN2022/LRL"

The Sergeant reviewed the video in question and observed the Officer arrive and speak to the citizen. After he inquired as to whether the citizen had any weapons, to which he replied in the negative, the Officer informed the subject he was going to "check" him. The Officer was observed at 02:21 (via timestamp) patting the front exterior belt buckle area of the citizen's shirt. At 02:23, the officer was satisfied the subject did not have any armaments and stepped away.  After observing the two second period where the officer physically engaged with the subject, the Sergeant reviewed Chapter 1.2.4 (Search and Seizure) whereupon the following definitions were noted:

Pat-down/frisk—An external examination of the outer garments of an individual for the purpose of ensuring the individual does not possess any weapons.

Search—An inspection, examination, or viewing of persons, places, or items in which an individual has a legitimate expectation of privacy.

55

It is the view of this sergeant that the Officer performed properly and conducted a pat-down upon the subject. The definition of Pat-Down, as per departmental policy, was what was observed to have taken place. While the definition of Search lacks clarity, a Search would involve manipulation of pockets/reaching hands into pockets or under shirt collars/lifting of pant legs to view sock area for secreting items. This audit flag for non-compliance appears to be categorically false and should be removed. It should also be noted General Order 1157 which implemented Chapter 10.1 (Public Safety Rides) was not issued until July 8th, 2022. The event in question preceded issuance of the new policy by 2 months. Regardless, the Officer documented his actions appropriately in a Field Interview Card.

**PSAB Response:** ARU reviewed this incident and noted that the pat-down conducted was not in policy regarding public safety rides, nor was it in policy regarding consent to search policy. The officer did not provide reasoning for conducting a pat-down on a person not suspected of carrying weapons and not suspected of a crime. The officer did a pat-down, but never justified why he felt the person may have had a weapon.  The FIC only stated the justification was for NOPD Policy and that is not a valid reason.  When asking someone for permission to search, the officer needs the subject consent and a signed form.  No change to the scoring for this incident.

**4th District Review**: The Sergeant reviewed the flag for non-compliance with policy for the traffic stop conducted by SPO under this item number. The officer was utilizing a portable radar gun to measure vehicle speeds in his area of assignment. A vehicle was observed to be speeding and was stopped with citation issued. The following information was documented by PSAB staff:

"WHILE THE OFFICER DID GENERATE AN FIC FOR THIS TRAFFIC STOP, THE FIC LACKED DETAILS REGARDING PROBABLE CAUSE TO STOP THE VEHICLE I.E. SPEED LIMIT AND DRIVER'S SPEED."

It should be noted the citation issued (attached) shows the speed of the driver (54 mph) and the speed limit of the street where the violation occurred (35 mph). The Sergeant reviewed the Field Interview Card in question and observed the following verbiage in the reasonable suspicion section:

"THE DRIVER WAS STOPPED FOR SPEEDING....RADAR WAS USED"

The Sergeant reviewed Chapter 41.12 (Field Interview Card) and found the following paragraph subsection pertinent to this instance:  ¶12 The following information shall be required on all FICs: (h) Reason for the stop, including a clear and specific articulation of the facts creating reasonable suspicion or probable cause.

It is the view of this sergeant, based upon these definitions, that a probable cause statement should include the speed limit and the offender's speed. However, the Field Interview Card clearly states the following is required:

"Reasonable Suspicion for Stop"

In light of the fact the Field Interview Card itself requires officers to enter the Reasonable Suspicion, the articulable fact that the driver was stopped for speeding via radar satisfies the requirement as

shown on the Field Interview Card system. Since that is the minimum standard presented to officers.

27/43B – Attempted Sexual Battery, Disposition: CBA – Cleared by Arrest

The victim reported that she was sexually assaulted by a stranger while out riding her bicycle. The Officer documented this stop properly by stating his reasonable suspicion for the stop. Therefore, this flag for non-compliance should be moot.

**PSAB Response:** ARU reviewed this incident and agreed that the FIC contained sufficient reasonable suspicion.  This incident was updated from No to Compliant.

**4th District Review**: The Sergeant reviewed the flag for non-compliance with policy for the Domestic Disturbance investigated by Officers. The call was initially written up by OPCD personnel as Violation of Protective Orders. The following information was documented by PSAB staff:

"Officers were dispatched to investigate a Signal 79, relative to a call for violation of a protection order. The signal was later changed to a 103D, relative to a domestic disturbance. The officers were advised a black male was banging on his ex-girlfriend's door, and she had an active protection order against him. Upon arrival, the officers observed a male subject, later identified, standing in front of the building. Officers detained the male subject in handcuffs while the Officer went to speak to the complainant. The Officer attempted to knock on the door multiple times but were met with negative results. Dispatch did multiple call-backs but received no answer. The officer advised the subject of his Miranda rights to which he understood. The subject then went on to explain that he was not at the location to visit the complainant, but instead he was there visiting someone in a neighboring building. Officers ran the subject's name through CastNet which yielded no active warrants, just an open protective order. Due to the complainant not answering the door, no evidence to refute the subject's claim, and no probable cause to effect an arrest, the Officer released the subject without further incident.  BWC for the Officer was activated and the interaction was recorded in its entirety. It should be noted that there is no BWC footage for the other Officer."

The Sergeant reviewed the police report in this matter and found it to be articulate and met all requirements under reporting as dictated by Chapter 42.4.1. When researching the Officer's body-worn camera history, the Sergeant discovered he had labeled the video on August 25th.

**Actions taken by District:** Due to not having his video labeled prior to the audit, the Sergeant issued a written counseling via supervisor feedback log.

**PSAB Response:** No further review required.

**5th District Review: SSA Scorecard - BWC Complete**. On 2/21/22, the Officer arrested a male subject at 8:44 pm. BWC was activated before talking to the complainant at 1:00. After reading the results from the score card, it is documented that the Officer deactivated his camera before the transfer was complete at central lock-up. The Officer and the arrested were allowed into the holding area, where an OPCSO nurse retrieved booking paperwork from the Officer. The nurse began to ask the arrested subject questions at marker time 2:17:16. After conducting her medical interview, the nurse

medically cleared the subject and allowed the subject to enter the central lock up at 2:18:37. OPCSO Deputy asked the subject to stand near the wall and requested the Officer to remove the handcuffs, and the deputy began to search the arrested subject at 2:19:19. While the OPCSO Deputy was still searching the subject, the Officer deactivated his camera at 2:19:36 which was before the Officer left central lock-up or marked up the call.

The Officer manually deactivated his BWC (body-worn camera) before the complete release of the arrested subject and before "marking up the final disposition of the item," as stated in Chapter 41.3.10, Title: Body–Worn Camera ("BWC"), paragraph 16: Cessation of Recording. Cessation of Recording: 16. The BWC shall be utilized by any Department member assigned this device during all investigative or enforcement contacts. Once the BWC system is activated, it shall remain on and shall not be turned off until an investigative or enforcement contact or incident has concluded, including marking up the final disposition of the item and any supervisor-approved signal changes. For purposes of this section, the conclusion of an incident has occurred when an officer has terminated contact with an individual, cleared the scene of a reported incident, and has completed the transport of a civilian or an arrestee.

On 3/23/22, Officer arrested a female subject at 3:23 am. BWC was activated before talking to the complainant at 0:59 with his overhead police lights. After reading the results from the score card, it is documented that the Officer deactivated the camera too early while at lock-up. Officer and the arrested were allowed into the holding area where an OPCSO nurse was at 2:20:09. The nurse requested the officer and arrested subject to enter central lock-up at 2:22:21. OPCSO Deputy retrieved arrest paperwork from the Officer at 2:22:26. While the OPCSO Deputy was processing paperwork and the nurse still was conducting her medical interview, the Officer deactivated his camera at 2:24:23 which was before the arrested subject was medically cleared and before the Officer removed his handcuffs. The Officer manually deactivated his BWC (body-worn camera) before the complete release of the arrested subject and before "marking up the final disposition of the item," as stated in Chapter 41.3.10, Title: Body–Worn Camera ("BWC"), paragraph 16: Cessation of Recording. Cessation of Recording: 16. The BWC shall be utilized by any Department member assigned this device during all investigative or enforcement contacts. Once the BWC system is activated, it shall remain on and shall not be turned off until an investigative or enforcement contact or incident has concluded, including marking up the final disposition of the item and any supervisor-approved signal changes. For purposes of this section, the conclusion of an incident has occurred when an officer has terminated contact with an individual, cleared the scene of a reported incident, and has completed the transport of a civilian or an arrestee.

**Actions taken by District:** Sergeant spoke with the C-Platoon Commander who conducted roll call training on Wednesday, August 24, 2022, regarding NOPD Chapter 41.3.10: Body–Worn Camera ("BWC").  Sergeant spoke with DCAT Supervisor who conducted roll call training on Monday, August 22, 2022, regarding NOPD Chapter 41.3.10: Body–Worn Camera ("BWC").

**PSAB Response:** No further review required.

**5th District Review: SSA Scorecard- FIC did not exist.** After reading the results from the score card, it is documented that another Officer did not complete an FIC and/or an EPR for this incident. On

5/26/2022 at 3:29 pm, the Officer initiates a traffic stop and manually activates her lights, siren, and body-worn camera. The Officer advises the dispatcher over the NOPD Channel 5 radio station about the traffic stop. The officer approaches the vehicle and introduces herself per policy. She asks the driver about her well-being because she was swerving and almost hit several cars. The officer elected to contact EMS for medical assistance. EMS arrived on the scene and determined the driver was not medically healthy to drive because her sugar was too high. She had diabetes and needed to be transported to the hospital for medical treatment. The Officer secured the driver's vehicle and provided the driver with the keys.

The Officer ended the call by advising the dispatcher to change the signal from a traffic stop to a medical incident. However, the officer conducted a traffic stop initially and should have completed an FIC.

**Actions taken by District:** The Sergeant notified the Lieutenant who conducted a roll call on completing FIC as it pertains to policy Chapter 41.12: Field Interview Cards, paragraph 2: The investigating officer of the primary unit on the scene shall document the following occurrences in a Departmental FIC whether or not a report, citation or summons is completed: (a) Stopping a vehicle to issue a traffic citation (see Chapter 1.2.4.1 – Stops, Chapter 1.2.4.3 – Vehicle Stops and Chapter 61.3 – Traffic Citations). (b) Stopping a vehicle to issue a verbal traffic warning (see Chapter 1.2.4.1 – Stops, Chapter 1.2.4.3 – Vehicle Stops, and Chapter 61.3 – Traffic Citations).

The auditor's notes documented that the officer did not complete an FIC and/or an EPR for this incident. In policy Chapter 82.1: Report Preparation, paragraph 10: Required Reporting. Completed incident reports (EPR) are required in all of the following situations as specifically covered herein or by other Chapters: (a) Criminal activity, (b) non-criminal activity, (c) Death reports, (d) Injury or damage caused by City personnel, or (e) Certain miscellaneous injuries. 11. The above reporting requirements are not intended to be all-inclusive. A supervisor may direct an employee to document any incident he/she deems necessary.

**PSAB Response:** No further review required.

**5th District Review: SSA Scorecard - FIC was not submitted by ETOD.**

**Actions taken by District:** The Sergeant spoke with the Lieutenant who met with his supervisors and conducted in-house training regarding policy Chapter 41.12 Field Interview Cards, paragraph 25: Supervisors Shall Approve All Fic Documentation. After receiving a submitted FIC, a supervisor of the submitting officer's unit shall review the FIC to determine if each stop, frisk, or search was supported by documentation of reasonable suspicion or probable cause; whether it is consistent with NOPD regulations, policy, and federal and state law; and whether it showed a need for corrective action or review of agency policy, strategy, tactics, or training. Supervisors shall make every reasonable effort to complete this review within 12 hours of receiving the submitted FIC and, in all cases, shall complete the review within 72 hours.

**PSAB Response:** No further review required.

59

**5th District Review: SSA Scorecard- Subjects - Officer had RS/PC for stop**, and **Officer adequately documented RS/PC to stop**. On 3/15/22 at 4:47 am, Officer investigated an armed carjacking. After further investigation, the vehicle was located, and the victim was provided a **courtesy ride**. The investigating officer of the primary unit on the scene shall document the following occurrences in a Departmental FIC whether or not a report, citation, or summons is completed: i. Field Interview Card (FIC) as required per Chapter 41.12: Field Interview Cards, paragraph 2 (I). Providing a public safety ride (see Chapter 10.1 – Public Safety Rides). Public Safety Ride – the voluntary transport of a person or persons from one location to another as a public service, for example, when giving a stranded tourist a ride or when transporting someone who has been involved in an investigative stop or calls for service which has already been concluded for their safety. Public Safety rides are not part of detention and may be refused for any reason. There was no policy in chapter 10.1, public safety rides. However, the policy was updated on 7/10/2022, Chapter 10.1, Public Safety Rides, which states unless there is reasonable suspicion supporting a stop and reasonable suspicion that an individual is armed and dangerous, officers shall not conduct a pat down of an individual before providing a public safety ride. Stops and pat downs shall only be conducted in accordance with Chapter 1.2.4 – Search and Seizure. The policy was updated after the FIC was completed.

**PSAB Response:** No further review required.

**5th District Review: Arrest Scorecard- Subjects - Miranda Warnings Given if required**. On 5/30/22 at 4:29 pm, Officer handled a call for service for a wanted subject. The officer was able to identify the subject based on the description provided by the dispatcher. NCIC verified the warrant. After reviewing the body-worn camera it was discovered that the Officer did not read the subject his rights per policy. Chapter 1.9.1: Miranda Rights, paragraph 2: Officers shall advise suspects of their Miranda Rights at the time of arrest or before any custodial interrogation.

**Actions taken by District:** Sergeant spoke with the Lieutenant who conducted roll training.

**PSAB Response:** No further review required.

**5th District Review: SSA Scorecard- Incident (Consent to Search): FICs submitted by ETOD, Videos and reports are consistent.** Officer responded to a domestic call for service where she had to arrest a male subject. After reading the results from the score card, it is documented that the Officer completed an FIC and, on the FIC, the "Consent to Search" option was selected. However, a consent to search did not occur. The Sergeant reviewed the FIC; on the FIC, it was documented that "no" consent to search was conducted. However, another field popped up when the question "was subject searched" was answered as yes. The "basis for the search" with titles "consent to search," "warrant," "inventory," "incident to arrest," and "exigent circumstances."

*In error, Officer clicked the "consent to search" field and should have clicked the field "incident to arrest."*

Officer investigated a mental patient incident on 4/14/2022 at 5:14 am. Officer completed a CIT form before ETOD.

*Due to human error, Officer forgot to complete the FIC before ETOD.*

**Actions taken by District:** On 4/20/2022, the Sergeant notified the C-Platoon Sergeant, informing the Officer to complete the FIC. The FIC was entered and approved on 4/20/2022. The Sergeant advised that he conducted roll call training on policy Chapter 41.12: Field Interview Cards, paragraph 9. All FIC entries shall be completed before the officer's tour of duty.

**PSAB Response:** No further review required.

**5ᵗʰ District Review: Arrest Scorecard- Subjects (Consent to Search): Miranda Warning Given, if required.** On 4/14/22 at 5:14 am, Officer investigated a mental patient incident on 4/14/2022 at 5:14 am. Officer completed a CIT form before ETOD. After reading the results from the score card, it is documented that the Officer Miranda Warning was **not required**. Officer received OPC papers and handcuffed the person with a mental health condition to the rear, double-locked. Female Officer searched the female mental patient before transporting the female mental patient to Children's Hospital as required by policy. In the audit, it was discovered that the male Officer did not read the female mental patient's Miranda Rights. However, the incident was not an arrest and did not require Miranda Warnings per policy.
Chapter 1.9.1: Miranda Rights, paragraph 2: Officers shall advise suspects of their Miranda Rights at the time of arrest or before any custodial interrogation. Chapter 41.25, Crisis Intervention, paragraph 33 & 50. Paragraph 33. An officer can arrest an individual in crisis only when the officer has probable cause to believe the individual has committed a crime. Having a mental illness or developmental disability is not a crime, and no person should be arrested for behavioral manifestations that are not criminal. Order Of Protective Custody and Court Order for Forced Entry: when the coroner has granted an OPC and has credible information that the subject of the OPC will not comply and will refuse or obstruct admittance to the coroner or officers assisting the coroner in attempting to take the subject into protective custody, the coroner may apply for, and be granted a Court Order pursuant to RS 28:53.2 (G). The signed Court Order allows for the coroner and those officers assisting to utilize "forced entry" to execute the OPC. No search warrant is required. The requirements for this action are: (a) A signed, valid OPC. (b) A signed Court Order, requested by the coroner, under RS 28:53 authorizing "forced entry." (c) The coroner or his/her representative MUST be on-scene, and the police are present only to "assist" in serving the OPC.
**PSAB Response:** After further review, ARU has amended the entry from No to Not Applicable. The scorecard has been updated.

**5ᵗʰ District Review: Probation and Parole - SSA Scorecard- BWC Complete..** After reading the results from the score card, it is documented that the Officer activated his BWC late when he arrived on the scene. The Sergeant reviews the Officer's BWC s starting at 3:02 pm on 5/17/22 when he starts talking back towards his vehicle. On 5/17/22 at 2:58 pm, the Officer's ICC front camera starts where the officer is unholstering his firearm to assist a DIU unit for an armed suspect in the parking lot.

**Actions taken by District:** The Sergeant notified the Sergeant who conducted roll call training on Chapter 41.3.10: Body-Worn Camera (BWC), paragraph 11. Required Activation of The BWC 11. This policy is intended to achieve an appropriate balance between the benefits of BWC devices and civilians' reasonable expectations of privacy. The BWC shall be manually only activated for legitimate

61

law enforcement purposes. Manual activation of the BWC is required for the following situations: (a) All field contacts involving actual or potential criminal conduct within video or audio range; (b) Traffic stops (to include, but not limited to, traffic violations, stranded motorist assistance and all crime interdiction stops); (c) Emergency responses; (d) Vehicle pursuits; (e) Suspicious vehicles; (f) Arrests and transports; (g) Vehicle searches; (h) Consent to search; (i) Physical or verbal confrontations or use of force; (j) Pedestrian checks/Terry Stops; (k) DWI investigations, including field sobriety tests; (l) Domestic violence calls; (m) Statements made by individuals in the course of an investigation or complaint; (n) Advisements of Miranda rights; (o) Seizure of evidence; (p) Swat rolls; (q) Execution of all Search Warrants (including No-Knock) and Arrest Warrants; (r) Any other contact that becomes adversarial after the initial contact in a situation that would not otherwise require recording; (s) Engages in mass civil demonstrations and / or riot control; (t) Any other legitimate law enforcement contact where the officer believes that a recording of an incident would be appropriate; and (u) All calls for service.

After reading the results from the score card, it is documented that the Officer deactivates his BWC at central lockup before the transfer of custody is complete. Officer and the arrested were allowed into the holding area, where an OPCSO nurse retrieved booking paperwork from the Officer. The nurse began to ask the arrested subject questions at marker time 2:17:16. After conducting her medical interview, the nurse medically cleared the subject and allowed the subject to enter the central lock up at 2:18:37. OPCSO Deputy asked the subject to stand near the wall and requested the Officer to remove the handcuffs, and the deputy began to search the arrested subject at 2:19:19. While the OPCSO Deputy was still searching the subject, the Officer deactivated his camera at 2:19:36 which was before the Officer left central lock-up or marked up the call. The Officer manually deactivated his BWC (body-worn camera) before the complete release of the arrested subject and before "marking up the final disposition of the item," as stated in Chapter 41.3.10, Title: Body–Worn Camera ("BWC"), paragraph 16: Cessation of Recording. Cessation of Recording: 16. The BWC shall be utilized by any Department member assigned this device during all investigative or enforcement contacts. Once the BWC system is activated, it shall remain on and shall not be turned off until an investigative or enforcement contact or incident has concluded, including marking up the final disposition of the item and any supervisor-approved signal changes. For purposes of this section, the conclusion of an incident has occurred when an officer has terminated contact with an individual, cleared the scene of a reported incident, and has completed the transport of a civilian or an arrestee.

**Actions taken by District:** The Sergeant spoke with the C-Platoon Commander Lt. who conducted roll call training on Wednesday, August 24, 2022, regarding NOPD Chapter 41.3.10: Body–Worn Camera ("BWC").

**PSAB Response:** No further review required.

**5th District Review: SSA Scorecard- Procedural Justice (Probation & Parole) Officers introduced themselves**.  After reading the results from the scorecard, it is documented that the Officer did not introduce himself.  On 1/14/22 at 2:39 am, the Officer responded to a call for service and arrested the male subject for an outstanding warrant. The male subject was detained before being arrested because he was agitated and appeared to be attempting to leave the location by opening the door of a blue Honda civic parked in the 1500 block of Gallier Street.

On the other Officer's camera footage labeled under the initial dispatched call at marker 2:03, Officer identified himself and the other Officer. After reviewing the Officer's BWC at the marker, Sergeant reviewed all the officer's body-worn camera footage.

**PSAB Response:** After reviewing BWC, ARU has updated the audit from No to Compliant.  It was heard on BWC at 1:30 the officer identified himself.

## Appendix A – SSAPJ Audit Forms

SSAPJ Audit Forms:

 **SSAPJ Incident Audit Form**

| Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review |
|---------|---------|-----|-----|------|-------|-------|-------|-------|------|-------|--------|

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

| Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review |
|---------|---------|-----|-----|------|-------|-------|-------|-------|------|-------|--------|

### Use?

If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

### Sample/Distribution Identifying Information

Field names (column names) are in grey text.

| Pick your name below. | In which sample is this incident? | Enter the Item # | If an FIC exists, enter the FIC ID # | If an EPR exists, enter the EPR ID # |
|---|---|---|---|---|
| Created By | Sample Type | Item Number | FIC ID | EPR ID |

Created By:
Tim Lindsey
Faith Thornton
Charmel Peterson
Betty Johnson
Michael Sarver
Matt Segraves

Sample Type:
Stop
Search
Arrest

What is the reporting year, month, week, district, and platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
| | Nov | | 6 | Mounted |
| | Dec | | 8 | DWI |
| | Jan | | 7 | K9 |
| | Feb | | ISB | MC1 MC2 |
| | Mar | | MSB | VOWS |

## Known to Be Materially False

1   CD 124:  If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. CD 124 reads: NOPD officers shall not use or rely on information known to be materially false or incorrect in effectuating an investigatory stop or detention. Materially false information could be planted evidence or results from running a different plate.

## Stops Scorecard

2   If required, does an FIC exist for this stop?

CD 126, 139

See Ch. 41.12 FICs for guidance on when FICs are required.

**FIC Exists If required**

| Yes |
| No |
| FIC Not Required |

If the FIC is under a different item number than the CAD item number, please record the itemnumber on the FIC.

**FIC Item if Different than CAD**

3   Did the officer submit the FIC to his/her supervisor by the end of the shift?

Review the BWC recording time and the FIC Submit Date. If a BWC does not exist, review the CAD times. For the purposes of this question, the end of the shift is when the officer left work.

[The FIC Submit date reflects the most recent submit date. When an FIC is kicked-back and an officer updates it and re-submits it, we lose the first submit date.]

CD 150, Ch. 41.12 P9

**FIC Submitted By ETOD**

| Yes |
| No |
| No FIC |

4   Did the supervisor review the FIC within 72 hours? For the purposes of this question use the Submit Date and the Approval Date.

If the FIC is currently disapproved, use the Supervisor Last Modified Date.

CD 150 [modified interpretation, CD amendment likely], Ch. 41.12 P15

**FIC Approved in 72Hrs**

| Yes |
| No |
| No FIC |

## Boilerplate Language

5   In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest?

CD 123, 145; Ch. 41.12 P1, 1.2.4 P16, 1.9 P14

Officers cannot use "boilerplate" or "pat" language, such as "traffic violation" or "officer safety" when explaining their actions.

Choose "Yes" if the officer did NOT use any boilerplate language. Choose "No" if the officer used boilerplate language.

**No Boilerplate**

| Yes |
| No |
| NA No FIC/EPR |

If you selected "No", please record the boilerplate language in the FIC:

Boilerplate Explanation

65

6    Are the video(s) and reports significantly consistent?

Videos and Reports Are Consistent

If there is anything you see on video that proves as aspect of the report to be inaccurate, choose "No."

Use the Inconstency Categories below like a checklist. Check that each category is reported accurately.

CD 123; Ch. 1.9 P14; Ch 1.2.4 P63,65; Ch 82.1 P7-8; Rule 2 P3B

| |
|---|
| Yes |
| No |
| NA No FIC/EPR |
| NA No Video |

If you chose "No," indicating something about the report is inaccurate, please explain below, including the relevant timestamp of the videos. Please list every inaccuracy.

Discrepancy Explanation

| |
|---|
| |

Please pick all the inconsistency categories that apply. These categories should match your discrepancy explanation above.

Inconsistency Categories

- ☐ Passenger Info
- ☐ Search Info
- ☐ Subject Info
- ☐ Exit Vehicle Info
- ☐ Result Info
- ☐ Reason for Stop Info
- ☐ Evidence Info
- ☐ Vehicle Description Info
- ☐ Consent to Search not Documented
- ☐ Other

7    Do video or reports show the officer entered a residence to make the arrest?

See Chapter 1.9 paragraphs 27-29 for guidance.

Arrest in Residence

| |
|---|
| Yes |
| No |
| NA - No Arrest |

If yes, which of the following apply?

Arrest in Residence Circumstances

| |
|---|
| Consent |
| Exigent Circumstances |
| Warrant |
| None of the above (Not Compliant) |
| NA - Not in Residence |
| NA - No Arrest |

8 A   Do video or reports suggest a supervisor required to make the scene?

CD 143; Ch. 1.9 P9, 12

If the incident met the narcotics arrests exception in Ch. 1.9, choose "No."

Narcotics arrest exception requirements:
(a) The arrest only involved narcotics;
(b) The suspect was relocated to the station to test the narcotics;
(c) The supervisor was present at the station to review the arrest recommendation;
(d) And there were no injuries involved.

SupervisorRequiredtoMakeScene

| |
|---|
| ▮▮▮▮▮▮▮▮▮▮▮ |
| Yes |
| No |
| No - Narcotics Exception |
| NA - No Arrest |
| Unknown/DV |

8 B   If the supervisor was required to make the scene, please pick the reason below.

Reason Supe required to make scene

| |
|---|
| One or more charges can be charged as a felony. Look up the charge and see if it includes "with hard labor" or "with or without hard labor" |
| An officer used L2 or L3 force |
| Custodial arrest for crossing or traversing a police cordon(Municipal Code §54-442) or resisting an officer (Municipal Code § 54-441) |
| Custodial arrest and the most serious violation is vehicle infraction or simple drug possession |
| Custodial arrest that is not in FQ or CBD & the charge is Disturbing the Peace, Criminal Trespass, Obstructing Public Passages, or Begging/Vagrancy |
| Unknown/DV |

8 C   If the supervisor is required to make scene, does video show the supervisor made the scene?

CD 143; Ch. 1.9 P9, 12

VideoShowsSupeMadeScene

| |
|---|
| ▮▮▮▮▮▮▮▮▮▮▮ |
| Yes |
| No |
| NA - Not Required |
| NA - No Arrest |
| NA - No Video |
| NA - Unknown/DV |

66

We use these questions to ensure our universe of uses of force is complete. Reportable uses of force identified here will be included in the use of force audit.

**9**   Did any officer use reportable force during this officer-civilian interaction?

UseOfForce

▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No
No Video

**10**   Is there a corresponding Blue Team Report? There likely won't be an APPROVED Blue Team report. But there should be an incomplete one.

[Because IAPro and BlueTeam are down and MAX is down, check the FTN log to see if a corresponding use of force report has been initiated.]

If you chose "No," indicating you believe this incident involves unreported reportable force, notify your supervisor.

ForceReported

▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No
No Use of Force
No Video

**11**   If an officer used reportable force, give the video details including the min/sec mark of the force

UoFVidDetails

**12**   Does the incident involve a strip or cavity search?

Strip Cavity Search Occurred

▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No

We use these questions to ensure our universes of strip and cavity searches are complete. Such searches identified here will be included in the strip/cavity audit.

**13**   If yes, is the strip or cavity search documented in the FIC or EPR?

If you chose "No," inidicating this incident involved an undocumented strip or cavity search, notify your supervisor.

Strip Cavity Documented

▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No
NA-No Strip/Cavity

## Consent to Search Scorecard

**14**   Did this incident involve a consent to search?

Sometimes officers will ask for consent when they do not need consent. If the officer had another valid legal basis to perform the search, it was not a search by consent.

Consent Search Occurred

▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No

**15**   If yes, is the consent to search documented in an FIC or EPR?

If you choose "No," indicating this incident involved an undocument consent to search, notify your supervisor.

Consent Search Documented

▓▓▓▓▓▓▓▓▓▓▓▓
Yes
No
NA-No Consent Search

67

## Evidence

**16**  If evidence was seized, is there a CE+P receipt?

A CE+P receipt should be attached to an EPR. They can also be in DTS.

CD 150; Ch 84.1 P8, 24

Evidence Documented

Yes
No
No Evidence Seized
No EPR

---

**17**  If evidence was seized, was it submitted to CE+P before the next Code 1 call the officer(s) handled or ETOD, whichever is first?  Review the Chain of Custody History report in BEAST and the unit's CAD activity. The date/time the item was submitted into property must be before the unit's next Code 1 arrival time or ETOD, whichever is first.

[Audit method incomplete for evidence placed in dropboxes.]

CD 150

Evidence Submitted Immediately

Yes
No
No Evidence Seized

---

**18**  If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video?

CD 123; Ch 82.1 P7-8; RS 14-134.2, 14-130.1; Rule 2 P3B

Evidence Description Matches Video

Yes
No
No Evidence Seized
CE+P Receipt Not Available

## Supervisory Review

Because this section pertains to the entire incident, complete the rest of this form and the subject forms prior to completing this section.

**19**  Did you find any non-compliance related to this incident?

Non-Compliance Should Have Been Addressed

Yes
No

**20**  The following questions A-E determine whether a supervisor knew or should have known about the non-compliance:

**20 A**  Is there non-compliance because there is missing documentation (FIC, EPR, etc.)?

Missing Documentation

Yes
No
NA-Full Compliance

---

**20 B**  Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved?

If a supervisor needed to watch video to know about the non-compliance, choose "No."

Non-compliance Evident in Approved Reports

Yes
No
NA-Full Compliance

---

**20 C**  Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene?

Supervisor On Scene During Non-Compliance

Yes
No
NA-Full Compliance

---

**20 D**  Was a supervisor required to watch the video?

Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual.

Supervisor Required to Watch Video

Yes
No
NA-Full Compliance

---

**20 E**  Did the supervisor watch the video?  Review the audit trail for the videos in Evidence.com.

Supervisor Reviewed Video

Yes
No
NA-Full Compliance

**20 F**  Did a supervisor know or should have known about the non-compliance?

Choose "Yes" if any of A-E are "Yes."

Supervisor Aware or Should Have Been Aware of Non-compliance

- Yes
- No
- NA-Full Compliance

---

**21**  Please list the SFLIDs for any corresponding SFLs or Control numbers for any corresponding FDIs?

SFLIDs-CNTRL Nos

---

**22**  Did a supervisor address all the non-compliance you found related to this incident?

CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C

If a corresponding SFL or FDI exists but does not cover all non-compliance, please explain:

Non-Compliance Addressed by Supervisor

- Yes
- No
- NA - Full Compliance

Supervisory Review Comments

---

### Procedural Justice

**23**  Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop?

CD 181; Ch 41.13 P9A; Civil Service Rule 3?

Enter "No," if the officer(s) should have been more professional or courteous.

If you selected "No", please explain::

Reasonably Courteous

- Yes
- No
- NA - No Video

NotCourteousEnoughExplanation

---

**24**  If reasonably possible, does video show the officer verbally identify him/herself as a soon as practical?

CD 181; Ch 41.13 P9B

Identified

- Yes
- No
- NA - No Video

69

| 25 | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical?<br><br>CD 181; Ch 41.13 P9B | Explained<br><br>Yes<br>No<br>NA - No Video |
|----|----|----|
| 26 | Does video show the office allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | Subject Could Explain<br><br>Yes<br>No<br>NA - No Video |
| 27 | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them?<br><br>Ch 41.13 P9E | Responded to Subjects Qs<br><br>Yes<br>No<br>NA - No Video<br>NA - No Qs |
| 28 | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | Conclusion<br><br>Yes<br>No<br>NA - No Video |
| 29 | Does video show the stop was no longer than necessary to take appropriate action?<br><br>CD 181, Ch 1.2.4.1 P20, Ch 1.2.4.3 P8; ; Ch 41.13 P9C<br><br>Constitutional law requires that stops are no longer than necessary to carry out the purpose of the stop. See Rodriguez v. United States, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ("If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'. . . [A] traffic stop 'prolonged beyond' that point is 'unlawful.'"). | Stop No Longer than Necessary<br><br>Yes<br>No<br>NA - No Video |

## Flag for Academy Training

| | | |
|---|---|---|
| 30 A | Would this make a good training video?: | FlagforAcademy |

> Yes
> No
> No Video

| | | |
|---|---|---|
| 30 B | If you are flagging the video for the academy, please identify the exact portion of the video you think the academy should consider using. | FlagforAcademyBWCInfo |

| | | |
|---|---|---|
| 30 C | If you want to flag this video for Academy, please select your reason(s): | FlagForAcademyReason |

> Video Shows Exemplary Police Actions
> Video Shows Non-Exemplary Police Actions
> Use of Force Tactics
> Handcuffing
> Arrest and Search
> Other

## EPIC

| | | |
|---|---|---|
| 31 | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Doing something encouraged by NOPD's EPIC program?) | EPICIncident |

> Yes
> No
> No Video

If yes please explain, including the video label and the minute of the example:

EPICExplain

## Video Coverage

| | | |
|---|---|---|
| 32 | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | # of such officers who had complete video (numerator) |
| | | CompleteVidNum |
| | | / |
| | Ch 41.3.10 P11 | # of such officers (denominator) |
| | | CompleteVidDenom |

List the officers you included in the denominator. And describe any incomplete or missing video.

CompleteVidExplain

## Video Info

| | | |
|---|---|---|
| 33 | To help someone review your work, please record below the officer name and BWC ID (usually an Item #) for the best video coverage of the incident. Include minutes if the video is long and the important parts are hard to find. If L3 is critical, please include A# and starting time. If you did not watch all the videos, record the minutes of the videos you watched. | |

Video Info



# SSAPJ Subject Audit Form

**Instructions** | Identifying Info | Subject Info | Stop | Searches | Arrests | Miscellaneous | Immigration | LGBTQ | Review

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

***Complete this form for each subject stopped, searched, or arrested for every incident in the Stop, Search or Arrest sample. If the subject was not documented in the reports, complete the fields based on your observations.***

A stopped subject is:
• a suspect in an investigation with whom an officer is interacting in person
• someone an officer attempts to identify and who is not a victim or witness

| Reviewing Auditor | In which sample is this incident? | Enter the Item # | Enter FIC ID | Enter the EPR ID # |
|---|---|---|---|---|
| Reviewing Auditor | Sample Type | Item Number | FIC ID | EPR ID |
| Tim Lindsey | | | | |
| Faith Thornton | Stop | | | |
| Charmel Peterson | Search | | | |
| Betty Johnson | Arrest | | | |
| Michael Sarver | | | | |
| Matt Segraves | | | | |

72

What is the reporting year, month, week, district, platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
| | Nov | | 6 | Mounted |
| | Dec | | 8 | DWI |
| | Jan | | 7 | K9 |
| | Feb | | ISB | MC1 MC2 |
| | Mar | | MSB | VOWS |
| | Apr | | Other | TIGER |
| | May | | SOD | GANG |
| | | | | Other |

## Subject Info

If the subject was not documented in the reports, complete the fields based on your observations.

Subject First

Subject Last

| Subject Sex | Subject Race-Ethnicity |
|---|---|
| Male | Black/African-American |
| Female | White |
| Unknown | Hispanic/Latino |
| | Asian |
| | Amer.Ind./Alaskan Nat. |
| | Unknown |

Subject DOB          -And-          Event Date          -Or-          Subject Age

73

## Subject Stop

**1 A**  Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject?

RS/PC to Stop

Ch. 1.2.4.1, Ch 41.13 P10 and others

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect

Reasonable Suspicion (Definition)—Articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect that criminal activity has been or is about to be committed.. The standard for reasonable suspicion is less than probable cause but must be more than a hunch or a subjective feeling.

Probable Cause (Definition)—The facts and circumstances known to the officer at the time that would justify a reasonable person in believing the suspect committed or was committing an offense.

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

**1 B**  If you chose "No" for 1 A, therefore indicating there was no reasonable suspicion or probable cause to stop the subject, please explain:

No RS/PC to Stop Comments

**2 A**  Does the report clearly articulate reasonable suspicion or probable cause to stop this subject?

RS/PC to Stop in Report

Refer to guidance in 1 A. Additionally, **if** the officer relied on boilerplate language, choose "No."

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect
No-No FIC/EPR

CD 122, 123, 126**,** 149;  Ch 41.13 P10; Ch 41.12 P12H, Ch 1.9 P14

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

**2 B**  If you chose "No" for 2 A, therefore indicating the officer did not document reasonable suspicion or probable cause to stop this subject, please explain:

No RS/PC to Stop in Report Comments

**3 A**  If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC?

Reason for Handcuffs Documented

Ch. 1.3.1.1 P25

Yes
No
No-No FIC
NA-No Handcuffs
NA-FIC Not Required

If the FIC checkbox for "Arrest Made" under "Actions Taken" is checked and the video or FIC documents that the video was taken to lock-up, choose "Yes."

If an FIC does not exist and one was required per Ch 41.12, choose "No-No FIC."

If you chose "Yes," what was the reason for handcuffing documented in the FIC?

Reason for Handcuffs Text

74

**3 B**  If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? Record compliance with discretionary and mandatory handcuffing requirements separately.

Ch. 1.3.1.1

See Ch. 1.3.1.1 P 12, 13, 22 for guidance.  These paragraphs allow an officer to handcuff a subject if one of the following are true:

• the officer intended to book the subject (take to lock-up)
• the subject resisted detention
• the subject posed a safety concern
• the subject posed a flight concern, or
• the subject posed an interference concern.

However, also see P 30-41 for special circumstances under which subjects may not be handcuffed.

If based on your understanding of Ch 1.3.1.1 you think the subject was handcuffed in violation of policy, choose "No" and explain below. If you think the handcuffing was within policy, choose "Yes" and explain below.

Handcuffs Within Policy Comments

Discretionary Handcuffs Within Policy

Yes
No
No Handcuffs

Mandatory Handcuffs Within Policy

Yes
No
No Handcuffs

75

## Subject Searches

**4**  Based on all the evidence availabe to you, did the officer(s) have a valid legal basis to search the subject?

Ch. 1.2.4 P1

An officer must have a legal reason to stop a subject and a legal reason to search a subject in order to search a subject.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

If a search of a vehicle occurs, most of the time it will make the most sense to include the search on the driver's audit form. There may be scenarios in which it makes more sense to include the search on a passenger's audit form.

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance. Hypothetical text: "Vehicle Exception/Pat Down/Consent to Search Person/Search Incident to Arrest. There does not appear to be probable cause to justify the vehicle exception to the warrant requirement."

Enter the number of searches conducted on this subject and this subject's property that had a valid legal basis.

Search Legal Numerator

[ ]

/

Enter the number searches conducted on this subject and this subject's property.

Search Legal Denominator

[ ]

Search Legal Comments

[ ]

**5**  Does the report document a valid legal basis for every search of this subject?

CD 149; Ch 41.12 P12I-L; Ch 1.2.4 P62A; Ch 82.1 P4

If the FIC indicates a pat down occurred the justification for the pat down must give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

See guidance above for vehicle searches.

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance.

Enter the number of searches conducted on th subject and this subject's property for which th FIC

Reason to Search in Report Numerator

[ ]

/

Enter the number of searches conducted on th subject and this subject's property.

Reason to Search in Report Denominator

[ ]

Reason to Search in Report Comments

[ ]

76

6   If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box?

PatDownJustification

Ch 41.12 P12J

Yes
No
NA-No Pat Down

If one of the reasons the officer conducted the pat down was for contraband, choose "No."

If you chose "No" for "Justification Specifies Armed and Dangerous," please pick a noncompliant category. Leave blank if you chose "Yes."

PatDownNotCompliantCat

Justification Insufficient
For More Than Weapons
Justification Insufficient & For more than Weapons

7   Was this subject on parole or probation?

Search Subject on Probation or Parole

Use the spreadsheet provided by the corrections department. Search by subject name, demographics, and address.

Yes
No
Subject Not Searched

8   Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff?

Supervisor Approved Gist Prior to Booking

[need to verify ability to audit]

CD 145; Ch 1.9 P13,49-50

Yes
No
NA-Existing Warrant
Subject Not Arrested

9   Based on all the evidence available to you, did the officer have probable cause to arrest this subject?

OfficerHadPCtoArrest

CD 141; Ch 1.9 P1

Yes
No
Subject Not Arrested

Is at least one charge good? Do you believe:
-the officer had a legal reason to stop the subject,
-the officer had a legal reason to search the subject, if relevant to the charge,
-and the facts and circumstances known to the officer at the time would justify a reasonable person in believing the suspect committed or was committing an offense?

Please explain PC for the arrest or the lack thereof.

OfficerHadPCtoArrest Comments

10  Did the officer clearly document the probable cause in the report (FIC or EPR)?
In other words, does the report give the facts and circumstances known to the officer at the time which would justify a reasonable person in believing the suspect committed or was committing an offense?

PC Clearly Articulated

Yes
No
Subject Not Arrested

The report must also clearly articulate a legal reason to stop the subject, and a legal reason to search the subject, if a search was relevant to the arrest charge.

Ch 1.9 P14; Ch 82.1 P4; Ch 41.12 P15

Please explain PC for the arrest or the lack th as articulated in the report

PC Clearly Articulated Comments

77

## Subject Miscellaneous

**11**   Did the officer use their discretion to give the subject a break?

Break Given

| |
|---|
| Yes |
| No |
| No Video |
| NA-No Crime |

Just because an officer checks the verbal warning box in the stop result section of the FIC, doesn't mean a break was given. There must be an offense for which the officer chooses not to cite, summons, or arrest.

If the officer gave this subject a break, please explain what officer could have done but decided not to.

Break Given Explain

| |
|---|
| |

**12**   Did the officer run the subject's ID?:

ID Check

| |
|---|
| Yes |
| No |
| No Video |
| The Offcer did not have a chance to |

**13**   Did the officer request translation services, if needed?

LEP

| |
|---|
| Yes |
| No |
| No Video |
| No Translation Needed |
| Flag |

**15**   Did the officer give Miranda Rights, If required?

Miranda Given, If Required

| |
|---|
| Yes |
| No |
| NA |

Officers shall advise suspects of their Miranda Rights at the time of arrest or prior to any custodial interrogation.  See Chapter: 1.9.1;

Note: Miranda does not apply to roadside questioning of a stopped motorist or a person briefly detained on the street under a Terry stop.

**Previous Page**          **Next Page**

78

**SUBJECT
IMMIGRATION**

16 Was the subject arrested because of, or in part due to the subject's immigration status?

StopImmigrationStatus

Find items ▾

17 Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question?

QuestionedImmigrationStatus

Find items ▾

ImmigrationComments

## Subject LGBTQ

**16**  Did the officer say something that is possibly offensive about/to LGBTQ individuals?

OfficerCommentLGBTQ

Yes
No
No Video

**17**  Did the officer address the subject by their chosen name, title, and pronoun?

OfficerAddressLGBTQ

Yes
No
Gender Identity Unknown
No Video

LGBTQComments:

#Name?

**SUBJECT EXIT VEHICLE**

Did an officer require this subject to exit a vehicle?

Required to Exit Vehicle

Find items ⌄

If you chose yes for "Required to Exit Vehicle", did an officer document the justification to require this subject to exit the vehicle in the FIC?

Vehicle Exit Justification Documented

Find items ⌄

If you chose yes for Vehicle Exit Justification Documented, is the justification specific to this subject, and/or was a legal vehicle search conducted requiring all occupants to exit the vehicle?

Vehicle Exit Justification Compliant

Find items ⌄

If this subject was required to exit a vehicle, pick the option below that best describes the justification:

Vehicle Exit Justification Category

Find items ⌄

If you chose Other, please explain

Vehicle Exit Justification Category Other Explanation

80



## Consent to Search Audit Fo[rm]

| Instructions | Identifying Info | Subject Info | Audit Criteria | Supervisory Review | Review |
|---|---|---|---|---|---|

**1. In the FIC, did the officer accurately check the appropriate boxes to indicate a consent to search occurred?**

If a consent to search did not occur choose "No - Consent to Search Did Not Occur."

If a consent to search occurred but the FIC was not completed correctly choose "No - Consent to Search Occurred, FIC Not Accurate."

If a consent to search occurred but an FIC does not exist for the incident choose "No - Consent to Search Occurred, No FIC."

FIC Checked Accurately

Yes
No-Consent to Search Did Not Occur-FIC Not Accurate
No-Consent to Search Occurred, FIC Not Accurate
No-Consent to Search Occurred, No FIC

**2. If a consent to search occurred, does video show the officer notified a supervisor before he/she conducted a search based on consent? Please provide timestamp of the video.**

CD 128

Supervisor Notified Before Search Conducted

Yes
No
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

**3. If a consent to search occurred, does video show the supervisor approved the consent to search before the search was conducted? Please provide timestamp of the video.**

CD 128

Supervisor Approved Before Search Conducted

Yes
No
No-Approved After
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

**4. If a consent to search occurred, does video show the officer**

Officer Informed Subject of His/Her Rights

[ Submit Record ]    [ Enter Status ▾ ]    [ Return to M ]

Record: 42 of 42   No Filter   Search

---



## Consent to Search Audit Form

NA-Incomplete Video
Consent to Search Did Not Occur

**4. If a consent to search occurred, does video show the officer informing the subject of his or her right to refuse and to revoke consent at any time?**

CD 129

Officer Informed Subject of His/Her Rights

Yes
No
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

**5. If a consent to search occurred, does a Form 146 exist for the consent to search?**

CD 129

Form 146 Exists

Yes
No
Consent to Search Did Not Occur

If yes, please help the reviewer find the form by giving the item # of the EPR to which the form is attached,for example.

FindForm

**6. If a consent to search occurred, does form 146 include the signature of the person granting consent?**

CD 131

Subject Signed Form 146

Yes
No
NA-No Form
NA-Attachments Not Available
NA-Consent to Search Did Not Occur

**7. If a consent to search occurred, does form 146 include the signature of the officer requesting consent?**

Officer Signed Form 146

[ Submit Record ]    [ Enter Status ▾ ]    [ Return to Main ]

Record: 42 of 42   No Filter   Search



# Strip and Cavity Search Audit Form

Identifying Info | Subject Info | 1-4 | Strip (5-14) | Cavity (15-18) | Supervisory Review (19-22) | Review

Pick the auditor that is making this entry?

**Created By**

Tim Lindsey
Betty Johnson
Chelsea Albritton
Mekensie Maxwell
Lanitra Lacey
Reconciled (DB)
Jessica Jones
Bianca Harris

From which sample did this incident come from?

**Sample Type**

Stop
Search
Arrest
Consent Search
Strip/Cavity
Probation & Parole

Enter the item number from the sampling spreadsheet.

**Item Number**

Please attempt to find all related item numbers and list them here.

**Related Item Numbers**

Please enter the District or Division to which the primary officer is assigned.

**District/Division**

1
2
3
4
5
6
7
8
ISP

**Submit Record**

Enter Status

**Return to Main**

| Please enter the reporting Month | Review Month | Please enter the reporting year. | Review Year |
|---|---|---|---|
| | Jan | | 2020 |
| | Feb | | 2021 |
| | Mar | | 2022 |
| | Apr | | 2023 |
| | May | | 2024 |
| | Jun | | |
| | Jul | | |
| | Aug | | |
| | Sep | | |
| | Oct | | |
| | Nov | | |
| | Dec | | |

**Next Page**

## Subject Info

| Subject First | | Subject Last |
|---|---|---|
| | | |

| Subject Sex | Subject Race-Ethnicity |
|---|---|
| Male<br>Female<br>Unknown | Black/African-American<br>White<br>Hispanic/Latino<br>Asian<br>Amer.Ind./Alaskan Nat.<br>Unknown |

| Subject DOB | | Event Date | | Subject Age |
|---|---|---|---|---|
| | -And- | | -Or- | 0 |

84

**1**   What search type occurred during this incident?

Search Type

"A strip search is defined as any search of a person that includes the removal or rearrangement of some or all clothing to permit visual inspection of the exterior of the suspect's groin/genital area, buttocks, female breasts, or undergarments covering these areas. A body cavity search is defined as any visual or physical inspection of a person's genital or anal cavities with or without any physical

Strip
Cavity
Both

---

**2**   Complete Video Exists

Did each officer(s) who made the scene and who has been issued a BWC activate his/her BWC as required?

Ch. 41.4.1 P10

# of Primary Officers with Complete Video

CompleteVidNum

/

# of Primary Officers

CompleteVidDenom

Please list the officer you thought to be primary officers and give details on any missing or incomplete video.

CompleteVidExplain

If video exists, help the reviewer find the video of the strip or cavity search.

SearchVidDetails

85

> [empty text box]

If video exists, help the reviewer find the video of the strip or cavity search.

SearchVidDetails

> [empty text box]

---

3   Based on the evidence available to you, was there probable cause to conduct the strip or cavity search?

CD 132

PC for Search

| |
|---|
| Yes |
| No |

4   In the FIC or EPR or Search Warrant, did the officer articulate probable cause that the subject was concealing a weapon or contraband?

CD 132

PC for Search in Report

| |
|---|
| Yes |
| No |
| No Report |

**Previous Page**                          **Next Page**

86

# Strip Search

| 5 | If the incident involved a strip search in the field, does the FIC or EPR explain "exigent circumstances where the life of officers or others may be placed at risk"?<br><br>CD 132 | Strip Field EC<br><br>■■■■■■■■<br>Yes<br>No<br>No Report<br>No Field Strip Search |
|---|---|---|
| 6 | If the incident involved a strip search, does video or the report show the officer received approval to conduct the strip search?<br><br>CD 133 | Strip Supervisor Approved<br><br>■■■■■■■■<br>Yes<br>No<br>No Strip Search |
| 7 | If the incident involved a strip search, did the officer receive written approval from a supervisor for the strip search?<br><br>Ch. 1.2.4 P 47 A | Strip Supervisor Approved in Writing<br><br>Yes<br>No<br>No Strip Search |
| 8 | If the incident involved a strip search and the officer received approval from a supervisor, does video or the report show the supervisor make the scene?<br><br>CD 133 | Strip Supervisor Made Scene<br><br>Yes<br>No<br>No Strip Search |

| 9 | If the incident involved a strip search, do reports or video show the minimum number of officers necessary to conduct the strip search? | Strip Min Officers Necessary |
|---|---|---|
| | | ███████████████ |
| | | Yes |
| | CD 133 | No |
| | | No Reports or Video |
| | | No Strip Search |
| | How many officers were present during the strip search? | Num Present During Strip |
| | | |
| | How many were not necessary? Enter 0 if all were necessary. | Num Not Necessary |
| | | |

| 10 | If the incident involved a strip search, did the officer take the necessary steps to identify the subject's identified gender? | Strip Gender Identified |
|---|---|---|
| | | ███████████████ |
| | The officer should say something like "Our policy requires the officer conducting the strip search to be the same gender as the person being searched. To ensure compliance with that policy, should we have a policeman or policewoman conduct the search?" | Yes |
| | | No |
| | | No Reports to Video |
| | | No Strip Search |
| | CD 133 | |

| 11 | If the incident involved a strip search, do reports or video show the strip search was performed by officers of the same gender as the identified-gender of the subject? | Strip Officers Same Gender |
|---|---|---|
| | | ███████████████ |
| | This question corresponds to question 8 above. For example, if the subject informed the officer that a policeman should conduct the search, and all officers conducting the search were male, choose "Yes." | Yes |
| | | No |
| | | Unclear |
| | | No Reports or Video |
| | | No Strip Search |
| | If "No," please explain: | |

| 12 | If the incident involved a strip search, do reports or video show it was conducted under conditions that provided privacy from all but those authorized to conduct the search?<br><br>CD 132 | Strip Privacy<br><br>Yes<br>No<br>No Reports or Video<br>No Strip Search |
|---|---|---|
| 13 | If the incident involved a strip search, does video show it was conducted in a professional manner?<br><br>CD 133 | Strip Professional<br><br>Yes<br>No<br>No Strip Search |
| 14 | If the incident involved a strip search, does documentation include a list of the items, if any, recovered during the search and the location on the body where found?<br><br>Ch. 1.2.4 P49 H | Strip Location of Evidence Documented<br><br>Yes<br>No<br>No Video<br>No Strip Search |

**Previous Page**                    **Next Page**

# Cavity Search

**15** If the incident involved a cavity search, do reports show it was conducted by medical personnel?

CD 134

Cavity By Medical Personnel

| |
|---|
| Yes |
| No |
| No Reports |
| No Cavity Search |

---

**16** If the incident involved a cavity search, do reports show it was conducted by at a medical facility?

Ch. 1.2.4 P52

Cavity At Medical Facility

| |
|---|
| Yes |
| No |
| No Reports |
| No Cavity Search |

---

**17** If the incident involved a cavity search, reports show the officer got a search warrant?

CD 134

Cavity Warrant Issued

| |
|---|
| Yes |
| No |
| No Reports |
| No Cavity Search |

---

**18** If the incident involved a cavity search, does documentation include a list of the items, if any, recovered during the search and the location on or in the body where found?

Ch. 1.2.4 P55 H

Cavity Location of Evidence Documented

| |
|---|
| Yes |
| No |
| No Cavity Search |

**Previous Page**

**Next Page**

## Supervisory Review

| | | |
|---|---|---|
| 19 | Did you find any non-compliance related to this incident in the sections above? | Non-Compliance Should Have Been Addressed |

Yes
No

| | |
|---|---|
| 20 | The following questions A-E determine whether the supervisor knew or should have known about the non-compliance. |

| | | |
|---|---|---|
| 20 A | Is there non-compliance because there is missing documentation (FIC, EPR, etc)? | Missing Documentation |

Yes
No
NA-Full Compliance

| | | |
|---|---|---|
| 20 B | B. Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved? | Non-compliance Evident in Approved Reports |
| | If a supervisor needed to watch video to know about the non-compliance, choose "No." | |

Yes
No
NA-Full Compliance

91

| 20 C | C. Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene? | Supervisor On Scene During Non-compliance |
| --- | --- | --- |
| | | Yes<br>No<br>NA-Full Compliance |

| 20 D | D. Was a supervisor required to watch the video?<br><br>Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual. | Supervisor Required to Watch Video |
| --- | --- | --- |
| | | Yes<br>No<br>NA-Full Compliance |

| 20 E | E. Did the supervisor watch the video?<br><br>Review the audit trail for the videos in Evidence.com | Supervisor Reviewed Video |
| --- | --- | --- |
| | | Yes<br>No |

| 20 F | F. Did a supervisor know or should have known about the non-compliance?<br><br>Choose "Yes" if any of A-E are "Yes." | Supervisor Aware or Should Have Been Aware of Non-compliance |
| --- | --- | --- |

| 21 | Please list the SFLIDs for any corresponding SFLs or Control numbers for any corresponding FDIs? | SFLIDs-CNTRL Nos |
| --- | --- | --- |

| 22 | Did a supervisor address all the non-compliance you found above?<br><br>CD 144, 146, 151 | Non-Compliance Addressed by Supervisor |
| --- | --- | --- |
| | | Yes<br>No |

If a corresponding SFL or FDI exists but does not cover all non-compliance, please explain:

Supervisory Review Comments

Auditor Comments

Reviewer Comments

**Previous Page**　　　　　　　　　　　　　　　**First Page**

## Appendix B – Report Distribution

Superintendent

Chief Deputy Superintendent Field Operations Bureau

Deputy Superintendent Professional Standards and Accountability Bureau

Deputy Superintendent Public Integrity Bureau

Deputy Superintendent Management Services Bureau City Attorney Sunni

City Attorney's Office

Assistant City Attorney

94