# Exhibit 2



Performance Standards Section
Professional Standards and Accountability Bureau

# May 2021 SSA Audit

## (FOB and ISB)

Report # SSA 2021-05
February 10, 2022 (Revised)

### Audit Team

This audit was managed and conducted by the Audit and Review Unit individuals listed below:

Innovation Manager Tim Lindsey
Innovation Manager Matt Segraves
Auditor Betty Johnson
Auditor Chelsea Albritton
Auditor Charmel Peterson

## Executive Summary

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of Stops, Searches and Arrests related to documents created in May 2021. This audit is designed to ensure that all stops, searches, and arrests are conducted and executed consistent with NOPD policy and constitutional law, are documented appropriately, that documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect. This audit is reflective of one months' institution of the corrective action plan following the May 2020 SSA audit.

The overall score on the SSA - Incidents Scorecard is **87%** it shows consistent improvement over previous audit score of 83%. Most of the categories on this scorecard pertain to the officer documenting his/her action with the public. FICs and EPRs should be complete, accurate and timely. These deficiencies can be corrected with specific training with In-service Training classes or Daily Training Bulletins (DTBs) and reinforced by close and effective supervision in addition to Supervisor Notes.

**SSA** – Procedural Justice scorecard has an overall score of **94%.** The primary contributing deficit on this scorecard is the "Officer Introduced Themselves" category with a **72%** compliance rate. However, this category shows consistent improvement as well from the previous score of 64%. When reasonably possible, officers should identify themselves as soon as practical on a stop.

**Stops** – Subject scorecard has an overall score of **93%,** which shows significant improvement over the previous score of 87%. Both of the previous notable deficiencies related to handcuffing subjects have achieved compliance. The first, "Reason for handcuffs documented", in the report had a 78% compliance rate previously, and scored **86%** in this audit. Also, "Handcuffing within Policy", had a previous 75% compliance rate and scored **98%** as well. This can be attributed to the fact that the Department has taken steps to educate officers using DTBs, in-service training, as well as utilizing a corrective action plan developed after the preceding audit.

**Searches** – Subject scorecard has an overall score of **79%,** which is the same as the previous score of 79%. One deficiency that was identified was that officers are conducting "Pat- Downs" without adequately articulating their reasons for believing subjects may be armed and dangerous. This was scored at **60%**. Also, officers aren't adequately documenting a legal basis to search. The score for this metric was **83%.**

**Arrests** – Subject scorecard has an overall score of **99%** which is identical to the previous audit score.

# Table of Contents

**Executive Summary** .......... **2**

**Introduction** .......... **4**

***Purpose*** .......... ***4***

***Objectives*** .......... ***4***

***Background*** .......... ***4***

***Methodology*** .......... ***4***

**Initiating and Conducting the SSAAudit** .......... **6**

**Reviews - Scorecards** .......... **7**

**Conclusion** .......... **49**

***Recommendations*** .......... ***51***

**Appendix A – SSAPJ Audit Forms** .......... **53**

**Appendix B – Report Distribution** .......... **70**

## Introduction

The Audit and Review Unit of the Professional Standards and Accountability Bureau conducted an audit of stops, searches, and arrests related to documents created in May 2021.

**Purpose**

The Stops, Searches, and Arrests audits are completed to ensure stops, searches, and arrests are constitutional and are within policy. Stops, Searches, and Arrests are regulated by, but not limited to, the following Chapters: 1.2.4 – Search and Seizure; 1.2.4.1 – Stops/Terry Stops; 1.2.4.2 – Search Warrant Content, Forms and Reviews; 1.3.1.1 – Handcuffing and Restraint Devices; 1.9 – Arrests; 35.1.7 Non-Disciplinary Responses to Minor Violations; 41.3.10 Body Worn Camera; 41.12 – Field Interview Cards; 41.13 Bias-Free Policing; 52.1.1 – Misconduct Intake and Complaint Investigation.

**Objectives**

This audit is designed to ensure that all Stops, Searches, and Arrests are consistent with NOPD policy and constitutional law. Also, to ensure all are documented appropriately, the documentation is complete and accurate, and that stops, searches, and arrests are carried out with fairness and respect. This audit procedure entails the review of stops, searches, and arrests. consent searches, strip and cavity searches, search warrants, and performance evaluations are covered in separate audits.

**Background**

This was the second comprehensive SSAPJ Audit utilizing the enhanced protocol. Previously, Stops, Searches and Arrests were each audited independently. In December of 2019, Stop, Search and Arrest audits were redesigned and consolidated into one audit. The resulting audit was more detailed, and deeper diving review of the most fundamental actions taken by officers.

**Methodology**

Auditors qualitatively assessed each incident using the SSA forms listed below to ensure each stop, search, and arrest is compliant with legal requirements and NOPD policy. Auditors analyzed reports, field interview Cards, body-worn cameras and or in-car cameras to ensure officers had a valid legal basis to conduct a stop, search, or arrest; that officers documented such basis, and that documentation was complete and accurate.
The following SSA forms document the audit criteria:
1.          SSA Subject Audit Form
2.          SSA Incident Audit Form

Each stop (CAD or FIC), search (FIC), or arrest (FIC or EPR) document in the sample required one SSA Incident form and one SSA subject form for each person suspected of a crime during the incident. For the purposes of this audit, every person an officer identified who was not a victim or witness is a subject and requires an SSA subject form. For example, consider an incident involving an officer

stopping a vehicle because he/she believed the driver matched a description of a wanted person. He/she identified the driver and the front passenger in the vehicle and none of the rear passengers. For this incident, an SSA subject form was required for the driver (suspected of being wanted) and for the front passenger (identified by the officer). Although the officer was required to document approximate demographics for the rear passengers in a FIC, SSA subject forms were not needed for them.

All documents and related incidents that are in the sample and were not audited because there is no stop, search or arrest was to be deselected. All deselections were recorded in the Deselection Log.

Auditors searched for and reviewed all documentation related to the incident sampled. This involved:
1.      Reading the documents sampled to determine which officers were on scene and when.
2.      Searching Evidence.com by officer and time and by using multi-cam to find related videos that were labelled differently.
3.      Reviewing the prior and proceeding CAD activity for the officers on scene.
4.      Searching for FICs and EPRs using subject names and the date of the incident as documented on video or in reports.
5.      Searching for FICs and EPRs using officer information and the date of the incident as documented on video or in reports.
6.      Reviewing the related item numbers as documented in FICs and EPRs.

If video is available for the incident, auditors watched all interactions between officers and non-members. Auditors skipped through sections of video that did not involve interactions between officers and non-members. Auditors watched videos recorded by other officers on scene to observe all interactions. Auditors also watched the beginning and end of each officer's BWC video to determine whether the officer activated and deactivated their BWC as required by policy.

Auditors read the guidance in the audit forms on a regular basis. Changes to audit forms were clearly communicated to auditors by the audit supervisor. Auditors re-read policies when guidance in audit forms recommended they do so or when the policy requirements were not clear enough to the auditor to allow them to confidently score an audit criterion.

When audit results required comments, auditors thoroughly explained the evidence that they observed that led to their determination of the result for the audit criteria in question. For example, if an auditor scored "Videos and Reports as Significantly Consistent" with a "No" indicating non-compliance, they explained how the video shows something that is not consistent with the report. Such a comment read like the following: "The FIC documents a pat down, however the BWC shows a search incident to arrest."

Drawing on their knowledge of NOPD policies, auditors noted any policy violations they observe that are not specifically addressed in the SSA audit tools in the "Notify PSS" section of the form.

## Initiating and Conducting the SSA Audit

The final sample size for this audit was determined to be **97** incidents due to stratification and rounding.

1.  The universe of Stops, Searches, and Arrests were exported into an excel spreadsheet. Stops, searches and arrests were sorted based on the date the digital document was created. Incidents were assigned a random number using Excel's random number function (RAND).

2.  Documents were sampled starting from the smallest random number assigned and continuing from smallest to largest until the required sample size is reached.

3.  Sample sizes were representative of the Department, not each district/division, when reporting publicly. For reference, in May 2021, NOPD's Stops, Searches, and Arrests universe amounted to 15,000+ incidents. Per the sample size calculator given to NOPD by the Los Angeles Police Department Auditing Unit, a sample size of about 95 incidents was representative of a population of 15,702 when doing a one- tailed test, with a 95% degree of confidence, and a 4% error rate.

4.  When reporting publicly, audit results are stratified by division/district; the number of audit results per division/district are proportionate to the actual activity by the division/district. The results include at least one incident from each division/district with activity during the reporting time period to ensure all districts/divisions with activity are included in public reports.

5.  Randomly sampled documents (CAD, FIC, or EPR) that do not document a stop, search, or arrest by NOPD will be deselected. For the purposes of this audit, anyone who is identified by an officer and who is not a witness or victim, is considered stopped. If the document is part of the arrest universe and an auditor determines the related incident does not include an arrest by NOPD, but does include a stop or search by NOPD, the document and related incident will be audited focusing on the stop and search. When a document is deselected, the auditor will continue to the document with the next lowest random number.

## Reviews - Scorecards

Audit results data in Excel spreadsheet, raw data based on individual questions on the SSA Forms.

### SSA Scorecard - Incidents (Preliminary Double-blind Sample)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents | FIC Exists, If Required | FIC Submitted By ETOD | FIC Approved in 72 Hrs. | No Boilerplate | Videos and Reports Are Consistent | Arrested in Residence with Consent, Warrant, or Exigent Circumstances | Supervisor Made Scene, If Required | Overall |
|---|---|---|---|---|---|---|---|---|---|
| **1** | 6 | 100% | 100% | 100% | 100% | 83% | - | - | 97% |
| **2** | 9 | 100% | 88% | 100% | 100% | 56% | - | 100% | 91% |
| **3** | 11 | 100% | 82% | 100% | 100% | 73% | 100% | 100% | 94% |
| **4** | 9 | 80% | 50% | 75% | 100% | 86% | - | 0% | 65% |
| **5** | 10 | 100% | 75% | 63% | 100% | 63% | - | 100% | 83% |
| **6** | 11 | 78% | 86% | 71% | 100% | 50% | 100% | 100% | 84% |
| **7** | 10 | 100% | 100% | 25% | 100% | 70% | 100% | 100% | 85% |
| **8** | 13 | 83% | 70% | 90% | 100% | 50% | - | 100% | 82% |
| **SOD** | 6 | 100% | 100% | 50% | 100% | 100% | - | - | 90% |
| **ISB** | 5 | 100% | 100% | 0% | 100% | 33% | 100% | 100% | 76% |
| **Other** | 7 | 100% | 80% | 80% | 100% | 60% | - | - | 84% |
| **Overall** | 97 | 93% | 82% | 78% | 100% | 65% | 100% | 91% | 87% |

Compliance randomly samples CAD items that were initially 18s or 107s, had dispositions of NAT or RTF, and are self-initiated for each District/Unit.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Stops, Searches and Arrests Incidents."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

# SSA Scorecard -Accuracy Table

**Review Period: May 2021**

Non-compliance count of video to report inconsistencies

| District | Passenger Info | Search Info | Exit Vehicle Info | Result Info | Reason for Stop Info | Subject Info | Evidence Info | Vehicle Description Info | Other | Total Count |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | - | 1 | - | - | - | - | - | - | - | 1 |
| 2 | 1 | 2 | - | - | - | - | - | 1 | - | 4 |
| 3 | - | 1 | - | - | 1 | - | - | - | 2 | 4 |
| 4 | - | 1 | - | - | - | - | - | - | 1 | 2 |
| 5 | - | - | - | - | - | 1 | - | - | 3 | 4 |
| 6 | - | 4 | - | - | - | - | 1 | - | 3 | 8 |
| 7 | - | - | - | 1 | - | - | 1 | - | 1 | 3 |
| 8 | 1 | 2 | - | - | 1 | - | - | - | 3 | 7 |
| SOD | - | - | - | - | - | - | - | - | - | 0 |
| ISB | - | 2 | - | - | - | - | 2 | - | 2 | 6 |
| Other | - | 1 | - | - | - | - | - | - | 2 | 3 |
| Overall | 2 | 14 | - | 1 | 2 | 1 | 4 | 1 | 17 | 42 |

Compliance randomly samples CAD items that were initially 18s or 107s, had dispositions of NAT or RTF, and are self-initiated for each District/Unit.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For the audit results for each stop see the accompanying RawData spreadsheets.

Of the 17 “Other” discrepancies listed in the table above, 4 were for mis-matched event dates, 3 were handcuffing related, 3 search/were pat-down related, 3 were Miranda related, 1 unreported Use of Force, 1 Evidence, 2 Video related.

## SSA Scorecard - Procedural Justice (Preliminary Double-blind Sample)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents | Officers Introduced Themselves | Officers Explained Reason for Stop | Officers Allowed Subject to Explain | Officers Responded to Subject's Reasonable Questions | Officers Communicated Result | Stop Took No Longer than Necessary | Officers Were Reasonably Courteous and Professional | Overall |
|---|---|---|---|---|---|---|---|---|---|
| **1** | 6 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| **2** | 9 | 89% | 100% | 100% | 100% | 100% | 100% | 89% | 97% |
| **3** | 11 | 73% | 100% | 100% | 100% | 91% | 100% | 91% | 94% |
| **4** | 9 | 75% | 100% | 100% | 100% | 100% | 100% | 100% | 96% |
| **5** | 10 | 80% | 100% | 100% | 100% | 100% | 100% | 90% | 96% |
| **6** | 11 | 73% | 100% | 100% | 100% | 100% | 100% | 91% | 95% |
| **7** | 10 | 50% | 100% | 100% | 100% | 90% | 90% | 90% | 89% |
| **8** | 13 | 58% | 100% | 92% | 100% | 92% | 100% | 92% | 91% |
| **SOD** | 6 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| **ISB** | 5 | 50% | 100% | 100% | 100% | 100% | 100% | 100% | 93% |
| **Other** | 7 | 60% | 100% | 100% | 100% | 100% | 100% | 100% | 94% |
| **Overall** | 97 | 72% | 100% | 99% | 100% | 97% | 99% | 93% | 94% |

Compliance randomly samples CAD items that were initially 18s or 107s, had dispositions of NAT or RTF, and are self-initiated for each District/Unit.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Procedural Justice."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

# Stops Scorecard - Subjects (Double-blind Review)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for stops

May 2021 Stop

| District | # of Subjects Stopped | Officer had RS/PC for Stop | Officer Adequately Documented RS/PC to Stop | Count of Officer That Did Not Have RS/PC to Ask for ID | Reason for Handcuffs Documented in Report | Handcuffing Within Policy | Overall |
|---|---|---|---|---|---|---|---|
| 1 | 6 | 100% | 100% | 0 | 100% | 100% | 100% |
| 2 | 12 | 100% | 100% | 0 | 90% | 100% | 98% |
| 3 | 15 | 87% | 87% | 2 | 100% | 92% | 91% |
| 4 | 12 | 100% | 100% | 0 | 100% | 100% | 100% |
| 5 | 14 | 100% | 93% | 0 | 100% | 100% | 98% |
| 6 | 21 | 86% | 81% | 3 | 78% | 93% | 84% |
| 7 | 12 | 100% | 100% | 0 | 57% | 100% | 89% |
| 8 | 17 | 94% | 94% | 1 | 86% | 100% | 93% |
| SOD | 7 | 71% | 71% | 2 | 100% | 100% | 86% |
| ISB | 8 | 100% | 100% | 0 | 83% | 100% | 96% |
| Other | 7 | 100% | 100% | 0 | 50% | 100% | 88% |
| Overall | 131 | 94% | 92% | 8 | 86% | 98% | 93% |

PSAB assesses the stops criteria when auditing stops, searches, and arrests. PSAB randomly selects incidents from the stops, searches, and arrests universes. For details, see the "Sampling Universes" section of this packet.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Stops Scorecards."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

# Searches Scorecard - Subjects (Double-blind Review)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for searches

May 2021

| District | # of Subjects Searched | Officer Had Valid Legal Basis to Search Subject | Officer Adequately Documented Legal Basis to Search | If Pat-Down Indicated, Officer Gave Specific Details Why Subject was Possibly Armed and Dangerous | Overall |
|---|---|---|---|---|---|
| **1** | 3 | 100% | 100% | - | 100% |
| **2** | 11 | 100% | 92% | - | 96% |
| **3** | 7 | 88% | 86% | 50% | 74% |
| **4** | 8 | 100% | 82% | 100% | 94% |
| **5** | 10 | 100% | 83% | 33% | 72% |
| **6** | 16 | 87% | 57% | 25% | 56% |
| **7** | 10 | 100% | 100% | 100% | 100% |
| **8** | 9 | 100% | 80% | 100% | 93% |
| **SOD** | 4 | 100% | 100% | - | 100% |
| **ISB** | 6 | 100% | 100% | - | 100% |
| **Other** | 3 | 67% | 67% | - | 67% |
| **Overall** | 87 | 96% | 83% | 60% | 79% |

PSAB assesses the stops criteria when auditing stops, searches, and arrests. PSAB randomly selects incidents from the stops, searches, and arrests universes. For details, see the "Sampling Universes" section of this packet.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Searches Scorecards."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

# Arrests Scorecard - Subjects (Prelim Double-blind Sample)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for arrests

| District | # of Subjects Arrested | Supvervisor Approved Gist Prior to Booking | Officer had Probable Cause to Arrest Subject | Officer Adequately Documented PC to Arrest | Overall |
|---|---|---|---|---|---|
| 1 | 2 | 100% | 100% | 100% | 100% |
| 2 | 7 | 100% | 100% | 86% | 95% |
| 3 | 6 | 100% | 100% | 100% | 100% |
| 4 | 4 | 100% | 100% | 100% | 100% |
| 5 | 8 | 100% | 100% | 100% | 100% |
| 6 | 13 | 100% | 100% | 92% | 97% |
| 7 | 9 | 100% | 100% | 100% | 100% |
| 8 | 6 | 100% | 100% | 100% | 100% |
| SOD | 3 | 100% | 100% | 100% | 100% |
| ISB | 5 | 100% | 100% | 100% | 100% |
| Other | 1 | 100% | 100% | 100% | 100% |
| Overall | 64 | 100% | 100% | 97% | 99% |

PSAB assesses the stops criteria when auditing stops, searches, and arrests. PSAB randomly selects incidents from the stops, searches, and arrests universes. For details, see the "Sampling Universes" section of this packet.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Arrests Scorecards."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

# SSA Scorecard - Evidence (Double-blind Review)

**Review Period: May 2021**

Compliance percentages for Consent Decree requirements for stops, searches and arrests

| District | # of Incidents Involving Evidence | Evidence Documented | Evidence Submitted Immediately | Evidence Description Matches Video | Overall |
|---|---|---|---|---|---|
| **1** | 0 | - | - | - | - |
| **2** | 4 | 100% | 100% | 100% | 100% |
| **3** | 2 | 100% | 100% | 100% | 100% |
| **4** | 2 | 100% | 100% | 100% | 100% |
| **5** | 2 | 100% | 100% | 100% | 100% |
| **6** | 2 | 100% | 100% | 100% | 100% |
| **7** | 3 | 100% | 100% | 100% | 100% |
| **8** | 4 | 100% | 75% | 100% | 92% |
| **SOD** | 3 | 100% | 67% | 100% | 89% |
| **ISB** | 4 | 100% | 100% | 100% | 100% |
| **Other** | 0 | - | - | - | - |
| **Overall** | 26 | 100% | 92% | 100% | 97% |

Compliance randomly samples CAD items that were initially 18s or 107s, had dispositions of NAT or RTF, and are self-initiated for each District/Unit.

For an explanation of the procedure and scoring system for this review, see the "Scorecards Explained" section of this packet.

For a list of relevant policies, see the accompanying "List of Policies Relevant to Stops, Searches and Arrests Incidents."

For the audit results for each stop see the accompanying RawData spreadsheets.

Scores below 95% are highlighted in red.

Audit results combined and ordered by Audit Form numbers.  Please note that not all audit form questions are included in this report, as they are more informational and are not meant to be scored. Incident questions 1, 9-15, 19-22 and subject questions 11-13 are not currently part of the SSA audit and are used in assisting other audits.

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 1 | 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | |
| 2 | 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 67 | 72 | 93% | FALSE |
| 3 | 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 56 | 68 | 82% | FALSE |
| 4 | 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 53 | 68 | 78% | FALSE |
| 5 | 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | 93 | 93 | 100% | TRUE |
| 6 | 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 55 | 85 | 65% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: Consent Exigent Circumstances Warrant None of the above (Not Compliant) | 4 | 4 | 100% | TRUE |
| 8A, 8B | 133, 143 | Incident | Video Shows Supv Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 10 | 11 | 91% | FALSE |
| 9 | 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? | To be used for UoF Auditing | | | |
| 10, 11 | 80, Ch 1,3 | Incident | Use of Force Reported | Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | To be used for UoF Auditing | | | |
| 12 | 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? | To be used for Strip/Cavity Auditing | | | |
| 13 | 132, 133, 134 | Incident | Strip Cavity Search Documented | If yes, is the strip or cavity search documented in the FIC or EPR? | To be used for Strip/Cavity Auditing | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 14 | 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a strip or cavity search? | To be used for CtS Audit | | | |
| 15 | 131, 149 | Incident | Consent to Search Documented | Does the incident involve a strip or cavity search? | To be used for CtS Audit | | | |
| 16 | 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 26 | 26 | 100% | TRUE |
| 17 | 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, whichever is first? | 24 | 26 | 92% | FALSE |
| 18 | 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 25 | 25 | 100% | TRUE |
| 19-22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Addressed by Supervisor | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | To be used for Supervision Auditing | | | |
| 23 | 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 85 | 91 | 93% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 24 | 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 65 | 90 | 72% | FALSE |
| 25 | 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 91 | 91 | 100% | TRUE |
| 26 | NA | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 89 | 90 | 99% | TRUE |
| 27 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 83 | 83 | 100% | TRUE |
| 28 | NA | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 88 | 91 | 97% | TRUE |
| 29 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take | 90 | 91 | 99% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | appropriate action? | | | | |
| 30A-D | N/A | Incident | Academy Training | Does this incident make a good training video | Flagged for Training Use | | | |
| 31 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? | Flagged for EPIC Use | | | |
| 32 | Ch 41.3.10 P11 | Incident | Complete Vid Num and Complete Vid Denom | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required?  And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 243 | 301 | 81% | FALSE |
| 1A | 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 123 | 131 | 94% | FALSE |
| 2A | 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause | 121 | 131 | 92% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | to stop this subject? | | | | |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 69 | 80 | 86% | FALSE |
| 3B | Ch. 1.3.1.1 | Subject | Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 160 | 163 | 98% | TRUE |
| 4 | 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 128 | 134 | 96% | TRUE |
| 5 | 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the report document a valid legal basis for every search of this subject? | 101 | 122 | 83% | FALSE |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable | 9 | 15 | 60% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | person to believe the subject was armed and dangerous in the justification for pat down text box? | | | | |
| 7 & 4 | 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 7 | 7 | 100% | TRUE |
| 8 | 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 39 | 39 | 100% | TRUE |
| 9 | 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 66 | 66 | 100% | TRUE |
| 10 | 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 62 | 64 | 97% | TRUE |
| 11 | | Subject | Stop Result | What was result of Stop? Multiple choice | Informational Only | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? | Informational Only | | | |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | Informational Only | | | |
| 14 | 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | NA | TRUE |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required | NEW | NEW | NEW | NEW |
| 16 | 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 66 | 66 | 100% | TRUE |
| 17 | 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 124 | 124 | 100% | TRUE |
| 18 | 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 124 | 124 | 100% | TRUE |
| 19 | 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 124 | 124 | 100% | TRUE |

| Consent to Search Universe MAY 2021 (Results from SSA Incident and Subject Forms) | |
|---|---|

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 1 | 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | |
| 2 | 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 2 | 3 | 67% | TRUE |
| 3 | 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 1 | 2 | 50% | FALSE |
| 4 | 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 2 | 2 | 100% | TRUE |
| 5 | 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any | 2 | 3 | 67% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | stop, detention, search, or arrest? | | | | |
| 6 | 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 1 | 3 | 33% | FALSE |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: Consent Exigent Circumstances Warrant None of the above (Not Compliant) | 0 | 0 | | TRUE |
| 8A, 8B | 133, 143 | Incident | Video Shows Supv Made Scene | If the supervisor is required to make scene, does video show the supervisor made the scene? | 1 | 1 | 100% | TRUE |
| 9 | 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? | To be used for UoF Auditing | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 10, 11 | 80, Ch 1,3 | Incident | Use of Force Reported | Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | To be used for UoF Auditing | | | |
| 12 | 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? | To be used for Strip/Cavity Auditing | | | |
| 13 | 132, 133, 134 | Incident | Strip Cavity Search Documented | If yes, is the strip or cavity search documented in the FIC or EPR? | To be used for Strip/Cavity Auditing | | | |
| 14 | 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a strip or cavity search? | To be used for CtS Audit | | | |
| 15 | 131, 149 | Incident | Consent to Search Documented | Does the incident involve a strip or cavity search? | To be used for CtS Audit | | | |
| 16 | 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 1 | 1 | 100% | TRUE |
| 17 | 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, whichever is | 1 | 1 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | first? | | | | |
| 18 | 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 1 | 1 | 100% | TRUE |
| 19-22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Addressed by Supervisor | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | To be used for Supervision Auditing | | | |
| 23 | 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 3 | 3 | 100% | TRUE |
| 24 | 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as | 2 | 3 | 67% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | a soon a practical? | | | | |
| 25 | 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 3 | 3 | 100% | TRUE |
| 26 | NA | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 3 | 3 | 100% | TRUE |
| 27 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 3 | 3 | 100% | TRUE |
| 28 | NA | Incident | Conclusion | Does video show the officer communicate the result of the stop/interacti | 3 | 3 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | on to the subject (arrest, ticket, etc.)? | | | | |
| 29 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 3 | 3 | 100% | TRUE |
| 30A-D | N/A | Incident | Academy Training | Does this incident make a good training video | Flagged For Training Use | | | |
| 31 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? | Flagged For EPIC Use | | | |
| 32 | Ch 41.3.10 P11 | Incident | Complete Vid Num and Complete Vid Denom | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC | 11 | 11 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | as required? | | | | |
| 1A | 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 5 | 5 | 100% | TRUE |
| 2A | 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop this subject? | 5 | 5 | 100% | TRUE |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 3 | 5 | 60% | FALSE |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 5 | 5 | 100% | TRUE |
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within | If this subject was handcuffed, | 5 | 5 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | Policy | does the evidence available to you show the handcuffing was within policy? | | | | |
| 4 | 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 5 | 8 | 63% | FALSE |
| 5 | 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the report document a valid legal basis for every search of this subject? | 5 | 8 | 63% | FALSE |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? | 0 | 2 | 0% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 7 & 4 | 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 0 | 0 | | TRUE |
| 8 | 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 1 | 1 | 100% | TRUE |
| 9 | 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 1 | 1 | 100% | TRUE |
| 10 | 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 P15 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or EPR)? | 1 | 1 | 100% | TRUE |
| 11 | | Subject | Stop Result | What was result of Stop? Multiple choice | Informational Only | | | |
| 12 | | Subject | Break Given | Did the officer use their discretion to give the | Informational Only | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | subject a break? | | | | |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | Informational Only | | | |
| 14 | 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required | NEW | NEW | | NEW |
| 16 | 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's immigration status? | 1 | 1 | 100% | TRUE |
| 17 | 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 5 | 5 | 100% | TRUE |
| 18 | 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 5 | 5 | 100% | TRUE |
| 19 | 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by | 5 | 5 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | their chosen name, title, and pronoun? | | | | |

| **Consent to Search Universe May 2021 (Results from Consent to Search Form)** | |
|---|---|

| **Audit Form #** | **CD ¶** | **Form** | **Field Name** | **Field Text** | **Number Compliant** | **Number Required** | **Compliance Rate** | **Compliance Threshold Met (>=95%)** |
|---|---|---|---|---|---|---|---|---|
| 1 | 128 | Incident | FIC Checked Accurately | 1. In the FIC, did the officer accurately check the appropriate boxes to indicate a consent to search occurred? If a consent to search did not occur choose "No - Consent to Search Did Not Occur." If a consent to search occurred but the FIC was not completed correctly choose "No - Consent to Search Occurred, FIC Not Accurate." If a consent to search occurred but an FIC does not exist for the incident choose "No - Consent to Search Occurred, No FIC." | 2 | 3 | 67% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 2 | 128 | Consent to Search | Supervisor Notified Before Search Conducted | 2. If a consent to search occurred, does video show the officer notified a supervisor before he/she conducted a search based on consent? Please provide timestamp of the video. | 3 | 3 | 100% | TRUE |
| 3 | 128 | Consent to Search | Supervisor Approved Before Search Conducted | 3. If a consent to search occurred, does video show the supervisor approved the consent to search before the search was conducted? Please provide timestamp of the video. | 3 | 3 | 100% | TRUE |
| 4 | 129 | Consent to Search | Officer Informed Subject of "His/Her" Rights | 4. If a consent to search occurred, does video show the officer informing the subject of his or her right to refuse and to revoke consent at any time? | 2 | 3 | 67% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 5 | 129 | Consent to Search | Form 146 Exists | 5. If a consent to search occurred, does a Form 146 exist for the consent to search? | 3 | 3 | 100% | TRUE |
| 6 | 131 | Consent to Search | Subject Signed Form 146 | 6. If a consent to search occurred, does form 146 include the signature of the person granting consent? | 3 | 3 | 100% | TRUE |
| 7 | 131 | Consent to Search | Officer Signed Form 146 | 7. If a consent to search occurred, does form 146 include the signature of the officer requesting consent? | 3 | 3 | 100% | TRUE |

| **Probation and Parole Universe May 2021 (Results from SSA Incident and Subject Forms)** | |
|---|---|

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 1 | 124 | Incident | Known to be Materially False | If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. | Offline Process through Direct Supervisor and PSS Notify | | | |
| 2 | 126, 149, 150 | Incident | FIC Exists If Required | If required, does an FIC exist for this stop? | 7 | 7 | 100% | TRUE |
| 3 | 150 | Incident | FIC Submitted By ETOD | Did the officer submit the FIC to his/her supervisor by the end of the shift? | 6 | 7 | 86% | FALSE |
| 4 | 150 | Incident | FIC Approved in 72Hrs | Did the supervisor review the FIC within 72 hours? | 5 | 7 | 71% | FALSE |
| 5 | 123, 136, 145, | Incident | No Boilerplate | In the reports, did the officer(s) use specific descriptive language | 7 | 7 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest? | | | | |
| 6 | 123 | Incident | Videos and Reports Are Consistent | Are the video(s) and reports significantly consistent? | 5 | 7 | 71% | FALSE |
| 7 | Ch 1.9 p27-29 | Incident | Arrest in Residence Circumstances | If yes [video or reports show the officer entered a residence to make the arrest], which of the following apply? Options: Consent Exigent Circumstances Warrant None of the above (Not Compliant) | 0 | 0 | | TRUE |
| 8A, 8B | 133, 143 | Incident | Video Shows Supv | If the supervisor is required to | 1 | 1 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | Made Scene | make scene, does video show the supervisor made the scene? | | | | |
| 9 | 80, Ch 1,3 | Incident | Use of Force Observed | Did any officer use reportable force during this officer-civilian interaction? | To be used for UoF Auditing | | | |
| 10, 11 | 80, Ch 1,3 | Incident | Use of Force Reported | Is there a corresponding Blue Team Report? (No could indicate it is unreported) 11. Provide Video Documentation. | To be used for UoF Auditing | | | |
| 12 | 132, 133, 134 | Incident | Strip Cavity Search Occurred | Does the incident involve a strip or cavity search? | To be used for Strip/Cavity Auditing | | | |
| 13 | 132, 133, 134 | Incident | Strip Cavity Search Documented | If yes, is the strip or cavity search documented in the FIC or EPR? | To be used for Strip/Cavity Auditing | | | |
| 14 | 131, 149 | Incident | Consent to Search Occurred | Does the incident involve a | To be used for CtS Audit | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | strip or cavity search? | | | | |
| 15 | 131, 149 | Incident | Consent to Search Documented | Does the incident involve a strip or cavity search? | To be used for CtS Audit | | | |
| 16 | 150 | Incident | Evidence Documented | If evidence was seized, is there a CE+P receipt? | 2 | 2 | 100% | TRUE |
| 17 | 150 | Incident | Evidence Submitted Immediately | If evidence was seized, was it submitted to CE+P before next Code1 call or ETOD, whichever is first? | 2 | 2 | 100% | TRUE |
| 18 | 123, 149, 150 | Incident | Evidence Description Matches Video | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | 2 | 2 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 19-22 | CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C | Incident | Non-Compliance Addressed by Supervisor | If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video? | To be used for Supervision Auditing | | | |
| 23 | 181 | Incident | Reasonably Courteous | Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop? | 7 | 7 | 100% | TRUE |
| 24 | 181 | Incident | Identified | If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical? | 3 | 7 | 43% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 25 | 181 | Incident | Explained | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical? | 7 | 7 | 100% | TRUE |
| 26 | NA | Incident | Subject Could Explain | Does video show the officer allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | 7 | 7 | 100% | TRUE |
| 27 | Ch 41.13 P9E | Incident | Responded to Subjects Qs | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them? | 6 | 6 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 28 | NA | Incident | Conclusion | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | 7 | 7 | 100% | TRUE |
| 29 | 139, 181 | Incident | Stop No Longer than Necessary | Does video show the stop was no longer than necessary to take appropriate action? | 7 | 7 | 100% | TRUE |
| 30A-D | N/A | Incident | Academy Training | Does this incident make a good training video | Flagged For Training Use | | | |
| 31 | N/A | Incident | EPIC | Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? | Flagged For EPIC Use | | | |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 32 | Ch 41.3.10 P11 | Incident | Complete Vid Num and Complete Vid Denom | Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required? | 17 | 21 | 81% | FALSE |
| 1A | 122 | Subject | RS/PC to Stop | Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject? | 7 | 8 | 88% | FALSE |
| 2A | 122, 123, 126, 149, 150 | Subject | RS/PC to Stop in Report | Does the report clearly articulate reasonable suspicion or probable cause to stop | 8 | 8 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | this subject? | | | | |
| 3A | Ch. 1.3.1.1 P25 | Subject | Reason for Handcuffs Documented | If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC? | 7 | 7 | 100% | TRUE |
| 3B | Ch. 1.3.1.1 | Subject | Discretionary Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 1 | 2 | 50% | FALSE |
| 3B | Ch. 1.3.1.1 | Subject | Mandatory Handcuffs Within Policy | If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? | 6 | 7 | 86% | FALSE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 4 | 149, 150, Ch. 1.2.4 P1 | Subject | Search Legal Numerator and Search Legal Denominator | Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | 9 | 9 | 100% | True |
| 5 | 123, 149 | Subject | Reason to Search in Report Numerator and Reason to Search in Report Denominator | Does the report document a valid legal basis for every search of this subject? | 9 | 9 | 100% | TRUE |
| 6 | 123, Ch 41.12 P12J | Subject | Pat Down Justification | If a pat down was correctly indicated, di d the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box? | 1 | 1 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| 7 & 4 | 130 | Subject | (7) Search Subject on Probation or Parole & (4) Search Legal | (7) Was this subject on parole or probation? & (4) Based on all the evidence available to you, did the officer(s) have a valid legal basis to search the subject? | NA for P/P universe | | | |
| 8 | 144 | Subject | Supervisor Approved Gist Prior to Booking | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff? | 3 | 3 | 100% | TRUE |
| 9 | 141 | Subject | Officer Had PC to Arrest | Based on all the evidence available to you, did the officer have probable cause to arrest this subject? | 5 | 5 | 100% | TRUE |
| 10 | 141, 145, Ch 1.9 P14, Ch 82.1 P4, Ch 41.12 | Subject | PC Clearly Articulated | Did the officer clearly document the probable cause in the report (FIC or | 5 | 5 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | P15 | | | EPR)? | | | | |
| 11 | | Subject | Stop Result | What was result of Stop? Multiple choice | Informational Only | | | |
| 12 | | Subject | Break Given | Did the officer use their discretion to give the subject a break? | Informational Only | | | |
| 13 | | Subject | ID Checked | Did the officer run the subject's ID? | Informational Only | | | |
| 14 | 189 | Subject | LEP | Did the officer request translation services, if needed? | 0 | 0 | | TRUE |
| 15 | Ch 1.9.1 | Subject | Miranda Given | Did the officer give Miranda Rights, if required | NEW | NEW | | NEW |
| 16 | 189 | Subject | Arrest Immigration Status | Was the subject arrested because of or in part due to the subject's | 5 | 5 | 100% | TRUE |

| Audit Form # | CD ¶ | Form | Field Name | Field Text | Number Compliant | Number Required | Compliance Rate | Compliance Threshold Met (>=95%) |
|---|---|---|---|---|---|---|---|---|
| | | | | immigration status? | | | | |
| 17 | 183 | Subject | Questioned Immigration Status | Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question? | 8 | 8 | 100% | TRUE |
| 18 | 185 | Subject | Officer Comment LGBTQ | Did the officer say something that is possibly offensive about/to LGBTQ individuals? | 8 | 8 | 100% | TRUE |
| 19 | 185 | Subject | Officer Address LGBTQ | Did the officer address the subject by their chosen name, title, and pronoun? | 8 | 8 | 100% | TRUE |

## Conclusion

Results

The results of this audit were verified through two processes:

1. Double-blind auditor peer review
2. Audit supervisor review

In the double-blind auditor peer review, two auditors independently assessed each incident and completed the initial SSA Incident and Subject form entries. The two auditors then discussed and resolved any discrepancies between the two sets of results. Any discrepancy that cannot be resolved was escalated to their supervisor who then resolved the discrepancy, and who may have also drawn on the expertise of others, including but not limited to the PSAB Deputy Superintendent, the PSAB Captain, other PSAB Innovation Managers, members of the Education and Training Division, members of the District Attorney's office, members of the Office of the Consent Decree Monitor, and members of the Department of Justice.

During the Audit Supervisor review, an Innovation Manager reviewed the resolved audit results for accuracy and completeness. Any issues were sent back to auditors for corrections and the interaction is documented on the audit forms.

The following deviations from compliance were identified in the SSA audit results:

1. RS/PC to stop was scored at 94%. and for 121 of the 131 subjects stopped, reasonable suspicion or probable cause was clearly articulated in the video. Detail regarding RS/PC to stop in the report scored 92%, a slight decrease from the previous score of 96%.

2. Videos and Reports consistent metric scored 55 of 85. The discrepancies range from minor errors, such as typographical errors, to more material issues, such as Reason for the stop. Examples listed in the SSA Accuracy table above include incomplete or no passenger information on the FIC for vehicle stops, and not documenting the proper category of the search that occurred (search, pat down, or consent).  This is similar to the previous audit.

3. FIC exists if required scored 93% (67/72).

4. "Video Shows Supervisor Made the Scene" confirms if a supervisor arrived on scene where required. All patrol sergeants are assigned a BWC, so this can be checked by looking at the sergeant's own BWC footage. However, Lieutenants are not issued BWC's, and the auditor must watch the other officers' BWC footage to determine if a Lieutenant made the scene. This category was scored 91% (10/11).

5. The category "Reason to Search" scores whether the reason for each search was documented in the report. This category does not address whether a valid reason to search existed, only whether a valid legal basis to search was documented in the corresponding report. For this audit, the category

was scored 83% (101/122).

6. FICs should be submitted by the end of the shift and approved by a supervisor within 72 hours. FIC submitted scored 82% (56/68) and approved scored 78% (53/68).

7. "Reasonably Courteous" determines if the video shows that the officer was reasonably courteous when interacting with the subject. This category was scored 93% (85/91).

8. If reasonably possible, officers should identify him/herself as soon as practical during an interaction. Auditors review if video shows that the officer verbally identified him/herself. This category was scored 72% (65/90).

9. For "Pat Down Justification," if a pat down was correctly indicated, auditors check if the officer gave specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the corresponding text box of the FIC. This category was scored 60% (9/15).

10. For the "Complete Video" question, auditors check if each officer that conducted a stop, search, or arrest activated his/her BWC as required. If the officer is not assigned a BWC, the question is NA. The includes supervisors who made the scene and have been issued a BWC. During this audit, it was identified that there may be some confusion when officers should turn their cameras off when entering Lockup. If the officer turned his/her camera off early, for instance, in the Sally Port before entering the receiving area of Lockup and being told by OPSO that they accepted the arrested subject, it was scored as a deficiency. Of the 31 incidents reviewed that had incomplete video, 10 were related to incomplete videos at CLU and included 15 officers with incomplete video. This category was scored 81% (243/301).

11. For the "Search Legal" question, auditors determine, based on all the evidence available, did the officer(s) have a valid legal basis to search the subject. One issue that was identified was that officers are searching subjects that have been found to be in simple possession of marijuana.

12. Because a summons is issued for this under most circumstances, regulations do not allow for the search of the subject incidental to arrest. Search legal was scored 96% (128/134).

13. Auditors check that when officers handcuff a subject, it is within policy based on the evidence available. If an officer has reasonable suspicion to stop a subject, the officer can handcuff the subject only when he/she has articulable facts that the subject may flee, the subject may present an immediate threat, or the subject will be physically uncooperative with the officer. Chapter 1.3.1.1 establishes specific guidelines for certain groups (e.g., juveniles or individuals who are pregnant or have a disability). The category was scored 98% (160/163).

14. Similarly, officers must document the reason for handcuffing a subject in the FIC. Even if the handcuffing is deemed compliant with policy, as in the previous question, the reason still must be documented in the FIC. This documentation question was scored 86% (69/80).

15. Policy Deficiencies identified in the review process were forwarded to the PSS Captain via the "Notify PSS" protocol for follow-up, redirection, or disciplinary action if needed. Eight (8) SFLs issued, and two (2) required no action. Of the two "no action" matters: (E-29489-21) No corrective action taken due to inconclusive BWC, however, the Districts instituted roll call training on vaping. (E-34979-21) the officer self-corrected the mis-labeled BWC which resulted in no other action needed. UOF (E-30077-21) resulted in a rank initiated DI1 being issued, 2021-0356-R, as a result of this unreported use of force.

16. All Auditing Deficiencies identified in the review process were documented in the PSAB reports and scorecards and sent directly to the various districts for review and action if needed.

**Recommendations**

1. Continue to develop methods/programs/systems for auditing the questions that are less clearly defined in audit to reduce ambiguity, the following recommendations were made by OCDM to enhance future audits and provide clarity regarding the following items:

    a. Added a Miranda Question as part of the Subjects Arrest Form
    b. Enhanced guidance on discretionary and mandatory handcuffing, including additional drop-down choices in the checklist.
    c. Guidance has been updated to require a specific reason for an officer's incomplete video ("failed to activate camera"; "activated too late"; "de-activated camera too early - during incident"; "de-activated camera too early - at lock up")

2. Continue to work with Academy and the Field Operations Bureau to provide additional training on:
    a. FIC/EPR documentation
    b. Handcuffing
    c. Search/Pat Down
    d. SITA only when Booking
    e. Procedural Justice
3. Continue to work with Policy Standards Section to develop DTB's to address deficiencies.
4. Continue District SSA self-assessment audits to reinforce training and take corrective actions to progress the consistent improvement.
5. The Field Operations Bureau has developed the appropriate Corrective Action Plan and is currently working with OCDM to enhance it.

*Timothy A. Lindsey*
**Innovation Manager, Auditing**
**Professional Standards and Accountability Bureau**

## Appendix A – SSAPJ Audit Forms

SSAPJ Audit Forms:

# SSAPJ Incident Audit Form

Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

Read Me | ID Info | 1-6 | 7-8 | 9-11 | 12-15 | 16-18 | 19-22 | 23-29 | Misc | Video | Review

### Use?

If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

### Sample/Distribution Identifying Information

Field names (column names) are in grey text.

| Pick your name below. | In which sample is this incident? | Enter the Item # | If an FIC exists, enter the FIC ID # | If an EPR exists, enter the EPR ID # |
|---|---|---|---|---|
| Created By | Sample Type | Item Number | FIC ID | EPR ID |
| Tim Lindsey<br>Faith Thornton<br>Charmel Peterson<br>Betty Johnson<br>Michael Sarver<br>Matt Segraves | Stop<br>Search<br>Arrest | | | |

What is the reporting year, month, week, district, and platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
| | Nov | | 6 | Mounted |
| | Dec | | 8 | DWI |
| | Jan | | 7 | K9 |
| | Feb | | ISB | MC1 MC2 |
| | Mar | | MSB | VOWS |

## Known to Be Materially False

1 CD 124: If you suspect an officer relied on information he or she knew to be materially false or incorrect to make a stop or detention, contact your supervisor. CD 124 reads: NOPD officers shall not use or rely on information known to be materially false or incorrect in effectuating an investigatory stop or detention. Materially false information could be planted evidence or results from running a different plate.

## Stops Scorecard

2 If required, does an FIC exist for this stop?

CD 126, 139

See Ch. 41.12 FICs for guidance on when FICs are required.

FIC Exists If required
- Yes
- No
- FIC Not Required

If the FIC is under a different item number than the CAD item number, please record the itemnumber on the FIC.

FIC Item if Different than CAD

3 Did the officer submit the FIC to his/her supervisor by the end of the shift?

Review the BWC recording time and the FIC Submit Date. If a BWC does not exist, review the CAD times. For the purposes of this question, the end of the shift is when the officer left work.

[The FIC Submit date reflects the most recent submit date. When an FIC is kicked-back and an officer updates it and re-submits it, we lose the first submit date.]

CD 150, Ch. 41.12 P9

FIC Submitted By ETOD
- Yes
- No
- No FIC

4 Did the supervisor review the FIC within 72 hours? For the purposes of this question use the Submit Date and the Approval Date.

If the FIC is currently disapproved, use the Supervisor Last Modified Date.

CD 150 [modified interpretation, CD amendment likely], Ch. 41.12 P15

FIC Approved in 72Hrs
- Yes
- No
- No FIC

## Boilerplate Language

5 In the reports, did the officer(s) use specific descriptive language when articulating reasonable suspicion and/or probable cause for any stop, detention, search, or arrest?

CD 123, 145; Ch. 41.12 P1, 1.2.4 P16, 1.9 P14

Officers cannot use "boilerplate" or "pat" language, such as "traffic violation" or "officer safety" when explaining their actions.

Choose "Yes" if the officer did NOT use any boilerplate language. Choose "No" if the officer used boilerplate language.

No Boilerplate
- Yes
- No
- NA No FIC/EPR

If you selected "No", please record the boilerplate language in the FIC:

Boilerplate Explanation

**6** Are the video(s) and reports significantly consistent?

If there is anything you see on video that proves as aspect of the report to be inaccurate, choose "No."

Use the Inconsistency Categories below like a checklist. Check that each category is reported accurately.

CD 123; Ch. 1.9 P14; Ch 1.2.4 P63,65; Ch 82.1 P7-8; Rule 2 P3B

Videos and Reports Are Consistent

- Yes
- No
- NA No FIC/EPR
- NA No Video

If you chose "No," indicating something about the report is inaccurate, please explain below, including the relevant timestamp of the videos. Please list every inaccuracy.

Discrepancy Explanation

Please pick all the inconsistency categories that apply. These categories should match your discrepancy explanation above.

Inconsistency Categories

- ☐ Passenger Info
- ☐ Search Info
- ☐ Subject Info
- ☐ Exit Vehicle Info
- ☐ Result Info
- ☐ Reason for Stop Info
- ☐ Evidence Info
- ☐ Vehicle Description Info
- ☐ Consent to Search not Documented
- ☐ Other

**7** Do video or reports show the officer entered a residence to make the arrest?

See Chapter 1.9 paragraphs 27-29 for guidance.

Arrest in Residence

- Yes
- No
- NA - No Arrest

If yes, which of the following apply?

Arrest in Residence Circumstances

- Consent
- Exigent Circumstances
- Warrant
- None of the above (Not Compliant)
- NA - Not in Residence
- NA - No Arrest

**8 A** Do video or reports suggest a supervisor required to make the scene?

CD 143; Ch. 1.9 P9, 12

If the incident met the narcotics arrests exception in Ch. 1.9, choose "No."

Narcotics arrest exception requirements:
(a) The arrest only involved narcotics;
(b) The suspect was relocated to the station to test the narcotics;
(c) The supervisor was present at the station to review the arrest recommendation;
(d) And there were no injuries involved.

SupervisorRequiredtoMakeScene

- Yes
- No
- No - Narcotics Exception
- NA - No Arrest
- Unknown/DV

**8 B** If the supervisor was required to make the scene, please pick the reason below.

Reason Supe required to make scene

- One or more charges can be charged as a felony. Look up the charge and see if it includes "with hard labor" or "with or without hard labor"
- An officer used L2 or L3 force
- Custodial arrest for crossing or traversing a police cordon(Municipal Code §54-442) or resisting an officer (Municipal Code § 54-441)
- Custodial arrest and the most serious violation is vehicle infraction or simple drug possession
- Custodial arrest that is not in FQ or CBD & the charge is Disturbing the Peace, Criminal Trespass, Obstructing Public Passages, or Begging/Vagrancy
- Unknown/DV

**8 C** If the supervisor is required to make scene, does video show the supervisor made the scene?

CD 143; Ch. 1.9 P9, 12

VideoShowsSupeMadeScene

- Yes
- No
- NA - Not Required
- NA - No Arrest
- NA - No Video
- NA - Unknown/DV

We use these questions to ensure our universe of uses of force is complete. Reportable uses of force identified here will be included in the use of force audit.

**9** Did any officer use reportable force during this officer-civilian interaction?

UseOfForce

- Yes
- No
- No Video

**10** Is there a corresponding Blue Team Report? There likely won't be an APPROVED Blue Team report. But there should be an incomplete one.

[Because IAPro and BlueTeam are down and MAX is down, check the FTN log to see if a corresponding use of force report has been initiated.]

If you chose "No," indicating you believe this incident involves unreported reportable force, notify your supervisor.

ForceReported

- Yes
- No
- No Use of Force
- No Video

**11** If an officer used reportable force, give the video details including the min/sec mark of the force'

UoFVidDetails

We use these questions to ensure our universes of strip and cavity searches are complete. Such searches identified here will be included in the strip/cavity audit.

**12** Does the incident involve a strip or cavity search?

Strip Cavity Search Occurred

- Yes
- No

**13** If yes, is the strip or cavity search documented in the FIC or EPR?

If you chose "No," inidicating this incident involved an undocumented strip or cavity search, notify your supervisor.

Strip Cavity Documented

- Yes
- No
- NA-No Strip/Cavity

## Consent to Search Scorecard

**14** Did this incident involve a consent to search?

Sometimes officers will ask for consent when they do not need consent. If the officer had another valid legal basis to perform the search, it was not a search by consent.

Consent Search Occurred

- Yes
- No

**15** If yes, is the consent to search documented in an FIC or EPR?

If you choose "No," indicating this incident involved an undocument consent to search, notify your supervisor.

Consent Search Documented

- Yes
- No
- NA-No Consent Search

## Evidence

**16** If evidence was seized, is there a CE+P receipt?

A CE+P receipt should be attached to an EPR. They can also be in DTS.

CD 150; Ch 84.1 P8, 24

Evidence Documented

- Yes
- No
- No Evidence Seized
- No EPR

**17** If evidence was seized, was it submitted to CE+P before the next Code 1 call the officer(s) handled or ETOD, whichever is first? Review the Chain of Custody History report in BEAST and the unit's CAD activity. The date/time the item was submitted into property must be before the unit's next Code 1 arrival time or ETOD, whichever is first.

[Audit method incomplete for evidence placed in dropboxes.]

CD 150

Evidence Submitted Immediately

- Yes
- No
- No Evidence Seized

**18** If evidence was seized, and there is a CE+P receipt, does the description on the receipt match the evidence as seen on video?

CD 123; Ch 82.1 P7-8; RS 14-134.2, 14-130.1; Rule 2 P3B

Evidence Description Matches Video

- Yes
- No
- No Evidence Seized
- CE+P Receipt Not Available

## Supervisory Review

Because this section pertains to the entire incident, complete the rest of this form and the subject forms prior to completing this section.

**19** Did you find any non-compliance related to this incident?

Non-Compliance Should Have Been Addressed

- Yes
- No

**20** The following questions A-E determine whether a supervisor knew or should have known about the non-compliance:

**20 A** Is there non-compliance because there is missing documentation (FIC, EPR, etc.)?

Missing Documentation

- Yes
- No
- NA-Full Compliance

**20 B** Is the non-compliance evident in the report(s) (FICs/EPRs) and the report(s) are approved?

If a supervisor needed to watch video to know about the non-compliance, choose "No."

Non-compliance Evident in Approved Reports

- Yes
- No
- NA-Full Compliance

**20 C** Did a supervisor make the scene and did the non-compliance occur while the supervisor was on scene?

Supervisor On Scene During Non-Compliance

- Yes
- No
- NA-Full Compliance

**20 D** Was a supervisor required to watch the video?

Supervisors are required to watch videos if one or more of the following occurred: a use of force, someone was injured, a complaint was made or an officer told a supervisor that he/she thinks a complaint may be made, a vehicle pursuit, or an officer terminated his/her video early to protect the privacy of an individual.

Supervisor Required to Watch Video

- Yes
- No
- NA-Full Compliance

**20 E** Did the supervisor watch the video? Review the audit trail for the videos in Evidence.com.

Supervisor Reviewed Video

- Yes
- No
- NA-Full Compliance

**20 F** Did a supervisor know or should have known about the non-compliance?

Choose "Yes" if any of A-E are "Yes."

Supervisor Aware or Should Have Been Aware of Non-compliance

Yes
No
NA-Full Compliance

**21** Please list the SFLIDs for any corresponding SFLs or Control numbers for any corresponding FDIs?

SFLIDs-CNTRL Nos

**22** Did a supervisor address all the non-compliance you found related to this incident?

CD 144, 146, 151; Ch 1.9 P16-17; Ch 41.12 P16-17; Ch 35.1.7 P9; Ch 11.0.1 P16C

If a corresponding SFL or FDI exists but does not cover all non-compliance, please explain:

Non-Compliance Addressed by Supervisor

Yes
No
NA - Full Compliance

Supervisory Review Comments

## Procedural Justice

**23** Does video show the officer was reasonably professional and courteous when interacting with the subject or other civilians during the stop?

CD 181; Ch 41.13 P9A; Civil Service Rule 3?

Enter "No," if the officer(s) should have been more professional or courteous.

If you selected "No", please explain::

NotCourteousEnoughExplanation

Reasonably Courteous

Yes
No
NA - No Video

**24** If reasonably possible, does video show the officer verbally identify him/herself as a soon a practical?

CD 181; Ch 41.13 P9B

Identified

Yes
No
NA - No Video

| # | Question | Field / Options |
|---|---|---|
| **25** | If reasonably possible, does video show the officer explain the reason for the stop/interaction as soon as practical?<br><br>CD 181; Ch 41.13 P9B | Explained<br>Yes<br>No<br>NA - No Video |
| **26** | Does video show the office allowed the subject an opportunity to explain his/her situation, ask questions, or voice concerns? | Subject Could Explain<br>Yes<br>No<br>NA - No Video |
| **27** | If the subject was allowed to ask questions, and if the subject had reasonable questions or concerns, does video show the officer respond to them?<br><br>Ch 41.13 P9E | Responded to Subjects Qs<br>Yes<br>No<br>NA - No Video<br>NA - No Qs |
| **28** | Does video show the officer communicate the result of the stop/interaction to the subject (arrest, ticket, etc.)? | Conclusion<br>Yes<br>No<br>NA - No Video |
| **29** | Does video show the stop was no longer than necessary to take appropriate action?<br><br>CD 181, Ch 1.2.4.1 P20, Ch 1.2.4.3 P8; ; Ch 41.13 P9C<br><br>Constitutional law requires that stops are no longer than necessary to carry out the purpose of the stop. See Rodriguez v. United States, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ("If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'. . . [A] traffic stop 'prolonged beyond' that point is 'unlawful.'"). | Stop No Longer than Necessary<br>Yes<br>No<br>NA - No Video |

## Flag for Academy Training

**30 A** Would this make a good training video?:

FlagforAcademy

- Yes
- No
- No Video

**30 B** If you are flagging the video for the academy, please identify the exact portion of the video you think the academy should consider using.

FlagforAcademyBWCInfo

**30 C** If you want to flag this video for Academy, please select your reason(s):

FlagForAcademyReason

- Video Shows Exemplary Police Actions
- Video Shows Non-Exemplary Police Actions
- Use of Force Tactics
- Handcuffing
- Arrest and Search
- Other

## EPIC

**31** Does this incident involve an EPIC Moment; an officer confronting a peer about what they could do better? (Doing something encouraged by NOPD's EPIC program?)

EPICIncident

- Yes
- No
- No Video

If yes please explain, including the video label and the minute of the example:

EPICExplain

## Video Coverage

**32** Did each officer who conducted a stop, search, or arrest and who has been issued a BWC activate his/her BWC as required? And did each supervisor who made the scene and who has been issued a BWC activate his/her BWC as required?

Ch 41.3.10 P11

# of such officers who had complete video (numerator)

CompleteVidNum

/

# of such officers (denominator)

CompleteVidDenom

List the officers you included in the denominator. And describe any incomplete or missing video.

CompleteVidExplain

## Video Info

**33** To help someone review your work, please record below the officer name and BWC ID (usually an Item #) for the best video coverage of the incident. Include minutes if the video is long and the important parts are hard to find. If L3 is critical, please include A# and starting time. If you did not watch all the videos, record the minutes of the videos you watched.

Video Info



# SSAPJ Subject Audit Form

Instructions | Identifying Info | Subject Info | Stop | Searches | Arrests | Miscellaneous | Immigration | LGBTQ | Review

1. Watch as much video as reasonably possible to ensure you have thoroughly reviewed the incident. You must watch video of all the interactions between an officer and a non-employee. You may skip through or fast forward through parts of the video that do not involve interactions with non-employees. If another officer interacts with a non-employee and you cannot see and hear the interaction in the video you are currently watching, you must watch the other officer's video, if it exists. Clearly document the video segments you watch under question 31 - Video Info of the SSA Incident form so that any reviewer knows exactly what video segments you watched and did not watch.

2. Notify your supervisor when:
a. It appears officers rely on demographics to establish reasonable suspicion or probable cause for a stop, detention, search, or arrest.
b. It appears officers rely on information they know to be materially false to conduct a stop, detention, search, or arrest.
c. You observe policy violations that are not captured by your audit results
d. Officers' actions are egregious and therefore require prompt intervention

3. Do not discuss this incident with any auditor, peer, or supervisor, until you have thoroughly reviewed the incident.

4. If you do not think this incident involves a stop, search or arrest, please discuss the possible deselection with an auditor or the ARU supervisor. If you decide to deselect, close this form without saving and record the deselection in the deselection log.

***Complete this form for each subject stopped, searched, or arrested for every incident in the Stop, Search or Arrest sample. If the subject was not documented in the reports, complete the fields based on your observations.***

A stopped subject is:
- a suspect in an investigation with whom an officer is interacting in person
- someone an officer attempts to identify and who is not a victim or witness

| Reviewing Auditor | In which sample is this incident? | Enter the Item # | Enter FIC ID | Enter the EPR ID # |
|---|---|---|---|---|
| Reviewing Auditor | Sample Type | Item Number | FIC ID | EPR ID |
| Tim Lindsey<br>Faith Thornton<br>Charmel Peterson<br>Betty Johnson<br>Michael Sarver<br>Matt Segraves | Stop<br>Search<br>Arrest | | | |

What is the reporting year, month, week, district, platoon?

| Review Year | Review Month | Week | District | Platoon |
|---|---|---|---|---|
| 2019 | Jun | WK1 | 1 | A |
| 2020 | Jul | WK2 | 2 | B |
| 2021 | Aug | WK3 | 3 | C |
| 2022 | Sep | WK4 | 4 | GA |
| 2023 | Oct | WK5 | 5 | Promenade |
| | Nov | | 6 | Mounted |
| | Dec | | 8 | DWI |
| | Jan | | 7 | K9 |
| | Feb | | ISB | MC1 MC2 |
| | Mar | | MSB | VOWS |
| | Apr | | Other | TIGER |
| | May | | SOD | GANG |
| | | | | Other |

## Subject Info

If the subject was not documented in the reports, complete the fields based on your observations.

Subject First

Subject Last

Subject Sex

- Male
- Female
- Unknown

Subject Race-Ethnicity

- Black/African-American
- White
- Hispanic/Latino
- Asian
- Amer.Ind./Alaskan Nat.
- Unknown

Subject DOB -And- Event Date -Or- Subject Age

## Subject Stop

**1 A** Based on all the evidence available to you, did the officer(s) have reasonable suspicion or probable cause to stop this subject?

Ch. 1.2.4.1, Ch 41.13 P10 and others

Reasonable Suspicion (Definition)—Articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect that criminal activity has been or is about to be committed.. The standard for reasonable suspicion is less than probable cause but must be more than a hunch or a subjective feeling.

Probable Cause (Definition)—The facts and circumstances known to the officer at the time that would justify a reasonable person in believing the suspect committed or was committing an offense.

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

RS/PC to Stop

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect

**1 B** If you chose "No" for 1 A, therefore indicating there was no reasonable suspicion or probable cause to stop the subject, please explain:

No RS/PC to Stop Comments

**2 A** Does the report clearly articulate reasonable suspicion or probable cause to stop this subject?

Refer to guidance in 1 A. Additionally, if the officer relied on boilerplate language, choose "No."

CD 122, 123, 126, 149; Ch 41.13 P10; Ch 41.12 P12H, Ch 1.9 P14

If this subject was ID'd and was not suspected of any crime (e.g., a passenger in a vehicle who was asked for ID without being suspected of a crime), choose "No-ID'd and NOT a Suspect."

RS/PC to Stop in Report

Yes - RS
Yes - PC
No
No-ID'd and NOT a Suspect
No-No FIC/EPR

**2 B** If you chose "No" for 2 A, therefore indicating the officer did not document reasonable suspicion or probable cause to stop this subject, please explain:

No RS/PC to Stop in Report Comments

**3 A** If the officer put the subject in handcuffs, did the officer document a reason to handcuff in the FIC?

Ch. 1.3.1.1 P25

If the FIC checkbox for "Arrest Made" under "Actions Taken" is checked and the video or FIC documents the subject was taken to lock-up, choose "Yes."

If an FIC does not exist and one was required per Ch 41.12, choose "No-No FIC."

If you chose "Yes," what was the reason for handcuffing documented in the FIC?

Reason for Handcuffs Documented

Yes
No
No-No FIC
NA-No Handcuffs
NA-FIC Not Required

Reason for Handcuffs Text

**3 B** If this subject was handcuffed, does the evidence available to you show the handcuffing was within policy? Record compliance with discretionary and mandatory handcuffing requirements separately.

Ch. 1.3.1.1

See Ch. 1.3.1.1 P 12, 13, 22 for guidance. These paragraphs allow an officer to handcuff a subject if one of the following are true:

- the officer intended to book the subject (take to lock-up)
- the subject resisted detention
- the subject posed a safety concern
- the subject posed a flight concern, or
- the subject posed an interference concern.

However, also see P 30-41 for special circumstances under which subjects may not be handcuffed.

If based on your understanding of Ch 1.3.1.1 you think the subject was handcuffed in violation of policy, choose "No" and explain below. If you think the handcuffing was within policy, choose "Yes" and explain below.

Discretionary Handcuffs Within Policy

Yes
No
No Handcuffs

Mandatory Handcuffs Within Policy

Yes
No
No Handcuffs

Handcuffs Within Policy Comments

## Subject Searches

**4** Based on all the evidence availabe to you, did the officer(s) have a valid legal basis to search the subject?

Ch. 1.2.4 P1

An officer must have a legal reason to stop a subject and a legal reason to search a subject in order to search a subject.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

If a search of a vehicle occurs, most of the time it will make the most sense to include the search on the driver's audit form. There may be scenarios in which it makes more sense to include the search on a passenger's audit form.

Enter the number of searches conducted on this subject and this subject's property that had a valid legal basis.

Search Legal Numerator

/

Enter the number searches conducted on this subject and this subject's property.

Search Legal Denominator

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance. Hypothetical text: "Vehicle Exception/Pat Down/Consent to Search Person/Search Incident to Arrest. There does not appear to be probable cause to justify the vehicle exception to the warrant requirement."

Search Legal Comments

**5** Does the report document a valid legal basis for every search of this subject?

CD 149; Ch 41.12 P12I-L; Ch 1.2.4 P62A; Ch 82.1 P4

If the FIC indicates a pat down occurred the justification for the pat down must give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous.

Refer to Ch. 1.2.4 Search and Seizure for more guidance. Discuss the search(es) with an officer if necessary.

See guidance above for vehicle searches.

Enter the number of searches conducted on th subject and this subject's property for which th FIC

Reason to Search in Report Numerator

/

Enter the number of searches conducted on th subject and this subject's property.

Reason to Search in Report Denominator

Please describe the searches conducted on this subject and this subject's property and explain any non-compliance.

Reason to Search in Report Comments

| 6 | If a pat down was correctly indicated, did the officer give specific details about the subject of the pat down that would lead a reasonable person to believe the subject was armed and dangerous in the justification for pat down text box?<br><br>Ch 41.12 P12J<br><br>If one of the reasons the officer conducted the pat down was for contraband, choose "No."<br><br>If you chose "No" for "Justification Specifies Armed and Dangerous," please pick a noncompliant category. Leave blank if you chose "Yes." | PatDownJustification<br><br>██████████<br>Yes<br>No<br>NA-No Pat Down<br><br><br>PatDownNotCompliantCat<br><br>Justification Insufficient<br>For More Than Weapons<br>Justification Insufficient & For More than Weapons |
|---|---|---|
| 7 | Was this subject on parole or probation?<br><br>Use the spreadsheet provided by the corrections department. Search by subject name, demographics, and address. | Search Subject on Probation or Parole<br><br>Yes<br>No<br>Subject Not Searched |
| 8 | Was the arrest gist for this subject approved by a supervisor before the subject was booked by the sheriff?<br><br>[need to verify ability to audit]<br><br>CD 145; Ch 1.9 P13,49-50 | Supervisor Approved Gist Prior to Booking<br><br>Yes<br>No<br>NA-Existing Warrant<br>Subject Not Arrested |
| 9 | Based on all the evidence available to you, did the officer have probable cause to arrest this subject?<br><br>CD 141; Ch 1.9 P1<br><br>Is at least one charge good? Do you believe:<br>-the officer had a legal reason to stop the subject,<br>-the officer had a legal reason to search the subject, if relevant to the charge,<br>-and the facts and circumstances known to the officer at the time would justify a reasonable person in believing the suspect committed or was committing an offense?<br><br>Please explain PC for the arrest or the lack thereof.<br><br>OfficerHadPCtoArrest Comments | OfficerHadPCtoArrest<br><br>Yes<br>No<br>Subject Not Arrested |
| 10 | Did the officer clearly document the probable cause in the report (FIC or EPR)?<br>In other words, does the report give the facts and circumstances known to the officer at the time which would justify a reasonable person in believing the suspect committed or was committing an offense?<br><br>The report must also clearly articulate a legal reason to stop the subject, and a legal reason to search the subject, if a search was relevant to the arrest charge.<br><br>Ch 1.9 P14; Ch 82.1 P4; Ch 41.12 P15<br><br>Please explain PC for the arrest or the lack th as articulated in the report<br><br>PC Clearly Articulated Comments | PC Clearly Articulated<br><br>Yes<br>No<br>Subject Not Arrested |

## Subject Miscellaneous

**11** Did the officer use their discretion to give the subject a break?

Just because an officer checks the verbal warning box in the stop result section of the FIC, doesn't mean a break was given. There must be an offense for which the officer chooses not to cite, summons, or arrest.

Break Given

- Yes
- No
- No Video
- NA-No Crime

If the officer gave this subject a break, please explain what officer could have done but decided not to.

Break Given Explain

**12** Did the officer run the subject's ID?:

ID Check

- Yes
- No
- No Video
- The Offcer did not have a chance to

**13** Did the officer request translation services, if needed?

LEP

- Yes
- No
- No Video
- No Translation Needed
- Flag

## Subject Immigration

**14** Was the subject arrested because of or in part due to the subject's immigration status?

ArrestImmigrationStatus

- Yes
- No
- Not Arrested
- No Video

**15** Was the subject questioned about their immigration status in a manner that was not relevant to the crime in question?

QuestionedImmigrationStatus

- Yes
- No
- No Video

ImmigrationComments

#Name?

## Subject LGBTQ

**16** Did the officer say something that is possibly offensive about/to LGBTQ individuals?

OfficerCommentLGBTQ

Yes
No
No Video

**17** Did the officer address the subject by their chosen name, title, and pronoun?

OfficerAddressLGBTQ

Yes
No
Gender Identity Unknown
No Video

LGBTQComments:

#Name?

Consent to Search Audit Fo

Instructions | Identifying Info | Subject Info | Audit Criteria | Supervisory Review | Review

1. In the FIC, did the officer accurately check the appropriate boxes to indicate a consent to search occurred?

If a consent to search did not occur choose "No - Consent to Search Did Not Occur."

If a consent to search occurred but the FIC was not completed correctly choose "No - Consent to Search Occurred, FIC Not Accurate."

If a consent to search occurred but an FIC does not exist for the incident choose "No - Consent to Search Occurred, No FIC."

FIC Checked Accurately

Yes
No-Consent to Search Did Not Occur-FIC Not Accurat
No-Consent to Search Occurred, FIC Not Accurate
No-Consent to Search Occurred, No FIC

2. If a consent to search occurred, does video show the officer notified a supervisor before he/she conducted a search based on consent? Please provide timestamp of the video.

CD 128

Supervisor Notified Before Search Conducted

Yes
No
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

3. If a consent to search occurred, does video show the supervisor approved the consent to search before the search was conducted? Please provide timestamp of the video.

CD 128

Supervisor Approved Before Search Conducted

Yes
No
No-Approved After
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

4. If a consent to search occurred, does video show the officer

Officer Informed Subject of His/Her Rights

Submit Record | Enter Status | Return to M

Record: 42 of 42 No Filter Search

 # Consent to Search Audit Form

NA-Incomplete Video
Consent to Search Did Not Occur

4. If a consent to search occurred, does video show the officer informing the subject of his or her right to refuse and to revoke consent at any time?

CD 129

Officer Informed Subject of His/Her Rights

Yes
No
NA-No Video
NA-Incomplete Video
Consent to Search Did Not Occur

5. If a consent to search occurred, does a Form 146 exist for the consent to search?
CD 129

Form 146 Exists

Yes
No
Consent to Search Did Not Occur

If yes, please help the reviewer find the form by giving the item # of the EPR to which the form is attached,for example.

FindForm

6. If a consent to search occurred, does form 146 include the signature of the person granting consent?

CD 131

Subject Signed Form 146

Yes
No
NA-No Form
NA-Attachments Not Available
NA-Consent to Search Did Not Occur

7. If a consent to search occurred, does form 146 include the signature of the officer requesting consent?

Officer Signed Form 146

Submit Record | Enter Status | Return to Main

Record: 42 of 42 No Filter Search

## Appendix B – Report Distribution

Superintendent Shaun D. Ferguson

Chief Deputy Superintendent John Thomas – Filed Operations Bureau

Deputy Superintendent Otha Sandifer – Professional Standards and Accountability Bureau

Deputy Superintendent Arlinda Westbrook- Public Integrity Bureau

Deputy Superintendent Christopher Goodly- Management Services Bureau

City Attorney Sunni LeBeouf – City Attorney's Office

Assistant City Attorney Isaka Williams – Superintendent's Office