

**Prepared Public Hearing Remarks of Jonathan S. Aronie,
Lead Monitor, NOPD Consent Decree
Before Judge Susie Morgan,
U.S. District Court For The Eastern District of Louisiana
April 20, 2022**

Thank you Judge Morgan. On behalf of the entire Monitoring Team, I'm thrilled to be here to share with the Court and the public some recent NOPD milestones under the Consent Decree. Before getting to that, however, I'd like to provide a brief overview of where we came from, where we are, and where we are going.

As you well know, this Court appointed the Monitoring Team in August 2013. Since that time, we have vigilantly served as the Court's and public's eyes and ears regarding every element of the Consent Decree. We do this using a number of tools:

- We conduct audits,

- We perform reviews,

- We review and suggest revisions to policies, procedures, directives, and lesson plans,

- We meet with community stakeholders to learn from their experiences interacting with the NOPD, and

- We meet with and ride with officers at all ranks to ensure we understand the nuances and complexities of the job from their perspective.

These activities afford us a holistic perspective of NOPD's level of effort and level of success in meeting its obligations under the Consent Decree.

In addition to our monitoring function, we also routinely provide technical assistance to the Department. Our team is made up of police practices experts, civil rights experts, PhDs, lawyers, and former police leaders. We have made these experts available to the NOPD since the outset of the Consent Decree, and, to its credit, the NOPD has taken great advantage of the resources our team offers.

Over the course of our eight years together, I have seen quite a transformation within the NOPD. That transformation has allowed us to move most areas "into the green" — i.e., into compliance with the requirements of the Consent Decree.



There are 17 discrete sections of the Consent Decree. When we began this process, obviously, all 17 areas were "in the red,"; in other words, we assigned them to the "no meaningful progress" category.

In January 2019, we reported to the Court at a public proceeding at Loyola University New Orleans that NOPD had made significant progress in every area. Specifically:

- Ten areas were moved "into the green"; in other words, they had achieved "Full and Effective Compliance" with the Consent Decree,

- Two areas were moved to "Nearing Full & Effective Compliance," and

- Five areas were given the "Significant Progress" designation.

Two years later, in January 2021, we again met in a proceeding hosted by Loyola New Orleans, and we again updated the Court on NOPD's progress. At that proceedings, we reported

- 13 areas in "Full and Effective Compliance,"

- 4 areas "Nearing Full & Effective Compliance," and

- No areas "in the blue" i.e., in the "significant progress" category.

This all matters, Your Honor, because once all areas are "in the green," NOPD can begin its two-year Sustainment Period, which is the path out of the Consent Decree. I'm very pleased that, as you will hear today, we will be asking the Court to move two more areas "into the green." These areas are:

- Performance Evaluations & Promotions, and

- Supervision.

We are impressed with NOPD's dedication and hard work, very proud of its accomplishments to date, and very proud of the achievements you will hear about today. But it's important I take a minute and be very clear about what moving an area "into the green" means. It means the NOPD has reasonably met its obligations under the Consent Decree. It means that the structures required by the corresponding Consent Decree section are in place, are working, and are being audited. But it does not mean everything is perfect. It does not mean there isn't room for further improvement. And it does not mean that everything is as we would do it if we ran the Department.

Take Supervision as an example. As you will hear today, NOPD has met its obligations under the Consent Decree. But there is room for further improvement. Indeed, we are requesting NOPD be



moved "into the green" in this area even though the U.S. Department of Justice, the Monitoring Team, and NOPD itself already have identified specific items requiring additional effort or further improvement. While these are not significant (if they were, there would be no moving to green), the items will be expressly identified and put in writing by the parties so that neither they nor NOPD's commitment to attend to them will be forgotten. What gives us comfort in making these compliance recommendations to the court is the NOPD's agreement to continue looking for ways to improve current processes. And my team commits to continue supporting and reviewing that effort.

It's also important to recognize that a "green" finding provides no guarantee that future problems will not materialize. There will be mistakes, occasional backsliding, sporadic misconduct, and the like. The recent OPSE scandal regarding officers taking advantage of their secondary employment details gives us an unfortunate example. There will be other transgressions in the future. But we have greater confidence that when presented with such problems the NOPD will face them rather than try to sweep them under the rug.

In that sense, the recent OPSE issue itself, while quite disturbing, reflects much about the changed NOPD at the same time. A diligent citizen discovered the issue due to data made available by the NOPD as part of its commitment to public transparency. PIB and PSAB took the allegations seriously and launched an extensive, multi-phase investigation. PIB and PSAB went beyond the individuals identified by the citizen. And the NOPD coordinated with the OIPM to ensure a thorough investigation.

We and the Independent Police Monitor have monitored NOPD's OPSE investigation, but have not reviewed NOPD's findings in detail yet, and cannot, at this point, take a position on whether every element was handled properly. But we have seen elements that reflect significant improvement over the approach NOPD took before the Consent Decree. In this context, it's worth noting we have had the pleasure of working closely with the new IPM, and look forward to continuing and growing that relationship as we move into the sustainment period.

After today, assuming the Court approves our recommendations, the NOPD will be left with three areas of the CD not yet in full and effective compliance:

- Community Engagement,

- Stops/Searches/Arrests, and

- Bias Free Policing.

Each is "Nearing Full and Effective Compliance." We hope to be in a position to move these areas "into the green" in the coming months.

en



Today, however, is about what *currently is in the green*, and, with that, I thank you for letting me provide this overview. Unless you have any questions, I would like to turn the lectern over to the NOPD to tell us about its recent achievements.

Thank you.