UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br> Plaintiff, <br><br> V. <br><br> **CITY OF NEW ORLEANS**, <br> Defendant. | CIVIL ACTION NO. <br> 2:12-CV-01924-SM-DPC <br><br> JUDGE SUSIE MORGAN <br><br> MAG. DONNA PHILLIPS CURRAULT |

### REPLY BRIEF IN SUPPORT
### OF MOTION TO TERMINATE THE CONSENT DECREE

**DAVILLIER LAW GROUP, LLC**
Daniel E. Davillier, La. No. 23022
Charles F. Zimmer II, La. No. 26759 (T.A.)
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

**Counsel for the City of New Orleans
and the New Orleans Police Department**

Contents

I. Perfection is an Unattainable Standard ...................................................................1

II. The City has Substantially Satisfied the Decree. .....................................................2

   A. Substantial Compliance Has Been Achieved. ....................................................3

      1. Stop, Searches, and Arrests (SSA) (Section V) .................................................4

      2. Bias-Free Policing (Section VIII) ......................................................................4

      3. Use of Force (Section III) ..................................................................................5

      4. Supervision (Section XV) ..................................................................................6

III. Inequitable Modifications to the Decree ...................................................................7

      1. Public Statements Regarding Pending Litigation ...............................................8

      2. The prohibition on management has been repeatedly violated .........................9

   A. Lack of critical mandatory reporting by the Monitor .......................................10

IV. Conclusion ................................................................................................................10

Cases

*Chisom v. Edwards*, 2022 U.S. Dist. LEXIS 100009, at *16 (E.D. La. May 24, 2022) .............. 3

*Frew v. Young*, No. 21-40028 (5th Cir. 2022) 2022 U.S. App. Lexis 1027* 2022 WL 135126 .. 2

*Horne v. Flores*, 557 U.S. 433, 448 (2009) ................................................................................. 9

*In re Gee,* 941 F.3d 153, 159 (5th Cir. 2019). ............................................................................. 7

Statutes

Federal Rule of Civil Procedure 60 ................................................................................................ 3

**MAY IT PLEASE THE COURT**, the City of New Orleans files this reply pursuant to the Court's Order of April 27, 2023 (Rec. No. 692). In order to respond to the DOJ's opposition, which is based primarily on events occurring since the City's motion was filed on August 16, 2022, the City filed a 44-page reply brief. The Court denied the City's motion for leave and limited the City's reply to 10 pages to be filed by May 8, 2023. The City replies as follows:

I.     PERFECTION IS AN UNATTAINABLE STANDARD

DOJ prepared a report in 2011 that stated NOPD was riddled with systemic unconstitutional police policies and practices, with no functional disciplinary safeguards. This system, DOJ concluded, led to the systemic violations of the Fourth and Fourteenth Amendment rights of New Orleans residents. That was then. After 10 years of federal control at the molecular level, NOPD has rebuilt every practice, procedure, and training method of the department. Most NOPD officers' entire NOPD career has occurred while under the Consent Decree.

As a cursory review of any news article about its recent opposition brief highlights, the DOJ cites a deadly chase, a Tazing incident, and isolated statistics to make its case for a violent and undisciplined NOPD. Buried in the details is that: (i) the deadly chase was from four (4) years ago and resulted in four officers being terminated and enhanced discipline for even justifiable chases thereafter; (ii) the use of the Tazer in the example cited was found to be *justified* by the Civil Service Commission after NOPD disciplined the officer;[1] and (iii) the cherry-picked statistics ignore that the City and DOJ contractually agreed to the methods to gauge compliance to avoid highlighting individual instances of policy violations.

---

[1] Exh. 105, Dept. of Civil Service Decision, No. 9435.

Full and Effective compliance is obtained when NOPD has drafted complaint policies, trained officers on those policies, and shown that the policies have been put into practice – not that policies are never violated.[2] "[W]e all must remember that perfection is not the goal of the Consent Decree, full and effective compliance is."[3] NOPD has reached substantial compliance.

## II.     THE CITY HAS SUBSTANTIALLY SATISFIED THE DECREE.

The Fifth Circuit Court of Appeals explained that "substantial compliance" with a consent decree excuses deviations that do not severely impair the consent decree's purpose.[4] The *purpose* in this case was to provide constitutionally compliant policing services to residents of New Orleans in response to DOJ's allegations of violations of the Fourth and Fourteenth Amendments of the Constitution.[5] The data available today shows that after many years of federal monitoring, NOPD has made incredible advancements and has been providing constitutionally compliant policing for more than two years.[6]

"Full and effective compliance" is the defined burden of proof the City must meet to end federal monitoring under the first path of Paragraph 491. Rec. Doc. 565, at paras. 486, 491, 492. The City acknowledges that the Court has recently stated that it never found any section in substantial or full compliance. DOJ has echoed this position, claiming it never agreed NOPD was compliant with any section of the Decree. The City respectfully disagrees and points out

---

[2] Consent Decree (Rec. Doc. 565) at para. 447.
[3] Exh. 116 at 8:23-25.
[4] *Frew v. Young*, No. 21-40028 (5th Cir. 2022) 2022 U.S. App. Lexis 1027* 2022 WL 135126
[5] *See* Consent Decree (Rec. Doc. 565) at p. 1, *et seq*.
[6] *See* Exh. 110, at 35:15 – 36:9; Exh. 111, Exh. 115; Exh. 106; and Exh. 116 at 5:19-6:1 and OCDM presentation at http://nopdconsent.azurewebsites.net/Media/Default/Documents/Reports/Loyola%20Proceeding%20Deck%20-%20March%202021.pdf

examples of the supporting statements of all parties involved.[7] It is a significant and demoralizing change in circumstances to have known and agreed upon compliance determinations pulled out from under NOPD's feet ten years into the process. This change is inequitable, and irrevocably harms the NOPD.[8]

A. **Substantial Compliance Has Been Achieved.**

In further support of its position, the NOPD has prepared Exhibits 108 and 117, which encapsulate the most recent compilation of all parties' input on what specific paragraphs NOPD is in compliance with, which paragraphs are still under review by the Monitor and DOJ, and which paragraphs require further proof.[9] As of this filing, NOPD has undisputedly shown compliance with 87% of the individual paragraphs of the Decree. Of the 13% remaining, less than 1.0% is actually non-compliant, as opposed to "under review." The City reasserts that even with those few paragraphs still to be met, NOPD has reached "substantial compliance" as defined by the Fifth Circuit to terminate federal control. Federal Rule of Civil Procedure 60(b)(5) authorizes the Court to relieve the City of New Orleans (the "City") from the Decree (R. Doc. 565) if the "decree has been satisfied or implemented."[10] Looking from a different angle, the NOPD has a much better compliance rate than even the near-90% stated above.[11]

---

[7] Exh. 116, at 78:15-21; 22:9 – 11; and 86:23 – 87:1. See also, Rec. Doc. 643, and Exh. 103, 12/9/22 Mygatt letter, noting "Areas Previously Found To Be In Compliance."
[8] "Review of the use of monitors in civil settlement agreements and consent decrees involving state and local governmental entities", 9/13/2021, at pp. 8-9, at www.justice.gov/ag/page/file/1432236/download
[9] See also, video of "NOPD Consent Decree Public Meeting - April 22, 2023 - Fifth District" at https://www.youtube.com/watch?v=xwWjmFblXiU.
[10] *Chisom v. Edwards*, 2022 U.S. Dist. LEXIS 100009, at *16 (E.D. La. May 24, 2022); *Frew v. Young*, No. 21-40028 (5th Cir. 2022) 2022 U.S. App. Lexis 1027* 2022 WL 135126.
[11] The Monitor's 2022 Annual Report raises issues which are addressed by NOPD's response thereto, attach as Exh. 121.

1. ***Stop, Searches, and Arrests* (*SSA*) (*Section V*)**

If the Decree were followed by DOJ and the Monitor, the Monitor would propose audit methodologies and conduct audits on NOPD data. Instead, the Monitor has largely hoisted its obligations to prepare audit methodologies and to conduct audits on NOPD. The methodologies were agreed to by DOJ after extensive line-by-line edits. As a result of those extremely detailed efforts, NOPD conducted an audit of Stop, Search and Arrest for March, April and May of 2022. (Op. Ex. 1, Rec. Doc. 682-1) After resolving all comments of DOJ and the Monitor, NOPD was allowed to publish its audit report.

DOJ ignores the actual findings of the audit and claims the audit report shows that NOPD is not compliant with the Decree. There were 38 SSA elements audited in June 2022. The overall compliance score was **96%** across all 38 elements.[12] Pursuant to the terms set between the parties, NOPD is compliant with the SSA section of the Decree.

2. ***Bias-Free Policing (Section VIII)***

The Decree unequivocally requires the Monitor to report on each and every section of Decree at least annually, ***unless*** a section is already deemed compliant by all parties.[13] Moreover, the Decree requires the Monitor to spell out to NOPD the necessary steps to reach compliance on a quarterly basis.[14] For Section VIII, Bias-Free Policing, a finalized protocol for the first-ever audit was firmed up in February 2022. As the audit report notes, "[i]t is important to note that the group did not have the benefit of a guide or SOPs from other departments to aid in the design of the audit."[15] This first ever audit report (every word of which is approved by

---

[12] Rec. Doc. 682-1, Oppo. Ex. 1, SSA Audit by NOPD, and Exh. 116, at 77:1-5.
[13] Consent Decree (Rec. Doc. 565) at para. 452.
[14] Consent Decree (Rec. Doc. 565) at para. 457.
[15] Oppo. Ex. 3 at 9, Rec. Doc. 682-3.

4

DOJ) warns about the limited utility of the data generated, stating that, "[i]t is important to note that a disparity in the data does not conclusively mean bias exists but NOPD is committed to further investigating disparities identified by data analyses and implementing programs in an attempt to resolve them." *Id.* DOJ now clings to the faintest claim of bias to justify perpetual federal control. This is not the agreed upon standard for determining compliance of this utterly subjective area.

DOJ also claims the data shows a lack of sustained compliance regarding limited English proficiency.[16] The Decree requires NOPD to translate six (6) documents into Spanish and Vietnamese.[17] NOPD translated each of the six required documents by 2021. In addition to the six documents identified by the Decree, NOPD has translated an additional 33 documents. DOJ complaints are meritless.[18] The most recent audits show what was true in April of 2022, that NOPD has achieved substantial compliance with the Bias-Free Policing section of the Decree.

### 3. *Use of Force (Section III)*

DOJ admits the Monitor publicly announced that NOPD had reached full and effective compliance with Use of Force in 2019. And as the Court has announced, "[u]ses of force are consistently reported and evaluated by thoughtful supervisors and leaders."[19] And the progress in the use of force in New Orleans is something DOJ should celebrate as an example of achievement under a Decree.[20] Instead, DOJ seeks to maintain control by ignoring systemic

---

[16] Oppo. at 22, Rec. Doc. 682.
[17] Consent Decree (Rec. Doc. 565) at para. 189(j).
[18] Oppo. at 21, Rec. Doc. 682, see also, *See, e.g.,* 2021 LEP Annual Report (posted on NOLA.gov), at p. 4 (Listing all of the documents translated including the six (6) required by the Decree 189(j); March 2022 - August 2022 LEP Audit Report (posted on NOLA.gov); and September 2021 - February 2022 LEP Audit Report (posted on NOLA.gov).
[19] Exh. 116, at 7:17-18.
[20] A summary of every use of force review proceeding in 2021 is attached as Exh. 100.

pattern and practice success and extensive disciplinary proceedings to focus on unrepresentative statistics, and individual officers failing to follow NOPD policies.[21]

Far worse than focusing on real, *but isolated,* incidents, DOJ also seeks to tarnish NOPD with disproven conspiracy theories. Specifically, DOJ cites at page 10 of its opposition brief that there was "[a]n alleged conspiracy among NOPD officers in the 8th District to provide false testimony concerning11 arrests." DOJ knows the **fact** that five (5) officers of an 8th District task force had criminal and administrative allegations levied against them. The criminal and administrative claims were unfounded. The FBI (of the same Justice Department as DOJ) was informed of and given access to the information regarding the case. The FBI did not pursue any further actions. This is the modern DOJ consent decree. The agreed upon audit metrics should drive compliance, not conspiracy theories.

Contrary to the picture DOJ put forth for public consumption, OIPM data shows that NOPD's use of force has declined both in quantity and *severity* over the years while discipline has heightened immensely.[22] This naturally results in more "out of policy" findings, which is not the same as unconstitutional policing. NOPD remains in compliance with the Use of Force provisions of the Decree.

4.      ***Supervision (Section XV)***

Not only is NOPD compliant with expansive elements of the Decree, but it has created a model system. As the Court noted, "[supervision] is a major element of what was required by and requested by the Department of Justice… And you've really – I think this is a model of a

---

[21] *See* Oppo. at 27, Rec. Doc. 682 and Exh. 116, at 7:15-17
[22] Use of critical force in 2022 declined by 73% as compared to 2012. *See, e.g.*, https://nolaipm.gov/wp-content/uploads/2022/08/2021-OIPM-Annual-Report.pdf at p. 25, *et seq.*, and the 2022 Annual Report of the OIPM to be published soon.

6

system…"[23] "A Fortune 500 company would be proud to have the kinds of processes that you have implemented."[24] This model system of April 2022 could not have been broken so quickly. DOJ's brief does not present accepted compliance evidence to demonstrate that this area has fallen out of full and effective compliance, much less substantial compliance.

**III.   INEQUITABLE MODIFICATIONS TO THE DECREE**

The City contends that in the noble pursuit of world class institutional reforms the Court has exceeded the broad discretion provided by Article III and the Decree in a manner that consistently harms the City and NOPD and renders the Decree far more onerous than agreed to in 2012.[25] The Court has reiterated multiple times since the City's motion was filed eight months ago that it is the "monitor" defined in the Decree. As the City has noted, it respectfully disagrees with this interpretation of the Decree and asserts that the Court's functions as monitor represent a fundamental change to the terms of the Decree. These changes render the process drastically more onerous and warrant termination of the Decree pursuant to Rule 60(b)(5).

The Decree sets out the role of each party, the Monitor, and the Court, as separate and distinct. *See, e.g.*, Consent Decree (Rec. Doc. 565) at paras. 23, 451, 478, 479, 480, 483, 484, 491, 492. Conflating the roles of the Court and the court-appointed monitor under the Decree deprives the City of the neutral arbiter of disputes set out in that controlling agreement. The Code of Conduct for United States Judges and the American Bar Associations' Model Code of Judicial Conduct both highlight the inequity of having the Court serve as the investigator of NOPD's daily compliance efforts, conducting meetings with groups of City employees to guide

---

[23] Exh. 116, at 44:9-15.
[24] Exh. 116, at 58:24 – 59:4, 76:9-14.
[25] *See, e.g., In re Gee,* 941 F.3d 153, 159 (5th Cir. 2019).

7

hiring and other services, and assigning tasks directly to them.[26] The Court functioning in this investigative role deprives the City of a neutral arbiter of highly contested issues.

Interpreting the Decree to cast itself as the monitor referenced in Paragraph 472, the Court has engaged in extensive *ex parte* communications with City and NOPD employees outside of the presence of legal counsel or their supervisors. The City has objected to this practice and asserts that it has irreparably harmed the City's efforts to demonstrate compliance with the terms of the Decree.[27] This harm is ongoing.

Injunctions, in the form of assignments from the Court to City and NOPD employees, change the process set forth in the Decree and render further proceedings inequitable. For example, civilianization is an initiative important to the Court to address the national problem of decreasing officer ranks. But it is not required under the Decree. Making it, and other Court initiatives, requirements for compliance renders the Decree more onerous than the City negotiated with DOJ. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 760, 116 L.Ed.2d 867, 886 (1992). Achieving these initiatives through *ex parte* communications and direct assignments to a litigant without the benefit of counsel is a stark break with the intent of the Decree and the constitutional role of the Court.

1.   ***Public Statements Regarding Pending Litigation***

The Court's decision to merge the roles of Court and Monitor as defined in the Decree has also led to other irreparable harms. The Court's decision to hold meetings with community members and to inform the public of the Court's factual findings regarding NOPD's compliance

---

[26] *See, e.g.,* Exh. 104, "NOPD Consent Decree Retreat Week" agenda; and Exh. 101, email re hiring status of individual recruits.
[27] *See* Motion to Reconsider at Rec. Doc. 643; and Exh. 107, Zimmer 2/17/23 letter to the Court. *See also*, Exh. 109, Exh. 101, Exh. 119, Exh. 120, Exh. 122, Exh. 123, Exh. 124, Exh. 125, Exh. 126.

8

while the City's instant motion remains pending has put it in an untenable position. That Court has also repeatedly declared that the City and NOPD are untruthful and intentionally misleading the public. **These statements are wrong, and highly prejudicial regarding a pending matter and not part of the Court's official role at this stage**.[28] Moreover, the views expressed by the Mayor which triggered much of the confrontational statements from the Court were supported by fact and were fully within the City's executive branch's critical job functions.[29]

Respectfully, a strongly held desire to protect the consent decree reform effort from criticism is misplaced given the extreme federalism concerns at risk as it prioritizes the Decree over the constitutional rights of the City and its residents. *Horne v. Flores*, 557 U.S. 433, 448 (2009) Moreover, it puts the Court in an adversarial position to the City and NOPD. This is inequitable and was a specific fear of the framers of the Constitution in giving federal courts equitable power to enforce judgments.

2. *The prohibition on management has been repeatedly violated.*

Direct management of NOPD is expressly prohibited at Paragraph 445. Despite that prohibition, the Court has moved from its judicial role to that of Monitor, and then into manager of NOPD. The City Attorney in 2018 objected to the Court about Monitor conduct that equated to management and reported that the City's concerns were met with "disdain." The Monitor

---

[28] *See, e.g.,* Exh. 110, at 6:11 – 7:6, 24:25 – 25:3; Exh. 118; Rec. Doc. 678; Exh. 102, Rec. Doc. 568. Rec. Doc. 569. *See also,* Exh. 114, and "Federal monitor says there's backsliding on the consent decree; NOPD responds" at https://www.fox8live.com/2023/03/10/federal-monitor-says-theres-backsliding-consent-decree-nopd-responds/

[29] *See, e.g.*, Dr. Ashraf Esmail, Criminal Justice Program Coordinator and Director of the Center for Racial Justice at Dillard University, explained to reporters that, "[w]hen you survey officers as we did last year, many of them indicated that the consent decree was one of the reasons they were leaving the force or leaving the NOPD." at https://wgno.com/news/its-about-control-mayor-latoya-cantrell-doubles-down-on-her-decision-regarding-consent-decree/

9

responded on behalf of the Court to this objection dismissing the concerns out of hand.[30] The breadth of the involvement of the Court and the Monitor in root level management of NOPD has only expanded since that well-founded 2018 objection.[31]

### A.     Lack of critical mandatory reporting by the Monitor

Buried in DOJ's discovery responses are admissions that the Monitor has not provided the required reports and that the Decree was never amended to allow for this critical change.[32] The lack of access to this information, which is fundamental to the role of the Monitor, continues to harm NOPD by rendering compliance goals subjective and shifting.

### IV.    CONCLUSION

Termination of the Decree is the proper, natural conclusion to this long and successful process.

*Respectfully submitted*, this 8th day of May 2023.

*Davillier Law Group, LLC*
/s/ Charles F. Zimmer II
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
czimmer@davillierlawgroup.com

---

[30] *See* Rec. Doc. 568, and Rec. Doc. 569.
[31] *See* Jonathan Aronie email, January 10, 2023, attached as Exh. 113; *see also*, "Council members call for federal monitors to investigate Cantrell's possible conflicts of interest", 11/10/2022, at https://www.fox8live.com/2022/11/10/council-members-call-federal-monitors-investigate-cantrells-possible-conflicts-interest. *See also*, Exh. 112, and https://www.fox8live.com/2022/10/12/ zurik-moreno-alleges-retaliation-cantrell-after-longtime-security-aide-yanked-team/ (Helena Moreno alleges retaliation related to the investigation of Officer Vappie.)
[32] *See* Exh. 106, DOJ Objections and Responses to Discovery at responses to interrogatory No. 3 and request for production No. 4; s*ee* Monitor's webpage for list of all reports to date, at http://nopdconsent.azurewebsites.net/reports.

10

*Counsel of Record for
the City of New Orleans*

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the above and foregoing pleading via Notice of Electronic filing using this Court's CM/ECF system to counsel of record participating in the CM/ECF system on this 8th day of May 2023.

/s/ Charles F. Zimmer II

11