

**Attachment C**

**Monitoring Team's 2/17/23 Immediate Action Notice to PIB**



February 17, 2023

Dear Mr. Sanchez,

In early November 2022, local TV station Fox 8 began a series of stories involving the Mayor's security detail. The story raised a number of questions regarding the operation of that detail as well as the actions of a particular member, Officer Jeffrey Vappie. On November 10, the New Orleans City Council requested that the Office of the Consent Decree Monitor and the Office of the Independent Monitor conduct an independent investigation of the matter, citing "significant concerns about the apparent conflict of interest with the New Orleans Police Department being allowed to, again, investigate serious allegations involving Mayor Cantrell."

The Monitoring Team responded to the City Council on November 11 explaining that it lacked the authority to conduct investigations, but that it would monitor PIB's investigation of Officer Vappie closely to ensure it was effective, efficient, and without bias. As we understand it, PIB opened an investigation into the allegations in late November or early December 2022.

As you know, over the course of PIB's investigation, the Monitoring Team has met with your investigators, Captain Kendrick Allen and Lieutenant Lawrence Jones, on a weekly basis. While we have not been involved in the day-to-day affairs of the investigation, your team has been open with us regarding their strategy and the status of their activities. We appreciate the cooperation your team has shown us throughout this matter.

While we know the Vappie investigation has not yet concluded, the Monitoring Team has become aware of several issues that we believe the NOPD should address right away. Rather than waiting until the conclusion of PIB's investigation, we are bringing these matters to your attention at this time to ensure NOPD considers taking immediate steps to correct the concerns we identified. Importantly, we offer no opinions or recommendations regarding the Vappie investigation itself at this time. Our opinions and recommendations relate only to larger policy/process issues that are unrelated to the forthcoming substantive findings of the Vappie PIB investigation team.

Should you have any questions regarding these recommendations, do not hesitate to reach out to us.

Thank you for your continued cooperation in this matter.

Respectfully,

Jonathan Aronie
Consent Decree Monitor



**Interim Recommendations Based On Vappie Investigation**

1. **Supervision**. As you are aware, the NOPD officers assigned to the Executive Protection detail receive little if any oversight from NOPD supervisors. This appears to have been the case for years. The members of the detail indicated their belief that their only supervisor was the Mayor herself. While the Mayor seemingly is responsible for assignments and schedules, there is no indication the Mayor played any role in supervision beyond that. *NOPD should take immediate action to ensure the members of the Executive Protection detail receive the "close and effective supervision" required by the Consent Decree.*

2. **Policy**. Currently, no written policy guides the operation of the Executive Protection detail or the actions of the officers assigned to that detail. Likewise, no written document (policy or otherwise) sets out the standards and protocols with which members of the Executive Protection team are expected to comply. The lack of written guidance almost certainly will impact PIB's investigation of Officer Vappie. *NOPD should take immediate action to develop clear policies and procedures governing the operation of Executive Protection detail and the officers assigned to that detail.* As required by the Consent Decree, such policies and procedures should "define terms clearly, comply with applicable law and the requirements of the Consent Decree, and comport with best practices."

3. **Performance Evaluations.** The Consent Decree requires that "officers who police effectively and ethically are recognized through the performance evaluation process, and that officers who lead effectively and ethically are identified and receive appropriate consideration for promotion" and that "poor performance or policing that otherwise undermines public safety and community trust is reflected in officer evaluations so that NOPD can identify and effectively respond." Without any meaningful NOPD supervision, it is unclear to us who, if anyone, evaluates the performance of members of the Executive Protection detail. *NOPD should take immediate action to ensure members of the Executive Protection detail are evaluated in the same manner as other NOPD officers.*

4. **Efficiency.** We understand that members of the Executive Protection team get paid for a full shift whether or not the Mayor is in town. It is unclear, however, what work they are performing while the Mayor is not in town beyond occasional administrative tasks like cleaning the Mayor's car and catching up on Departmental paperwork. At a time when NOPD has vocally complained about its lack of officers — and used the lack of officers to explain its inability to comply with various Consent Decree obligations — it would seem to be quite inefficient to have multiple days when 1-2 additional officers are available to perform patrol work, but they are not performing patrol work. *NOPD should consider identifying meaningful tasks members of the Executive Protection team can perform while the Mayor is out of town to contribute to the Department's well-publicized efforts to combat its lack of personnel.*



5. **Legal Conflicts**. The City Attorney provides "legal advice to the Mayor, the City Council, and other city offices, departments, and boards," including the NOPD. While this joint representation normally creates no conflict, when the Mayor is or may be a material witness in a PIB investigation, the risk of a real or perceived conflict is significant. Indeed, this occurred in the Vappie investigation when the City Attorney visited PIB to monitor the second interview of Officer Vappie. Situations like this can create the perception that City Hall is attempting to intimidate interviewees or investigators, or otherwise interfere in a PIB investigation. Such perception may be avoided when the Mayor is or may be a witness by (i) the imposition of a formal wall to block the exchange of information between the Mayor's office/City Attorney's Office and PIB and (ii) engaging outside counsel to support PIB throughout the investigation. The Office of the Independent Monitor made this suggestion in a thoughtful public letter to the City Council on February 9, 2023. The Monitoring Team agrees with the IPM's concerns. ***NOPD should consider engaging outside counsel to advise PIB on matters when the City Attorney's representation of the City, Mayor's Office, and PIB could create a real or apparent conflict of interest.***

6. **Reassignment Of Officers Under Investigation.** We understand, pursuant to Policy 13.1, the Superintendent has the discretion to administratively reassign officers during certain PIB investigations. In this case, Officer Vappie had been moved out of the Executive Protection detail pending the PIB investigation, which was a sensible decision considering the nature of the allegations, the public profile of the investigation, and the likelihood that the Mayor would be a material witness in the investigation. Outgoing Superintendent Ferguson, however, hours before his retirement, directed the return of Officer Vappie to the Mayor's security detail. While this order, fortunately, was reversed by a deputy chief and the City Attorney, the order itself created at the very least the appearance of interference in a PIB investigation. ***NOPD should consider revising its policy to prohibit officers reassigned due to a PIB investigation from being assigned back to their units until the conclusion of the PIB investigation without the express approval of the PIB Deputy Chief.***

7. **PIB Investigators**. During the course of the PIB investigation, the two investigators assigned to the Vappie investigation were moved out of PIB. The lead investigator, Lawrence Jones, was promoted to lieutenant and moved to the district patrol. The PIB Captain, Kendrick Allen, was assigned to command a district. Without at all suggesting these two promotions were not warranted, NOPD should have considered detailing both individuals back to PIB until the completion of the Vappie investigation. While Superintendent Woodfork assured the Monitoring Team both officers would be given adequate time to complete their investigation, as a practical matter, this is difficult to accomplish in practice. PIB readily concedes it lacks adequate personnel to perform aspects of its investigation in the best of times (*e.g.*, reviewing videos and documents). Adding a full time job to Allen's and Jones's schedules on top of their PIB jobs virtually guarantees both jobs will be compromised to some extent. ***NOPD should consider adopting a policy of detailing promoted officers back to PIB for limited timeframes when necessary to complete significant pending investigations.***



8. **Initial Investigation Letters.** At the outset of the investigation, PIB alerted Officer Vappie it had opened an administrative investigation initiated by a public complaint. The letter advised Officer Vappie that PIB would focus on an alleged violation of the 16.35 hour rule *as well as other matters*. PIB was aware at that time, however, of several other potential violations by Officer Vappie as a result of the Fox 8 coverage, including potential violations of NOPD's professionalism, conflict, and time charging rules. While PIB represented to the Monitoring Team that the general "other matters" language was all that was required to put Officer Vappie on notice of the allegations against him, the limited wording of the initial letter created avoidable problems during the Vappie interview. ***NOPD should consider the pros and cons of including a more complete description of the conduct under investigation in its initial letters to investigation subjects.***