

**Attachment D**

**PIB Investigation Report**

2022-0513-R
Page 1 of 42

### DEPARTMENT OF POLICE

## INTEROFFICE CORRESPONDENCE

|  | **Michelle M. Woodfork** |  |  |
|---|---|---|---|
| **TO:** | **Superintendent of Police** | **DATE:** | **March 10, 2023** |
|  | **Captain Kendrick Allen** |  |  |
| **FROM:** | **Field Operations Bureau / First District** |  |  |
|  | **P.I.B. Complaint Tracking Number 2022-0513-R** |  |  |
|  | **Senior Police Officer Jeffery Vappie,** |  |  |
| **SUBJECT:** | **Employee Number 08913** |  |  |

### INTRODUCTION

On Tuesday, November 8, 2022, approximately 7:00p.m., Public Integrity Bureau Sergeant Lawrence Jones was contacted by Public Integrity Bureau Deputy Chief Keith Sanchez. Deputy Chief Sanchez informed Sergeant Jones that a media request was sent to the Public Integrity Bureau relative to New Orleans Police Department Senior Police Officer Jeffery Vappie assigned to the Investigative Services Bureau, Executive Protection. Deputy Chief Sanchez forwarded the request to Sergeant Lawrence Jones for review.

On Wednesday, November 9, 2022, Sergeant Lawrence Jones reviewed the request and learned that Senior Police Officer Jeffery Vappie was accused of working more than 16 Hours and 35 minutes with in a 24-hour period. The request indicated Officer Vappie may have violated this rule when on several occasions while assigned to the Executive Protection Section he may have violated this NOPD policy.

Based on the information provided, Sergeant Lawrence Jones initiated a departmental FDI **(EXHIBIT B)** and a form (230) the Initial Intake Form for Commendation, Complaint, or Documentation of Minor Violation **(EXHIBIT C)** on Senior Police Officer Jeffery Vappie on Wednesday, November 9, 2022, for potential violations of, **Rule 4 Performance of Duty: Paragraph 4 Neglect of Duty C6 Failing to comply with instructions. oral or written from any authoritative source to wit: N.O.P.D. Chapter 22.08 Police Secondary Employment Paragraph 32 which states: No member. including Reserve officers, shall work more than more than 16 hours and 35 minutes (16.58 hours) within a 24-hour period.**

Investigating Officer's Initials:  KA

## Brief Synopsis

On Wednesday, November 9, 2022, Sergeant Lawrence Jones reviewed a media request from WVUE a local news station indicating that Senior Police Officer Jeffery Vappie may have violated NOPD policy.   The request indicated Officer Vappie may have violated policy when on several occasions while assigned to the City of New Orleans Mayor Executive Protection team he work more than 16 Hours and 35 minutes with in a 24-hour period.  The request also indicated Officer Vappie may have neglected his duty when he attended a Board meeting with the City of New Orleans Housing Authority while on duty.  The request also indicated that Officer Vappie may have spent numerous hours with his Protectee at the Upper Pontalba Apartments both on duty and off duty.  The media request will be attached to this investigation as **(EXHIBIT D)**

## Allegations

Based on the information provided, Sergeant Lawrence Jones initiated a departmental FDI on Senior Police Officer Jeffery Vappie on Wednesday, November 9, 2022, for potential violations of, **Rule 4 Performance of Duty: Paragraph 4 Neglect of Duty C6 Failing to comply with instructions. oral or written from any authoritative source to wit: N.O.P.D. Chapter 22.08 Police Secondary Employment Paragraph 32 which states: No member. including Reserve officers, shall work more than more than 16 hours and 35 minutes (16.58 hours) within a 24-hour period.**

## INVESTIGATION

This Administrative Investigation was assigned to Captain Kendrick Allen and Sergeant Lawrence Jones of the Public Integrity Bureau on Friday, November 11, 2022, by Deputy Chief Keith Sanchez, bureau chief of the New Orleans Police Department Public Integrity Bureau. For the purpose of this investigation Captain Kendrick Allen will be identified as Captain Allen and Sergeant Lawrence Jones will be identified as Lieutenant Jones.

Captain Allen and Lieutenant Jones began this investigation when on Wednesday, November 9, 2022, approximately 1:00p.m., Lieutenant Jones contacted Senior Police Officer Jeffery Vappie and requested that he relocate to the Public Integrity Bureau, located at 1340 Poydras Street, Suite 1900.  Officer Vappie later arrived at the Public Integrity Bureau and he was placed on Administrative Re-assignment.  Officer Jeffery Vappie was released from reassignment on Wednesday, December 21, 2022, 4:00pm.  **(EXHIBIT E)**

Investigating Officer's Initials: _KA_

Captain Allen realize that more time would be needed to conduct a thorough, fair and impartial investigation. Therefore, on Thursday, November 17, 2022, in accordance with Civil Service Rule IX, Section 1:4 for the City of New Orleans Captain Kendrick Allen petitioned Ms. Amy Trepaginer, the personnel Director of the Department of Civil Service. Captain Allen respectfully requested an extension of time so Captain Allen could conduct a thorough investigation **(EXHIBIT F)**. On Tuesday, November 22, 2022, Captain Kendrick Allen's extension request was presented to Civil Service Hearing examiner Jay Ginsberg, by PIB Sergeant Omar Garcia. The hearing was conducted at 1340 Poydras Street Suite 900. At the conclusion of the hearing, Examiner Ginsberg granted Captain Allen's request for an extension and allowed an additional 60 days to complete the administrative investigation of Senior Police Officer Jeffery Vappie **(EXHIBIT G)**.

To complete a thorough investigation, Captain Allen and Lieutenant Jones thought it would be best to obtain a historical information relative to previous officers assigned to the Executive Protection Detail. Lieutenant Jones was aware from previous job knowledge of the assignment that Senior Police Office Kristy Johnson-Stokes and retired Sergeant Wondell Smith were recently assigned to the Executive Protection team. Therefore, on Tuesday, November 29, 2022, Lieutenant Lawrence Jones contacted former members of the Mayor's executive protection team, New Orleans Police Senior Police Officer Kristy Johnson-Stokes now assigned to the New Orleans Police Department Investigative Services Division / Intelligence Unit and New Orleans Police Retired Sergeant Wondell Smith. Lieutenant Jones requested an interview of both officers to obtain any investigative knowledge they could provide to the investigation. Both, Officer Kristy Johnson-Stokes and Retired Sergeant Wondell Smith agreed to be interviewed. Officer Johnson-Stokes interview was set for Monday, December 5, 2022 at 11:30am and Retired Sergeant Wondell Smith was scheduled for Tuesday, December 6, 2022 at 10:00a.m.

Captain Allen and Lieutenant Jones met with Senior Police Officer Kristy Johnson-Stokes on Monday, December 5, 2022 at 12:00p.m., the interview was conducted at 3925 North I-10 service Road, Suite 212, Metairie, Louisiana 70002.

Lieutenant Jones commenced the audio-recorded interview **(EXHIBIT H)** by advising Officer Johnson-Stokes of her rights as outlined in the Police Officers Bill of Rights, Louisiana Revised Statue 40:2531. Lieutenant Jones informed Officer Johnson-Stokes she was only being interviewed as a witness relative to a New Orleans Police Officer being accused of potential violations of Rule 4 Performance of Duty: Paragraph 4 Neglect of Duty C6 Failing to comply with instructions, oral or written from any authoritative source to wit: N.O.P.D. Chapter 22.08 Police Secondary Employment Paragraph 32 which states: No member, including Reserve officers, shall work more than more than 16 hours and 35 minutes (16.58 hours) within a 24-hour period.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 4 of 42

Lieutenant Jones then advised Officer Johnson-Stokes of New Orleans Police Department Chapter 52.1.1 requires all New Orleans Police Department employees to answer questions in official inquiries and refusal to comply will result in termination.

Additionally, employees are to be truthful at all times in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department. Failure to comply will result in termination. Officer Johnson-Stokes indicated she understood her rights and began her statement at 12:06p.m. Officer Johnson-Stokes stated the following:

### Statement of Officer Kristy Johnson-Stokes (Witness)

Kristy Johnson Stokes...NOPD OFFICER...was trained and assigned to the mayor's office/security detail under retired Sergeant Wondell Smith for Mayor Landrieu part time until Mayor Cantrell's 1st term for 3yrs. The team working schedule was 12hr days except on Wednesday when they would work an eight (8) hour day. On special events, the entire team would be scheduled to work. Some of the responsibilities for the team was transporting the daughter to and from school, practice or whatever is in the daughter's schedule. After Sergeant. Smith's transfer out of the executive protection team, the mayor did not assign another supervisor and Sergeant. Lane (worked in Headquarters) entered the protective team's time but was not assigned to the unit. Via Mayor Cantrell she'll sometimes say, "If I need you, I'll call you." Orders came from the mayor after Sergeant. Smith left. Sometimes the mayor gave instructions to Officer Martinez or Orleans Parish Sheriff Deputy Charles Ellis. If a day exceeded 12hrs, the protection team would stay as long as the mayor was conducting business. Officer Johnson-Stokes stated, no one had keys to the mayor's residence, but they did know where an extra key to the apartment (Upper Pontalba) was located. The executive protection team would receive an email from the mayor's assistant giving them the schedule for the next working day. Via Officer Johnson-Stokes the Mayor may ask an executive protection team member to water plants which was not against the law. At times there would be a gap in the mayor's schedule that would be filled in with things like going to lunch, in the office, or church. On the schedule would be dinner parties, city events, or anything other business involving the city. Via Officer Johnson-Stokes during her time in executive protection, they didn't have keys, nor would they be inside of the Upper Pontalba apartment, nor did they travel, however, the team would occasionally, do some walk/run with the mayor.  Officer Johnson-Stokes concluded her statement at 1:02p.m.  Senior Police Officer Kristy Johnson-Stokes transferred to the Intelligence Section of the New Orleans Police department on May 23, 2021.  A transcribed copy of Officer Kristy Johnson-Stokes statement will be attached to this investigation as **(EXHIBIT I)**

Investigating Officer's Initials: _KA_

2022-0513-R
Page 5 of 42

On Tuesday, December 6, 2022, approximately 10:00a.m., Captain Allen and Lieutenant Jones met with Retired Sergeant Wondell Smith. The interview was conducted in the 4700 Block of Lennox Street inside of Retired Sergeant Smith's residence. Note: To maintain the integrity of retired Sergeant's Smith residence, the residence location will not be listed in this investigation, at Sergeant Smith's request.   After advising Retired Sergeant Smith of the nature of the investigation, Sergeant Smith advised he wishes to continue and began his taped recorded statement at 10:11a.m., **(EXHIBIT J).**   Retired Sergeant Wondell Smith stated the following;

## Statement of Retired Sergeant Wondell Smith (Witness)

Sergeant Smith advised he was a 35-year veteran of the New Orleans Police Department.  He began his career in the 5th District; 6th District, Mounted for 10 years and three (3) years in the academy.  After the academy he transferred to the Mayor's office where he served 18 years in Executive Protection.  Sergeant Smith sated he served under Mayor Nagin, Landrieu and the first term of Mayor Latoya Cantrell.  Sergeant Smith sated he was promoted to the rank of Sergeant in 2004 whiles serving under Mayor Nagin and remained as the Executive Protection Supervisor until he was transferred to Intelligence 2021.

Lieutenant Jones inquired from Sergeant Smith if he could provide insight on his job duties as Executive Protection through his time of service.  Sergeant Smith responded, for the most part, it transcends.  Your responsibilities are to the mayor and to the mayor's immediate family. Sergeant Smith stated, they normally work in teams of two and get the itinerary the day before either by email or text.  Often Sergeant Smith would direct someone to conduct an advance review of the location, the Mayor would be visiting the following day.  The itinerary received the previous day would discuss pick up location, which is normally the Mayor's residence.  The Protection team members would leave their take home vehicle at the pickup location and drive the Mayor's assigned SUV for the work day.  Once the Protectee is ready they would go to office or the first appointment.  Once the Mayor has gone through the entire schedule, at that point it becomes family time. Sergeant Smith was very clear the Executive Protection team works at the Mayor's discretion.  "If Mayor goes to the movies, you got to go to the movies."

Sergeant Smith indicated he serve under the current administration with team members, Kristy Johnson-Stoke, Louis Martinez and Orleans Parish Criminal Sheriff Charles Ellis.  Sergeant Smith stated although he was the supervisor "You do what the mayor tells you to do Period." Sergeant Smith explained that all Executive Protection members goes through Executive Protection training, either before assignment or immediately after assigned.  Each Mayor would meet with the perspective candidate and the final decision was the mayor's decision.  Captain Allen inquired from Sergeant Smith if he considered the mayor to be a part of his Chain of command.  Sergeant Smith stated, "Absolutely, the Superintendent takes orders from the Mayor and so did I."

Investigating Officer's Initials: _KA_

2022-0513-R
Page 6 of 42

Lieutenant Jones inquired from Sergeant Smith if he could describe how he interacted with the Protectee.   Sergeant Smith responded, always professional.   During each mayor he served, he and all team members were always professional. Lieutenant Jones then inquired from Sergeant Smith if he ever served with Officer Jeffery Vappie.   Sergeant Smith responded, "Yes he worked part time with Mayor Nagin." At no time doing the appointment with Mayor Nagin did he ever observe Officer Vappie to be unprofessional.

Captain Allen inquired from Sergeant Smith if he had a key to the Mayors Personal residence or the Upper Potable Apartment.  Sergeant Smith responded, "No" to the personal residence, as to the Apartment nobody had a personal key, the key was kept in the car in the glove box. Lieutenant Jones then inquired from Sergeant Smith, if there was ever a moment he had to go to the apartment alone.  Sergeant Smith responded, <u>"No, you only went to that apartment like and this is like for everybody, for all the previous mayors, we went – you know you're going there Christmas, for the Christmas caroling in Jackson Square. You know you're going their New Year's Eve. You know you're going there because that's, uh, Sugar Bowl and New Year, bring in the new year, dropping the ball and all that in the French Quarter. And you might go to it during some other special event, but it's always a gathering of people coming and going,"</u> never going just hanging out.

As it relates to the payroll for the Executive protection team.  Sergeant Smith stated he would enter the time and often Sergeant Tokishiba Lane would call and inquire.  But, he would never discuss the Mayor's itinerary with Sergeant Lane, so she would just approve the time.  Sergeant Lane was not assigned to Executive Protection, she was a Supervisor in the Investigative Services Bureau, so Sergeant Smith indicated he did not give her reasons for the hours. Sergeant Smith described the schedule as a four day (12) hour work day.  Lieutenant Jones inquired from Sergeant Smith if he had any SOP's or Department Regulations associated with executive Protection.   Sergeant Smith responded, "No," he normally just worked out any problems he had.  Retired Sergeant Wondell Smith concluded his statement at 11:20a.m. A transcribed copy of Sergeant Smith's statement will be attached to this investigation as **(EXHIBIT K).**

On Thursday, December 8, 2022, Lieutenant Lawrence Jones also contacted New Orleans Police Department retired Sergeant Todd Henry.  Sergeant Henry Served as a member of the former New Orleans Police Superintendent Richard Pennington's executive protection team. Lieutenant Jones was aware of this appointment because of previous Job knowledge.  After informing Sergeant Henry of the nature of the call and a request to interview him relative to his historical expert knowledge as it pertains to executive protection Sergeant Henry immediately agreed and requested an appointment time.  Lieutenant Jones informed retired Sergeant Henry the interview will be conducted on Monday, December 12, 2022, at 1:00p.m.  The interview location will be the New Orleans Police Department Public Integrity Bureau's office located at 1340 Poydras Street Suite 1900.

Investigating Officer's Initials:   KA

2022-0513-R
Page 7 of 42

Captain Allen and Lieutenant Jones met with retired Sergeant Todd Henry on Monday, December 12, 2022, at 1:00p.m., at the Public Integrity Bureau's office located at 1340 Poydras Street Suite 1900.   Sergeant Henry provided a detailed recorded interview relative to his knowledge and training as a former Executive Protection member. **(EXHIBIT L).**   Retired Sergeant Henry began his statement at 1:21p.m. and stated the following;

## Statement of Retired Sergeant Todd Henry (Witness)

Retired Sergeant Henry informed the Lieutenant Jones, he was 35-year veteran of the New Orleans Police department. Prior to retirement, he served as the Executive Protection for former Superintendent Richard Pennington.   Sergeant Henry explained that he never served as the Mayor's executive protection, but he attended executive protection training.   As to the duties, Sergeant Henry explained he would meet the Chief at his residence or he may tell Sergeant Henry to just meet him at Head Quarters.   Often the Chief would drive himself to the Office then Sergeant Henry would drive throughout the day.   Sergeant Henry explained he worked for the Superintendent's office for approximately four (4) years.   Sergeant Henry explained he took several trips out of state with the Superintendent during his tenure as Executive Protection.

Sergeant Henry was asked if he was following the story involving Officer Vappie and his thoughts.   Sergeant Henry responded, "That's a bad move on his part. You know, you can't, you know you're not supposed to get involved or go beyond the scope of your duties. Hey, if you got a team and you're the only one have a key, you're the only one going in, that's a problem. That is a problem. Because you're different from the rest of the guys; the number from the news story, the number of trips you take compared to the other guys, that -- looking from the outside, that looks that's more than you being security. You know, you seem to be favored over everybody else, you know, and that's -- you can't do that. You know." Retired Sergeant Todd Henry concluded his statement at 1:50p.m. A transcribed copy of Sergeant Henry's statement will be attached to this investigation as **(EXHIBIT M).**

At the conclusion of the interviews of Officer Kristy Johnson-Stokes, Retired Sergeant Wondell Smith and Retired Sergeant Todd Henry it was clear that instruction to members of the Executive Protection detail are often delivered by text via the city issued cell or email.   It was necessary for Captain Allen and Lieutenant Jones to gain access to Officer Vappie work issued cell phone and City Emails.   The review will provide evidentiary value in the event instructions are received allowing Officer Vappie to attend HANO meetings while at work and any instructions he may have received as it relates to his time spent in the Upper Pontalba Apartments both on duty and off duty.

Investigating Officer's Initials: __ICA__

2022-0513-R
Page 8 of 42

Furthermore, Lieutenant Jones and Captain Allen also wished to obtain the video surveillance video located near the Pontalba to corroborate the claims indicated in the WVUE media request. For this reason, Lieutenant Lawrence Jones instructed members of the Public Integrity Bureau Special Investigation Section to obtain the following;

1. Obtain access to Officer Vappie city emails associated with email address Jvappie@nola.gov , from March 1, 2022, to November 30, 2022, the dates Officer Vappie was assigned to the Executive Protection team.   This task was accomplished on December 12, 2022. **(EXHIBIT N).**

2. Officer Vappie work issue Cell Phone <u>**5042698509**</u>.  This task was accomplished on December 12, 2022, at 7:12p.m., SIS members met with Officer Vappie at his reassignment location and retrieved his department cell.  It should also be noted; Officer Vappie does not have Fourth Amendment protection as it relates to the city issued cell phone.  The phone was later released to the New Orleans Police Department Digital Forensic Unit for analysis.  Once complete the analysis will be provided to Lieutenant Jones for review.  The analysis will be attached to this investigation as **(EXHIBIT O).**

3. Complete a Public Records request to the French Market Corporation to obtain the video surveillance of the camera located on the light pole on St. Peter Street, in Jackson Square Pedestrian Mall outside of the Upper Pontalba apartment.  The Public Records request will be attached to this investigation as **(EXHIBIT P).**  The Public records request was granted and the video was provided.  The date range of the video was July 30, 2022, to November 17, 2022.   The video surveillance will be attached to this investigation as **(EXHIBIT Q).**

To also corroborate the inferences that Officer Vappie may have neglected his duty when he attended a HANO board meeting while on duty.  Lieutenant Jones queried the Housing Authority of New Orleans official website "hano.org" and obtained historical data relative to "HANO" Board meetings from the March, 2022 to December 2022.  The information obtained consisted of meeting minutes, meeting agenda and an audio recording of the meeting.  The HANO information obtained from the HANO website will be attached to this investigative report as **(EXHIBIT R).**  Note: The analysis information obtained will be discussed at a later portion of the investigative report.

Captain Allen and Lieutenant Jones continued to obtain expert background information as it pertains to Executive Protection.  The investigators sought to obtain Education and Training information from experts who previously trained New Orleans Police Members for executive protection.  Mr. John Douglass of the Falcon Group Tactical out of the State of Mississippi and Captain Dewight Robinette of the Louisiana State Police were chosen by the investigators because both previously trained members of the NOPD Executive Protection team.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 9 of 42

This information was firsthand knowledge to Lieutenant Jones, because officer he recently supervised attended the training of Mr. John Douglass and Captain Dewight Robinette was identified by retired Sergeant Wondell Smith as previously training NOPD Officers.

On Wednesday December 14, 2022, Lieutenant Lawrence Jones contacted both Mr. John Douglass and Captain Robinette. Lieutenant Jones informed both of the nature of the call then requested an interview relative to the investigation. Mr. Douglass and Captain Robinette both agreed to be interviewed and appointments were set. Mr. John Douglass interview was set for Friday, December 16, 2022 at 10:00a.m. and Captain Robinette interview was set for Wednesday, December 21, 2022 at 1:30p.m. Due to the fact both members were located outside of the jurisdiction of Orleans Parish they were interviewed via telephone at their request.

On Friday, December 16, 2022, at 10:00a.m., Lieutenant Lawrence Jones contacted Mr. Douglass via telephone for the interview. Mr. Douglass was using telephone number 662-883-0025 and Lieutenant Jones and Captain Allen was using telephone number 504-421-8333. Mr. Douglass began his taped recorded telephone interview at 10:08 a.m. **(EXHIBIT T)** and stated the following to the investigators;

## Statement of Mr. John Douglass (Training Expert)

Mr. Douglass stated he is a law enforcement officer in the state of Mississippi, for over 25 years probably somewhere closer to 27 years. Mr. Douglass further stated over the course of his career, he served as a patrol officer, an investigator, a narcotics agent, a SWAT team member and a protection agent for the State of Mississippi. Mr. Douglass further stated over the last 10 years, he oversees protection of at least two circuit judges.

Mr. Douglass stated he is a practitioner in protective service operations, better known as, or otherwise known as Dignitary Protection. Mr. Douglass stated he was trained at the Federal Law Enforcement Training Academy in Glencoe, Georgia. Mr. Douglass further explained he is a certified law enforcement instructor for the state of Mississippi for several years and has developed training curriculum in many different subjects, most of being, tactical firearms training and Basic SWAT training for law enforcement officers. Mr. Douglass has also developed the basic protective service operations training program for the State of Mississippi. The Program was submitted to the Board of Law Enforcement Minimum Standards for the State of Mississippi and it was upheld and granted status of a POST certification for the state of Mississippi which is reciprocal throughout the United States. Mr. Douglass went on to say he is contracted by a private company through the state of Mississippi called Falcon Group Tactical. Through the Falcon Group Tactical Mr. Douglass indicated he has trained many officers from the New Orleans Police Department. Note; Lieutenant Jones was aware that recently members of the New Orleans Police Department attended Training thru the Falcon Group.

Investigating Officer's Initials: KA

2022-0513-R
Page 10 of 42

Lieutenant Jones inquired from Mr. Douglass if he could discuss his training curriculum. Mr. Douglass stated they often discussed academic definition or a description of how a dignitary protection agent should interact with a **Protectee**, also known as a **Principal**. The communication and interaction between the two or any member of the protection detail should be kept on a **PROFESSIONAL LEVEL ONLY**.

Mr. Douglass went on to discuss the training provided by the Falcon Group also covers, escorting and eating with the principal. Mr. Douglass stated at no point should a Protection member sit with the principal unless invited and even then they position themselves with the Protectee safety in mind. Mr. Douglass further stated he believes all Executive Protection units should have a supervisor embedded in the group. The supervisor would have the authority to ensure the Protectee request align with the departments rules and regulation. The supervisor would also monitor the other members of the unit and replace them if need be. Mr. Douglass concluded his statement at 10:32a.m. A transcribe copy of Mr. John Douglass statement will be attached to this report as **(EXHIBIT U)**

On Wednesday, December 21, 2022, at 1:30p.m., Lieutenant Lawrence Jones contacted Captain Dewight Robinette via telephone for the interview. Captain Robinette was using telephone number 225-379-2029 and Lieutenant Jones and Captain Allen was using telephone number 504-421-8333. Captain Robinette began his taped recorded telephone interview at 1:36 p.m. **(EXHIBIT V)** and stated the following to the investigators;

### Statement of Louisiana State Police Captain Dewight Robinette (Training Expert)

Captain Robinette stated he is currently the commander over the Governor's protection team and that is protective services for Louisiana State Police. Captain Robinette is a 27 years veteran of the Louisiana State Police with 16 of the years serving in Executive Protection. Captain Robinette stated he started Executive Protection as a Trooper and worked his way to commander of the Unit, serving under Governor Jindal and Edwards. Captain Robinette further stated he is currently the President of the National Governor's Security Association.

Captain Robinette further explained in 2014, he was in charge of operations for protective services; which entailed overseeing the daily operations of all teams, the Governor's mansion, facilitate all travel, daily movements, scheduling and all of the positions within protective services. Captain Robinette also oversaw Governor Jindal's presidential campaign in 2015.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 11 of 42

Captain Robinette further explained he trained many members of the New Orleans Police Department Executive Protection unit, while serving as the operations Lieutenant. The last training class he could recall was February 11-14, 2019. Captain Robinette stated many NOPD members along with other agencies attended. During the training protection, officers are taught to not only protect the Protectee well-being, but to also protect them from any embarrassment, whether it's your actions or the Protectee actions that may cause them embarrassment. Captain Robinette also explained, your attire should blend in and not overshadow your Protectee. All conversations should remain professional and limited to "Good Morning" not good morning and how was your day. The executive protection officer should gain the trust of the Protectee, but never cross the line of being unprofessional. Captain Robinette explained having a supervisor in the unit is intricate with helping to curve unprofessional behavior from either the Protectee or the team members. Captain Robinette further explained it is common for the protection team members to exercise with the Protectee, to include running, biking, walking or weight lifting. For the purpose of the Governor, it was always two Executive Protection personnel. Captain Robinette further explained as it relates to the primary living quarters of the Protectee. The team only goes there if it is a security issue.

Lieutenant Jones inquired from Captain Robinette insight on working hours for his Protection team. Captain Robinette explained all of the Louisiana State Police Executive Protection members work 12-hour days, which they normally exceed. Captain Robinette explained they follow the moto, "We wake them up and we put them to bed." The Captain also indicated they have a responsibility to the Protectee family members. Captain Robinette further explained all members of the Louisiana State Police Executive Protection team are hand selected. They take into account the persons work ethic, personality background and an interview process. Previous supervisors interviewed and a review of their internal affairs record is reviewed.

Captain Robinette explained all protection teams' whether it is federal, state or local are consistent and do the same duties. Those duties are to protect a particular dignitary. Your focus and main goal is to provide cover for that principal, regardless to whether or not you run a one-man detail or multiple man detail.

Captain Robinette concluded his statement with, "**You never do anything – and we preach this: don't do anything that's immoral, illegal or unethical. Those three things can get you in jail, fired or hurt, or get your Protectee in trouble and that's my, that's my, uh, my policy. That is what I preach all the time and I've preached it to a lot of people. And when we teach that class, we always say that: don't ever do anything that's illegal, immoral or unethical.**" Captain Dwight Robinette concluded his telephone statement at 2:25p.m. A transcribe copy of Captain Dwight Robinette statement will be attached to this report as **(EXHIBIT W).**

Investigating Officer's Initials: _KA_

2022-0513-R
Page 12 of 42

After interviewing both training experts Captain Dewight Robinette and John Douglass, Lieutenant Jones and Captain Allen then wished to interview current members of the Executive Protection team.   Therefore, Lieutenant Lawrence Jones contacted New Orleans Police Department Senior Police Officer Louis Martinez. Lieutenant Jones requested to interview Officer Martinez relative to his knowledge of this investigation.   Officer Martinez informed Lieutenant Jones that he would be willing to provide a statement then requested a date and time to be interviewed.   Lieutenant Jones advised Officer Martinez the interview would take place at the Public Integrity Bureau's office located at 1340 Poydras Street, Suite 1900. An appointment was set to interview Officer Louis Martinez on Tuesday, December 27, 2022 at 11:00a.m.

Lieutenant Jones and Captain Allen met with Officer Martinez on Tuesday, December 27, 2022 at 11:05a.m., at the Public Integrity Bureau's office, interview room number one.  Prior to the interview, Captain Kendrick Allen presented Officer Louis Martinez with New Orleans Police Department Internal Investigation Rights and Responsibilities of Employees Under Investigation and Notification to Appear and Render a Statement Form.  Both Captain Allen and Officer Martinez signed and dated the form, with a duplicated copy to be included with the internal investigation **(EXHIBIT X)**.

Lieutenant Jones inquired from Officer Martinez if he had a reasonable time to summon an Attorney or Representative.   Officer Martinez responded, "Yes,", then informed Lieutenant Jones that he would continue the interview without an Attorney or representative present.

Lieutenant Jones commenced the audio and video-recorded interview **(EXHIBIT Y)** by advising Officer Martinez of his rights as outlined in the Police Officers Bill of Rights, Louisiana Revised Statue 40:2531.  Lieutenant Jones advised Officer Martinez he would be interviewed as a witness.   Lieutenant Jones then advised Officer Martinez of New Orleans Police Department Chapter 52.1.1 requires all New Orleans Police Department employees to answer questions in official inquiries and refusal to comply will result in termination. Additionally, employees are to be truthful at all times in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department. Failure to comply will result in termination. Officer Martinez indicated he understood his rights and began his statement at 11:16a.m. Officer Martinez stated the following:

Investigating Officer's Initials: _KA_

## Statement of Officer Louise Martinez (Witness)

Officer Martinez explained to the investigators prior to joining the Executive Protection team he had several assignments throughout his 34 year NOPD Career.  Officer Martinez explained that he served under Mayor Ray Nagin then again with his present assignment under Mayor Latoya Cantrell.  Officer Martinez continued to explain he attended Executive Protection training with the Gretna Police Department, the Louisiana State Police and he attended training seminars with United States State Department in Virginia.

Lieutenant Jones inquired about his duties as an Executive Protection Officer.  Officer Martinez stated, Executive Protection members are assigned to the Mayor and the Mayor's family.  On occasion he the Mayor may request that the members pick up her family members and other family.  Officer Martinez explained that both Mayor's he served under would normally request team members to pick up and transport family.  When asked by Lieutenant Jones, how are members chosen for the Executive Protection team. Officer Martinez explained, the current members would make recommendations then the selected officers would be interviewed by the Mayor, who makes the final selection.   Officer Martinez explained it was this way during both Administration he served, Mayor Nagin and Cantrell.

Lieutenant Jones then inquired about supervisors assigned to the team.  Officer Martinez explained Sergeant Wondell Smith was the on team Supervisor prior to his transfer, however no Sergeant is currently assigned to the unit.  Officer Martinez also explained, Sergeant Tokishibia Lane-Hart only responsibility was to enter payroll and ensure the members were scheduled for annual in-service training.  Sergeant Lane had no responsibility to the day to day operations of the team.  Officer Martinez then stated, ultimately the Mayor is the Supervisor.

Officer Martinez then explained the schedule the unit operated.  Officer Martinez explained the scheduled was adopted by Sergeant Wondell Smith when he was the supervisor.   Sergeant Smith adopted the State Trooper scheduled which required 12 Hour Shifts.  The unit operated in Teams, he and Deputy Charles Ellis and Officer Vappie and Robert Monlyn were partners.  The teams work 12-hour shifts Friday, Saturday, Sunday, Monday, 8-hours shift on Tuesday and off on Wednesday and every other weekend, unless special events or unusual circumstances like furlough, training etc.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 14 of 42

Lieutenant Jones then inquired from Officer Martinez if he traveled when the Protectee would travel out of town.   Officer Martinez explained that he did not travel because of an illness. Martinez then explained the Protection team did not travel until Officer Vappie joined the team. Officer Martinez explained that he initially inquired from the Protectee if the team needed to travel and the answer were "NO."  Officer Martinez stated, Officer Vappie mentioned to him that he suggested to the Protectee that the Executive Protection team travels with her.

Officer Martinez then explained that he started to notice Officer Vappie unprofessional behavior with the Protectee.  Officer Martinez explained how Officer Vappie would sit at the table with the Protectee. Officer Martinez stated, <u>"I found it strange, uh, when I'm waiting for him to get a parking spot to go in, I go in the restaurant; he's sitting, sitting with his back to the door, which we don't do by ourselves. The mayor was sitting at the table, sitting at the table and I just looked at him and I, I said, it just didn't look right. I'm, I'm working for you and I'm sitting down having dinner with you. This didn't look right. We always have a table off to the side, it just didn't look right and I told him again. I said, man, you know you're not following protocol."</u>  Martinez stated, he approached Officer Vappie and stated to him **"There's a line that you, you don't cross it. And I asked him did he crossed it; did he cross it and he said no. I took him at his word."**  Lieutenant Jones inquired from Officer Martinez if he ever told a supervisor about Officer Vappie's unprofessional behavior.  Officer Martinez stated, "No, I made it known to him that I didn't approve of what he was doing.

Lieutenant Jones then inquired from Officer Martinez, what was his relationship like with the current Protectee.  Officer Martinez explained, <u>"You don't have a relationship with uh, the mayor, it is the mayor's office and then there's the mayor and your executive protection, you don't have a relationship with the mayor period."</u>

Officer Martinez went on to say he was disappointed about what he was hearing about Vappie being in the Upper Pontalba Apartment abnormal hours.  Officer Martinez also stated, "Um, I was surprised. Like I said, I was hurt. I don't know. I don't get hurt but, uh, I was, when I asked him did he cross the line and he said no, I was concerned about if he was telling me the truth. Watching him walk in, coming out all hours of the night, uh, that, that's the only thing that bothered me. You know, we all are grown men. We have common sense and you know, you can only speculate what, what happened because, you know, you don't really know what happened. But we're grown men and women, so Hum, I cannot see, they go in there with workout clothes. They come out dressed in your work attire. They spend 5 hours a day, I mean, that's strange. It was, it was strange to me."  Senior Police Officer Louis Martinez concluded his statement at 12:40p.m. A transcribed copy of Officer Martinez's statement will be attached to this investigation as **(EXHIBIT Z).**

Investigating Officer's Initials: _KA_

After interviewing Officer Martinez, Lieutenant Jones individually contacted Senior Police Officer Robert Monlyn and OPCSO Deputy Charles Ellis, both are members of the current Executive Protection team.   Lieutenant Jones informed both of the nature of the call then requested an interview relative to the investigation.  Officer Robert Monlyn and Deputy Charles Ellis both agreed to be interviewed and appointments were set.  Officer Monlyn interview was set for Wednesday, December 28, 2022 at 10:30a.m. and Deputy Ellis interview was set for Wednesday, December 28, 2022 at 3:00p.m.

Lieutenant Jones and Captain Allen met with Officer Robert Monlyn on Wednesday, December 28, 2022 at 10:35a.m., at the Public Integrity Bureau's office interview room number one.  Prior to the interview, Captain Kendrick Allen presented Officer Robert Monlyn with New Orleans Police Department Internal Investigation Rights and Responsibilities of Employees Under Investigation and Notification to Appear and Render a Statement Form.  Both Captain Allen and Officer Monlyn signed and dated the form, with a duplicated copy to be included with the internal investigation **(EXHIBIT AA)**.

Lieutenant Jones inquired from Officer Monlyn if he had a reasonable time to summon an Attorney or Representative.  Officer Monlyn responded, "Yes,", then informed Lieutenant Jones that he would continue the interview without an Attorney or representative present.

Lieutenant Jones commenced the audio and video recorded interview **(EXHIBT BB)** by advising Officer Monlyn of his rights as outlined in the Police Officers Bill of Rights, Louisiana Revised Statue 40:2531.   Lieutenant Jones advised Officer Monlyn he was only being interviewed as a witness. Lieutenant Jones then advised Officer Monlyn of New Orleans Police Department Chapter 52.1.1 requires all New Orleans Police Department employees to answer questions in official inquiries and refusal to comply will result in termination.   Additionally, employees are to be truthful at all times in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department. Failure to comply will result in termination. Officer Monlyn indicated he understood his rights and began his statement at 10:42a.m. Officer Monlyn stated the following:

## Statement of Officer Robert Monlyn (Witness)

Senior Police Officer Robert Monlyn is a 25-year veteran of the New Orleans Police Department.   Officer Monlyn explained that he previously worked Executive Protection for former Mayor Mitch Landrieu on a part time basis, prior to joining the current team in June 2020. Officer Monlyn explained that once he arrived to the team he had no ranking supervisor and he considered Officer Louis Martinez as the senior person to be his supervisor.  As far as payroll all payroll was sent to Sergeant Tokishiba Lane-Hart for entry. As to the Protectee, the schedule came via email from Katrina Simmons the Protectee scheduler.

Investigating Officer's Initials: _KA_

Officer Monlyn explained he attended Executive Protection training with the Louisiana State Police. Officer Monlyn also provided a description of the work schedule and the hours the team members work. Lieutenant Jones inquired about the team's schedule from Officer Monlyn. Officer Monlyn informed Lieutenant Jones the team work four 12 hour days and are off every other weekend. Monlyn also confirmed that his partner was Officer Jeffery Vappie. Officer Monlyn also confirmed that he and Officer Vappie would do most of the traveling with the Protectee.

Officer Monlyn then explained to investigators that occasionally he would accompany the Protectee and Officer Vappie when the Protectee wanted to exercise. Monlyn further stated they would often exercise at Audubon Park or Napoleon Avenue and once completed the Protectee would return to her residence and he and Officer Vappie would leave.

Lieutenant Jones inquired from Officer Monlyn if he had any keys to the Protectee personal home or the Pontalba Apartment. Officer Monlyn responded "No." Lieutenant Jones inquired if he knew if Officer Vappie had keys to either the house or the apartment. Officer Monlyn responded, "I don't know." Officer Monlyn continued to inform the investigators he first visited the Pontalba apartment for a New Year's Eve party for the 300 Year Anniversary. Officer Monlyn then explained when he and Officer Vappie would drop the Protectee off at the Pontalba, he would stay with the car and Officer Vappie would escort the Protectee to the apartment. Officer Monlyn stated he would often park in the Police Zone near the Cathedral or Chartres street. Once Officer Vappie would return they would leave, retrieve their take home vehicle and remain on call available to return if they were summoned by the Protectee. Officer Monlyn stated the longest he recalls waiting for Officer Vappie to return was about 20 minutes.

Officer Monlyn was then asked "Talk to me about the relationship that you recognize when y'all were together in the car, with him and the Protectee." Officer Monlyn responded, "It really, honestly, bruh, I didn't, I didn't see anything."

Lieutenant Jones inquired from Officer Monlyn if he had any conversations with any of his other team members about the relationship with Vappie and the Mayor? Officer Monlyn responded, "Yeah, well, I would say, uh, I want to say, uh, so this is, this, this was one of the things that was, that came forward and I don't know if it was uh, if it was Louis or Charles. But I know somebody mentioned, uh, like, him, they were like, man, we see, you know, Jeffrey always got his hand out, you know, reaching for her. But she says, y'all leave him alone. I, that's what he's supposed to do. He's a man. I'm a female. I need help getting out the car. So, I think it was Louis. Louis would joke about that all the time. Yeah, you know, I gotta do like Jeffrey do it, put my hand out. But I mean, it was fun and games. She would, we would all laugh it off."

Officer Monlyn went on to say, "So, when it came, when it came up, like, she would laugh about it, too. It's like, no, you know, I got a dress on. I'm stepping out of a, a tall vehicle; I need help getting down. You know, so, we kind of all started doing that. But, so, I mean, for us, it was just, you know, it just was no separation from a man or a woman. If it's, you know, we're here. You get out the car, you get out the car. Now, we protected you once you get out. We're not worrying about, you know, grabbing your hand and stuff like that." Lieutenant Jones then inquired from Officer Monlyn if that's what you were trained to do?   Officer Monlyn responded, "No."

At the conclusion of the interview Lieutenant Jones inquired from Officer Monlyn, "Is there anything I did not ask you, that you think is important?"   Officer Monlyn responded, "I mean, so it, it's a bad look. That's definitely not a professional look. I mean anything that, anything that happened, uh, had to be done when I wasn't, when I wasn't there. And I think that's the, that's the thing that is probably what's confusing you now."   Senior Police Officer Robert Monlyn concluded his statement at 12:19p.m. A transcribed copy of Officer Monlyn's statement will be attached to this investigation as **(EXHIBIT CC).**

On Wednesday, December 28, 2022, at 3:00p.m. Captain Allen and Lieutenant Jones met with OPCSO Deputy Charles Ellis at the Public Integrity Bureau's office located at 1340 Poydras Street Suite 1900.   Deputy Ellis provided a detailed recorded interview relative to his knowledge of the investigation involving Officer Jeffery Vappie **(EXHIBIT DD).**   Deputy Ellis began his statement at 3:08p.m. and stated the following;

## Statement of OPCSO Deputy Charles Ellis (Witness)

Deputy Charles Ellis explained that he is member of the Orleans Parrish Criminal Sheriff office and detailed to the Mayor's Office executive Protection detail.   Deputy Ellis explained that he was the Mayor's security when she served on the City Council then transferred with her to the Mayor's Office after the election.   In all, Deputy Ellis have served as Executive Protection for Latoya Cantrell for more than 10 years, City Council and Mayor's Office combined).   Deputy Ellis also discussed he attended Executive Protection training with the Gretna Police Department along with other trainings periodically.   Lieutenant Jones inquired about the team's schedule from Deputy Ellis.   Deputy Ellis informed Lieutenant Jones the team work four 12 hour days and are off every other weekend.

Deputy Ellis description of Executive Protection Duties mirrored the duties identified by Officer Martinez.   Deputy Ellis further confirmed that all schedules and itinerary were sent by the Mayor's scheduler Kertrina Simmons either by text or email.

As it relates to traveling, Deputy Ellis explained the travelling started when Officer Vappie arrived and suggested to the Protectee that the team should travel, however, Deputy Ellis never traveled even after obtaining a Passport and new luggage.

Investigating Officer's Initials:  _KA_

Deputy Ellis further stated he noticed Officer Vappie became overly charismatic with the Protectee.   The Deputy provided an example and stated, "We are at -- she go to eat dinner; one of her favorite places is Houston's and protocol is, you do not sit with the principal at the table. Because if you're sitting with your principal at the table, who's watching your back."  Deputy Ellis stated he noticed that and brought it to Officer Vappie's attention.  According to Ellis, Vappie responded, "Yeah, I see how that, that, that could look."

Deputy Ellis then stated, "After seeing a couple of incidents, uh, I told him, I said, 'hey, man,' I said, 'look,' I said, 'I don't know what's going on, but that what you're doing is inappropriate. You've been to executive protection school,' you know. I say, 'now from a security standpoint,' I said, 'you're not only putting yourself in danger, but you're putting the mayor in danger' because you can't see behind you if there's somebody wants to do her harm."  Again, according to deputy Ellis Vappie responded, "Oh, yeah, man, I understand how it look."  Deputy Ellis explained he noticed the unprofessional behavior with Officer Vappie four or five times.

Deputy Ellis explained that he and the other members of the team talked with Officer Vappie as a whole, but he never told any NOPD or Orleans Parish Criminal Sheriff Office supervisor.  As it relates to the HANO Board Deputy Ellis stated, "It was just dropped on us."  At the conclusion of the interview Lieutenant Jones inquired from Deputy Ellis if believed Officer Vappie were unprofessional, Deputy Ellis responded "Yeah. Absolutely."  Deputy Charles Ellis concluded his statement at 3:52p.m. A transcribed copy of Deputy Ellis' statement will be attached to this investigation as **(EXHIBIT EE).**

After interviewing the other members of the Executive Protection team, it was clear to Captain Allen and Lieutenant Jones, that the members felt Officer Vappie actions were inappropriate and brought discredit to the team.   Deputy Ellis in fact indicated he personally spoke with Officer Vappie about his unprofessional behavior and requested that Officer Vappie stop. According to Deputy Ellis he personally witnessed Officer Vappie inappropriate behavior 4 or 5 times.  As to Officer Louis Martinez, Officer Martinez stated he inquired from Officer Vappie if he crossed the line, Officer Vappie stated 'No," Officer Martinez stated, "I took him at his word."

On Tuesday, January, 3, 2022, approximately 2:00p.m., Captain Kendrick Allen contacted Senior Police Officer Jeffery Vappie and requested an Administrative interview relative to the investigation involving Executive Protection.  Officer Vappie informed Captain Allen that he would be willing to provide a statement then requested a date and time to be interviewed. Captain Allen advised Officer Vappie the interview will be conducted at the Public Integrity Bureau's office located at 1340 Poydras Street, Suite 1900.   An appointment was set to interview Officer Vappie on Monday, January 9, 2023, at 2:00p.m.

Investigating Officer's Initials: _KA_

Captain Allen and Lieutenant Jones met with Officer Vappie on Monday, January 9, 2023, at 2:00p.m., at the Public Integrity Bureau's Office interview room number one.  Prior to the interview, Lieutenant Lawrence Jones presented Officer Jeffery Vappie with New Orleans Police Department Internal Investigation Rights and Responsibilities of Employees Under Investigation and Notification to Appear and Render a Statement Form.  Both Lieutenant Jones and Officer Vappie signed and dated the form, with a duplicated copy to be included with the internal investigation **(EXHIBIT FF)**.

Lieutenant Jones inquired from Officer Vappie if he had a reasonable time to summon an Attorney or Representative.  Officer Vappie responded, "Yes,", then informed Lieutenant Jones that Attorney Nicholas Linder and Brandon Villavaso would be present for his statement as his Attorney and representative.

Lieutenant Jones commenced the audio and video recorded interview **(EXHIBIT GG)** by advising Officer Vappie of his rights as outlined in the Police Officers Bill of Rights, Louisiana Revised Statue 40:2531.   Lieutenant Jones advised Officer Vappie he was being accused of potential violations of Rule 4 Performance of Duty: Paragraph 4 Neglect of Duty C6 Failing to comply with instructions. oral or written from any authoritative source to wit: N.O.P.D. Chapter 22.08 Police Secondary Employment Paragraph 32 which states: No member. including Reserve officers, shall work more than more than 16 hours and 35 minutes (16.58 hours) within a 24-hour period.  Lieutenant Jones then advised Officer Vappie of New Orleans Police Department Chapter 52.1.1 requires all New Orleans Police Department employees to answer questions in official inquiries and refusal to comply will result in termination.

Additionally, employees are to be truthful at all times in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department. Failure to comply will result in termination. Officer Vappie indicated he understood his rights and began his statement at 2:14p.m. Officer Vappie stated the following:

## Statement of Officer Jeffery Vappie (Accused)

On January 9, 2023 the investigators meet with Officer Jeffery Vappie for an interview. Investigators learned that Officer Vappie is a 25-year veteran of the New Orleans Police Department and have served in several prestigious units such as Homicide, Intelligence and Assets Forfeiture. Vappie, during former Mayor Ray Nagin's second term in office was assigned to his executive protection team by former NOPD Superintendent Warren Riley. During his time there, Officer Vappie received training from the Black Cats Executive Protection Agency sponsored by the Gretna Police Department and further training from Louisiana State Police executive protection team.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 20 of 42

While working Mayor Nagins detail, the team would work twelve (12) hour shifts, just like now, and would travel with the mayor on business related trips. Vappie relayed that some of his duties include taking care of maintenance on the mayor's city vehicle and doing advance site security as it relates to the mayor's upcoming events. Vappie also stated that if Mayor Nagin was out of town that you would still work your twelve-hour shift. It was also revealed to investigators that the executive protection team would often pick up and drop Mayor Nagin, and his family, off at the city owned Pontalba Apartment. Officer Vappie stated that during the Nagin administration, that Sergeant Wondell Smith was the supervisor of the unit.

After Mayor Landrieu was sworn in, Officer Vappie went back to Asset Forfeiture until May of 2021 when he was assigned to Mayor Cantrell's executive protection team by then NOPD Superintendent Shaun Ferguson. During this time with the Executive Protection team, the schedule and the hours worked were the same as with Mayor Nagin. Investigators learned that during this second assignment with the EP team, Sergeant Wondell Smith had been removed from the team. Investigators asked Vappie who was the supervisor, without hesitation Vappie responded "THE BOSS". When investigators asked for clarification, Vappie stated that he was referring to Mayor Cantrell. During this tour with the EP team Vappie stated that he would receive an email or text, to city phone, with the mayor's schedule and assignments for the next day. Vappie also stated that he would email his time to Sergeant Tokishiba Lane-Hart to be entered into ADP, however, he would not check for accuracy. Officer Vappie and Monlyn would accompany the mayor on travel trips because Officers Martinez was too sick to, and Deputy Ellis did not want to. Vappie also stated that travel with Mayor Cantrell started after she received two threats made on her life.  Note: The investigators were unable to verify the Threats discussed by Officer Vappie.  Vappie also stated that the mayor appointed him to the HANO Board and she wanted him to attend the meetings.  Officer Vappie explained while at the meeting he was not performing the duty of an Executive Protection member.  Vappie also indicated that the Protectee was never present at the HANO Board meetings.

Investigators questioned Vappie about his time at the Pontalba apartment. Vappie stated that he would exercise with the mayor some mornings before work and some evenings off the clock. Vappie stated that if he would exercise before duty with the mayor that he would take a shower in the Pontalba and change into business attire to start his shift. Vappie further explained that he was the only member of the Executive Protection team that would work out with the Protectee. Occasionally Officer Monlyn would be present when they worked out in Audubon Park, but he would drive the vehicle. Officer Vappie also indicated Officer Monlyn was not present when he worked out with the Protectee before work I the morning.  vi   Investigators also learned that several times Officer Vappie would sit at the table with the mayor and have dinner at restaurants, which is a violation of his Executive Protection Training. Investigators learned that September 1, 2022 that Officer Vappie was assigned to the Police Consultant Fausto Pichardo by Mayor Cantrell.  Officer Jeffery Vappie concluded his statement at 5:13p.m. A transcribed copy of Officer Vappie's statement will be attached to this investigation as **(EXHIBIT HH).**

Investigating Officer's Initials:   _KA_

Captain Kendrick Allen contacted New Orleans Police Department Sergeant Tokishiba Lane-Hart. Captain Allen requested to interview Sergeant Lane-Hart relative to her knowledge of this investigation. Sergeant Lane-Hart informed Captain Allen that she would be willing to provide a statement then requested a date and time to be interviewed. Captain Allen advised Sergeant Lane-Hart the interview will be conducted at Police Head Quarters MSB Office located at 715 S. Broad Street, 4th floor. An appointment was set to interview Sergeant Lane-Hart on Thursday, January 19, 2023 at 11:00a.m.

Captain Allen met with Sergeant Lane-Hart on Thursday, January 19, 2023 at 11:00a.m., at Police Head Quarters MSB Office located at 715 S. Broad Street, 4th floor. Prior to the interview, Captain Kendrick Allen presented Sergeant Lane-Hart with New Orleans Police Department Internal Investigation Rights and Responsibilities of Employees Under Investigation and Notification to Appear and Render a Statement Form. Both Captain Allen and Sergeant Lane-Hart signed and dated the form, with a duplicated copy to be included with the internal investigation **(EXHIBIT II)**.

Captain Allen inquired from Sergeant Lane-Hart if she had a reasonable time to summon an Attorney or Representative. Sergeant Lane-Hart responded, "Yes,", then informed Captain Allen that, Captain Michael Glasser would be present for the interview as her representative present.

Captain Allen commenced the audio and video recorded interview **(EXHIBIT JJ)** by advising Sergeant Lane-Hart of her rights as outlined in the Police Officers Bill of Rights, Louisiana Revised Statue 40:2531. Captain Allen advised Sergeant Lane-Hart she was only being interviewed as a witness. Captain Allen then advised Sergeant Lane-Hart of New Orleans Police Department Chapter 52.1.1 requires all New Orleans Police Department employees to answer questions in official inquiries and refusal to comply will result in termination. Additionally, employees are to be truthful at all times in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department. Failure to comply will result in termination. Sergeant Lane-Hart indicated she understood her rights and began her statement at 11:07a.m. Sergeant Lane- Hart Martinez stated the following:

## Statement of Sergeant Tokishiba Lane-Hart (Supervisor)

On Thursday, January 19, 2023, at 11:07am Captain Kendrick Allen interviewed Sergeant. Lane-Hart with her representative Captain Michael Glasser present. Before the interview started, Captain Allen read into record the Police Officer Bill of rights and confirmed that Sergeant Lane-Hart understood her rights. During this interview, Sergeant Lane expressed that her job duties as it relates to the Mayor's Executive Protection Team was only administrative and limited to her entering their payroll and assuring that they completed all mandated training.

Investigating Officer's Initials: _KA_

Sergeant Lane was very direct in answering that she received the Executive Protection Team member's payroll time by email and sometimes text messages but was not privy to the mayor's schedule nor did she communicate with the mayor's scheduler. Sergeant Lane-Hart stated that she also enters the time from officers assigned to the City Attorney's Office as well as the City Council Chambers. However, she can go to where those officers are assigned to conduct checks on those officers, which she did occasionally. Also, related to the officers in the City Attorney Office and the Council Chambers, she has a civilian point of contact unlike the situation with the Mayors Executive Protection Team. Sergeant Lane-Hart also stated that she has no input into who goes to executive protection and she only find out that a new member of the team has been added when she's contacted by the new officer for payroll entry. Sergeant Tokishiba Lane-Hart concluded her statement at 11:21a.m. A transcribed copy of Sergeant Lane-Hart's statement will be attached to this investigation as **(EXHIBIT KK).**

On Wednesday, February 8, 2023, Officer Jeffery Vappie returned to the Public Integrity Bureau for a follow-up interview with Lieutenant Jones and Captain Allen. The follow-up interview was conducted in interview #1 of the Public Integrity Bureaus Office. Prior to the interview, Captain Kendrick Allen presented Officer Jeffery Vappie with New Orleans Police Department Internal Investigation Rights and Responsibilities of Employees Under Investigation and Notification to Appear and Render a Statement Form. Both Captain Allen and Officer Vappie signed and dated the form, with a duplicated copy to be included with the internal investigation **(EXHIBIT FF)**.

Captain Allen inquired from Officer Vappie if he had a reasonable time to summon an Attorney or Representative. Officer Vappie responded, "Yes,", then informed Captain that Attorney Nicholas Linder and Brandon Villavaso would be present for his statement as his Attorney and representative. Captain Allen commenced the audio and video recorded interview **(EXHIBIT GG)**

### Follow-up Statement of Officer Jeffery Vappie (Accused)

Officer Vappie explained during the follow-up statement that he was assigned to the Consultant Chief by the Protectee. Officer Vappie stated his task was to make sure he got "To/from throughout the department and around the city to investigate things that he needed to investigate; to do his consulting".

Lieutenant Jones inquired from Officer Vappie if he can discuss the HANO Board and his appointment to the Board. Officer Vappie stated, "Okay. So, the reason I was at that HANO board meeting is because I was appointed commissioner by the mayor, and the mayor gave me permission while I was working executive protection to be there at that, to be there at the, uh, the meeting. But at no time, if the mayor was to call at any time, while I'm on that board, on that panel, that I could not or would not be prevented from leaving to go take care of my police duties.

Investigating Officer's Initials: _KA_

So, it was, it was no issue. I was not being paid. So, uh, yeah, I had the city phone; on call. If I was to get a call, because I'm still on call, I went to that, I went to uh, the HANO board meeting was called, but I'm still on call; I'm still available if needed, I would go. I didn't see the issue. That's it. That's my answer."

Prior to the conclusion of Officer Vappie supplemental statement, Captain Allen presented him and his attorney with a copy of NOPD Chapter 13.38, *Nepotism and Employment Conflicts*. Captain Allen then read to Officer Vappie the definition of Personal Relationship per the Chapter. "Okay. Personal Relationships, including Marriage, Co-habitation, Dating or any other Romantic or Intimate Relationships beyond Mere Friendship. All right. You understand, the definition?"  Officer Vappie informed the investigators his relationship with his Protectee, Mayor Latoya Cantrell was only "Professional".  The audio taped statement will be attached to this investigation as **(EXHIBIT GG).**   A transcribed copy of Officer Vappie continued statement will be attached to this investigation as **(EXHIBIT HH).**

## Analysis Review

At the conclusion of the interviews of the Executive Protection team members and Sergeant Lane-Hart, Lieutenant Lawrence Jones began to conduct a review of the previously obtained evidence.   Lieutenant Jones began the analysis review with the material obtain from the Housing Authority of New Orleans.  To conduct this thorough review Lieutenant Jones obtained a copy of Officer Jeffery Vappie Employee ID#08913 ADP (Payroll) records from January 1, 2022 to December 31, 2022.  The payroll records will be attached to this investigation as **(EXHIBIT LL).**

Per the HANO website it was determined that Officer Jeffery Vappie joined the HANO Board in March of 2022.  The March meeting was held on **March 29, 2022, at 4:00p.m.**  According to the agenda the meeting was an in-person meeting held at the Helen W. Lang Memorial Boardroom, building "B", located at 4100 Touro Street, New Orleans, LA 70122.  Per the agenda the 3rd item was "ROLL CALL."  The roll call is where the names of the present board members is called to determine if a quorum is present.

The roll call was captured via the recording also obtained from the HANO website.  At the 1 minute and 33 seconds mark, you could hear the name Jeffery Vappie called, in response you hear Jeffery Vappie respond "PRESENT", indicating he is present at the meeting.  Again, the meeting began at 4:00p.m., 1 minute and 33 seconds into the meeting Officer Jeffery Vappie responds "PRESENT".   A review of Officer Vappie payroll records for March 29, 2022, indicated that Officer Vappie was on duty from 8am – 8pm.  Officer Vappie was assigned to the Executive Protection Unit and his responsibility was to perform protection of his Protectee the Mayor of New Orleans.  During Officer Vappie interview on Monday, January 9, 2023, Officer Vappie stated, he was appointed to the non-paid volunteer Board by Mayor Latoya Cantrell, however, Mayor Cantrell was never present at any of the board meetings.

Investigating Officer's Initials: _KA_

Officer Vappie also indicated during his interview that he was not performing Executive Protection duties while at the HANO Board Meeting.   According to NOPD Policy Rule 4: Performance of Duty, paragraph 3; devoting entire time to duty, officers shall not engage in activities or personal business which would cause them to neglect or be inattentive to duty. Clearly Officer Vappie was not attentive to his duty as an Executive Protection member when he attended the HANO Board meeting at 4:00p.m., while still on duty until 8:00p.m.

According to the HANO obtained records, the **April Board Meeting was cancelled**.  The May meeting was held on **May 24, 2022, at 4:00p.m.** and the June Board meeting was held on **June 28, 2022, at 4:00p.m.**, According to the Roll Call Audio Officer Vappie was present for both meetings.  The May and June meeting was also held at Helen W. Lang Memorial Boardroom, building "B", located at 4100 Touro Street, New Orleans, LA 70122.  A review of Officer Vappie payroll records for May 24, 2022 and June 28, 2022, Officer Vappie was listed as "SICK" and not on duty.  Officer Vappie presence at the meetings while "SICK" did not violate any NOPD policy.   Reason, according to NOPD Policy Chapter 22.4 Title Sick Leave, Paragraph 13, employees are not required to remain confined to a specific location while sick. The **July 26, 2022**, Board meeting again according to the HANO records Officer Vappie was present at the meeting, but his NOPD payroll records indicate Officer Vappie was OFF DUTY.

The August 30, 2022, HANO Board meeting, started at 4:04p.m. and ended at 5:44p.m. Although, at the August meeting Officer Vappie is not heard on the audio acknowledging present.  The meeting minutes indicate that Officer Vappie was present at the meeting, as seen below with ATTACHMENT "1".  The minutes also indicate that Officer Vappie made and 2nd a Motion on two separate Resolutions during the meeting, as seen below with ATTACHMENT "2".  A review of Officer Vappie NOPD Payroll records for August 30, 2022, indicates that Officer Vappie was on Duty from 8:00am to 9:00pm. Again, Officer Vappie was not attentive to his duty as an Executive Protection member when he attended the HANO Board meeting at 4:04p.m. to 5:44pm, while still on duty until 9:00p.m.

Investigating Officer's Initials:  KA

2022-0513-R
Page 25 of 42

## ATTACHMENT "1"

HOUSING AUTHORITY OF NEW ORLEANS
MINUTES OF THE BOARD OF COMMISSIONERS
REGULAR MEETING

AUGUST 30, 2022

The Board of Commissioners of the Housing Authority of New Orleans met in Regular Session in the Helen W. Levy Memorial Board Room of the Authority located at 4100 Touro Street, Building II in the City of New Orleans, Louisiana 70122 at 4:00p.m., or the 24th day of July, 2022.

**ATTENDANCE**

Lettia Hearn, HANO Executive Director
Donna Alexander, HANO General Counsel

Ronald Jordan, Section 8 Representative          Kim Jones
7th St. Johnson, Community Limited for Change    Bobbie Bones
Denean Jones Human Rights Attorney               Glenda Senra

I.    STATEMENT BY GENERAL COUNSEL

II.   CALL TO ORDER

The Board of Commissioners Regular Meeting was called to order by President Johnson at 4:04 pm.

III.  ROLL CALL

**PRESENT**
President Johnson
Commissioner Barrow
Commissioner Jasper
Commissioner Hanson
Commissioner Pryor
Commissioner McBurg
Commissioner Vappie

**ABSENT**
Vice President Ford
Commissioner Young

A quorum was present.

## ATTACHMENT "2"

MINUTES OF THE REGULAR MEETING OF THE BOARD OF COMMISSIONERS FOR AUGUST 30, 2022

IX.   NEW BUSINESS

Rental for Approval
Presentation(s)

Resolution No. 2022-17 – Designation of Financial Transactions Authority - Presented by Stacy Jackson, Acting Deputy Director of Administration/Chief Financial Officer

Motion: To Approve Resolution No. 2022-17 – Approve to Designation of Financial Transaction Authority

Moved by  Commissioner Hanson
Seconded by  Commissioner Vappie
Proper Comment  None
Call for Vote  All in favor; none opposed

Motion passed. Resolution No. 2022-17 is approved.

Resolution No. 2022-18 – Approve Integrated to Amend Resolution No. 2022-05 to increase Contract Amount for On-Call HVAC Services - Presented by Winston Green, Director of Asset Management

Motion: To Approve Resolution No. 2022-18 – Approve to Amend Resolution No. 2022-05 to Increase Contract Amount for On-Call HVAC Services

Made by  Commissioner Vappie
Seconded by  Commissioner Richard
Public Comment  None
Call for vote  All in favor; none opposed

Motion passed. Resolution No. 2022-18 is approved.

X.    PUBLIC COMMENTS
      • Public Comment(s)
           ○ Ronald Jordan
           ○ 7th C. Johnson
           ○ Denean Jones
           ○ Kim Jones
           ○ Grace Senra
           ○ Glenda Senra

      • Board of Commissioners Comment(s)
           ○ Sharon Jasper

XI.   ANNOUNCEMENTS AND REMINDERS
      • N/ Announcement of Reminders

The September 20, 2022, Board meeting officer Vappie again was not heard on the roll call audio and the minutes indicate he was not present. The October 25, 2022, Board meeting, Officer Vappie was present for the meeting which began at 4:03p.m., according to the minutes. Officer Vappie payroll records indicate his shift ended at 4:00p.m. on October 25, 2022. According to the HANO website, no meeting information was posted for November 2022 and the December 2022 meeting was cancelled.

Lieutenant Jones analysis review of Officer Jeffery Vappie and the HANO Board meetings indicated that on two separate occasions, March 29, 2022 and August 30, 2022, Officer Jeffery Vappie attended a HANO Board meeting while still on duty with the New Orleans Police Department.

Lieutenant Jones also reviewed Officer Vappie ADP payroll for 16 hours and 35 minutes' violation. The review covers the time frame of May 1, 2021 through December 31, 2022. Lieutenant Jones observed on four (4) different occasion during the review time period where Officer Vappie payroll exceeded 16 hours and 35minutes in single day. The dates were Friday, November 5, 2021 (Attachment 3), Monday, January 10, 2022 (Attachment 4), August 29, 2022, (Attachment 5) and September 28, 2022 (Attachment 6).

Investigating Officer's Initials:  _KA_

2022-0513-R
Page 26 of 42

Attachment 3 is a depiction of Officer Vappie ADP time card for the week of October 31, 2021 to November 6, 2021. As you can see, on November 5, 2021, it appears that Officer Vappie worked for 20 hours. The time card was entered by NOPD Sergeant Tokishiba Lane, and the remarks indicate that Officer Vappie was on an out of town Trip with the Mayor at a Climate Control Summit. According to the ADP records for Officer Vappie and the other Executive Protection team members (Martinez and Monlyn), Officer Vappie was the only Executive Protection traveling. The investigator located no evidence that Officer Vappie was not acting in his official capacity as an Executive Protection member.

(Attachment 3)



Attachment 4 and 4A is a depiction of Officer Vappie and Robert Monlyn's ADP time card for the week of January 9, 2022 to January September 15, 2022. As you can see, on January 10, 2022, it appears that Officer Vappie worked for 19 hours. The time card was entered by NOPD Sergeant Tokishiba Lane, and the remarks indicate that Officer Vappie worked the Mayor's Inauguration Celebration. Officer Vappie time mirrored his partner Officer Robert Monlyn's time for January 10, 2022. The investigator located no evidence that Officer Vappie or Monlyn was not acting in their official capacity as an Executive Protection member.

(Attachment 4)                    (Attachment 4A)



Investigating Officer's Initials: _JLA_

Attachment 5 is a depiction of Officer Vappie ADP time card for the week of August 28, 2022 to September 3, 2022.  As you can see, on August 29, 2022, it appears that Officer Vappie worked for 21 hours.  The time card was entered by Tiesha Lewis assigned to the NOPD Management Services Bureau.  The remarks indicate that Officer Vappie travelled with the Mayor, no further information. The investigator located no evidence that Officer Vappie was not acting in his official capacity as an Executive Protection member.  Officer Vappie was the only Executive Protection traveling.

(Attachment 5)



Attachment 6 is a depiction of Officer Vappie ADP time card for the week of September 26, 2022, to October 8, 2022.  As you can see, on September 28, 2022, it appears that Officer Vappie worked for 18 hours.  The time card was also by Tiesha Lewis assigned to the NOPD Management Services Bureau.  The remarks indicate that Officer Vappie was assigned to the Consultant Chief Fausto B. Pichardo and not his normal Executive Protection assignment. Therefore, on January 25, 2023, Captain Kendrick Allen emailed Consultant Chief Pichardo and requested an interview relative to his knowledge of Officer Vappie possibly violating NOPD police relative to 16 hour and 35 minutes within a 24-hour period.  On Wednesday, January 25, 2022, Consultant Chief responded, **"Respectfully, there is nothing that I can contribute to aid this investigation."**  A copy of the email will be attached to this investigation as **(EXHIBIT MM).**

Investigating Officer's Initials: _KA_

2022-0513-R
Page 28 of 42

(Attachment 6)



Lieutenant Jones further reviewed the surveillance video obtained from the French Market Corporation of the camera located on the light pole on St. Peter Street, in Jackson Square Pedestrian Mall, outside of the Upper Pontalba apartment.   The investigator reviewed a representative sample of the video.  The dates included January 21, 2022, August 23, 2022, August 30, 2022, April 9th and 10th 2022 and various dates in September and October of 2022. Lieutenant Jones observed on several occasions Officer Vappie entering the Pontalba apartment, both on duty and not on duty.  Lieutenant Jones noticed that Officer Vappie was at times clad in a suit and other times in "Exercise Clothing."  The video further depicted Officer Vappie at the residence with his Protectee various hours of the day and night both on and off duty.

During Officer Vappie interview with Captain Allen and Lieutenant Jones, Officer Vappie indicated his Protectee requested to work out and he volunteered to do so.  Officer Vappie further explained he was the only member of the Executive Protection team to work out with the Protectee and most of the work out occurred prior to work in morning.  Officer Vappie explained after working out he would return to the Upper Potable Apartment with the Protectee, take a shower, change clothes then go to work.

Officer Vappie emails Jvappie@nola.gov , from March 1, 2022, to November 30, 2022 **(EXHIBIT N)** and the telephone **5042698509** analysis **(EXHIBIT O)** were also reviewed by Lieutenant Jones.  The emails confirmed that Kertrina Simmons would email the Protectee itinerary to the staff.  No further evidentiary value was located in the telephone analysis or the emails.  The Executive Protection Training certificates for Officers Jeffery Vappie, Louis Martinez and Robert Monlyn will be attached to this investigation as **(EXHIBIT S)**

Investigating Officer's Initials: _____

2022-0513-R
Page 29 of 42

On Friday, March 10, 2023, at 4:03p.m. Captain Kendrick Allen presented Officer Vappie with a verbal Notice of Disposition, which signifies the conclusion of his investigation.   The notification was verbal because Officer Vappie was out of state and unable to meet with Captain Allen.  Therefore, Captain Allen provided Officer Vappie with a verbal notification and will allow Officer Vappie to sign the notification upon his return.   Captain Allen informed Officer Vappie of the disposition and completion of the investigation.   Officer Vappie acknowledged he understood the disposition was **SUSTAINED** and the investigation under Public Integrity Bureau tracking number **2022-0513-R** was officially concluded **(EXHIBIT NN)**.

On Tuesday, March 14, 2023, at approximately 1:30pm, Captain Kendrick Allen and Lieutenant Lawrence Jones met with Senior Police Officer Jeffery Vappie and presented him with a detail (181) page copy of his transcribed statement he provided to Captain Kendrick Allen and Lieutenant Jones on Monday, January 9, 2023 and Wednesday, February 8, 2023.   Officer Vappie reviewed the transcribed statements and affixed his initials to each page then signed, dated and printed his signature on the last page. **(EXHIBIT HH)**.   Note: The transcriptions were completed by Ms. Elise Triplett.  Officer Vappie signed his transcriptions upon his return to the City of New Orleans, after he received his verbal notification on Friday, March 10, 2023.

## Witnesses

1. **Officer Kristy Johnson-Stokes,** Emp.ID#14237, kjjohnson@nola.gov, Intelligence Unit,

2. **Retired Sergeant Wondell Smith,**

3. **Retired Sergeant Todd Henry,**

4. **Mr. John Douglass (Training Expert),**

5. **Louisiana State Police Captain Dewight Robinette (Training Expert),**

6.  **Officer Louise Martinez,** Emp.ID 6236, lmartinez@nola.gov, Mayor Office

7.  **Officer Robert Monlyn,** Emp.ID 06111, Rmonlyn@nola.gov, Mayor Office

8. **OPCSO Deputy Charles Ellis,**

9. **Sergeant Tokishiba Lane-Hart,** Emp.ID 7609, tlane@nola.gov, SID

Investigating Officer's Initials:  _KA_

2022-0513-R
Page 30 of 42
## Credibility Assessment

**Senior Police Officer Kristy Johnson-Stokes-** Officer Johnson-Stokes was deemed to be credible. Officer Johnson-Stokes provided the investigators with valuable knowledge and insight into the duties of an Executive Protection member.

**Retired Sergeant Wondell Smith-** Retired Sergeant Smith was deemed to be credible. Sergeant Smith provided the investigators with valuable knowledge and insight into the duties of an Executive Protection member. Sergeant Smith provided historical knowledge that was crucial to the investigation after serving as one of the New Orleans Police Department longest serving Executive Protection officer, prior to retirement.

**Retired Sergeant Todd Henry-** Retired Sergeant Henry was deemed to be credible. Like Sergeant Smith, Retired Sergeant Henry also served as a former member of the Executive Protection staff for former Superintendent Richard Pennington. Sergeant Henry provided a historical insight into the duties of an Executive Protection member.

**Mr. John Douglass (Training Expert)** - John Douglass was deemed to be credible. Mr. Douglass is a Law Enforcement Officer from the State of Mississippi and an Executive Protection Instructor for Falcon Group Tactical. Mr. Douglass trained Executive Protection Officers from the New Orleans Police Department and was able to provide an insight of the expert training to the investigators.

**LSP Captain Dewight Robinette (Training Expert)** - Captain Dewight Robinette was deemed to be credible. Captain Robinette is a member of the Louisiana State Police and an Executive Protection Expert and Commander of the State Police Executive Protection Team. Captain Robinette trained Executive Protection Officers from the New Orleans Police Department and was able to provide an insight of the expert training to the investigators.

**Officer Louis Martinez (Witness)** - Officer Louis Martinez was deemed creditable, because Lieutenant Jones as unable to locate any evidence in this investigation that proved otherwise.

**OPCSO Deputy Charles Ellis (Witness)** – Deputy Charles Ellis was deemed creditable, because Lieutenant Jones as unable to locate any evidence in this investigation that proved otherwise.

**Sergeant Tokishiba Lane-Hart (Witness)-** Sergeant Lane-Hart was deemed creditable, because Lieutenant Jones as unable to locate any evidence in this investigation that proved otherwise.

**Officer Robert Monlyn (Witness)** –- Officer Robert Monlyn was deemed creditable, because Lieutenant Jones as unable to locate any evidence in this investigation that proved otherwise.

Investigating Officer's Initials: _LA_

**<u>Senior Police Officer Jeffery Vappie</u>** –   After comparing Officer Vappie administrative statement with the evidence reviewed during this investigation, the investigators were unable to confidently assess his credibility. During his interview Officer Vappie seemed confused about is work schedule rotation, antagonistic regarding his tactical positioning while dining with his Protectee and unable to articulate some of his duties when he was not with the Protectee. However, the investigator does not have any evidence that Officer Vappie made any attempt to willfully misled or was untruthful in any statement that was given during this administrative investigation. During the interview, related to the 16:35 overage, Officer Vappie stated several times that "It's always been that way" when dealing with overtime. However, the investigators observed when Sergeant Wondell Smith was embedded in the executive protection team he would move the teams time to adjust for the Protectee schedule, if a late event occurred. This in fact is not a blemish on Officer Vappie credibility but rather a paradigm shift in how the executive protection team time was managed after a removal of a supervisor and the lack of a policy governing this unit.

### Summary

On Tuesday, November 8, 2022, approximately 7:00p.m., Public Integrity Bureau Sergeant Lawrence Jones was contacted by Public Integrity Bureau Deputy Chief Keith Sanchez. Deputy Chief Sanchez informed Sergeant Jones that a media request was sent to the Public Integrity Bureau relative to New Orleans Police Department Senior Police Officer Jeffery Vappie assigned to the Investigative Services Bureau, Executive Protection. Deputy Chief Sanchez forwarded the request to Sergeant Lawrence Jones for review.

On Wednesday, November 9, 2022, Sergeant Lawrence Jones reviewed the request and learned that Senior Police Officer Jeffery Vappie was accused of working more than 16 Hours and 35 minutes with in a 24-hour period. The request indicated Officer Vappie may have violated this rule when on several occasions while assigned to the Executive Protection Section he may have violated this NOPD policy.

This Administrative Investigation was assigned to Captain Kendrick Allen and Lieutenant Lawrence Jones of the Public Integrity Bureau on Wednesday, November 9, 2022, by Deputy Chief Keith Sanchez, bureau chief of the New Orleans Police Department Public Integrity Bureau.

To complete a thorough investigation, Captain Allen and Lieutenant Jones thought it would be best to obtain a historical information relative to officers assigned to the Executive Protection Detail. Therefore, on Tuesday, November 29, 2022, Lieutenant Lawrence Jones identified and contacted former members of the Mayor's executive protection team, New Orleans Police Senior Police Officer Kristy Johnson–Stokes now assigned to the New Orleans Police Department Investigative Services Division / Intelligence Unit and New Orleans Police Retired Sergeants Wondell Smith and Todd Henry.

Investigating Officer's Initials: _____ KA _____

Officer Kristy Johnson-Stokes, Retired Sergeant Wondell Smith and Retired Sergeant Todd Henry, explained the mission of the Executive Protection team are to the mayor and to the mayor's immediate family.  The team members normally work in teams of two and the itinerary is received the day before either by email or text.  Sergeant Smith explained he would direct someone to conduct an advance review of the location they would visit the following day.  As to pick up, the itinerary received the previous day would discuss pick up, which is normally the Mayor's residence.  The Protection team members would leave their take home vehicle at the pickup location and drive the Mayor's assigned SUV for the work day.  Once the Protectee is ready they would go to the office or the first appointment.  Once the Mayor has gone through the entire schedule, at that point it becomes family time. Sergeant Smith was very clear the Executive Protection team works at the Mayor's discretion. "If Mayor goes to the movies, you got to go to the movies."   Sergeant Smith explained he as the Supervisor would direct, instruct and give assignments as the team supervisor.  However, he was clear the ultimate authority was the Mayor.

Captain Allen and Lieutenant Jones continued to obtain expert background information as it pertains to Executive Protection.  The investigators sought to obtain Education and Training information from experts who previously trained New Orleans Police Members for executive protection.  Mr. John Douglass of the Falcon Group Tactical out of the State of Mississippi and Captain Dewight Robinette of the Louisiana State Police were chosen by the investigators because both previously trained members of the NOPD Executive Protection team.

During the interview of Mr. John Douglass, he explained the communication and interaction between the Protectee and any member of the protection detail should be kept on a **PROFESSIONAL LEVEL ONLY**.  Mr. Douglass went on to discuss the training provided by the Falcon Group also covers, escorting and eating with the principal.  Mr. Douglass stated at no point should a Protection member sit with the principal unless invited and even then they position themselves with the Protectee safety in mind. Mr. Douglass further stated he believes all Executive Protection units should have a supervisor embedded in the group.  The supervisor would have the authority to ensure the Protectee request align with the departments rules and regulation.  The supervisor would also monitor the other members of the unit and replace them if need be.

During the interview of Captain Robinette, he explained he trained many NOPD members along with other agencies. During the training protection, officers are taught to not only protect the Protectee well-being, but to also protect them from any embarrassment, whether it's your actions or the Protectee actions that may cause them embarrassment.  Captain Robinette also explained, your attire should blend in and not overshadow your Protectee.  All conversations should remain professional and limited to "Good Morning" not good morning and how was your day.

Investigating Officer's Initials: ___KA___

The executive protection officer should gain the trust of the Protectee, but never cross the line of being unprofessional. Captain Robinette explained having a supervisor in the unit is intricate with helping to curve unprofessional behavior from either the Protectee or the team members. Captain Robinette further explained it is common for the protection team members to exercise with the Protectee, to include running, biking, walking or weight lifting. Captain Robinette further explained as it relates to the primary living quarters of the Protectee. The team only goes there if it is a security issue.

Captain Robinette explained all protection teams' weather it is federal, state or local are consistent and do the same duties. Those duties are to protect a particular dignitary. Your focus and main goal is to provide cover for that principal, regardless to whether or not you run a one-man detail or multiple man detail.

Captain Robinette concluded his statement with, "**You never do anything – and we preach this: don't do anything that's immoral, illegal or unethical. Those three things can get you in jail, fired or hurt, or get your Protectee in trouble and that's my, that's my, uh, my policy. That is what I preach all the time and I've preached it to a lot of people. And when we teach that class, we always say that: don't ever do anything that's illegal, immoral or unethical.**"

Captain Allen and Lieutenant Jones also interviewed the current members of the Executive protection team, Officer Louise Martinez, Robert Monlyn and OPSO Deputy Charles Ellis. During the interview of Senior Police Officer Louis Martinez, he explained Sergeant Wondell Smith was the on team Supervisor prior to his transfer, however no Sergeant is currently assigned to the unit. Officer Martinez also explained, Sergeant Tokishiba Lane only responsibility was to enter payroll and ensure the members were scheduled for annual in-service training. Sergeant Lane had no responsibility to the day to day operations of the team. Officer Martinez then stated, ultimately the Mayor is the Supervisor.

Lieutenant Jones then inquired from Officer Martinez, what was his relationship with the current Protectee. Officer Martinez explained, "You don't have a relationship with uh, the mayor. it is the mayor's office and then there's the mayor and your executive protection, you don't have a relationship with the mayor period." Officer Martinez then explained that he started to notice Officer Vappie unprofessional behavior with the Protectee. Officer Martinez explained how Officer Vappie would sit at the table with the Protectee. Officer Martinez stated, "I found it strange, uh, when I'm waiting for him to get a parking spot to go in, I go in the restaurant; he's sitting, sitting with his back to the door, which we don't do by ourselves. The mayor was sitting at the table, sitting at the table and I just looked at him and I, I said, it just didn't look right. I'm, I'm working for you and I'm sitting down having dinner with you. This didn't look right. We always have a table off to the side, it just didn't look right and I told him again, I said, man, you know you're not following protocol."

Investigating Officer's Initials: _KA_

2022-0513-R
Page 34 of 42

Martinez stated, he approached Officer Vappie and stated to him **"There's a line that you, you don't cross it. And I asked him did he crossed it; did he cross it and he said no. I took him at his word."**  Lieutenant Jones inquired from Officer Martinez if he ever told a supervisor about Officer Vappie's unprofessional behavior.  Officer Martinez stated, "No, I made it known to him that I didn't approve of what he was doing.

After interviewing the other members of the Executive Protection team, it was clear to Captain Allen and Lieutenant Jones, that the members felt Officer Vappie actions were inappropriate and brought discredit to the team.  Deputy Ellis in fact indicated he personally spoke with Officer Vappie about his unprofessional behavior and requested that Officer Vappie stop. According to Deputy Ellis he personally witnessed Officer Vappie inappropriate behavior 4 or 5 times.  As to Officer Louis Martinez, Officer Martinez stated he inquired from Officer Vappie if he crossed the line, Officer Vappie stated 'No," Officer Martinez stated, "I took him at his word."

The investigators found it necessary to gain access to Officer Vappie work issued cell phone **5042698509** and City Emails Jvappie@nola.gov.  The review will provide evidentiary value in the event instructions are received allowing Officer Vappie to attend HANO meetings while at work and any instructions he may have received as it relates to his time spent in the Upper Pontalba Apartments both on duty and off duty.  No emails were located with those instructions.

Members of the Public Integrity Bureau also completed a Public Records request to the French Market Corporation to obtain the video surveillance of the camera located on the light pole on St. Peter Street, in Jackson Square Pedestrian Mall outside of the Upper Pontalba apartment. The date range of the video was July 30, 2022, to November 17, 2022.

To also corroborate the inferences that Officer Vappie may have neglected his duty when he attended a HANO board meeting while on duty.  Lieutenant Jones queried the Housing Authority of New Orleans official website "hano.org" and obtained historical data relative to "HANO" Board meetings from the March, 2022 to December 2022.  The information obtained consisted of meeting minutes, meeting agenda and an audio recording of the meeting. Lieutenant Jones analysis review of Officer Jeffery Vappie and the HANO Board meetings indicated that on two separate occasions, **March 29, 2022 and August 30, 2022,** Officer Jeffery Vappie attended a HANO Board meeting while still on duty with the New Orleans Police Department.

Investigating Officer's Initials:  _LA_

2022-0513-R
Page 35 of 42

Lieutenant Jones reviewed the surveillance video obtained from the French Market Corporation of the camera located on the light pole on St. Peter Street, in Jackson Square Pedestrian Mall, outside of the Upper Pontalba apartment. The investigator reviewed a representative sample of the video. The dates included January 21, 2022, August 23, 2022, August 30, 2022, April 9th and 10th 2022 and various dates in September and October of 2022. Lieutenant Jones observed on several occasions Officer Vappie entering the Pontalba apartment, both on duty and not on duty. Lieutenant Jones noticed that Officer Vappie was at times clad in a suit and other times in "Exercise Clothing." The video further depicted Officer Vappie at the residence with his Protectee various hours of the day and night both on and off duty.

During Officer Vappie interview with Captain Allen and Lieutenant Jones, Officer Vappie indicated his Protectee requested to work out and he volunteered to do so. Officer Vappie further explained he was the only member of the Executive Protection team to work out with the Protectee and most of the work out occurred prior to work in the morning. Officer Vappie explained after working out he would return to the Upper Potable Apartment with the Protectee, take a shower, change clothes then go to work.

The telephone analysis and Officer Vappie emails were also reviewed by Lieutenant Jones. The emails confirmed that Kertrina Simmons would email the Protectee itinerary to the staff. No further evidentiary value was located in the telephone analysis or the emails.

Lieutenant Jones also reviewed Officer Vappie ADP time card for the week of September 26, 2022, to October 8, 2022. On September 28, 2022, it appears that Officer Vappie worked for 18 hours. The time card remarks indicated Officer Vappie was assigned to the Consultant Chief Fausto B. Pichardo and not his normal Executive Protection assignment.

Therefore, on January 25, 2023, Captain Kendrick Allen emailed Consultant Chief Pichardo and requested an interview relative to his knowledge of Officer Vappie possibly violating NOPD police relative to 16 hour and 35 minutes within a 24-hour period. On Wednesday, January 25, 2022, Consultant Chief responded, **"Respectfully, there is nothing that I can contribute to aid this investigation."** Officer Vappie indicated in his statement he was assigned to the consultant chief by the Protectee.

The investigators were unable to locate any substantial evidence that proved Officer Vappie and the Protectee relationship was more than mere friendship, the investigators believed that Officer Vappie actions brought discredit to the New Orleans Police Department. The fact that Officer Vappie spent numerous hours alone with the Protectee outside of his regular tour of duty goes against the training and ethics of an Executive Protection member. So much so, that Deputy Charles Ellis and Officer Louis Martinez, brought his behavior to his attention and requested that he stop.

Investigating Officer's Initials: _KA_

In fact, Officer Louis Martinez went a step further and asked Officer Vappie **if his relationship with the Protectee was more than Friendship, "Vappie" stated, it was not. Louis Martinez explained to the investigators that he took Vappie at his word so he did nothing further.** Officer Vappie unprofessional behavior with his Protectee caused a major embarrassment to the New Orleans Police Department and discredits the hard work the other members of the Executive Protection team display.

It's the belief of the investigators that the Police Departments failure to have a Supervisor embedded into the Executive Protection team contributed to the behavior of Officer Jeffery Vappie. Not having a Policy specifically for Executive Protection failed to provide a management guide to the members of the team to follow. A dedicated supervisor would give the team members the necessary support when the requests of the Protectee don't align with the Rules, Regulations, Morals and Standards of the New Orleans Police Department. It would also provide a dedicated support network in place; when an issue arises the team members would have a direct contact to confidently turn to. This task should not be the reasonability of the Protectee, but to an immediate supervisor or members of the Officer Chain of Command, Lieutenant, Captain, Deputy Chief or Superintendent. Furthermore, the supervisor will be able to monitor the officer's payroll, actions and delegate tasks based on the current workload. Ultimately, a supervisor will prevent a member of the team from becoming overloaded and ensure each member is contributing equally. If an employee has to be accountable to a supervisor, they are more likely to take ownership and as a result, the team member would self-monitor their behavior or be reminded by a supervisor and if need be properly disciplined.

Based upon this administrative investigation, Captain Kendrick Allen and Lieutenant Lawrence Jones concluded beyond a preponderance of evidence that Senior Police Officer Jeffery Vappie did violate rules and regulations of the New Orleans Police Department.

### Training, Tactical, and/or Policy Recommendations

As it relates to training, it is the belief of this investigator that Senior Police Officer Vappie need to be reminded to adhere to all rules and regulations. Along with obeying all City, State and Federal Laws. It is also recommended that a Department Policy and Unit Operating Procedures are created to govern the Executive Protection team members, along with their duties and responsibilities. In addition to a direct supervisor whose sole responsibility is equivalent to retired Sergeant Wondell Smith.

Investigating Officer's Initials: _____KA_____

2022-0513-R
Page 37 of 42

# Disciplinary Recommendations

## Senior Police Officer Jeffery Vappie

Rule 4: Performance of Duty: Paragraph 2: Instructions from an authoritative source; to wit N.O.P.D. Chapter 22.08 Police Secondary Employment Paragraph 32............................................................................................**SUSTAINED**

*No member, including Reserve officers, shall work more than 16 hours and 35 minutes (16.58 hours) within a 24-hour period. (The 24-period begins the first time the member reports for either regular duty or police secondary employment.) These hours are cumulative and include normal scheduled work hours, overtime, court time, off-duty police secondary employment, or outside employment*

**Captain Kendrick Allen proved beyond a preponderance of evidence that Senior Police Officer Jeffery Vappie violated this rule when on, on September 28, 2022, Officer Vappie worked for 18 hours within a 24 hour period. The remarks indicate that Officer Vappie was assigned to the Consultant Chief Fausto B. Pichardo and not his normal Executive Protection assignment.**

## OTHER SUSTAINED VIOLATIONS

### Rule 3: Professional Conduct, Paragraph 1: Professionalism.............................**SUSTAINED**

*Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee or the New Orleans Police Department.*

**Senior Police Officer Vappie may have violated this rule when Officer Vappie spent numerous hours alone with the Protectee outside of his regular tour of duty goes against the training and ethics of an Executive Protection member. So much so, that Deputy Charles Ellis and Louis Martinez, brought his behavior to his attention and requested that he stop.**

### Rule 4: Performance of Duty, Paragraph 3: Devoting Entire Time to Duty............................................................................................ **SUSTAINED**

*Employees shall not read, play games, watch television/movies, or otherwise engage in entertainment while on duty, except as may be required in the performance of duty, or by authority of their respective Bureau Chief. They shall not engage in activities or personal business which would cause them to neglect or be inattentive to duty.*

**Senior Police Officer Vappie was not attentive to his duty as an Executive Protection member when he attended the HANO Board Meeting on two separate occasions, <u>March 29, 2022</u> and <u>August 30, 2022</u>, while still on duty with the New Orleans Police Department.**

Senior Police Officer Jeffery Vappie may also have violated Rule IX of the Civil Service Rules for the City of New Orleans, relative to Maintaining Standards of Service.

Respectfully Submitted,

_____
Captain Kendrick Allen
Public Integrity Bureau

Date: ___3 - 10 - 2023___

Investigating Officer's Initials: ___KA___

2022-0513-R
Page 38 of 42

(CONCUR) DOES NOT CONCUR

Deputy Keith E. Sanchez
Public Integrity Bureau

Date: 3/14/23

(CONCUR) DOES NOT CONCUR

Michelle M. Woodfork
Superintendent of Police

Date: 3/16/23

Investigating Officer's Initials: KA

2022-0513-R
Page 39 of 42

# EXHIBITS

1.  **Exhibit "A"** - P.I.B. Case Investigation Transmittal, Control Tracking Number 2022-0513-R.

2.  **Exhibit "B"** - Initiation of a Formal Disciplinary Investigation Form Control Tracking Number 2022-0513-R, three (3) pages, original.

3.  **Exhibit "C"** - P.I.B. Initial Intake Form (230) for Commendation, Complaint, or Documentation of Minor Violation, three (3) pages, original.

4.  **Exhibit "D"** — Media request sent by WVUE three (3) pages photocopied.

5.  **Exhibit "E"** — Officer Jeffery Vappie reassignment notification dated Wednesday, November 9, 2022.

6.  **Exhibit "F"** - Extension Request sent by Captain Kendrick Allen, dated Thursday, November 17, 2022.

7.  **Exhibit "G"** — Extension request granted by Examiner Ginsberg. Dated Tuesday, November 22, 2022.

8.  **Exhibit "H"** — CD containing Senior Police Officer Kristy Johnson-Stokes Audio Recorded statement.

9.  **Exhibit "I"** - A transcribed copy of Officer Kristy Johnson-Stokes statement completed by Ms. Elise Triplitt. 43 pages photocopied.

10. **Exhibit "J"** — CD containing Retired Sergeant Wondell Smith Audio recorded statement.

11. **Exhibit "K"** — A transcribed copy of Retired Sergeant Wondell Smith statement completed by Ms. Elise Triplitt. 56 pages photocopied.

12. **Exhibit "L"** — CD containing Retired Sergeant Todd Henry Audio recorded statement.

13. **Exhibit "M"** — A transcribed copy of Retired Sergeant Todd Henry statement. Completed by Ms. Elise Triplitt. 20 pages photocopied.

Investigating Officer's Initials:   _KA_

2022-0513-R
Page 40 of 42

14. **Exhibit "N"** – One external hard drive containing emails of Senior Police Officer Jeffery Vappie, from March 1, 2022 to November 30, 2022.

15. **Exhibit "O"** - One external hard drive containing Senior Police Officer Jeffery Vappie Cell phone analysis completed by NOPD Digital Forensic Unit.

16. **Exhibit "P"** - Public records request sent to the French Market Corporation. One page Photocopied.

17. **Exhibit "Q"** - One external Hard drive containing the surveillance video obtained from the French Market Corporation of the camera located on the light pole on St. Peter Street, in Jackson Square Pedestrian Mall outside of the Upper Pontalba apartment. Dated July 30, 2022 to November 17, 2022.

18. **Exhibit "R"** - One external Hard drive containing HANO Board meetings obtained from the HANO.ORG website, dated March 2022 to December 2022. The information obtained consisted of meeting minutes, meeting agenda and an audio recording of the meeting.

19. **Exhibit "S"** - Executive Protection Training certificates for Senior Police Officer Jeffery Vappie, Robert Monlyn and Louis Martinez.  Five (5) pages photocopied.

20. **Exhibit "T"** - CD containing Mr. John Douglass Audio recorded statement.

21. **Exhibit "U"** – A transcribed copy of Mr. John Douglass statement. Completed by Ms. Elise Triplitt. 15 pages photocopied.

22. **Exhibit "V"** - CD containing Louisiana State Police Captain Dewight Robinette Audio recorded statement.

23. **Exhibit "W"** – A transcribed copy of Captain Dewight Robinette statement. Completed by Ms. Elise Triplitt. 34 pages photocopied.

24. **Exhibit "X"** – Notice of NOPD Internal Disciplinary Investigation Rights and Responsibilities of Employee Under Investigation and Notification to Appear to Render a statement form for Senior Police Officer Louis Martinez.  one (1) Page, original.

25. **Exhibit "Y"** - CD containing Senior Police Officer Louis Martinez Audio recorded statement.

26. **Exhibit "Z"** – A transcribed copy of Senior Police Officer Louis Martinez statement. Completed by Ms. Elise Triplitt. 59 pages photocopied.

Investigating Officer's Initials:  _KA_

**27.Exhibit "AA"** – Notice of NOPD Internal Disciplinary Investigation Rights and Responsibilities of Employee Under Investigation and Notification to Appear to Render a statement form for Senior Police Officer Robert Monlyn.  one (1) Page, original.

**28.Exhibit "BB"** -  CD containing Senior Police Officer Robert Monlyn Audio recorded statement.

**29.Exhibit "CC"** – A transcribed copy of Senior Police Officer Robert Monlyn statement. Completed by Ms. Elise Triplitt. 67 pages photocopied.

**30.Exhibit "DD"** -  CD containing Deputy Charles Ellis Audio recorded statement.

**31.Exhibit "EE"** – A transcribed copy of Deputy Charles Ellis statement. Completed by Ms. Elise Triplitt. 39 pages photocopied.

**32.Exhibit "FF"** – Notice of NOPD Internal Disciplinary Investigation Rights and Responsibilities of Employee Under Investigation and Notification to Appear to Render a statement form for Senior Police Officer Jeffery Vappie.  one (2) Pages, original.

**33.Exhibit "GG"** -  CD containing Senior Police Officer Jeffery Vappie Audio recorded statement. Dated Monday, January 9, 2023 and Wednesday, February 8, 2023.

**34.Exhibit "HH"** – A transcribed copy of Senior Police Officer Jeffery Vappie statement. For Monday, January 9, 2023 and Wednesday, February 8, 2023, both were Completed by Ms. Elise Triplitt. 181 pages photocopied.

**35.Exhibit "II"** – Notice of NOPD Internal Disciplinary Investigation Rights and Responsibilities of Employee Under Investigation and Notification to Appear to Render a statement form for Sergeant Tokishiba Lane-Hart. One (1) Page, original.

**36.Exhibit "JJ"** -  CD containing Sergeant Tokishiba Lane-Hart Audio recorded statement.

**37.Exhibit "KK"** – A transcribed copy of Sergeant Tokishiba Lane-Hart statement. Completed by Ms. Elise Triplitt. 10 pages photocopied.

**38.Exhibit "LL"** – Officer Jeffery Vappie ADP (Payroll) records from January 1, 2022 to December 31, 2022. 10 pages photocopied.

Investigating Officer's Initials: _KA_

2022-0513-R
Page 42 of 42

**39. Exhibit "MM"** – Email sent to Consultant Chief Fausto B. Pichardo by Captain Kendrick and response from Chief Pichardo. Dated January 25, 2023. One (1) page photocopied.

**40. Exhibit "NN"** -  Notice to the Accused of Completed Investigation and Notice of Disciplinary Hearing (form 308) issued to Senior Police Officer Jeffery Vappie One (1) page original.

Investigating Officer's Initials: _KA_