**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> Plaintiff, | **CIVIL ACTION NO.** <br> **2:12-CV-01924-SM-DPC** |
| **V.** | **JUDGE SUSIE MORGAN** |
| **CITY OF NEW ORLEANS,** <br> Defendant. | **MAG. DONNA PHILLIPS** <br> **CURRAULT** |

---

## RESPONSE OF THE CITY AND NOPD
## TO THE MONITOR'S REPORT REGARDING THE
## INVESTIGATION OF OFFICER VAPPIE

---

***Davillier Law Group, LLC***
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

***Counsel of Record for***
***the City of New Orleans and the***
***New Orleans Police Department***

i

# Contents

I.    **Notice of Objection to Modification of the Consent Decree** ...................- 1 -

II.   **Summary of the Response** .........................................................................- 2 -

III.  **Consent Decree Scope and Content** .........................................................- 3 -

IV.  **Timeline Regarding the Officer Vappie Investigation** ........................- 5 -

    A.   **The Monitor's Unique Involvement** .......................................................- 7 -

    B.   **Violations of Consent Decree Paragraph 445.** ...................................- 10 -

    C.   **Completing the Investigation**...............................................................- 15 -

    D.   **The Disciplinary Phase**.........................................................................- 16 -

    E.   **The Monitor's Access was not Impeded.** ..............................................- 17 -

V.   **NOPD's Response to Failures Alleged by the Monitor**........................- 19 -

    A.   **Payroll Fraud was Investigated** .........................................................- 21 -

    B.   **Executive Protection is a Unique Detail** ...........................................- 23 -

    C.   **Potential for Payroll Fraud** .................................................................- 25 -

    D.   **Serious Misconduct Complaint Investigations** .................................- 26 -

    E.   **Preponderance of the Evidence Requires Evidence, Not Speculation or Innuendo.**...........................................................................................- 27 -

VI.   **Conclusion** ................................................................................................- 29 -

# Cases

*American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 95 L. Ed. 702, 71 S. Ct. 534 (1951) ................................................................................................................ - 2 -

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 89 L. Ed. 2d 501, 106 S. Ct. 1326 (1986) ................................................................................................ - 2 -

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391, 395 (1994) ................................................................................ - 2 -

*Willy v. Coastal Corp.*, 503 U.S. 131, 136-137, 117 L. Ed. 2d 280, 112 S. Ct. 1076 (1992) ................................................................................................................ - 2 -

# Statutes

42 U.S.C. § 14141 ................................................................................................ - 4 -

42 U.S.C. § 3789d ................................................................................................ - 4 -

42 U.S.C. §§ 2000d ................................................................................................ - 4 -

Now Into Court, comes Defendant, the City of New Orleans (the "City") and its New Orleans Police Department ("NOPD"), who, in compliance with the Court's Order of June 6, 2023 (R. Doc. 712) respond to the letter report to the Court by Jonathan S. Aronie, the court-appointed Consent Decree Monitor ("Monitor"), dated June 5, 2023, and attached as Exhibit 1 hereto, as follows:

## I.   NOTICE OF OBJECTION TO MODIFICATION OF THE CONSENT DECREE

As an initial matter, the City objects to the Court's modification of paragraph 458 of the Consent Decree[1] by requiring NOPD to file a formal response into the record regarding the Monitor's report on the PIB Vappie Investigation. Paragraph 458 requires that notice must be given to the City 10 business days in advance of a public report *by the Monitor*. It also allows for informal comment by the City prior to publication of the Monitor's report.

There is no provision for mandatory formal public responses by the City, or NOPD, beyond their routine reports. Similarly, there is no prohibition on the City or NOPD issuing reports or statements at any time in any forum that may conflict with, or directly challenge, the Monitor's public comments and reports. Modification of the Consent Decree requires joint stipulation of the parties and Court approval.[2] The City has not stipulated to these changes as required under Paragraph 487, and the City seeks to defend the provisions of the Consent Decree as written. Subject to this objection, the City and NOPD comply with the Court's order and respond as follows:

---

[1] Rec. Doc. 565.
[2] Rec. Doc. 565 at para. 487.

- 1 -

## II.   SUMMARY OF THE RESPONSE

The Consent Decree is a limited expansion of the finite jurisdiction[3] of the federal judiciary intended to address systemic institutional policies and practices impinging on the Fourth and Fourteenth Amendment rights of the residents of New Orleans.[4] The sweeping reforms of the NOPD since the 2011 report of the Department of Justice ("DOJ") have targeted every material policy and practice of NOPD regarding its interaction with the public and have reshaped the NOPD in every fundamental aspect from policy to personality.

Policies for Executive Protection ("EP") details for the Mayor, City Council members, and other local government officials and visiting dignitaries, however, are not part of the sweeping Consent Decree. EP detail members have unique assignments that often have nothing to do with traditional "police work." For example, it is routine for EP members to run errands for a Protectee, pick up their family members, attend church or workout with them as part of their official duties.[5]  And, according to experts in the field relied on by the PIB investigators, that is not unique to New Orleans, the State of Louisiana, or the federal government.

---

[3] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391, 395 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."), citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137, 117 L. Ed. 2d 280, 112 S. Ct. 1076 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 89 L. Ed. 2d 501, 106 S. Ct. 1326 (1986), and *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 95 L. Ed. 702, 71 S. Ct. 534 (1951).
[4] CD goals
[5] Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

After a thorough investigation, PIB investigators found Officer Jeffrey Vappie had violated NOPD policy.[6] On June 8, 2023, a three-Captain disciplinary panel forwarded its Disciplinary Hearing Disposition which recommended that the Superintendent sustain three of the four charges.[7] Discipline according to the mandated NOPD disciplinary matrix has been recommended for each sustained violation. On June 14, 2023, the Superintendent sustained the recommendation of the disciplinary panel.[8]

The attacks on NOPD's Public Integrity Bureau by the Monitor appear to be based on motivations outside the Consent Decree. In short, the Monitor demands that PIB treat Officer Vappie differently than other officers accused of the same policy violations. Local politics and personality conflicts, however, cannot be allowed to influence NOPD disciplinary matters. The PIB investigators and staff were single-minded in their focus and showed absolute fidelity to NOPD policy and procedure despite outside pressures to treat Officer Vappie differently. The Monitor's opinions to the contrary are unfounded and unfortunate.

## III.   CONSENT DECREE SCOPE AND CONTENT

A Consent Decree is an extreme remedy intended to reach and reform systemic flaws in institutional systems that threaten the constitutional rights of citizens within that system. Consent Decrees raise serious federalism and separation of powers issues that must be closely monitored to assure the special and

---

[6] Interoffice Correspondence at Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.
[7] *See* Ex. 7, Disciplinary Hearing Disposition.
[8] *See* Ex. 7, Disciplinary Hearing Disposition.

limited powers afforded to the federal court are not broadened to expand federal

power beyond constitutional limits. As the U.S. Supreme Court has made explicit:

> We have often explained that federal courts are courts of
> limited jurisdiction. Article III, §2, of the Constitution
> delineates the character of the controversies over which
> federal judicial authority may extend. And lower federal-
> court jurisdiction is further limited to those subjects
> encompassed within a statutory grant of
> jurisdiction. Accordingly, the district courts may not
> exercise jurisdiction absent a statutory basis.[9]

As the Court has noted, the DOJ investigation reported "an alleged pattern

or practice of unconstitutional conduct with respect to the use of force; stops,

searches, and arrests; and discriminatory policing based on race, ethnicity, gender,

and sexual orientation, all in violation of the U.S. Constitution and federal law." R.

Doc. 256, pp. 4-5. The Consent Decree was put in place to reform the policies and

practices of the NOPD to prevent systemic violations of these critical rights.

The DOJ then filed a complaint in this court alleging violations of 42 U.S.C.

§14141; 42 U.S.C. § 3789d; and 42 U.S.C. §§2000d to 2000d-7, as implemented by 28

C.F.R. §§42.101 to 42.11. As summarized by this Court, the DOJ suit sought "to

remedy an alleged pattern or practice of conduct by the NOPD that subjects

individuals to **excessive force** in violation of the Fourth Amendment, **unlawful**

**searches and seizures** in violation of the Fourth Amendment, and

**discriminatory policing** in violation of the Fourteenth Amendment, the Safe

---

[9] *Home Depot U.S.A., Inc. v. Jackson,* 139 S.Ct. 1743, 1746, 204 L.Ed.2d 34, 40 (2019)
(cleaned up), *quoting Kokkonen v. Guardian Life Ins. Co. of America*, 511 U. S. 375, 377,
114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Insurance Corp. of Ireland v. Compagnie des
Bauxites de Guinee*, 456 U. S. 694, 701, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *Exxon
Mobil Corp. v. Allapattah Services, Inc.*, 545 U. S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d
502 (2005).

Streets Act, and Title VI."[10] These claims establish the District Court's jurisdiction under Article III, §2, of the U.S. Constitution. As with any case, the parties to litigation cannot confer additional jurisdiction to the federal court by agreement.

Again, the sweeping Consent Decree does not mention Executive Protection details. After ten years of DOJ and Monitor oversight, NOPD does not even have a specific policy for EP details. The reason is simple: the unique function of the EP detail is not one the DOJ or the City viewed as relevant to the Consent Decree when drafting that agreement, unlike excessive force, unlawful searches and seizures, and discriminatory policing. But for this NOPD disciplinary proceeding being an "investigation of the Mayor," according to two city councilmembers, the case of Officer Vappie would have gone unnoticed like the vast majority of disciplinary proceedings. The change in notoriety, however, did not change the PIB investigation or the discipline recommended. The Monitoring team's conduct, however, raises serious concerns.

## IV. TIMELINE REGARDING THE OFFICER VAPPIE INVESTIGATION

On the evening of November 8, 2022, NOPD's Public Integrity Bureau ("PIB") received information regarding Senior Police Officer Jeffrey Vappie allegedly working more than 16 hours and 35 minutes in a 24-hour period, stemming from local news reports.[11] The following day the lead investigator, Captain Kendrick Allen, initiated a PIB investigation (No. 2022-0513-R). The following day, November 10th, New Orleans City councilmembers JP Morrell and Joseph I. Giarrusso, III,

---

[10] Order and Reasons, R. Doc. 159 at p. 2. (*emphasis added*)
[11] Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

sent a letter to this Honorable Court and Jonathan Aronie, the court-appointed monitor.[12]

The letter expressed significant concerns in allowing NOPD (*via* PIB) to investigate "serious allegations involving Mayor Cantrell" and asked this Court to appoint the Monitor in partnership with the Office of the Independent Police Monitor to lead "**the investigation of the Mayor**."[13] The Morrell-Giarrusso letter does not mention Officer Vappie, the Mayor's security team, or time card misconduct allegations, just the Mayor.

The Monitor responded to the Morrell-Giarrusso letter the next day confirming receipt of the request to "jointly investigate matters relating to alleged time card misconduct involving the Mayor's NOPD security detail."[14] The Monitor acknowledged that it lacked the power to "investigate specific matters" but acknowledged the two councilmembers' fear of real or perceived pressure on the PIB investigators. The Monitor further advised that this Court had *already* authorized the Monitor to oversee[15] the investigation and "work closely with the New Orleans Police Department Public Integrity Bureau to ensure their investigation of NOPD's role in this matter is effective, efficient, and without bias."[16] The Monitor frequently repeats that its supervision was conducted at the request of the City Council.[17] It is unclear where this engagement was consummated, as the evidence submitted by

---

[12] Attachment A to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[13] Attachment A to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1

[14] Attachment B to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[15] *See, e.g.*, Ex. 2, at 01/05/23 ("attend to Vappie investigation oversight (0.3); prepare questions for PIB regarding Vappie investigation (0.4)…Jonathan S. Aronie")

[16] Attachment B to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[17] *See* Attachment C to Ex. 1.

the Monitor consists only of a single letter from just two councilmembers, not the City Council of New Orleans.[18]

It is important to recall that as of February 2021, the Monitor had declared that "we are pleased to move NOPD into Full and Effective Compliance in the area of Misconduct Investigations."[19] PIB's policies and procedures, therefore, had been validated by the Monitor and the DOJ over many years of direct supervision. This does not guarantee all future investigations would be done properly, but it provides important context for the public in light of the above comments by the Monitor to New Orleans City councilmembers JP Morrell and Joseph I. Giarrusso, III.

**A.    The Monitor's Unique Involvement**

Immediately upon the start of the PIB investigation the Monitor became fully engaged and was kept informed on an *at least* weekly basis.[20] On November 10th, the same day councilmembers JP Morrell and Joseph I. Giarrusso, III asked the federal court to investigate the head of the local executive branch, the Monitor met with the Office of the Inspector General regarding the "NOPD/Mayor investigation."[21] The Monitor's team kept the Court informed of the "Vappie investigation issues" on a real-time basis, according to their invoices to the City. *See, e.g.,* Ex. 2, 11/14/22 entry by David L. Douglass ("Call with Judge Morgan and Mr. Aronie regarding Vappie investigation issues."), and 11/14/22 entry by

---

[18] *See* Attachment A to Ex. 1.
[19] Annual Report of the Office of the Consent Decree Monitor for 2020 February 16, 2021, Rec. Doc. 613-1, at 15.
[20] Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, at Attachment C, p. 1, and at Attachment E, p. 3; *see also,* Allen Affidavit, at Ex. 3.
[21] *See, e.g.,* time entry summary regarding Vappie at Ex. 2, for November 10, 2023 entry for Jonathan S. Aronie.

Jonathan S. Aronie ("Prepare for and meet with Judge Morgan regarding Vappie investigation (1.4); meet with NOPD personnel regarding same (0.4); review policies and rules regarding potential violations.")[22] The Monitor also corresponded with the Department of Justice about the ongoing disciplinary investigation of Officer Vappie.[23]

 The Monitor also participated in the coordination of the PIB investigation from the very start.[24] This included reviewing the investigation documents and commenting on the PIB investigation plan.[25] PIB staff is unaware of any prior investigation since the start of the Consent Decree in which the Monitor was involved in shaping the investigation, drafting questions, and pushing specific findings at this intricate level. The Monitor's time records do not reveal any precedent for this level of involvement.

 It is troubling that while overseeing the investigation, the Monitor's team stressed that specific allegations should be pursued, what questions to ask, and what evidence should be considered.[26] This should not be the Monitor's role. The Monitor is paid by the City, in part, to independently evaluate the integrity and

---

[22] *See* Monitor time entry summary regarding Vappie at Ex. 2, at 12/30/22 Jonathan S. Aronie; 01/09/23 Jonathan S. Aronie; *see also*, 01/12/23 Scott Huntsberry, and 03/14/23 Jonathan S. Aronie.

[23] *See* Monitor time entry summary regarding Vappie at Ex. 2, at 01/12/23 Jonathan S. Aronie; and 01/19/23 Jonathan S. Aronie.

[24] *See* Monitor time entry summary regarding Vappie at Ex. 2, at 12/05/22 Scott Huntsberry

[25] *See* Monitor time entry summary regarding Vappie at Ex. 2, at 12/05/22 Jonathan S. Aronie.

[26] *See* Monitor time entry summary regarding Vappie at Ex. 2, at 01/05/23 Jonathan S. Aronie; 12/28/22 Jonathan S. Aronie; 01/08/23 Scott Huntsberry; 01/23/23 Anne B. Perry; 01/23/23 Nikole R. Snyder; 01/24/23 Scott; 01/24/23 Anne B. Perry; 01/24/23 Jonathan S. Aronie.

quality of PIB's investigation, but took an active role in this investigation. This involvement threatened the integrity of the PIB investigation as the Monitoring team demonstrated evident bias against the Mayor, and therefore against Officer Vappie.[27] As the lead investigator of PIB acknowledged under oath, the Monitor's team suggested the PIB investigators sustain findings against Officer Vappie despite a lack of evidence:

> 12. During the investigation of Officer Vappie, the monitoring team specifically suggested that I and Lt. Jones, the other investigator, sustain the findings against Officer Vappie regarding nepotism and just let the Civil Service commission overturn the sustain disposition on appeal.
>
> 13. It was my understanding that the nepotism charge would open the door for payroll fraud as it would mean Officer Vappie was not working while on duty.
>
> 14. These comments were, and still are, very concerning because it is my goal, and the goal of PIB to conduct unbiased and accurate investigations at all times. It goes against everything I understood about NOPD policy to sustain findings despite a lack of evidence.[28]

This conduct is antithetical to the root constitutional goal of the Consent Decree and violates the City's contract with the Monitor.

At the beginning of the investigation into Officer Vappie, the Monitor's team advised that the Superintendent, City Attorney, and Mayor's office should be blocked from the investigation.[29] This request ignored that the Superintendent is part of the disciplinary process, and that the City Attorney's office is legal counsel

---

[27] Affidavit of Captain Kendrick Allen, at Ex. 3.
[28] *Id.*
[29] *Id.*

for PIB. Moreover, the Consent Decree, at paragraph 424, **requires** that the City and NOPD establish methods for the City Attorney to provide "close guidance to NOPD" during PIB investigations to "ensure that NOPD's disciplinary decisions are as fair and legally defensible as possible." The Monitor did not seek to amend the Consent Decree. Despite this requirement, the Monitor suggested that PIB block the City Attorney from any information regarding the investigation of Officer Vappie.[30] PIB's investigators declined to deviate from the Consent Decree and standing NOPD policy based on the Monitor's unique interest in the investigation of Officer Vappie. The City Attorney was utilized by the PIB investigators to protect the integrity and merit of the investigation, as is the ordinary course of their work.

The Monitor was provided with all the confidential evidence and investigation files, including witness interviews, in near real-time, throughout the investigation. Terabytes of data including video, license plate reader data, and cell phone data were uploaded from PIB's secure computers to the Monitoring team's hard drives and removed from PIB.[31] The idea that the Monitor's access to the investigation was in any way limited is refuted by the clear record.

**B.  Violations of Consent Decree Paragraph 445.**

In early January of 2023, the Monitor called Superintendent Woodfork and demanded that certain personnel changes be made to satisfy the Monitor's desires regarding the ongoing investigation. The Superintendent listened to the Monitor's demands and declined to move the personnel. She was confident her personnel plan

---

[30] *See* p. 3 of Attachment C to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, and Affidavit of Captain Kendrick Allen, at Ex. 3, at para. 6.
[31] Affidavit of Captain Kendrick Allen, at Ex. 3, para. 3.

would accomplish NOPD's goals and complete the Vappie investigation properly
and on time. On January 12, 2023, undeterred by the Superintendent of NOPD's
personnel decision, the Monitor sent an email directly to a subordinate of the
Superintendent, tacitly instructing that specific people be reassigned:

> Despite your email, I continue to believe they will not, as
> a practical matter, have the time they need….**While I
> can't and don't make personnel decisions for the
> Department, I recommend you detail** Lawrence back
> to PIB until the conclusion of the…investigation. Frankly,
> I would love to see you detail both Lawrence and
> Kendrick back to PIB until the conclusion of the
> investigation…To be clear, I am NOT requesting a
> permanent **reassignment**.[32]

The Monitor did not copy the Superintendent. The Monitor did not tell the Deputy
Superintendent that his superior, the Superintendent, had already rejected this
request. Supervision is a pilar of the Consent Decree and the Monitor is not
empowered to usurp that purpose at the behest of two (or even all) city
councilmembers, or because it believed this was an investigation of the Mayor of
New Orleans.

The Superintendent is the head of the police department, and the Monitor is
prohibited from interfering in that managerial function. *See* Consent Decree at
para. 445. The Superintendent appropriately responded to the overt violation of her
command structure explaining:

> Mr. Aronie, going forward, please direct any request or
> suggestions concerning personnel changes or the detail of
> my command staff or essential personnel, directly to me.

---

[32] Ex. 8 email string from Jonathan S. Aronie. (emphasis added)

> Chief Deputy Ganthier, nor any of the deputy chiefs, have
> the authority to make those decisions.[33]

On February 17, 2023, the Monitor issued a letter to the Chief of PIB titled "Interim Recommendations Based on Vappie Investigation."[34] The Monitor now calls the letter an "Immediate Action Notice," but those words are not found anywhere in the document. The letter claims that the Monitor's team is not involved in the day-to-day affairs of the investigation but has met weekly with the investigators to obtain the strategy and status of the PIB investigation. The Monitor stated that the recommendations in the letter were "policy/process issues that are *unrelated* to the forthcoming substantive findings" regarding Officer Vappie.[35] Despite this express statement, the Monitor now reverses course in large part, and attacks PIB for not complying with its "*recommendations*" during the Vappie investigation.

In this February 17th letter regarding the Vappie investigation directed to the head of PIB, Mr. Aronie made a troubling allegation that:

> Outgoing Superintendent Ferguson, however, hours before his retirement, **directed** the return of Officer Vappie to the Mayor's security detail. While this **order**, fortunately, was **reversed** by a deputy chief and the City Attorney, the **order** itself created at the very least the appearance of interference in a PIB investigation.[36]

Soon thereafter, on March 7th, the Monitor conducted a zoom conference open to the public and media. During that conference Mr. Aronie was asked the following

---

[33] Ex. 8 email string from Jonathan S. Aronie.
[34] Attachment C to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.
[35] Attachment C to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.
[36] Attachment C to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1

very specific question by a news outlet that paralleled the unpublished letter of February 17th as follows: "In December 2022, was there an effort made to put Officer Jeffrey Vappie back on the mayor's executive protection detail? If so, what role did the consent decree monitor play in stopping this?"[37] Mr. Aronie stated he **never** speaks about ongoing investigations, and then proceeded to discuss details of the alleged interference in an ongoing investigation:

> I just want to caveat this by saying, there is, as the media has reported, an investigation into Officer Jeffrey Vappie, and **we never talk about ongoing investigations, so my answer has nothing to do with that investigation**, but to the specific question, the answer is yes, there was an effort to put Officer Vappie back on the mayor's executive protection team, prior to the completion of the PIB investigation. When the monitoring team found out about it, we reached out to multiple members of the NOPD leadership team, who quickly and effectively quashed that effort.[38]

Mr. Aronie does not state the basis for his belief in this allegation. All evidence, however, demonstrates that this damaging public statement by the declared eyes and ears of a federal district court was untrue. Former Superintendent Ferguson, who Mr. Aronie alleges ordered Officer Vappie's return to the Mayor's security team, rejects this accusation as utterly untrue, under oath.[39]

---

[37] The video of this question and answer is available at
https://www.sheppardmullin.com/multimedia-464 beginning at time mark 1:12:51 – 1:13:48. *See also*, https://www.fox8live.com/2023/03/08/zurik-vappies-return-mayor-cantrells-protection-detail-scuttled-nopd-federal-monitor-says/ ("The federal monitor … said … he blocked an attempt in December to have Officer Jeffrey Vappie reinstated to Mayor LaToya Cantrell's executive protection detail while still under internal police investigation.")
[38] https://www.fox8live.com/2023/03/08/zurik-vappies-return-mayor-cantrells-protection-detail-scuttled-nopd-federal-monitor-says/. The Video of this exchange is available at https://www.sheppardmullin.com/multimedia-464 beginning at time mark 1:12:52.
[39] *See* Ferguson Affidavit at Ex. 5.

Interim Superintendent Woodfork also rejects this story, under oath.[40] And City Attorney Donesia Turner – who Mr. Aronie alleges reversed Ferguson's order – testified that this story is untrue, again, under oath.[41]

The truth is that it is NOPD standard practice that during an administrative investigation by PIB that the officer is returned to active duty – *i.e.*, the officer is taken "off administrative reassignment."[42] This occurs *via* an NOPD form from PIB to the head of the Bureau the officer was reassigned from when the investigation began. The Bureau Chief, or Superintendent, then determines where the officer will be assigned.[43] Here, former Superintendent Ferguson was aware of the normal return of Officer Vappie to his original bureau. Former Superintendent Ferguson specifically confirmed that there was no federal or PIB criminal investigation that would prevent the assignment.[44] He was not, however, ever going to put Officer Vappie back on the Mayor's EP team during the investigation.[45] Again, he did **not** assign Officer Vappie to the Mayor's EP team as alleged by Mr. Aronie.

Former Superintendent Ferguson even advised incoming superintendent Woodfork that Officer Vappie should not be assigned back to EP during the investigation.[46] There was never any such order, nor did the City Attorney reverse

---

[40] *See* Woodfork Affidavit at Ex. 4
[41] *See* Turner Affidavit at Ex. 6.
[42] *See* Administrative Reassignment Notice form at Ex. 10.
[43] Affidavit of Captain Kendrick Allen, at Ex. 3, at para. 21.
[44] *See* Ferguson Affidavit at Ex. 5.
[45] *See* Ferguson Affidavit at Ex. 5.
[46] *See* Ferguson Affidavit at Ex. 5 and Woodfork Affidavit at Ex. 4.

such an order.[47] The ordinary PIB process that applies to every officer was applied to Officer Vappie, including reassignment during an administrative investigation.

Mr. Aronie's erroneous public statements alleging interference in the PIB investigation unfortunately fit the pattern of the monitoring team seeking to drive the outcome of the PIB investigation of Officer Vappie to a specific, public result.

## C.      Completing the Investigation

On March 10, 2023, the PIB investigators completed their investigation and issued their written report and disciplinary recommendations. The Deputy Superintendent of PIB signed the investigation report on March 16th.  As is noted by the Monitor, NOPD internal procedure has always had a line for the Superintendent to sign the report. However, NOPD Superintendents do not review the report until it is part of the entire disciplinary hearing package, which includes any evidence and arguments from the officer from the pre-disposition conference, which occurs after this PIB investigation report is completed. For this reason, it is NOPD practice to have the head of PIB sign "for" the Superintendent.[48] The publicity of this case has highlighted that this old internal practice needs to be changed to reflect the reality of the flow of information to avoid confusing outsiders.

This is, however, the process that has been used for every investigation at PIB during the Consent Decree. It has not been noted as deficient by the Monitor or DOJ during that time. It is not, as the Monitor now advocates, a deficiency in the Vappie investigation as it is standard NOPD procedure.

---

[47] *See* Turner Affidavit at Ex. 6.
[48] *See* NOPD PIB response to PIB Report R. Doc. 695-4.

The PIB investigators recommended sustaining claims of: (1) violation of the limit of 16.58 hours of work per 24-hour period; (2) violation of NOPD policies regarding professionalism for spending "numerous hours alone with the Protectee outside of his regular tour of duty;" and (3) violation of NOPD policies requiring that Officer Vappie devote all of his time on duty to his NOPD detail based on his attendance at two HANO meetings while on NOPD duty.[49] The PIB Disciplinary Recommendation report also notes that Officer Vappie "may also have violated" a Civil Service rule regarding standards of service.[50]

## D.   The Disciplinary Phase

The Pre-Disposition Conference and Pre-Disciplinary Hearing for Officer Vappie were conducted on May 25, 2023. At this time Officer Vappie introduced evidence and exculpatory arguments for consideration by the panel of three NOPD Captains that would evaluate the PIB investigation and make recommended findings and suggest appropriate discipline to the Superintendent. At this conference Officer Vappie produced an email that authorized EP details to work overtime as necessary, effectively voiding the 16.58-hour rule for that EP detail. The email states as follows, according to the record:

> [A]s a member of the NOPD Executive Protection overtime was expressly authorized in an email authored by former NOPD Deputy Chief Paul Noel on February 23, 2021. The email advised that *"per the Superintendent the Mayor's Security Detail can work overtime as necessary"* and it was disseminated to Capt. Joseph Waguespack Sr., Sgt.

[49] Page 37 of Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1
[50] Page 37 of Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1

> Shumeca Chadwick, Lt. Christopher Johnson, and Sgt. Tokishiba Lane. The referenced email will be attached to this correspondence.[51]

NOPD policy was changed by this email authorization, as conveyed by the NOPD Chief of Detectives, Paul Noel. The PIB investigators did not have access to this email during their investigation.[52]

After considering all the evidence, including this email, the Three-Captain Panel recommended: **(1) Sustaining** a policy violation for failure to devote the entire time to his duty regarding the two times Officer Vappie was at HANO meetings while on duty; **(2) Sustaining** a policy violation for professionalism regarding the time Officer Vappie spent alone with the Mayor; **(3) Sustaining** violations of the Civil Service rules for maintaining standards, and **(4) Exonerated** on the alleged violation of the "16.58 hour" limit based on the specific permission to work overtime granted to the EP detail.[53] The Superintendent sustained those recommendations on June 14, 2023.

## E.    The Monitor's Access was not Impeded.

As noted above and in the affidavit of lead investigator Capt. Kendrick Allen,[54] the Monitor's team was given unprecedented and complete access to the investigation. As of March 31, 2023, it appears the Monitoring team had already invoiced the City over $50,000[55] for time allocated specifically to the ongoing Vappie

---

[51] *See* Interoffice Correspondence of May 30, 2023, at Ex. 9.
[52] Affidavit of Captain Allen at Ex. 3.
[53] Disciplinary Hearing Disposition at Ex. 7.
[54] Affidavit of Captain Kendrick Allen, at Ex. 3.
[55] This amount is difficult to quantify exactly due to the manner of record keeping for time by the Monitor's team.

investigation.[56] Based on available invoices, there is no other individual PIB investigation in the 10-year history of the Consent Decree that reaches a fraction of that value. Even PIB investigations of alleged officer violations of detainee constitutional rights do not receive the level of attention from the Monitor as occurred here regarding, what the Monitor described as, "alleged time card misconduct involving the Mayor's NOPD security detail."[57]

On April 7th the Monitor created a report on the Vappie investigation. This report was shared with the City and NOPD on April 17, 2023.[58] This report states, in part, that the Monitor finds the conclusions of the PIB Vappie investigation to be "reasonable based upon the facts available to PIB."[59] Specifically, the Monitor noted:

> **Overall, we are satisfied that PIB's investigation into the actions and inactions of Officer Vappie met the requirements of the Consent Decree. Captain Allen and Lieutenant Jones took their jobs seriously and pursued the investigation with diligence and integrity.** The Monitoring Team reviewed all witness and subject interviews conducted by PIB and can confirm the seriousness of the questions asked by the investigators, **their lack of bias, and the appropriate scope of the questions**.[60]

---

[56] *See* Monitor time entry summary regarding Vappie at Ex. 2.

[57] Letter of the Monitor to New Orleans City council-members JP Morrell and Joseph I. Giarrusso, III, as Attachment B to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[58] Attachment E to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[59] Attachment E to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, at p. 6.

[60] Attachment E to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, at p. 6.

In addition to the approval of the overall investigation, the report also includes concerns regarding the process. PIB responded to the Monitor's concerns on April 24th.[61] The Monitor then issued a public report on PIB's Consent Decree compliance status on May 3, 2023, which included extensive details regarding the Vappie investigation.[62] PIB responded on that same day without addressing specifics of evidence regarding the on-going Vappie disciplinary proceeding.[63]

## V.   NOPD's Response to Failures Alleged by the Monitor

On, or about, May 1, 2023, the Monitor tendered another report on the Vappie investigation alleging failures by PIB. The draft was updated on May 19, 2023, to be filed on June 5th. By this time the report and recommendations of the PIB investigators were complete. The Monitor's report dramatically ramped up the attacks on PIB. The Monitor declared that PIB was cavalier,[64] disingenuous,[65] and generally unprofessional in its handling of the Vappie investigation despite the Monitor's previous findings. The primary complaint centered around the PIB investigators' failure to find a criminal violation for payroll fraud as pushed by the Monitor.[66]

PIB investigators recommended sustaining violations against Officer Vappie of the 16.58 billed hours per day limit, along with unprofessional conduct and failure to dedicate his entire time to his duty. After pushing the PIB investigators to

---

[61] Attachment F to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.
[62] R. Doc. 694 at 14.
[63] R. Doc. 697.
[64] Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, at p. 4.
[65] Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, a p. 7.
[66] Affidavit of Captain Allen at Ex. 3.

make a specific finding of nepotism to allow for payroll fraud, **even if it lacked sufficient evidence to survive an appeal to the Civil Service Commission**,[67] the Monitor now chastises PIB for having a "cavalier attitude towards [its] obligations and the importance of officer accountability."[68] It is the Monitor, however, that has demonstrated a cavalier attitude towards PIB's critical duties and integrity.

In the face of unique pressure from the Monitoring team to reach specific findings, the investigators stuck to their principles and treated this investigation exactly the same as every other PIB investigation.[69] Only two changes to the routine PIB process were made regarding Officer Vappie based on the media and Monitor attention. First, the intimate involvement of the Monitor's team on this investigation on an almost daily basis was unlike any prior PIB investigation known to the PIB staff and investigators.

Second, the investigating team was "upgraded" as compared to normal investigations. Ordinarily, the investigation of claims against an officer for time violations would be conducted by a Sergeant. In the case of Officer Vappie, the investigating team consisted of a Lieutenant and a Captain. This was done to ensure there was no viable attack on the integrity of the investigation. This is a practice used by NOPD for higher profile investigations.

---

[67] Affidavit of Captain Allen at Ex. 3.
[68] Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1, at p. 4.
[69] Affidavit of Captain Kendrick Allen, at Ex. 3.

## A.      Payroll Fraud was Investigated

The Monitor's team made clear they wanted Officer Vappie criminally charged with payroll fraud from the outset of the PIB investigation.[70] The Monitor's attack on the investigators for allegedly ***failing to investigate*** that claim lacks merit and ignores the Monitor's role in the investigation. The Monitor spends pages detailing how it pressed the PIB investigators during the investigation to pursue payroll fraud rather than letting the investigation proceed as normal. The Monitor coordinated the investigation,[71] drafted interview questions,[72] reviewed the interviews immediately,[73] met weekly with the PIB investigators,[74] and updated the Court,[75] and DOJ[76] with the status of the investigation. A failure to investigate would have been known long before the Monitor's April 7, 2023, report.

It was not until the PIB investigators made their recommendations[77] that the Monitor declared the PIB investigators somehow misled them about the scope of the investigation – an allegation the City, NOPD and the PIB investigators denounce as

---

[70] Affidavit of Captain Allen at Ex. 3.

[71] *See, e.g.,* Monitor time entry summary regarding Vappie at Ex. 2, at 12/05/22, 12/19/22, and 01/31/23.

[72] *See, e.g.,* Monitor time entry summary regarding Vappie at Ex. 2, at 12/28/22, 01/05/23, 01/08/23, 01/23/23, 01/24/23, and 01/25/23.

[73] *See, e.g.,* Monitor time entry summary regarding Vappie at Ex. 2, at 12/28/22, 12/29/22, 12/31/22, 01/03/23, 01/04/23, 01/09/23, 01/15/23, and 02/01/23.

[74] *See, e.g.,* Monitor time entry summary regarding Vappie at Ex. 2, and pages 1, 3, 4, 5, 8 and Attachments B and E to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

[75] *See, e.g.,* Ex. 2, 11/14/22 entry by David L. Douglass ("Call with Judge Morgan and Mr. Aronie regarding Vappie investigation issues."), 11/14/22 entry by Jonathan S. Aronie ("Prepare for and meet with Judge Morgan regarding Vappie investigation (1.4); meet with NOPD personnel regarding same (0.4)"), 12/30/22 Jonathan S. Aronie; 01/09/23 Jonathan S. Aronie; 01/12/23 Scott Huntsberry, and 03/14/23 Jonathan S. Aronie.

[76] *See, e.g.,* Monitor time entry summary regarding Vappie at Ex. 2, at 01/23/23, 01/19/23, and 03/15/23.

[77] Attachment C to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

flatly untrue.[78] The lead investigator noted the highly questionable conduct of the Monitor's team in pushing for a specific political outcome, and their refusal to comply seems to be the source of the Monitor's attack.

Further troubling is that the Monitor cites the PIB investigation memorandum to support the charge that the PIB investigators did not *actually* conduct this investigation because their report does not address that claim. This is misleading, as the lead investigator's sworn statement makes clear.[79] After ten years of monitoring PIB investigations, the Monitor must be aware of how PIB writes its disciplinary investigation reports. PIB does **not** detail all the allegations it considered but ultimately determined were unsupported by the evidence.[80] In other words, PIB does not write its investigation reports to appease the unique interest of the Monitor, the City Council, or the media.

PIB investigates and prepares its reports according to NOPD policy – policy approved by the DOJ and the Monitor.[81] This method has never been challenged by the Monitor or DOJ until now. The Monitor effectively criticizes the investigators for not treating the investigation of Officer Vappie differently than every other "time card misconduct" case – *i.e.*, as an "investigation of the Mayor."[82] As the lead

---

[78] Affidavit of Captain Kendrick Allen, at Ex. 3.
[79] Affidavit of Captain Kendrick Allen, at Ex. 3.
[80] Affidavit of Captain Kendrick Allen, at Ex. 3.
[81] New Orleans Police Department Operations Manual Chapter: 52.1.1 and 52.1.2 at https://nola.gov/nopd/policies.
[82] Attachment A to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

PIB investigator testified, PIB does not investigate mayors.[83] And neither does the court-appointed Monitor.

As to the merits of the claim, the investigators found that the conduct alleged did not merit a criminal investigation based on a lack of evidence.[84] Similar allegations have *always* been investigated as violations of duty and/or violations of the 16.58 hour rule. In the professional opinion of the PIB investigators, Officer Vappie could not be charged with payroll fraud for allegedly not devoting his time to his duty in the unique context of executive protection.[85] This is presumably why the Monitoring team suggested finding a violation of the nepotism rules even if it would not withstand appeal.[86]

## B.    Executive Protection is a Unique Detail

Important in this discussion, and critical to the PIB investigators, was understanding what EP members do while their "Protectee" works. If the Mayor were at City Hall, an EP team member would wait nearby until the Mayor needed to travel. If the Mayor was in a restaurant, the EP member would be at a nearby table waiting. It is expected, according to the expert witnesses and past EP team members, for EP details officers to spend significant periods of time waiting.[87] *Just waiting*. The expert witnesses and other EP team members made absolutely clear that the duties of an EP team member include work that would otherwise not

---

[83] Affidavit of Captain Kendrick Allen, at Ex. 3.
[84] Affidavit of Captain Kendrick Allen, at Ex. 3.
[85] Affidavit of Captain Kendrick Allen, at Ex. 3.
[86] Affidavit of Captain Kendrick Allen, at Ex. 3.
[87] Attachment D to the Monitor's June 5, 2023, letter to the Court, attached here as Ex. 1.

qualify as police work. "If [*sic*] Mayor goes to the movies, you go to the movies."[88] "[T]he Mayor may ask an executive protection team member to water plants which was not against the law."[89] Or, as a retired EP team member explained, "you do what the Mmayor tells you to do Period."[90]

Therefore, the PIB investigators were faced with the fact that Officer Vappie could still be doing the same job function while in the Mayor's residence – as he testified he was and as no witness contradicted.[91] Again, **it was deemed unprofessional for Officer Vappie to do the job this way**, but this alone is not nepotism or payroll fraud as the Monitor wanted PIB to find.[92]

It is critical for the public to understand that Office Vappie was found to have violated his professional obligations as a result of the PIB investigation and is subject to the discipline mandated by NOPD policy. The PIB investigators, the Three-Captain Disciplinary Panel and the Superintendent all found that he did not do his job in compliance with NOPD standards. But Officer Vappie cannot be subjected to a different process or receive different discipline than any other NOPD officer simply because he is on a mayor's EP team. PIB did its job with integrity.

---

[88] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM035 attached here as Ex. 1.
[89] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM034 attached here as Ex. 1.
[90] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM034 attached here as Ex. 1.
[91] Affidavit of Captain Kendrick Allen, at Ex. 3.
[92] Affidavit of Captain Kendrick Allen, at Ex. 3.

C.      **Potential for Payroll Fraud**

The Monitor wanted a payroll fraud finding and bemoans a lack of investigative effort to find it. The lack of a nepotism trigger is addressed above. A different trigger for a payroll fraud claim could have come from the time Officer Vappie spent at HANO meetings. Officer Vappie attended HANO Board meetings on multiple occasions. On two occasions he was off the NOPD clock. On two other occasions he was paid as "on-duty" while at the HANO meetings.[93] This created the potential for payroll fraud as HANO Board members receive a $75 payment for their time. If Officer Vappie was paid twice for his time – by NOPD and HANO – the investigators would have considered the payroll fraud charge in that light.[94]

But Officer Vappie did **not** get paid the $75 fee paid to the other Board members. Therefore, he did not engage in double billing or payroll fraud as NOPD has historically applied that charge.[95] Again, this is not a novel allegation against an NOPD officer, and NOPD has a long history of classifying this allegation as a violation of the 16.58-hour rule and/or dedication of time to duty. The Monitor has never objected to this classification in any prior case known to PIB staff. The allegation of failing to devote his entire time to his duty was sustained based on these two meetings because he was not providing executive protection, although still "on call" according to his testimony.[96]

---

[93] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM034 attached here as Ex. 1.
[94] Affidavit of Captain Kendrick Allen, at Ex. 3.
[95] *Id.*
[96] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM052-53 attached here as Ex. 1.

This is a distinction of importance to past high-profile double-billing cases where payroll fraud claims were recommended by the PIB investigators. In the Secondary Employment Detail pay cases, for example, some officers were alleged to have been billing two sources at the same time – NOPD and a detail employer – and some had evidence of an intent to overbill. Here, Officer Vappie overbilled on two occasions but did not double bill or show a pattern or intent to fraudulently bill.[97] **His violation was treated the same as every case of overbilling for work hours by an NOPD officer. This is a disciplinary action PIB deals with very routinely and Officer Vappie was treated the same as every officer before him.** The Monitor cries for a payroll fraud charge in this particular case, but why?

## D.   Serious Misconduct Complaint Investigations

This leads to the next meritless attack by the Monitor. The Monitor charges PIB with neglecting its duties because it did not designate the allegations against Officer Vappie as allegations of serious misconduct pursuant to Consent Decree paragraph 454, thus giving the Monitor even greater power. This hyperbolic statement is inaccurate.

The Consent Decree was put in place to deal with serious misconduct, including the unwarranted use of force, discriminatory policing, and alleged systemic abuses of suspects' constitutional rights.[98] The charges against Officer Vappie are serious, as are all charges investigated by PIB. They are not, however, of the nature NOPD has **ever** treated as a "serious misconduct complaint" as used by

---

[97] Affidavit of Captain Kendrick Allen, at Ex. 3.
[98] *See* Section III Consent Decree Scope and Content above.

Paragraph 454. Neither the Monitor nor DOJ has ever challenged PIB's treatment of "time card misconduct" as failing to meet this definition.

Again, perspective is critical on this point. The Executive Protection detail is a unique detail inside of NOPD. EP team members do not ordinarily make arrests, conduct investigations, or do traditional police work regarding the constitutional rights of detainees. EP is not mentioned in the Consent Decree as it is not a role that ordinarily involves the protection of the constitutional rights of citizens. As explained above, the allegations against Officer Vappie would never be treated as a "serious misconduct complaint" if it were not for the Monitor's extraordinary interest in pursuing "an investigation of serious allegations involving Mayor Cantrell."[99] That is not a basis to subject Officer Vappie to a criminal investigation for payroll fraud pursuant to the policies and practices of PIB.

## E.    Preponderance of the Evidence Requires Evidence, Not Speculation or Innuendo.

Despite repeated efforts from the Monitoring team to pressure the PIB investigators into reaching a unique conclusion for Officer Vappie, there was not sufficient *evidence* that Officer Vappie was not performing his duties while in the Mayor's apartment to support – by a preponderance of evidence – that he was engaged in payroll fraud. It may look bad. It may be unprofessional. And it was a violation of his training in EP to be in the Mayor's apartment for extended periods.

---

[99] Attachment E to the Monitor's June 5, 2023, letter to the Court, at CDM076 attached here as Ex. 1.

But there was no *evidence* that he was not performing his unique EP duty at any time other than while at two HANO meetings (as detailed above).

A preponderance of evidence means the **evidence** in favor outweighs the evidence against.[100] Here there was no evidence of Officer Vappie not serving as EP while in the apartment because EP can mean doing nothing, or nearly anything, while in close proximity to the Protectee. There is **no NOPD policy** that prohibits EP detail members from being in the residence of the Protectee.[101] There is speculation of what Officer Vappie was doing, and the Monitor is unusually focused on the speculation it calls circumstantial *evidence*. Mr. Aronie fueled such speculation during the investigation with his erroneous conspiracy theory about reinstating Officer Vappie to the Mayors EP team.

But there was no evidence of policy violations. The NOPD nepotism policy was not violated by the evidence presented.[102] A filing by Officer Vappie's wife alleging infidelity in a divorce pleading is not sufficient evidence. The Mayor going out at night after Officer Vappie left is not evidence that he was not on duty while he was there. Watering plants fits into the broad traditional roles of EP duties, even if not traditional police work. In short, being in the apartment is not evidence of what Officer Vappie was doing there, and without more evidence, the findings

---

[100] *See Slidell v. Temple*, 246 La. 137, 144, 164 So.2d 276, 278 (1964) ("By a preponderance of evidence is meant, simply, evidence which is of greater weight, or more convincing, than that which is offered in opposition to it. ")
[101] Attachment D to the Monitor's June 5, 2023, letter to the Court, at CDM036 attached here as Ex. 1.
[102] Affidavit of Captain Kendrick Allen, at Ex. 3.

sought by the Monitor could not be supported.[103] The PIB investigators faithfully refused the *suggestion* that they make such a finding without support and let the issue be corrected on appeal.[104] And as explained previously, PIB does not issue search warrants for an officer's private phones in administrative investigations.[105] The rules cannot be changed for Officer Vappie.

Officer Vappie's conduct looked unprofessional to the disciplinary judges, and thus looked bad for NOPD and the Mayor. The PIB investigators and the Three-Captain Panel recommended the Superintendent sustain the professionalism charges and she did. But that does not equate to payroll fraud as historically applied by NOPD, even if the case involves a member of the Mayor's security detail.

## VI.   CONCLUSION

Officer Vappie was entitled to, and received, the exact same investigation of claims against him as every other officer under the modern Consent Decree-PIB. He is now subject to the same discipline. (*Officer Vappie's appeal rights have not been exhausted as of this filing.*) Contrary to the Monitor's attack, payroll fraud was investigated. The PIB investigators did not mischaracterize the scope of the investigation. What the Monitor refuses to accept is that there was insufficient evidence – not suspicion or speculation – that Officer Vappie engaged in nepotism or payroll fraud. This fact cannot be changed simply because the Monitor sought a specific political result from the outset.

---

[103] Affidavit of Captain Kendrick Allen, at Ex. 3.
[104] Affidavit of Captain Kendrick Allen, at Ex. 3.
[105] *See* NOPD PIB response to PIB Report R. Doc. 695-4.

The Monitor's team directly pressured the PIB investigators to reach a sustained finding despite a lack of evidence to support that finding.[106] It is beyond alarming that the Monitoring team paid to evaluate the integrity of PIB investigations sought to undermine that very quality. The PIB investigators refused to bow to this pressure, which is a testament to PIB.[107] But this revelation will cast a dark shadow over all future Monitor involvement with the NOPD.

*Respectfully submitted,* this 15th day of June 2023.

*Davillier Law Group, LLC*

/s/ Charles F. Zimmer II
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

*Counsel of Record for the*
*City of New Orleans and the*
*New Orleans Police Department*

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the above and foregoing pleading via Notice of Electronic filing using this Court's CM/ECF system to counsel of record participating in the CM/ECF system on this 15th day of June 2023.

/s/ Charles F. Zimmer II

---

[106] Affidavit of Captain Kendrick Allen, at Ex. 3.
[107] Affidavit of Captain Kendrick Allen, at Ex. 3.

- 30 -