UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | CIVIL ACTION NO.<br>2:12-CV-01924-SM-DPC |
| V. | JUDGE SUSIE MORGAN |
| CITY OF NEW ORLEANS,<br>Defendant. | MAG. DONNA PHILLIPS CURRAULT |

### Affidavit of Captain Kendrick C. Allen

STATE OF LOUISIANA
PARISH OF ORLEANS

**BEFORE ME**, the undersigned Notary Public, duly qualified and commissioned in and for the aforementioned Parish and State, personally came and appeared Kendrick C. Allen who, after first being duly sworn, declared that:

1. I was the lead investigator on the Officer Vappie investigation for the NOPD's Public Integrity Bureau, called PIB. I have conducted many PIB investigations. Those investigations include many investigations of alleged violations of the 16:35-hour rule and other overtime and billing cases.

2. I was joined in the investigation by Lt. Lawrence Jones who has extensive experience conducting PIB investigations at NOPD.

3. We supplied all evidence related to this specific case to the monitoring team, including approximately two terabytes of data placed on a hard drive and taken out of the PIB offices. All interviews, audio and video, were turned over to the

Affidavit of Captain Kendrick C. Allen

monitoring team immediately after the interview was conducted. License Plate Reader data and city phone data was also given to the monitoring team.

4. As a result of the many meetings I had with the monitoring team, I was were very concerned that there was a specific outcome to the investigation that was wanted for political reasons by the monitoring team. The pressure applied by certain monitor team members made it clear that this case was about the Mayor of New Orleans to them. PIB has no authority to investigate the mayor of New Orleans. PIB investigated Officer Vappie, who is a member of the NOPD.

5. The Vappie case was the first case I am aware of in which weekly meetings were held with the monitoring team as the case was being investigated. While the narrative was that they were there as just monitors, the team did have a lot of input and even produced questions that were later asked to Officer Vappie and other members of the executive protection team.

6. Also, the monitoring team had real time access to all the evidence for this specific case. At the onset of this investigation, PIB was advised by the monitoring team to place a "firewall" between the Superintendent of Police, City Attorney, Mayor's officer and PIB. This request was specifically usual, being that the Superintendent of Police is PIB's boss and the City Attorney's office is who PIB uses for legal advice on cases.

7. In this specific case, the investigation started as possible 16:35 working hour violation. During the investigation two more violations were found by the investigators and we explained how we found them, and evidence was provided

2

Affidavit of Captain Kendrick C. Allen

to support the disposition of sustained. Other than the original charge in a formal disciplinary investigation, it would not be common to give details on charges that the investigators find have not proven or charged the accused officer of.

8. To be clear, at no time was Officer Vappie under investigation for payroll Fraud. If the investigators had any evidence of it, then we would have had to produce a criminal investigation and follow PIB procedure for a criminal investigation. Because there was no evidence of payroll fraud, the investigators did not speak to it in their report and recommendations.

9. Lt. Jones and I considered the claims of payroll fraud as pushed by the monitors from early on in the investigation. In several meetings between Chief Sanchez, Lt. Jones, and I, we reviewed the evidence and determined that we did not reach a threshold for a criminal fraud case.

10. We assessed the evidence on several occasions during this investigation and never found any evidence of misrepresentation or a suppression of truth made with the intent to obtain an unjust advantage. Nor did we find that Officer Vappie received any payment for HANO while on the time clock for NOPD. In essence we did not find any evidence that would from a legal standpoint make this a criminal investigation.

11. During our weekly meetings with the monitoring team, there were certain comments made that were biased in nature towards the investigation by members of monitoring team.

CDM112

Affidavit of Captain Kendrick C. Allen

12. During the investigation of Officer Vappie, the monitoring team specifically suggested that I and Lt. Jones, the other investigator, sustain the findings against Officer Vappie regarding nepotism and just let the Civil Service commission overturn the sustain disposition on appeal.

13. It was my understanding that the nepotism charge would open the door for payroll fraud as it would mean Officer Vappie was not working while on duty.

14. These comments were, and still are, very concerning because it is my goal, and the goal of PIB to conduct unbiased and accurate investigations at all times. It goes against everything I understood about NOPD policy to sustain findings despite a lack of evidence.

15. After the investigation was complete, and before the Pre-Disciplinary Hearing, an email was provided by Officer Vappie that showed that all overtime for the executive protection team was authorized by the Superintendent of Police. This email was communicated by former Deputy Chief Paul M. Noel. This excused deviations from the 16:35-hour rule by Officer Vappie or any executive protection team member.

16. As an investigator I had to differentiate speculation and opinions from evidence. According to his interview, Officer Vappie did nothing more or less then what he does waiting for the mayor at city hall. No other witness contradicted this testimony. No physical evidence contradicted this testimony. While some may interpret the time Officer Vappie spent at the Mayor's apartment as odd for police

4

Affidavit of Captain Kendrick C. Allen

work, Officer Vappie's job description on that particular detail is to serve the protection needs of the Mayor or others at her discretion. The expert testimony revealed this can include things like watering plants that otherwise would not be considered performance of an officer's duties.

17. It was NOPD professionalism standards that Officer Vappie violated by allowing the performance of his duties to make NOPD and his protectee look bad. That charge was sustained by our investigation.

18. During the course of this investigation, we never found any direct or physical evidence to collaborate that a personal relationship exists between the Mayor and Officer Vappie. NOPD Policy Chapter 13.38 NEPOTISM AND EMPLOYMENT CONFLICTS states that a Personal Relationship Includes marriage, cohabitation, dating or any other romantic or intimate relationship beyond mere friendship.

19. This definition of a personal relationship is important because this is the definition that the New Orleans Police Department, Department of Justice, and the Consent Decree Monitoring team has agreed upon. Officer Vappie in his interview described the relationship between the two as professional and we found no direct or physical evidence to refute that statement. Because of these factors or non-factors there was no violation of NOPD Policy Chapter 13.38 NEPOTISM AND EMPLOYMENT CONFLICTS.

20. We also found that all travel and hotel accommodations for the executive protection team, including Officer Vappie, was arranged by the Mayor's

CDM114

Affidavit of Captain Kendrick C. Allen

scheduler and the city's travel office. At no time did the executive protection team, or Officer Vappie, choose where they would sit on a plane or the hotel in which they would sleep.

21.  As is the normal policy during PIB investigations, I informed Officer Vappie's Bureau Chief that Officer Vappie would be taken off of reassignment during the administrative investigation. Only the Bureau Chief or Superintendent direct where any individual officer is assigned. This was done pursuant to the normal and routine PIB process and nothing to do with Officer Vappie individually.

**Further, the affiant says not.**

**Kendrick C. Allen**

**SWORN TO AND SUBSCRIBED BEFORE ME THE UNDERSIGNED NOTARY PUBLIC THIS ___ DAY OF JUNE 2023.**

Notary Public

JONATHAN D. LEWIS
NOTARY PUBLIC
STATE OF LOUISIANA
Bar No. 37207
My Commission is for Life

6

CDM115