UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff, | CIVIL ACTION NO.<br>2:12-CV-01924-SM-DPC |
| V. | JUDGE SUSIE MORGAN |
| **CITY OF NEW ORLEANS,**<br>Defendant. | MAG. DONNA PHILLIPS CURRAULT |

# SECOND SUPPLEMENTAL RESPONSE OF THE CITY AND NOPD TO RULE TO SHOW CAUSE

*Davillier Law Group, LLC*
Daniel E. Davillier La. No. 23022
Charles F. Zimmer II (T.A.) La. No. 26759
935 Gravier Street, Suite 1702
New Orleans, LA 70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

*Counsel of Record for
the City of New Orleans and the
New Orleans Police Department*

# Contents

I. Supporting Facts from NOPD Response (R. Doc. 714-6) .................................. - 1 -

II. Supporting Facts from NOPD Response (R. Doc. 697) ..................................... - 1 -

III. Supporting Facts from the City's Response (R. Doc. 716-3) ........................... - 2 -

**Now Into Court**, comes Defendant, the City of New Orleans (the "City") and its New Orleans Police Department ("NOPD"), who, in compliance with the Court's Orders of August 28, 2023 (R. Docs. 744 and 745), respond with supplemental arguments and documents as follows:

## I.   NOPD R<small>ESPONSE</small> (R. D<small>OC</small>. 714-6)

NOPD responded to OCDM's April 7, 2023 report in R. Doc. 714-6, attached hereto as Ex. Vol. 10, at NOPD_0005866. In addition to the explanation of the application of Decree paragraph 454, NOPD explained why it did not seize Officer Vappie's personal cell phone. NOPD explained that, "we find no legal, fair, or reasonable basis for doing so. Under my administration, we hold constitutional policing as an ongoing and unwavering standard. As we understand it, the Fourth Amendment prohibits warrantless searches of places or seizures of persons or objects where there is a reasonable expectation of privacy. The courts, as you know, apply a test that basically weighs and balances the public interest against the intrusion of privacy…to take his personal cellphone reeks of a constitutional violation making this issue ripe for an appeal." This has been reiterated by the PIB investigators in subsequent sworn testimony. NOPD further explained that PIB is a fact-finding bureau, not a prosecutorial agency.

## II.   NOPD R<small>ESPONSE</small> (R. D<small>OC</small>. 697)

NOPD Responded to the OCDM Report on the New Orleans Police Department Public Integrity Bureau April 2023 in R. Doc. 697, attached as Ex. Vol. 10, at NOPD_0005862. Therein, NOPD noted that OCDM correctly "opined that NOPD supervisors are appropriately following discipline matrix guidelines when

- 1 -

disciplinary action is taken." *Id.*, at 6. NOPD further noted that "of the thirty cases reviewed [by OCDM] for one-day suspensions, the Monitoring Team did not find any indication of excessive discipline. All the investigations were described as sufficiently thorough." *Id.*, at 6. This review of PIB conduct, using means of measurement agreed to by the parties and ordered by the Court, is an example of the proper compliance determination methodology set forth in the Consent Decree.

### III.  THE CITY'S RESPONSE (R. DOC. 716-3)

The City responded to OCDM's PIB Vappie Investigation Report pursuant to the order of this Court (R. Doc. 712) *via* R. Doc. 716-3 (later admitted as R. Doc. 718). That document contains approximately 30 pages of detailed facts and arguments regarding the PIB investigation of Officer Vappie. Pursuant to the order of the Court, the City seeks to summarize those facts and arguments here in the five pages allowed. The City maintains its objection to a ruling on the instant Rule to Show Cause that ignores the full record of responses provided by NOPD regarding PIB's investigation of Officer Vappie.

First, OCDM has not treated PIB's investigation of Officer Vappie like any other matter. Contrary to its role as defined by the Consent Decree, OCDM has undertaken a specific investigation of Officer Vappie and stressed a specific outcome to the PIB investigators. As the City has detailed in its objections and petitions for writ of mandamus, this is not the role of the court appointed monitor. OCDM frequently repeats that its efforts regarding Officer Vappie were taken at the request of the City Council. The only support provided is a letter from two council

members, not the City Council. Even if the request was from the City Council, there is nothing in the Consent Decree that allows for the City Council to amend the defined role of the court appointed monitor into that of an investigator simply because the investigation is linked to the Mayor.

Second, the intimate role OCDM played in this case was unique, and troubling. The lead PIB investigator testified to the intimidating nature of OCDM's role and conduct in the investigation. Further, he testified that a member of the monitoring team actually told him to sustain a finding that lacked support and let Civil Service overturn it later in order to reach the payroll fraud outcome.

This parallels the evidence presented of OCDM conduct that undermined the Superintendent's authority by seeking to cause reassignments related to the investigation after the Superintendent had denied OCDM's request. This path of conduct was again demonstrated by OCDM's public, mid-investigation announcement that it had determined that Officer Vappie was being reassigned back to the Mayor's security detail. This was not true, but the public announcement by the court appointed monitor fed negative news regarding the City. Each of these events was a violation of OCDM's role and duties under the Consent Decree and its contract with the City.

Third, the OCDM's intimate role undermines its current argument that it lacked access to the investigative process. OCDM time records evidences their extensive involvement in the investigation.[1] According to the witnesses and

---

[1] Ex. Vol. 10, NOPD_5830, and R. Doc. 716-5.

documents, OCDM was thoroughly informed of every step of – and involved in – the investigators' progress. OCDM knew, for example, that the PIB investigators had not filed a criminal referral for payroll fraud throughout the investigation. OCDM stressed its desire for a payroll fraud charge, but the PIB investigators never saw sufficient support for that claim, according to their sworn testimony.[2]

Based on its close review of the smallest details of the PIB investigation, and after seeing the recommendations of the investigators, OCDM reported that "we are satisfied that PIB's investigation into the actions and inactions of Officer Vappie met the requirements of the Consent Decree."[3] The same letter sought to shape the outcome of the then on-going disciplinary process by advising that Officer Vappie should receive a harsher deviation upward from the disciplinary matrix.[4] Suggesting discipline in a specific pending matter is outside the role granted to OCDM and has an undue influence on the operations of PIB's function.

Finally, the City clarified in its response that payroll fraud was not ignored, or predisposed. It was not found. As was better explained by the subsequent sworn testimony of the PIB investigators,[5] they considered and looked for all facts related to the factual allegations in the case, according to PIB policy. They pursued and considered circumstantial evidence and applied the correct preponderance of the evidence standard – as OCDM reported to this Court on April 7, 2023.

---

[2] R. Doc. 735-1 and R. Doc. 735-2.
[3] Ex. Vol. 10, NOPD_0005866, at 5871.
[4] Ex. Vol. 10, NOPD_0005866, at 5881.
[5] R. Doc. 735-1 and R. Doc. 735-2.

If they saw evidence to support it, they had no hesitation in referring a payroll fraud claim. The fact that the initial facts alleged struck Lieutenant Jones as an hour or time card violation did not inhibit their ability to add new allegations or make a criminal referral if they saw payroll fraud. The City's response detailed the findings of the investigators regarding Officer Vappie's time on the HANO board and the difficulty in determining if his time spent in the residence of the Mayor satisfied his duty. Again, this position was more fully explained in the sworn testimony of Deputy Superintendent Sanchez, Captain Allen and Lieutenant Jones.

As the investigators explained, the lack of a policy for executive protection and the highly unique nature of that detail made for a difficult case. Watering plants, for example, fits into the broad traditional roles of executive protection duties, even if not traditional police work. As the City noted, being in the apartment was not evidence that Officer Vappie was not on duty. His job primarily consisted of waiting for the Mayor to travel. Without more evidence of a relationship beyond friendship,[6] the payroll fraud finding sought by OCDM could not be supported sufficiently for a criminal referral. The PIB investigators faithfully refused the suggestion that they make such a finding without support.

***Respectfully submitted,*** this 29th day of August 2023.

*Davillier Law Group, LLC*
/s/ Charles F. Zimmer II
Daniel E. Davillier La. No. 23022

---

[6] NOPD Chapter 13.38 at Ex. Vol. 10, NOPD_0005858 ("Personal Relationship—Includes marriage, cohabitation, dating or any other romantic or intimate relationship beyond mere friendship.")

Charles F. Zimmer II (T.A.) La. No. 26759
Jonathan D. Lewis, La. No. 37207
935 Gravier Street, Suite 1702
New Orleans, LA  70112
Phone: (504) 582-6998
Fax: (504) 582-6985
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com

***Counsel of Record for the***
***City of New Orleans and the***
***New Orleans Police Department***

### CERTIFICATE OF SERVICE

   I certify that I have served a copy of the above and foregoing pleading via Notice of Electronic filing using this Court's CM/ECF system to counsel of record participating in the CM/ECF system on this 29th day of August 2023.

/s/ Charles F. Zimmer II
