## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**V.**

**CITY OF NEW ORLEANS,**

**Defendant.**

**CIVIL ACTION NO.**
**2:12-CV-01924**

**SECTION E**
**JUDGE SUSIE MORGAN**
**DIVISION 2**
**MAG. DONNA PHILLIPS CURRAULT**

## UNITED STATES' PRE-HEARING MEMORANDUM
## ON THE COURT'S RULE TO SHOW CAUSE

# **Table of Contents**

I.    Introduction ...................................................................................................................... 1

II.    Background ...................................................................................................................... 2

   A.  The Consent Decree's Accountability Requirements ............................................... 3

   B.  The Consent Decree's Monitoring Provisions ......................................................... 5

   C.  The Monitor's Public Integrity Bureau Audits and Findings ................................. 6

   D.  The Monitor's Role and Findings in the Vappie Investigation ............................... 8

   E.  The Rule to Show Cause ........................................................................................ 12

III.   Discussion .................................................................................................................... 13

   A.  The City Admits It Violated the Decree's Timeliness Requirements and Has Not Provided Evidence of Remediation .................................................................................. 14

   B.  The Numerous Violations Identified by the Monitor Related to the Investigation of Officer Vappie Raise Concerns about the Reliability of NOPD's Accountability System 16

     1.  The City Failed to Document Payroll Fraud on an Intake Form in Violation of Paragraph 399 ..................................................................................................... 17

     2.  The City Deliberately Withheld the Investigative Report to the Monitor in Violation of Paragraphs 454, 470 and 472 ..................................................................... 18

     3.  The City's Failure to Comply with Paragraphs 399 and 454 Resulted in Subsequent Consent Decree Violations ................................................................................ 20

     4.  The City Admits Other Violations of the Consent Decree that It Has Not Remedied .. 23

IV.   Conclusion ................................................................................................................... 24

## <u>Table of Authorities</u>

**Cases**

*Njones v. Gusman*, No. 12-859, 2014 U.S. Dist. LEXIS 35110 (E.D. La. June 6, 2013) ............ 14

*State v. Fruge*, 251 La. 283 (1967) .......................................................................................... 9, 17

*United States v. Hinds County*, 2022 U.S. Dist. LEXIS 25537, 2022 WL 439481 (S.D. Miss.,

Feb. 12, 2022) ....................................................................................................................... 14

## I.      INTRODUCTION

On July 21, 2023, the Court issued a Rule to Show Cause (Rule) ordering the City of New Orleans (City) to appear in court to show why it should not be found to have violated provisions of the Consent Decree relating to the New Orleans Police Department's (NOPD's) accountability system.[1]  The Rule to Show Cause also orders the City to produce specific documents, and to submit a pre-hearing memorandum addressing two sets of potential violations of the Decree.[2]

The City is in violation of Consent Decree provisions related to NOPD's accountability system.  First, the Court's Rule cites the Monitor's recent reports on NOPD's accountability system, which identified Consent Decree violations related to the timeliness of misconduct investigations, discipline, and notification of complainants about the status of their investigations.[3]  The City has conceded that it violates these timeliness requirements,[4] and it does not attempt to refute that it continues to violate them in its response to the Court's Rule.[5]  Nor does the City provide a plan to remedy the ongoing violations or any evidence that it has done so.

Second, the Court's Rule outlines numerous Consent Decree violations identified by the Monitor related to the investigation of NOPD Officer Jeffrey Vappie – ranging from the failure to identify allegations of serious misconduct to the failure to provide information to the Monitor as required by the Decree.[6]  Though the City has had multiple opportunities to refute the Monitor's findings and to show compliance with the Decree, to date, the City has not done so.

---

[1] Doc. 729 at 11.
[2] *Id.* at 12.
[3] *Id.* at 10.
[4] *See id.*, Doc. 697 at 6.
[5] *See* Doc. 740 at 21-23.
[6] Doc. 729 at 4-10.

Instead, the City minimizes its failure to identify serious misconduct and comply with the Consent Decree's requirements, raising concerns that NOPD's practices will result in similar violations in the future if not promptly remedied.[7]  The City's arguments fail to appreciate how the violations in this high-profile, high-scrutiny incident – a "stress test" for NOPD's accountability system – undermine confidence in its ability to withstand pressure in future incidents.

The violations identified by the Monitor and outlined by the Court deprive NOPD members and the public of the fair and consistent investigations and appropriate discipline that the Consent Decree requires.  The Court should find the City in violation of the Consent Decree accountability provisions set forth in the Rule.

## II.    BACKGROUND

In 2011, following an extensive investigation of the New Orleans Police Department, the United States found reasonable cause to believe that NOPD engaged in a pattern or practice of conduct that deprived people of rights protected by the Constitution and federal law, including excessive force; unlawful stops, searches, and arrests; and discriminatory policing.[8]  The United States also found that NOPD's legal violations were caused in part by widespread deficiencies in accountability systems within NOPD and the City, including misconduct investigations and discipline.[9]  Following the investigation, the United States filed a complaint incorporating the findings from its investigation, and the United States and the City jointly filed a proposed Consent Decree regarding the NOPD, which the Court entered as an order in 2013.[10]  On

---

[7] *See* Doc. 740.
[8] Doc. 1-1; 34 U.S.C. § 12601.
[9] Doc. 1-1.
[10] Doc. 159; Doc. 159-1.

October 2, 2018, the United States and the City jointly filed an Amended and Restated Consent Decree, reflecting a series of agreed upon modifications to the original Decree.[11]

### A.  The Consent Decree's Accountability Requirements

In the Consent Decree, the City committed to requirements designed to ensure that NOPD engages in policing consistent with the Constitution and federal law, including using force in a safe and lawful manner; conducting lawful stops, searches, and arrests; and engaging in bias-free policing.[12]  The Decree also seeks to ensure a durable remedy by addressing the root causes of NOPD's unlawful conduct, including requiring NOPD to establish effective accountability systems.

NOPD must "accept all misconduct complaints, including anonymous and third-party complaints, for review" and to ensure that all "allegations . . . are fully and fairly investigated."[13] And NOPD is required to "consider all relevant evidence, including circumstantial, direct, and physical evidence, as appropriate, and make credibility determinations based upon that evidence."[14]  NOPD's investigative findings "must be based upon the preponderance of the evidence" and investigators must "explicitly identify and recommend [a specific] disposition[] for each allegation of misconduct in an administrative investigation."[15]  When imposing discipline based on its investigative findings, NOPD must "ensure that discipline for sustained allegations of misconduct [is] based on the nature of the allegation . . . rather than the identity of the officer or his or her status within NOPD or the broader community."[16]

---

[11] Doc. 565 (Consent Decree).
[12] Consent Decree Sections III–IX.
[13] Consent Decree ¶ 390, Section XVII.
[14] Consent Decree ¶ 413.
[15] Consent Decree ¶¶ 414, 415.
[16] Consent Decree ¶ 421.

The Consent Decree also requires timeframes for each step of the disciplinary process: NOPD has three business days from the receipt of the misconduct complaint to determine how NOPD will investigate a complaint administratively, if it will be referred to an outside agency, and whether to also investigate it criminally.[17]  All administrative investigations must be completed within "90 days of the receipt of the complaint, including assignment, investigation, review and final approval, unless granted an extension as provided for under state law or Civil Service exemption, in which case the investigation shall be completed within 120 days."[18]  When NOPD sustains an allegation of misconduct against an officer, it has "30 days to determine and impose the appropriate discipline, except in documented extenuating circumstances, in which case discipline shall be imposed within 60 days."[19]  NOPD also must notify the complainant of the "outcome of the investigation, in writing, within 10 business days of the completion of the investigation, including regarding whether any disciplinary or non-disciplinary action was taken."[20]

The Consent Decree also includes requirements related to NOPD's misconduct investigations, including training requirements for Public Integrity Bureau (PIB) investigators, classification protocols, criminal referrals, and the maintenance of investigation reports and related documentation.[21]  Each of these requirements is intended to help NOPD achieve its

---

[17] Consent Decree ¶ 398.
[18] Consent Decree ¶ 403.  The Consent Decree also allows administrative investigations to be tolled "as necessary to conduct a concurrent criminal investigation," though it requires NOPD and the City "to consult with the DA to develop and implement protocols to ensure that the criminal and administrative investigations can be conducted in parallel as appropriate . . . ."  Consent Decree ¶¶ 403, 411.
[19] Consent Decree ¶ 403.
[20] Consent Decree ¶ 420.
[21] *See, e.g.*, Consent Decree ¶ 382, 399, 409, 411, 419.

ultimate obligation to ensure that "all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent."[22]

### B.  The Consent Decree's Monitoring Provisions

The Consent Decree calls for a Court Monitor to assess compliance and provide technical assistance.[23]  Along with the Lead Monitor and the Deputy Monitor, the Office of the Consent Decree Monitor includes a team of law enforcement experts (collectively the Monitor).  The Consent Decree provides that the Monitor will "assess and report whether the requirements of this Agreement have been implemented" and will "conduct compliance reviews or audits as necessary to determine whether the City and NOPD have implemented and continue to comply with the material requirements of this Agreement."[24]

The Consent Decree requires that the Monitor conduct reviews and audits to determine if the City and NOPD have implemented and continue to comply with the Consent Decree.[25] However, the Consent Decree does not limit the Monitor to only quarterly reports or outcome assessments; the Monitor "shall conduct" additional audits, reviews, and assessments as the Monitor "deem[s] necessary to determine whether [the Consent Decree] has been implemented as required."[26]  The Consent Decree also requires that the Monitor "review . . . each serious misconduct complaint investigation and recommend for further investigation any . . . misconduct complaint investigations that the Monitor determines to be incomplete or for which the findings are not supported by a preponderance of the evidence."[27]  To facilitate its reviews, the Consent Decree entitles the Monitor to have "access to all necessary individuals, facilities, and

---

[22] Consent Decree Section XVII; *see also* ¶ 421.
[23] Consent Decree ¶ 444, 447, 455.
[24] Consent Decree ¶¶ 444, 447.
[25] Consent Decree ¶ 447.
[26] Consent Decree ¶ 446.
[27] Consent Decree ¶ 454.

documents, which shall include access to [Consent Decree] related trainings, meetings, and reviews, such as critical incident reviews, use of force review boards, and disciplinary hearings."[28]

The Consent Decree also imposes obligations on the City and NOPD to facilitate Monitor reviews involving investigations of serious misconduct.  Paragraph 454 requires the City and NOPD to "provide . . . each investigation report of a serious misconduct complaint investigation (i.e., criminal misconduct; unreasonable use of force; discriminatory policing; false arrest or planting evidence; untruthfulness/false statements; unlawful search; retaliation; sexual misconduct; domestic violence; and theft), to the Monitor before closing the investigation or communicating the recommended disposition to the subject of the investigation or review."

### C.  The Monitor's Public Integrity Bureau Audits and Findings

In November 2022, consistent with its obligations to conduct "compliance reviews or audits," the Monitor conducted an audit of PIB's administrative investigations.  The Monitor reported on the findings of this audit in its 2022 Annual Report on NOPD.[29]  The Monitor explained that the "central focus of the 2022 audit was to determine whether administrative investigations are being completed within timelines prescribed by the Consent Decree and NOPD policy."[30]  The Monitor's review "revealed that an excessive number of investigations were not completed within prescribed timelines and NOPD had no justification for this noncompliance.  The paragraphs related to compliance with timelines and with properly documenting disciplinary cases and decisions saw the highest rates of non-compliance."[31]  The

---

[28] Consent Decree ¶ 470; *see also* Consent Decree ¶¶ 471, 472.
[29] Doc. 674-1 at 50.
[30] *Id.*
[31] *Id.*

City filed a response to the Monitor's 2022 Annual Report, but the response did not include any discussion of the Monitor's PIB audit or its findings.[32]

Earlier this year, the Monitor conducted a series of additional PIB-related audits and reviews which "focused specifically on those paragraphs not audited in a number of years as well as those paragraphs found not in compliance during [the November 2022] audit."[33]  The Monitor reported the findings of these audits and reviews in its May 3, 2023, Special Report on PIB.[34] The Monitor audited 26 of the 52 paragraphs in the Misconduct section of the Consent Decree (Paragraphs 375-426) and concluded that nine out of the 26 audited paragraphs were "not compliant."[35]  Among the noncompliant paragraphs were Paragraphs 403 and 420, regarding the timeliness of investigations, imposition of discipline, and notification to complainants of the outcome of investigations.[36]  The Monitor found NOPD's compliance rate for the timeliness of investigations to be 73%, and the compliance rate for the timeliness of the imposition of discipline to be less than 10%.[37]  With regard to Paragraph 420, the Monitor's audit found that in 26% of the cases it reviewed, the complainant was not informed of the result of the investigation within 10 days of the conclusion of the investigation.[38]  The City filed a response to the Monitor's Special Report on PIB, in which it conceded violating paragraphs 403 and 420, stating that the violations "are being addressed and have been addressed and the non-compliant nature

---

[32] On March 8, 2023, the City submitted a deficient document objecting to certain parts of the Monitor's 2022 Annual Report.  Doc. 675.  The Court ordered the City to file a corrected document by March 16, 2023.  *See* Mar. 9, 2023, Minute Order.  The City failed to do so.

[33] Doc. 694 at 21.

[34] *Id.*

[35] Doc. 694 at 21-22.  The Monitor's report included samples from 2022 and 2023.  *Id.* at 10.

[36] *Id.*  In addition to Consent Decrees Paragraphs 403 and 420, the Monitor deemed Paragraphs 377, 379, 381, 382, 383, 423, and 424 to be "not compliant."  Doc. 694 at 21-22.

[37] Doc. 682-16 at 6, 16.

[38] *Id.* at 11.

reflects the audited period only and not our current compliance."[39]  However, the City filed no evidence to show it has addressed these violations on a systemic level.

### D.  The Monitor's Role and Findings in the Vappie Investigation

On November 9, 2022, while the Monitor's 2022 PIB audit was ongoing, local news media in New Orleans published allegations that Officer Jeffrey Vappie, an NOPD member assigned to the Mayor's executive protection detail, may have inappropriately recorded his work hours and travel expenses.[40]  The news accounts suggested that Officer Vappie may have also been engaged in a personal relationship while on duty.[41]  PIB opened an investigation into Officer Vappie the same day these reports were published.  Shortly after opening the investigation, PIB received another complaint alleging that the executive protection detail was involved in "payroll fraud."[42]  As these events unfolded, the Monitor declined a request from City Council to investigate the allegations against Officer Vappie, but the Monitor informed the parties that it would closely assess the ongoing investigation to ensure compliance with the Consent Decree.[43]  The Monitor has closely assessed other investigations in the past to ensure compliance with the Consent Decree.[44]

---

[39] Doc. 697 at 6.  The City's response disputed the Monitor's findings regarding Consent Decree Paragraphs 381, 382, 383, and 424, but conceded the violations for Consent Decree Paragraphs 377, 379, 403, 420, and 423.
[40] Doc. 714 at 1; *see also* Zurik, Lee, "ZURIK: NOPD investigating officer frequently inside Cantrell's city-owned apartment," Fox 8 Live, Nov. 9, 2022, available at https://www.fox8live.com/2022/11/10/zurik-nopd-investigating-officer-frequently-inside-cantrells-city-ownedapartment/; Outside the Office Series, available at https://www.fox8live.com/news/investigate/lee-zurik/outside-theoffice/.
[41] *See* Outside the Office Series, available at https://www.fox8live.com/news/investigate/lee-zurik/outside-theoffice/.
[42] Doc. 714 at 5 (excerpting an email from Dr. Skip Gallagher in which he alleges that "payroll fraud is alive and well and extends into the upper ranks of the NOPD as well as the Mayor's own security detail.").  The Court Monitor provided this email to NOPD on December 8, 2022 (*see id.*), though the issue was previously included in public news reporting and the Court Monitor's meetings with NOPD.
[43] Doc. 714-1; Doc. 714-2.
[44] Doc. 735-1 (Jones Dep. 12:1-14).

As described above, under Paragraph 454, NOPD must provide the Monitor with "serious misconduct" investigations "before closing the investigation or communicating the recommended discipline to the subject of the investigation."[45]  "Serious misconduct" includes "criminal misconduct; unreasonable use of force; discriminatory policing; false arrest or planting evidence; untruthfulness/false statements; unlawful search; retaliation; sexual misconduct; domestic violence; and theft."[46]  Once provided to the Monitor, the Consent Decree requires the Monitor to review it, recommend further investigation if the Monitor determines the investigation is incomplete or the findings are not adequately supported, and provide written instructions for completing the investigation appropriately within the timeframes mandated by state law.[47]

Under Louisiana law, "public payroll fraud" is a criminal offense.[48]  As the Monitor noted, it involves "untruthfulness/false statements" and is considered a "type of theft."[49] Accordingly, throughout the Vappie investigation, the Monitor asserted its rights under Consent Decree Paragraph 454 and requested access to PIB's investigation report on Officer Vappie.  The Monitor further justified its request by citing to Paragraphs 470 and 472, the general access provisions of the Consent Decree described above.[50]  NOPD asserted that the allegations against Officer Vappie did not concern "serious misconduct" as defined by Consent Decree Paragraph 454, and, therefore, refused to provide the Monitor with access to the investigative report before closing the investigation.[51]

---

[45] Consent Decree ¶ 454.
[46] *Id.*
[47] *Id.*
[48] *See* La. R.S. 14:138; *see also* Doc. 735-2 (Allen Dep. 62:8-19); 735-3 (Sanchez Dep. 118:4-8).
[49] Doc. 714 at 6 and n.8 (citing *State v. Fruge*, 251 La. 283 (1967)).
[50] Doc. 714 at 8-11.
[51] *Id.* at 11.

On April 3, 2023, after the close of the investigation, NOPD provided the Vappie investigative report to the Monitor.[52]  On April 7, 2023, pursuant to Consent Decree Paragraph 454, the Monitor provided the City and NOPD a written assessment of the investigation.[53] NOPD responded to that assessment on April 24, 2023.[54]  On June 15, 2023, the Monitor issued a special report on PIB's handling of the Officer Vappie investigation (after providing the Parties the opportunity to review and comment on the report).[55]

In the report, the Monitor found NOPD's April 24, 2023, response to be "wholly inadequate in that it:  (a) ignored the requirements of Consent Decree paragraph 454, (b) mischaracterized the scope of the investigation regarding payroll fraud, and (c) ignored almost all of the Monitoring Team's substantive recommendations."[56]  The Monitor also specifically found that:  (1) the allegations against Officer Vappie amounted to "serious misconduct," and thus NOPD violated Consent Decree Paragraph 454 in refusing to provide the Monitor with the open investigation when requested; (2) NOPD violated Consent Decree Paragraphs 470 and 472 when it refused to provide the Monitor with access to investigative documents; (3) PIB failed to properly apply the preponderance of evidence standard and make all required credibility determinations as required by Consent Decree Paragraph 414 and NOPD Policy 51.2.1; (4) NOPD ignored circumstantial evidence that it was required to consider pursuant to Consent Decree Paragraph 413 and NOPD Policy 52.1.2; (5) NOPD failed to adequately respond to shortcomings in the investigation that the Monitor identified and for which

---

[52] *Id.* at 10-11. Even though NOPD did not provide the requested material to the Court Monitor, the City leaked recordings of some interviews to local media.  *See* Doc. 714, at 6, n.9.

[53] Doc. 714-5.

[54] Doc. 714-6.

[55] Doc. 714.  The Monitor also included an initial assessment of the investigation of Office Vappie in its May 3, 2023, Special Report on PIB, noting that the discipline phase of the investigation was not yet complete, and thus it could not yet share its full assessment and recommendations.  *See* Doc. 694 at 16.

[56] Doc. 714 at 2.

Consent Decree Paragraph 454 mandated a written response; (6) NOPD's handling of the interview recordings that were ultimately leaked to the press violated Consent Decree Paragraphs 409 and 419; and (7) NOPD's closure of its investigation without looking into the actions/inactions of Officer Vappie's chain of command prejudiced its ability to hold Vappie's supervisors accountable as required by Consent Decree Paragraph 306.[57]  NOPD filed a response to the Monitor's Special Report, largely disputing the Monitor's findings and asserting that NOPD properly followed all misconduct policies, procedures, and practices.[58]

On June 21, 2023, the Court conducted a status conference during which the Monitor presented its previously reported findings concerning the investigation of Officer Vappie, and the Court permitted the Parties to present their responses to those findings.[59]  During the status conference, the City's counsel made representations to the Court on the handling of the investigation of Officer Vappie, including assertions that the matter comported with the usual handling of administrative investigations and officer reassignments.[60]  Following the status conference, on June 30, 2023, the Court, through the Monitor, requested that the City provide documentary support for the assertions that the City made to the Court in its filed responses and during the status conference.[61]  Despite the Monitor's broad access provisions under Paragraphs 470 and 472, the City refused to respond to the Monitor's request and asked that the Court enter an order requiring production of the solicited information.[62]

---

[57] Doc. 714.  The Monitor also reported that NOPD likely violated Consent Decree paragraphs 390 and 399.  *See* Doc. 714 at 4, n.6, and 7.
[58] Doc. 718.  The Monitor's discussion of preponderance of the evidence standard cites "NOPD Policy 52.1.2."  *Id.* at 11.  This appears to be a typographical error and should have been 52.2.1, which is listed above.
[59] Doc. 726.
[60] *Id.*
[61] Doc. 734-2.
[62] *Id.*; Consent Decree ¶ 470-472.

### E. The Rule to Show Cause

On July 21, 2023, the Court entered the Rule.[63]  The Rule ordered the City to appear in Court "to show cause why it should not be found to have violated (1) the eight provisions of the Consent Decree with respect to the conduct of PIB investigations, as set forth above, and (2) the provisions of the Consent Decree regarding timeliness of investigations, imposition of discipline, and notification of complainants."[64]  The Rule also ordered the City to produce documents and ordered the Parties to submit a pre-hearing memoranda addressing the potential violations of the Decree as laid out in the Rule.[65]  In the Rule, the Court stated that a "finding that the City has not shown cause why it should not be found to be in violation of these provisions of the Consent Decree may, after notice and hearing, result in the City being held in contempt of Court and sanctioned."[66]

In response, the City first filed a petition for writ of mandamus on July 31, 2023,[67] and then filed objections to the Rule on August 7, 2023.[68]  The United States filed an opposition to the City's objections on August 11, 2023.[69]  The Court denied the City's objection and set a new schedule for briefing and a hearing concerning the Rule.[70]  In both the Rule and the Order denying the City's objection, the Court ordered the City to produce the requested documents and noted the City can avoid the imposition of any sanctions by showing that it has remedied the violations and put processes into place to "ensure future violations will not occur."[71]  The City has not shown that it has remediated the violations listed in the Court's Rule.

---

[63] Doc. 729.
[64] *Id.* at 11.
[65] *Id.* at 12.
[66] *Id.* at 11.
[67] *In re: City of New Orleans*, No. 23-30520 (5th Cir. July 31, 2023).
[68] Doc. 734.
[69] Doc. 735.
[70] Doc. 739.
[71] Doc. 729 at 11, n.44; Doc. 739 at 19, n.96.

On August 22, 2023, the City "reurged" its petition for writ of mandamus on essentially

the same grounds as the July 31, 2023, petition, including filing a Motion to Reopen its July 31,

2023 petition and requesting an administrative stay.[72]  The Fifth Circuit denied the City's Motion

to Reopen and Motion for a Stay on August 23, 2023.[73]  The City then filed its Response to the

Rule to Show Cause on August 25, 2023.[74]  On August 28, 2023, the Court issued multiple

orders requiring the City to file a supplemental response, supplemental briefing, and additional

documents by noon on August 28 and 29, 2023.[75] The City filed its supplemental responses on

August 28 and 29, 2023, attaching additional documents with its August 29, 2023 response.[76]

## III.   DISCUSSION

NOPD is in violation of the Consent Decree Misconduct provisions identified in the

Court's Rule to Show Cause.[77]

First, the City does not contest the Monitor's findings of ongoing, systemic non-

compliance with the Consent Decree's requirements for timely administrative investigations,

discipline, and complainant notifications, and it has provided no evidence that it has remediated

those findings.  This concession alone is sufficient to find a violation of Consent Decree

Paragraphs 403 and 420.

Second, the City failed to appropriately identify and classify allegations of payroll fraud

in the Vappie investigation and did not treat them as serious misconduct as required by the

---

[72] *In re: City of New Orleans,* 23-30520 (5th Cir. August 22, 2023), City of New Orleans' Emergency Motion to
Reopen and Reurge Petition for Writ of Mandamus, ECF No. 17-1. [73] *In re: City of New Orleans,* 23-30520 (5th Cir.
August 23, 2023), Unpublished Order, ECF No. 22-2.

[73] *In re: City of New Orleans,* 23-30520 (5th Cir. August 23, 2023), Unpublished Order, ECF No. 22-2.

[74] Doc. 740.

[75] Doc. 742; Doc. 744; Doc. 745.

[76] Doc. 743; Doc. 746. The United States has not been able to completely review all of the additional documentation
submitted by the City because of the limited time between these supplemental filings and the filing deadline for the
United States' pre-hearing memorandum.  If necessary, the United States will supplemental this brief as it completes
its review.

[77] Doc. 729.

Decree, leading to a cascading set of additional violations that hinge on this fundamental failure. These include violations of Paragraphs 306, 313, 399, 409, 413-15, 419, 454, 470, and 472.  The City's failures in this high-profile investigation raise serious concerns about the strength of NOPD's accountability system under stress.

### A.  The City Admits It Violated the Decree's Timeliness Requirements and Has Not Provided Evidence of Remediation

In its Response to the Rule to Show Cause, the City once again does not contest the Monitor's findings that it fails to comply with certain of the Decree's timeliness requirements, and it once again provides no evidence that it has fixed these problems.[78]  The Court's Rule to Show Cause requires the City to show why it should not be found to be in violation of Consent Decree Paragraph 403's timeliness requirements for completion of investigations and imposition of discipline, and Paragraph 420's requirements for timely notice to complainants.[79]  The Monitor has found violations of the Decree's timeliness requirements in multiple recent reports following its systemic audits of PIB, including the Monitor's PIB Report, the 2022 Annual Report, and the 2023 First Quarter Report.[80]  And significantly, the City admitted noncompliance with these requirements in its written response to the Monitor's report.[81]  In response to the Rule

---

[78] Doc. 740. The City argues that it met the Decree's timeliness requirements in the Vappie investigation, but it does not respond the Monitor's broader findings of lack of timeliness with Paragraph 403 and 420 as described in the Rule.

[79] Doc. 729 at 10.

[80] *Id.* at 10-11 (citing the Monitor's PIB Report, the 2022 Annual Report, and the 2023 First Quarter Report; *see* Doc. 674; Doc 702).  The Monitor's reports are admissible evidence.  *See, e.g., United States v. Hinds County*, 2022 U.S. Dist. LEXIS 25537, 2022 WL 439481 (S.D. Miss., Feb. 12, 2022) (relying on reports of a monitor jointly selected by the parties to an institutional reform consent decree); *Njones v. Gusman*, No. 12-859, 2014 U.S. Dist. LEXIS 35110 (E.D. La. June 6, 2013) (overruling City of New Orleans' objection to admissibility of a lead monitor's report).  This Court has previously ruled that a monitor's report is admissible evidence.  *See* Doc. 725 (admitting United States' exhibit 14 (Doc. 682-14) Monitor's audit report of INSIGHT and exhibit 16 (Doc. 682-16) Monitor's audit of PIB).  The City, itself, cites the Monitor's reports as documents on which the City may rely for the hearing of the Rule.  *See* Doc.740 at 27.

[81] *Id.* (citing Doc. 697 at 5). In response to the Court's Rule to Show Cause, the City attempts to contort the straightforward 30-day requirement of Paragraph 403 of the Consent Decree as it relates to the investigation of Officer Vappie. Paragraph 403 gives the City 30 days from when it closes its investigation to impose discipline. PIB

to Show Cause, the City neither denies that it engages in ongoing violations of these timeliness requirements, nor does it provide evidence that it has remedied these violations, effectively conceding that these systemic Consent Decree violations continue.

The City's noncompliance with the Consent Decree's timeliness requirements has been a perennial problem.[82]  In its discovery responses to the Motion to Terminate, the City admitted to a "backlog of disciplinary hearings and letters."[83]  In both 2021 and 2022, "the majority of disciplinary letters issued were over 30 days from the date the Superintendent of Police signed off on the penalty."[84]  NOPD had "19 delinquent investigations" in 2022, and "17 delinquent" investigations in 2021.[85]  The City also admitted that it is not sufficiently staffed to complete "timely misconduct investigations."[86]  The City further admitted that NOPD did not timely notify complainants of the outcome of misconduct investigations.[87]  In January 2023, Chief Sanchez stated that PIB had a backlog of disciplinary hearings that had not been heard.[88] Accordingly, the City is not in compliance with Paragraphs 403 and 420 of the Consent Decree.

---

closed the Vappie investigation on March 10, 2022, making the deadline to impose discipline April 9, 2022.  The City now asserts that they had until June 14, 2022, when the Superintendent approved a sustained finding, to impose discipline. Doc. 740 at 20.  The Consent Decree does not provide for this 96-day gap.  Thus, the Vappie investigation provides a clear example of the systemic violations identified by the Monitor and cited in the Court's Rule.

[82] Doc. 674 (Monitor's 2022 Annual Report on NOPD) at 51 ("Our audit revealed that an excessive number of investigations were not completed within prescribed timelines and NOPD had no justification for this noncompliance"); Doc. 694 (Monitor's Special Report on PIB) at 21-22 listing paragraphs 403 (Timely investigations/timely discipline) and 420 (Communication with complainant) as "Not Compliant" (emphasis in original).

[83] Doc. 680-7 (City's Responses to Requests for Admission Nos. 79, 80).

[84] *Id.* (City's Responses to Requests for Admission Nos. 86, 87).

[85] *Id.* (City's Responses to Requests for Admission Nos. 84, 85).

[86] *Id.* (City's Responses to Requests for Admission No. 82).

[87] *Id.* (City's Responses to Requests for Admission Nos. 88,  89).

[88] Doc. 735-3 (Sanchez Dep. 109:11-18).

**B. The Numerous Violations Identified by the Monitor Related to the Investigation of Officer Vappie Raise Concerns about the Reliability of NOPD's Accountability System**

In addition to the ongoing timeliness issues identified above, the Court's Rule to Show Cause also outlines several potential Consent Decree violations related to the investigation of Officer Jeffrey Vappie.  The Court should find the City in violation of these Consent Decree requirements.  Though City contends that NOPD investigated payroll fraud, NOPD did not list payroll fraud on the intake form, and the City now advances a circular argument that because payroll fraud was not listed on the intake form, NOPD is excused from carrying out other Consent Decree requirements for misconduct investigations because it did not document these allegations upon intake.[89]  These violations of Decree requirements include the City's deliberate withholding of the investigation report from the monitor until after the investigation was complete, resulting in the breakdown of the accountability systems set forth in the Decree and suggesting that violations will continue without intervention by the Court.

The City's argument that a single incident cannot violate the Decree is incorrect. The Decree expressly provides the Monitor with access to serious misconduct investigations because such investigations test whether NOPD's accountability system can withstand pressure during high-profile investigations.  The breakdowns in this high-profile investigation, particularly in light of the City's decision to shield the results of the investigation from the Monitor until after it was complete, undermine the Monitor's ability to ensure NOPD accountability as required by the Decree.

---

[89] Doc. 718 at 24 (stating "Payroll Fraud was Investigated"); Doc. 740-1 at 1-6; *see, e.g.*, Doc. 740 at 8.

1.  **The City Failed to Document Payroll Fraud on an Intake Form in Violation of Paragraph 399**

Despite numerous clear allegations that Officer Vappie had committed payroll fraud, NOPD failed to appropriately identify and classify that allegation on the intake form in violation of Paragraph 399.[90]  Paragraph 399 of the Consent Decree requires NOPD to identify and appropriately classify allegations of serious misconduct.  The proper identification of specific allegations is essential to meet other Consent Decree requirements related to misconduct investigations, such as recommending a required disposition as required by Paragraph 415.  In the case of serious misconduct, additional requirements apply, such as the responsibility to provide the report to the Monitor before concluding the investigation pursuant to Paragraph 454.  A failure to appropriately identify allegations can thus have a domino effect on NOPD's ability to comply with numerous Consent Decree requirements.

According to the lead investigator in the investigation of Officer Vappie, PIB's standard practice is to list all allegations known at the time in a short narrative summary on the notice of investigation form.[91]  Multiple complaints against Officer Vappie included allegations of payroll fraud – a charge indicating untruthfulness that constitutes potential serious misconduct, including potential criminal misconduct.[92]  PIB Deputy Chief Keith Sanchez has acknowledged that NOPD received an allegation from a community member that Officer Vappie may have been engaging

---

[90] Doc. 726 at 9:21-14:9.

[91] Doc. 735-2 (Allen Dep. 58:10-12).

[92] Under Louisiana law, "public payroll fraud" is a criminal offense.  *See* La. R.S. 14:138; *see also State v. Fruge*, 251 La. 283 (1967).  The City attempts to explain that the NOPD believed the payroll fraud allegation did not merit a criminal investigation by saying "Similar allegations have *always* been investigated as violations of duty and/or violations of the 16.58 hour rule." Doc. 718 at 23 (emphasis in original).  The statement is not true.  The City treated a prior allegation of attending to personal relationship during paid NOPD time as a truthfulness violation -- serious misconduct under the Consent Decree.  CD ¶¶ 399, 454; *See Dykes v. Department of Police*, Civil Service Commission, City of New Orleans, No. 7822, June 3, 2014, available at https://nola.gov/getattachment/4c26f89a-0e1e-428f-a5cc-ae11fc1b9288/Dykes,-Carey-7822/ (stating "Asst. Supt. Defillo testified that termination was the appropriate penalty because the Appointing Authority cannot employ an officer that is untruthful regarding his whereabouts and does not devote his entire time to duty").

in payroll fraud,[93] and that NOPD is obliged to investigate such allegations.[94]  Deputy Chief

Sanchez also admitted that PIB did not add a payroll fraud allegation after the Monitor raised

payroll fraud as an issue.[95]  There can be no doubt that NOPD was aware of an allegation of

payroll fraud that should have been thoroughly investigated.[96]

 The City's circular response to the Monitor's finding is unavailing.  NOPD asserts that it

did, in fact, investigate allegations against Vappie for payroll fraud, but it says it did not find the

allegation to have merit[97] and accordingly did not have an obligation to document the allegation

on the intake form.[98]  This is mere sophistry.  NOPD knew there were allegations of payroll

fraud and failed to document them on the intake form, violating Paragraph 399 of the Decree.

### 2. The City Deliberately Withheld the Investigative Report to the Monitor in Violation of Paragraphs 454, 470 and 472

 The City's failure to appropriately include all allegations on the intake form, including

allegations of payroll fraud, resulted in numerous additional violations of the Decree, including

Paragraph 454.  As described above, Consent Decree Paragraph 454 requires the City and NOPD

to provide each investigation of a complaint involving "serious misconduct" to the Monitor

before closing the investigation so that the Monitor may review it and recommend further

investigation if it is incomplete or not supported by a preponderance of the evidence.  The

Decree anticipates that the Monitor will have a meaningful opportunity to weigh in while there is

still time to affect the outcome of the investigation.  While Paragraph 454 applies only where

---

[93] Doc. 735-3 (Sanchez Dep. at 123:10-18).
[94] *Id.* at 65:1-22, 66:15-19.
[95] *Id.* at 129:7-15.
[96] This was not the only undocumented allegation. Chief Sanchez also admitted that PIB's the notice of formal disciplinary investigation against Officer Vappie did not include an allegation of violation of NOPD Chapter 13.38 – Nepotism and Employment Conflicts, Doc. 735-3 (Sanchez Dep. 77:13-21), even though Chief Sanchez authorized Officer Vappie's transfer from Executive Protection based on such a conflict.  *Id.* 79:5-13.
[97] Doc. 718 at 24-26 ("Payroll Fraud was Investigated").
[98] Doc. 726 at 12-13.

there is "serious misconduct,"[99] the City does not dispute that it was aware of clear allegations of payroll fraud against Officer Vappie, which falls squarely within the specific categories enumerated in Paragraph 454 as constituting serious misconduct.[100]  Further, even absent an allegation of serious misconduct, Paragraphs 470 and 472 provide the Monitor with "full and direct access" to "all documents and data" and all "individuals, facilities, and documents" it deems necessary to carrying out its duties under the Consent Decree.  Thus, the Monitor had a right to the draft report regardless of whether it involved allegations of serious misconduct.

Despite the City's affirmative obligation to provide the open investigative file to the Monitor before closing the investigation, and despite the Monitor's clear right of access and numerous requests over the course of months for the draft report, the City withheld the report until several weeks *after* completing the investigation and providing the report to Officer Vappie.[101]  The City does not refute that it withheld the draft report until well after the investigation had been concluded.[102]  Instead, it relies on its spurious argument that because it did not list payroll fraud as an allegation on the intake form, the investigation did not involve "serious misconduct" as defined by Paragraph 454.[103]  The City need not reach a finding of payroll fraud or serious misconduct for the provisions on serious misconduct investigations set forth in Paragraph 454 to apply.  Indeed, the point of Paragraph 454 is to ensure that such allegations are adequately investigated, which cannot occur if the City can simply avoid the

---

[99] Captain Allen, who supervised PIB investigations for over a year, admits that he has never seen the categorization of complaints that Consent Decree Paragraphs 399 and 454 require. *See* Doc. 735-2 (Allen Dep. 68:18-25, 69:1-2); *see also id.* at 73:10-12 (stating he has never classified anything as serious misconduct)).

[100] Paragraph 454 enumerates several categories of serious misconduct: "criminal misconduct; unreasonable use of force; discriminatory policing; false arrest or planting evidence; untruthfulness/false statements; unlawful search; retaliation; sexual misconduct; domestic violence; and theft." Payroll fraud involves at least two of these categories: untruthfulness/false statements and theft.  *See* Doc. 726 at 28.

[101] Doc. 735-3 (Sanchez Dep. 89:23-25 – 90:1-9); Doc 714 at 3-7; Doc. 726 at 32.

[102] *See* Doc. 740 at 15-17.

[103] *Id.*

requirements of the Paragraph by concluding at the end of the investigation that there was no serious misconduct.  The City's actions had the effect of unilaterally blocking an important Consent Decree process that ensures that serious misconduct is appropriately investigated, particularly during a high-profile investigation.

The City's awareness that the Vappie investigation included allegations of payroll fraud, along with the Monitor's repeated requests to the City for the investigative report, shows that the City's decision to withhold the investigative report was deliberate.  As we explained in our opposition to the City's objections to the Rule to Show Cause, even single purposeful violations can indicate that the systems set up by the Consent Decree are subject to manipulation, when the Decree requires a "fair and consistent" accountability system.[104]  If it were otherwise, the City could shield targeted, purposeful violations from scrutiny and therefore pick and choose when to follow the Consent Decree, which would render the Decree meaningless.

### 3. The City's Failure to Comply with Paragraphs 399 and 454 Resulted in Subsequent Consent Decree Violations

The City's failure to identify all allegations as required by Paragraph 399, as well as its failure to treat this as a "serious misconduct" investigation, resulted in numerous additional violations of the Decree regarding misconduct investigations as set forth in the Monitor's reports and the Court's Rule.  These types of violations are precisely the harm that Paragraph 454 was designed to prevent by giving the Monitor access to the investigative report before it became final, so that subsequent, cascading violations could be remedied.  These include violations of Paragraphs 413, 414, 415, 420, 306 and 313:

---

[104] Doc 735 at 17; Consent Decree Section XVII; ¶¶ 421, 424.

Paragraph 413.  The Monitor alleges that PIB failed to collect and consider all circumstantial evidence in its investigation of Officer Vappie in violation of Paragraph 413.[105] For example, the City admits that it did not seek a search warrant for Officer Vappie's private phone,[106] which it attempts to excuse by asserting that PIB simply doesn't search private phones in administrative investigations.[107]  But the City admitted that it did not even know what information Officer Vappie maintained on his personal phone.  Indeed, it is unclear whether investigators asked Officer Vappie if he conducted NOPD business on his personal cell phone.[108] Such an inquiry would have at least provided information about whether a search warrant would have been appropriate under these circumstances.  The Monitor also identified potential witnesses who were not interviewed, including a consultant to NOPD and an elected official.[109] However challenging it may be to interview appropriate witnesses in high-profile investigations, ultimately, the duty to comply with the Consent Decree rests with the City.  Elected officials and agents of the City are bound by the Consent Decree's requirements just like NOPD officers are.[110]

Paragraph 414.  The Monitor also found that the City failed to reach a conclusion as to whether each allegation against Officer Vappie was proven by a preponderance of the evidence in accordance with Paragraph 414 of the Consent Decree.[111]  Captain Allen admitted that investigators are required to document all investigated rule violations in their reports.[112]

---

[105] Doc 714 at 14-16; Doc 726 at 20:15-25:2.
[106] Doc. 718 at 32.
[107] Id.
[108] Doc. 735-3 (Sanchez Dep. 129:25-133:7).
[109] Doc. 726 at 45:15-48:14.
[110] Consent Decree ¶ 8.
[111] Doc 729 at 6; Doc 726 at 17:10-20:14.
[112] Doc. 735-2 (Allen Dep. 86:9-12).

Although the City contends that payroll fraud was investigated,[113] NOPD did not document reaching a conclusion on this allegation by preponderance of the evidence. [114]

Paragraph 415. The Monitor found that NOPD violated Paragraph 415 because it failed to recommend a disposition for the payroll fraud allegation.[115] NOPD contends that it did not violate Paragraph 415 because no the payroll fraud allegation was listed on the Intake Form, even though it was supposedly investigated.[116] To put it another way, the City asserts that it need only comply with the Consent Decree provisions for the allegations that it chooses to document, even if the undocumented allegations involve serious misconduct. Such a position is untenable.

Paragraph 420. Paragraph 420 requires the City to timely provide notice to complainants of the status of the investigation. The City asserts that there was no complainant to notify because the complaint about Officer Vappie was "rank initiated," i.e., it came only internally from NOPD.[117] This characterization ignores the facts contained in the City's own investigative file that the complaint was initiated based on a community media inquiry[118] and a second community complaint followed from a local professor.[119] The City does not attempt to explain the lack of timely notice to these individuals.

Paragraphs 306 and 313. The Monitor found that NOPD failed to meet the requirements of Consent Decree Paragraphs 306 and 313, by failing to determine whether it was necessary to hold Officer Vappie's supervisors accountable as part of its investigation. Under Paragraph 306

---

[113] Doc. 726 at 14-15.
[114] Doc 726 at 17:10-20:14.
[115] Doc 729 at 6; Doc 726 at 14:10-17:9.
[116] Doc. 740 at 7-9.
[117] Doc. 740 at 22-23.
[118] Doc. 714-4 at 2.
[119] Doc. 740-1 at 85-92

and 313, supervisors are required to appropriately respond to misconduct, and NOPD is required to hold supervisors accountable for the quality and effectiveness of their supervision.  If a misconduct investigation finds violations, NOPD is required to consider whether a lack of supervision contributed to the violations.  Here, the City admits that NOPD did not look into the actions of Officer Vappie's chain of command.[120]  The City asserts this is because NOPD is only required to look at the conduct of supervisors if there is serious disciplinary action – i.e., a suspension exceeding 20 days.[121]  This is inaccurate; the Decree creates no such exception in Paragraph 313, and NOPD policy does not prevent such review, it only automatically triggers a review of involved supervisors if there are serious disciplinary actions.[122]  But even if it were, the City's failure to correctly classify the allegations as serious misconduct in the first place, however, led to this outcome and allows the City to avoid its obligations to investigate failures in the chain of command.

### 4.  The City Admits Other Violations of the Consent Decree that It Has Not Remedied

Finally, the Monitor also identified concerns that the City failed to take appropriate steps to maintain the confidentiality of the investigation in violation of Paragraphs 409 and 419 when sharing recordings from the investigation of Officer Vappie.[123]  The City admits that the City Attorney's Office "had an error" and leaked investigative material that was supposed to have been confidential.[124]  Since then, PIB has not put into place written protocols to prevent future leaks.[125]  Because the City admits that it breached confidentiality in this investigation and has not

---

[120] Doc. 726 at 36; Doc. 726 at 97-98; Doc. 735-3 (Sanchez Dep. 95:19-25 – 96:1-24).
[121] Doc. 740 at 20.
[122] Consent Decree ¶ 313; *see also* Consent Decree ¶306; NOPD Policy, Chapter 1.3.8.
[123] Doc. 726 at 33:14-36:1.
[124] Doc. 726 at 97:15-21; *see also* Doc. 735-3 (Sanchez Dep. 43:3-6); Doc. 740 at 19.
[125] Doc. 735-3 (Sanchez Dep. 108:1-11).

put in place a protocol to prevent future leaks, the Court should find the City in violation of the

Decree.

## IV.   CONCLUSION

For the foregoing reasons, the Court should find the City in violation of the provisions of

the Consent Decree regarding NOPD's accountability system as set forth in the Rule to Show

Cause: 306, 313, 399, 403, 409, 413-15, 419-20, 454, 470, and 472.


Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
TIMOTHY D. MYGATT (DC 1021564)
Deputy Chief

/s/ Jonas Geissler
R. JONAS GEISSLER (NJ 025752001)
MEGAN R. MARKS (NY 5495676)
MEHVEEN RIAZ (DC 1030021)
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel.: (202) 353-8866
Email: jonas.geissler@usdoj.gov

*Attorneys for the United States*

## United States' Index of Exhibits for the Hearing

**Docketed Exhibits (not attached to brief but may be used at hearing):**

1. Doc. 565:  Amended and Restated Consent Decree

2. Doc. 674-1:  Court Monitor's 2022 Annual Report, at p. 50 (Monitor's assessment of Section XXII. Misconduct Complaint Intake, Investigation, and Adjudication finding lack of PIB quality assurance unit and backlog of complaint notification and disciplinary hearing since 2019)

3. Doc. 675:  NOPD Response to the 2022 Annual Report of the Consent Decree Monitor (showing no response to the Monitor's assessment of Section XXII. Misconduct Complaint Intake, Investigation, and Adjudication)

4. Doc. 682-5:  City of New Orleans Response to Request for Admission (admitting delays in timely investigation and discipline, and admitting insufficient staffing for timely investigations)

5. Doc. 682-16:  Audit of 46 PIB Administrative Investigations November 4, 2022 Audit Dates: October 24 – October 27, 2022 OCDM Viverette and McNeilly

6. Doc. 694:  Office of the Consent Decree Monitor's Report on the New Orleans Police Department Public Integrity Bureau 3 May 2023

7. Doc. 697:  Response to OCDM Report on the New Orleans Police Department Public Integrity Bureau April 2023

8. Doc. 714:  Court Monitor's June 5, 2023 Report Concerning the Investigation of Officer Vappie

9. Doc. 714-1:  City Council Letter to Monitoring Team

10. Doc. 714-2:  Monitoring Team's Response to City Council

11. Doc. 714-3:  Monitor's Immediate Action Notice to NOPD

12. Doc. 714-4:  PIB Investigation Report Regarding Officer Vappie

13. Doc. 714-5:  Monitoring Team's Analysis of PIB Report

14. Doc. 714-6:  NOPD Response to Monitoring Team Analysis

15. Doc. 715:  United States' Response to the Court Monitor's Reports on New Orleans Police Department's Investigation into Allegations against Officer Jeffrey Vappie

16. Doc. 718:  Response of the City and NOPD to the Monitor's Report Regarding the Investigation of Officer Vappie

17. Doc. 725:  Order Order (admitting United States' ex. 14 (Doc. 682-14) an OCDM audit report of INSIGHT and ex. 16 (Doc. 682-16) an OCDM audit of PIB)

18. Doc. 726:  Transcript of June 21, 2023 Status Conference Concerning Monitor's Reports of PIB Non-Compliance

19. Doc. 729:  Rule to Show Cause

20. Doc. 733:  Fifth Circuit Court of Appeals Order Denying Petition for Writ of Mandamus

21. Doc. 734:  Objections to Rule to Show Cause by the City of New Orleans

22. Doc. 734-2:  Email Chain Between Jonathan Aronie and Charlie Zimmer (showing City's refusal to provide requested documents)

23. Doc. 735-1:  Deposition Transcript of Lieutenant Lawrence Jones

24. Doc. 735-2:  Deposition Transcript of Captain Kendrick C. Allen, Sr.

25. Doc. 735-3:  Deposition Transcript of Deputy Chief Keith Sanchez

26. Doc. 736:  Report of the Consent Decree Monitor for the New Orleans Police Department Consent Decree Covering the Second Quarter of 2023 Released August 14, 2023

27. Doc. 740-1 pages 85-90:  Initiation of a Formal Disciplinary Investigation 2022-0566-P

28. Doc. 740 page 240-226:  Letter to Ship Gallagher March 7, 2023

29. Doc. 740-1 page 227:  Interoffice Correspondence dated March 28, 2023

30. Doc. 740-6 pages 102-111:  Interview of Takasheba Lane-Hart

31. Doc. 740-7 page 1-2:  Emails with Fausto Pichardo Jan. 25, 2023

32. Doc. 746-1 pages 29-138:  PIB Standard Operating Procedures

**Non-Docketed Exhibits (attached to brief and may be used at hearing):**

1. Initiation of a Formal Disciplinary Investigation (Deposition Exhibit 2)

2. Letter from Office of Independent Police Monitor Regrading Breach of Security (Deposition Exhibit 5)

3. PIB CTN# 2022-0350-P investigative report sustaining allegations for manipulating timelines of SIS investigations (Deposition Exhibit 6)

4. Email chain from Professor Skip Gallagher Alleging Payroll Fraud (Deposition Exhibit 7)

5. NOPD Chapter 1.3.8 – Serious Disciplinary Action Review Board (Deposition Exhibit 8)

6. NOPD Chapter 52.1.1 – Misconduct Complaint Intake and Investigation (Deposition Exhibit 9)

7. NOPD Chapter 13.38 – Nepotism and Employment Conflicts

8. Formal Disciplinary Investigation Transmittal PIB Control # 2022-0513-R (Deposition Exhibit 10)

**Certificate of Service**

I hereby certify that on August 29, 2023, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on all counsel of record in this matter.

/s/ Jonas Geissler

28