# DEPARTMENT OF POLICE
## INTEROFFICE CORRESPONDENCE

**TO:** Shaun D. Ferguson        **DATE:** 12/15/2022
Superintendent of Police
**FROM:** Christopher D. Goodly
Chief Deputy Superintendent, Field Operations Bureau
**SUBJECT:** Cover Letter for PIB CTN 2022-0350-P

Superintendent,

The enclosed document contains the formal disciplinary investigation under PIB Control #2022-0350-P. This administrative investigation was completed by Captain LeJon Roberts, which will hereinafter be referred to as the investigator.

Upon review of the investigation, the undersigned discovered the following facts and circumstances which the case investigator concluded and outlined in the following synopsis:

**Case Synopsis:**

On Thursday, July 28, 2022, Attorney Eric Hessler filed a complaint regarding formal disciplinary investigation 2020-0012-R involving his client, Octavio Baldassaro. The investigation was assigned to Captain Sabrina Richardson who was assigned to the Public Integrity Bureau. Attorney Hessler's complaint was launched to determine why the cognizance date on CTN 2020-0012-P was listed as Thursday, January 9, 2020.

Attorney Hessler stated the Public Integrity Bureau has 120 days to complete an administration investigation and that did not happen as it relates to his client, Octavio Baldassaro. Attorney Hessler advised the initial complaint was made Friday, August 16, 2019. The investigation was not completed unit May 20, 2020, approximately 278 days later, which may have violated his client's Police Officer's Bill of Rights.

On Friday, August 16, 2019, Stella Cziment, Deputy Independent Police Monitor, sent an email to Captain Sabrina Richardson and Deputy Superintendent Arlinda Westbrook regarding an anonymous complaint on Octavio Baldassaro and Jamie Roach. IPM, Stella Cziment, requested the complaint be handled as a sensitive complaint and recommended the Special Investigation Section (SIS), conduct surveillance to obtain evidence to corroborate with the complaint.

On Monday, November 4, 2019, IPM, Stella Cziment, sent an email to Captain Sabrina Richardson, to check the status on the anonymous complaint. Captain Richardson acknowledged and forwarded the email to Lieutenant Precious Banks, PIB Intake.

On Tuesday, November 5, 2019, Lt. Banks advised no record of receiving the complaint. Captain Richardson advised she did not receive the email on Friday, August 16, 2019.

On Tuesday, November 5, 2019, Lt. Banks then notified Deputy Superintendent Arlinda Westbrook of the complaint. Deputy Superintendent Arlinda Westbrook gave the authorization for SIS to commence a covert investigation and instructed SIS not to obtain a control number until the investigation was complete.

The investigator concluded that under the direction and guidance of the Deputy Superintendent Arlinda Westbrook, Captain Sabrina Richardson indicated the cognizance date on the form as Thursday, January 9, 2020.

## Analysis Finding(s):

In the Formal Disciplinary Investigation (CTN#2022-0350-P), the investigator made the following recommendation:

### Captain Sabrina Richardson

Captain Sabrina Richardson was **"Not Sustained"** for the violation of Rule 4: Performance of Duty, Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with instruction, oral or written, from any authoritative source, to wit NOPD Chapter 82.1, Report Preparation, Paragraph 8, which states members shall not suppress, conceal or distort the facts of any reported incident, nor shall any members make an intentionally false, inaccurate or incomplete report orally or in writing.

After reviewing the case facts, the undersigned concurs with the disposition rendered by the investigator against the accused employee.

However, the investigator included recommendations of additional sustained violations against a former NOPD employee, Deputy Superintendent Arlinda Westbrook, which the investigator may have erred while conducting the investigation.  The undersigned believes the investigator erred within this investigation as follows:

On Friday, September 23, 2022, Deputy Superintendent Arlinda Westbrook separated from service as member of the New Orleans Police Department.  It should also be noted that Chief Westbrook was a non-commissioned member of the New Orleans Police Department and not governed by the Louisiana Police Officer's Bill of Rights.

On Friday, October 14, 2022, Captain LeJon Roberts interviewed former Deputy Superintendent Arlinda Westbrook as a potential witness for the investigation.  During the interview, the investigator provided information to the former employee of providing testimony for this investigation under the auspices of job forfeiture, which she was no longer employed.

Upon conducting the interview and reviewing the information, the investigator provided the following recommendations for additional violations regarding a former employee as follows:

### Deputy Superintendent Arlinda Westbrook

"V1: Rule 2: Moral Conduct; Paragraph 1; Adherence to Law to with La. R.S. 40:2531- Rights of law enforcement officers, paragraph B (7) which states Except as otherwise provided in this Paragraph, each investigation of a law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within the complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the officer who is under investigation. The officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension.

If the board finds that the municipal police department has shown good cause for the granting of an extension of time within to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity. *Deputy Superintendent Westbrook violated this law when she authorized the use of the SIS unit to conduct a convert surveillance and not cut a control number when the PIB gained knowledge of the matter in the investigation authored under FDI #2020-0012-R. This ultimately delayed the case causing disciplinary action taken in the investigation to be overturned by Civil Service Commission".* ……………… **SUSTAINED**

"V2: Rule 4: Performance of Duty, Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with instruction, oral or written, from any authoritative source to with NOPD Chapter 82.1, Report Preparation, paragraph 8, which states members shall not suppress, conceal, or distort the facts of any reported incident, nor shall any member make an intentionally false, inaccurate, or incomplete report orally or in writing. *Deputy Superintendent Westbrook violated this rule when she signed off on the formal disciplinary investigation documented under FDI# 2022-0012-R knowing the facts were not accurate and distorted. The anonymous complaint came in on August 16, 2019, and acknowledge on November 9, 2019, and the transmittal form had a date of cognizance of allegation of January 9, 2020. These facts were knowingly not factual, but Deputy Superintendent Westbrook still signed off on the investigation because she authored the control number to be cut on January 9, 2020".* …………………………...**SUSTAINED**

While analyzing the case facts and circumstances, the investigator determined former Deputy Superintendent Arlinda Westbrook may be culpable for this incident in which the complaint derived. Once this investigator established this belief, the investigator should have notified his immediate supervisor and/or the Public Integrity Bureau with his findings for guidance.

## Credibility Assessment

Additionally, while conducting credibility assessments for all parties within the investigation, the investigator indicated that former Deputy Superintendent Arlinda Westbrook was 'not credible'.

Upon review of former Deputy Superintendent Arlinda Westbrook's statement and information provided in the investigation, the undersigned DID NOT find any issues with her credibility. As the undersigned reviewed and assessed this area, it appears Arlinda Westbrook fully cooperated with the investigator, answered all questions fully and to the best of her ability, therefore the undersigned deems Arlinda Westbrook to be a **CREDIBLE** witness as it pertains to this investigation.

PIB CTN# 2022-0350-P

Page **4** of **4**

### Recommendation:

After reviewing this case and based on the preponderance of evidence derived from the investigation, the undersigned concurs that former employee, Deputy Superintendent Arlinda Westbrook, may have culpability in this matter and she appears to have provided direction and guidance on the issuance of the cognizance date for subordinates under her command during her tenure as the Deputy Superintendent of the Public Integrity Bureau for the New Orleans Police Department.

However, the rendering of any recommendations of sustained department violations should be considered **MOOT** as the allegations were derived after the accused individual was no longer employed by the New Orleans Police Department.

Respectfully Submitted,

Christopher D. Goodly
Chief Deputy Superintendent
Field Operations Bureau
New Orleans Police Department

CONCUR / DOES NOT CONCUR

12/23/22 For

Shaun D. Ferguson
Superintendent of Police
New Orleans Police Department

# DEPARTMENT OF POLICE

# INTEROFFICE CORRESPONDENCE

**To:** Shaun D. Ferguson                  **Date:** 10/24/2022

      Superintendent of Police

**From:** LeJon M. Roberts

      Captain, Special Operations Division

**Subject:** PIB Control #2022-0350-P

      Accused: Sabrina Richardson, Employee ID# 011613

      Captain, Third Police District

## INTRODUCTION

On Friday, August 26, 2022, Captain LeJon M. Roberts of the Special Operations Division was assigned a formal disciplinary investigation (FDI) by Chief Deputy Superintendent, Christopher Goodly, of the Field Operations Bureau **(Exhibit B)**. Captain Roberts reviewed all the information included in the FDI packet including the due date of October 10, 2022, listed on the original transmittal form **(EXHIBIT A)**.

Through review of the contents in the FDI packet, Captain Roberts learned that Captain Sabrina Richardson is accused of failing to complete a formal disciplinary investigation (FDI) within the allotted time frame and using an inaccurate date of cognizance of allegation on a formal disciplinary investigation she authored in 2020 on Commander Octavio Baldassaro and Sergeant Jamie Roach both assigned to the Eight Police District at the time.

Based on the allegations made by the complainant, Captain Sabrina Richardson is accused of **Rule 4: Performance of Duty, Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with instructions, oral or written, from any authoritative source, to wit NOPD Chapter 82.1, Report Preparation, paragraph 8, which states members shall not suppress, conceal or distort the facts of any reported incident, nor shall any member make an intentionally false, inaccurate or incomplete report orally or in writing.** This allegation stems from the accused Captain possibly having knowledge of an anonymous complaint received from the Independent Police Monitor via emails on said dates in 2019 versus what was written as

Investigator's Initials

the date of cognizance of allegation on the Formal Disciplinary Investigation Transmittal form, and in the formal disciplinary investigation authored by Commander Richardson in May of 2020.

Captain Roberts immediately filed for an extension request on August 28, 2022, at 8:23 pm to get additional time to do a complete and thorough investigation of FDI 2022-0350-P. An extension for the investigation was granted to Captain Roberts on Tuesday, September 13, 2022, making the new due date of the investigation Wednesday November 9, 2022

**(EXHIBIT C).**

**BRIEF SYNOPSIS**

On Thursday, July 28, 2022, Mr. Eric Hessler arrived at the Public Integrity Bureau to file an official complaint concerning the handling of a formal disciplinary investigation on his client, Octavio Baldassaro. The complaint involving Octavio Baldassaro was handled and completed by Captain Sabrina Richardson on May 20, 2020. Captain Richardson was assigned to the Public Integrity Bureau at the time she investigated the case.

Mr. Hessler wanted an investigation launched to determine why the date of cognizance of allegation on the formal disciplinary investigation transmittal form **(EXHIBIT A)**, had a date of 01/09/2020. Mr. Hessler continued to state that an anonymous complaint was sent by the Deputy Independent Police Monitor, Stella Cziment, on 8/16/2019 via email as an attachment to Deputy Chief Arlinda Westbrook and Captain Sabrina Richardson both assigned to the Public Integrity Bureau at the time. The email from the Deputy IPM requested that the Public Integrity Bureau handle the anonymous complaint using its normal protocol for "sensitive complaints." The police monitor also recommended that SIS, Special Investigative Section, do surveillance on both Octavio Baldassaro and Jamie Roach to see any evidence could be obtained to corroborate the anonymous complaint.

Mr. Hessler continued to state that the Public Integrity Bureau has 120 days to complete the report/investigation on an administrative case, and that did not happen as it relates to his client, Octavio Baldassaro. Mr. Hessler continued to state that Octavio Baldassaro's case involving the anonymous complaint sent to the PIB on August 16, 2019, was not turned in until May 20, 2020, approximately 278 days later. Mr. Hessler noted that state law concerning the Police Officer's

Investigator's Initials

Bill of Rights may have been violated because of this investigation, and he wanted the matter investigated by someone other than an employee of the Public Integrity Bureau. This investigation will focus on why the date of cognizance of allegation was listed as 01/09/2020 when the anonymous complaint was sent on Monday August 16, 2020, and acknowledged by Captain Richardson on November 4, 2019.

## ALLEGATIONS

Based on the initial statement given by Mr. Eric Hessler on July 28, 2022, Captain Sabrina Richardson may be in violation of **Rule 4:  Performance of Duty, Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with instructions, oral or written, from any authoritative source, to wit NOPD Chapter 82.1, Report Preparation, paragraph 8, which states members shall not suppress, conceal or distort the facts of any reported incident, nor shall any member make an intentionally false, inaccurate or incomplete report orally or in writing** if she knowingly and intentionally made the cognizance of allegation date 01/09/2020 when she received the anonymous complaint referral on August 16, 2019 and acknowledged receipt of the complaint on November 4, 2019.

## INVESTIGATION

The complainant, Mr. Eric Hessler, arrived at the Public Integrity Bureau office located at 1340 Poydras Street, Ste. #900 on July 28, 2022, to file a formal complaint concerning the timeliness of an investigation done on his client, Octavio Baldassaro, in 2020. The complaint centered on the fact that his client, former Eight District Police Captain, Octavio Baldassaro, case was not investigated and completed in the allotted timeframe.

On September 19, 2022, Captain Roberts prepared an introduction letter to Mr. Hessler advising that he would be investigating the complaint he filed on July 28, 2022, at the PIB office **(EXHIBIT D).** The letter was sent via certified mail by SOD A-Case officer, Nakeisha Barnes. While making the formal complaint at the PIB, Mr. Hessler brought several email copies to corroborate his complaint **(EXHIBIT B)**. The first email Mr. Hessler brought with him was from the Deputy Police Monitor, Stella Cziment. The email was sent on August 16, 2019, at

Investigator's Initials

1:48 pm to Arlinda Westbrook and Sabrina Richardson. Susan Hutson and Abe Lowe were Cc'd
on the email. The email stated the following:

*Good afternoon, Chief Westbrook and Commander Richardson:*

*I hope this email finds you well. We received an anonymous complaint regarding Commander*
*Baldassaro and wanted to forward it directly to you. We request PIB process this complaint*
*using its normal protocol for "sensitive complaints." If you have any questions, please feel free*
*to reach out to me or Abe Lowe IV.*

*Thank you,*

*Stella*

The second email Mr. Hessler brought to PIB when he made his complaint was on November 4,
2019, at approximately 4:37 pm, 81 days after the email was sent on August 16, 2019, at 1:48
pm. The email was sent from Stella Cziment to Sabrina Richardson ONLY, which stated the
following:

*Good afternoon, Commander Richardson,*

*I hope this email finds you well. I went online to try to check on the status of this complaint and*
*I couldn't find it in IAPro. Do you know the status of this complaint? Any assistance would be*
*greatly appreciated it.*

*Thanks!*

*Stella*

Captain Roberts contacted Kimberly W. LaGrue of the Information Technology & Innovation
department for the City of New Orleans to request several email threads from Sabrina
Richardson, Arlinda Westbrook, and Precious Banks during the time frame of August 2019 thru
January 9, 2020 **(EXHIBIT E)**. The email request was made to verify the emails were accurate
and true that Mr. Hessler presented to the PIB. Also, to obtain any other emails that would be
pertinent to the investigation. On September 22, 2022, at 9:55 am, Captain Roberts received the
requested emails from the Information Technology & Innovation department and deemed that

Investigator's Initials _____

the emails brought to PIB by Mr. Hessler to corroborate his complaint were true, accurate, and concise **(EXHIBIT F)**. Also, Captain Roberts learned from ITI that there was no way to verify if emails were opened by individuals once sent to their queue.

Captain Roberts also discovered in the requested emails received from ITI the following information: On November 4, 2019, at approximately 5:07 pm, approximately 30 minutes later from the 4:37 pm email sent by Mrs. Stella Cziment that Captain Sabrina Richardson replied to her email and stated the following:

*Stella,*
*This is my first time seeing this complaint! I will look into it first thing in the morning*

Captain Roberts then learned that on November 5, 2022, at approximately 10:24 am, Captain Sabrina Richardson forwards the anonymous complaint referral that was emailed to her on August 16, 2019, and on November 4, 2019, to Lt. Precious Banks, assigned the intake division of the PIB. The email from Captain Richardson to Lt. Banks stated the following:

*Please check database and see if intake was ever done on this*

Approximately 32 minutes later at 10:56 am on November 5, 2019, Lt. Banks replies to Captain Richardson and states the following:

*No record of receiving this complaint*

Captain Roberts now had to find out how the date 01/09/2020 was used as the date of cognizance of allegation on the transmittal investigative form **(EXHIBIT A)**, when the case was sent on August 16, 2019, and acknowledged on November 4, 2019, by Captain Richardson. Captain Roberts at that time began to send out emails to several people that needed to be interviewed as part of the investigation as potential witnesses, or who may have in depth knowledge involving particulars surrounding the investigation documented under FDI 2020-0012-R involving then Commander Baldassaro and Sergeant Jamie Roach.

Investigator's Initials 

**Statement of Stella Cziment**

On Tuesday September 6, 2022, Captain Roberts emailed Mrs. Stella Cziment of the OIPM to advise her that he was handling a formal disciplinary complaint on Captain Sabrina Richardson and wanted to interview her as a witness in the investigation. Mrs. Cziment replied on Thursday September 8, 2022, and stated she would be available on September 22, 2022, at 11:00am to give a statement concerning the investigation **(EXHIBIT G).**

On Thursday September 22, 2022, at approximately 12:10 pm, Captain Roberts met with Mrs. Stella Cziment, the Independent Police Monitor for the New Orleans Police Department to take an audio recorded witness statement regarding the alleged complaint filed against Captain Sabrina Richardson. The statement was conducted at 1899 Tchoupitoulas Street at the SOD compound. Mrs. Cziment brought Deputy Independent Police Monitor, Bonycle Sokunbi, to monitor the statement she was giving to Captain LeJon Roberts regarding the investigation.

The following is a summary of Independent Police Monitor Stella Cziment's statement: Mrs. Cziment stated that her role in the Public Integrity Bureau in 2019 and 2020 was the Deputy Independent Police Monitor. She was a part of the complaints and discipline department, and that she also submitted complaints to the Public Integrity Bureau received by the OIPM. Mrs. Cziment also stated that she monitored and reviewed disciplinary matters.

Mrs. Cziment continued to state that when she received the anonymous complaint concerning Octavio Baldasarro and Jamie Roach in August of 2019, she immediately texted Chief Arlinda Westbrook on Friday August 16, 2019, at 10:04 am **(EXHIBIT H)**. Mrs. Cziment brought a copy of the text message she sent to Chief Arlinda Westbrook at the time, which was time stamped August 16, 2019, at 10:04 am.

The text message sent was advising Deputy Chief Westbrook of the fact that the OIPM received two sensitive complaints and wanted to send them both directly to Chief Westbrook instead of Lt. Precious Banks at the time because of the nature of the complaints. Mrs. Cziment

Investigator's Initials

advised Chief Westbrook in the text message that she wanted to give Chief Westbrook a heads up about the complaints, and if she wanted her to include Captain Richardson on the referral email. Mrs. Cziment did not have a reply from Chief Westbrook concerning the text message she sent involving the case on Octavio Baldasssaro.

Mrs. Cziment also informed Captain Roberts that sometime in August 2019, uncertain of the exact date, she had a conversation with then IPM Susan Hutson and Chief Arlinda Westbrook regarding the anonymous complaint referral. She did not have any notes from the meeting to substantiate her recollection of the conversation. Mrs. Cziment also advised that IPM Susan Hutson had some concerns about behavioral patterns concerning Octavio Baldassaro during the conversation and wanted the Special Investigations Section (SIS) to aid in the investigation by conducting a possible surveillance to see what the relationship between Octavio Baldassaro and Jamie Roach was.

I asked Mrs. Cziment did she have any prior conversations or discussions about the anonymous complaint referral with Captain Sabrina Richardson after she acknowledged the email sent on November 4, 2019, and she stated that she could not recall. However, Mrs. Cziment did advise that in the coming month, most likely December, she did gain knowledge that SIS had some involvement in the complaint investigation. Mrs. Cziment also advised that she learned that the complaint was then being handled administratively because SIS had issues conducting surveillance on the matter due to Jamie Roach residing in a gated community across the lake. Mrs. Cziment continued to inform Captain Roberts that SIS was conducting investigation prior to the start of the administrative violation.

Mrs. Cziment stated that she spoke with Chief Arlinda Westbrook regarding the tardiness of this investigation and raised the concern that there may be potential timeline issues that could possibly violate the Officer's Bill of Rights. Mrs. Cziment advised that Chief Westbrook told her that the case was potentially considered criminal and that the date of cognizance of allegation would be the day the complaint was no longer deemed criminal, and an administrative investigation could begin.

Investigator's Initials _____

Mrs. Cziment continued to advise Captain Roberts that the practice of doing that leaves gaps in time that are confusing. Mrs. Cziment states that the SIS investigation in this case involving Baldasarro leaves out information that could explain date differences. Mrs. Cziment states that she has had previous discussions with Chief Westbrook in the past, meaning the cutting of control numbers after SIS does their investigation and using the cognizance of allegation date as the date SIS completes their investigation.

However, Mrs. Cziment advised that Chief Westbrook disagreed with her thought process concerning the arguments that she presented regarding the timeline of the investigation and when cognizance of allegations dates should be cut. Mrs. Cziment also advised that this complaint was not handled in a timely manner.

**Statement of Former Deputy Chief Arlinda Westbrook**

On Friday October 14, 2022, at approximately 11:21 am, Captain Roberts met with Deputy Chief Arlinda Westbrook at City Hall on the ninth floor in the Chief Administrator's Office conference room to interview her as a witness in the formal disciplinary investigation involving Captain Sabrina Richardson. Captain Roberts sent Deputy Chief Arlinda Westbrook an email on Friday September 23, 2022, at 2:31 pm requesting a date and time that was feasible to her to give a statement in the formal disciplinary investigation regarding Captain Sabrina Richards documented under FDI 2022-0350-P.

Before Captain Roberts took an audio recorded statement from Deputy Chief Arlinda Westbrook, she signed a notice to render statement form **(EXHIBIT I)**. The following is a summary of Deputy Chief Arlinda Westbrook's statement to Captain Roberts: Deputy Chief Arlinda Westbrook stated that she remembers Captain Richardson coming to her and advising her sometime after the November 5, 2019 date, and advising her that she received the anonymous complaint from the OIPM via email. Deputy Chief Arlinda Westbrook stated that Captain Richardson was always up front with her, especially when there was a potential error that occurred. Deputy Chief Arlinda Westbrook continued to state that Captain Richardson had concerns about potential glitches with the email system.

Investigator's Initials

Deputy Chief Arlinda Westbrook advised Captain Sabrina Richardson to contact Mrs. Stella
Cziment to see if they could develop a better protocol for sending referral complaints over to the
PIB, and to ensure that intake or the proper recipients receive them.

Captain Roberts asked Deputy Chief Arlinda Westbrook if she instructed SIS to start working
on anonymous complaint referral regarding Octavio Baldassaro and Jamie Roach, and she
replied that she did not have recollection on this case, but she does order SIS to conduct
surveillance on multiple cases. Deputy Chief Arlinda Westbrook continued to state that she
believed this was one of the cases that intake took upon themselves to request SIS to start an
investigation on, and she had to counsel SIS for taking on assignments without her consent in the
past. Captain Roberts asked Deputy Chief Arlinda Westbrook if there was any official
documentation regarding the counseling session for this incident, and she stated it was only a
talking session, but if there was any documentation it would have been handled by Captain
Sabrina Richardson.

Arlinda Westbrook stated that 99% of the time, when SIS is involved in a case a control
number is not immediately cut, and they report back all findings to her. Deputy Chief Arlinda
Westbrook continued to state that she did have some discussions with SIS involving some
particulars about this case. She remembers she discussed with them the fact that they could not
get in the gated apartment complex of Jamie Roach to do surveillance.

Deputy Chief Arlinda Westbrook advised Captain Roberts that there was conversation
between herself and Captain Richardson regarding when a control number would be cut
regarding this case. Deputy Chief Arlinda Westbrook stated that if SIS made any
recommendations regarding this case after their investigation was completed a control number
would probably be cut. Deputy Chief Arlinda Westbrook stated that she had discussions about
this case and needed to have some levels of surveillance done to move forward with the
investigation.

Investigator's Initials

Captain Roberts asked Deputy Chief Arlinda Westbrook is there any measures in place to safeguard the lapse in time, or to justify the fact that SIS's involvement delays the actual date of cognizance of allegation in formal disciplinary investigations. Deputy Chief Westbrook replied that after the Jennifer Dupree case, corrective action had to be taken, and you are probably going to see standard operating procedures (SOP's) regarding SIS involvement in cases going forward. She continues to state that SIS investigations in the past did not start the commencement of an investigation because of the covert measures they used to gather evidence. Deputy Chief Arlinda Westbrook advised Captain Roberts at the 25:50 mark of the taped interview, that state law involving the Officer's Bill of Rights is violated if the investigation goes past 60 or 120 days.

**Statement of Precious Banks**

Captain Roberts sent out an email on Friday September 23, 2022, requesting that Captain Banks give a few dates and times in the upcoming week that would be feasible to her to give a witness statement involving the investigation concerning Captain Richardson. Captain Banks replied and advised that she would be available on Thursday September 29, 2022, to give her statement.

Captain Roberts began an audio taped interview of witness Precious Banks at the SOD compound, located at 1899 Tchoupitoulas Street on Thursday September 29, 2022, at 2:59 pm after she signed her notice to render statement **(EXHIBIT J).** Captain Banks brought her attorney with her, Ted Alpaugh, to witness her statement. The following is a summary of Captain Banks witness statement:

Captain Banks advised Captain Roberts that she was the intake lieutenant in the PIB in 2019 and 2020, and her primary job was to process complaints of employee misconduct. Captain Banks stated that she received the anonymous complaint on then Commander Octavio Baldassaro and Sergeant Jamie Roach on Tuesday November 5, 2019, at 10:56 am after it was forwarded to her from Captain Sabrina Richardson.

Investigator's Initials ___

Captain Banks stated that she reviewed the complaint and the recommendations from the OIPM. Since the OIPM recommended using SIS to do surveillance, she immediately notified Chief Arlinda Westbrook. Captain Banks at that time advised Captain Roberts that Chief Arlinda Westbrook granted permission to use SIS to do surveillance, and NOT to cut a control number until SIS was finished with their surveillance. Captain Banks stated that this was not an uncommon practice when using SIS.

Captain Banks continued to state that when SIS is involved control numbers are not issued until Chief Westbrook gives you the green light to do so. Also, when control numbers are cut, the date used as the cognizance of allegation is the date that Chief Westbrook gave the green light to do so.

Captain Banks stated that the reason for this practice is because when a control number is cut, most likely an extension request is filed. When an extension request is filed, the accused officer is notified of an ongoing investigation involving him or her. Usually, the accused officer or the accused officer's attorney will attend the extension hearing, and the allegations against him or her would be revealed. Captain Banks advised that to keep behaviors if there are any from changing on an accused employee, the control number is not cut until the surveillance is done in effort not to interfere with SIS covert operations.

Captain Banks continued to state that on January 9, 2022, she was instructed by Chief Arlinda Westbrook to cut the control number on the investigation regarding Octavio Baldassaro and Jamie Roach. She stated that she was having a conversation with Captain Richardson on that day regarding the case, and Chief Westbrook was contacted via cell phone from what she could recall. Chief Westbrook at that time advised Captain Banks to cut the control number to begin the administrative investigation.

**Statement of Sabrina Richardson**

On Monday October 3, 2022, at Captain Roberts interviewed accused employee Sabrina Richardson at the SOD compound, located at 1899 Tchoupitoulas Street in the captain's office.

Investigator's Initials _____

Captain Richardson signed the notice to render statement form presented to her by Captain Roberts before her audio taped statement began on Monday October 3, 2022, at 12:30 pm. **(EXHIBIT K).** Her attorney, Kevin Boshea was present during the taking of her statement. Captain Roberts advised Captain Richardson of her rights while under investigation as per Louisiana Revised Statute 40:2531. Captain Roberts also advised Captain Richardson of her requirement to answer all questions truthfully and to the best of her knowledge per departmental chapter 52.1.1. Captain Richardson acknowledged both her rights as well as these requirements before the commencement of the statement.

The following is a summary of Captain Richardson's statement regarding the complaint filed against her: Captain Richardson advised Captain Roberts that she first saw the anonymous complaint sent by the OIPM on Monday November 4, 2019, at 5:07 pm. Captain Richardson stated that once she saw the email with the attached anonymous complaint sent by Deputy Independent Police Monitor, Stella Cziment, she advised Stella Cziment that it was her first time seeing the anonymous complaint, and that she would further review it in the morning. Captain Richardson stated that she forwarded the anonymous complaint to the PIB intake lieutenant, Precious Banks, on Tuesday November 5, 2019, at 10:24 am to see if they had any knowledge of the complaint.

Captain Richardson advised that Lt. Banks responded to her email on Tuesday November 5, 2019, at 10:56 am advising her that she had no record of receiving the complaint. Captain Richardson stated that she then contacted Chief Arlinda Westbrook to find out if she received the initial email sent on Friday August 16, 2019, at approximately 1:48 pm, and to find out if she had knowledge of the anonymous complaint involving Commander Octavio Baldassaro and Sergeant Jamie Roach. Also, Captain Richardson wanted to inform Chief Westbrook of the particulars of the investigation, and to see if she had knowledge about it.

Captain Richardson continued to advise Captain Roberts that Chief Arlinda Westbrook stated that she did not receive the August 16, 2019, email sent from the OIPM. Captain Richardson also stated that she informed Chief Westbrook that the complaint recommended SIS conduct surveillance due to the allegations made by the anonymous complainant. Captain Richardson

Investigator's Initials 

advised Captain Roberts that only the Superintendent of Police or Chief Westbrook could give SIS orders to conduct an operation or surveillance. Captain Richardson also informed Captain Roberts that all complaints involving captains, commanders, and deputy chiefs would have been brought to Arlinda Westbrook's attention, and she would be the only one to authorize the cutting of a control number.

Captain Richardson also advised Captain Roberts that there was conversation held between herself, Stella Cziment, and Arlinda Westbrook regarding the case and the delay of the cutting of the control number. Also, since SIS was involved in the case, Lieutenant Precious Banks had to get authorization from Chief Arlinda Westbrook before cutting a control number. Captain Roberts asked Captain Richardson one last time before concluding the interview, did Chief Arlinda Westbrook authorize the cutting of the control number on January 9, 2020, and Captain Richardson replied, "YES!"

**Statement of Wayne Jacques**

Captain Roberts sent out an email on Monday, October 23, 2022, requesting that Sergeant Wayne Jacque give a few dates and times in the upcoming week that would be feasible to him to give a witness statement involving the investigation concerning Captain Richardson. On Thursday, October 13, 2022, at approximately 2:09 pm, Captain Roberts interviewed Sergeant Wayne Jacque as a witness in the FDI lodged against Captain Richardson after he signed a notice to render statement form **(EXHIBIT L).** The interview was conducted at the SOD compound, located at 1899 Tchoupitoulas Street, in the captain's office.

The following is a summary of Sergeant Wayne Jacque's audio taped statement: Sergeant Jacque advised Captain Roberts that in 2019 he was assigned to the Public Integrity Bureau's Special Investigative Section as a sergeant. Sergeant Jacque continued to advise Captain Roberts that he remembers the anonymous complaint referral received by the PIB in 2019 involving Commander Octavio Baldassaro and Sergeant Jamie Roach, and he states he assigned the case to retired Detective Carl Thibodeaux of the SIS of the PIB to further investigate the anonymous complaint. Sergeant Jacque could not remember when the he received the anonymous complaint

Investigator's Initials _____

and assigned it out to a detective for further investigation. Sergeant Jacque stated that he remembered that SIS was tasked with trying to see if Sergeant Jamie Roach's car was parked at the Mandeville, La. address.

Captain Roberts asked Sergeant Jacque if he reported any findings involving the case back to anyone, and he advised that if there were any findings, it would have been related back to Chief Westbrook. Sergeant Jacque also stated that all instructions involving SIS matters come from the Deputy Chief of the PIB. Lastly, Sergeant Jacque stated that Chief Westbrook makes the call and determines when control numbers on cases are cut once SIS does their investigation and reports their findings.

**Statement of Kendrick Allen**

Captain Roberts sent out an email on Friday, September 23, 2022, requesting that Captain Kendrick Allen give a few dates and times in the upcoming week that would be feasible to him to give a witness statement involving the investigation concerning Captain Richardson. On Monday, September 26, 2022, at approximately 1:13 pm, Captain Roberts interviewed Captain Kendrick Allen as a witness in the FDI lodged against Captain Richardson after he signed a notice to render statement form prior to his statement on Friday, September 23, 2022 **(EXHIBIT M).** The interview was conducted at the SOD compound, located at 1899 Tchoupitoulas Street, in the captain's office. The following is a summary of Captain Allen's audio taped statement to Captain Roberts as an expert witness to the PIB day to day operations, and as the current PIB Captain:

Captain Allen stated that the date of cognizance on the original transmittal form should always be the date when knowledge of the allegation was gained. Captain Allen continued to state that when date of cognizance is listed on the original transmittal form, the time clock starts in an administrative case. Captain Allen also stated that when the investigation timeframe exceeds the allotted timeframe in an administrative investigation, the investigation should still be done, but no discipline should be given because of the investigation's allotted timeframe expired.

Investigator's Initials

**Statement of Eric Hessler**

On Friday, September 23, 2022, at approximately 11:52 am, Captain Roberts reached out to
complainant, Eric Hessler, via email asking to meet with him to obtain a statement from him
regarding the complaint he filed against Captain Sabrina Richardson on July 28, 2022, at the PIB
office.

On Monday, September 26, 2022, at approximately 11:03 am, Captain Roberts interviewed
complainant, Mr. Eric Hessler, at 320 N. Carrollton Avenue, Ste. #202 as it relates to the formal
disciplinary investigation, he filed on then Captain Sabrina Richardson. The following is a
summary of Mr. Eric Hessler's audio taped statement to Captain Roberts:

Mr. Hessler stated that while preparing for a hearing involving his client, Octavio Baldassaro,
who was the target of an investigation that had been sustained against him, he noticed some
discrepancies in the timeline of events as it relates to the investigation. While investigating the
case Mr. Hessler stated he became concerned about the dates involving the case so he filed a
public records request to obtain further information that the OIPM may have on the case. Mr.
Hessler continued to state that he received several emails from the OIPM after he filed the public
records request, and he brought them with him to the PIB office on July 28, 2022, when he filed
the formal complaint.

Mr. Hessler stated that the emails he received were from August 2019 and November 2019
**(EXHIBIT B).** Mr. Hessler continued to state that it was evident that Captain Richardson
received the email on November 4, 2019, at 5:07 pm because she acknowledged it. Mr. Hessler
also makes notice to the fact that there was no mention of the November date in the report, or no
reference to it anywhere, and he wanted to know, why?

Mr. Hessler also mentions that he knows once the PIB is notified of the complaint, the control
number should be cut immediately. Also, he referred that it was a violation of state law to have
discipline culminated against his client after he learned this information was possibly concealed
or left out. Also, the date of cognizance on the OIPM complaint referral form has the date of

Investigator's Initials

August 16, 2019, but it was never mentioned or explained. Lastly, Mr. Hessler stated that he wanted to see system work fair and for the system to be respected, but that was not done in the case involving his client, Octavio Baldassaro.

## Statement of Susan Hutson

On Monday, September 26, 2022, at approximately 3:40 pm, Captain Roberts met with former Orleans Parish Independent Police Monitor, Susan Hutson, to obtain a witness statement from her regarding the formal disciplinary investigation filed against Captain Sabrina Richardson. Captain Roberts met now Sheriff Susan Hutson at her office, located at 2800 Perdido Street, Building A on the 4th floor in her office to take the statement. The following is a summary of former OIPM Susan Hutson's audio taped statement:

Former OIPM Susan Hutson stated that she remembers receiving the anonymous complaint on Octavio Baldassaro in 2019 and remembers forwarding the complaint to Deputy IPM Stella Cziment at the time. Former IPM Susan Hutson advised that she probably had some conversation with Chief Arlinda Westbrook regarding this case but could not actually recall when. However, she stated that Mrs. Stella Cziment would have had conversations about the case with either Chief Westbrook or Captain Richardson.

Former IPM Susan Hutson stated that they sent over the case in August of 2019 and not in January of 2020. She continues to state that she does not really know how all the cognizance dates with the PIB work, but she does remember PIB having a couple of weeks by state law to work on determining how they are going to process the case. Also, former IPM Susan Hutson did not know why the investigation on this complaint took so long to commence, but she did mention that on high profile cases like the one with Octavio Baldassaro there would have been follow up with Captain Richardson or Westbrook to get status updates.

## Statement of Abe Lowe IV

Investigator's Initials _L_

On Monday, September 26, 2022, at approximately 3:08 pm, Captain Roberts contacted Mr. Abe Lowe, former employee of the OIPM regarding giving a statement to him regarding the formal disciplinary investigation involving Captain Richardson. On October 13, 2022, at approximately 3:14 pm, Captain Roberts met with Mr. Abe Lowe to obtain a statement from him at the Orleans Parish Juvenile Justice Center, located at 1100 Milton Street, Complex B. The following is a summary of Mr. Abe Lowe's audio taped statement given to Captain Roberts:

Mr. Lowe stated that in 2019 and 2020 he was a complaint intake specialist for the OIPM. He remembers being Cc'd on the email sent by former Deputy IPM Stella Cziment, which was sent to Captain Richardson and Arlinda Westbrook on August 16, 2019. He continues to state that the email was his only involvement to the complaint. He did not recall having any conversations about the case or being looped in any other emails regarding the complaint

## CREDIBILITY ASSESSMENTS

Captain Roberts sent out an email request on Monday, September 19, 2022, at 2:46 pm to Sergeant Denise Wilts requesting the accused, Captain Richardson, short form **(EXHIBIT N)**. On November 3, 2022, Captain Roberts then requested via the PIB short forms on witnesses, Sergeant Wayne Jacque, Deputy Chief Arlinda Westbrook, Captain Precious Banks, and Captain Kendrick Allen **(EXHIBIT O)**.

**Sabrina Richardson**

Captain Richardson was deemed credible in her statement to Captain Roberts. Captain Richardson received an email on Monday, November 4, 2019, at 4:37 pm from the Deputy IPM, Stella Cziment, inquiring about the status of an anonymous complaint referral that was sent 81 days prior on Friday, August 16, 2019, at 1:48 pm. The email Captain Richardson received was sent by Mrs. Stella Cziment was inquiring about the status of complaint on Commander Octavio Baldassaro and Sergeant Jamie Roach of the Eight District for possible misconduct violations.

Investigator's Initials _____

Sergeant Wayne Jacque was deemed credible in his statement to Captain Roberts. Sergeant Jacque's statement was consistent with that of Captain Richardson and Captain Banks when he said that Chief Westbrook is the only person that can authorize the SIS to investigate, and that once their investigation is done Chief Westbrook is the person who orders the cutting of the control number. Sergeant Jacque also stated that SIS was involved in this case, and that his detective brought their investigative findings back to Chief Westbrook, who would have authorized the cutting of the control number so the administrative investigation could commence, which was deemed credible. A review of Sergeant Wayne Jacque's PIB record revealed no sustained complaints for professionalism or allegations of untruthfulness in his career.

**Kendrick Allen**

Captain Allen was deemed credible in his statement to Captain Roberts. Captain Allen was knowledgeable in the PIB process for handling complaints. Captain Allen stated that in administrative cases where the investigation goes over the allotted timeframe, the investigation will still be handled, but no discipline should be issued to the officer. As the Commander of the PIB, Captain Allen stated forthright the particulars of how tardy administrative cases should be handled, which was deemed credible. A review of Captain Allen's PIB record revealed one unfounded complaint for professionalism in 2012, and no sustained complaints or allegations of untruthfulness in his career history.

**Susan Hutson**

Susan Hutson was deemed credible in her statement to Captain Roberts. Susan Hutson stated that she could not recall the dates, but she knew that she had some conversations with Chief Westbrook and Stella Cziment regarding the complaint was deemed credible. Susan Hutson stated that Stella Cziment would have done follow up on the case with Chief Westbrook and Captain Richardson, which was true and deemed credible as well based on Stella Cziment's statement to Captain Roberts.

Investigator's Initials

**Arlinda Westbrook**

Arlinda Westbrook was deemed not credible in her statement to Captain Roberts. Arlinda Westbrook stated that she did not recall if she gave SIS the green light to start investigating this case, which was deemed not credible because Captain Richardson, Captain Banks, and Sergeant Wayne Jacque all stated different. They all stated that Chief Westbrook is the only one who can authorize SIS to begin an investigation. Chief Westbrook also states that she did not receive the complaint until Captain Richardson brought it to her attention on November 5, 2019, which was also deemed not credible either because Deputy IPM Stella Cziment stated that she had conversations with her and Susan Hutson in August concerning the complaint and about Captain Baldassaro's behavior pattern.

Chief Westbrook also stated that this is a case that SIS probably took upon themselves to start investigating, which is also not credible. Sergeant Wayne Jacque who is the sergeant over SIS stated that Chief Westbrook is the only one who can authorize them to investigate a case. Chief Westbrook also stated that she counseled SIS for doing investigations without her authorization in the past, but there is no documentation in the SFL log or formal disciplinary investigation done to prove this. Chief Westbrook stated that the counseling session with SIS was most likely done verbally, which was all not credible.

Chief Arlinda Westbrook did state that if an investigation passes the 60 or 120 days mark it is a violation of the Officer's Bill of Rights or state law. Based on the statements of Captain Richardson, Captain Banks, and Wayne Jacque, Chief Westbrook instructed SIS to start an investigation in the Octavio Baldassaro's FDI, and not to cut the control number immediately once the cognizance of allegation was determined, but denies that, which is also creates a credibility issue on her behalf.

An analysis of Chief Westbrook's PIB record revealed that she has a pending investigation for honesty and truthfulness pending from 2021 and two professionalism complaints pending investigation from 2022.

Investigator's Initials

**Abe Lowe IV**

Abe Lowe was deemed credible in his statement to Captain Roberts. Mr. Lowe stated that he
was Cc'd in the initial complaint email sent to Captain Richardson and Chief Westbrook
concerning the anonymous complaint referral in August of 2019. Mr. Lowe stated that was his
only involvement in the investigation, and he had no further information on the matter. Mr.
Lowe was worked for the OIPM in August of 2019 and was deemed credible in his statement.

**Eric Hessler**

Mr. Hessler was deemed credible in his statement to Captain Roberts. Mr. Hessler brought
corroboration evidence from a public records request, which were emails between Captain
Richardson and Chief Arlinda Westbrook from Deputy IPM Stella Cziment concerning the
anonymous complaint referral sent in August 2019. Mr. Hessler's emails were proven to be true
and accurate, which enhanced his credibility factor. Mr. Hessler wanted the case to be
investigated to see if state law was violated, and to ensure investigations are done correctly and
that the PIB process is respected.

## SUMMARY

On Monday, August 16, 2019, at 1:48 pm, an email was sent from the OIPM to Captain
Richardson and Chief Arlinda Westbrook with an anonymous complaint referral attached to it.
The anonymous complaint referral involved then Commander Ocatavio Baldassaro and Sergeant
Jamie Roach of the Eight Police District, alleging both of misconduct and inappropriate
behavior. The complaint referral from the OIPM requested SIS conduct a surveillance to further
investigate the allegations.

Approximately 81 days later Monday, November 4, 2019, at 4:37 pm, Deputy IPM Stella
Cziment sends a follow-up email requesting to know the status of the anonymous complaint
referral sent on August 16, 2019. Captain Richardson replies to the follow up email on Monday,

Investigator's Initials

November 4, 2019, at 5:07 pm, 30 mins later, and advises Stella Cziment that it was her first time seeing the complaint and that she would look at it first thing in the morning.

On Tuesday, November 5, 2019, at approximately 10:24 am Captain Richardson forwards the anonymous complaint referral to Lt. Precious Banks of the PIB intake unit at the time, asking her to check the database to see if intake was ever done on the complaint referral. Lt. Banks replies the same day on Tuesday, November 5, 2019, at 10:56 am that she had no record of receiving the complaint. Lt. Banks after reading the anonymous complaint referral saw that the OIPM recommended SIS conduct surveillance on Commander Octavio Baldassaro and Sergeant Jamie Roach both Eight District.

Lt. Banks then notified Chief Westbrook that the OIPM recommended that SIS be utilized in the investigation process of the case. Chief Westbrook then gives SIS the green light to commence a covert investigation into the anonymous complaint and instructs the SIS unit not to cut a control number until their covert investigation is complete. This is corroborated by Captain Richardson and Precious Banks in their formal statements to Captain Roberts. Stella Cziment also stated that she had knowledge that SIS was involved in the investigation sometime in December of 2019 after a meeting with Chief Westbrook and Captain Richardson.

On January 9, 2020, a control number was cut for the anonymous complaint that was sent from the OIPM on August 16, 2019. Keep in mind that the anonymous complaint referral was acknowledged by Captain Sabrina Richardson on November 4, 2019, approximately 81 days later after it was sent from the OIPM.

The reason behind the delay in the cutting of the control number was the fact that Chief Westbrook instructed SIS to conduct a covert operation to see if any evidence could be obtained to substantiate or validate the anonymous complaint. However, that was a violation of state law.

Once knowledge is gained of the actual complaint, the date of cognizance of the allegation in an investigation requires that a control number be cut, which starts the timeclock on the investigation. Preventing a control number from being cut to utilize SIS to gain corroborating

Investigator's Initials ___

evidence or substantiate a complaint does not justify the actions taken. Once again it violates state law.

In this case, Captain Octavio Baldassaro's discipline was overturned by Civil Service because of not cutting the control number once the PIB gained knowledge of the complaint. This case could have been still investigated; however, no discipline should have been issued due to the timeframe it took for the investigation to commence. Chief Westbrook signed off on this case on May 21, 2020, approximately 280 days later knowing all the particulars of the investigation. It was evident that this investigation was extremely late, and there was no mention of why the date of cognizance of allegation on the transmittal form was listed as January 9, 2020, in the report authored by Captain Richardson. It is a known fact that the anonymous complaint came in on August 16, 2019, via email, and that date that is listed on the complaint referral from the OIPM says the same. It is also listed as an exhibit in the investigation Captain Richardson authored.

This case was not handled in the allotted timeframe because of the covert operation conducted by SIS. If this is a common practice, or the culture of the PIB by not cutting a control number and not starting investigations once knowledge is gained of a complaint directly violates state law. Two of the witnesses and the accused stated that orders to cut a control number come from Deputy Chief Westbrook when SIS is involved in an investigation. Captain Richardson was merely following orders from Chief Westbrook in this matter. Following instructions from an authoritative source. Captain Banks and Sergeant Wayne Jacque also followed orders from Deputy Chief Westbrook as it relates to this investigation. The entire investigation remained on hold until Deputy Chief Arlinda Westbrook gave the green light to move forward and start investigating the case administratively.

Captain Richardson authored the FDI concerning the anonymous complaint on Octavio Baldassaro when she got the green light from Deputy Chief Arlinda Westbrook to do so. Captain Richardson did not mention the cognizance date of January 9, 2020 in the FDI she authored under control #2020-0012- R because it was the normal practice of doing thing in the PIB, it was the standard operating procedure to start the administrative investigation once SIS was completed with theirs. Utilizing SIS to gain additional corroborating evidence or to

Investigator's Initials

substantiate a case, and not cutting a control number until they report back findings is unlawful.
Chief Westbrook is responsible for the actions of the SIS unit. The practice of doing this has
been done in the past, and it appears to be the culture of the PIB. As a result of this practice, the
Officer's Bill of Rights will always be violated, and the accused officers will win their discipline
back on appeal from the Civil Service Commission.

The forty-five-day letter to Mr. Eric Hessler was sent to him via certified mail on October 31,
2022, letting him know that his complaint is still actively being investigated (**EXHIBIT P**).

## TRAINING, TACTICAL, AND/OR POLICY RECOMMENDATIONS

There should be a policy written or standard operating procedures that outline the parameters
of which the SIS unit operates within the PIB. The current way the SIS unit operates is violating
state law under the Officer's Bill of Rights. Utilizing SIS to gain further evidence or substantiate
a case and not cutting a control number until their investigation is finished must be revisited,
revised, and done within the scope of the law.

The Civil Service Commission should have key input into this policy, and the Deputy Chief
of the Public Integrity Bureau should ensure that the timeframe gaps in an investigation
involving SIS are outlined in the formal disciplinary investigation before approving cases. This
would ensure that when questions arise involving allotted timeframes in an investigation,
answers will be available. The policy should also outline who orders the SIS to commence an
investigation, and there should a second party identified to second the motion. Both parties
should also be responsible for the actions of the SIS unit, and able to justify when they are given
the green light to commence an investigation.

## DISCIPLINARY RECOMMENDATIONS

**Captain Richardson**

Captain Richardson was initially accused of violating **Rule 4: Performance of Duty,
Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with
instructions, oral or written, from any authoritative source, to wit NOPD Chapter 82.1,**

**Report Preparation, paragraph 8, which states members shall not suppress, conceal or
distort the facts of any reported incident, nor shall any member make an intentionally
false, inaccurate or incomplete report orally or in writing** Captain Richardson merely acted
on instructions from an authoritative source from Deputy Chief Arlinda Westbrook when she
used the date of January 9, 2020 as the date of cognizance of allegation when authoring the FDI
documented under control #2020-0012.  The allegation was sustained on Deputy Chief Arlinda
Westbrook and not Captain Richardson.  The violation occurred but was not a result of Captain
Richardson violating departmental policy.............................**NOT SUSTAINED**

The investigation clearly outlines Captain Richardson's reason for making the date of
cognizance of allegation January 9, 2020, on the FDI she authored under control #2020-0012-R.
Captain Richardson was merely acting on instructions from an authoritative source.  She was
ordered by Deputy Chief Arlinda Westbrook not to cut the control number and not to begin the
administrative investigation until the SIS unit conducted a covert operation to gain evidence/ and
or corroborate or substantiate the allegations against then Commander Octavio Baldassoro and
Sergeant Jamie Roach.  The instructions from an authoritative source were given by Deputy
Chief Arlinda Westbrook, who also gave the same instructions to Captain Precious Banks.
Captain Richardson began the investigation when she was given the green light to do so on
January 9, 2020, by Deputy Chief Arlinda Westbrook.

## ADDITIONAL ACCUSED AND SUSTAINED VIOLATIONS

**Former Deputy Chief Arlinda Westbrook**

**V1:  Rule 2:  Moral Conduct; Paragraph 1; Adherence to Law to wit La. R. S. 40:2531-
Rights of law enforcement officers, paragraph B (7) which states Except as otherwise
provided in this Paragraph, each investigation of a law enforcement officer which is
conducted under the provisions of this Chapter shall be completed within sixty days.
However, in each municipality which is subject to a Municipal Fire and Police Civil
Service law, the municipal police department may petition the Municipal Fire and Police
Civil Service Board for an extension of the time within which to complete the investigation.**

Investigator's Initials

 The board shall set the matter for hearing and shall provide notice of the hearing to the officer who is under investigation.  The officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension.  If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days.  Nothing contained in this Paragraph shall be construed to prohibit the law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days.  Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity.  Chief Westbrook violated this law when she authorized the use of the SIS unit to conduct a covert surveillance and not to cut a control number when the PIB gained knowledge of the matter in the investigation authored under FDI #2020-0012-R.  This ultimately delayed the case causing disciplinary action taken in the investigation to be overturned by the Civil Service Commission**..................................................................……......SUSTAINED**

**V2:  Rule 4:  Performance of Duty, Paragraph 4; Neglect of Duty, subsection (c) paragraph 6, failing to comply with instructions, oral or written, from any authoritative source to wit NOPD Chapter 82.1, Report Preparation, paragraph 8, which states members shall not suppress, conceal, or distort the facts of any reported incident, nor shall any member make an intentionally false, inaccurate, or incomplete report orally or in writing** Chief Westbrook violated this rule when she signed off on the formal disciplinary investigation documented under FDI #2020-0012-R knowing the facts were not accurate and distorted.  The anonymous complaint came in on August 16, 2019, and acknowledged on November 4, 2019, and the transmittal form had a date of cognizance of allegation of January 9, 2020.  These facts were knowingly not factual, but Chief Westbrook still signed off on the investigation because she authored the control number to be cut on January 9, 2020**……….………………SUSTAINED**

Former Deputy Chief Arlinda Westbrook may have also violated **Rule IX, Section 1, Paragraph 1.1**, of the City Civil Service Rules relative to Maintaining Standards of Service.

Investigator's Initials

*It should be noted that former Deputy Chief Arlinda Westbrook was not issued a notice to the accused of completed investigation and notice of pre-disciplinary hearing form since she is no longer an employee of the New Orleans Police Department.*

Investigator's Initials

Respectfully Submitted,

LeJon M. Roberts

Captain, Special Operations Division

CONCUR / DOES NOT CONCUR

Christopher D. Goodly                    * SEE ATTACHED *
                                         COVER LETTER
Chief Deputy Superintendent

CONCUR / DOES NOT CONCUR

                              12/23/22

Keith A. Sanchez

Deputy Chief, Public Integrity Bureau

CONCUR / DOES NOT CONCUR

                              12/23/22
                              FOR

Shaun D. Ferguson

Superintendent of Police

Investigator's Initials