
DEPOSITION OF
KENDRICK C. ALLEN
EXHIBIT #9
TAKEN AUGUST 2, 2023



# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER: 52.1.1

## TITLE: MISCONDUCT COMPLAINT INTAKE AND INVESTIGATION

**EFFECTIVE: 07/19/2015**
**REVISED: 05/21/17; 03/18/18; 06/27/21**

### PURPOSE

This Chapter governs the reporting, receipt, classification, assignment, processing, investigation, and disposition of complaints regarding allegations of misconduct against employees.

Every allegation of employee misconduct shall be accepted and fully and fairly investigated. Written findings will be supported by reliable evidence using a "preponderance of the evidence" standard.

### POLICY STATEMENT

1.  The New Orleans Police Department (NOPD) is fully committed to the thorough investigation of every misconduct complaint regarding service provided by the Department and the conduct of its employees. The Department will accept and address every complaint of employee misconduct in accordance with this Chapter.

2.  Discipline is a function of command. Supervisory and non-supervisory employees both share in the responsibility for the administration of the disciplinary process by personal adherence to every Departmental Rule, Chapter, Policy, Procedure, order, and criminal or civil law. Every employee is equally responsible in reporting any violation to a supervisor, PIB, or to the Superintendent of Police.

3.  The Public Integrity Bureau (PIB) is primarily responsible for ensuring a fair and consistent disciplinary process throughout the Department. This includes the coordination and supervision of all disciplinary investigations involving all employees of the Department and the assignment and processing of all complaints and allegations.

4.  Supervisors whom the Public Integrity Bureau (PIB) assigns to conduct a misconduct investigation of an accused employee shall conduct a thorough investigation, exhaust all leads, and be completed in a timely manner. Misconduct investigations shall be as thorough as necessary to reach reliable and complete findings.

5.  While investigating allegations of misconduct and imposing discipline, NOPD shall abide by federal law, including the U.S. Constitution, and state law, including Louisiana's Police Officer Bill of Rights (La. R.S. 40:2531, "Rights of Law Enforcement Officers While Under Investigation").

DEFINITIONS

**Allegation-driven classification of complaint action**—Assignment of complaint action to a particular investigative unit based on the complainant's allegation rather than on the possible outcome of the investigation.

**Allegation of criminal misconduct**—A complaint alleging officer conduct that, if true, would constitute a crime.

**Classification date**—The date on which PIB determines the complaint will be investigated as a public complaint; internally generated complaint; minor infraction resolved through counseling or training; or NFIM.

**Cognizance date**—The date on which an NOPD supervisor, whether assigned to PIB or assigned to another bureau, receives a complaint of alleged employee misconduct from any source, observes employee misconduct, or gains knowledge from any source of employee misconduct.

**Complainant**—Any person, including a community member, a nonresident, or a sworn or civilian member of NOPD, who makes a complaint against NOPD or any NOPD employee.

**Complaint**—Any allegation of misconduct committed by any NOPD employee that is reported by any person, including any NOPD employee.

**Complaint action**—One of four actions taken based upon the classification by PIB:
  (a) The initiation of a Formal Disciplinary Investigation on the basis of a public complaint of employee misconduct;
  (b) The initiation of a Formal Disciplinary Investigation on the basis of an internally generated complaint of employee misconduct;
  (c) The documentation of a minor violation/infraction resolved through non-disciplinary counseling or training; or
  (d) The documentation of a Non-Formal Investigation (NFIM) by any Departmental supervisor.

**Complaint Form**—The universal form that any person may use to file a complaint against an employee of the New Orleans Police Department. Any person can file a complaint without filling out this form (e.g., a complaint may be communicated verbally or online), and a complaint shall not be disregarded if a person refuses to, or cannot, complete this form. However, a copy of this form shall be provided to any person who requests it or asks to file a complaint, and a supervisor shall assist any such person to ensure the form is filled out thoroughly and forwarded to the Public Integrity Bureau.

**Complaint Tracking Number (CTN)**—A unique number assigned by PIB Intake to each complaint received and entered on the Complaint Form and all documents associated with intake, classification, investigation and adjudication of the complaint. The CTN includes the year the complaint was filed followed by a four digit sequential number starting with 0001 for the first recorded allegation of the year, followed by an alpha character indicating the source of the complaint (i.e., P = public; R = rank). For example, 2014-0001P indicates the first complaint received in 2014 and it was filed by a member of the public.

**Documentation of Minor Violation/Infraction Resolved Through Non-Disciplinary Counseling or Training**—Documentation by a supervisor of at least equal or higher rank than the accused of verbal or written counseling by that supervisor when he/she has become aware of or has observed a minor violation/infraction (*see* **Chapter 35.1.7 – Non-Disciplinary Responses to Minor Violations**). The supervisor must have firsthand knowledge of the

employee's behavior that constituted the violation.

**Force Tracking Number (FTN)**—A unique number assigned by FIT to each reportable use of force event to facilitate awareness event and tracking of a use of force investigation. The number includes the letters "FTN" for Force Tracking Number, followed by the year the force event occurred followed by a three digit sequential number starting with 001 for the first recorded allegation of the year. FTN 2014-001 indicates the first reportable use of force event in 2014.

**Formal Disciplinary Investigation**—Internal investigation that may result in disciplinary action as set forth in the Civil Service Rules.

**Grievance**—As per CAO Policy Memorandum No. 4 (R) (*see* http://www.nola.gov/chief-administrative-office/policies/policies/no-4-(r)-employee-grievance-procedure//Appendix "A"), a grievance is any dispute about working conditions, alleged violations of City Policy, including an alleged abuse of discretion by a supervisor in the treatment of employees, and disputes as to the interpretation, application, or enforcement of specific employee provisions or rights. Matters under the jurisdiction of the City Civil Service Commission shall not be subject to the grievance procedure described in this Chapter. If any questions arise as to whether a particular dispute is or is not a grievance, the question may be taken up through the grievance procedure.

**Incident report**—Official written documentation by NOPD (usually in the form of an Electronic Police Report) of the occurrence of an incident occurring in Orleans Parish. The incident is assigned a unique "item number" by the Orleans Parish Communications Division Computer-aided Dispatch system at the time the call for service is received by the Communications Division either by telephone from an outside source (e.g., 911 or 821-2222) or generated in the field and requested over the police radio.

**Internally generated complaint**—Any complaint initiated by an NOPD employee, sworn or civilian, other than a documentation of minor violation/infraction resolved through counseling or training. Internally generated complaints require Formal Disciplinary Investigations.

**IPM**—Office of Independent Police Monitor.

**Limited English Proficient (LEP)**—A person who does not speak English as his/her primary language and has a limited ability to read, write, speak, or understand English is considered "LEP." An LEP individual may be competent in certain types of communication (e.g., speaking or understanding), but may still be considered LEP for other purposes (e.g., reading or writing).

**Member**—An individual who works for the NOPD. This includes volunteers and Reserve Officers while "on-duty" and performing functions under the auspices of the NOPD.

**Minor violation/infraction**—A violation of a Departmental Rule, Policy, Procedure, Order, regulation, or verbal/written instructions that a supervisor believes requires minimal intervention through redirection, retraining and/or counseling to correct the employee's behavior (e.g., tardiness, uniform requirement, forgetting to complete an FIC, and cleanliness of vehicle). The behavior must not be the subject of a public complaint and must be sufficiently minor that it is correctable by minimal intervention by the supervisor, with the goal of non-repetitive behavior. Repetition of similar violations within a twelve-month period (based on the date of the observed violation) may require discipline. Refer to **Chapter 35.1.7 – Non-Disciplinary Responses to Minor Violations** for guidance.

**Misconduct**—Any action or inaction that violates any Departmental Rule, Policy, Procedure, Order, verbal or written instruction, or criminal law other than a grievance as defined in **CAO Policy Memorandum 4(R)** and **Chapter 25.1 – Employee Grievances**.

**Misconduct Investigation Initiation Form**—The form used internally by PIB to document the classification of each complaint and all steps in the complaint investigation process. Because NOPD uses an allegation-based classification system, the specific allegation of misconduct will be articulated on the form. However, PIB shall independently classify all complaints, and only PIB shall have the authority to classify complaints.

**No Formal Investigation Merited (NFIM)**—A complaint action in which the allegation, on its face, does not constitute a violation by an employee of any Departmental rule, policy, procedure, verbal, or written instruction, or criminal or civil law. NFIM will be used only for the following types of complaints:
(a) Complaints disputing traffic citations, except an allegation of misconduct contained in such complaints (e.g., racial profiling, illegal search, excessive force) will be classified and investigated according to its merits;
(b) Complaints alleging delayed police service (e.g., patrol response or detective follow-up) in which the preliminary investigation demonstrated that the delay was due to workload. However, if the preliminary investigation disclosed that misconduct such as negligence, rather than workload, caused the delay, the complaint will be classified according to its merits;
(c) Complaints regarding the conduct in a civil incident of an off-duty employee, unless the alleged conduct or its effects constitute misconduct or had a substantial nexus to the employee's employment; and
(d) Complaints in which the preliminary investigation demonstrated that the subject employee did not work for NOPD at the time of the incident or in which the identity of the subject employee cannot be determined despite the best efforts of the PIB investigator.

**Non-disciplinary counseling**—A non-punitive process used to correct a subordinate's behavior that is not fully compliant with Department rules, regulations, Chapters, or policies but is not sufficiently egregious to elevate the action to formal discipline. A supervisor must meet with the non-compliant member, explain the manner in which his or her actions are not compliant, and review the relevant policy (or Chapter, rule, or regulation) with him or her. The non-disciplinary counseling shall be documented in the Supervisor Feedback Log.

**NOPD Authorized Interpreter (NOPDAI)**—A bilingual or multilingual NOPD employee who has been authorized to interpret for others in certain situations such as interviews, interrogations, or taking and responding to public complaints.

**NOPDAI List**—A list of NOPD employees who are bilingual or multilingual and authorized by the Department to act as interpreters.

**OIG**—Office of the Inspector General.

**Preponderance of the evidence**—Such evidence that when considered and compared with that opposed to it has more convincing force and produces in one's mind the belief that what is sought to be proven is more likely true than not true.

**Public complaint**—Any allegation of misconduct made by any non- member of NOPD.

**Public Integrity Bureau (PIB)**—The NOPD bureau that is primarily responsible for ensuring a fair and consistent disciplinary process that includes the coordination and supervision of every disciplinary investigation involving an NOPD employee and the assignment, investigation, and processing of every complaint.
PIB reports directly to the Superintendent of Police, and is commanded by a civilian Deputy Superintendent of Police. PIB consists of the following: Intake Section, Criminal Investigations Section, Administrative Investigations Section, FIT (Force Investigation Team), Special

Investigations Section, Staff Programs, and Special Projects Section. PIB also administers the Professional Performance Enhancement Program (See: Chapter 13.27 - PPEP).

**Rights of Law Enforcement Officers While under Investigation (La. R.S. 40:2531)**— Louisiana law governing the rights of every Louisiana law enforcement officer relative to disciplinary investigations

**Transmittal form** – a paper form, generated by PIB and attached to the front of each disciplinary investigation, which tracks and documents each delivery and receipt of the hard copy portion of the Disciplinary Investigation from the case initiation and assignment, to the final submission to the Deputy Chief of PIB. (See Appendix "B" for example.)

## RETALIATION

6.     NOPD is committed to ensuring that every employee, as well as any member of the community, can report misconduct to the NOPD without fear or concern for reprisal or retaliation. The Department expressly prohibits an employee from engaging in any form of retaliation, including intimidation, coercion, or adverse action against any person who reports misconduct, makes a misconduct complaint, or cooperates with an investigation of misconduct.

7.     Any form of retaliation by any employee toward anyone for reporting misconduct or for cooperating with an investigation shall be grounds for discipline, up to and including termination. (Refer to **Chapter 26.3 – Work Place Discrimination-Retaliation**.)

## SOURCE OF COMPLAINT

8.     A complaint may be made by any person, including a member of the public, a civilian or a sworn member of the NOPD. The complainant will be asked to sign a Complaint Form or provide information to the receiving supervisor who shall complete the form for the complainant. Refusal to sign a Complaint Form will not negate the requirement that the allegation be documented and fully and fairly investigated. All internally generated complaints shall be investigated in the same manner as a public complaint.

9.     Any complaint received by NOPD via an anonymous source or third-hand from any known source (e.g., news media, OIG, Metropolitan Crime Commission, District Attorney's Office, the City Attorney's Office, or outside agency) shall be investigated fully and fairly with what information is given and/or discovered during the course of the investigation.

## COMPLAINT - METHODS OF SUBMISSION

10.    A complaint may be made at any time (24 hours a day, seven days a week) to:
       (a) Any NOPD member;
       (b) Directly to PIB (in person during regular business hours, or by telephone);
       (c) To the Office of the Independent Police Monitor;
       (d) In person at any police station or facility; or
       (e) At the complainant's location (such as his/her residence or business in Orleans Parish), at the complainant's request.

11.    A complaint may also be made in writing to NOPD's Web site (nopd.com), the Superintendent's Office, or any police facility address by e-mail, fax, or USPS mail.

12.   PIB shall ensure that Complaint Forms, informational materials, brochures, posters, and instructions for making complaints are available online at the City of New Orleans and NOPD web sites and in print at appropriate government properties, including NOPD Headquarters, NOPD District police stations, City Hall, Orleans Parish courthouses, all Orleans Parish public libraries, the Office of the IPM, the Orleans Public Defenders' Office, the District Attorney's Office, and at City-administered offices or gathering places of community groups, upon request. Permanent placards will be posted and maintained at all NOPD police facilities describing the external complaint process available to all persons. The placards shall include telephone numbers, e-mail addresses, and Internet sites for complaint filing. The commanding officer in charge of the NOPD unit housed in the facility shall be responsible for ensuring such materials are available in the public areas of the facility.

13.   Any individual may submit a misconduct complaint through NOPD and City web sites. PIB shall ensure these web sites include not only Complaint Forms, but also instructions on how, where, and in what manner misconduct complaints may be filed to ensure the public that no complaint is ever refused, disregarded, or dismissed as trivial. PIB shall monitor these websites on a daily basis in order to promptly identify any misconduct complaints.

14.   The Complaint Form and related informational materials shall be made available and posted in the Spanish, Vietnamese, and English languages. Any LEP individual who wishes to file a complaint against an NOPD employee shall be provided with an intake form and instructions in English, Spanish, or Vietnamese, as appropriate, as well as the appropriate translation services pursuant to **Chapter 55.4 – Limited English Proficiency Services** to file a complaint.

**RESPONSIBILITY OF ALL MEMBERS TO REPORT MISCONDUCT**

15.   Any Departmental member who observes or becomes aware of any act of possible misconduct by another employee shall report the incident in accordance with this Chapter. Failure to report or document an act of misconduct or criminal behavior shall be grounds for discipline up to and including termination.
NOTE: Officers have a duty to intercede to prevent the use of unreasonable force if the officer has reason to know that unreasonable force is being used and there is a realistic opportunity to intervene to prevent harm. The action required by the officer will depend on the circumstances of the incident. (See **Chapter 1.3 – Use of Force**.)

16.   If a Departmental member observes or becomes aware of any act of possible misconduct by another employee of **equal or lesser rank**, he/she shall report the incident to any Departmental supervisor or directly to PIB prior to the end of his/her tour of duty that same day. This conduct may be reported verbally, or in writing using a Complaint Form. If the complaint is reported verbally, the receiving supervisor or PIB shall audio-record the reporting employee's statement, and the audio-recording shall be made a part of the Complaint Form as an attachment. Any written document shall be made a part of the Complaint Form as an attachment.

17.   A supervisor may elect to address and resolve a minor violation/infraction through non-disciplinary means, in accordance with **Chapter 35.1.7 – Non-Disciplinary Responses to Minor Violations**.

18.   If a Departmental member observes or becomes aware of any act of possible misconduct by another employee of **greater rank**, he/she shall report this incident directly to PIB prior to the end of his/her tour of duty. This report may be made in writing through a Complaint Form, in person at PIB during its regular hours or by contacting the

on-call PIB investigator after regular working hours.

19.    Any supervisor being consulted by any other member about an allegation of misconduct by any member shall accept the complaint as outlined in this Chapter. If the allegation is of a serious nature (e.g. possible criminal violation), he/she shall contact PIB immediately and advise PIB of the identity of the complainant and the nature of the complaint.

**RESPONSIBILITY TO ACCEPT COMPLAINT OF MISCONDUCT**

20.    All NOPD members shall courteously receive all complaints. Every complaint from a member of the public or an NOPD member shall be courteously received. NOPD employees are prohibited from discouraging in any manner the filing of a misconduct complaint. The refusal by any employee to accept a misconduct complaint, the discouragement of filing a misconduct complaint, or the providing of false or misleading information to a complainant about filing a misconduct complaint shall be grounds for discipline.

21.    For every complaint, the receiving employee shall immediately advise his/her supervisor of the location of the complainant, and the allegation. If the identity of the accused employee is known, the receiving employee shall also advise his/her supervisor of the identity of the accused employee. The supervisor in the police district in which the complainant is currently located shall be notified and shall respond to the complainant's location. The supervisor shall be responsible for assisting the complainant to document the complaint. That supervisor shall be responsible for following the procedure for submission of the Complaint Form to PIB.

22.    Every misconduct complaint, including an anonymous or third-party complaint, shall be accepted by PIB or by the supervisor meeting with the complainant. Under no circumstance will any employee in any assignment or of any rank, title, or position refuse to accept a complaint or re-direct any complainant to the PIB office to file his/her complaint. Before concluding the meeting with the complainant, the receiving supervisor shall contact the PIB office and obtain a Complaint Tracking Number, which shall be given, in writing, to the complainant, or verbally if the complainant is submitting a complaint by phone. If the PIB office is closed at the time the complaint is made, the supervisor shall contact the on-call PIB investigator through the OPCD Supervisor's Desk to immediately obtain a CTN. PIB, including its on-call investigators, shall maintain an up-to-date and accurate log of complaints, ordered by the CTN issued for each complaint.

23.    If PIB advises the supervisor that immediate direct contact between PIB staff and the complainant is necessary, the supervisor will notify the complainant and remain with him or her until a PIB investigator arrives.

24.    The supervisor shall also provide the complainant with his/her own business contact number and PIB's office number. It shall be the supervisor's responsibility to ensure that any compliant received by that supervisor receives a CTN. The supervisor shall inform the complainant that he/she will be notified by the investigator periodically in writing of the progress of the investigation and shall be notified at the conclusion of the investigation of the final disposition.

25.    NOPD members shall provide their name and badge number to any individual upon request, regardless of whether the individual explicitly requests to make a complaint.

26.     If the alleged misconduct involves possible criminal activity or a serious use of force, the supervisor shall (in addition to obtaining a CTN) **immediately** notify PIB either directly or through the OPCD Supervisor's Desk, which shall notify the on-call PIB investigator.

27.     If the alleged misconduct involves a serious use of force, the supervisor shall (in addition to obtaining a CTN) immediately notify PIB FIT through the OPCD Supervisor's Desk. FIT shall respond to the scene and otherwise proceed in accordance with NOPD **Chapter 1.3.2 – Force Investigative Team**.

28.     Nothing in this procedure shall prevent or discourage any supervisor from seeking advice from or making notification to PIB in any complaint situation in which the supervisor may seek guidance.

**COMPLAINT DOCUMENTATION**

29.     The supervisor receiving a complaint from any source shall answer any question the complainant may have about the information requested on the Complaint Form and shall review the information written by the complainant to ensure the complaint is defined clearly. The supervisor shall ensure the complainant understands the importance of answering, if possible, all relevant questions, which include the complainant's personal and contact information including the preferred method of contact and best time to attempt contact; a possible need for language assistance; the name, badge number, and assignment of the accused officer; a detailed description of the accused employee and any other Departmental employee on the scene of the event; his/her clothing/uniform; the type of vehicle driven, including any identifying markings; the date, time, and location of the event; the facts of the alleged violation, including specific actions taken and/or words spoken by the employee; and name and contact information of any witness. If circumstances indicate that the complainant is incapable or unable to complete the form, the supervisor shall offer to complete the form for the complainant **A refusal by a person to provide personal and contact information shall not be grounds for a refusal to accept a complaint**.

30.     Every Departmental supervisor who has been issued a Departmental recording device (body-worn camera and/or digital audio-recorder) shall record the statement of a complainant(s) and any witness or a person with first-hand knowledge of the incident. **A refusal by a person to be recorded shall not be grounds for refusal to accept a complaint**. The complainant's actual refusal to allow his/her complaint to be recorded should be audio/video-recorded if possible, and the supervisor should make the recording a part of the written complaint action. Recordings shall be labeled with the date, the CTN, the name of the accused member, and the name of the person(s) whose statement(s) is/are recorded. This recording shall be labeled as an attachment and made a part of the Complaint Form submitted to PIB by the receiving supervisor.

31.     Whether handwritten or dictated, the Complaint Form should be signed by the complainant. Should the complainant refuse to sign the Complaint Form, the supervisor shall write "REFUSED TO SIGN" on the signature line to indicate his or her refusal. **A complainant's refusal to sign shall not invalidate acceptance of the complaint**.

32.     If the complainant cannot sign his/her own statement, the supervisor should document the reason on the form.

33.     The supervisor shall retain the original Complaint Form and, if possible at the time of the complaint, provide the complainant with a photocopy of his/her Complaint Form with the CTN. The supervisor should attach any document the complainant provides (e.g., citation, notes, photograph, correspondence, text or email message documentation,

medical record, booking document-preferably in photocopied form) to the Complaint Form.

34.     In addition to assisting with the completion of the Complaint Form, the supervisor shall also collect and list any available physical evidence, such as a photograph of a claimed injury or the absence thereof; any audio or video recordings; any CEW recordings; any documentation of medical treatment; or a photocopy of the traffic citation, affidavit, summons, or booking paperwork. Every photograph shall be marked with the date and time taken, the full name of the individual in the photograph, the name of the supervisor taking the photograph, and the CTN. The supervisor shall gather all relevant information, including the names of all NOPD officers and employees involved in or witnessing the alleged misconduct. The supervisor shall take photographs of apparent injuries, or the absence thereof, unless the complainant/subject objects or declines. The complainant's actual refusal to allow taking of the photographs should be audio/video-recorded if possible

## TRANSMITTING COMPLAINT TO PIB

35.     A supervisor receiving a public complaint shall deliver, prior to the end of his/her tour of duty, a Complaint Form and all supporting materials to PIB. When a supervisor obtains a CTN from PIB, he/she becomes responsible for completing a Complaint Form in its entirety, including all relevant documentation of the alleged or known/observed employee misconduct and submitting this documentation to PIB by the end of his or her tour of duty. The supervisor shall receive a receipt for the delivery of the Complaint Form and supporting materials; the receipt shall be kept on file by the supervisor's place of assignment.

36.     A supervisor receiving a complaint from another NOPD employee, or initiating a complaint against another employee, shall transmit, prior to the end of his/her tour of duty, a Complaint Form and all supporting materials to PIB.

37.     A non-supervisor NOPD employee initiating a complaint against another employee directly to PIB shall transmit, prior to the end of his/her tour of duty, a Complaint Form and all supporting materials to PIB.

## REQUEST FOR WITHDRAWAL OF A COMPLAINT

38.     If a complainant expresses his/her desire to withdraw a complaint, he/she may complete a "Request to Withdraw Complaint" form; however, NOPD does not allow the dismissal, withdrawal, or cancellation of any complaint against any employee on the request of the original complaining individual. The investigator shall audio and/or video record the interview with the complainant in which he/she shall be asked to explain the reason(s) for the request to withdraw. This audio and/or video recording and the completed withdrawal form shall be made a part of the investigation which must continue, utilizing what information has already been provided by the complainant and any witness, if any refuse to cooperate further. The investigation must be concluded with a proper disposition. The disposition of "WITHDRAWN" is not utilized by NOPD.

## REQUEST FOR CANCELLATION OF A COMPLAINT ACTION ORIGINALLY REQUESTED BY AN NOPD SUPERVISOR

39.     The supervisor who is also documented as the complainant may request to "CANCEL" or change that complaint action to another form of complaint action (e.g., "Internally Generated Complaint" to "Documentation of Minor Violation/Infraction Resolved Through Non-Disciplinary Counseling") utilizing an inter-office correspondence (NOPD Form 105)

through his/her chain of command to the PIB Deputy Superintendent of Police. The Form 105 must contain the reason(s) the supervisor is requesting to cancel the complaint or to utilize a different form of complaint action.

40.   The original Form 105 must be delivered with the chain of command approvals and/or disapprovals to PIB within five (5) days of the cognizance date of the alleged violation. If any person in the requesting supervisor's chain of command disapproves the request, the initial complaint shall proceed as written and submitted. The Form 105 requesting the change will continue through the approval process and will be made a part of the investigative file on the complaint. The person disapproving the request must document his/her reasons in a Form 105 which will become a part of the request and follow through the chain of command.

41.   The PIB Deputy Superintendent of Police has the final judgment in any request to cancel a complaint or change the complaint action type to another. If the request is not approved, the original complaint action shall continue uninterrupted in its original classification. If another form of complaint action is approved, the investigation shall continue to be governed by the original complaint action due dates.

**PUBLIC INTEGRITY BUREAU RESPONSIBILITIES**

42.   PIB has the primary responsibility for the intake, coordination, review, classification, and assignment of every allegation of employee misconduct. The PIB Deputy Superintendent is delegated the authority of the Superintendent of Police for the purpose of directing every disciplinary investigation and any matter involving employee integrity or the known or alleged misconduct of any Departmental employee. The PIB Deputy Superintendent shall report directly to the Superintendent of Police on all disciplinary matters.

43.   Once PIB is notified of possible criminal activity involving an NOPD officer or employee, PIB shall immediately notify the Superintendent of Police, the PIB Commander, IPM, and the District Attorney and/or United States Attorney's Office.

44.   PIB's responsibilities also include:
      (a)  Review of every complaint;
      (b)  Review of all video evidence pertaining to every complaint prior to categorization and classification;
      (c)  Categorization of every complaint as a public complaint; an internally generated complaint; a minor infraction resolved through counseling or training; or a complaint that qualifies as an NFIM;
      (d)  Classification of every complaint, no matter the categorization, as use of force, criminal, or administrative;
      (e)  Sub classification of allegations within the "administrative" category into subcategory groups for assignment, including: (1) serious misconduct; (2) other (non-serious) misconduct; (3) allegations eligible for Negotiated Settlement; and (4) allegations eligible for Community-Police Mediation;
      (f)  Assignment of every complaint to the appropriate bureau for investigation;
      (g)  Assignment of due dates for all investigative forms and investigations;
      (h)  Investigation of all complaints retained by PIB;
      (i)  Review and approval of every completed complaint action, investigation, report, or document, whether completed by PIB or another bureau;
      (j)  Review of all Use-of-Force investigations completed by field supervisors to ensure they are complete, and that the supervisor's determination that the force is justified is supported by the evidence (*See* **Chapter 1.3.6 – Reporting Use of Force**).
      (k)  Final determination of the disposition of all complaint actions, whether

investigated by PIB or another bureau;

(l)   Issuance of the Notification to Accused Law Enforcement Officer under Investigation of a Pre-Disciplinary Hearing or Determination of an Unfounded or Not Sustained Complaint. (Notification form to be prepared by investigator and submitted with the completed investigation); and

(m)  Transmittal of notification letter to every complainant indicating the result of the investigation after final approval of the formal disciplinary investigative disposition.

## AUTHORITY TO CLASSIFY A COMPLAINT

45.   Only PIB has the authority to classify an allegation of employee misconduct. PIB shall have exclusive authority to initiate an appropriate complaint action.

## COMPLAINT CLASSIFICATION AND ASSIGNMENT

46.   Upon receiving a completed Complaint Form or other allegation of misconduct, PIB shall determine whether the allegation of misconduct constitutes:
      (a) A public complaint;
      (b) An internally generated complaint;
      (c) A minor violation/infraction resolved through counseling or training; or
      (d) A complaint that qualifies as an NFIM.

47.   PIB shall review all available video evidence before categorizing every complaint. PIB shall have sole authority to make this determination, and shall independently assess each Complaint Form notwithstanding any preliminary designation made by the member completing the Complaint Form.

48.   For all allegations of misconduct not categorized by PIB as "Documentation of Minor Violation/Infraction Resolved Through Counseling or Training" or "NFIM," PIB shall classify each allegation into one of the following categories, if appropriate:
      (a) Use of Force;
      (b) Criminal; or
      (c) Administrative.

49.   As set forth below, PIB shall further classify allegations within the "administrative" category into subcategory groups for assignment, including: (1) serious misconduct; (2) other (non-serious) misconduct; (3) allegations eligible for Negotiated Settlement; and (4) allegations eligible for Community-Police Mediation. PIB's complaint classification protocol, which is "allegation-based" rather than "anticipated outcome-based," shall be used to guide PIB in determining to which Bureau a complaint shall be assigned.

50.   When it is appropriate to ensure the fact and appearance of impartiality for investigations of serious uses of force or force indicating apparent serious or criminal misconduct by an officer, these investigations may be referred to an independent and highly competent entity outside of NOPD. PIB's complaint classification protocol shall ensure that PIB or an authorized outside agency investigates allegations of serious or criminal misconduct.

## ALLEGATIONS OF MISCONDUCT INVOLVING USE OF FORCE

51.   Complaints involving allegations of serious uses of force, uses of force indicating apparent criminal misconduct by an officer, or uses of force by NOPD personnel of a higher rank than sergeant shall be investigated by FIT. Refer to **Chapter 1.3.2 – Force Investigative Team**.

52.   When it is appropriate to ensure the fact and appearance of impartiality for investigations of serious uses of force or force indicating apparent criminal conduct by an officer, these investigations may be referred to an independent and highly competent entity outside of NOPD.

## ALLEGATIONS OF CRIMINAL MISCONDUCT

53.   Complaints involving allegations of criminal conduct will be investigated by PIB/Criminal, including but not limited to:
    (a) Commission of a crime;
    (b) False arrest;
    (c) Domestic Violence;
    (d) Unlawful Search; and
    (e) Civil Rights Violation(s).

## ALLEGATIONS OF SERIOUS MISCONDUCT

54.   Misconduct allegations that involve serious misconduct but that do not involve force or allege criminal misconduct will be investigated by PIB/Administrative, including but not limited to:
    (a) discriminatory policing;
    (b) false arrest;
    (c) "planting" evidence;
    (d) untruthfulness/false statements;
    (e) unlawful search;
    (f) retaliation;
    (g) sexual misconduct;
    (h) domestic violence;
    (i) misconduct implicating the conduct of the supervisory or command leadership of the subject employee; and
    (j) any allegation that a Commander request be investigated by PIB rather than by the accused employee's Bureau. An investigation that requires the assistance of a specialized or support unit shall be coordinated with that unit's commander.

## OTHER MISCONDUCT ALLEGATIONS

55.   Complaints of misconduct of a less serious nature may be assigned to the accused member's unit of assignment for investigation. These include but are not limited to:
    (a) discourtesy;
    (b) neglect of duty;
    (c) service complaints;
    (d) missed court; and
    (e) lack of professionalism.

## NEGOTIATED SETTLEMENT

56.   As outlined in Chapter 24.1, in certain limited circumstances, upon classifying a complaint, NOPD through PIB may elect to address and resolve a rank-initiated violation (i.e., an allegation of misconduct reported by an NOPD supervisor) through a negotiated settlement agreement between the department and the officer. *See* **NOPD Chapter 24.1 – Negotiated Agreement and Settlement**.

57.   As outlined in **Chapter 24.2 – Community-Police Mediation**, in certain limited circumstances, upon classifying a complaint, NOPD through PIB may elect to address and resolve an allegation of misconduct brought by a civilian through an OIPM-led

mediation program.

**INVESTIGATION OF ALLEGED CRIMINAL CONDUCT**

58.   The Superintendent of Police shall be notified as soon as practical when apparent criminal conduct exists. In the event of an allegation of a criminal violation, the Superintendent of Police may request an outside law enforcement or prosecutorial agency to conduct the criminal investigation parallel to the administrative investigation conducted by NOPD.

59.   An employee accused of criminal conduct shall be provided with all rights and privileges afforded to an individual under the State and Federal constitutions.

60.   The subject officer shall not be compelled to provide a statement to misconduct investigators where there is a potential criminal investigation for prosecution of the officer until the remainder of the investigation has been concluded, unless after consultation with the prosecuting agency and the PIB Deputy Superintendent, such compulsion is deemed appropriate by the Superintendent.

61.   If there are both criminal and administrative investigations, those investigations shall be conducted concurrently unless otherwise directed by the PIB Deputy Superintendent. In the event the subject officer provides a compelled statement, PIB shall ensure that any criminal investigation shall not subsequently have access to that statement or the administrative investigation during the pendency of the criminal investigation.

62.   No employee action other than administrative reassignment or suspension shall be taken against the accused employee based solely on an arrest or crime incident report. An independent administrative investigation shall be conducted based upon the allegation(s) in the crime incident report.

**ASSIGNMENT OF AN ADMINISTRATIVE INVESTIGATION**

63.   The investigation of an alleged administrative violation involving serious misconduct shall be completed by PIB, and any complaint deemed by the PIB Deputy Superintendent or his/her designee to be of a serious nature may be retained within PIB for investigation.

64.   The investigation of other alleged administrative violations may be assigned by the PIB Deputy Superintendent or his/her designee to another bureau. Once an administrative violation is assigned to a bureau for investigation, the bureau liaison who interacts with PIB and who is appointed by the individual bureau deputy chief shall assign the investigation within the bureau.

65.   The investigation shall be assigned to a supervisor of at least equal or higher rank than the accused. The investigator shall not be a member who was involved in the incident as a witness or alleged participant.

66.   Whether retained in PIB for investigation or assigned to an investigator from another bureau, the procedures to be followed during the investigation are the same.

67.   The Division/District-Level investigation reports and all related documentation and evidence shall be provided to PIB immediately upon completion and approval by the appropriate supervisor of the investigation, but no later than three business days,

**EMERGENCY SUSPENSION OR ADMINISTRATIVE RE-ASSIGNMENT**

68.     If a violation involves an action or condition which, in the opinion of a supervisor, negatively impacts the accused employee's continued ability to perform his/her duty, the supervisor shall notify PIB. PIB will review the known facts and take the necessary steps to obtain the proper authorization from the PIB Deputy Superintendent to have the employee placed on emergency suspension or administrative reassignment (refer to **Chapter 52.8 – Suspensions and Emergency Suspensions of Members** and PIB Directive No. 8, Administrative Reassignment and Emergency Suspension Procedures).

**ACCUSED OR WITNESS EMPLOYEE RESPONSIBILITIES**

69.     Nothing in this Chapter shall alter an officer's obligation to provide a public safety statement regarding a work related incident or activity. All public safety statements and other officer statements in incident reports, arrest reports, use of force reports, and similar documents, and statements made in interviews such as those conducted in conjunction with NOPD's routine use of force review and investigation process, are part of each officer's routine professional duties.

**ADMINISTRATIVE INVESTIGATIONS**

70.     Every NOPD employee is required to be truthful at all times in spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of employment and operations of the Department. Failure to comply shall result in termination.

71.     In any administrative investigation of an employee, an accused or witness employee shall:
(a) Cooperate fully in the investigation process;
(b) Give a written and/or audio/digitally/video-recorded statement upon request by the investigator;
(c) Sign any written or transcribed statement made by the employee;
(d) Appear at any disciplinary hearing when instructed by an authoritative source;
(e) Submit to a breath test when ordered by a supervisor;
(f) Submit to any or all of the following conducted by an authorized/certified examiner when ordered by the Superintendent or his/her designee: 1) A polygraph examination; 2) A Computer Voice Street Analyzer (CVSA) examination; 3) A Psychological Stress Exam (PSE); 4) A urinalysis, blood test, and/or other medical laboratory test; 5) A psychological and/or psychiatric evaluation; 6) A physical line-up; 7) The taking of photographs; and/or 8) Handwriting analysis;
(g) Submit a financial disclosure statement when ordered by a Court having jurisdiction. A photocopy of the court order shall be labeled as an exhibit and made a part of the investigative report;
(h) Sign a Confidentiality Admonishment form (NOPD Form 305). The form shall be supplied by the PIB investigator; and
(i) Read, sign, and date the original superintendent's disciplinary letter (NOPD Form 105) for the PIB case to document that he/she has been formally notified of the disposition of an investigation in which he/she is an accused employee.

**EMPLOYEE REPRESENTATIVE DURING A DISCIPLINARY INVESTIGATION INTERVIEW**

72.     In either an administrative or criminal investigation, an NOPD employee acting as a representative for an accused and/or observing the interview of an individual in connection with an investigation conducted by PIB into the alleged misconduct of NOPD

personnel, shall be required to sign a Confidentiality Admonishment (NOPD Form 305) prior to the commencement of the interview. The form shall be supplied by the PIB investigator.

73.   The member's representative, if any, will only advise the member but will not in any other way interfere with the interview.

**INVESTIGATOR & INVESTIGATIVE PROTOCOLS / RESPONSIBILITIES**

74.   Upon assignment to a formal disciplinary investigation, the investigator shall:
   (a) Comply with La. R.S. 40-2531 (Police Officer's Bills of Rights) by meeting the due dates set by PIB and the investigator's bureau representative and which have been written on the PIB Transmittal form.
   (b) Before taking a formal statement from an accused employee, but not including immediate field investigation, the investigator shall provide notification (Form 196) to the accused employee informing the employee of the:
      i.   Allegation(s) against the employee;
      ii.  Employee's rights and responsibilities relative to the investigation; and
      iii. Date, time, and location the employee is to appear for the statement.

   (c) The investigator shall instruct the accused employee to sign the Form 196 indicating receipt of the original form. A copy of the signed notification shall be labeled as an exhibit and made a part of the investigative report.
   (d) During the formal investigation, the investigator shall obtain a digitally recorded statement from the accused employee in every case, using the statement format for "Administrative Investigation of a Commissioned and/or Civilian NOPD Member" (Form 196).
      i.   The audio file shall be labeled with the PIB Complaint Tracking Number, date the statement is taken, the accused employees' name, and the name of the person(s) whose statement(s) is recorded. The file(s) shall be labeled as an exhibit and made a part of the investigative report. Digitally recorded statements shall be preserved pursuant to **Chapter 83.1 – Collection of Evidence** (previous Policy 808) and **Chapter 83.2 – Computers and Digital Evidence** (previous Policy 814).
      ii.  In an investigation that does not involve criminal allegations, the interview shall normally take place during the employee's tour of duty.
      iii. The PIB Deputy Superintendent shall have the authority to extend or change an employee's regular tour of duty hours if necessitated by the demands of the investigation. Should the interview time extend past the employee's tour of duty, for payroll purposes, the employee shall be listed as working in the payroll system. If the employee is suspended or on any other leave status, the employee may be ordered to appear at any given time at a designated location to give a statement.
   (e) Conduct a complete investigation and thoroughly exhaust all leads;
   (f) Separately interview and digitally record each accused employees' statement;
   (g) Separately interview and digitally record the statements of the complainant, any principal, and every known witness, both for and against the accused employee (For non-department employees, the investigator shall audio tape or digitally record the witnesses' statement in their entirety absent specific documented objection. However, all department employees shall be subject to audio taping or digital recording in their entirety.  Where the alleged misconduct is particularly serious of interviews with the subject officer(s) or witnesses may be necessary to sufficiently investigate the allegation, the investigator shall conduct the interviews in-person.);
   (h) Seek to identify all persons at the scene giving rise to a misconduct allegation;

(i) Note in the investigative report the identities of all officers or other witnesses who were present on the scene but assert that they did not witness and were not involved in the incident and conduct further investigation of any such assertions that appear unsupported by the evidence;

(j) Collect evidence and property, when applicable, and maintain chain of custody records (evidence in criminal cases should be submitted to Central Evidence & Property CE&P under the Complaint Tracking Number);

(k) Prepare and forward correspondence to the complainant and accused members, as specified in this Chapter;

(l) Address each section of the investigative report, documenting all facts;

(m) Reach a conclusion supported by the preponderance of the evidence and prepare a written recommendation;

(n) Apply for an extension of the due date (within the first thirty (30) days of the investigation, i.e. within thirty days of the classification date) when necessary, and particularly when any complainant, witness, principal, or evidentiary material will not be available in time to complete the investigation by the investigator's assigned due date;

(o) Provide a copy of the date-stamped extension request (if requested) to PIB within 48 hours of the date-stamp.

(p) When appropriate for the finding reached, prepare a Notice of Completed Investigation, i.e. "Notice to Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Not Sustained Complaint" (NOPD Form 308), and submit the form along with the investigative report;

(q) Investigators should avoid the use of leading questions when taking statements of accused employees.

(r) If, when ordered, an employee refuses to make an administrative statement as an accused employee or witness, the investigator shall digitally record the refusal unless extenuating circumstances prevent the recording, in which case the extenuating circumstances shall be documented in an Interoffice Correspondence (Form 105). The investigator shall immediately notify the accused employee's Deputy Superintendent and the PIB Deputy Superintendent, and submit a Complaint Form to PIB.

(s) In an interview lasting more than two hours, the investigator shall provide breaks for rest, personal needs and meals. No interview shall last more than eight hours in any 24-hour period, unless authorized in writing by the Superintendent.

(t) Prior to the taking of any formal investigatory statement, but not including immediate field investigation:

    i. In an administrative investigation, the investigator shall begin the accused employee's administrative statement with a reading to and acknowledgment by the commissioned employee of "Rights of Law Enforcement Officers While Under Investigation" using Form 196.

    ii. In a criminal investigation, the investigator shall begin the accused employee's criminal statement with a full reading to and acknowledgment by the commissioned employee of "Rights of Law Enforcement Officers While Under Investigation" and, if relevant, the Constitutional rights relative to the giving of a criminal statement in a criminal investigation. Criminal investigations shall be separately from administrative investigations.

(u) If an employee waives his/her criminal rights at any time during the interview process, the investigator shall stop the interview and further question the employee as to his/her understanding of the rights. The investigator shall immediately request that the employee sign a "Rights of Arrestee" form, announcing to the audio tape recorder that the employee has signed the "Rights

of Arrestee" form number [state number]. The form shall be labeled and listed as an exhibit.
- (v) Submit a complete, coherent investigative report to his/her immediate supervisor by the investigator's assigned due date; the date of the investigative report shall be the date the completed report is submitted to the immediate supervisor for approval and forwarding through the chain of command to the PIB Deputy Superintendent; and
- (w) Update the PIB Transmittal form.

75.   The supervisor who has been assigned to conduct a complaint investigation shall be designated as the "investigator." The investigator shall be of at least equal rank to the accused employee; however, an exception may be approved by the Superintendent of Police or the Deputy Superintendent of PIB. A misconduct complaint investigator may not be a supervisor who:
- (a) used force during the alleged incident;
- (b) conducted himself/herself during the alleged incident in a manner that led to the injury of a complainant;
- (c) authorized the conduct that led to the alleged incident; or
- (d) witnessed or was directly involved in the alleged incident leading to the allegation of misconduct.

76.   The misconduct complaint investigator shall interview each complainant in person, and this interview shall be recorded in its entirety, absent specific, documented objection by the complainant. If extenuating circumstances require that the interview of the complainant not be conducted in person, the investigator shall document those extenuating circumstances in the investigative file.

77.   All witnesses, including officers witnessing or involved in an incident that becomes the subject of a misconduct complaint, shall provide a written statement regarding the incident or be interviewed as described below. If due to extenuating circumstances (e.g., unavailability or uncooperativeness of a witness) a witness cannot be interviewed or if a witness refuses to be interviewed, those facts shall be documented.
- (a) Where the alleged misconduct is particularly serious or interviews of the subject officer(s) or other witnesses may be necessary to sufficiently investigate the allegation, the investigator shall conduct an in-person interview. The interview shall be recorded in its entirety, absent, in the case of non-officer witnesses, specific documented objection.
- (b) Each officer, witness, and complainant shall be interviewed separately. A NOPDAI not involved in the underlying complaint will be used when taking statements or conducting interviews of any Vietnamese or Spanish speaking LEP complainant or witness.

78.   The misconduct investigator shall seek to identify all persons at the scene giving rise to a misconduct allegation, especially all NOPD officers. The investigator shall note in the investigative report the identities of all officers and other witnesses who were on the scene but assert they did not witness and were not involved in the incident. The investigator shall conduct further investigation of any such assertions that appear unsupported by the evidence.

79.   The investigator shall search for, and obtain copies of, relevant video evidence, including body-worn camera footage, mobile-video unit footage, surveillance video of the incident, the accused, witnesses, or other relevant recordings (such as video evidence of the accused, the complainant, or involved witnesses). Copies of the video shall be included as exhibits and labeled with the PIB Complaint Tracking Number. If the investigator is unable to find video evidence, he or she shall provide an explanation for the

unavailability of evidence, such as "Officer's body worn camera not activated."

80. In each investigation, NOPD shall consider all relevant evidence, including circumstantial, direct, and physical evidence, as appropriate, and make credibility determinations based upon that evidence. There will be no automatic preference for an officer's statement over a citizen's statement, nor will NOPD disregard a witness' statement merely because the witness has some connection to the complainant or because of any criminal history. Statements may contain some inconsistencies and contradictions. When inconsistencies occur, investigating supervisors should not automatically disbelieve the person who made the statement. The investigator should consider whether the inconsistencies relate to significant or insignificant matters and whether the inconsistency is reasonable in light of the circumstances. NOPD shall make efforts to resolve material inconsistencies between witness statements. If such inconsistencies cannot be resolved adequately, the investigator should expressly state that in his/her report.

81. Factors to consider when making a credibility assessment include, but are not limited to:
    (a) The person's opportunity to see or hear the things that the person claims to have seen or heard;
    (b) Any motive the person has to lie;
    (c) Any interest the person may have in the outcome of the case;
    (d) Any bias of the person;
    (e) The person's memory and ability to recall events;
    (f) Information pertaining to the person's truthfulness or lack thereof;
    (g) Any inconsistencies in the person's statement and whether they are supported or contradicted by evidence;
    (h) Information, including criminal or disciplinary history that suggests a habit, routine, or pattern of relevant behavior. Information about a person's character or reputation alone, without more, shall not be considered.

82. The resolution of any misconduct complaint must be based upon the preponderance of the evidence.

83. A misconduct investigation shall not be closed simply because the complaint is withdrawn or because the alleged victim is unwilling or unable to provide additional information beyond the initial complaint. In such instances, the investigation shall continue as necessary within the allowable investigation timeframes established under this Agreement to resolve the original allegation(s) where possible based on the evidence and investigatory procedures and techniques available. In each investigation, the fact that a complainant pled guilty or was found guilty of an offense shall not be the deciding factor as to whether an NOPD officer committed the alleged misconduct, nor shall it justify discontinuing the investigation.

84. If an investigator becomes aware at any time, including during an interview or the taking of a statement, of criminal conduct on the part of any member or employee, the investigator shall immediately suspend the investigation and notify the PIB commander.

**TRANSCRIPTION OF STATEMENTS**

85. The initial recording of the complainant's allegations, if taken by PIB Intake personnel, shall be transcribed only if no subsequent statement is taken from the complainant by the investigator and the investigation culminates with a recommended disposition of SUSTAINED.

86.     If an investigation results in a recommended disposition of sustained by the investigator, each recorded statement shall be transcribed by the investigator. Each page of the transcript shall be initialed by the accused employee, and the last page shall be signed and dated by the accused employee. Each transcript shall be labeled as an exhibit and made part of the investigative report.

87.     A transcript of an audio taped or digitally recorded statement is not required in an investigation which has the recommended disposition of NOT SUSTAINED, UNFOUNDED, or EXONERATED.

88.     Any reviewing authority, including the PIB Deputy Superintendent, may return an investigation for a transcript in any case where a transcript is deemed necessary for the review process.

89.     The Deputy Superintendent of PIB may grant written approval for a statement not to be transcribed in an investigation that includes recommendation for sustained violations. To ensure the accuracy of investigative conclusions, the PIB Deputy Superintendent shall be responsible for conducting a random check of completed investigative cases in which no transcripts are provided.

**INVESTIGATOR'S FINDINGS AND RECOMMENDED DISPOSITION(S)**

90.     In each investigation, the fact that a complainant plead guilty or was found guilty of an offense shall not be the deciding factor as to whether an accused employee committed the alleged misconduct, nor shall it justify discontinuing the investigation.

91.     The misconduct investigator shall explicitly identify and recommend <u>one</u> of the following dispositions for <u>each</u> allegation of misconduct in an administrative investigation:

**Unfounded**—the investigation determines by a preponderance of the evidence that the alleged misconduct did not occur or did not involve the accused officer.

**Sustained**—the investigation determines by a preponderance of the evidence that the alleged misconduct did occur.

**Not sustained**—the investigation is unable to determine by a preponderance of the evidence whether the alleged misconduct occurred.

**Exonerated**—the investigation determines by a preponderance of the evidence that the alleged conduct did occur but did not violate NOPD policies, procedures, or training.

**Resigned Under Investigation (RUI) citing the disposition of the completed investigation**
If the accused employee resigns before the investigation is concluded or before the completion of discipline, the investigation shall be completed and the disposition shall reflect both "RUI" and the investigator's disposition of each accusation. No hearing is conducted.

**Retired Under Investigation (RUI) citing the disposition of the completed investigation (e.g., RUI/Sustained or RUI/Exonerated) -**
If the accused employee retires before the investigation is concluded or before the completion of discipline, the investigation shall be completed and the disposition shall reflect both "RUI" and the investigator's disposition of each accusation. No hearing is conducted.

92.    When the recommended disposition is UNFOUNDED, EXONERATED, or NOT SUSTAINED, the investigator shall cite only the number and title of the RULE the employee allegedly violated with the recommended disposition. After each Ru le, make reference to any applicable Departmental regulation, order, or procedure (Chapter, Special Order, General Order, Personnel Order, Bulletin, etc.), which most specifically addresses the alleged violation (Example: Rule 4: Performance of Duty; Paragraph 2: Instructions from Authoritative source, to wit, **Chapter 41.3.10 – Body Worn Camera**). If a **criminal or traffic law** was allegedly violated, the specific law shall be cited by statute number and wording. Multiple rules shall be cited in ascending numerical order.

93.    When the recommended disposition is SUSTAINED, the investigator shall quote each rule for which he/she recommends a sustained disposition and the applicable Departmental regulation, order, procedure or law, and provide a complete explanation of how the employee may have violated the rule (i.e., if untruthful, state how, when and to whom the employee was untruthful and how, when, and by whom the employee's information  is disputed).   Multiple rules shall be cited in ascending numerical order.

94.    When a charge is sustained, the investigator must include a violation of Rule IX of the Civil Service Rules for the City of New Orleans, as it pertains to Maintaining the Standards of Service, using the following phrase after the last listed violation:

       *[Accused employee's name] may also have violated Rule IX of the Civil Service Rules for the City of New Orleans, relative to Maintaining Standards of Service]*

## UNFOUNDED AND EXONERATED COMPLAINTS

95.    If the intake member or investigator determines the complaint is clearly, demonstrably unfounded or exonerated based on camera footage and no other misconduct is evident, the intake member or investigator shall notify the reviewing supervisor.

96.    The reviewing supervisor shall review and approve the conclusion as appropriate. The supervisor shall prepare a brief report documenting the review and the rationale for the decision.

97.    If the reviewing supervisor approves the unfounded or exonerated disposition, the investigation shall conclude, and the investigator need not conduct additional investigatory requirements, such as interviewing all witnesses.

98.    If the supervisor disapproves the preliminary disposition, the investigator shall continue investigating the complaint according to this Chapter.

## MINOR VIOLATIONS/INFRACTIONS DISCOVERED THROUGH INVESTIGATION

99.    If the investigator identifies a minor violation/infraction that is not the principal basis of the complaint, the investigator shall note the minor violation in the investigative report and communicate the minor violation to the member's supervisor for appropriate follow-up. The minor violation/infraction may be considered an additional misconduct violation (other sustained misconduct) within the complaint investigation, but the investigator should consider non-disciplinary methods for handling the minor violation/infraction as appropriate, including if the member has no pattern of similar minor violations within the preceding year (i.e., more than three times within a 12-month period). The investigator shall still pursue the original allegation even if it is a minor violation.

100.   *See* **Chapter 35.1.7 – Non-Disciplinary Responses to Minor Violations**.

**REPORT FORMAT**

101.   The investigator shall utilize an NOPD Form 105 (Interoffice Correspondence) to document the formal investigation. The heading shall be as follows:

TO:              Superintendent of Police
FROM:            [Investigator's rank, name, and place of assignment]
SUBJECT:         PIB CTN # [Complaint Tracking Number]
                 [Name of accused employee(s), ID #, rank, and place of assignment]]
DATE:            [Date investigator submits report to supervisor]

102.   The investigator shall address each of the following areas using the following clearly labeled and defined headings and subheadings:

(a) **INTRODUCTION:** This section shall identify the investigator by rank, name, and assignment. It shall recount by whom and when the investigator was assigned the investigation. The introduction shall include the following subheadings:

1.   **BRIEF SYNOPSIS:** Give a brief synopsis of the allegation(s) including what, when, where, how, and by whom the alleged violation(s) was committed, and any other pertinent information that the investigator deems necessary.

2.   **ALLEGATIONS:** The synopsis of the allegations shall also set forth the alleged violations. Identify and list every possible misconduct violation contained within the complaint or identified during the supervisor's initial inquiry into the complaint or through his/her own observation. The investigator shall pursue all allegations in the original complaint but may choose to refer minor violations/infractions discovered through the course of investigation to the relevant supervisor for appropriate follow up (*see* **Chapter 35.1.7 – Non-Disciplinary Responses to Minor Violations**) rather than including the minor violations/infractions as formal allegations. The investigator shall clearly document in a report any minor violations that were referred to the member's supervisor. Cite the numbers and title of the Rule and Chapter, order, etc., that may have been violated. If an allegation involves a criminal law, the state or municipal number and title shall be included. If multiple alleged violations, each shall be listed in numerical order by rule number, then by paragraph number. Each allegation shall be numbered as V1, V2, V3. The only allegation(s) which shall be listed under the individual accused employee is (are) the allegation(s) made against that specific employee.

(b) **INVESTIGATION:** The investigator shall document a detailed account of every aspect of the investigation, including an individual summary of each interview, whether recorded or written. If the interview is recorded, the transcription of this interview (if one is required) shall be labeled and listed as an exhibit. If the investigator obtained a written statement from any party, the written statement shall be labeled and listed as an exhibit.

3.   **WITNESSES:** List every witness, including members, and identify whether each witness was contacted or provided a written statement, and whether any interviews were recorded. If a witness was not

contacted or an interview was not recorded, give an explanation. For example: "Joe Doe could not be reached despite numerous attempts; he provided a non-working telephone number and refused to provide an address."

   4. **CREDIBILITY ASSESSMENT:** Provide a relevant assessment of the complainant(s) and witness(es) (*see* Paragraphs 80 & 81 above).

(c) **SUMMARY**: This section shall summarize the important aspects of the investigation and why the investigator arrived at the conclusion of culpability or innocence on each allegation. The Summary Section shall contain only **information** already documented in the Investigation Section, and shall not introduce any new information.

(d) **RECOMMENDATION(S)**: Each alleged violation shall be addressed individually, with a recommended disposition on each rule allegedly violated, and a complete justification of the recommended disposition of each rule appearing in the original Misconduct Investigation Initiation Form. Any additional sustained misconduct violations (not alleged in the original form) shall be listed after the original violation(s) under the sub-heading "Additional Sustained Violations." Any additional accused employees and their sustained misconduct violations shall be listed under the subheading "Additional Accused and Sustained Violations."

The investigator must also assess whether: (i) the accused's conduct was in compliance with training and legal standards; (ii) the incident indicates a need for additional training, counseling, or other non-disciplinary corrective measures; and (iii) the incident suggests that NOPD should revise its policies, strategies, tactics, or training. (see: Program Review Request Form #358).

(e) **EXHIBITS**: The final page of the investigative report shall be the Exhibit page. Each exhibit (Misconduct Investigation Initiation form, recording, written order, evidence receipt, photograph, etc.) shall be assigned a letter. A list of exhibits that contains more than **twenty-six** (26) items shall utilize a double-alphabet designation (AA-ZZ). Each exhibit shall carry a corresponding label on the exhibit itself. Each exhibit listed shall include a description of the exhibit, the number of pages in the exhibit, and whether the document is an original or a photocopy; as indicated below:

**EXHIBITS [EXAMPLE]**

| | |
|---|---|
| Exhibit A | PIB Transmittal page, original |
| Exhibit B | Formal Disciplinary Investigation initiation form, original |
| Exhibit C | Transcribed statement of [XXX], 5 pages, original |
| Exhibit D | Incident report, Item # X-XXX-XX, 4 pages, photocopy |
| Exhibit E | TRIP record for [XXX]. Dated XXX, one page, original |
| Exhibit F | Photographs, taken by Crime Lab, Item # X-XXX-XX, four |

103.   Any extension request submitted to Civil Service, along with any response, shall be included as an exhibit to the investigative report.

104.   The investigator's signature, with the rank, title, and date typed below the signature, shall conclude the report. The investigator's initials shall also be hand written on each page of the investigation in the bottom right hand corner.

105.  The report shall conclude with the following format for each person in the investigator's chain of command, up to and including the Superintendent of Police:

CONCUR / DO NOT CONCUR

_____        Date:
_____

[rank and name of person in chain of command]
[title and/or place of assignment]

The date alongside each signature will be the date the reviewer signed the document, not the date appearing at the top of the report.

106.  The complete investigative report shall be assembled unstapled and in the order outlined in the Investigative Case File Organization provided in **Appendix A**, with all exhibits in order. Each page of the investigative report shall be sequentially numbered. The entire package shall be placed into a large manila envelope, labeled with the PIB Complaint Tracking Number on the front, and shall be forwarded to PIB through the investigator's chain of command for approval.

107.  Every exhibit page shall have the Complaint Tracking Number at the top left and the page number on the top right. For example, the top of the fifth page of a 10-page exhibit shall note: **PIB CTN #**: 201X-XXXX **Page 5 of 10**.

**FORMS**

108.  Refer to the Resources folder on nopd.org for forms that shall be used for:
      (a) Any statement taken from an accused employee in an administrative investigation.
      (b) Any statement taken from an accused employee in a criminal investigation.
      (c) Any statement taken from an employee witness in an administrative or criminal investigation.
      (d) Any statement taken from a complainant and/or non-employee witness in an administrative or criminal investigation.

**FORMAL DISCIPLINARY INVESTIGATION DUE DATE CALCULATION**

109.  An administrative investigation shall be completed within the time limitation mandated by LA RS 40:2531, which requires every investigation to be initiated within 14 days of the Cognizance Date. The date when a PIB investigation is initiated is known as the Classification Date. All due dates are calculated upon the Classification Date.

110.  Every investigation must be completed within 60 days of the Classification Date unless an extension of 60 days is granted by Civil Service. The Civil Service extension extends the final due date to 120 days from the classification date. Within that time frame, the investigator's written investigation (accompanied by exhibits), the various levels of supervisory review which may necessitate corrections/additions/clarifications, the final approvals at every level, and the verbal and/or written "Notice to Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Not Sustained Complaint" (NOPD Form 308) must be completed.

**EXTENSION OF FORMAL DISCIPLINARY INVESTIGATION DUE DATE**

111.   An extension of the formal disciplinary investigation due date may be requested by the investigator if a complainant, witness, principal, or evidentiary material will not be available or if extenuating circumstances preclude the investigator's ability to complete the investigation by the assigned due date. The investigator may apply to Civil Service for an extension of the sixty-day due date (NOPD Form 200). The extension request must be submitted to Civil Service within the first thirty days of the investigation (i.e., within 30 days of the date of classification). The form shall be hand delivered by the investigator to the Civil Service office where it will be date/time stamped. An extension hearing will be set by Civil Service to allow the Civil Service Hearing Officer to determine if the extension is necessary, and to allow the accused employee to address the requested delay.

112.   The assigned investigator shall ensure a photocopy of the date-stamped extension request (Form 200) is delivered to PIB within forty-eight (48) hours of the date-stamp. A photocopy of the written decision by the Civil Service hearing examiner given to the investigator after the hearing must also be delivered to PIB within forty-eight (48) hours of the hearing or receipt by the investigator.

113.   Photocopies of the date-stamped request and the hearing examiner's written response shall be made a part of the investigative report as exhibits. The amended PIB due date, (always one hundred (100) days from the Classification Date) is written on page two (2) of the Misconduct Investigation Initiation Form by PIB to reflect the due date if/when an extension is approved by Civil Service.

**PIB LIAISON**

114.   When a Bureau receives notification from PIB that a disciplinary investigation is to be assigned to that bureau, the PIB liaison for that bureau shall respond to PIB and complete the receipt for assignment. The Bureau Chief shall assign the investigation to a supervisor in that bureau who is of at least equal rank to the accused employee. Only one investigator is to be assigned to any investigation, regardless of the number of accused employees or differing assignments. The PIB liaison is responsible for calculating and documenting on the Misconduct Investigation Initiation Form all bureau due dates. The bureau representative is also responsible for maintaining a tracking system for that bureau's investigations to ensure all due dates are met at every bureau level and that the completed and approved investigation is submitted to PIB on or before the PIB due date. The internal bureau due dates should take into account and allow for report review, corrections, and resubmissions.

**INVESTIGATOR'S UNIT AND/OR DIVISION COMMANDER**

115.   The investigator's unit commander shares with PIB and the Bureau Commander the overall responsibility for ensuring the timely completion of a coherent and comprehensive disciplinary investigation. The investigator's commander shall review the completed investigative report and concur or not concur with the investigator's recommendation(s). If the investigator's unit commander does not concur with the investigator's recommendation, he/she shall write an NOPD Form 105 to the PIB Deputy Superintendent and the Superintendent of Police, through his/her chain of command documenting his/her differing recommendation(s) and the reason for each change of recommendation. This Form 105 shall be placed on top of the investigative report and shall accompany it to the Deputy Superintendent of PIB. The composing of this Form 105 shall not delay the processing of the investigation in the bureau.

116.   The investigator's commander shall return to the investigator for further action any investigation that has a factual or investigative deficiency, error, or omission. The deficiencies will be identified in a written report to the investigator that is made part of the file and a copy forwarded within 24 hours of completion to the Deputy Superintendent of PIB.

117.   The investigator's commander shall forward to, and ensure receipt of, the reviewed and approved investigative report to his/her respective bureau commander, to be received by the bureau commander no later than the due dates stipulated by the bureau representative on the Misconduct Investigation Initiation Form. Any revision by the investigator to the investigative report shall not delay the processing of the investigation by the unit commander.

**INVESTIGATOR'S BUREAU CHIEF**

118.   The investigator's Bureau Chief shares with PIB and the unit/division commander the overall responsibility of ensuring the timely completion of a cogent, coherent disciplinary investigation. For disciplinary investigations assigned to a bureau, the investigator's bureau chief shall review the completed formal disciplinary investigative report and concur or not concur with the investigator's recommendation(s).

119.   If the investigator's Bureau Chief does not concur with the investigator's recommendation, he/she shall write an NOPD Form 105 to the PIB Deputy Superintendent documenting his/her differing recommendation(s) and the reason for each change of recommendation. This Form 105 shall be placed on top of the investigative report and shall accompany it to the PIB Deputy Chief. The composing of this Form 105 shall not delay the processing of the investigation in the bureau.

120.   The investigator's Bureau Chief shall return to the investigator for further action an investigation which has a factual or investigative deficiency, error, or omission. The deficiencies will be identified in a written report to the investigator's commander that is made part of the file and a copy forwarded within 24 hours of completion to the PIB Deputy Superintendent.

**COMPLETION OF MISCONDUCT INVESTIGATION INITIATION FORM**

121.   The Misconduct Investigation Initiation Form shall be fully completed by the bureau's PIB liaison, the investigator, the investigator's unit commander, and the Bureau Chief before submitting the completed investigative report to PIB. Each signature shall include a date.

**DISPOSITION OF MISCONDUCT INVESTIGATION**

122.   Each allegation shall result in one of the following dispositions based on a finding of fact and considering the totality of circumstances:

   **Unfounded**—the investigation determines by a preponderance of the evidence that the alleged misconduct did not occur or did not involve the accused officer.

   **Sustained**—the investigation determines by a preponderance of the evidence that the alleged misconduct did occur.

   **Not sustained**—the investigation is unable to determine by a preponderance of the evidence whether the alleged misconduct occurred.

**Exonerated**—the investigation determines by a preponderance of the evidence that the alleged conduct did occur but did not violate NOPD policies, procedures, or training.

**Resigned Under Investigation (RUI) citing the disposition of the completed investigation**

- If the accused employee resigns before the investigation is concluded or before the completion of discipline, the investigation shall be completed and the disposition shall reflect both "RUI" and the investigator's disposition of each accusation. No hearing is conducted.

**Retired Under Investigation (RUI) citing the disposition of the completed investigation (e.g., RUI/Sustained or RUI/Exonerated)**

- If the accused employee retires before the investigation is concluded or before the completion of discipline, the investigation shall be completed and the disposition shall reflect both "RUI" and the investigator's disposition of each accusation. No hearing is conducted.

123.    In addition to resulting in one of the preceding dispositions, administrative investigations shall also assess and document whether the police action was in compliance with training and legal standards; whether the incident indicates a need for additional training, counseling, or other-non-disciplinary corrective measures; and whether the incident suggests that NOPD should revise its policies, strategies, tactics, or training. (see: Program Review Request Form #358). If the supervisor determines during his/her review of an incident that NOPD should revisit policy, tactics, training, or strategy related to the incident, the supervisor shall document that in a PRR Form #358. The supervisor submitting a PRR form #358 is responsible for thoroughly completing the form's "Request" section. The supervisor shall make a digital copy of the form and email it to PSAB@nola.gov. The supervisor shall make an earnest effort to provide information to facilitate the review of the request. Supervisors shall be available to the reviewer and respond to follow-up questions the PSAB reviewer may have.

124.    PIB shall document sharing this information with the relevant commander(s), who shall refer any recommendations to the appropriate individual for implementation, document the implementation, and return that documentation to PIB.

**COMPLETION OF INVESTIGATION**

125.    Every investigator or supervisor assigned to investigate a complaint action shall proceed with due diligence. Factors such as witness availability and the complexity of allegations may affect the progress of the case. Every effort should be made to complete each investigation and impose any disciplinary action within a reasonable period following receipt and in accordance with Departmental Procedure and the Rights of Law Enforcement Officers While Under Investigation (RS 40:2531(B)(7)).

126.    Investigations shall be completed within 60 days (La. R.S. 40:2531(B)(7)) of classification. Classification must occur within fourteen days of the cognizance date. The assigned investigator may request an extension from the New Orleans Civil Service Commission for an additional 60 days if the investigation reasonably requires such an extension.

127.    The investigation is considered complete upon written notice to the employee under investigation of a pre-disciplinary hearing or a determination of an unfounded or not sustained complaint (R.S. 40:2531(B) (7)). The member conducting the investigation

should ensure his/her report is completed by the assigned due date so notification can be made in a timely manner.

## PIB DEPUTY SUPERINTENDENT

128. The PIB Deputy Superintendent shall review every completed investigative report from every bureau.

129. For investigative reports completed by a bureau other than PIB, the PIB Deputy Superintendent shall compose a Form 105 to the Deputy Superintendent of the investigator's bureau addressing and returning any investigative report which has a factual or investigative deficiency, error, or omission which will require further investigation by the investigator. Once all deficiencies, errors, or omissions have been corrected, the investigation shall be returned to the PIB Deputy Superintendent for final review and approval.

130. The Public Integrity Bureau shall review past case reports and specific allegations and dispositions to determine whether there is commonality or a pattern similar to the allegations in the case at hand, considering the time between complaints and their similarity to the subject case. When a member's disciplinary history includes Unfounded, Exonerated, or Not Sustained cases, these cases cannot be used in a credibility determination unless there is a clear pattern or relevancy to the subject case.

131. The Public Integrity Bureau may contact the accused person's supervisor and ask that supervisor to provide his or her observations and assessment of the accused employee.

132. Investigative reports will not be returned informally; they can only be returned with a Form 105 from the PIB Deputy Superintendent to the Deputy Superintendent of the investigator's bureau, a copy of which will be place in the investigation's permanent file.

133. For investigative reports completed by PIB, the PIB Deputy Superintendent shall return to the investigator any investigative report which has a factual or investigative deficiency, error, or omission which will require further investigation by the investigator. Once all deficiencies, errors, or omissions have been corrected, the investigation shall be returned to the PIB Deputy Superintendent for final review and approval.

134. PIB shall determine the final disposition of all complaint actions. The PIB Deputy Superintendent shall either concur or not concur with the investigator's recommendations or those of any reviewing supervisor documented in a Form 105. If he/she does not concur with any of the recommended dispositions, he/she shall compose his/her own Form 105 addressed to "Memo to File" if he/she determines a differing recommended disposition.

135. The PIB Deputy Superintendent is responsible for ensuring that the disposition approved by the Superintendent is fully implemented in a timely manner, consistent with all rights of the accused member.

## SUPERINTENDENT OF POLICE

136. Once the Deputy of Superintendent of PIB has approved the disposition of an investigation conducted by PIB, the investigation disposition shall be transmitted to the Superintendent of Police for review and final approval. For those investigations conducted by a bureau other than PIB, the Deputy Superintendent of PIB's review concludes the investigation.

**INSPECTION BY ACCUSED EMPLOYEE OF COMPLETED INVESTIGATION**

137.   An investigation of misconduct may include confidential and protected information not revealed to anyone other than authorized personnel, except pursuant to lawful process and in compliance with the **Chapter 82.1.1 – Records Release and Security**. The investigative file shall be securely maintained in PIB for the period required by the organization's record retention schedule.

**COMMUNICATION WITH COMPLAINANT**

138.   PIB shall regularly inform the complainant of the status of the misconduct investigation. At a minimum, PIB shall inform the complainant in writing of the classification of the complaint and the unit assigned to investigate the complaint within ten business days of classification; the disposition of the investigation within ten business days of the investigation's completion; and whether any disciplinary action was taken within ten days of disciplinary decisions being reached.

139.   The investigator shall forward correspondence to the non-member complainant, via departmental letterhead, on the following timetable:
      (a) Immediately upon being assigned the formal investigation, a letter introducing him/herself to the complainant as the investigator of the complaint (Form 197), and
      (b) Every 45 days from the date the investigator's commanding officer received the complaint, updating the status of the investigation. This shall continue until the investigation is submitted for approval (Form 198).

140.   If the investigator is unable to contact the complainant via the telephone number(s) or at the address provided in the Complaint Form, he/she shall mail to the complainant's recorded address a certified letter advising the complainant of the need to immediately contact the investigator. The letter shall advise the complainant that the investigation may be severely impeded without the complainant's assistance if the complainant fails to respond. The investigator shall utilize the wording of the letter shown in Form 199. This correspondence and certification of delivery/receipt shall be included as part of the investigative case file. Even if the complainant cannot be contacted, the investigation shall continue as necessary to resolve the original allegation based on the evidence and investigatory procedures available.

141.   All correspondence shall be included as part of the investigative case file.

**RELEASE OF INFORMATION TO THE PUBLIC**

142.   The release of member information to the public shall be coordinated through the Public Information Office and the Office of the Superintendent of Police.

143.   PIB records are maintained and secured by PIB and are accessible only as consistent with law. The PIB file room is secured with a coded and audible alarm system. PIB records are maintained indefinitely, in accordance with State law and Departmental policy.

144.   A member's disciplinary history shall consist of all sustained and not sustained complaints. PIB shall maintain records of complaints with a disposition of unfounded, exonerated, or NFIM, but the disciplinary history will not include these complaints.

**ANNUAL STATISTICAL SUMMARIES OF INTERNAL INVESTIGATIONS**

145.  PIB shall compile annual statistical summaries based on records of internal investigations and publish the report on the NOPD's Web site. The purpose of the report is to inform the public of the NOPD's investigations and dispositions of misconduct complaints. The annual statistical summary shall be made available to the public or an employee of the Department upon written request to the NOPD Custodian of Records and subsequent approval by the PIB Deputy Superintendent. PIB and the IPM shall coordinate and confer with each other in collecting, analyzing, and reporting this data to avoid or minimize duplication of efforts or resources. The annual statistical summary shall include at least the following:

    (a) a summary of each misconduct complaint including a description of the allegation, the final approved disposition, and any discipline imposed;

    (b) aggregate misconduct complaint data showing the number of each type of complaint and the number and rate of sustained cases after final approval;

    (c) analysis of this data that identifies trends and concerns, and that documents the response to the identified trends and concerns.

**DISCIPLINARY ACTION AND INVESTIGATION FORMS**

146.  The forms utilized to document the receipt, classification, assignment, processing, completion, disposition and tracking of complaints are designed or approved by PIB in accordance with Departmental policy and procedure. The forms and the directions to complete the forms shall be available on the NOPD.org web site in the "Forms" folder. Any revision, addition, or deletion of a form shall be the responsibility of PIB. The Policy Standards Section shall provide support to PIB by completing updates and publication of both the forms and the directions for completion.

## Appendix A – Investigative Case File Organization

The case file shall be organized in a uniform fashion by the case investigator prior to submission to his/her supervisor. The new investigation report format will include colored paper. Each color will be used as a divider to divide the investigation and make it easy to locate documents quickly.

**(a) Pink = Hearing Forms  (Sustained)**
**(b) Orange = Tracking and Miscellaneous Forms (including buck slips, inventory forms, etc.)**
**(c) Green = Exhibits**
**(d) Blue = Notice of Disposition**
**(e) Yellow= Initial Complaint (left hand side)**

The completed investigative report should be placed on the left hand side of the opened folder on top. A yellow paper shall be placed below the completed report. The initial complaint shall be placed under the yellow paper. These pages should be secured with an "acco" fastener in two holes punched at the top of every page.

The right hand side of the folder should have the tracking forms, exhibits (labeled and in order), and notices of disposition. Place all CD's, tapes, loose pictures, and small items (i.e. certified receipts) in one manila envelope and place the envelope on top of all forms on the right-hand side of the folder. These items should be secured with an "acco" fastener with two holes punched at the top of every page.

# FORMAL DISCIPLINARY INVESTIGATION TRANSMITTAL
## ORIGINAL TRANSMITTAL-INVESTIGATIVE CASE EXHIBIT A   Updated 7/20/20

| PIB Control # _____ | IPM# _____ | OIG # _____ | Originated from Web |
|---|---|---|---|

| PIB Commander Review (initial) _____ Date: _____ | RFC: _____ |
|---|---|

### CASE TYPE

| ____ Adherence to Law | ____ Criminal (Orleans) | ____ Unauthorized Force | ____ False/inaccurate | ____ 1st Amend |
|---|---|---|---|---|
| ____ Administrative | ____ Crminal (Other Juris) | ____ Domestic Violence | ____ BWC | ____ Workplace Discrimination/Retaliation |
| ____ Bias/Racial Profiling/Discrimination Policing | ____ LGBTQ | | | |

**PIB ONLY**

| Emergency Suspension Date _____ | Reassignment Date _____ |
|---|---|
| | From Unit _____ To Unit _____ |

| | TRANSMITTAL FORM |
|---|---|
| Date of Cognization of Allegation _____ | Form Completed by: _____ |
| Date Control # Issued _____ | |
| Date Complaint Form Received in PIB _____ | Date Form Rec'd/completed _____ |
| Date Investigation Determined (w/n 3 days receipt) _____ | |
| Date of Classification (due w/n 14 days of cognizance) (Date of Classfication is DATE FORM COMPLETED) _____ | Assigned to: _____ |
| Date Invest due in PIB (40 days from classification) 2/9/1900 | Number of CDs: _____ |
| Date Invest due to PIB if extension is approved 4/9/1900 | Number of Photos: _____ |
| Date Invest Final (60 days from classification) 2/29/1900 | Other (Specify): _____ |
| Date Invest Returned to PIB | |
| 90 Days 3/30/1900 | REC'D BY BUREAU REP (SIGN & DATE) |
| 120 Days 4/29/1900   150 Days 5/29/1900 | _____ |

Remarks

### MUST BE COMPLETED BY INVESTIGATOR AND INVESTIGATOR'S COMMANDER

| Date Investigator Rec'd from Bureau Rep | _____ | | |
|---|---|---|---|
| Assigned Investigator (sign & print name) | _____ | | |
| Date Extension Request sent to Civil Service | _____ | Granted: _____ (Circle one below) | |
| Date receipted copy of ext. request email to PIB | _____ | Y / N / MOOT / Mediation / PIB | |
| Date intro letter sent to complainant | _____ | Date(s) status letter(s) sent _____ | |
| Date completed invest due to invest's supervisor | _____ | Date Rec'd by Supervisor _____ | |
| Date Comp. invest given to invest's commander | _____ | Approved by Commander _____ | |
| | DATE | BY WHOM | |
| Verbal notice of disposition to accsued | _____ | _____ | |
| Written notice of disposition to accused | _____ | _____ | |
| Written notice of disposition signed by accused | _____ | _____ | |

### MUST BE COMPLETED BY INVESTIGATOR'S BUREAU

| Rec'd by Bureau Rep (signature, printed name, and date of receipt | _____ |
|---|---|
| Date completed investigation due to Bureau Chief | _____ |
| Date Completed Investigation rec'd by Bureau Chief | _____ |
| Completed Invest approved by Bureau Chief (sign and date) | _____ |