


# CITY OF NEW ORLEANS
# DEPARTMENT OF POLICE

715 South Broad Street
New Orleans, LA 70119

**LaToya Cantrell**
MAYOR

*"to protect and to serve"*

**Anne E. Kirkpatrick**
SUPERINTENDENT

October 30, 2023

Honorable Susie Morgan
United States District Court (Eastern District)
500 Poydras Street C336
New Orleans, LA 70112

Re Show Cause Hearing (Jeffrey Vappie Investigation)

Dear Judge Morgan:

Thank you for giving the New Orleans Police Department the opportunity to address the concerns of the Court as raised in the Show Cause Hearing on the Jeffrey Vappie Investigation. While there obviously are some disagreements among the city, the Monitoring Team, and the DOJ regarding the actions/inactions of PIB during the Jeffrey Vappie investigation, the NOPD recognizes the benefit in accepting constructive criticism aimed at helping us improve and enhance our procedures and practices moving forward. It is in that spirit that I directed Deputy Chief Nick Gernon (PSAB) to put together a series of recommendations based upon his review of the various filings, presentations, and hearings over the past few months. Therefore, please find attached a remedial plan I directed be prepared to remedy the issues raised during the recent Rule to Show Cause hearing pertaining to PIB.

I have reviewed his recommendations and, where necessary, added some of my own. I've attached the resulting Remedial Action Plan to this letter. Please know that I am fully committed to every action identified in the Plan; and, by signing the Plan, it now is a Superintendent Directive.

I am hopeful you will agree the steps we have committed to take – many of which already are in process – reflect a serious commitment to continue working hard to protect our community and our officers; listen, learn, and cooperate with those trying to help us grow; and move the Department closer to full compliance with the Consent Decree. We look forward to working with the Monitoring Team, DOJ, and the Court to implement the Plan as quickly as possible.

Respectfully,

Anne E. Kirkpatrick, Superintendent
New Orleans Police Department

*"an equal opportunity employer"*

# DEPARTMENT OF POLICE
## INTEROFFICE MEMORANDUM

| | | |
|---|---|---|
| **TO:** | Superintendent Anne Kirkpatrick<br>Superintendent of Police | **DATE:** 10/30/2023 |
| **FROM:** | Deputy Superintendent Nicholas Gernon<br>Professional Standards and Accountability Bureau | |
| **SUBJECT:** | Remedial action based on recent Rule to Show Cause en re PIB / Vappie matter | |

Superintendent Kirkpatrick,

Please find the department's recommended remedial measures, to ensure matters raised during the recent Rule to Show Cause hearing pertaining to the Public Integrity Bureau ("PIB") and its practices in the investigation of Officer Jeffrey Vappie are not replicated.

Although the City and the monitoring team do not agree on some legal aspects of the underlying investigation, nevertheless, the department recognizes the benefit in accepting constructive recommendations to improve procedures moving forward. It is in that spirit these recommendations are being brought to you for your consideration. As you are aware, these recommendations are the result of both internal meetings within City government and external meetings with the monitoring team.

1. **Paragraph 306-**

NOPD has revised the current Serious Discipline Review Board (SDRB) policy to clarify that the Board will treat terminations as reviewable events. We have sent the proposed changes to OCDM for their feedback prior to starting the policy change review process.

NOPD has already re-energized the SDRB with the first monthly meeting scheduled for November 9, 2023. These meetings are scheduled to follow the use of force review boards and will occur with the same regularity. We have requested that the Monitoring Team attend this first hearing and then engage with the NOPD leadership team to develop a reporting process to ensure the Monitoring Team and the Court are kept apprised of SDRB schedules, agendas, and outcomes in real time.

Additionally, as you know, the Department has already begun developing new internal controls to ensure the Executive Protection (EP) unit is closely and effectively supervised. This included the assignment of a full-time sergeant to the unit and its being moved under the supervision of the Chief of Operations Bureau.

PSAB, the Monitoring Team, and DOJ have been working together for some time to finalize an appropriate policy and Standard Operating Procedure for the executive protection team.

Once those documents are in place, we will ensure all members of the EP team and their supervisors receive training on the new policies and procedures.

Finally, the PSAB's policy writers are currently reviewing and enhancing the Department's current policies relating to the assignment and reassignment of officers. We will work closely with the Monitoring Team and DOJ throughout this process as we have with our prior policy re-writes. In addition to policy changes, we will also revise any necessary forms to ensure they conform with the new procedures. In our preliminary review of this, there does not appear to be a requirement that some of these movements are documented in a meaningful way. However, others are documented in the payroll system which feeds into Insight. The creation of both policy guidance and forms for documentation will ensure this occurs on a more consistent basis.

I am confident these immediate actions will benefit the Department and the community, but if the Court, the Monitoring Team, or the DOJ have additional recommendations, we are receptive to hearing them.

2. **Paragraph 313—**

NOPD will request assistance from OCDM with determining where new policies are needed regarding the drafting of new or enhancement of existing policies to review supervisors' roles in misconduct. NOPD believes this was achieved with the SDRB, but we should not assume this is the case. Upon your approval NOPD will coordinate with OCDM to request they determine where deficient policies exist and begin modifying them accordingly. As noted above, the SDRB is being reinvigorated and we will work with OCDM to fine tune the process as we move through the review of these cases.

OCDM also expressed concerns regarding the supervisor's role in OPSE and EP violations. NOPD has taken steps to increase accountability in the EP unit with the previously discussed changes. However, there is still a lot of work to be done on OPSE reforms. NOPD should request the monitoring team's technical support for several key matters. One, what system previously allowed supervisors to be aware of their subordinates possible misconduct prior to 2023. In other words what did supervisors know and how should they have known it. I would suggest there was not a system which allowed supervisors to be aware of their subordinate's OPSE billing hours. The second matter, likely of more value, should be technical assistance in determining whether the current system of reforms implemented in 2023 provides the needed information to supervisors regarding their subordinate's possible violations of policy. Finally, OCDM may want to provide a review of NOPD's repeated requests of the Finance Department to allow for data sharing between the two systems to flag possible violations in near real time.

Another area of concern within paragraph 313 is whether supervisors are being held accountable for their subordinate's action and whether they alert higher level supervisors if

there are concerns regarding an employee's performance. I believe this can be achieved by enhanced training by the Academy regarding the use of Insight to both document supervisor's actions as well as escalate concerns. However, this training should not be done in a vacuum. After developing said training, NOPD should request OCDM assist with developing a way to measure whether this training is occurring in a meaningful way. NOPD has done this with OCDM's subject matter experts, however there is room for improvement.

### 3. Paragraph 399 (allegations)

There was significant concern regarding NOPD's policies regarding complaint classification, and specifically the proper use of allegation-based intake classification.

NOPD has taken steps to enhance specific policies within chapter 52.1 to ensure proper complaint intake based on a citizen's allegations. NOPD should check with OCDM to ensure these revisions alleviate the concerns that were raised regarding this issue.

Another area of concern was regarding the training surrounding complaint classifications. PIB and PSAB should be directed to retrain their intake personnel to ensure proper complaint classifications are made. This training should include all levels of the chain of command as the intake documentation is often approved up to the captain's level.

A final area of concern within this paragraph concerns the department's ability to conduct both criminal and administrative investigations concurrently. Although the policy always allowed this, it also allowed for a deviation at the approval of the Deputy Chief of PIB. Over time this deviation became the default position of PIB and administrative investigations were held in abeyance until the completion of the criminal investigation. The new policy draft now requires the superintendent or her designee to authorize the delay in the administrative investigation. Additionally, PIB is drafting new SOPs which give investigators guidance on how to conduct both investigations concurrently. Finally, the department should default to concurrent investigations unless specific circumstances exist which cause you to allow an exemption. Increased training and awareness to accompany PIB's SOPs should ensure the system does not allow delayed administrative investigations to become the norm again.

One of the most impactful decisions regarding the Vappie investigation was the failure to outsource the inquiry from the beginning. This was not due to lack of trying on the part of PIB, but was due to the fact no other investigative body was willing to take the case. However, there will be sensitive cases in the future which require outsourcing of the investigation. When this occurs the department should not have to rely on the kindness of other agencies, but

should have an option in place. To this end the new policy now includes guidance allowing for the outsourcing of investigations at the superintendent's discretion to outside entities such as law firms. This addition was made at your request. It is also my understanding your office will continue to seek funding sources to allow for these cases to be outsourced as needed. This option will allow for these investigations to proceed unimpeded by the appearance of impropriety.

Another concern raised by the rule to show cause is in regards to the PIB conflict policy. I believe our new draft of 52.1 addresses this matter, but OCDM should be consulted to determine if they agree.

A reoccurring theme throughout this process was the department's inability to recognize deficiencies in PIB. This lack of recognition leads to the consequence of deficiencies not being corrected. NOPD PSAB had already started to solve this issue by developing the department's first PIB audit protocol. Up until this point, PIB had spot checks conducted at random intervals. However, this did not allow for a base line to assist in tracking the evolution of progress (or regression) over time. By developing and conducting a full PIB audit, NOPD will be able to identify and address issues within PIB. This will allow a systematic review, rather than relying on a random spot check. The preliminary PIB audit protocol has been reviewed by OCDM's experts and is being revised based on their feedback. However, from what I have seen they are pleased with the work that has been done so far. PSAB will continue to develop this protocol and eventually execute said audit annually.

A final area of concern was officers working more than 16 hours and 35 minutes in a 24-hour period. This violation impacts several areas of the consent decree, but an explanation here is appropriate given the concerns regarding allegation-based classification protocol. The NOPD, OCDM, and DOJ have all agreed to modify the consent decree requirement pertaining to hours worked in a 24-hour period. The city attorney is currently drafting language for this and several other modifications for filing.

4. **Paragraph 403 (timing)**

Paragraph 403 has always been an area of concern due to its wording and a lack of agreement as to what the paragraph requires. City Attorney Elizabeth Robins is drafting a recommended modification to this paragraph. She has spent years litigating cases on the City's behalf in civil service and has a specific expertise in both the law surrounding this area as well as the practices which occur surrounding discipline. She should be allowed to continue to craft a modification which is clear and everyone can agree upon. Her modification will include both timing of the investigation (pursuant to state law), as well as timing regarding imposition of discipline.

Upon completing the modification, NOPD PSAB will create a dashboard or other mechanism to track these timelines to ensure compliance with both state law, as well as, this modified paragraph.

Finally, this measurement will be added to the PIB audit protocol currently in development. This will allow for formal auditing to determine compliance over time.

5. **Paragraph 409/419**

There were several concerns brought up regarding the unauthorized release of the statements involved in the Vappie matter prior to the adjudication of the inquiry. NOPD added language to the new draft of 52.1 which we believe addresses the security of PIB investigations and records, however we have also asked DOJ for assistance in crafting additional guidance for inclusion in this policy.

6. **Paragraph 411 (notification to OCDM of criminal investigation)**

One of the requirements of 411 is the notification of OCDM of criminal investigations. During the Vappie matter, it was alleged NOPD did not do so as anticipated by the consent decree. PIB is currently drafting guidance to ensure OCDM is made aware of criminal investigation of members of NOPD. Additionally, it is recommended that you, in your capacity as Superintendent, issue a clear instruction reminding members of the command staff about their obligations under the consent decree with a specific emphasis on our commitment to comply with OCDM / DOJ access provisions. This directive, in the form of either a general order or a memorandum, can be drafted by the PSAB chief and your counsel in conjunction with OCDM's input.

This notification requirement is also being addressed by PIB through their development of regular meetings with OCDM to bring them up to speed on members under criminal investigation. This information is tracked in IApro and can be transmitted to OCDM by PIB monthly as well, similar to our system for fulfilling Brady requirements with the District Attorney's Office.

7. **Paragraph 413 (circumstantial evidence)**

The need for enhanced training for PIB investigators regarding circumstantial evidence was also raised during this process. NOPD PIB should be directed to review existing training material and enhance areas which may need emphasis. NOPD PIB should ensure this review is completed prior to 2024 supervisor in-service and is incorporated into next year's lesson plans. PIB should also be directed to coordinate with OCDM to ensure the new enhanced training meets

OCDM's expectations. This training should include clear guidance regarding circumstantial evidence and credibility.

An additional concern raised in this area was that all city employees should be reminded they come under the scope of the consent decree. I would recommend you seek an opinion from the City Attorney regarding this view and request that office to work with the CAO's office to determine the best way to address this matter.

### 8. Paragraph 414 (Preponderance of Evidence)

There were two areas of concern raised regarding the preponderance of evidence standard. The first was regarding current policy requirements in applying this standard and documenting it in an investigation. I believe NOPD has resolved this in the new version of policy 52.1, specifically in the definitions and paragraph 137, however OCDM should be asked to weigh in on such.

The second area is in regards to how we train our investigators in using this standard. PIB should include this new guidance in their 2024 supervisor's in-service sessions, however they need to start revising their lesson plans now in order to do so.

### 9. Paragraph 415 (disposition)

The monitoring team has requested enhanced tracking in IApro of disciplinary investigations dispositions. NOPD PIB should be directed to work with OCDM to understand what specific enhancements they would like to see. PIB QAU should be directed to ensure OCDM's requests are implemented. Finally, PIB personnel are attending enhanced IApro training at the end of October and should be given instructions to seek out additional information regarding tracking of disposition of cases from this vendor hosted training.

OCDM has also raised concerns regarding policy enhancements giving guidance to violations investigated but not included in the initial complaint. I believe the new draft of 52.1 addresses this concern based on the feedback I got from OCDM and OIPM.

OCDM has also asked for periodic reports to the monitoring team regarding dispositions. As part of the previously referenced enhancements discussions, PIB should be directed to ensure they understand what the monitor would like reports on. PIB and PSAB can then work to develop a dashboard to capture this data from IApro.

Finally, this area will also be included in the PSAB audit of PIB to ensure compliance and track progress over time.

### 10. Paragraph 416 (Superintendent Signature)

The consent decree did not fully anticipate the consequences of the superintendent approving a completed investigation prior to the collection of information at subsequent hearings. As such this area is ripe for modification. The draft language has already been crafted between Mr. Douglass and Chief Gernon and will be included in City Attorney Robin's modification filings.

### 11. Paragraph 420 (timing) (see also 403)

Paragraph 420 governs the requirements that the department keep complainants up to date on investigations. Paragraph 403 governs the timeline of investigations and imposition of discipline. OCDM seems to be seeking more information to help us all understand what our timelines are and whether we are complying with them. Paragraph 403 requires substantial modification, with the challenge of distinguishing between timelines for completing misconduct investigations pursuant to state law, versus timelines for issuance of discipline. As such PIB's QAU should give monthly reports to the monitoring team on the timeline of cases closed in the previous month. This will assist all parties in establishing and measuring timelines. In providing this information OCDM, PIB, and PSAB will likely identify gaps in the data which will allow for further refinement of future data collection and reporting.

Another issue raised here was confusion as to what constitutes a citizen Compliant versus a Rank initiated Complaint in terms of keeping the complainant informed. NOPD's new draft of 52.1 should clarify these expectations, however I will ensure OCDM has the same view of this policy.

### 12. Paragraph 454 (sharing draft reports with Monitoring Team)

Another area where there is an opportunity to have better outcomes pertains to developing clear written guidance on what goes to the Monitoring team, from whom, and when, particularly in regards to disciplinary investigations. NOPD PIB is establishing a protocol with OCDM to satisfy the requirements regarding future 454 eligible complaints. Once finalized PIB will put these requirements into their SOPs for future guidance. Additionally, PIB has sent all existing active criminal investigations to OCDM. Finally, as noted in section six above, PIB is developing a procedure to transmit this information to OCDM monthly.

In addition to the concerns regarding PIB investigations being relayed to OCDM, the previously noted memorandum or directive from your office to all command staff should include guidance for meeting the department's obligations under the consent decree. The city attorney and I can craft the language with the input of OCDM to ensure this is communicated correctly.

OCDM has also indicated a need to enhance the intake form to note the requirements of 454. With your permission, PSAB will work with OCDM to determine what enhancements they would like to see to the form and update them accordingly.

Finally with your approval I will ensure the requirements of 454 are included in the PIB audit protocol being crafted. As 454 was not a measured paragraph prior to this matter, it was not included in the draft protocol being crafted.

13. **Paragraph 470/472**

Another area of concern was the department's failure to turn over all requested documents to the monitoring team as required by multiple paragraphs, but specifically 470 and 472. As part of your directive clarifying the department's obligations to share information with the monitoring team, references to 470 and 472 should be included. Again, I will draft said memorandum with the assistance of the City Attorney and OCDM.

If you agree with the proposed path for each of these issues, please approve this memorandum and I will circulate it to the appropriate members of the department as well as all executive staff.

If you wish to modify any of these recommendations, kindly disapprove this request and author a cover memorandum detailing what sections you would like modified.

Respectfully,

*[signature]*

Nicholas L. Gernon
Deputy Superintendent

Approved / Disapproved

*[signature]*

Anne Kirkpatrick        10/30/2023
Superintendent of Police

CC: Doneisa Turner
    Keith Sanchez