UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1924** |
| **CITY OF NEW ORLEANS,** Defendant | **SECTION "E" (2)** |

ATTACHMENT "A"

18. NOPD agrees to review each policy or procedure 365 days after it is implemented ~~and annually thereafter~~. **NOPD agrees to review each policy related to the areas listed in paragraph 21 annually thereafter,** to ensure that the policy or procedure provides effective direction to NOPD personnel and remains consistent with the Agreement, best practices, and current law. **NOPD agrees to review each policy described in paragraph 23 once every two years.** NOPD also agrees to review and revise policies and procedures as necessary upon notice of a significant policy deficiency during audits or reviews. NOPD agrees that Department-wide policies and procedures shall be collected in a Department-level policy and procedure manual, and unit-wide policies and procedures shall be collected in unit-level policy and procedure manuals. NOPD agrees to develop and implement policy and procedure manuals for, at a minimum, the following NOPD functions:

  a)   Field operations, including patrol, task forces, and special operations;

  b)   Supervisory Procedural Manual;

    c)    PIB, including case and records management, administrative investigations, confidential investigations, parallel criminal and administrative investigations, audits, and officer drug testing;

    d)    Use of Force Reporting, Investigation, and Review, including both Supervisory and FIT investigations;

    e)    Criminal investigations, including sub-units assigned to investigate homicides, sexual assaults, domestic violence, narcotics, vice, and illegal firearms; and

    f)    Recruitment and Training, including Academy and In-Service training.

108. NOPD agrees to develop and implement a Use of Force Review Board to review all serious uses of force and other FIT investigations. The UFRB shall be comprised of the Deputy Superintendent of the Public Integrity Bureau, the Deputy Superintendent of the Field Operations Bureau, and the Deputy Superintendent of the Investigations & Support Bureau. The UFRB shall conduct timely, comprehensive, and reliable reviews. The UFRB shall:

    a)    review each FIT investigation within 30 days of receiving the FIT investigation report to ensure that it is complete and that the findings are supported by a preponderance of the evidence;

    b)    hear the case presentation from the lead investigator and discuss the case as necessary with the investigator to gain a full understanding of the facts of the incident. The officer(s) who used the force subject to investigation, or who are otherwise the subject(s) of the FIT investigation, shall not be present;

c) order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improve the reliability or credibility of the findings. Where the findings are not supported by a preponderance of the evidence, the UFRB shall document the reasons for this determination, which shall be included as an addendum to the original investigation, including the specific evidence or analysis supporting their conclusions;

d) ~~determine whether the force violated NOPD policy. If the force violated NOPD policy, the UFRB shall refer it to PIB for disciplinary action~~ **make a referral to PIB if the force may have violated NOPD policy. The UFRB shall not make recommendations concerning discipline, but the UFRB is obligated to ensure a referral to PIB if potential misconduct is discovered in the review process. Any member of the UFRB also may refer any potential misconduct to PIB, even if the UFRB, as a whole, does not make such a referral;**

e) determine whether the incident raises policy, training, equipment, or tactical concerns, and refer such incidents to the appropriate unit within NOPD to ensure they are resolved;

f) direct District supervisors to take and document non-disciplinary corrective action to enable or encourage an officer to improve his or her performance; and

g) document its findings and recommendations in a UFRB Report within 45 days of receiving the FIT investigation and within 15 days of the UFRB case presentation.

109. NOPD shall provide all NOPD officers with 40 hours of use of force training within 365 days of the Effective Date, and ~~24 hours of~~ **additional** use of force training on at least an annual basis thereafter, including, as necessary, developments in applicable law and NOPD policy. NOPD shall coordinate and review all use of force training to ensure quality, consistency, and compliance with the Constitution, Louisiana law, this Agreement and NOPD policy.

**Pursuant to Paragraph 251, NOPD must annually conduct a Training Needs Assessment to inform NOPD's Training Plan. NOPD will use the Training Needs Assessment to: (1) gather and analyze training information; (2) identify specific training needs and/or deficiencies; (3) develop a curriculum that will increase the necessary skill sets of NOPD employees, and (4) determine and prioritize essential topical training areas for additional annual training. NOPD shall use the Training Needs Assessment to identify training objectives in the Training Plan subject to approval as set forth in Paragraph 251. Based on the approved Training Plan, NOPD will develop curriculum and employ Adult Learning Theory methods in its training delivery, with an emphasis on Problem-Based Learning (PBL) integrated exercises.**

NOPD's use of force training shall include the following topics:

a) NOPD's use of force model, as described in this Agreement;

b) proper use of force decision-making;

c) use of force reporting requirements;

d) the Fourth Amendment and related law;

e)     role-playing scenarios and interactive exercises that illustrate proper use of force decision-making, including training on the importance and impact of ethical decision making and peer intervention;

f)     the proper deployment and use of all intermediate weapons or technologies, including batons, canines, and ECW's;

g)     de-escalation techniques that encourage officers to make arrests without using force, and instruction that disengagement, area containment, surveillance, waiting out a subject, summoning reinforcements, calling in specialized units, or delaying arrest may be the appropriate response to a situation, even when the use of force would be legally justified;

h)     threat assessment;

i)     basic crisis intervention and interacting with people with mental illnesses, including instruction by mental health practitioners and an emphasis on de-escalation strategies (the Crisis Intervention Training provided to all new and current officers pursuant to this Agreement may be combined with this training);

j)     factors to consider in initiating or continuing pursuit;

k)     appropriate training on conflict management; and

l)     for supervisors of all ranks, as part of their initial and annual in-service supervisory training, additional training in conducting use of force investigations; strategies for effectively directing officers to minimize uses of force and to intervene effectively to prevent or stop unreasonable force; and supporting officers who report unreasonable or unreported force, or

who are retaliated against for using only reasonable force or attempting to prevent unreasonable force.

118. In addition to the more extensive training for CIT officers set out above, NOPD agrees to provide all new recruits at least 16 hours of training on responding to persons in behavioral or mental health crisis, and ~~four hours of~~ **additional** in-service training annually thereafter **as specified in the approved Training Plan**. NOPD and the City further agree to provide all current officers with eight hours of training on responding to persons in behavioral or mental crisis within 365 days of the Effective Date, and ~~four hours of in service~~ **additional in-service** training annually thereafter **as specified in the approved Training Plan**.

150. Officers shall document investigatory stops and detentions, and any searches resulting from or proximate to the stop or detention. In all instances where property or evidence is seized, the officer shall immediately complete a police incident report documenting a complete and accurate inventory of the property or evidence seized, and submit the property or evidence seized to Central Property and Evidence before the end of shift. All documentation of stops, detentions, searches, and seizures shall be submitted to the officer's supervisor by the end of shift. Absent exceptional circumstances, field supervisors shall review investigatory stops and detention or search reports by field officers within ~~12~~ **72** hours of receiving this report. Supervisors shall report and shall document: (1) those investigatory stops and detentions that appear unsupported by reasonable suspicion; (2) those searches that appear to be without legal justification; (3) stops or searches in violation of NOPD policy or this Agreement, or (4) stops or searches

that indicate a need for corrective action or review of agency policy, strategy, tactics, or training.

162. NOPD shall provide all officers with at least 24 hours within 365 days of the Effective Date; and, **at least four hours** on at least an annual basis thereafter, **additional of** training on stops, searches, and arrests, including the requirements of this Agreement **as specified in the approved Training Plan**.

Such training shall be taught by a qualified legal instructor with significant experience in Fourth Amendment issues, and shall:

a) address Fourth Amendment and related law, NOPD policies, and requirements in this Agreement regarding searches and seizures;

b) address First Amendment and related law, NOPD policies, and requirements in this Agreement on the rights of individuals to verbally dispute, observe, and record officer conduct;

c) address the difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable suspicion, and mere speculation; and between voluntary consent and mere acquiescence to police authority;

d) provide guidance on the facts and circumstances that should be considered in initiating, conducting, terminating, and expanding an investigatory stop or detention;

e) provide guidance on the level of permissible intrusion when conducting searches, such as "pat-downs" or "frisks;"

  f)  provide guidance on the legal requirements for conducting searches, with and without a warrant;

  g)  provide guidance on the permissible nature and scope of searches based on the level of intrusion on an individual's privacy interests, including searches conducted pursuant to probation or parole release provisions;

  h)  specify the procedures for executing searches, including handling, recording, and taking custody of seized property or evidence;

  i)  provide guidance on effecting an arrest with and without an arrest warrant; and

  j)  provide guidance regarding the nature and scope of searches.

177. NOPD agrees to provide all officers with four hours of comprehensive training on bias-free policing within 365 days of the Effective Date, and **additional training** ~~four hours~~ annually thereafter **as specified in the approved Training Plan**, based on developments in Louisiana or federal law and NOPD policy. Such training shall emphasize that discriminatory policing in the form of either selective enforcement or non-enforcement of the law, including the selection or rejection of particular tactics or strategies based upon stereotypes or bias, is prohibited by policy and will subject officers to discipline.

  This training shall address:

  a)  methods and strategies for more effective policing that rely upon non-discriminatory factors;

  b)  police and community perspectives related to discriminatory policing;

- c) Constitutional and other legal requirements related to equal protection and unlawful discrimination, including the requirements of this Agreement;
- d) the protection of civil rights as a central part of the police mission and as essential to effective policing;
- e) the existence and impact of arbitrary classifications, stereotyping, and implicit bias;
- f) instruction in the data collection protocols required by this Agreement;
- g) identification of key decision points where prohibited discrimination can take effect at both the incident and strategic-planning levels; and
- h) methods, strategies, and techniques to reduce misunderstanding, conflict, and complaints due to perceived bias or discrimination, including problem-oriented policing strategies.

209. NOPD agrees to track ~~in its Justice Trax Laboratory Information Management System the~~ **sexual assault** evidence collected and whether it was submitted to a crime lab for testing. Where **sexual assault** evidence is not submitted, NOPD agrees to record in this System the justification for this decision **in an electronic database that includes date collected and all dispositions**.

226. Within 365 days of the Effective Date and annually thereafter, NOPD agrees to provide ~~**eight hours of**~~ structured annual in-service training on community policing and problem-oriented policing methods and skills for all officers, including supervisors, managers and executives **as specified in the approved Training Plan**.

    This training shall include:

    a)    methods and strategies to improve public safety and crime prevention through community engagement;

    b)    scenario-based training that promotes the development of new partnerships between the police and community, targeting problem solving and prevention;

    c)    leadership, ethics, and interpersonal skills;

    d)    community engagement, including how to establish formal partnerships and actively engage community organizations, including youth, immigrant, and LGBT communities;

    e)    problem-oriented policing tactics, including a review of the principles behind the problem solving framework developed under the "SARA Model" (Scanning, Analysis, Response, Assessment), which promotes a collaborative, systematic process to address issues of the community, including safety and quality of life;

    f)    conflict resolution and verbal de-escalation of conflict; and

    g)    cultural awareness and sensitivity training. Cultural awareness training shall be designed and delivered in cooperation with City Human Relations Commission staff and community representatives selected by the Commission.

257. NOPD shall submit all new or revised training curricula and lesson plans for training required by this Agreement to the Monitor and DOJ for review and comment at least ~~90~~ **30** days prior to the scheduled date of training delivery. The Monitor shall review the curricula or lesson plans and provide the Parties with written comments within ~~30~~ **10**

days of receipt thereof. Within ~~30~~ **10** days of receipt of the Monitor's comments, DOJ shall have the right to review and comment on whether the curricula and lesson plans are consistent with, and incorporate the requirements of, this Agreement and applicable law.

258.(b) Successful completion of the POST Instructor Development Course **and/or Louisiana-POST-approved equivalent** within one year of being assigned to the training division.

365.  No employee, including Reserve officers, shall work more than 16 hours 49 minutes within ~~a~~ **any** 24-hour period. **~~(The 24-hour period begins the first time the employee reports for either regular duty or secondary employment allowing for a minimum of eight hours of rest within each 24-hour period.)~~ (A separate 24-hour period beings every time an employee reports for regular duty and every time they report for secondary employment allowing for a minimum of seven hours and 11 minutes of rest within each 24-hour period.)** These hours are cumulative and include normal scheduled work hours, overtime, off-duty secondary employment, and outside employment. **If an employee works over the 16-hour-and-49-minute limit, for reasons beyond his/her control (e.g., regularly scheduled duty hours coupled with a mandatory court overtime appearance), the employee shall submit a memorandum through the chain of command to the Superintendent or his/her designee explaining why he/she worked over the limit. Such memorandums that are approved by the Superintendent shall equate to retroactively authorized exceptions to the limit. Exceptions to the 16-hour-and-49-minute limit may be authorized in**

**advance by the Superintendent of Police or his/her designee in situations involving a declared state of emergency or security concerns over the availability of personnel for coverage related to a major special event.**

382. All personnel conducting NOPD officer misconduct investigations, whether assigned to PIB, a District, or elsewhere, shall receive at least 40 hours of initial training in conducting officer misconduct investigations within 365 days of the Effective Date, and shall receive ~~at least eight hours of~~ **additional** training each year **as specified in the approved Training Plan**.

    This training shall include instruction in:

    a)    investigative skills, including proper interrogation and interview techniques; gathering and objectively analyzing evidence; surveillance; and data and case management;

    b)    the particular challenges of administrative police misconduct investigations, including identifying alleged misconduct that is not clearly stated in the complaint or that becomes apparent during the investigation; properly weighing credibility of civilian witnesses against officers; using objective evidence to resolve inconsistent statements; and the proper application of the preponderance of the evidence standard;

    c)    relevant state, local, and federal law, including state employment law related to officers and the rights of public employees, including but not limited to La. Rev. Stat. 40:2531, "Rights of Law Enforcement Officers While Under Investigation," and local Civil Service Commission requirements, as well as criminal discovery rules such as those set out in

> *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Brady v. Maryland*, 373 U. S. 83 (1963); and
>
> d) NOPD rules and policies, including the requirements of this Agreement, and protocols related to criminal and administrative investigations of alleged officer misconduct.

403. All administrative investigations conducted by ~~PIB~~ **NOPD** shall be completed within the time limitations mandated by state law. ~~and within 90 days of the receipt of the complaint, including assignment, investigation, review and final approval, unless granted an extension as provided for under state law or Civil Service exemption, in which case the investigation shall be completed within 120 days.~~ **NOPD shall complete all administrative investigations within no more than 135 days of the Complaint Cognizance Date (defined as the date on which an NOPD supervisor, whether assigned to PIB or assigned to another Bureau, receives a complaint of alleged employee misconduct from any source, or observes employee misconduct, which shall be the same date NOPD assigns a complaint tracking number (CTN) to the complaint). The investigation is concluded upon issuance (as defined by current state law) of The Notice to the Accused of a Scheduled Disciplinary Hearing. NOPD will ensure all supervisory reviews, disciplinary hearings, and notifications to the accused of the appropriate discipline via a disciplinary letter are completed within ninety (90) days of the conclusion of an administrative investigation. Completion of the post-investigative procedure may be extended for up to one 30-day period upon written approval of the**

**Superintendent of Police. The Superintendent's notification to the accused shall include the date the imposition of punishment shall commence, if applicable. The imposition date shall not be more than 45 days following the date of notification unless the justification for the delay is documented in writing by the Superintendent.** ~~Where an allegation is sustained, NOPD shall have 30 days to determine and impose the appropriate discipline, except in documented extenuating circumstances, in which case discipline shall be imposed within 60 days.~~ All administrative investigations shall be subject to ~~appropriate interruption~~ ( **an appropriate** tolling period ) as necessary to conduct a concurrent criminal investigation or as provided by law.

407.   ~~Each~~ Officers, witness**es**, and complainant**s** shall be interviewed separately **as necessary to sufficiently investigate the allegation. Group interviews shall not be permitted. A**n NOPDAI **or approved translation service provider** not involved in the underlying complaint will be used when taking statements or conducting interviews of any ~~Vietnamese or Spanish speaking~~ **LEP** complainant or witness.

416.   The PIB ~~commander~~ **Deputy Chief (or proxy holding the rank of Deputy Chief)** shall accept the investigator's recommended disposition ~~and the Superintendent shall approve the disposition,~~ unless the disposition is unsupported by a preponderance of the evidence or additional investigation is necessary to reach a reliable finding **within the timelines**. Where the disposition is unsupported by a preponderance of the evidence, the ~~PIB Commander~~ **PIB Deputy Chief (or proxy)** may correct the disposition or order additional investigation as necessary.