**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

Plaintiff

v.

THE CITY OF NEW ORLEANS

Defendant

CIVIL ACTION NO. 12-CV-01924

SECTION E
JUDGE SUSIE MORGAN
DIVISION 2
MAGISTRATE CURRAULT

\*      \*      \*

**SUSTAINMENT PLAN**

1

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 3

    A.  Background ........................................................................................................ 3

    B.  Definitions/Abbreviations ................................................................................. 3

    C.  Purpose of Sustainment Plan ............................................................................ 4

II.  RIGHTS & OBLIGATIONS DURING SUSTAINMENT PERIOD ........................... 6

    A.  Commitment to Retain a Structure Aimed at Ensuring Compliance ............... 6

    B.  Commitment to Meaningful Self-Monitoring ................................................... 7

    C.  Ongoing Corrective Actions and Remedial Measures ..................................... 9

III.  SCHEDULED MONITOR AUDITS AND REVIEWS DURING SUSTAINMENT
PERIOD ........................................................................................................................... 15

    A.  Annual Spot Audits ........................................................................................ 15

    B.  Quarterly Spot Audits ..................................................................................... 15

    C.  Regular/As-Needed Reviews .......................................................................... 15

    D.  Coordination of Audits ................................................................................... 16

IV.  VIOLATIONS OF THE CONSENT DECREE / SUSTAINMENT PLAN ................ 17

    A.  Powers and Role of the Court ........................................................................ 17

    B.  Process For Tolling/Terminating Sustainment Period ................................... 17

V.  ATTACHMENTS ........................................................................................................ 18

    A.  PCAB Compliance Plan ................................................................................. 19

    B.  PSAB 25/26 Audit Schedule .......................................................................... 20

    C.  Guidelines for Outside Entity Audits ............................................................. 21

    D.  Domestic Violence/Sexual Assault Public Reporting Corrective Actions ..................... 22

    E.  Domestic Violence ("DV")/Sexual Assault ("SA") GOA Corrective Action Plan ....... 23

    F.  PIB Audit Schedule Milestones ..................................................................... 25

    G.  Sustainment Plan Deadlines ........................................................................... 26

## I.    INTRODUCTION

### A.    Background

1.    On July 24, 2012, the United States Department of Justice ("DOJ") filed the complaint in this matter against the City of New Orleans ("City"), seeking declaratory and injunctive relief after an investigation of the New Orleans Police Department ("NOPD" or "Department") (the City, the NOPD, and DOJ collectively may be referred to as "the Parties"), pursuant to the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141 ("Section 14141"); the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d (the "Safe Streets Act"); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d-7, and its implementing regulations, 28 C.F.R. §§ 42.101-.112 ("Title VI"). R. Doc. 1.

2.    On that same day, July 24, 2012, the City and DOJ filed a Joint Motion and Memorandum for Entry of Consent Decree. On September 14, 2012, the City and DOJ filed a Joint Supplemental Motion for Entry of Consent Decree incorporating certain agreed upon modifications to the Consent Decree. R. Doc. 2. The Court approved the Joint Motion for Entry of Consent Decree, as amended, on January 11, 2013. R. Doc. 159.

3.    On August 9, 2013, the Court appointed the law firm of Sheppard Mullin LLP to serve as Consent Decree Monitor. R. Doc. 294.

4.    In 2018, the Parties prepared a restated and amended Consent Decree, incorporating all amendments approved by the Court through October 2, 2018. For the convenience and benefit of the public and the Parties, the Court approved the Amended and Restated Consent Decree on October 2, 2018, and filed the document in the record that same day. R. Doc. 565. At the request of the Parties, the Court subsequently amended the Consent Decree on March 27, 2024. R Doc. 774.

### B.    Definitions/Abbreviations

1.    This Sustainment Plan and attachments shall be referred to as the "**Plan**."

2.    The terms used in this Plan shall have the same meaning as those set forth in section I.C. of the Consent Decree.

3.    For purposes of this Plan, NOPD is a department of the City of New Orleans.

4.    The term "**Sustainment Period**" refers to the two-year period measured from the Effective Date of this document.

3

5.      The term "**Court**" shall refer to the presiding judge (or her successor) in Civil Action 12-1924, pending in the United States District Court for the Eastern District of Louisiana, who approved and entered the Consent Decree as an Order of the Court.

6.      The "**Effective Date**" of this Plan shall be the date on which this Sustainment Plan is approved and entered as an Order of the Court.

7.      A "**Spot Audit**" is a limited review by the Monitor of a prior audit by NOPD. A Spot Audit typically does not involve a detailed review of a statistically valid sample size, and is designed:  (i) to identify any material issues uncovered by the NOPD audit, and (ii) to confirm the NOPD auditor(s) adhered to agreed-upon audit protocols and audit schedules.

8.      A "**Tolling of the Sustainment Period**" refers to an Order of the Court, issued after affording the Parties an opportunity to be heard, suspending the running of the two-year Sustainment Period to permit NOPD and the City to correct/remediate any material failures to comply with the terms of this Plan or the Consent Decree. The Sustainment Period will resume running upon the issuance of an Order of the Court ending the tolling period.

9.      A "**Termination of the Sustainment Period**" refers to an Order of the Court, issued after affording the Parties an opportunity to be heard, terminating the Sustainment Period due to: (a) a pattern of violative behavior by the NOPD or the City, (b) intentional misconduct, reckless disregard, or deliberate indifference, by NOPD or City leadership, to their obligations under this Plan or the Consent Decree, or (c) a failure by the NOPD or the City to take prompt and meaningful action to remedy any material transgression of the Consent Decree or the Plan. A two-year Sustainment Period will recommence upon the issuance of an Order of the Court.

## C.      Purpose of Sustainment Plan

1.      The Parties expressly acknowledge that this Plan does not expand the existing terms of the Consent Decree.

2.      The Parties entered into the Consent Decree with the goal of ensuring that police services are delivered to the people of New Orleans in a manner that complies with the Constitution and laws of the United States and in a manner that ensures the reforms under the Consent Decree are durable and sustainable.

3.      The Parties express a shared recognition that the ability of a police department to protect the community it serves is only as strong as the relationship it has with that community, and that public safety,

constitutional policing, and the community's trust in its police service are thus interdependent.

4.      The Parties recognize that the full and sustained implementation of the Consent Decree is intended to protect the constitutional rights of all members of the community, improve the safety and security of the people of New Orleans, and increase public confidence in NOPD.

5.      It is the expectation of the Parties and the Monitor that the Monitor's role will be reduced during the Sustainment Period, with the understanding that the Monitor will assist the Court to the extent the Court deems necessary during this time. The purpose of the Sustainment Period is to present the City and the NOPD the opportunity to demonstrate that they have the systems in place to monitor their own compliance and to take meaningful corrective actions where such monitoring identifies areas in need of improvement.

## II.    RIGHTS & OBLIGATIONS DURING SUSTAINMENT PERIOD

### A.    Commitment to Retain a Structure Aimed at Ensuring Compliance

1.    The City and NOPD recognize the importance of maintaining, staffing, and resourcing the departments, units, boards, and other structures as outlined in the Consent Decree and this Plan. It is through these efforts, many of them adopted voluntarily by the NOPD as part of its ongoing reform activities, that NOPD best will be able to ensure the progress it has made to date remains durable and sustainable.

2.    As previously proposed by the City, in order to achieve full and effective compliance with Section XV of the Consent Decree, the City and NOPD recognize the importance of and agree to maintain a meaningful Serious Discipline Review Board ("SDRB"), to include a clear policy, practical and detailed Standard Operating Procedures, a consistent meeting schedule, and periodic reviews by the NOPD Professional Standards and Accountability Bureau ("PSAB").

3.    The Parties, the Monitor, and the Court recognize NOPD developed an active bystandership program called Ethical Policing is Courageous ("EPIC"). The program is focused on preventing harm to community members and officers by teaching officers meaningful, practical active bystandership tactics and strategies to prevent misconduct, reduce mistakes, and promote officer health and wellness. The Parties, the Monitor, and the Court further recognize the EPIC program now has grown into a national active bystandership program called the Active Bystandership for Law Enforcement ("ABLE") Project to which NOPD committed in 2021. The City commits to continuing to train officers in the EPIC/ABLE principles. Furthermore, the NOPD will continue abiding by the rules of the ABLE program as long as the Department participates in the ABLE program.

4.    As provided in CD ¶ 229, NOPD agrees to continue using trustworthy data as a meaningful management tool. The Parties, the Monitor, and the Court recognize NOPD previously developed a data analytics program called MAX. The program facilitates decision-making by supervisors, managers, and leaders. NOPD agrees to continue holding regular MAX meetings or similar meetings that serve the same purpose as MAX for the duration of the Sustainment Period.

5.    The City recognizes the importance of the Regulation enacted by the City Council pursuant to Section 4-107 of the Home Rule Charter and Section 2-1000 of the City Code on or about November 13, 2017, and agrees not to attempt to revise the Regulation during the period of the Consent Decree without prior consultation with DOJ, the Monitor, and the Court.

6.    NOPD and the City commit to improving the functioning of, and developing more meaningful partnerships with, the various Police Community Advisory Boards ("PCABs"). To this end, the City and NOPD will work with DOJ and the Monitor to develop a mutually acceptable PCAB compliance plan with specific requirements and timelines.  The Parties will supplement the Sustainment Plan to include the PCAB plan as Attachment V.A within 15 days of the Effective Date.

7.    NOPD and the City will continue to work cooperatively with the OIPM as contemplated by Section XVIII.F. of the Consent Decree and the IPM/NOPD MOU dated November 10, 2010.

8.    NOPD and the City will continue taking meaningful steps to ensure wide public access to information regarding NOPD decision-making and activities as required by Paragraph 429 of the Consent Decree, including, but not limited to, regular publication (via, at least, a clear and obvious link on NOPD's website) of disciplinary letters that were issued in the previous quarter (with non-public information removed consistent with the law).

**B.    Commitment to Meaningful Self-Monitoring**

1.    PSAB Audits

a.    NOPD agrees to conduct audits for compliance with the material provisions of the Consent Decree according to the audit schedule set forth in incorporated Attachment V.B to this Plan or as updated pursuant to the Consent Decree. NOPD shall conduct all audits pursuant to audit protocols approved by the Monitor and the Parties in place as of the Effective Date or as updated pursuant to the Consent Decree. Any changes in the protocols during the Sustainment Period shall be subject to the approval of the Monitor and the Parties.

b.    NOPD agrees to coordinate with OIPM, the City's Office of Inspector General, or an experienced outside auditing entity to audit NOPD's PSAB capabilities, timeliness, methodologies, quality of audits, findings, and follow-up on recommended corrective actions. These audits shall be conducted to ensure adherence to established protocols in accordance with the guidelines and timelines outlined in Attachment V.C to this Plan.

c.    Should PSAB, or its authorized agents, fail to complete the agreed-upon audits (attached to this Plan as Attachment V.B) in a timely fashion or fail to materially adhere to the agreed-upon audit protocols, NOPD and the City understand the Court may toll the Sustainment Period and/or the Monitor may take over some or all

of the audits from PSAB and conduct the audit(s) as the Court and the Monitor deem appropriate.

2.    Policy and Training Updates

    a.    NOPD agrees to update its policies and training for the material provisions of the Consent Decree according to the schedule set forth in its public Policy Review Schedule.

        (1)    NOPD's Policy Review Schedule is available at https://nola.gov/getattachment/NOPD/Policies/Policy-Review-Schedule-Public.pdf/?lang=en-US.

        (2)    NOPD's Master Training Plan is available at https://nola.gov/nopd/nopd-consent-decree/.

    b.    Updates to policies and training during the Sustainment Period shall be subject to the review and approval process as set forth in Consent Decree Paragraphs 21 and 23.

3.    Quarterly Reports to DOJ, the Monitor, the Court, and the City Council

    a.    NOPD agrees to prepare and submit a quarterly report to the Court, DOJ, the Monitor, and the City Council, which shall (i) identify (and provide links to, where applicable) all reports and audits completed in the preceding quarter; and (ii) identify the actions completed in the preceding quarter using the format provided in Attachment V.G to this Plan. Each quarterly report shall be submitted within 30 days following the end of each quarter.

    b.    NOPD agrees to appear quarterly before the City Council (or the appropriate sub-committee) to present the quarterly report and provide a status report on items audited and corrective actions recommended in the preceding quarter.

    c.    Beyond the quarterly status reports identified in this section, this Plan requires no additional reports by the NOPD or the City not already required by the Consent Decree.

    d.    Nothing in this Plan precludes NOPD from sharing information with the Monitor to further NOPD's and the City's efforts to ensure compliance or precludes the Monitor, DOJ, or the Court from requesting information from NOPD consistent with the Consent Decree.

C.      **Ongoing Corrective Actions and Remedial Measures**

    1.      NOPD agrees to continue to diligently pursue the corrective actions and remedial measures identified below:

        a.      Use of Force Investigations (CD § III)

            (1)      The Use of Force Review Board (UFRB) shall meet every month during the pendency of this Plan.

            (2)      Absent extenuating circumstances approved by the Superintendent, uses of force shall be brought before a UFRB within 120 days of the completion of the use of force investigation.

            (3)      The City will add to its uses of force audit protocol an analysis of the rate of unauthorized use of force per arrest.[1] The City will commit to seeking improvement in the rate of unauthorized use of force per arrest.

        b.      Stops, Searches, and Arrests (CD § V)

            (1)      Within 180 days of the Effective Date, the City will report to the Monitor on its efforts to comply with the requirements of Paragraph 148 regarding the rate at which cases are refused by the Orleans Parish District Attorney because of the quality of officer arrests (including police report and investigations) or concerns regarding officer conduct. This report will include details on how the rate of refusals is calculated. It also will include details on each case refused for officer misconduct and detail the method for holding District Commanders accountable for referring to PIB for investigation any information regarding specific incidents of possible officer misconduct related to officer arrests noted in the DA's refusal reasons (when provided by the prosecuting agency). This report will examine data for the twelve month period before the report is initiated.

            (2)      Within 90 days of the Effective Date, the City shall report to the Monitor and DOJ on its efforts to improve the documentation of consent searches, including any

---

[1] "Unauthorized Force Per Arrest" is a widely accepted measure of evaluating force data used to ensure changes in the number of arrests do not mask improvements or deteriorations in the raw number of unauthorized uses of force.

technical changes made to how Field Interview Cards ("FICs") are completed.

    (3)    The City shall continue to provide instruction through Academy and in-service training on:

        (a)    using the Logbooks database to ensure search warrants are properly logged;

        (b)    proper activation and deactivation of body-worn cameras when searching structures, vehicles, or persons;

        (c)    FIC documentation and timeliness of submission and review; and

        (d)    distinguishing between a "search" and a "pat-down."

    (4)    NOPD  shall continue PSAB's centralized review of all incidents which generated an FIC to improve FIC documentation and allow for early identification of trends. The Parties will move to modify paragraph 150 of the Consent Decree and develop a policy requirement for centralized daily review within 60 days of the Effective Date.

c.    Bias-Free Policing (CD § VIII)

    (1)    The City agrees to develop a corrective action plan to address the results of the 2022 and 2023 Bias Free Audit, where applicable, within 90 days of the Effective Date.

    (2)    Further, the City agrees to explore partnerships with at least one outside expert, with at least a Master's Degree and experience in statistical and data analysis, to help conduct its Bias Free Audit.

d.    Policing Free of Gender Bias – Sexual Assault (CD § IX.A)

    (1)    The City commits to continuing to publish detailed quarterly Sexual Assault data and to take other actions as described in the corrective action plan included at Attachments V.D and V.E.

    (2)    NOPD commits to continuing to assign Sexual Assault cases that receive a Gone On Arrival ("GOA") designation

to a sex crimes investigator to ensure proper follow up and documentation.

(3)    NOPD commits to completing the corrective action plan detailed in the Monitor's report dated October 27, 2023, attached to this Plan at Attachment V.E, within 120 days of the Effective Date.

e.    Policing Free of Gender Bias – Domestic Violence (CD § IX.B)

(1)    The City commits to continuing to publish detailed quarterly Domestic Violence data and to take other actions as described in the corrective plans included at Attachments V.D and V.E. [2]

f.    Community Engagement (CD § X)

(1)    NOPD agrees to conduct the Biennial Community Survey as required in Paragraph 230 of the Consent Decree during the first year of the Sustainment Period. The City may engage the Monitor to develop and execute the survey as it has done in the past.

g.    Performance Evaluations & Promotions (CD § XIV)

(1)    NOPD will require supervisors to complete all applicable questions in quarterly reviews of employees to ensure supervisors continue to use the Early Warning System ("EWS") to complete annual personnel evaluations on a timely basis.

(2)    NOPD will ensure appropriate association of supervisors with their subordinates to ensure that all supervisors have access to all of their subordinates' EWS records, including Supervisory Feedback Log entries. NOPD will ensure the association of supervisors with their subordinates is updated on a timely basis.

---

[2]    In April 2024, the NOPD acknowledged errors in various aspects of its reporting of sexual assault and domestic violence data in response to criticisms raised by a local researcher and a local civil rights attorney. The NOPD committed to implement a number of corrective actions included in the attachments to the Plan.

h.     Supervision (CD § XV)

(1)     Within 90 days of the Effective Date, NOPD shall provide a report to DOJ, the Monitor, and the Court on the new custodial interrogation and photo lineup audits for the 7th District.

(2)     NOPD agrees to continue using its SDRB as currently prescribed in NOPD Policy.

(3)     Absent extenuating circumstances approved by the Superintendent, serious discipline matters shall be brought before a SDRB within 60 days of the issuance of discipline.

(4)     NOPD shall audit the Executive Protection Unit within 120 days of the Effective Date. Within 60 days of the Effective Date, the NOPD shall develop a separate protocol for this audit, subject to DOJ and Monitor approval. The protocol shall include a review of EPU performance, training, supervision, and overall compliance with NOPD policies and standard operation procedures. The protocol shall address application of the Consent Decree's material provisions to the Executive Protection Unit and its chain of command. NOPD shall present a report of its audit findings to the Court within thirty days of completion of the audit.

(5)     Within 60 days of the Effective Date, NOPD shall review and incorporate, as appropriate, the proposed revisions to the existing EPU policy as recommended by the TLG Law Firm in its recent investigations of EPU officers subject to the process in Paragraphs 21 or 23 of the Consent Decree.

(6)     The NOPD has determined a new EWS is required to meet the requirements of Paragraph 320. NOPD commits to issuing a RFP within 90 days of the Effective Date, selecting the new contractor within six months of the Effective Date, and execute the new contract within 60 days of the selection of the contractor. EWS functionality must be maintained under the current systems until the new system becomes operational.

(7)     NOPD shall complete audits of the EWS every quarter for one year following the Effective Date of this Plan using the currently established and approved audit protocol. Should the Parties wish to modify the currently approved

audit protocol, the Parties shall consult with and seek approval from the Monitor before doing so. Further, PSAB shall conduct an audit of the new system within 120 days of the new system becoming operational.

(8)    NOPD has conducted a Supervisory Discipline Review Board to assess the quality of the supervision of certain NOPD members or former members who received "target letters" concerning criminal investigations relating to those members' conduct within the secondary employment system. Within 45 days of the Effective Date, NOPD shall report to the Court on the outcome of the Supervisory Review Board's findings. If any NOPD members or former members have been referred to PIB for investigation as a result of the supervisory review board, NOPD shall report to the Court on the outcome of the investigation of those members or former members within 90 days of the close of each investigation.[3]

(9)    If any NOPD members or former members have been referred to the Louisiana Police Officers Standards and Training for potential decertification, including those who received target letters, NOPD shall report to the Monitor on the outcome of such referrals within 30 days of dispositive action on them.

(10)    NOPD shall conduct a Serious Discipline Review Board focusing on the facts in *Upton v. Vicknair*, Civil Action 21-407. Such SDRB shall include a detailed discussion of potential policy, systems, supervision, and training enhancements appropriate when special victims' rights and liberties may be implicated by the underlying conduct; as well as a detailed discussion of potential enhancements to the PIB process in such situations.

i.    Secondary Employment System (CD § XVI)

(1)    An Office of Police Secondary Employment ("OPSE") audit protocol will be developed, an audit performed, and a Corrective Action Plan implemented, if required. The audit will be completed and any necessary Corrective

---

[3] Per Consent Decree Paragraph 403 timelines.

Action Plan will be developed within the first 180 days of the Effective Date.

(2)     Prior to the end of the Sustainment Period, the City shall ensure the ADP payroll system and the OPSE payroll system are able to interface to allow monitoring of compliance with the Consent Decree and existing payroll laws. In the interim, NOPD shall continue reviewing payroll records manually to ensure no recurrence of prior hours/payroll-related violations.

j.     Misconduct Complaint Intake, Investigation, and Adjudication (CD § XVII)

(1)     Within 60 days of the Effective Date, the City will fulfill its responsibilities identified in the PIB Remedial Action Plan within its control (R. Doc. 756-1).

(2)     The development and implementation of the audit protocol for PIB shall be consistent with the timeline outlined in Attachment V.B to this Plan. The City and NOPD shall implement any Corrective Action Plan resulting from the 2024 PIB audit within 90 days of the approval of the audit report by the Monitor.

(3)     Within 90 days of the Effective Date, NOPD will use Body Worn Camera ("BWC") reviews to meet its affirmative investigation requirement for random integrity audit checks as defined by Consent Decree Par. 383.

(4)     In addition, within 90 days of the Effective Date, the Public Integrity Bureau ("PIB") will develop and implement an SOP that covers the following methods of conducting integrity audit checks:

(a)     Tracks the proactive use of body-worn camera reviews for reporting of potential officer misconduct;

(b)     Tracks proactive reporting of potential officer misconduct uncovered in the auditing and supervision of officers.

(c)     Ensure there is a representative sample from each District.

14

    2.       NOPD and the City reserve the right to recommend modifications, pursuant to the Consent Decree, to any corrective action / remedial measure plans if they believe there is a better way to achieve the goals of the Consent Decree.

## III.   SCHEDULED MONITOR AUDITS AND REVIEWS DURING SUSTAINMENT PERIOD

### A.   Annual Spot Audits

    1.       Custodial Interrogations (VI)

    2.       Photographic Lineups (VII)

    3.       Bias-Free Policing (Non-LEP) (VIII)

    4.       Crisis Intervention Team (IV)

    5.       Officer Assistance and Support (XIII)

    6.       Transparency & Oversight (XVIII)

### B.   Quarterly Spot Audits

    1.       Bias-Free Policing (LEP) (VIII)

    2.       Stops, Searches, and Arrests (V)

    3.       Policing Free of Gender Bias (IX)

    4.       Community Engagement (X)

    5.       Recruitment (XI)

    6.       Academy & In Service Training (XII)

    7.       Performance Evaluation & Promotions (XIV)

    8.       Supervision (XV)

    9.       Secondary Employment (XVI)

### C.   Regular/As-Needed Reviews

    1.       New/Revised Policy Reviews

    2.       Annual Training Plan

    3.       Uses of Force / Use of Force Investigations

4.      Serious Alleged Misconduct / Serious Misconduct Investigations

5.      Misconduct Complaint Intake, Investigations, & Adjudication (XVII)

6.      Investigation of any issue that may cause tolling or termination of the Sustainment Period.

**D.      Coordination of Audits**

1.      The Monitor and NOPD shall work together to coordinate their respective audits during the Sustainment Period to promote efficiency and reduce redundancy.

## IV.   VIOLATIONS OF THE CONSENT DECREE / SUSTAINMENT PLAN

### A.   Powers and Role of the Court

1.   Nothing in this Plan limits the authority of the Court.

2.   Nothing in this Plan expands or limits the authority of DOJ as set forth in the Consent Decree and applicable law.

3.   Nothing in this Plan expands or limits the authority of the Monitor set forth in the Consent Decree.

4.   Nothing in this Plan modifies the Termination provisions (Paragraphs 491 and 492) of the Consent Decree.

### B.   Process For Tolling/Terminating Sustainment Period

1.   The Court has the authority to Toll or Terminate the Sustainment Period for failure of the NOPD or the City to comply with the provisions of the Sustainment Plan.

2.   Should a concern arise regarding compliance with the Sustainment Plan, the Monitor's benchmark for compliance will be based on the same measures and methodologies used by the Monitor to evaluate compliance as of the Effective Date of this document, except as otherwise agreed upon by the Parties with the approval of the Court.

3.   A violation of law, policy, or the Consent Decree by an officer ordinarily will not result in a Termination of the Sustainment Period provided (a) it is not indicative of a pattern of violative behavior, (b) it is not indicative of intentional misconduct, reckless disregard, or deliberate indifference, by NOPD or City leadership, to their obligations under this Plan or the Consent Decree, (c) NOPD is adhering to the accepted timely disciplinary process to remedy the violation, and (d) NOPD is maintaining transparency with the Monitor and DOJ regarding the violation, the discipline, and the remedial action.

4.   In the event the Court deems it necessary to consider Tolling or Terminating the Sustainment Period, except in emergency situations, the Court will issue a Rule To Show Cause and provide the Parties an opportunity to be heard prior to any such decision.

V.    ATTACHMENTS

**A.**      **PCAB Compliance Plan**

[To be filed by the Parties with the Court within 15 days of the Effective Date]

### B.  PSAB 25/26 Audit Schedule

| Consent Decree Area | PSAB Unit | 2025 | | | | | | | | | | | | 2026 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | January | February | Mar | April | May | June | July | August | September | October | November | December | January | February | Mar | April | May | June | July | August | September | October | November | December |
| General Audit Procedures including Audit of Audits | IPM | To Be Set with IPM | | | | | | | | | | | | To Be Set with IPM | | | | | | | | | | | |
| CD Section II - Policies | PSAB | | | | | | | | | | | | Policies | | | | | | | | | | | | Policies |
| CD Section III - Use of Force | ARU | UoF | | | | | | | UoF | | | | | UoF | | | | | | | UoF | | | | |
| CEW | ARU | | | | CEW | | | | | | CEW | | | | | | CEW | | | | | | CEW | | |
| Vehicle Pursuit (Reviews Ongoing) | PSS | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP | VP |
| CD Section IV - CIT | ARU | | | | | | CIT | | | | | CIT | | | | | | | CIT | | | | | CIT | |
| CD Section V - Stops, Searches and Arrests | ARU | | | | | | SSAPJ | | | | | | | | | | | | SSAPJ | | | | | | |
| Consent to Search | ARU | | | | | | Consent to Search | | | | | | | | | | | | Consent to Search | | | | | | |
| Strip/Cavity | ARU | | | | | | Strip/ Cavity | | | | | | | | | | | | Strip/ Cavity | | | | | | |
| Probation & Parole | ARU | | | | | | Probation& Parole | | | | | | | | | | | | Probation& Parole | | | | | | |
| Search Warrant | ARU | | | | | | | Search Warrant | | | | | | | | | | | | Search Warrant | | | | | |
| District Attorney Refusals (Reviews Ongoing) | PSAB | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals | DA Refusals |
| CD Section VI - Custodial Interrogations | ARU | | | Custodial | | | | | | Custodial | | | | | | Custodial | | | | | | Custodial | | | |
| CD Section VII - Photographic lineups | ARU | | | | Photo-Lineup | | | | | | | Photo-Lineup | | | | | Photo-Lineup | | | | | | | Photo-Lineup | |
| LAP/LEP Audit | PSAB/CE Unit | | | | LAP/LEP Audit | | | | | LAP/LEP Audit | | | | | | | LAP/LEP Audit | | | | | | | LAP/LEP Audit | |
| CD Section IX - Policing Free of Gender Bias - DV Case File | ARU | | | | | | | | DV Case File | | | | | | | | | | | | DV Case File | | | | |
| CD Section IX - Policing Free of Gender Bias - DV Patrol | ARU | | | | DV Patrol | | | | | | | | | | | | DV Patrol | | | | | | | | |
| CD Section IX - Policing Free of Gender Bias - Child Abuse Case File | ARU | | | Child Abuse | | | | | | Child Abuse | | | | | | Child Abuse | | | | | | Child Abuse | | | |
| CD Section IX - Policing Free of Gender Bias - Sexual Assault Case File | ARU | | | | Sex Crimes | | | | | | Sex Crimes | | | | | | Sex Crimes | | | | | | Sex Crimes | | |
| CD Section X - Community Engagement | PSAB/CE Unit | | | | Community Engagement | | | Community Engagement | | | Community Engagement | | | | | | Community Engagement | | | Community Engagement | | | Community Engagement | | |
| CD Section XI - Recruitment | ARU | | | | | | | | | | | | Recruitment | | | | | | | | | | | | Recruitment |
| CD Section XII - Academy & In-Service Training | PSAB | | | | | | | | Academy | | | | | | | | | | | | Academy | | | | |
| CD Section XIII - Officer Assistance & Support | PSAB | | | | | | OAP | | | | | | OAP | | | | | | OAP | | | | | | OAP |
| CD Section XIV - Performance Evaluations | ARU | | | | Perf Evals | | | | | | | | | | | | Perf Evals | | | | | | | | |
| CD Section XV - Supervision | ARU | | Supervision | | | | | | Supervision | | | | | | Supervision | | | | | | Supervision | | | | |
| CD Section XVI - Secondary Employment System (OPSE/NOPD Employment Reviews) | PSS | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify | Employment Notify |
| CD Section XVI - Secondary Employment System (OPSE Audit) | PSAB | OPSE | | | | | | | | | | | | OPSE | | | | | | | | | | | |
| CD Section XVII - Misconduct/Admin. Invest. | PSAB/ARU | | PIB/Misconduct | | | | | | | | | | | | PIB/Misconduct | | | | | | | | | | |

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CD Section XVIII - Transparency (Insight Data Entry and Report Validation) | PSAB | | | | Insight Data Entry | | | | Insight Data Entry | | | | | | | | Insight Data Entry | | | | Insight Data Entry | | | |
| Stops and Search Annual Report | PSAB | | | Stop and Search | | | | | | | | | | | Stop and Search | | | | | | | | | |
| DV Annual Report | PSAB | | DV | | | | | | | | | | | DV | | | | | | | | | | |
| Use of Force Annual Report | PSAB | | | | Use of Force | | | | | | | | | | | Use of Force | | | | | | | |
| Public Intergrity Bureau Annual Report | PSAB | | | | | | PIB | | | | | | | | | | | | PIB | | | | |
| Bias-Free Annual Report | PSAB | | | | Bias-Free | | | | | | | | | | | Bias-Free | | | | | | | |
| Recruitment Annual Report | MSB - Reviewed by PSAB | | | Recruitment | | | | | | | | | | | Recruitment | | | | | | | | |
| Academy Annual Report | MSB - Reviewed by PSAB | Academy | | | | | | | | | | | Academy | | | | | | | | | | |
| Community Engagement Annual Report (LEP/LAC) | FOB - Reviewed by PSAB | | | CE | | | | | | | | | | | CE | | | | | | | | |
| CIT Annual Report | PSAB | | | CIT | | | | | | | | | | | CIT | | | | | | | | |

*In general, Annual Reports will be released as noted and if data is incomplete, will be updated mid-year (June 30).*

### C.   Guidelines for Outside Entity Audits

The Sustainment Plan provides that NOPD will coordinate with the New Orleans Office of the Independent Police Monitor ("OIPM"), the City's Office of Inspector General ("OIG"), or an approved outside auditing entity to audit NOPD's PSAB capabilities, schedule, methodologies, audits, and follow-up on recommended corrective actions. To ensure these audits are meaningful, the Parties agree as follows:

- The audits of PSAB shall be conducted with a regular cadence so as not to overburden PSAB at any one time of the year.

- The audits shall ensure coverage of all PSAB audits over the course of each 12-month period, and each audit shall include, among other things, an assessment of PSAB's adherence to approved protocols, timeliness, and findings.

- The audits shall be conducted in accordance with clear, written protocols prepared by the entity conducting the audit and approved by the Parties and the Monitor.

- The scope and depth of each audit shall be tailored to the materiality of the topic audited by PSAB, recency of prior audits, and historic risk factors (e.g., prior audit findings).

- The audit entity shall share its draft audit results with the Parties and the Monitor for comment prior to finalizing each audit. PSAB shall be given adequate time to consider and comment on the draft findings and recommendations. Should PSAB agree that corrective actions are necessary, the intended corrective actions shall be shared with the audit team for inclusion in the final audit report.

- The final audit report, including findings, recommended corrective actions, and PSAB responses, shall be shared with the Parties and the Monitor.

- PSAB shall publish all final audit reports, with appropriate information redacted as required by law, within 30 calendar days of approval by the Parties and the Monitor.

### D.      Domestic Violence/Sexual Assault Public Reporting Corrective Actions

On April 2, 2024, the NOPD (a) acknowledged errors in various aspects of its reporting of sexual assault and domestic violence data in response to criticisms raised by a local researcher and a local civil rights attorney; and (b) publicized the data reporting error to raise awareness for future researchers and the community. The day before, on March 31, 2024, NOPD notified the Louisiana Commission on Law Enforcement ("LCLE") of the need to amend NOPD's 2021 and 2022 data. The NOPD further commits to undertake the following actions:

- Continue issuing quarterly reports on both sex crimes data as well as on domestic violence data.

- Provide verification to DOJ and the Monitor demonstrating the functionality and use of its new sexual assault data management system.

- Obtain and implement a records management system compliant with the FBI's Uniform Crime Reporting ("UCR") National Incident-Based Reporting System.

NOPD commits to complete the second item above within 120 days of the Effective Date and to complete the third item above within one year of the Effective Date.

### E.    Domestic Violence ("DV")/Sexual Assault ("SA") GOA Corrective Action Plan

| RM# | Remedial Measure |
|---|---|
| 1 | Ensure All Violent Crimes Receive A Priority 2 Code. As noted in this Special Report, Domestic Violence calls are often de-prioritized to a Code 1 when the aggressor had left the scene. As explained above, the Monitoring Team sharply criticized this practice because, among other things, the departure of the aggressor frequently does not mean the call is no longer an emergency. NOPD now will keep all violent crimes as Code 2 Priority calls, and use new sub-codes (see below) to indicate whether the aggressor is on the scene and whether the victim has relocated to a safe location (e.g., hospital, police station, fire station). |
| 2 | Restore Priority Modifiers. The OPCD and the NOPD use priority codes to designate the priority of every call for service. As described earlier in this report, a Code 2 call is an emergency call warranting an immediate "lights and sirens" officer response. A Code 1 call, on the other hand, requires less immediacy, and often receives a delayed NOPD response. Previously, each numerical code – Priority 0 through Priority 3 – had a number of "sub-codes" or "modifiers," e.g., 1A, 1B, 2A, 2B, etc. These sub-codes stopped being used at some point in the past, making it harder to prioritize competing priority calls. NOPD commits to work with OPCD to restore sub-codes A-F for Priority 1 calls and sub-codes A-G for Priority 2 calls, allowing more accurate coding and decision-making for a wider range of emergency calls. |
| 3 | Enhance Training. NOPD will work with OPCD to ensure officers, supervisors, and dispatchers understand the newly-expanded coding protocols. The training will focus on, among other things, when and how to use the new 2G Priority Code through the issuance of Daily Training Bulletins, mandated roll call trainings, and leadership emails to all NOPD personnel. NOPD also will provide enhanced training to supervisors on the use of the new 2G Priority Code. |
| 4 | Provide Additional Resources To Officers And Supervisors. NOPD commits to develop a Standard Operating Procedure (SOP) that provides guidance to supervisors on managing call priorities. The SOP will explain that the availability of officers does not dictate the priority code for a call. It also will give further guidance on how and when to use the new 2G Priority Code, and when it is appropriate to de-prioritize a call. |
| 5 | Update Relevant NOPD Policies. NOPD has identified a host of policy changes designed to reduce response times and, thus, reduce GOAs on priority calls. Among these changes are (i) clarify the definition of an "emergency" call, (ii) allow officers to respond to some Code 2 calls (e.g., DV calls) without lights and sirens; (iii) require supervisors to state the reason for priority deprioritizations on the air when communicating with OPCD, (iv) permitting a single officer to respond to DV calls, among others. |
| 6 | Return To Simple Signals To Describe Calls. Currently, OPCD employs a version of "plain talk" signals that doesn't align with Louisiana's Criminal Codes. While the point of moving to "plain talk" signals was to reduce confusion, it apparently has had the opposite effect since many of the "plain talk" signals are not intuitive, e.g., "SHOTP," "BURGR," and "DOMDIS." NOPD believes that a re-alignment of OPCD's signals and NOPD's signals will allow for more accurate and precise call prioritization. |

Case 2:12-cv-01924-SM-DPC   Document 793-1   Filed 09/27/24   Page 25 of 28

| RM# | Remedial Measure |
|---|---|
| 7 | Measure And Report Response Times With Greater Precision. NOPD will develop a new system to identify priority changes and measure response times by initial priority code (i.e., the priority code initially assigned by OPCD) as well as final priority code (i.e., the priority code as changed by OPCD or by an NOPD supervisor). NOPD will develop a public-facing dashboard that will allow the community to see NOPD response times by priority code (initial and/or final). |
| 8 | Supplement NOPD's Current Audit Program. NOPD commits to working with the Monitoring Team to conduct a follow-up audit following the implementation of the Department's corrective action plan. NOPD also plans to incorporate a Priority Code Audit into its standard annual or bi-annual audit program conducted by PSAB. |
| 9 | Give Supervisors Access To Real-Time Computer Aided Dispatch (CAD) Data. Currently, supervisors have access to real-time call data only in their cars or by walking to the desk in the lobby of each police district. This makes it hard for supervisors not in the field to keep track of priority calls and priority code changes. NOPD will develop the technology to give supervisors live CAD access from their desks. The new technology will give supervisors real-time access to calls holding, call priority, changes in call priority, and officer availability – critical information to ensure close and effective supervision. |
| 10 | Dispatch SVD Detectives To Sex Crimes And Child Abuse Calls Where The Victim Is In A Safe Location. Rather than dispatching a patrol officer to sex crimes and child abuse calls where the victim has relocated to a safe location (e.g., hospital, police station, fire station), NOPD will work with OPCD to dispatch SVD detectives to ensure victims get the prompt attention they need from specially trained officers while ensuring the Department's patrol officers are free to respond more quickly to priority calls where an individual's safety is immediately at risk. |
| 11 | Explore Opportunities For Greater Efficiency In Handling DV Calls. Responding to DV calls understandably takes a significant among of time; more time than most other violent crimes. Some of this extra time is necessitated by the additional paperwork required in DV cases. To its credit, NOPD is not naïve to the possibility that some officers may consciously or subconsciously avoid such calls due to the additional work involved. NOPD plans to work with its officers and other DV stakeholders (e.g., Family Justice Center, New Orleans Health Department, New Orleans Sexual Response Advisory Committee, etc.) to explore opportunities to reduce time and burden without sacrificing quality of service. |
| 12 | Explore Expanding The Use Of Civilians. Consistent with the public statements of NOPD Superintendents from Ronal Serpas to Anne Kirkpatrick, and the Mayor herself, NOPD will work to increase the number of civilians supporting its SVD. Among other improvements, NOPD plans to explore expanding the use of civilians to conduct callbacks on DV calls that have yet to be handled to inform callers about the services available to them and to attempt to convince callers to relocate to a safe space. NOPD believes putting victims in touch with the DV unit prior to officers making the scene not only will provide the victim faster service, but also will save officers time by negating the need for officers to inform victims about the services available to them. |

24

F.       **PIB Audit Schedule Milestones**

| Action | Responsible Party | Date |
|---|---|---|
| NOPD to create comprehensive audit protocol to measure PIB compliance. | NOPD | COMPLETE |
| NOPD to perform initial audit using draft comprehensive audit protocol to assess effectiveness. | NOPD | COMPLETE |
| DOJ and Monitor to review and provide technical assistance on comprehensive audit protocol | DOJ/Monitor | Within 30 Days of Effective Date |
| Parties and Monitor work together to finalize comprehensive audit protocol | All | Within 60 days of Effective Date |
| PSAB conducts comprehensive PIB audit | NOPD | Per Audit Schedule |

## G. Sustainment Plan Deadlines

**EFFECTIVE DATE Per Sustainment Plan: TBD (based on Court order)**

| Item No. | Requirement | Frequency | Days After Effective Date | Deadline (to be calculated once Sustainment Plan is effective) | Section Ref. | Status (Complete / Not Complete) | OCDM Confirmation | DOJ approval (where applicable) |
|---|---|---|---|---|---|---|---|---|
| 1 | DOJ and Monitor to review and provide technical assistance on comprehensive PIB audit protocol | 30 Days after Effective Date | 30.0 | | Attachment F | | | |
| 2 | Report to the Court on the outcome of the Supervisory Review Board's findings relating to supervision of certain NOPD members or former members who received "target letters" concerning criminal investigations relating to those members' conduct within the secondary employment system | 45 days after Effective Date | 45.0 | | C(1)(h)(8) | | | |
| 3 | Fulfill responsibilities identified in the PIB Remedial Action Plan | 60 days after Effective Date | 60.0 | | C(1)(j)(1) | | | |
| 4 | Develop a protocol for the Executive Protection Unit Audit | 60 days after Effective Date | 60.0 | | C(1)(h)(4) | | | |
| 5 | Review and incorporate, as appropriate, the proposed revisions to the existing EPU policy as recommended by the TLG Law Firm in its recent investigations of EPU officers subject to the process in paragraph 21 or 23 of the Consent Decree | 60 days after Effective Date | 60.0 | | C(1)(h)(5) | | | |
| 6 | Parties and Monitor work together to finalize comprehensive PIB audit protocol | 60 days after Effective Date | 60.0 | | Attachment F | | | |
| 7 | The Parties will move to modify paragraph 150 of the Consent Decree and develop a policy requirement for centralized daily review | 60 days of Effective Date | 60.0 | | C(1)(b)(4) | | | |
| 8 | Report to DOJ and Monitor on NOPD's efforts to improve the documentation of consent searches, including any technical changes made to how FIC's are completed | 90 days after Effective Date | 90.0 | | C(1)(b)(2) | | | |
| 9 | Present to the Court on the new custodial interrogation and photo lineup audits for the 7th District | 90 days after Effective Date | 90.0 | | C(1)(h)(1) | | | |
| 10 | Issue an RFP for a new EWS system | 90 days after Effective Date | 90.0 | | C(1)(h)(6) | | | |
| 11 | First EWS Audit | 90 days after Effective Date | 90.0 | | C(1)(h)(7) | | | |
| 12 | Use BWC reviews to meet its affirmative investigation requirement for random integrity audit checks as defined by Consent Decree ¶ 383 | 90 days after the Effective Date | 90.0 | | C(1)(j)(3) | | | |
| 13 | Develop and implement a PIB SOP that covers methods of conducting integrity audit checks | 90 days after Effective Date | 90.0 | | C(1)(j)(4) | | | |
| 14 | Develop corrective action plan to address results of the 2022 and 2023 Bias Free Audit | 90 days after Effective Date | 90.0 | | C(1)(c)(1) | | | |
| 15 | First Report to Court, Council, Parties | Quarterly | 120.0 | | (3)(a) | | | |
| 16 | Audit the Executive Protection Unit | 120 days of Effective Date | 120.0 | | C(1)(h)(4) | | | |
| 17 | Provide verification to the DOJ and the Monitor demonstrating the functionality and use of new sexual assault data management system | 120 days of Effective Date | 120.0 | | Attachment D | | | |
| 18 | Complete GOA corrective action plan | 120 days of Effective Date | 120.0 | | C(1)(e)(3) | | | |
| 19 | Report to Monitor on efforts to comply with CD ¶ 148 regarding the rate at which cases are refused by the Orleans District Attorney because of the quality of officer arrests or concerns regarding officer conduct | 180 days after Effective Date | 180.0 | | C(1)(b)(1) | | | |
| 20 | Select a new contractor for the EWS system | 180 days after Effective Date | 180.0 | | C(1)(h)(6) | | | |
| 21 | Second EWS Audit | 180 days after Effective Date | 180.0 | | C(1)(h)(7) | | | |
| 22 | Complete an OPSE audit protocol, audit, and implementation of a Corrective Action Plan, if required | 180 days after Effective Date | 180.0 | | C(1)(i)(1) | | | |
| 23 | Second Report to Court, Council, Parties | Quarterly | 210.0 | | (3)(a) | | | |
| 24 | Third EWS Audit | 270 days after Effective Date | 270.0 | | C(1)(h)(7) | | | |
| 25 | Third Report to Court, Council, Parties | Quarterly | 300.0 | | (3)(a) | | | |
| 26 | Fourth EWS Audit | 365 days after Effective Date | 365.0 | | C(1)(h)(7) | | | |
| 27 | Obtain and implement a records management system compliant with the FBI's Uniform Crime Reporting ("UCR") National Incident-Based Reporting System. | 365 days after Effective Date | 365.0 | | Attachment D | | | |
| 28 | Conduct the Biennial Community Survey as required in Paragraph 230 of the Consent Decree | 365 days after Effective Date | 365.0 | | C(1)(d)(1) | | | |
| 29 | Fourth Report to Court, Council, Parties | Quarterly | 390.0 | | (3)(a) | | | |
| 30 | Fifth Report to Court, Council, Parties | Quarterly | 480.0 | | (3)(a) | | | |
| 31 | Sixth Report to Court, Council, Parties | Quarterly | 570.0 | | (3)(a) | | | |
| 32 | Seventh Report to Court, Council, Parties | Quarterly | 660.0 | | (3)(a) | | | |
| 33 | Ensure the ADP payroll system and the OPSE payroll system are able to interface to allow compliance with the Consent Decree and existing payroll laws | Prior to the end of the Sustainment Period | 730.0 | | C(1)(i)(2) | | | |
| 34 | FINAL Report to Court, Council, Parties | Quarterly | 750.0 | | (3)(a) | | | |
| 35 | Execute the new contract for the EWS system | Within 60 days after the selection of the contractor | | | C(1)(h)(6) | | | |
| 36 | PSAB audit of new EWS system | Within 120 days of the new system becoming operational | | | C(1)(h)(7) | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37 | Initiate a comprehensive audit of PIB consistent with the enhanced audit protocol developed in collaboration with the DOJ and the Monitor | Per Audit Schedule | | | Attachment B | | |
| 38 | Implement any Corrective Action Plan resulting from the 2024 PIB audit | Within 90 days of the approval of the audit report by the Monitor | | | C(1)(j)(2) | | |
| 39 | If any NOPD members or former members have been referred to PIB for investigation as a result of the above SDRB, NOPD shall report to the Court on the outcome of the investigation of those members or former members | Within 90 days of the close of each investigation | | | C(1)(h)(8) | | |
| 40 | If any NOPD members or former members have been referred to the Louisiana Police Officers Standards and Training for potential decertification, including those who received target letters, NOPD shall report to the Monitor on the outcome of such referrals | Within 30 days of dispositive action on those referrals | | | C(1)(h)(9) | | |
| 41 | Bring serious discipline matters before a SDRB | Within 60 days of the discipline | | | C(1)(h)(3) | | |
| 42 | Present a report of NOPD's EPU Audit findings | Within 30 days of the completion of the audit | | | C(1)(h)(4) | | |
| 43 | UFRB Meetings | Monthly | | | C(1)(a)(1) | | |
| 44 | Uses of force brought before the UFRB | Within 120 days of the completion of the use of force investigation | | | C(1)(a)(2) | | |
| 45 | Complete DV/SA Corrective Action Plan | As per Attachment D | | | Attachment D | | |
| 46 | Create PCAB Plan | Within 15 days of Effective Date | 15.0 | | III(A)(6) | | |

*NOTE: Where a date falls on a weekend or federal holiday, the deadline will be the first business day after the weekend or holiday.