From: hello@eyeonsurveillance.org <hello@eyeonsurveillance.org>
Sent: Tuesday, October 22, 2024 2:24:59 PM (UTC+00:00) Monrovia, Reykjavik
To: eFile-Morgan; Jonas.Geissler ███████ LAEDdb_Clerk
Cc: ABurns; Info
Subject: Douglass needs

CAUTION - EXTERNAL:


Good morning Judge Morgan and Mr Geissler,

We are writing ahead of today's meeting with the monitoring team. We ask that you prevent representatives of Sheppard Mullin from unilaterally declaring that Mr Douglass has no conflict of interest given there has been no waiver for his activities from either the City or DOJ.

As an employee of Sheppard Mullin, it is inappropriate to have the monitors use public space to authoritatively deny claims without giving the public an opportunity to speak. We assume the public will be muted, blocked from commenting in chat publicly, and unable to see other attendees, like things were at the last virtual "community" meeting held my the monitors.

Please see the attached letter for more details.

Best,
Eye on Surveillance
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Eye on Surveillance**
Oct 22, 2024

On October 8, 2024, at a community meeting hosted by the Consent Decree Monitors, where Deputy Monitor David Douglass responded, for the first time, to allegations of corruption raised by Eye on Surveillance (EOS). Since August 18, EOS has been working to pressure the Consent Decree judge, the monitors, and the Department of Justice (DOJ) to open an investigation into Douglass.

To that end, we recently met with the DOJ who asked us to send us a memo they could use for the purposes of looking into the allegations. At the core of our memo is <u>Paragraph 464</u> of the Consent Decree, which explicitly prohibits monitors from accepting employment or providing consulting services that would present a conflict of interest.

At the <u>October 8th meeting,</u> Douglass offered two reasons why he believes there is no conflict of interest:
1. A conflict only exists if someone has a claim against the city.
2. The individuals in question are not current employees.

However, these justifications are problematic for several reasons:
- **That definition is invented.** The Consent Decree never defines conflicts of interest in this manner. A more grounded definition comes from <u>DOJ guidelines</u> which forbid employees from working with anybody who has "substantial interest that would be directly affected by the outcome of the investigation or prosecution".
- **Employees are involved.** Douglass is an active member of the Consent Decree monitoring team. Michael Harrison, former NOPD superintendent and current ELEFA employee, has an active contract where he works on a joint DA-NOPD program. Although this program violates <u>Chapter 147, Section 147-2</u> of the New Orleans Municipal Code, Douglass and the other Consent Decree monitors have done nothing to stop NOPD's participation.
- **The monitors are not impartial.** At this same meeting, the Head monitor, Jonathan Aronie, who is also under contract of the Consent Decree, argues that ELEFA's existence has not created a conflict. This amounts to another instance of a conflict of interest, seeing as Aronie works for the same law firm as Douglass.
- **The public disagrees.** Monitor's opining about whether or not they feel their acts constitute a conflict of interest is anemic to addressing the public's concerns about Douglass' conflict of interest.
- **EOS has filed a claim** against the city as formally as possible through letters to the judge. Douglass himself told EOS members at a community meeting, that there is no further action they can take.
- **Potential conflicts must be waived.** According to Paragraph 464, the City and DOJ must explicitly waive potential conflicts such as this, even if it is believed that the conflict is immaterial.

**Demands:**
1. The DOJ must conduct a thorough investigation into all DOJ, NOPD, and Minneapolis employees that are now affiliated with ELEFA.
2. Douglass, and any other monitors with a conflict, must be removed from office and replaced with new monitors in both New Orleans and Minneapolis, ensuring they are free from any conflicts of interest.
3. Representatives from Sheppard Mullin are forbidden from addressing the conflict of interest in public meetings without a member of the DOJ or City being there to corroborate their statements.

| | |
|---|---|
| **From:** | William Hoffman <███████████████████> |
| **Sent:** | Tuesday, October 22, 2024 9:47 AM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | Support for NOPD Entering the Sustainment Period |

**CAUTION - EXTERNAL:**

Dear Sirs/Madams,

I am writing to support the US Department of Justice's movement that allows the City of New Orleans, New Orleans Police Department (NOPD) to enter into a two-year "sustainment period," according to the terms of the negotiated plan. The NOPD has made significant improvements over the recent years and as a citizen and business owner in New Orleans, I support moving to the sustainment period.

Sincerely,
William D Hoffman

William D. "Bill" Hoffman
President



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** G.F. Gay LeBreton ▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Tuesday, October 22, 2024 10:53 AM
**To:** LAEDdb_Clerk
**Cc:** Vanessa Brown Claiborne
**Subject:** In Support of the Transition to a "Sustainment Period" for the Consent Decree

**CAUTION - EXTERNAL:**

Dear Sir or Madam,

I am writing you to support the movement of the City of New Orleans into a two-year "sustainment period", according to the terms of a negotiated plan, bringing the consent decree concerning the City's Police Department closer to a successful resolution.

We support the work that the NOPD has done to improve its performance, and are optimistic about the future with the structure that was put in place by the Department. We believe that the City Council will continue to support these behaviors as well. It is time to allow the NOPD more freedom to show it can manage its own performance going forward.

Sincerely,
Gay Le Breton

G. F. Gay Le Breton
Managing Director
▮▮▮▮▮▮▮▮▮▮
Bio | vCard | Website



The information contained in this message is confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify sender immediately by replying to this message and then deleting it from your computer. Any dissemination or other use of this information other than for its intended use is strictly prohibited. Chaffe & Associates Inc. has taken precautions to screen this message for viruses; however we cannot make any representation that the e-mail is free of all viruses. The material in this e-mail does not constitute an offer to sell nor a solicitation of an offer to purchase securities. Any such offer may only be made pursuant to a prospectus or private placement memorandum. Investment banking services are provided by Chaffe Securities, Inc., member FINRA/SIPC.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Brenda B Farrell <█████████████████>
**Sent:**          Tuesday, October 22, 2024 11:34 AM
**To:**            LAEDdb_Clerk
**Subject:**       Move Forward Into Sustainment Period on The Consent Decree

**CAUTION - EXTERNAL:**


I have been a resident of Orleans Parish since 1994, and have not seen a more positive turnaround for our city than within the last year.  The policies and leadership have made the difference and support our hard working NOPD.

I finally feel safer again, and personally implore you to move forward into the Sustainment on the Consent Decree. Please help save our city and its residents.

Sincerely, thank you,
Brenda

**Brenda Brocato Farrell**


████████████████


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**     Jenny Vorhoff <█████████████>
**Sent:**     Tuesday, October 22, 2024 11:50 AM
**To:**       LAEDdb_Clerk
**Subject:**  NOPD Sustainment Period

**CAUTION - EXTERNAL:**

To Whom it May Concern,

I am writing to voice my support that the US Department of Justice transition the New Orleans Police Department into a Sustainment Period from the Consent Decree. As a New Orleanian I am very proud of our city's progress and their transformation. I believe the data shows that the Department is ready to transition into the next phase and should be allowed to do so.

Thanks for your consideration.
Warmly,
Jenny Vorhoff

█████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Raines, Sasha M
**Sent:**          Tuesday, October 22, 2024 1:08 PM
**To:**            LAEDdb_Clerk
**Subject:**       Consent Decree

**CAUTION - EXTERNAL:**


To whom it may concern,

Hello, I am emailing you as a local to New Orleans and a student at Tulane. I would like to state my support for the continuity of the 'Consent Decree' as it pertains to the NOPD and public safety. Thank you for your time.

Sincerely,
Sasha Raines

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Ann Middleton <████████████████████>
**Sent:**          Tuesday, October 22, 2024 7:37 PM
**To:**            LAEDdb_Clerk
**Subject:**       Move to Compliance

**CAUTION - EXTERNAL:**

As Judge Morgan is awaiting feed back from the community, I want express my strong preference for moving the NOPD to the Compliance Phase with the Consent Decree.

Thank you,
Ann C. Middleton
████████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** ██████████
**Sent:** Tuesday, October 22, 2024 7:55 PM
**To:** LAEDdb_Clerk
**Subject:** Concent decree

**CAUTION - EXTERNAL:**

As Judge Morgan is awaiting feed back from the community, I want express my strong preference for moving the NOPD to the Compliance Phase of the Consent Decree.

Thank you,
Paul Zimmerman
██████████

<u>Sent from AOL on Android</u>

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**            Ricky Dietz <████████████████>
**Sent:**            Tuesday, October 22, 2024 8:02 PM
**To:**              LAEDdb_Clerk
**Subject:**         NOPD Consent Decree

**CAUTION - EXTERNAL:**


As Judge Morgan is awaiting feed back from the community, I want express my strong preference for moving the NOPD to the Compliance Phase of the Consent Decree.



Ricky Dietz
Mobile:████████████

Typos by IPhone

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Steph Bee ████████████████████
**Sent:**          Tuesday, October 22, 2024 9:17 PM
**To:**            LAEDdb_Clerk
**Subject:**       New Orleans Consent Decree

**CAUTION - EXTERNAL:**

Good evening,
My name is Stephanie Crean, a concerned citizen of New Orleans, Louisiana. I am writing to you because the New Orleans Police Department has announced recently that it is attempting to exit the consent decree that the NOPD and the DOJ entered into in July 2012. The NOPD announced recently that it is entering into the sustainment period of the decree, and is attempting to exit it altogether. This deeply concerns me because I do not believe that all of the reforms laid out by the consent decree have fully been put into practice by the NOPD, and what has been implemented has not resulted in lasting and meaningful change for our city. I also strongly believe that what our police force needs is more oversight and greater accountability, not less. We are unable to prevent corruption, brutality, and human rights violations by police if we have no way to hold them accountable.
I am asking that the Department of Justice reject all attempts by the NOPD to exit the consent decree.

From,
Stephanie Crean
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**             Joseph B. Stahl <█████████████>
**Sent:**              Tuesday, October 22, 2024 9:35 PM
**To:**                 LAEDdb_Clerk
**Subject:**         Fw: Requested Feedback on NOPD Consent Decree
**Attachments:**    sustainment handout final.pdf

**CAUTION - EXTERNAL:**

Honorable Clerk and Judges of the USDC for the Eastern District of Louisiana, Greeting:

The following is my reaction to the attached Consent Decree:

A more worthless and ineffective scrap of paper than this one is hard to imagine.

In the first place, its "Takeaways" section lists a series of improvements in the NOPD's practices in recent years, which do not qualify as any kind of "consent" to anything and look suspiciously like someone grading one's own paper.

In the second place, the battle is already lost if a Police Department doesn't already know how to behave itself lawfully without being instructed as to how to do so by the U.S. Department of Justice.

But worst of all, during the 12 years since this Consent Decree was entered into, homicidal, violent, destructive and economically costly crime has skyrocketed in New Orleans, no thanks to the NOPD's supposedly operating under this Decree.

The existence of this paper in the context it occupies is a disgrace that reveals the pathetic ineptitude of all things New Orleans, which even admits in its motto that it is "the City that care forgot."

Joseph B. Stahl

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         Eric Hansen ███████████████
**Sent:**         Wednesday, October 23, 2024 7:31 AM
**To:**           LAEDdb_Clerk
**Subject:**      Consent Decree

CAUTION - EXTERNAL:

Please move NOPD to compliance on the consent decree.
Thank you.

ERIC HANSEN
███████████████

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          susancouvillon███████████
**Sent:**          Wednesday, October 23, 2024 8:01 AM
**To:**            LAEDdb_Clerk
**Subject:**       Sustainment period

**CAUTION - EXTERNAL:**

Please allow the police department and the City of New Orleans to enter the sustainment period to end the  time spent under the consent decree.
Sincerely,
Susan Couvillon
███████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Nicette Goodier <████████████████>
**Sent:**          Wednesday, October 23, 2024 11:04 AM
**To:**            LAEDdb_Clerk
**Subject:**       The Sustainment Plan

CAUTION - EXTERNAL:


Dear Judge Morgan, my name is Nicette Goodier and I am a lifelong resident and I live in the uptown area in New Orleans. I am writing to say I am very much in favor for the Sustainment Plan Thank you. Nicette Goodier Sent from my iPhone CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**      Perry Eastman IV <​████████████>
**Sent:**      Wednesday, October 23, 2024 12:06 PM
**To:**        LAEDdb_Clerk
**Subject:**   Consent Decree Sustainment Period

**CAUTION - EXTERNAL:**

I am writing in support of the US Department of Justice's movement that the City enters into a two-year "sustainment period."

I believe the City and NOPD have made great strides in bringing the consent decree closer to a successful resolution.

Thank you,

**Perry Eastman**

G. Perry Eastman IV
CEO/Co-Chair



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         Kate Prechter ███████████████████
**Sent:**          Wednesday, October 23, 2024 12:21 PM
**To:**            LAEDdb_Clerk
**Subject:**       The Consent Decree Sustainment Plan

**CAUTION - EXTERNAL:**

To Whom it may concern,

I would like to voice my opinion that the Sustainment Plan should be adopted.

Sincerely,

Kate Prechter

Kate Prechter
███████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening
attachments or clicking on links.

1

| | |
|---|---|
| **From:** | William Most < ███████████████ |
| **Sent:** | Wednesday, October 23, 2024 12:37 PM |
| **To:** | LAEDdb_Clerk |
| **Cc:** | Donesia D. Turner; Stella Cziment; Sharonda Williams; Jonathan Aronie; aburns@consentdecreemonitor.onmicrosoft.com; Jude.Volek████████████ jonas.geissler██████████ Gordon, Arusha (CRT); paul.killebrew██████████ suraj.kumar██████████; timothy.mygatt██████████ syeda.riaz ████████ Hope Phelps; Veronica Barnes |
| **Subject:** | U.S. v. City of New Orleans, 12-cv-1924 - Public Comment |
| **Attachments:** | 2024.10.23 - Public Comment of William Most on Sustainment Period.pdf |

**CAUTION - EXTERNAL:**

Dear Clerk of Court,

The attached letter provides public comment as requested by Judge Morgan in her September 27, 2024 notice. See *USA v. City of New Orleans,* 12-cv-01924-SM-DPC (E.D. La.), R. Doc. 795.

Thank you,

William Most

--
William Most
Most & Associates
mostandassociates.com
█████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# MOST &
# ASSOCIATES

███████████████████████

---

Judge Susie Morgan                                                   October 23, 2024
United States District Court, Eastern District of Louisiana
Via email to Clerk@laed.uscourts.gov

**Re:**   ***U.S. v. City of New Orleans*, 12-cv-1924**
          **Comment regarding Joint Motion To Enter Into The Sustainment Period**

Dear Judge Morgan,

This letter is to provide public comment on the proposed consent decree sustainment period, as requested in your September 27, 2024 notice.[1]

I am a civil rights attorney in New Orleans. I represent the plaintiff in the lawsuit *Hainey v. City of New Orleans*, 21-407 (E.D. La.) which went to trial earlier this year. The case was about a NOPD officer who repeatedly sexually assaulted a minor child and the failure of NOPD supervisors – up to and including the former Superintendent – to take swift action once warned.

Before trial, Judge Barbier determined that the City of New Orleans was liable for former Officer Rodney Vicknair's state law torts of sexual assault, battery, and false imprisonment of a minor child.[2]

At trial, a jury determined that the City was also liable for Vicknair's constitutional violations against the child.[3] The jury concluded that both the City's decision to hire Officer Vicknair and also the City's inadequate supervision of Vicknair reflected "deliberate indifference to the risk of sexual assault, battery, or false imprisonment."[4]

In discovery, however, I was troubled to hear a NOPD 30(b)(6) representative testify that he did not "know of anything NOPD has done differently or changed directly in response to Vicknair to prevent another Officer Vicknair."[5]

For that reason, I ask that the specific measures below be included in the Sustainment Plan to mitigate the risk of similar misconduct in the future. Adoption of such measures is recommended to ensure NOPD's compliance with the Policing Free of Gender Bias requirement of the consent decree.[6]

---

[1] *USA v. City of New Orleans*, 12-cv-01924-SM-DPC (E.D. La.), R. Doc. 795.
[2] *Hainey v. City of New Orleans*, 21-cv-407 (E.D. La.), R. Doc. 157.
[3] *Id.*, R. Doc. 258 (Jury Verdict).
[4] *Id.*
[5] Deposition of 30(b)(6) witness Sgt. David Barnes at 78:16-20 ("Q. So the answer is no, you don't know of anything NOPD has done differently or changed directly in response to Vicknair to prevent another Officer Vicknair, correct? A. Correct.")
[6] Consent Decree § IX.

1.      **NOPD should re-run background checks for officers hired in the post-Katrina era.**

    <u>Background</u>: At trial, NOPD representatives testified that Vicknair's criminal history had multiple arrests (from 1987 and 1990) that did <u>not</u> appear in a 2006 background check, but <u>did</u> appear in a subsequent 2020 background check. That suggests that the post-Katrina-era background check system was inadequate.

    For context, this was Vicknair's criminal history prior to being hired as a NOPD officer in 2007:

| Vicknair Pre-NOPD History | | |
|---|---|---|
| Date | Arrest / Conv. | Crime |
| March 1982 | Arrest & Conviction | Disturbing the Peace |
| May 1985 | Arrest | Illegal Use of a Weapon, Damage to Property |
| June 1986 | Arrest & Conviction | Disturbing the Peace |
| July 1986 | Arrest | Attempted Burglary |
| April 1987 | Arrest & Conviction | Simple Battery (against a juvenile) |
| Dec. 1990 | Arrest | Disturbing the Peace |
| June 2005 | Arrest | Aggravated Assault, Simple Battery |

    <u>Requested Action</u>: NOPD should re-run NCIC/NLETS/Triple III background checks for all officers currently on the force who were hired from 2005 to 2010.

2.      **NOPD should train officers to spot the red flags of "grooming" behavior.**

    <u>Background</u>: In 2020, Officer Curtis Carkum witnessed Officer Rodney Vicknair show "modeling photos" to the child sex crime victim, talk to her about "[il]licit photos" and give the child his phone number, but Carkum did not report those behaviors to anyone.[7] In testimony, Carkum could not identify any training to recognize red flags like this, other than to say it is "frowned upon."[8] And the City's representative conceded that if officers saw behavior like this and did not report it – like Carkum – that could implicate a training problem.[9]

    This problem intersects with the NOPD Ethical Policing Is Courageous (EPIC) program. If officers aren't properly trained to identify certain behaviors regarding grooming, inappropriate displays of photos, or other red flags of the sexualization of children, that diminishes officers' ability to assess the situation and intervene as necessary.

---

[7] Deposition of Curtis Carkum at 23:5-7, 26:21-27:13; 25:11-13, 31:16-19.
[8] *Id.* at 31:12-15 ("Q. Did you receive any training about giving your personal contact information to victims? A. It's frowned upon.")
[9] Barnes 30(b)(6) Dep.at 68:8-22 ("Q. If officers don't know that that's a red flag, that would be a training issue, agreed? . . . The Witness: I don't necessarily know if it would be a training issue. I mean, I guess it could be. It certainly could be a training issue. It could be a whole host of other issues, but I think a training issue would definitely -- would definitely come into play.")

Requested Action: NOPD should develop and implement training for officers on the red flags of "grooming" behavior, with particular training to be on the look-out for that behavior in other officers. A place to begin the research would be the "Level of Concern Guide" of "Red Flag Child Sexual Grooming Behaviors."[10]

**3.      NOPD should require PIB to either take action once "grooming" is identified or alternatively document the reasons why action is not being taken.**

Background: In 2020, Sgt. Lawrence Jones identified behaviors by Vicknair that he recognized as "grooming" behaviors. PIB did not, however, take any action to separate Vicknair from the child until an arrest warrant was obtained. PIB did not begin surveillance of Vicknair, place him on administrative detail, or even advise him to stay away from the child. As a result, he had the freedom to sexually abuse the child a final time.

Requested Action: NOPD should amend its Operations Manual to require that when PIB becomes aware of officer behavior that raises a reasonable suspicion of "grooming," PIB must (1) begin surveillance of the officer; (2) place the officer on administrative detail; (3) advise the officer not to contact or approach the child; or (4) document the reasons in writing as to why PIB has chosen not to take each of these options.

**4.      NOPD should utilize Automatic Vehicle Locator GPS data to monitor officer behavior.**

Background: NOPD patrol vehicles have a GPS tracking device called an Automatic Vehicle Locator. At trial, Sgt. Barnes testified that NOPD keeps historical AVL GPS data, that can be obtained via a request to the IT department. At deposition, Chief Kirkpatrick agreed that "if NOPD has GPS data, it should be looking for suspicious patterns in that GPS data."[11]

NOPD is not, however, looking for suspicious patterns in that GPS data. It has no automatic system for evaluating suspicious patterns in that GPS data, and did not pull Vicknair's GPS history even after the red flags of his behavior were identified.

Requested Action: NOPD should develop a system for assessing suspicious patterns of officer behavior in AVL GPS data, such as an officer returning repeatedly to the location of a sex-crime victim's home. As an interim step prior to the implementation of such a system, NOPD's operations manual should be amended to require that if PIB becomes aware of officer behavior that raises a reasonable suspicion of "grooming" and there is a specific location associated with the potential grooming victim, PIB shall request the officer's AVL data and review it for trips to that area.

---

[10] See Jeglic et al., _Identification of red flag child sexual grooming behaviors_, Child Abuse & Neglect (Feb. 2023). Level of Concern Guide available here: https://ars.els-cdn.com/content/image/1-s2.0-S0145213422005324-mmc1.pdf
[11] Superintendent Kirkpatrick Dep. at 18:24-19:2.

5.    **NOPD should adopt a policy regarding the transport of child sex crime victims by specialized officers.**

Background: Rodney Vicknair conducted part of his grooming during the process of transporting the minor sex crime victim to the hospital. At deposition, a NOPD representative testified that there was no prohibition against a regular patrol officer transporting a minor sex crime victim to the hospital for a rape kit.[12]

Requested Action: NOPD should amend its Operations Manual to require that child sex crime victims be transported by Special Victim Section officers, except in exigent circumstances where no Special Victim Section officer is available. The Operations Manual should require that in such an event, the officers involved shall document the nature of the exigency.

6.    **NOPD should conduct a Serious Discipline Review Board process for this matter.**

Background: NOPD Policy Manual Chapter 1.3.8 establishes a Serious Discipline Review Board (SDRB) to evaluate whether "inadequate supervision or a failure in the chain-of-command was present and caused or enabled the violation(s)." This review is to be "in addition to any other review or investigation."

Requested Action: Given that a federal jury found that the "City of New Orleans inadequately supervised Rodney Vicknair reflecting a deliberate indifference to the risk of sexual assault, battery, or false imprisonment," a SDRB review would be appropriate here.

Very truly yours,

/s/ William Most
William Most

Cc:    City of New Orleans, via Attorney Donesia Turner (███████████████)

Office of the Independent Police Monitor, via scziment███████ ████████
sharonda██████████████████

Office of the Consent Decree Monitor, via jaronie████████████████
aburns@consentdecreemonitor.onmicrosoft.com

U. S. Department of Justice (Civil Rights Division), via Jude.Volek████████████
jonas.geissler████████, arusha.gordon███████████, paul.killebrew████████████
suraj.kumar██████████ timothy.mygatt█████████ syeda.riaz███████████

---

[12] See Barnes Dep. at 68:24-82:18.

**From:** Mary Howell ████████████████
**Sent:** Wednesday, October 23, 2024 12:59 PM
**To:** William Most
**Cc:** LAEDdb_Clerk; Donesia D. Turner; Stella Cziment; Sharonda Williams; Jonathan Aronie; aburns@consentdecreemonitor.onmicrosoft.com; Volek, Jude (CRT); Geissler, Jonas (CRT); Gordon, Arusha (CRT); Killebrew, Paul (CRT); suraj.kumar████████; Mygatt, Timothy (CRT); Riaz, Mehveen (CRT); Hope Phelps; Veronica Barnes
**Subject:** Re: U.S. v. City of New Orleans, 12-cv-1924 - Public Comment

**CAUTION - EXTERNAL:**

this is great...
thank you so much...
please let me know if you get any reaction/feedback...
we have requested a meeting with NOPD for all kinds of data and updates....will let you know what we find out..
hope all is well
Mary

On Wed, Oct 23, 2024 at 12:37 PM William Most < ████████████████ > wrote:
Dear Clerk of Court,

The attached letter provides public comment as requested by Judge Morgan in her September 27, 2024 notice. See *USA v. City of New Orleans,* 12-cv-01924-SM-DPC (E.D. La.), R. Doc. 795.

Thank you,

William Most

--
William Most
Most & Associates



--
Mary E. Howell
Attorney at Law

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review,

**From:**      Amy Farnsworth <​█████████████​>
**Sent:**      Wednesday, October 23, 2024 2:17 PM
**To:**        LAEDdb_Clerk
**Subject:**   In favor of consent decree

CAUTION - EXTERNAL:


I am in favor of the consent decree and the sustainment plan. Please continue this extensive blueprint for positive change in New Orleans.
Thanks,
Amy
Amy Farnsworth
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Nicholas Aucoin ████████████ |
| **Sent:** | Wednesday, October 23, 2024 5:16 PM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | Consent Decree |

**CAUTION - EXTERNAL:**

As Judge Morgan is awaiting feed back from the community, I want express my strong preference for **moving the NOPD to the Compliance Phase** of the Consent Decree.

Nicholas Aucoin

████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Stephanie Crean 
**Sent:** Thursday, October 24, 2024 4:47:47 AM (UTC+00:00) Monrovia, Reykjavik
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Say NO to Ponzi Police Reform

**CAUTION - EXTERNAL:**

Judge Susie Morgan,

I'm deeply concerned at the conflicts of interest of Effective Law Enforcement for All (ELEFA), paid consent decree monitors who are disturbingly intertwined with police advocates in New Orleans and Minneapolis.

I write to oppose the end of the consent decree and to demand that the Department of Justice conduct an investigation into all DOJ, NOPD, and Minneapolis employees that are now affiliated with ELEFA, and that new monitors in New Orleans and Minneapolis are selected, free from conflicts of interest.

Those overseeing the practices of the police should not be advocates for the interests of the police, but should instead be critical of our overinvestment in reactive safety measures.

Thank you for your attention to this issue.

Stephanie Crean

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Brian Gibbs <​███████████​>
**Sent:** Thursday, October 24, 2024 6:38 PM
**To:** LAEDdb_Clerk
**Subject:** NOPD - Support for Consent Decree Sustainment Period

**CAUTION - EXTERNAL:**

To whom it may concern:

I am writing in support of the US Dept of Justice's movement that the City of New Orleans enter into a Sustainment Period as a transition towards ending the Consent Decree.

Great progress has been made towards the goals of the Consent Decree.

NOPD needs more freedom to manage its own affairs.

Public Safety is the #1 issue keeping New Orleans at the bottom of most every Quality of Life metric. As a life-long resident of New Orleans, it hurts my soul. Please let's start the steps to bring a better Quality of Life to all of New Orleans' citizens and visitors.

Sincerely,

Brian Gibbs
Brian Gibbs Development, LLC



This electronic message, including any and all attachments hereto, is intended solely to be used by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to its intended recipient, you are herewith notified that any dissemination, distribution, copying or retention of this communication or the information contained herein is strictly prohibited. If you have received this message communication in error, please notify us by telephone immediately and permanently delete the original and any electronic or printed copy thereof. Statements made in, or attachments to, this email are not intended to be contractual in nature and are therefore not binding on this firm or any principal thereof until mutually satisfactory agreements memorializing the subject matter of this transmission are executed by hand, in ink, (or by facsimile if authorized by the parties) and hard copies are mutually delivered by the parties thereto.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Charles Tolleson <█████████████>
**Sent:** Thursday, October 24, 2024 9:19 PM
**To:** LAEDdb_Clerk
**Subject:** NOPD Consent Decree Public Comment

CAUTION - EXTERNAL:

Comment/Concern

1. Under the Consent Decree, NOPD has been required/forced to make changes across multiple city administrations and NOPD leadership structures under the direct accountability, supervision and mandate of the presiding Consent Decree Court.

2. The recent - arbitrary?? - decision to withhold NOPD officer promotions brings into question if the NOPD political environment and force leadership can expected/trusted to follow - not circumvent - law, policy, and personnel procedure.

Thank you

Dr Charles Tolleson
████████████████
Sent from my iPhone
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Alice Stark <████████████████████>
**Sent:** Thursday, October 24, 2024 9:58:15 AM (UTC+00:00) Monrovia, Reykjavik
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Say NO to Ponzi Police Reform

**CAUTION - EXTERNAL:**

Judge Susie Morgan,

I'm deeply concerned at the conflicts of interest of Effective Law Enforcement for All (ELEFA), paid consent decree monitors who are disturbingly intertwined with police advocates in New Orleans and Minneapolis.

I write to oppose the end of the consent decree and to demand that the Department of Justice conduct an investigation into all DOJ, NOPD, and Minneapolis employees that are now affiliated with ELEFA, and that new monitors in New Orleans and Minneapolis are selected, free from conflicts of interest.

Those overseeing the practices of the police should not be advocates for the interests of the police, but should instead be critical of our overinvestment in reactive safety measures.

Thank you for your attention to this issue.

Alice Stark

████████████████████


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Will Pressley
**Sent:** Friday, October 25, 2024 6:51 PM
**To:** LAEDdb_Clerk
**Subject:** Please lift the consent decree

CAUTION - EXTERNAL:


Hello,

I am a resident of New Orleans and I strongly recommend we move into the Compliance Phase of the Consent Decree.

I believe NOPD has been policing constitutionally and doing an excellent job. I believe in our NOPD Superintendent and her ability to enforce just policing. And I strongly believe our city needs a confident police department to protect us from those who would do us harm.  They need our support and moving to the Compliance Phase would go a long way to signal that support.

The drawbacks of continuing to handcuff NOPD are much greater than any potential benefits. The drawbacks in my opinion are quantifiable - the benefits at this point, I think, are speculation.

Please put our safety back in the hands of the NOPD. I trust them to police as they should. I'd ask that you do the same. This is hurting us.

Sincerely,
Will Pressley
New Orleans, LA


CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          Nancy Lytle ▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:**          Saturday, October 26, 2024 7:52 PM
**To:**            LAEDdb_Clerk
**Subject:**       From Nancy Lytle - ▮▮▮▮▮▮▮▮▮

**CAUTION - EXTERNAL:**

I concur with the attached letter below, my efforts go back to 1987 and also sitting in 3 years of Wednesday Comstat meetings with the Chief, Deputy Chiefs , and Lieutenants at headquarters discussing and witnessing the implementation snd changes.  Their goals were fluid as they made and implemented the changes and taken very serious. The academy was also retraining in areas necessary.....

Dear Judge Susie Morgan,

I am encouraging the Department of Justice to enter the two-year Sustainment Period with the New Orleans Police Department.

This is the time; I believe that without TRUST of the powers that be with all the moves including the appointment of our current Superintendent Kirkpatrick not to step back and allow the Police to grow under all with what they have done to reach this point would be detrimental to very cause that the consent decree was intended. There comes a time, not all is ever perfect but when all the efforts and stumbles are behind to monitor at a distance and the goals are clear, with the right leadership we and can go forward and we must.

A group of us including myself started Neighborhood Watch (1981) for the City Of New Orleans under then Chief Henry Morris, then succeed by Chief Warren Woodfork and many after. We (our group) have done everything to bring a partnership with the police to break down barriers. I have seen the good, the bad, and the ugly over the years, there is one thing for certain if you continue to always find fault when you have done all possible to get it right, you will not succeed. ONWARD!

I beg that you step back and allow the NOPD to grow and flourish. We thank you for your guidance, leadership, and support during the last 11 years. It is now our turn to guide with that steady hand. We know that the Department of Justice will always be there for continual guidance in the future, Lord knows we are not shy.

I remain yours truly,

Val C. Cupit
Nancy E. Lytle-I concur with
Val Cupit's letter above.

1

**From:**          Laura Vickery <█████████████

**Sent:**          Sunday, October 27, 2024 6:28 PM

**To:**            LAEDdb_Clerk

**Subject:**       Move to Compliance

**CAUTION - EXTERNAL:**

As Judge Morgan is awaiting feedback from the community, I want to express my strong preference for moving the NOPD to the Compliance Phase of the Consent Decree.

Thank you,
Laura Vickery

█████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Samirah Muhammad <█████████████████████>
**Sent:** Sunday, October 27, 2024 7:52 PM
**To:** LAEDdb_Clerk

**CAUTION - EXTERNAL:**

Good evening,

I am emailing to put in my demand to keep the consent decree to help put an end to racist and bias policing and to make sure the police are being held accountable by the community. This is important and affects us marginalized communities heavily. The consent decree is very important and must be kept in tact!

Best,

Samirah Muhammad

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**       Dawn Hebert <​██████████████​>
**Sent:**       Monday, October 28, 2024 3:36 PM
**To:**         LAEDdb_Clerk
**Subject:**    FW: NOPD Sustainment Period

**CAUTION - EXTERNAL:**

Honorable Judge Susie Morgan

Eastern District of Louisiana

As a citizen in New Orleans, I am in full agreement that the City and NOPD has entered a "Sustainment Period" as proposed <u>NOPD Consent Decree Compliance Sustainment Plan</u>.

Citizen responses to questions regarding NOPD have returned favorably over the past years stating that their experience with Police Officers can be classified as satisfied or extremely satisfied. Car jackings, vehicle vandalism, use of force and varied complaints have drastically decreased due to crime prevention initiatives implemented by NOPD within communities.

Community engagement has always been and still is practiced within my 7th District station by its Commanders and the officers. The New Orleans East area is the largest in Orleans Parish with the officers assigned to this station working diligently to maintain order and safety within the community. NOMPAC meetings are very informational. In addition, a separate community meeting held off site by Commander DeLarge is well attended and appreciated by those in attendance. Weekly NOPD information on NOPD actions are shared weekly regarding incidents within the 7th District. Neighborhood policing plans are in place and necessary due to the large apartments in New Orleans East that are poorly maintained and managed. The crime rate has drastically dropped over the past months that can be attributed to additional attention being provided by NOPD and the City Departments. New Orleans East residents are fully appreciative of our officers in the protection of our community.

I am in full support that the Consent degree should end at the end of the "Sustainment Period" and that NOPD and the City will monitor and continue monitoring behaviors and

operational compliance items . With the support the Department of Justice moving to sustainment and as a member of the NOLA Coalition, we agree that it is time to allow the NOPD

more freedom to show it can manage its own performance that it has been doing over the past three years.

Thanking you in advance of supporting this request,

Dawn Hebert

1

President, East New Orleans Neighborhood Advisory Commission

NOLA Coalition Member

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Atticus Pratt
**Sent:** Monday, October 28, 2024 5:27 PM
**To:** LAEDdb_Clerk
**Subject:** no to nopd sustainment

CAUTION - EXTERNAL:


Do not move forward with NOPD sustainment! NOPD has shown no restraint of force or racism, and oversight is the answer!
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Jacob Hutter █████████████████
**Sent:**           Monday, October 28, 2024 6:24 PM
**To:**              LAEDdb_Clerk
**Subject:**      Reject Sustainment

**CAUTION - EXTERNAL:**

Hi,

I am a New Orleans resident and a pre-lawn student at Loyola University. I am very disturbed by the New Orleans Police Department's plan to exit federal consent decree oversight. Most people living in New Orleans will tell you that the NOPD is as biased as ever, and they would be justified in saying so.

According to the Professional Standards and Accountability Bureau's August 2023 and January 2024 Use-of-Force Audits, as well as the June 2024 Federal Consent Decree Monitors Report, about 90% of NOPD's use of force was against Black people - 11x more than against white people - even though only 56% of the city's population is Black. Additionally, 90% of stop-and-frisk searches for firearms during Mardi Gras targeted Black residents. This research also shows that NOPD's use of force against Black women rose by 54%.

It is clear to me, as I'm sure it is to you, that the NOPD had not improved since the implementation of the consent decree. Thus, moving into the Sustainment period would be a very unwise decision to make.

I hope the Court makes the right decision.

Sincerely,

Jacob Hutter

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**           Joshua Teitelbaum ███████████████████
**Sent:**           Tuesday, October 29, 2024 8:18 AM
**To:**             LAEDdb_Clerk
**Subject:**        NOPD Consent Decree

**CAUTION - EXTERNAL:**

To Whom It May Concern:

I am writing to express my strong desire to see the consent decree REMAIN in place. DO NOT lift the consent decree.

Thank you.

Joshua Teitelbaum

████████████████████

████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** JustWordsLetsTalk █████████████
**Sent:** Tuesday, October 29, 2024 8:58 AM
**To:** LAEDdb_Clerk
**Subject:** In Support NOPD's Consent Decree request to enter the Sustainment Period

**CAUTION - EXTERNAL:**

I support the NOPD's Consent Decree request to enter the Sustainment Period.

Desha Greely

██████████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        Anisah Sahibul ███████████████
**Sent:**        Tuesday, October 29, 2024 9:49 AM
**To:**          LAEDdb_Clerk
**Subject:**     Concern - New Orleans PD Consent Decree Sustainment

**CAUTION - EXTERNAL:**

Judge Morgan,

I am a resident of New Orleans, writing to express my firm belief that New Orleans Police Department has not made improvements significant enought to be removed from federal oversight. After 10 years of federal oversight, the percentage of NOPD arrests accounted for by Black people has increased from 75% in 2016 to an even more staggering 82% in 2023. Of even greater concern, the use of force against Black women increased by 54.9% in 2023. This is unequal policing. This a violation of our rights. The NOPD has failed to reach full compliance with federal guidelines, so I am greatly dismayed that the DOJ is considering allowing NOPD to enter into Sustainment. The NOPD's failure to improve their policing and failure to abide by civil rights should not be rewarded.

Regards,
Anisah Sahibul

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**      Susan Klein <█████████████>
**Sent:**      Tuesday, October 29, 2024 2:36 PM
**To:**        LAEDdb_Clerk
**Cc:**        Nicholas L. Gernon; Shelby Ursu
**Subject:**   City of New Orleans/NOPD Consent Decree

**CAUTION - EXTERNAL:**

The Honorable Susie Morgan
Judge, United States District Court
Eastern District of Louisiana

Dear Judge Morgan,

I support the US Department of Justice movement that the City of New Orleans enter into a two-year Sustainment Period, according to the terms of a negotiated plan, bringing the Consent Decree concerning the New Orleans Police Department closer to a successful resolution.

As a New Orleans resident and civic activist serving on several organizations, and as a Commissioner of the French Quarter Management District I am well aquatinted with this issue. Please authorize the beginning of the Sustainment Period of the current Consent Decree regarding the New Orleans Police Department. The City of New Orleans and the NOPD have demonstrated their ability to achieve and sustain the high policing standards as required in the current Consent Decree. While these standards and its effects on our community is the primary factor, it must be recognized that the cost of the current Consent Decree also creates another burden to our citizens. The $60,000,000.00 spent thus far could have been well used for our dismal drainage and roads.

Your consideration of my request to begin the Sustainment Period is appreciated.

Sincerely,

Susan Klein

█████████████

1

**From:**                Pooja Prazid <span style="background-color:black">         </span>
**Sent:**                Thursday, October 31, 2024 7:09 AM
**To:**                  LAEDdb_Clerk
**Subject:**           No to NOPD Exiting Federal Oversight

**CAUTION - EXTERNAL:**

To whom it concerns,

My name is Pooja Prazid and I am a resident of New Orleans. I am requesting that the NOPD does not exit the federal consent decree and go into sustainment. There are conflicts of interests between the monitors and those they are supposed to hold accountable, as has been mentioned in the NOLA.com article. We must strengthen Community Advisory Boards, work on the low clearance for sexual assault cases, and change the monitors to avoid a conflict of interest. Thus, NOPD should not exit federal oversight at the moment.

Thank you,
Pooja Prazid

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Methe, Ed ████████████████
**Sent:** Thursday, October 31, 2024 2:14 PM
**To:** LAEDdb_Clerk
**Subject:** Please say YES to NOPD 2-year Sustainment Period

**CAUTION - EXTERNAL:**

Judge Susie Morgan,

As a 73-year resident of the Greater New Orleans Area, I believe it is time NOPD enters the two-year Sustainment Period. This Sustainment Period is the next step with the Consent Decree. We depend on NOPD to protect and to serve the citizens of New Orleans and I rely on NOPD for the safety of my family.

By entering the Sustainment Period, the police officers can gain a greater sense of pride in their accomplishments for our community. Recruiting new officers should be enhanced with the new direction of NOPD. Maintaining the Consent Decree requires funds; these funds can be better utilized by NOPD for the protection of our law-abiding citizens.

The Consent Decree was never meant to be everlasting. As judge and deciding voice, we support your decision to enter the Sustainment Period. Thanks for allowing this opportunity to express support.

Best regards,

E D W A R D  K.  M E T H E
*Executive Vice President*
Gibbs Construction



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Beauchamp, Christian █████████████
**Sent:**          Thursday, October 31, 2024 7:35 PM
**To:**            LAEDdb_Clerk
**Subject:**       Consent Decree

CAUTION - EXTERNAL:


I'm writing in opposition of letting the consent decree move into sustainment. NOPD is already plagued by racist and biased policing as well as excessive use of force—and setting the stage for the removal of federal oversight would only make these issues worse for New Orleans' most vulnerable residents.

Further, a huge conflict of interest in the monitoring process has been exposed as we know David Douglass employs numerous former NOPD officials. We can't allow such biased people to be allowed to influence such a crucial public safety crisis.

It is essential that NOPD remain under the consent decree until it has addressed it racist policing and excessive force issues.


Christian Beauchamp █████████
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# CRIMESTOPPERS
## 504-822-1111 GNO
crimestoppersgno.org

Mailing Address: P.O. Box 55249 · Metairie, LA 70055-5249
(504) 837-TIPS · Fax (504) 832-2571
*Contributions to Crimestoppers are tax-deductible*

**Monday, October 21, 2024**

**Request to Submit Public Comment from the Board of Directors of Crimestoppers, Inc.**

**Crimestoppers of Greater New Orleans Supports Lifting of Consent Decree for NOPD**

As a civilian nonprofit who is both a partner to the New Orleans Police Department and a consumer of their services, we have witnessed firsthand the positive strides made with the areas noted in the Consent Decree. Crimestoppers of Greater New Orleans (Crimestoppers GNO) strongly support lifting the Consent Decree for the New Orleans Police Department (NOPD) based on notable improvements in key areas of police reform and compliance. These achievements demonstrate NOPD's dedication to addressing prior deficiencies and establishing best practices that promote public safety, transparency, and accountability.

**Use of Force**
Considerable progress has been made in reducing the use of force incidents by NOPD officers. The number of unauthorized uses of force incidents dropped from 14 in 2019 to just 4 in 2023. Additionally, overall use of force incidents declined from 822 in 2015 to 568 in 2023. This reduction illustrates NOPD's enhanced training, oversight, and commitment to responsible policing.

**Stop, Search, and Arrest**
NOPD has achieved a compliance rate of 95.4% in recent audits regarding stop, search, and arrest procedures. This elevated level of adherence to protocol reflects the department's efforts to ensure fairness and legality in law enforcement actions.

**Bias-Free Policing**
A key achievement in bias-free policing is NOPD's system for reviewing data to detect and address any instances of bias. This mechanism not only identifies problematic patterns but also prompts corrective action, reinforcing the department's commitment to impartial and just policing.

**Crisis Intervention Teams (CIT)**
With 40% of patrol officers CIT-certified, NOPD has improved its ability to manage situations involving individuals experiencing mental health crises. Additionally, audits show 100% compliance in both custodial interrogation and photographic line-up procedures, further highlighting the department's diligence in maintaining lawful and ethical practices.

**Community Engagement**
NOPD's quarterly reports on community engagement have provided a valuable platform for identifying neighborhood concerns and implementing corrective actions. The development of neighborhood policing plans has fostered a closer relationship between officers and the communities they serve, allowing for more targeted and effective policing efforts.

**Recruitment and Training**

The department's focus on improving recruitment has resulted in better candidate quality and retention from 2018 to 2022. Furthermore, 93% compliance with the most recent academy audit indicates a strong commitment to rigorous officer training, ensuring the highest standards of policing.

**Supervision and Secondary Employment**

NOPD has achieved a 97-100% compliance rate in supervisory audits, demonstrating strong internal oversight and accountability. The department also developed a comprehensive system for managing secondary employment, incorporating integrity checks, and addressing potential concerns.

**Transparency and Oversight**

The release of detailed data and reports reinforces NOPD's dedication to transparency. Regular reviews of departmental performance, including the use of force, community engagement, and compliance, contribute to ongoing public trust and confidence in the department's reform efforts.

Allowing the NOPD to demonstrate in full transparency, during the sustainment period their ability to continue with the strides made to ensure constitutional policing, while under the watchful eye of the Monitors and Court, should provide citizens with a greater sense of trust and commitment to the multitude of policies/standards created, educational training, community outreach and recent decreases in major areas of violent crime which has been documented by the Monitors.

Crimestoppers GNO fully believes that the public must understand that the results and sustainability of the progress made is bigger than any one person or elected official and must be memorialized into the fabric of our criminal justice system and city government. The New Orleans City Council began this process by adopting regulations into the City Code to ensure the continuity of critical activities and procedures by the department on actions required by the Consent Decree. It is our recommendation that NOPD must convey to the public that beyond those 2 years of monitoring, all the policies and procedures institutionalized for "constitutional policing" will become a permanent part of the department's regular auditing process and those findings made public. Further, the department should create a permanent "Office of Compliance" to audit, regulate and report to the Mayor, City Council and to the public their annual report.

Further, when selecting the next Superintendent of Police, the new Mayor and City Council will vet candidates, and hold him/her accountable to keep in place all the constitutional policing policies and procedures developed through the Consent Decree. The new Superintendent of Police shall commit, in writing, their pledge not to interfere with years of arduous work to implement the Consent Decree for sustainability.

Crimestoppers GNO believes these achievements, as well as the joint request made to move forward by the Department of Justice (DOJ) and the NOPD, reflect NOPD's readiness to operate independently of the Consent Decree, and supports the move to lift it, allowing the department to continue progressing while maintaining the trust and safety of the community.

Crimestoppers, Inc. (GNO)

Submitted by: Darlene Cusanza, President and CEO on behalf of the Board of Directors

# GUSTE, BARNETT, SCHLESINGER & ALPAUGH, L.L.P.

William J. Guste, III
Claude A. Schlesinger
C. Theodore Alpaugh, III (P.L.C.)

ATTORNEYS AND COUNSELORS AT LAW
639 LOYOLA AVENUE
SUITE 2130
NEW ORLEANS, LOUISIANA
70113-3157

William J. Guste (1893-1957)
Herman L. Barnett (1893-1982)

William M. Barnett
Retired

Telephone: (504) 529-4141
Direct: ███████
Facsimile: (504) 561-0326

Writer's Email
███████

November 6, 2024

The Honorable Susie Morgan        Via Email Clerk@laed.uscourts.gov & U.S. Mail
United States District Court
Eastern District Court of Louisiana
c/o Clerk of Court
500 Poydras Street, Room C-151
New Orleans, LA 70130

      Re:   United States of America v. City of New Orleans, No. 2:12-cv-01924
           (New Orleans Police Department Consent Decree)

Dear Judge Morgan:

We represent the Fraternal Order of Police in New Orleans and have over 93% of the active New Orleans Police Department officers as our members.

The great majority of NOPD Officers want to be proud of their Department and their job. We embrace constitutional policing. We have embraced the Consent Decree reforms. We appreciate the accolades that have come to the Department for what we do and what we have accomplished.

Our culture has been dramatically reformed.

In 2011 the United States Department of Justice under former Attorney General Eric Holder conducted one of the most extensive investigations of a law enforcement agency ever conducted by that agency. The DOJ report condemned virtually every aspect of the NOPD at that time.

This in turn led to the implementation of the Consent Decree with over 400 paragraphs designed to change the Department's policies, practices and procedures.

GUSTE, BARNETT, SCHLESINGER & ALPAUGH, L.L.P.

November 6, 2024
Page number 2

Now, the vast majority of police officers have been hired in last 12 years and only know the reforms implemented under the Consent Decree.

The reforms have been extensive. We are fully transparent with many facets of policing, including public meetings held weekly in each district. We now post crime statistics on the web and all of our policies are posted for public review. Our officers use Body Worn Cameras now to supplement the in-car cameras and those videos are released to the press and public. Stops of individuals must meet constitutional standards. Each officer receives annual in-service training. There are regular audits of several functions. There is a total revision of the disciplinary process, now oriented to best practices to correct misconduct. There is a review board for all instances of any use of force and each such incident has to be fully reported. There was a full reset of the off-duty detail system, etc.

The Fraternal Order of Police endorses the Parties' Joint Motion For Approval of (the) Sustainment Plan and urge the Court to approve it.

We also request that we be allowed to address the Court at any hearing on this Motion.

Respectfully Submitted,

_____
Claude A. Schlesinger
C. Theodore Alpaugh, III

**From:** STOP JOHNOBRIEN <████████████████>
**Sent:** Wednesday, November 6, 2024 6:46:52 PM (UTC+00:00) Monrovia, Reykjavik
**To:** efile-morgan@lawd.uscourts.gov <efile-morgan@lawd.uscourts.gov>; eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Re: Awareness Campaign/ Decree Feedback

**CAUTION - EXTERNAL:**


Greetings

Our Campaign is continuing to work on a comprehensive summary of Consent Decree concerns to be made available for Judge Morgan's review.

Hopefully, on Monday the 11th, we will have this information passed along to y'all's Office.

Thanks
https://reportjohnobrien.com/




On Thu, Oct 31, 2024 at 12:57 PM STOP JOHNOBRIEN <████████████████> wrote:


On Thu, Oct 31, 2024 at 12:55 PM STOP JOHNOBRIEN <████████████████> wrote:

https://nopdjohnobrien.com/
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Felix Allen < ██████████████ >
**Sent:**          Wednesday, November 6, 2024 1:08 PM
**To:**            LAEDdb_Clerk
**Subject:**       Consent Decree

**CAUTION - EXTERNAL:**

Dear Judge Morgan,

I am deeply concerned about the possibility of the NOPD entering sustainment.

There is a lot of troubling information in the annual bias-free policing reports and the 2023 annual OIPM report. Of all the people NOPD subjected to force in 2023, 89.5% were Black people (90% for men and 86% for women). Of all the people NOPD arrested in 2023, 80% were Black people.

These statistics clearly indicate that the NOPD is a racially biased institution and can in no way be seen as "compliant" with federal regulations.

The city entered into the consent decree due to the NOPD's racist, unconstitutional, and brutal practices in 2013; how can it move out of the consent decree when NOPD's total use of force in 2023 was actually 1.8 times higher than it was in 2013?

When I talk about NOPD with my coworkers, they all express concerns about losing this crucial piece of oversight; one person compared it to losing the leash on a dog that is known to bite people.

I urge you to make the right decision and keep NOPD under the consent decree; NOPD cannot be allowed to enter sustainment because they have not earned our community's trust.

Sincerely,
Felix Allen


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Claude Schlesinger ███████████████
**Sent:**          Wednesday, November 6, 2024 5:13 PM
**To:**            LAEDdb_Clerk
**Subject:**       2:12-cv-01924
**Attachments:**   Letter to Judge Morgan CAS 2024-11-06.pdf

**CAUTION - EXTERNAL:**

Dear Clerk
Attached is a comment for the New Orleans Police Department Consent Decree case referenced
in the subject area, 2:12-cv-01924.
Thank you,
Claude

CLAUDE A. SCHLESINGER
Guste, Barnett, Schlesinger & Alpaugh, L.L.P.





Peer Review Rated
For Ethical Standards & Legal Ability™
(AV) PREEMINENT™
Martindale-Hubbell®
from LexisNexis®

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender at (504) 529-4141, delete the material from any computer and/or destroy any printed or other copy. We do not waive attorney-client or work product privilege by the transmission of this message.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening
attachments or clicking on links.

## GUSTE, BARNETT, SCHLESINGER & ALPAUGH, L.L.P.

William J. Guste, III
Claude A. Schlesinger
C. Theodore Alpaugh, III (P.L.C.)

ATTORNEYS AND COUNSELORS AT LAW
639 LOYOLA AVENUE
SUITE 2130
NEW ORLEANS, LOUISIANA
70113-3157

William J. Guste (1893-1957)
Herman L. Barnett (1893-1982)

William M. Barnett
Retired

Telephone: (504) 529-4141
Direct: (504) 681-4516
Facsimile: (504) 561-0326

Writer's Email
cas@GusteBarnett.com

November 6, 2024

The Honorable Susie Morgan        Via Email Clerk@laed.uscourts.gov & U.S. Mail
United States District Court
Eastern District Court of Louisiana
c/o Clerk of Court
500 Poydras Street, Room C-151
New Orleans, LA 70130

     Re:   United States of America v. City of New Orleans, No. 2:12-cv-01924
          (New Orleans Police Department Consent Decree)

Dear Judge Morgan:

     We represent the Fraternal Order of Police in New Orleans and have over 93% of the active New Orleans Police Department officers as our members.

     The great majority of NOPD Officers want to be proud of their Department and their job.  We embrace constitutional policing.  We have embraced the Consent Decree reforms. We appreciate the accolades that have come to the Department for what we do and what we have accomplished.

     Our culture has been dramatically reformed.

     In 2011 the United States Department of Justice under former Attorney General Eric Holder conducted one of the most extensive investigations of a law enforcement agency ever conducted by that agency.  The DOJ report condemned virtually every aspect of the NOPD at that time.

     This in turn led to the implementation of the Consent Decree with over 400 paragraphs designed to change the Department's policies, practices and procedures.

GUSTE, BARNETT, SCHLESINGER & ALPAUGH, L.L.P.

November 6, 2024
Page number 2

Now, the vast majority of police officers have been hired in last 12 years and only know the reforms implemented under the Consent Decree.

The reforms have been extensive.  We are fully transparent with many facets of policing, including public meetings held weekly in each district.  We now post crime statistics on the web and all of our policies are posted for public review.  Our officers use Body Worn Cameras now to supplement the in-car cameras and those videos are released to the press and public.  Stops of individuals must meet constitutional standards.  Each officer receives annual in-service training.  There are regular audits of several functions.  There is a total revision of the disciplinary process, now oriented to best practices to correct misconduct.  There is a review board for all instances of any use of force and each such incident has to be fully reported.  There was a full reset of the off-duty detail system, etc.

The Fraternal Order of Police endorses the Parties' Joint Motion For Approval of (the) Sustainment Plan and urge the Court to approve it.

We also request that we be allowed to address the Court at any hearing on this Motion.

Respectfully Submitted,

Claude A. Schlesinger
C. Theodore Alpaugh, III

| | |
|---|---|
| **From:** | Mavis Early <████████████> |
| **Sent:** | Wednesday, November 6, 2024 6:25 PM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | CONSENT DECREE-NOPD- SUBMISSION OF PUBLIC COMMENT. |
| **Attachments:** | Consent Decree NOPD.FINAL.11-6-24.docx |

**CAUTION - EXTERNAL:**

CLERK OF COURT<

My apologies.  The submission I send you was document protected.  Please see attached.  And please confirm receipt& ability to view the attachment. t

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Thank you,

**Mavis Early**
Mavis Early, Executive Director
Greater New Orleans Hotel & Lodging Association
& Greater New Orleans Hotel & Lodging Association
Hospitality Education Foundation

████████████████████████████

1



**Greater New Orleans
Hotel & Lodging
Association**

*Directors*

**Daffne Enclard**
**President**
St. Christopher Hotel

**Travis Tague**
**Vice President/President-Elect**
Hyatt Centric

**Cody Bertone**
**Secretary**
Virgin Hotel

**Jerry Reyes**
**Treasurer**
Westin Canal Place

**Frank Zumbo**
**Chairman of the Board**
New Orleans Marriott

**Mavis Early**
**Executive Director**

**David Bilbe**
Omni Royal Orleans

**Joe Blanchek**
Marriott Warehouse Arts

**Steve Caputo**
Hotel Monteleone

**Tod Chambers**
The Roosevelt Hotel

**Bret Chittenden**
Expotel Hospitality

**Jim Cook**
Sheraton New Orleans

**Eddie Jacobs**
NOLA Hotel Group

**Ken Jacques**
NOPSI Hotel

**Ralph Mahana**
Windsor Court

**Jesseca Malecki**
Kimpton Hotel Fontenot

**Ian Moro**
JW Marriott Hotel

**Samir Mowad**
Caesar's New Orleans Hotel

**Donald Payne**
Renaissance Pere Marquette
& Renaissance Arts

**David Piscola**
Hilton Riverside

**John Romano**
InterContinental New Orleans

**Scott Snipes**
Hyatt Regency New Orleans

**Kristi Taglauer**
Hotel Provincial

**Natalie Trosclair**
Courtyard by Marriott Downtown

**Mike Valentino**
Valentino New Orleans Hotels

*Allied Directors*

**Glen Armantrout**
Premium Parking

**Joseph Quilio**
Pelican New Orleans/Seven Three Distillery

November 6, 2024

Clerk of Court,
U.S. District Court, EDLA
500 Poydras Street – Room C-151
New Orleans, LA  70130

Re: Consent Decree - Submission of Public Comment

We are submitting our comments on behalf of the Greater New Orleans Hotel & Lodging Association a non-profit trade association with a membership of over 100 local hotels and over 100 allied members who do business with hotels.

We are writing in support of the NOPD entering a "Sustainment Period" for the Consent Decree and the proposed Sustainment Plan of compliance.  We understand that a 'Sustainment Period" would commence for a two-year period during which the City and NOPD must demonstrate they are sustaining the reforms put in place to date and continue to diligently pursue the corrective actions and remedial measures identified in the Sustainment Plan.  Further, we understand that there will be continued monitoring and Court oversight during the Sustainment Period and if the City or NOPD fails to comply with the Sustainment Plan, the court will take action as appropriate.

The hospitality industry is one of the largest economic generators and job suppliers in the City of New Orleans.  Successful law enforcement is among the most important of civic services for employees, visitors, resident and businesses, alike.  We have seen significant improvement in police reform and compliance in the last ten years.  We have seen NOPD become more transparent, accountable and the public safer than the decade before.

We have seen outstanding leadership, recruitment, hiring and retention increases, interrogation and photo line-ups at a 100% compliance level, increased crisis intervention teams, 95% of stop & search compliance, a marked decline of use of force, notable increases in performance evaluations and supervision and noteworthy compliance increases in other key areas.   The Public Standards and Accountability Bureau has added much needed structure and consistency to policy decisions and internal accountability.

For these reasons and more the Greater New Orleans Hotel & Lodging Association strongly supports a Consent Decree Sustainment Period and the proposed Sustainment Plan of compliance.

With best regards,

*Mavis Early*

Mavis Early, Executive Director

**From:**              Cook, James ███████████████

**Sent:**              Wednesday, November 6, 2024 6:29 PM

**To:**                LAEDdb_Clerk

**Cc:**                ABurns@consentdecreemonitor.onmicrosoft.com

**Subject:**           Community Feedback - Relative to the NOPD Consent Decree Compliance Sustainment
Plan

**Attachments:**       Consent Decree Public Comment Response - J Cook.pdf

**CAUTION - EXTERNAL:**

Please see the attached letter relative to the request by the Court for public feedback on the NOPD Consent Decree Compliance Sustainment Plan.

Thank you,

Jim Cook

 **Jim Cook**
**General Manager**

███████████████████

**Sheraton New Orleans Hotel**
500 Canal Street
New Orleans, LA 70130

Marriott.com/MSYIS

This electronic message transmission contains information from the Company that may be proprietary, confidential and/or privileged. The information is intended only for the use of the individual(s) or entity named above. If you are not the intended recipient, be aware that any disclosure, copying or distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify the sender immediately by replying to the address listed in the "From:" field.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



SHERATON
EST. 1937

Hon. Judge Susie Morgan,

I am writing in support of the transition to the sustainment phase for the consent decree between the City of New Orleans (NOPD) and the United States Department of Justice.   I am the General Manager of the Sheraton New Orleans Hotel.  As such I lead a team of over 450 local residents who are directly impacted by the actions or inactions of the NOPD.   In addition, we welcome in excess of 400,000 individual guests annually whose comfort and safety are our responsibility. Due to the above I have immersed myself into the criminal justice arena in New Orleans since arriving in 2012.   I have served as a trustee and former Chair of the NOPJF, I have been Chair of the Business Council Criminal Justice task force and, I was an early organizer during the formation of the Nola Coalition.   Due to these relationships, I have worked closely to understand the changes being made to increase accountability within the NOPD, to set high standards that meet the expectation of constitutional policing, to build oversight and internal investigative processes and for these changes to mature and develop over time.   Based on these observations and by staying abreast of the findings of this court and those of the office of the consent decree monitor I support the motion made by the Department of Justice to enter the sustainment phase so the City of New Orleans (NOPD) can prove its capacity to meet its defined standards and show it has in large part achieved the intention of the Consent Decree Agreement.

Thank you, Your Honor for the diligence at which you have shown this process.  It is clear you have the well being of the citizens of New Orleans and our visitors as your top priority and we are all grateful for the effort you have made to guide this to its intended outcome, a police department prepared to operate in a manner consistent with that defined in the United States Constitution.

Sincerely,

*James Cook*

James Cook
General Manager

**From:** Travis Tague ███████████████
**Sent:** Thursday, November 7, 2024 10:26 AM
**To:** LAEDdb_Clerk
**Subject:** Consent Decree NOPD

**CAUTION - EXTERNAL:**

Good Morning,

I would like to urge that the court supports the movement from the Consent Decree into a Sustainment Plan for the NOPD. Their improvements have demonstrated the necessary changes the aided in the betterment of the police department. Overall, the department has proven to be more transparent, provide better public relations, and work with our communities and a constructive and positive manner.

As a business operator in the French Quarter for over 15 years, the improvements are real and greatly appreciated.

Thank you for your support of this movement and change.

Best Regards,
Travis

## Travis Tague
General Manager
Omni Royal Orleans Hotel



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        Patrick Ciaccio <████████████████████>
**Sent:**        Thursday, November 7, 2024 11:33 AM
**To:**          LAEDdb_Clerk
**Subject:**     Consent Decree

**CAUTION - EXTERNAL:**

Astor Crowne Plaza on Canal and Bourbon is in agreement with a two year sustainment plan with close monitoring and supervision.

Thank you,

Pat Ciaccio
**General Manager**

████████████████████

Astor Crowne Plaza New Orleans French Quarter
739 Canal Street @ Bourbon Street
New Orleans LA 70130

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** hello@eyeonsurveillance.org <hello@eyeonsurveillance.org>
**Sent:** Thursday, November 7, 2024 6:32:39 PM (UTC+00:00) Monrovia, Reykjavik
**To:** info@eyeonsurveillance.org <info@eyeonsurveillance.org>

**Subject:** Domestic violence misclassification at NOPD

**CAUTION - EXTERNAL:**

Good afternoon,

Please find the attached press release announcing our report revealing significant issues in how NOPD classifies complaints related to domestic violence. The recommendations were made in partnership with ACLU-LA and the Office of the Independent Police Monitor. You can find the full report here.

Thanks,
Eye on Surveillance

ps - please reply to info@eyeonsurveillance.org

---

[NEW ORLEANS, November 7, 2024] — Eye on Surveillance (EOS NOLA), in partnership with the American Civil Liberties Union of Louisiana (ACLU-LA) and the New Orleans Office of the Independent Police Monitor (OIPM), today released a report revealing significant issues in how the New Orleans Police Department (NOPD) classifies complaints related to domestic incident investigations.

The research found that 40% of complaints related to domestic incident investigations for 2016-2023 were misclassified or underreported, raising serious concerns about transparency and accountability in the department's handling of these sensitive cases.

This review comes at a critical time, as Louisiana continues to face challenges in addressing domestic violence. According to Tulane University's Newcomb Institute, the state ranks lowest in the justice dimension of the U.S. Women Peace and Security Index, scoring below average on all 12 indicators.

"The Office of the Independent Police Monitor joins in the concerns expressed in the informative report released by Eyes on Surveillance (EOS)," states Stella Cziment, Independent Police Monitor. "The key finding that 40% of the complaints related to domestic incident allegations were misclassified or underreported is alarming. The OIPM commits to working with these partners and the community in the coming year to address these discrepancies."

Cziment adds, "In accordance with the proposed sustainment strategy, the OIPM will assume a larger role in audit compliance moving forward and will provide additional checks on complaint classifications completed by the Public Integrity Bureau. Complaints, like these, that are misclassified are effectively undercounted and will be left unaddressed in any remedial strategies for the department. It is vital that these complaints are identified for what they are, properly investigated under the appropriate allegation, and these survivors are not revictimized when they go to the police department for accountability and help. For these reasons, the OIPM partners with EOS and the American Civil Liberties Union-Louisiana (ACLU-LA) to put forth policy recommendations calling for the codification of reporting requirements, developing a standardization classification system, and establishing a data reconciliation process."

**Key Findings and Recommendations:**

- From 2016-2023, approximately 40% of complaints related to domestic incident investigations were misclassified or underreported.

1

- Three key policy recommendations have been proposed:
  1. Codifying existing reporting requirements.
  2. Developing a standardized classification system.
  3. Establishing a data reconciliation process.

This research follows a pattern of concerns about NOPD's handling of sensitive cases. In 2011, the U.S. Department of Justice identified systematic misclassification of sexual assaults and deficient investigations, leading to the 2012 Consent Decree.

The full report, including detailed methodology and complete policy recommendations, is available here and the condensed report is available here.

**About EOS NOLA**

Eye on Surveillance is a grassroots coalition of individuals and organizations united to divest our city from surveillance and invest in communities. Since 2019, EOS has organized successful campaigns against the city's use of racially-biased surveillance tools and serves as a local resource regarding the harms of law enforcement surveillance use.

For media inquiries, please contact us at info@eyeonsurveillance.org.

Follow EOS on Instagram, Twitter, and Facebook.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**EYE ON SURVEILLANCE**

**FOR IMMEDIATE RELEASE: EOS ANNOUNCES RELEASE OF REPORT ON NOPD'S MISCLASSIFICATION OF COMPLAINTS RELATED TO DOMESTIC INCIDENT INVESTIGATIONS, IN PARTNERSHIP WITH ACLU-LOUISIANA AND THE OFFICE OF THE INDEPENDENT POLICE MONITOR.**

[NEW ORLEANS, November 7, 2024] — Eye on Surveillance (EOS NOLA), in partnership with the American Civil Liberties Union of Louisiana (ACLU-LA) and the New Orleans Office of the Independent Police Monitor (OIPM), today released a report revealing significant issues in how the New Orleans Police Department (NOPD) classifies complaints related to domestic incident investigations.

The research found that 40% of complaints related to domestic incident investigations for 2016-2023 were misclassified or underreported, raising serious concerns about transparency and accountability in the department's handling of these sensitive cases.

This review comes at a critical time, as Louisiana continues to face challenges in addressing domestic violence. According to Tulane University's Newcomb Institute, the state ranks lowest in the justice dimension of the U.S. Women Peace and Security Index, scoring below average on all 12 indicators.

"The Office of the Independent Police Monitor joins in the concerns expressed in the informative report released by Eyes on Surveillance (EOS)," states Stella Cziment, Independent Police Monitor. "The key finding that 40% of the complaints related to domestic incident allegations were misclassified or underreported is alarming. The OIPM commits to working with these partners and the community in the coming year to address these discrepancies."

Cziment adds, "In accordance with the proposed sustainment strategy, the OIPM will assume a larger role in audit compliance moving forward and will provide additional checks on complaint classifications completed by the Public Integrity Bureau. Complaints, like these, that are misclassified are effectively undercounted and will be left unaddressed in any remedial strategies for the department. It is vital that these complaints are identified for what they are, properly investigated under the appropriate allegation, and these survivors are not revictimized when they go to the police department for accountability and help. For these reasons, the OIPM partners with EOS and the American Civil Liberties Union-Louisiana (ACLU-LA) to put forth policy recommendations calling for the codification of reporting requirements, developing a standardization classification system, and establishing a data reconciliation process."

**Key Findings and Recommendations:**

- From 2016-2023, approximately 40% of complaints related to domestic incident investigations were misclassified or underreported.

- Three key policy recommendations have been proposed:
    1. Codifying existing reporting requirements.
    2. Developing a standardized classification system.
    3. Establishing a data reconciliation process.

This research follows a pattern of concerns about NOPD's handling of sensitive cases. In 2011, the U.S. Department of Justice identified systematic misclassification of sexual assaults and deficient investigations, leading to the 2012 Consent Decree.

The full report, including detailed methodology and complete policy recommendations, is available here and the condensed report is available here.

**About EOS NOLA**

Eye on Surveillance is a grassroots coalition of individuals and organizations united to divest our city from surveillance and invest in communities. Since 2019, EOS has organized successful campaigns against the city's use of racially-biased surveillance tools and serves as a local resource regarding the harms of law enforcement surveillance use.

For media inquiries, please contact us at info@eyeonsurveillance.org.

Follow EOS on Instagram, Twitter, and Facebook.

**From:** C JG <██████████████████>
**Sent:** Thursday, November 7, 2024 11:36:27 PM (UTC+00:00) Monrovia, Reykjavik
**To:** Susie Morgan <████████████████████>; eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Continued and pervasive lack of transparency at the NOPD

**CAUTION - EXTERNAL:**

Honorable Susie Morgan,

The city and the NOPD continue to inhibit any effort at transparency. Today in Civil District court (Docket No. 2023-12772) the city moved forward with denying public records requests. To provide a specific example, I made a records request for a number of PIB reports on 21 July of 2023 (Request 23-12515). Nearly 16 months later and the city has failed to respond to the request and still has not produced the requested files, forcing me into court today.

Not surprisingly the city did not provide the requested documents today and asked for a continuance, further delaying the matter. I understand the issue at hand, my requests over the last several years have been pointed and have revealed a pattern of corruption, fraud and criminal behavior within the NOPD and its crime lab. The release of the requested documents would provide further embarrassment to the NOPD and the city. It is for just this reason that public records laws exist, so that citizens might observe the operation of our government in some hope of reform.

As the city and the NOPD continue attempts to escape the Consent Judgement, their efforts to avoid any sort of transparency applies not only to myself, but to members of the press. In an examination of public records requested by members of the press it is not uncommon to see delays exceeding 100 days. To be clear, this is a violation of Louisiana Law, NOPD policy and essentially requires a citizen to engage in what can be a very expensive and lengthy route to obtain these records through the courts.

Below I have summarized some of the results my requests have produced to date which does not include dozens of payroll fraud investigations I have initiated using the data that has been provided. I would like to say that the NOPD has undertaken some reform in all of the instances noted below, but unfortunately that is simply not the case. I remain opposed to lifting the Consent Judgement until the NOPD engages in real reform and makes some sincere effort to address fraud and criminal behavior within its ranks.

Sincerely,

Skip Gallagher, Ph.D.

███████████████████

1

A) Crime Lab Employees who had falsified their credentials
(2 employees dismissed and another transferred)

B) Nearly 100,000 untested DNA samples

C) A three-year delay in processing DNA submitted to the State Crime Lab
(City Council approved $3 million to accelerate testing)

D) The NOPD leadership of the Crime Lab was unqualified to lead the lab and was actively interfering with the function of the lab.
(A new civilian was hired to lead the crime lab)

E) Over 33,000 untested Drug samples

F) Extensive Payroll Fraud endemic within NOPD
(Multiple changes in NOPD policy in some small attempt to control fraud, multiple indictments/arrests)

G) Ranking officer of PIB engaged in extensive history of Payroll Fraud
(Capt. Richardson was demoted, removed from PIB and suspended for 120 days)

H) Criminal Behavior of NOPD officers
(Officers accused or convicted of kidnapping, rape, domestic abuse, DWI, narcotics violations, child abuse)

I) License Plate Data revealed that officers were neither at their work or their assigned detail location while clocked in.

J) Abuse of Secondary Employment has repeatedly shown officers with fictional schedules claiming Details

K) The NOPD Chief was not reviewing PIB reports. This lack of oversight permitted an ethically compromised PIB to operate without oversight.
(Removal of Arlinda Westbrook and review by Chief)

L) Exposure of "Sleep" Details in New Orleans

M) Officers removing license plates from their vehicles to avoid city cameras

N) Officers claiming Details while out Sick

O) A department plagued with officers Double Dipping
(Manual reports generated to identify these officers)

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Robert Kellner ███████████████ |
| **Sent:** | Thursday, November 7, 2024 12:56 PM |
| **To:** | LAEDdb_Clerk |
| **Cc:** | community.nola@usdoj.gov |
| **Subject:** | Maintain the Consent Decree - NO to Sustainment |

CAUTION - EXTERNAL:

Good afternoon,

I am a resident of 70117, New Orleans, LA, and I am emailing you to express my concern with the proposed "sustainment" of the federal consent decree overseeing the NOPD. The sustainment would minimize federal and local oversight over municipal law enforcement agencies, thus minimizing consequences should police officers exert brutality, racially profile, or otherwise violate the human rights of our community members, as police officers have consistently done in recent years.

Sustainment would be appropriate if and only if the NOPD has actually complied with constitutional policing practices, but it has not. In fact, the NOPD's use of force has actually increased in recent years, and Black residents are 11 times more likely to be subjected to police force than white residents, even though Black residents only make up 56% of the population of the city. Just last year, a federal judge found the the NOPD noncompliant with the consent decree for failing to adequately investigate payroll fraud committed by one of its own officers. Personally, this summer, I witnessed police officers tackle and brutally arrest bystanders at a nonviolent protest. Is this what constitutional policing looks like to you?

Moreover, the federal consent decree helps prevent local law enforcement agencies from violating the human rights of local residents suspected of being undocumented immigrants, as it bars officers from investigating the immigration status of people in the city or detaining immigrants. As such, the NOPD has not been forced to collaborate with Immigrations and Customs Enforcement, which is an agency with an extremely long history of human rights violations (eg. extended detention in abusive conditions with no due process of law or transparency for family members or attorneys) as well as a pattern of slippery legal practices used to evade oversight and prosecution. Removing the consent decree could mean NOPD officers illegally detain our friends, neighbors, and community members on mere suspicion that they may be undocumented, as the NOPD did prior to the adoption of the consent decree, paving the way for even more substantial racial profiling and biased policing practices.

The consent decree is an absolutely crucial tool to keep a notoriously brutal police department in check and in compliance with federal mandates. It is a necessary policy that helps keep New Orleanians safe. It is also, frankly, not enough; a Civilian Police Accountability Council is necessary to ensure that the NOPD complies with the consent decree. To put the consent decree into a period of "sustainment" would be a step backwards for the human rights of New Orleans residents.

Thank you for taking the time to read my comment.

Sincerely,

Robert Kellner

**From:** David Piscola <█████████████>
**Sent:** Thursday, November 7, 2024 3:38 PM
**To:** LAEDdb_Clerk
**Subject:** Consent Decree - Submission of Public Comment

**CAUTION - EXTERNAL:**

Clerk of Court,
U.S. District Court, EDLA
500 Poydras Street – Room C-151
New Orleans, LA 70130

As the General Manager of a hotel in New Orleans, I am writing to express my strong support for the New Orleans Police Department (NOPD) entering a "Sustainment Period" for the Consent Decree, along with the proposed Sustainment Plan. This two-year period is crucial for ensuring that the City and NOPD continue to uphold the significant reforms that have been implemented to date and diligently address any necessary corrective actions. The continued monitoring and court oversight during this period are essential to maintain the progress that has been made.

The hospitality industry is one of the largest economic drivers and job providers in New Orleans. Effective law enforcement is critical for the safety and well-being of our employees, guests, and the broader community. Over the past decade, we have observed substantial improvements in the NOPD's operations, including increased transparency, accountability, and overall public safety. These improvements have made a tangible difference in the daily lives of residents and visitors alike.

We have seen outstanding leadership within the NOPD, along with significant advancements in recruitment, hiring, and retention. The department has achieved 100% compliance in areas such as interrogation and photo line-ups, and there has been a notable increase in the presence of crisis intervention teams. Additionally, the compliance rate for stop and search procedures has reached 95%, and there has been a marked decline in the use of force incidents. Performance evaluations and supervision have also seen significant improvements, contributing to the overall effectiveness of the department.

The establishment of the Public Standards and Accountability Bureau has added much-needed structure and consistency to policy decisions and internal accountability within the NOPD. These achievements underscore the importance of continuing the reforms and maintaining the progress that has been made.

For these reasons and more, as a business leader and resident of the City of New Orleans, I strongly supports the Consent Decree Sustainment Period and the proposed Sustainment Plan. I believe that these measures are vital for ensuring the continued success and improvement of law enforcement in our city.

Best regards,

# David

David Piscola
General Manager
Hilton New Orleans Riverside
2 Poydras Street

1

**From:** hello@eyeonsurveillance.org <hello@eyeonsurveillance.org>
**Sent:** Thursday, November 7, 2024 9:55:49 PM (UTC+00:00) Monrovia, Reykjavik
**To:** Elizabeth.White█████████████████████████████████████>; David.Adams███████████████████████████>;
Arusha.Gordon█████████████████████>; jonas.geissler████████████████████████>;
Jonas.Geissler███████████████████████>; Maria.Acker██████████████████████>;
Maureen.Johnston██████████████████████>; ojpmedia█████████████████████████████████>;
Shaketta.Cunningham█████████████████████████>; timothy.mygatt███████████████
<███████████████████>; Regan.Rush███████████████████>
**Cc:** info@eyeonsurveillance.org <info@eyeonsurveillance.org>; david████████████████████████>;
jericare16███████████████>; bethbutler██████████████████████████████████████>; Bob
Murrell <bob.murrell@gmail.com>; Pearl Ricks <████████████████>; rt4chair███████████████
<███████████████>; Caroline Sinders <█████████████████>
**Subject:** United against consent decree conflicts

## CAUTION - EXTERNAL:

Department of Justice,

We are writing along with other local and national organizations to express deep concerns with <u>conflicts of interest</u> within the monitoring team in New Orleans that also impact Minneapolis. This is in addition to our <u>petition</u> where members of the public have been writing in support of these concerns.

Please send responses to info@eyeonsurveillance.org.

Sincerely,

Eye on Surveillance, Louisiana - eyeonsurveillance.org

A Community Voice, Louisiana - acommunityvoice.org
Convocation Research + Design, National - convocation.design
Democratic Socialists of America, Louisiana - dsaneworleans.org
Libertas, Utah - libertas.org
Reproductive Justice Action Collective, Louisiana - rejacnola.org
Restore the Fourth, National - restorethe4th.com


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

To the Department of Justice (DOJ):

We are a coalition of civil rights and community-based organizations working in New Orleans to halt the local government's expansion of surveillance tools such as facial recognition and to increase oversight of current government surveillance methods.

Since the summer of 2024, we have been urging the parties of the Consent Decree to halt NODICE, a joint NOPD-DA program that uses RTM, a tool described as a predictive analytic tool[1] by the company that designed the software. This tool violates Chapter 147 of the New Orleans Municipal Code Section 147-2 [2], which explicitly defines predictive policing technology as the usage of predictive analytics software in law enforcement to predict information or trends about criminality, including but not limited to locations.

During the course of urging you all to halt this program, we discovered that Deputy Monitor David L. Douglass currently employs former NOPD superintendent Michael Harrison, who is an active advisor to the NOPD-DA program. Since this discovery, we have been alerting you to the ever-growing list of conflicts of interest involving Deputy Douglass.

These conflicts of interest came to a head on October 29, 2024, when Ashley Burns, a member of the Consent Decree Monitor's team publicly supported Eye on Surveillance's allegations [3] that Deputy Douglass, in his role as a Consent Decree Monitor, has conflicts of interest.

Specifically, when referring to the conflicts of interest, Dr. Burns stated: "I did cofound ELEFA with David and I am not affiliated with it at all anymore and I agree with the community. I think it's a great great great conflict of interest, among a lot of other ethical and integrity issues". [4]

At the core of our allegations is Paragraph 464 [5] of the Consent Decree, which explicitly prohibits monitors from accepting employment or providing consulting services that would present a conflict of interest. The paragraph states:

**"Unless such conflict is waived by the Parties, the Monitor shall not accept employment or provide consulting services that would present a conflict of interest with the Monitor's responsibilities under this Agreement."**

EOS believes that Deputy Monitor Douglass has engaged in several activities that present a clear conflict of interest:
  1. Douglass is the founder of Effective Law Enforcement for All (ELEFA):
     - ELEFA recently secured [6] an annual $1.5 million contract to oversee Minneapolis' Consent Decree, largely based on the claim that under Douglass' monitoring, the New Orleans Consent Decree has been a success.

- ELEFA's success in acquiring new contracts, including those overseeing Consent Decrees in other jurisdictions, is directly tied to the perceived success of the New Orleans Consent Decree.
- This creates a situation where Douglass' ability to be an impartial monitor may be compromised, as Douglass can not be critical of most aspects of NOPD without putting blame on himself or one of his current colleagues, and former NOPD leaders.

2. <u>Hiring Practices</u> [7]:
   - <u>On October 29th</u> [8], at a community meeting hosted by the Consent Decree Monitor's Office, Douglass admitted that at least one NOPD officer actively worked for NOPD while also being on ELEFA's payroll. Douglass admitted to hiring Kevin Burns, who is an active NOPD officer and has a history of misconduct.
   - In addition to hiring at least one active NOPD member, Douglass has hired former NOPD, DOJ, and monitoring team leaders. One such employee, Arlinda Westbrook (formerly of NOPD), recently attended a community forum led by Douglass <u>where she lobbied</u> [9] on behalf of Douglass without disclosing her financial ties to ELEFA.

A similar potential conflict has also come to our attention involving lead monitor Jonathan Aronie, who co-founded a program called <u>ABLE</u> [10], which has hired several former NOPD officers as leadership and on the board of directors.

We believe that these conflicts of interest are showing up in how the Consent Decree team, led by Douglass and Arnoie, monitor NOPD. For example, <u>recent reporting from Verite New</u>s [11] reveals troubling evidence that the NOPD's claims of bias-free policing are based on flawed methodology that obscures significant racial disparities. Since 2016, Black people have comprised more than 80% of the use of force targets by the NOPD, despite making up only 55-60% of the city's population. When examining incidents involving police firearms specifically, the disparity grows - nearly 88% of NOPD use of force incidents involving firearms were against Black civilians, compared to about 8% for white civilians. The department's methodology for analyzing this data essentially treats any use of force as justified if it results in an arrest, masking potential racial bias in both the initial decision to use force and the subsequent arrest. This raises serious questions about how the Consent Decree monitor oversees NOPD and their claims of success in achieving bias-free policing under the Consent Decree.

**Potential conflicts must be waived.** According to Paragraph 464, the City and DOJ must explicitly waive potential conflicts such as this, even if it is believed that the conflict is immaterial.

Demands:
1. The DOJ must investigate and remove Douglass, and any other monitors with a conflict, from the Consent Decree Monitor team and replace them with new monitors.
2. The DOJ must conduct a thorough investigation into all DOJ, NOPD, and Minneapolis employees who are now affiliated with ELEFA and ABLE for potential conflicts of interest.
3. All parties (the City, NOPD, and DOJ) of the Consent Decree must be audited for conflicts of interest.

Sincerely,

Eye on Surveillance, Louisiana - eyeonsurveillance.org

A Community Voice, Louisiana - acommunityvoice.org
Convocation Research + Design, National - convocation.design
Democratic Socialists of America, Louisiana - dsaneworleans.org
Libertas, Utah - libertas.org
Reproductive Justice Action Collective, Louisiana - rejacnola.org
Restore the Fourth, National - restorethe4th.com


Citations:
[1] https://www.riskterrainmodeling.com/prediction.html

[2] https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH147SUTEDAPR_S147-2PRSUTE

[3] https://www.nola.com/news/crime_police/zero-integrity-federal-monitor-overseeing-nopdconsent-decree-slammed-by-colleague-at-public-hearing/article_ba9b8b92-9636-11ef-af69-9f80a8888aed.html

[4] https://www.youtube.com/watch?v=BfiVC5kCT6Q&t=2s

[5] https://nola.gov/nola/media/NOPD/Consent%20Decree/778-Second-Amended-and-Restated-Consent-Decree.pdf

[6] https://www.startribune.com/effective-law-enforcement-for-all-selected-as-independent-evaluator-of-minneapolis-policing-reforms/600340529

[7] https://ele4a.org/about-us/

[8]https://www.youtube.com/watch?v=UF_u6Hyrb6U&ab_channel=EyeOnSurveillance

[9]https://www.youtube.com/watch?v=rDjStKFEh-4&ab_channel=EyeOnSurveillance

[10] https://www.law.georgetown.edu/cics/able/

[11]https://veritenews.org/2024/10/31/nopd-consent-decree-force-racial-disparity/

**From:** C JG ███████████████████
**Sent:** Sunday, November 3, 2024 12:30:16 AM (UTC+00:00) Monrovia, Reykjavik
**To:** Susie Morgan <███████████████████>; eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Criminal Behavior within the NOPD

**CAUTION - EXTERNAL:**

Honorable Susie Morgan,

I am opposed to ending the NOPD Consent Decree. There are still serious issues facing the NOPD. As I mentioned in our 13 August meeting, the NOPD seems to have serious issues dealing with officers who have a criminal history or are facing criminal charges.

In many cases officers who have already been found guilty of criminal behavior remain employed with the NOPD. In other cases, we have NOPD officers facing serious criminal charges and overwhelming evidence who remain employed with the NOPD. As I noted in our meeting on 13 August, there is a real lack of transparency, particularly if the officer has significant past or pending criminal issues.

For officers already convicted they should clearly be dismissed from the force. There are any number of jobs in which a criminal offence would result in immediate dismissal, yet the NOPD continues to employ these officers. Officers with criminal convictions are compromised to such an extent that they should be prohibited from testifying and should be included on the Brady list. We expect to hold officers to a higher standard than the average citizen as these are the people we expect to enforce the law, not break the law. In instances where the officer is facing a criminal case it should be routine that the officer is suspended from duty. I certainly understand that in some instances where the charges are weak or appear to be motivated as retaliation against the officer, desk duty may be appropriate. However, when serious and readily verifiable charges such as rape, domestic abuse, DWI and child abuse are noted the officer should be immediately suspended and dismissal should be considered. Instead, we have officers facing serious criminal charges who continue to report as active duty NOPD officers.

The NOPD has played an active role in hiding these officers and their own internal records regarding these officers. In most of these criminal cases my requests to access these Public Integrity files regarding criminal investigations of NOPD officers continue to be ignored and a seemingly endless set of due dates has placed the request further and further into the future. I now have requests for PIB files which are nearly 16 months old for which I am still awaiting records. This problem has become so severe that I have been forced to push this matter into court next week in order to obtain these public records. This certainly does not represent some "openness" within the NOPD, but instead reflects what is a clear attempt to hide inappropriate behavior by NOPD officers.

In our August meeting you asked me if I was able to obtain my public records requests and my response was in general "No". Record requests were often taking months and even more than a year. Since that meeting this

problem has become even more intractable. Even simple records which are routinely maintained and require no redactions are withheld for months. This is beyond aggravating when I personally have filed the complaint against the officer and months or years after the completion of an investigation, I am still unable to obtain the requested record. State law dictates that the record should be provided within 5 working days, while NOPD's own policy states that the record should be provided within 3 days. A person should not have to wait more than 1 year and be forced to file suit in order to obtain a public record from the NOPD.

Sincerely,

Skip Gallagher, Ph.D.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Divine Chandler ███████████████
**Sent:**          Friday, November 1, 2024 7:16 AM
**To:**            LAEDdb_Clerk
**Subject:**       Comment, saying NO to NOPD Sustainment

**CAUTION - EXTERNAL:**

My name is Candice Divine and I am a Home Owner at ████████████████████████

I'm emailing to say NO to NOPD Sustainment period. I object fully and wholeheartedly to removing the consent decree. I feel safer and more secure with the consent decree being in place. NOPD needs that oversight.

Candice Divine
███████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         Emma Maxwell <█████████████████>
**Sent:**         Saturday, November 2, 2024 2:59 PM
**To:**           LAEDdb_Clerk
**Subject:**      Opposition to sustainment

CAUTION - EXTERNAL:


To whom it may concern,

I wanted to make the suggestion that New Orleans Police are not yet ready to exit the consent decree and enter sustainment. Having found statistics on racial bias in policing and use of force as published by the professional standards and accountability bureau, I'm taken aback by the confidence that local IPMs have expressed regarding exiting oversight from the DOJ. I am a New Orleans resident, and I love this city. I don't want to see mistakes made with regards to policing in my community. Thanks for your time and consideration,

-Emma Maxwell
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**M**ARC **H. M**ORIAL

Rec. 11-5-24

<u>**VIA FEDERAL EXPRESS**</u>

November 4, 2024

The Honorable Susie Morgan
Eastern District of Louisiana
United States District Court
500 Poydras Street, Room C322
New Orleans, LA 70130

      RE:  New Orleans Police Department Consent Decree

Dear Judge Morgan,

I am pleased to respond to your invitation for public comment regarding the New Orleans Police Department Consent Decree and the discussions about its termination.

I write as a son of New Orleans, the City of my birth and heritage, and a City I deeply care for and love.

I also write in my capacity as a national civil rights leader, and as Mayor of New Orleans from 1994 to 2002, during which my administration led the most successful police reform effort in not only New Orleans' history but in the modern history of the United States. Working with the late Richard Pennington, many business and community partners, All Congregations Together (ACT), the New Orleans Police Foundation, and the New Orleans City Council, we orchestrated a worst-to-first reform effort through which crime was reduced, manpower was expanded, compensation was made competitive, hiring standards were increased, the residency rule was enforced, and closure rates improved.

At the same time, we erased corruption and reduced civil rights complaints to a bare minimum. It was an extraordinary reform effort for which we received many national awards.

When I left office, the New Orleans Police Department, for the first time in its history, had become an accredited police agency. I take great pride in this success, as it contributed to New Orleans' Renaissance in the 1990s and early 2000s, during which we hosted Super Bowls and brought the National Basketball Association, reversed the population decline, and placed New Orleans on a positive path.

Unfortunately, those reforms were generally undone by my successor and his incompetence and ineptitude. The decline was further compounded by Hurricane Katrina, leading to the unacceptable and unconstitutional levels of retrogression and ineffectiveness that resulted in the intervention by the Department of Justice and this court.

The Honorable Susie Morgan
November 4, 2024
Page 2 of 3

It is with great concern, worry, and fear that I express my belief that if the New Orleans Police Department is allowed to fully exit its Consent Decree without appropriate conditions, the deterioration will happen again, erasing all the hard work that has been done with admirable support by Mayors Landrieu and Cantrell. This should be a stark warning to all.

As the City approaches municipal elections, there is no guarantee that the next mayor and City Council will be committed to maintaining the reforms that have begun under the Consent Decree.

Therefore, I recommend that the New Orleans Police Department not be allowed to fully exit the Consent Decree. Instead, the Monitoring elements be substantially reduced but not eliminated. The New Orleans Police Department should be encouraged to continue making progress, with the court's watchful eye remaining a factor should any retrogression occur.

Given my track record and my administration's success with reform in the 1990s and 2000s, I believe I have a unique voice to articulate the following recommendations:

1.  **The New Orleans Police Department should create a 10-year strategic plan** with goals, metrics, and timetables to ensure continued progress in areas that have begun under the Consent Decree. These metrics should include:

    a.  **Department size and compensation:** A commitment to a recruiting and fair compensation plan to ensure that the department is appropriately staffed, and that compensation remains competitive. It has long been my view that fair and competitive compensation is essential to recruit, retain, and ensure adequate morale within the New Orleans Police Department.

    b. **911 response times:** A commitment to responding to calls for service within a time frame that meets national standards. It is unacceptable for people to wait long minutes before an officer arrives in response to a 911 call. Many challenges may stem from inadequate manpower, which may require strengthening recruitment and ensuring competitive compensation.

    c. **Civil rights complaints:** A commitment to continued reduction in civil rights and Public Integrity Division (PID) complaints, with fair and thorough investigations conducted on an expedited basis. In the 1990s, we simultaneously reduced crime, increased compensation, and decreased civil rights complaints.

    d. **Non-political promotion, discipline, and assignment system:** A commitment to a non-political system of promotions, where the power to promote, discipline, and assign rests with the superintendent without interference from elected officials. While the police chief should report and be accountable to the mayor, it is unacceptable for City Council members, judges, and politically connected citizens to pressure the department regarding promotions, discipline, and assignments. This was successfully eliminated under my administration because I insisted on it and led by example.

    e. **Private duty detail reforms:** A commitment to serious reforms to the private duty detail system, making any existing reforms permanent. While I believe the private duty detail system should be eliminated due to its outdated and corrupt nature, I recognize this may be too ambitious; however, a system of tight controls is necessary.

The Honorable Susie Morgan
November 4, 2024
Page 3 of 3

To the extent feasible, policy reforms contained in the Consent Decree should be formalized in a Mayoral Executive Order approved by the court as a precondition for the City's exit from the Decree. I believe these policies should not be placed in the City's Municipal Code because maintaining control, oversight, and accountability by the mayor is paramount. While the City Council has ultimate control over the department's budget, it is unacceptable to inject City Council oversight beyond what is currently protected by the City Charter. Simply including the policy reforms in the superintendent's directives is insufficient; a Mayoral Executive Order would give them a sense of permanence.

Finally, I believe it is necessary to create a judicial monitoring system. The current system, which relies heavily on expensive outside consultants, is not necessary going forward.

The City should be required to report every six months to the court on its progress in implementing the strategic plan and metrics outlined above, allowing the court to maintain oversight. The court should weigh in in consultation with the Department of Justice over the appropriate time frame to continue this less intensive oversight.

This is a critical moment for the City of New Orleans and its police department.

I approach this issue as someone who successfully reformed a police department and who is frequently consulted by mayors and others for insights on public safety, policing, and police reform. As a seasoned veteran of the City's politics, I am all too aware of the currency of the anti-reform forces and their ability to gain momentum through misinformation and political self-interest. This cannot be allowed to rear its ugly head again.

I am available for further discussions with the court.

My thoughts reflect my perspective and are not exhaustive but suggest an approach that harmonizes the need for continued oversight with the goal of maintaining reform.

Thank you for your time.

With warmest regards, I am

Very truly yours,

Marc H. Morial
President and Chief Executive Officer
National Urban League

Mayor Emeritus of New Orleans / 1994 – 2002

**From:** Nicholas Harrison < ████████████████ >
**Sent:** Tuesday, November 5, 2024 5:20 PM
**To:** LAEDdb_Clerk <clerk@laed.uscourts.gov>
**Subject:** Consent Decree

**CAUTION - EXTERNAL:**

I don't believe that the New Orleans Police Department (NOPD) should be released from the Consent Decree investigation.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        JESSICA POOLE <█████████████████>
**Sent:**        Thursday, November 7, 2024 4:18 PM
**To:**          LAEDdb_Clerk
**Subject:**     NOPD CONSENT DECREE

**CAUTION - EXTERNAL:**

Dear Honorable Susie Morgan,

My name is Jessica Poole, Louisiana Native and Serial Entrepreneur , Community Advocate , Philanthropist , Activist and more. I hope all is well with you and this email reaches you and you are in good spirits. The purpose of this email is to touch on the article I came across discussing the consent decree expiration. While the crime has been reportedly down , I don't believe it is a direct reflection of the work that is done by our law enforcement agency but by the citizens of Louisiana not engaging in the crimes that have aided in the sky rocket of violence in the city. As a victim of a current on going crime where NOPD , JPSO , & LSTP have failed to protect me , failed to report , failed to properly investigate , filed false reports and charges , refused to file reports , engage in criminal activity against me , use excessive force , illegally investigate me , amongst other "Color of Law" violations, Human and Civil Rights violations, etc.  I am not confident NOPD is ready to be let free from the oversight of Federal Officials. Not only are their response times to crimes ridiculously slow , there is an immense amount of corruption taking place under the supervision of the current Mayor Latoya Cantrell who is also participating in the crimes that are being committed against me. Crimes such as Human /Civil Rights violations , Cyber and Economic Espionage , Sex Crimes , Invasion of Privacy , Obstruction of Justice , amongst other crimes being committed that she is also upholding and aiding and abetting. While this is bigger than just me , I speak on my experience because I am directly affected and have witnessed the injustices on the behalf of others in our community as well. I have witnessed and experienced the abuse of authority at the hands of law enforcement and public officials.

I have witnessed the injustices at the hands of those meant to protect and serve. The illegal access to my life , finances , the lies and manipulation to attempt to discredit me with the attempt to move their tactics forward to obstruct justice and the attempt to remove the consent decree to further obstruct justice. Organizations , Community advocates , Community Leaders have worked together to aide in putting together solutions to the troubles we face as a whole within our communities. The crimes committed by those put in position of power and authority and who have taken an oath to protect and serve have allowed the oath of code blue to exceed their purpose for joining the department.

I have personally been affected by law enforcement as a victim/survivor of Rape and Domestic Violence , I have found myself in a battle with the very individuals put in position to protect me. I have witnessed law enforcement file false charges against me because I have fought for my rights as a woman. I have fought for my voice to be heard and taking seriously while every single man that touched my case has attempted to help the perpetrator and the officers involved. I am asking for not only NOPD to be extended under the Consent Decree , but to add JPSO , GRETNA  POLICE DEPTARTMENT & LSTP to the Consent Decree as well.

Judge Morgan, our communities have been troubled by the abuse of authority , the joined forces and tactics to obstruct justice , and more. Starting with the strengthening of the Qualified Immunity Law to deter agencies , attorneys, and civilians from being able to successfully hold officers , officials , and those purposely violating the civil , human , and constitutional rights accountable for their actions. Ending the consent decree I believe will only decrease the progress and increase the unprofessional , bias policing , unanswered calls ,prolonged answers to calls,  improper and illegal investigations , abuse of authority , and more. Several NOPD officer are involved and while Cantrell has aligned herself with Governor Landry to keep me from being successful with reporting and to possibly provide her with Pardons and ways to get away with her crimes. They have made things rather difficult for me to have them investigated and put individuals in place to interfere with the investigation.

Louisiana as a whole deserves better policing and leaders who are passionate about moving this city and country forward! Help me and work with me to rebuild a broken system that can be the Blueprint for other states to model! A city that supports , encourages , and works towards positive change within our communities!

Thank You for taking the time to read my concerns and hopefully we are able to meet soon to further discuss how we can work together to make the positive change within the justice system and our communities as a whole!

Respectfully .
Jessica Poole | CEO America's Caring Hands
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**      JESSICA POOLE <███████████████████████

**Sent:**      Thursday, November 7, 2024 4:18 PM

**To:**        LAEDdb_Clerk

**Subject:**   NOPD CONSENT DECREE

**CAUTION - EXTERNAL:**

Dear Honorable Susie Morgan,

My name is Jessica Poole, Louisiana Native and Serial Entrepreneur , Community Advocate , Philanthropist , Activist and more. I hope all is well with you and this email reaches you and you are in good spirits. The purpose of this email is to touch on the article I came across discussing the consent decree expiration. While the crime has been reportedly down , I don't believe it is a direct reflection of the work that is done by our law enforcement agency but by the citizens of Louisiana not engaging in the crimes that have aided in the sky rocket of violence in the city. As a victim of a current on going crime where NOPD , JPSO , & LSTP have failed to protect me , failed to report , failed to properly investigate , filed false reports and charges , refused to file reports , engage in criminal activity against me , use excessive force , illegally investigate me , amongst other "Color of Law" violations, Human and Civil Rights violations, etc.  I am not confident NOPD is ready to be let free from the oversight of Federal Officials. Not only are their response times to crimes ridiculously slow , there is an immense amount of corruption taking place under the supervision of the current Mayor Latoya Cantrell who is also participating in the crimes that are being committed against me. Crimes such as Human /Civil Rights violations , Cyber and Economic Espionage , Sex Crimes , Invasion of Privacy , Obstruction of Justice , amongst other crimes being committed that she is also upholding and aiding and abetting. While this is bigger than just me , I speak on my experience because I am directly affected and have witnessed the injustices on the behalf of others in our community as well. I have witnessed and experienced the abuse of authority at the hands of law enforcement and public officials.

I have witnessed the injustices at the hands of those meant to protect and serve. The illegal access to my life , finances , the lies and manipulation to attempt to discredit me with the attempt to move their tactics forward to obstruct justice and the attempt to remove the consent decree to further obstruct justice. Organizations , Community advocates , Community Leaders have worked together to aide in putting together solutions to the troubles we face as a whole within our communities. The crimes committed by those put in position of power and authority and who have taken an oath to protect and serve have allowed the oath of code blue to exceed their purpose for joining the department.

I have personally been affected by law enforcement as a victim/survivor of Rape and Domestic Violence , I have found myself in a battle with the very individuals put in position to protect me. I have witnessed law enforcement file false charges against me because I have fought for my rights as a woman. I have fought for my voice to be heard and taking seriously while every single man that touched my case has attempted to help the perpetrator and the officers involved. I am asking for not only NOPD to be extended under the Consent Decree , but to add JPSO , GRETNA  POLICE DEPTARTMENT & LSTP to the Consent Decree as well.

Judge Morgan, our communities have been troubled by the abuse of authority , the joined forces and tactics to obstruct justice , and more. Starting with the strengthening of the Qualified Immunity Law to deter agencies , attorneys, and civilians from being able to successfully hold officers , officials , and those purposely violating the civil , human , and constitutional rights accountable for their actions. Ending the consent decree I believe will only decrease the progress and increase the unprofessional , bias policing , unanswered calls ,prolonged answers to calls,  improper and illegal investigations , abuse of authority , and more. Several NOPD officer are involved and while Cantrell has aligned herself with Governor Landry to keep me from being successful with reporting and to possibly provide her with Pardons and ways to get away with her crimes. They have made things rather difficult for me to have them investigated and put individuals in place to interfere with the investigation.

Louisiana as a whole deserves better policing and leaders who are passionate about moving this city and country forward! Help me and work with me to rebuild a broken system that can be the Blueprint for other states to model! A city that supports , encourages , and works towards positive change within our communities!

Thank You for taking the time to read my concerns and hopefully we are able to meet soon to further discuss how we can work together to make the positive change within the justice system and our communities as a whole!

Respectfully .
Jessica Poole | CEO America's Caring Hands
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         N.O. COP <span style="background:black;color:black">████████</span>
**Sent:**          Thursday, November 7, 2024 5:43 PM
**To:**             LAEDdb_Clerk
**Subject:**     PUBLIC COMMENT: Renee Helire, <span style="background:black;color:black">████████</span>

**CAUTION - EXTERNAL:**


PUBLIC COMMENT:

Renee Helire <span style="background:black;color:black">████████</span>
"I didn't realize that the statistics were worse than when the consent decree started after Katrina. I'm alarmed. I definitely think the consent decree should continue until statistics improve as far as police violence goes."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 12th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        N.O. COP
**Sent:**         Thursday, November 7, 2024 5:45 PM
**To:**           LAEDdb_Clerk
**Subject:**     PUBLIC COMMENT: Alfredo Casborn

**CAUTION - EXTERNAL:**


PUBLIC COMMENT:

Alfredo Casborn
"If police are breaking the law we should lock them up. I was taken to jail for something that had nothing to do with me, and we need the consent decree for things like that. We already have enough problems with NOPD, and now we also have to worry about state troopers killing people and being reckless in chases when they're not supposed to."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 15th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          N.O. COP <​███████████████​>
**Sent:**          Thursday, November 7, 2024 5:46 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Rudolph Edward, ███████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Rudolph Edward, ███████████
"NOPD shouldn't be let off the hook. I was locked up for marijuana before I left town for Atlanta and Memphis and then I was locked up again when I came back. The NOPD messes with me all the time even as an old man."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 15th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP ██████████

**Sent:**          Thursday, November 7, 2024 5:47 PM

**To:**            LAEDdb_Clerk

**Subject:**       PUBLIC COMMENT: Nancy White, ██████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Nancy White, ██████████
"NOPD shouldn't get to decide that they don't need oversight; racial bias is absolutely there."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 15th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP █████████████████
**Sent:**          Thursday, November 7, 2024 5:48 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Tucker, ████████████

**CAUTION - EXTERNAL:**

Tucker, ██████████████
"NOPD should not be allowed to enter sustainment. We need to help the mentally ill. Police here and around the country need to stop brutalizing and killing Black men."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 15th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP <███████████████>
**Sent:**          Thursday, November 7, 2024 5:49 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Luke Dickinson, ████████████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Luke Dickinson, ████████████████
"The city and parish police have made no observable attempt to reduce violence against our community. On top of this, Orleans Parish Prison still kills and endangers disabled people by continuing to lack healthcare facilities in violation of federal law."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 15th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP <██████████████>
**Sent:**          Thursday, November 7, 2024 5:51 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Kelcy Wilburn, ██████████████

**CAUTION - EXTERNAL:**


PUBLIC COMMENT:

Kelcy Wilburn ██████████████
"NOPD has yet to deserve our trust. I think they should still remain under federal oversight."


This comment was made by New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP <█████████████>
**Sent:**          Thursday, November 7, 2024 5:53 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: ANONYMOUS


**CAUTION - EXTERNAL:**


PUBLIC COMMENT:


"I urge you to continue federal oversight of the NOPD until the use of force against black folks and people of color is drastically reduced."


This comment was made by New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** N.O. COP ████████████
**Sent:** Thursday, November 7, 2024 5:54 PM
**To:** LAEDdb_Clerk
**Subject:** PUBLIC COMMENT: Mary Mckinnon, ████████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Mary Mckinnon, ████████████
"There's nobody over NOPD to check them when they break the law. We at least have some people in federal government watching them but we ur someone locally to put checks and balances. My house caught on fire and I was blamed for it, when in reality the fire started next door in an abandoned house used by drug addicts; NOPD did nothing to address this."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          N.O. COP <▮▮▮▮▮▮▮▮
**Sent:**          Thursday, November 7, 2024 5:54 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: HP, ▮▮▮▮▮▮▮▮

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

HP-▮▮▮▮▮▮▮▮
"NOPD has been racially profiling me. I can't drink a beer in peace in front of my own door. They accused me of disturbing the peace. The Consent Decree shouldn't go away. Police officers are running up the city clock on city gas and city money to harass people when there are people who need real jobs. But when there's a real problem NOPD is nowhere to be found."

This comment was made by New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        N.O. COP <█████████████>

**Sent:**        Thursday, November 7, 2024 5:57 PM

**To:**          LAEDdb_Clerk

**Subject:**     PUBLIC COMMENT: Roycelyn Dequair, █████████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Roycelyn Dequair, █████████████

"If they take the Consent Decree away, police are going to do whatever they want to young and old Black men and women. This goes hand in hand with that racist-ass man in Baton Rouge who wants to let them start doing that again. He wants to bring us back to slavery and take away our freedom and democracy just like Trump does. The mayor is corrupt as well on this issue."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP <span style="background:black">&#9608;&#9608;&#9608;&#9608;&#9608;</span>
**Sent:**          Thursday, November 7, 2024 5:59 PM
**To:**          LAEDdb_Clerk
**Subject:**     PUBLIC COMMENT: James, <span style="background:black">&#9608;&#9608;&#9608;&#9608;</span>

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

James, <span style="background:black">&#9608;&#9608;&#9608;&#9608;</span>
"Police are not helping people, but harassing homeless people. I once called the police to respond to a brother's seizure and they came asking about a gunshot; this shows that they were not paying attention to detail and failing to do their job."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         N.O. COP ███████████
**Sent:**         Thursday, November 7, 2024 6:00 PM
**To:**           LAEDdb_Clerk
**Subject:**      PUBLIC COMMENT: Quentin Lacey Blackwell

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Quentin Lacey Blackwell-Math/SPED teacher
"I understand that we have a large population of Brown and Black people here, but they are disproportionately policing these areas more. With those use of force stats, 90% used on Black men and 86% used on Black women is really fucking high. Different jurisdictions also work together in tandem and this is an area wide thing for police, who are not on their P's and Q's. I have to take away from my curriculum to teach kids about police brutality."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**           N.O. COP <█████████>
**Sent:**           Thursday, November 7, 2024 6:01 PM
**To:**             LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Donny, ████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Donny, ██████
"We can't let them cowards get off that way. I told an NOPD about someone pulling out a gun in front of Phyllis Wheatley while kids were walking out. She said, "What do you want me to do? People got a right to have guns."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on October 22nd 2024.
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          N.O. COP <​███████████>
**Sent:**          Thursday, November 7, 2024 6:05 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: John Ard

**CAUTION - EXTERNAL:**


PUBLIC COMMENT:

John Ard-███████████████████████████████
"New Orleans police are corrupt. I have a lot of experience with harassment by NOPD. I've also seen a lot of police mace people and beat people up in jail. In the state of Louisiana there's a lot of corruption in the jails. They cover a lot of stuff up. The showers and food will be cold. They put you in dangerous situations where you're housed with a population where you might get stabbed or beat up."


This comment was made by a New Orleans resident and collected by NOCOP canvassers on October 26th 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          N.O. COP <██████████>
**Sent:**           Thursday, November 7, 2024 6:06 PM
**To:**             LAEDdb_Clerk
**Subject:**      PUBLIC COMMENT: Semaj Douglass

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Semaj Douglass-email: ██████████
"We definitely need to have better protections for minorities in places like Louisiana that have shown to be prejudiced against people of color and poor people, including the consent decree."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         N.O. COP <​█████████████​>
**Sent:**         Thursday, November 7, 2024 6:09 PM
**To:**           LAEDdb_Clerk
**Subject:**      PUBLIC COMMENT: Sherry Cowart, █████████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Sherry Cowart, █████████████
"They still have a lot of police officers that's trigger happy. I understand that there's a lot of violence, but there's still a lot of police officers that's trigger happy. The news just did a story on my son being shot by a police officer named Isaiah Shannon. Shannon had his gun out when he approached the car, and we only knew this because of his partner's body cam footage. We are suing the NOPD for this. A few weeks ago, they had a kick-in on a house that was under surveillance by NOPD, but it wasn't on the news. A Mom got dragged outside and got bruised even though she had nothing to do with anything. Her sons were accused of having drugs or robbery or something. Anyway, Isaiah Shannon's name came up in relation to this case, but he should have been fired for what he did to my son. They're not investigating domestic violence cases even when they are being reported. A few weeks ago a 35 year old man killed his 25 year old partner, even though he had been reported before and the police didn't investigate him; they only arrested him after he murdered his partner. If I'm calling the police saying I'm in danger I need them there. If I call them at 3 AM, I don't need them coming at 3 PM, I need them coming now. Ain't no way in the world they should be let out of the Consent Decree.

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** N.O. COP < ███████████████ >
**Sent:** Thursday, November 7, 2024 6:10 PM
**To:** LAEDdb_Clerk
**Subject:** PUBLIC COMMENT: Terrance, ███████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Terrance, ████████████
"I've lived here my entire life and have seen a lot of things working for the Times Picayune. I'm concerned about what happens after the Consent Decree goes away. I hope the court will make the right choice."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**               N.O. COP <span style="background:black;color:black">████████</span>
**Sent:**               Thursday, November 7, 2024 6:11 PM
**To:**                  LAEDdb_Clerk
**Subject:**          PUBLIC COMMENT: Ngazi McCormick

**CAUTION - EXTERNAL:**


Ngazi McCormick
"I've been racially profiled. They also profile people based on car type. When I used to drive a Monte Carlo, I got pulled over all the time, but since I started driving a Toyota Corolla I haven't been getting stopped as much. They also stop people for illegitimate reasons. They stopped me one time saying 'I tried to read your license plate and couldn't read it.' I said to the officer, 'why were you trying to read my license plate in the first place?' That's not a justifiable reason. We need to keep them accountable."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**         N.O. COP ⬛⬛⬛⬛⬛⬛
**Sent:**         Thursday, November 7, 2024 6:12 PM
**To:**           LAEDdb_Clerk
**Subject:**      PUBLIC COMMENT: Naderah McCormick

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Naderah McCormick
"The NOPD need to be held accountable. They talk about a 'veil of darkness test,' well I was stopped in the daytime. One time when I was a new driver and a little nervous, I accidentally went past a 'do not enter' sign and didn't stop right away; I was lost. I got pulled over by a car with a White cop and a Black cop. The White cop got out of the car with a gun drawn and I was disturbed and frightened to see this. The Black cop told him to put it away, but he shouldn't have had it out in the first place. At this time I had my locs, the way my hair naturally grows, and I feel like racial profiling definitely still occurs."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**         N.O. COP ▮▮▮▮▮▮▮▮▮▮
**Sent:**          Thursday, November 7, 2024 6:13 PM
**To:**            LAEDdb_Clerk
**Subject:**       PUBLIC COMMENT: Kori Smith, ▮▮▮▮▮▮▮▮

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Kori Smith, ▮▮▮▮▮▮▮▮
"Now more than ever, NOPD should stay under federal oversight."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** N.O. COP ███████████
**Sent:** Thursday, November 7, 2024 6:14 PM
**To:** LAEDdb_Clerk
**Subject:** PUBLIC COMMENT: ANONYMOUS

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

"I think NOPD should stay under federal oversight until they improve."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**       Shreyas Vasudevan < ██████████ >
**Sent:**       Thursday, November 7, 2024 6:14 PM
**To:**         LAEDdb_Clerk
**Subject:**    Public comment on NOPD Consent Decree Sustainment

**CAUTION - EXTERNAL:**

To whom it may concern,

I am a ████████████, I am writing to urge you not to move NOPD into a sustainment period and end the federal oversight over our police department. NOPD disproportionately uses force against Black people, including women and children. There are also conflict of interest concerns between the deputy monitor of the consent decree and NOPD, highlighting the need for non-corrupt oversight of the NOPD. Earlier this year, NOPD worked with LA State Troopers to use force against student protestors at Tulane university, finding a way around the consent decree that would prevent NOPD from such actions. The 14 arrested that morning were found to be not guilty in court, highlighting the lunacy of the decision to bring armed state troopers, armored vehicles, and live rounds to those exercising their first amendment right.

Please maintain the consent decree, do not move NOPD into a sustainment period.

Sincerely,
Shreyas Vasudevan

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Beauchamp, Christian <span style="background-color:black">████████</span>
**Sent:** Thursday, November 7, 2024 6:15 PM
**To:** LAEDdb_Clerk
**Subject:** Keep the Consent Decree

CAUTION - EXTERNAL:


To whom it may concern:

I'm writing in defense of keeping the consent decree in New Orleans. We cannot allow the consent decree to enter sustainment because we know that New Orleans is rife with issues, most notably racist policing and corruption.

Aside from the tremendous issues NOPD has with racist policing, there is also the issue of conflict of interest. As we know, the deputy monitor has business connections with former NOPD officers. The person monitoring this cities police should be completely free of business ties with them.

Protect our consent until the issues of racism and improper use of force have been addressed and all of those with conflicts of interest have been removed from the process.


Christian Beauchamp, <span style="background-color:black">████████</span>
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**           N.O. COP █████████████
**Sent:**           Thursday, November 7, 2024 6:15 PM
**To:**             LAEDdb_Clerk
**Subject:**        PUBLIC COMMENT: Felica Jefferson, ████████████

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Felica Jefferson ████████████
"If NOPD is racist, they should be under federal oversight. Its not right for them to be racist against black people. It should all be equal."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** N.O. COP <███████████████>
**Sent:** Thursday, November 7, 2024 6:16 PM
**To:** LAEDdb_Clerk
**Subject:** PUBLIC COMMENT: Lester Deboue

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Lester Deboue
"So many police come in and aren't connected with the community. I believe NOPD should keep the consent decree, for community purposes. Sometimes we have people coming from across the lake already in a bad mood ready to crack some heads–they come here and they just see a bunch of black kids because they're not connected."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**         N.O. COP < ██████████████ >
**Sent:**          Thursday, November 7, 2024 6:17 PM
**To:**             LAEDdb_Clerk
**Subject:**     PUBLIC COMMENT: Kristen T

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Kristen T
"They (NOPD) need to prove that they can improve their numbers BEFORE exiting the consent decree."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 3rd 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

| | |
|---|---|
| **From:** | Adan Murad <█████████@█████████> |
| **Sent:** | Thursday, November 7, 2024 6:17 PM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | Please keep consent decree |

CAUTION - EXTERNAL:

Hello,

I remember distinctly watching on instagram an nopd officers horse nearly killed a women. The leg of the thousand pound animal either hit or was inches away from that women's head. And why ? Was she some violent criminal? No , she was peacefully protesting genocide and fell due to the officer trying to use a horse to forcefully break a peaceful encampment. I don't believe all cops are evil , but I'm also wise enough to know that not all humans are saints. Cops included. Since the consent decree was enacted nopd hasn't met the needed criteria to disband it. It also serves as a reminder to those officers that there are repercussions for their illegal or dangerous actions. Please keep the consent decree until all criteria are fully met, which as of today it has not even met the bare minimum requirements.

Respectfully,
-Hakm Murad
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Donaka Autry <█████████████████>
**Sent:**          Thursday, November 7, 2024 6:18 PM
**To:**            LAEDdb_Clerk
**Subject:**       I Say NO to NOPD Sustainment

**CAUTION - EXTERNAL:**

Dear Judge Morgan,
I believe that the NOPD cannot move to sustainment until racist policing and corruption is rectified! As a black woman in New Orleans, I have seen and been a victim to ridiculous & obviously racist policing tactics by NOPD. I don't see how you, in good conscience, can move forward with this knowing that there's so many people of the community that are against it. Please consider our viewpoints.

Best Regards,
Donaka K. Autry
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Sophie Barker < ███████████ >
**Sent:**        Thursday, November 7, 2024 6:18 PM
**To:**          LAEDdb_Clerk
**Subject:**     No to sustainment

**CAUTION - EXTERNAL:**

Hello,

I'm a citizen of New Orleans saying no to sustainment. The NOPD has proven time and time again that they are not ready to released from this agreement and the statistics are clear. For example, 90% of force used in 2023 was against black people despite only 56% of the New Orleans population being black. There's also a huge conflict of interest with the Deputy Monitor. We need federal oversight to protect the people of New Orleans, and eventually community control.

Sincerely,
Sophie Barker
70119

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**       lauren gifford <███████████████████>
**Sent:**       Thursday, November 7, 2024 6:18 PM
**To:**         LAEDdb_Clerk
**Subject:**    Keep the Consent Decree

**CAUTION - EXTERNAL:**

Judge Morgan,
Exiting the federal consent decree oversight in New Orleans is not the way to end the racist policing and corruption. Even while the consent decree was in effect, 90% of use of force by the NOPD was towards black people even though only 56% of the population of the city is black. The use of violence against black women by the NOPD increased by 54% while the consent decree was in effect. Obviously, based on these statistics, racism is still afoot within the NOPD even under the consent decree. Further, the deputy monitor of the NOPD is in business with former members of the NOPD which is a clear conflict of interest. The Deputy Monitor is supposed to be overseeing the behavior and conduct of the NOPD, not being in business with them. This alone shows the level of corruption within the NOPD. Exiting the consent decree will not end the racist and corrupt policing in New Orleans. The department is clearly not compliant with the stipulations of the consent decree and ending the decree will make these obvious issues even worse and endanger the lives of minorities in our city.
Thank you for your time,
Lauren Gifford
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Jules Maé Grey <​███████████████████>
**Sent:**           Thursday, November 7, 2024 6:20 PM
**To:**              LAEDdb_Clerk
**Subject:**      No to NOPD Sustainment

**CAUTION - EXTERNAL:**

Judge Morgan,

I am writing to submit a public comment on the prospect of NOPD moving to sustainment and exiting federal consent decree oversight.

However, many residents of New Orleans feel that this is not appropriate given the fact that NOPD has not taken responsibility for its racist policing practices.

In 2023, Black residents were 11 times more likely to experience violent interactions compared to white residents, and NOPD use of force against Black women rose by 54%.

Meanwhile, the deputy monitor charged with oversight of the police has a clear conflict of interest, as it is well known within the community that he does business outside of the office often directly with NOPD officers.

NOPD also used force against students peacefully protesting at the encampment at Tulane this spring, all 14 of whom were found not guilty for charges brought against them for protesting on campus.

The NOPD should not move to sustainment until their consistent corruption and racist actions are rectified.

Thank you,
Julien Grey
70115

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**      Natasha Robles <███████████████████>
**Sent:**      Thursday, November 7, 2024 6:20 PM
**To:**        LAEDdb_Clerk
**Subject:**   NO TO NOPD SUSTAINMENT

CAUTION - EXTERNAL:

WE NEED FEDERAL OVERSIGHT. I AM A TAX PAYING RESIDENT OF NEW ORLEANS AND I AM VERY CONCERNED. WE WANT OUR VOICE HEARD. THE POLICE MISTREAT AND ABUSE THE PEOPLE IN OUR COMMUNITY CANNOT GO WITHOUT CHECK. IF THEY WITHDRAW IT THEN WHO WILL BE HERE TO PROTECT AGAINST POLICE VIOLENCE. THE DEPARTMENT IS NOT IN COMPLIANCE SO CONSENT DECREE CANNOT BE WITHDRAWN.
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Adan Murad <████████████████████>
**Sent:**        Thursday, November 7, 2024 6:21 PM
**To:**          LAEDdb_Clerk
**Subject:**     In Defense of the Consent Decree

**CAUTION - EXTERNAL:**


Hi,

I'm a citizen of New Orleans saying no to sustainment. The NOPD has proven time and time again that they are not ready to be released from this agreement and the statistics are clear. For example, 90% of force used in 2023 was against black people despite only 56% of the New Orleans population being black.

There's also a huge conflict of interest with the Deputy Monitor. We need federal oversight to protect the people of New Orleans, and eventually community control.

Thank you!
--
**Adan Murad**


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Serena Sojic-Borne <███████████████>
**Sent:** Thursday, November 7, 2024 6:23 PM
**To:** LAEDdb_Clerk
**Subject:** KEEP the consent decree + OPPOSE sustainment

**CAUTION - EXTERNAL:**

To: Clerk, Judge,

I am writing as an LGBTQ community activist in New Orleans. I understand that the consent decree was implemented in part because of biased policing affecting the LGBTQ community. I urge you to oppose putting the NOPD in sustainment, and instead preserve the consent decree.

I was a participant in the 2020 Black Lives Matter protests, where the NOPD tear gassed nonviolent protesters and nearly caused a stampede. More recently, I was arrested on false charges at the student pro-Palestine encampment. On the first day of the encampment, police brought in horses that kicked a protester in the head. They arrested seven without issuing an audible trespassing warning. On the third day, the NOPD collaborated with the state police to bring nearly 200 officers in riot gear, a BearCat armored vehicle, and sniper rifles to arrest a dozen protesters sitting on the sidewalk.

Multiple pro-Israel protesters have committed theft, vandalism, and battery on video and in public view without a police response.

14 protesters arrested in relation to the encampment have already been found Not Guilty, a clear indication that these were arbitrary arrests that were based on the content, and not the character, of the protest. The brutality and disproportionality of the police actions are also telling. The NOPD has demonstrated an inability to respect 1st Amendment rights. As a community activist, I know content-based restriction and biased policing when I see them.

Oppose sustainment, keep the consent decree.

Respectfully,
Serena Borne

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        Luke Kikukawa <███████████████>
**Sent:**        Thursday, November 7, 2024 6:24 PM
**To:**          LAEDdb_Clerk
**Subject:**     Comments regarding ending NOPD consent decree

**CAUTION - EXTERNAL:**

Good evening Ms. Susie Morgan,

I am writing to demonstrate the continued need for the NOPD to be monitored for the unequal, predatory, and racist policing that remains to be systemic to their practice. Stop and frisk and use of force measures remain to be overused on black residents.

There is a major conflict of interest with the deputy monitor of the consent decree. How can we trust any of our public officials when such blatant corruption exists. How can you ignore the statistics that your own office and the NOPD produce?

Please show a modicum of humanity and care for black people in New Orleans. The removal of the consent decree is unsubstantiated and puts people in danger.

-Luke Kikukawa

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**          Sanchez, Maya S <█████████████████>
**Sent:**          Thursday, November 7, 2024 6:30 PM
**To:**            LAEDdb_Clerk
**Subject:**       SAY NO TO NOPD SUSTAINMENT

**CAUTION - EXTERNAL:**

On April 29, 2024, mounted NOPD officers violently assaulted peaceful student protesters. One of them was KICKED IN THE HEAD by NOPD horse. I witnessed this. NOPD collaborated with Louisiana State Police on May 1, 2024 to use force against peaceful protesters that were found not guilty. LSP had rifles aimed at unarmed students. This will only get worse if there is a lack of federal oversight. Moving NOPD into sustainment will encourage police brutality. Violence against black and brown people has increased in New Orleans since the implantation of the consent decree. DO NOT MOVE NOPD INTO A SUSTAINMENT PERIOD.

Maya Sanchez
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Maya Sanchez <██████████████████>
**Sent:** Thursday, November 7, 2024 6:33 PM
**To:** LAEDdb_Clerk
**Subject:** Retain NOPD Consent Decree

**CAUTION - EXTERNAL:**

On April 29, 2024, mounted NOPD officers violently assaulted peaceful student protesters. One of them was KICKED IN THE HEAD by NOPD horse. I witnessed this. NOPD collaborated with Louisiana State Police on May 1, 2024 to use force against peaceful protesters that were found not guilty. LSP had rifles aimed at unarmed students. This will only get worse if there is a lack of federal oversight. Moving NOPD into sustainment will encourage police brutality. Violence against black and brown people has increased in New Orleans since the implantation of the consent decree. DO NOT MOVE NOPD INTO A SUSTAINMENT PERIOD.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Cristine Farah < ███████████████ >
**Sent:** Thursday, November 7, 2024 6:34 PM
**To:** LAEDdb_Clerk
**Subject:** Comment to Hon. Susie Morgan Re: NOPD Consent Decree

**CAUTION - EXTERNAL:**

Good evening,

I am writing to you to express my deep concern and opposition to the New Orleans Police Department potentially entering a period of sustainment and exiting the oversight of the federal consent decree.

The constitutional protections offered to civilians are the bare minimum standard to which NOPD officers should be upheld. Since NOPD has entered the oversight of the consent decree, it has not only woefully failed to uphold those standards, but also remarkably gotten statistically worse.

We know that in 2023:
- Approximately 90% of the NOPD's use of force was against Black people, despite only 56% of the city's population being Black;
- 90% of stop and frisk searches for firearms during Mardi Gras targeted Black civilians;
- NOPD's use of force against Black women rose by 54%;
- Overall, NOPD subject Black people to force at 11x the rate of white people;
- On October 29, 2023, I witnessed the head of the Police Association (PANO), Mike Glasser, batter a peaceful protestor with his NOPD vehicle by intentionally running into that protestor as she tailed behind a group of hundreds of peaceful protestors on Canal Street in New Orleans. That officer has not faced any consequences for this action yet; and
- For the following weeks, I have witnessed Mike Glasser and several other NOPD officers harass peaceful protestors in New Orleans on numerous occasions.

On April 29, 2024, I witnessed mounted NOPD officers batter civilians and peaceful protestors with their horses.

Moreover, I am deeply concerned with the NOPD's collaboration with ICE. Federal oversight would further protect our undocumented communities.

Finally, I am deeply concerned about the conflict of interest surrounding Deputy Monitor Douglas, and believe further investigation into the matter is prompted before a decision is rendered by your honor.

Best,

Cristine Farah

Cristine Farah

**Cristine Farah**
Associate



1

**From:**        Charlie Schully <█████████████████>
**Sent:**        Thursday, November 7, 2024 6:41 PM
**To:**          LAEDdb_Clerk
**Subject:**     Federal Consent Decree

**CAUTION - EXTERNAL:**

Honorable Judge Morgan,

I wanted to urge you to continue the consent decree between the Department of Justice (DOJ) and the New Orleans Police Department (NOPD). Between the conflict of interest with the Deputy Independent Police Monitor and City; the continued flagrant mishandling of domestic abuse cases by the Department (see link below); the cooperation of the NOPD in the baseless and brutal arrests and prosecution of Tulane and Loyola students for peacefully protesting; and continued corruption, turnover, and a hostile administration that wants to lock up more people for more time, we will immediately lose the tenuous constitutional progress that was made if we go back now.

I have been a part of this movement to see control of the NOPD since the days of Safe Streets/Strong Communities, after Hurricane Katrina, and it is a major reason why I am an attorney now. We deserve better.

https://www.canva.com/design/DAGVw7ApmTU/NTfANbBOqgEIpbQe6f10wg/view?utm_content=DAGVw7ApmTU&utm_campaign=designshare&utm_medium=link&utm_source=editor

Yours truly,

Charlie Schully

Charlie Schully, Esq., CSW
Attorney at Law


CONFIDENTIALITY STATEMENT: This email and any files transmitted with it may contain privileged attorney-client work product. The contents of this message are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please **delete** it immediately and notify the sender.
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Lydia Curdts <████████████>
**Sent:**        Thursday, November 7, 2024 7:03 PM
**To:**          LAEDdb_Clerk
**Subject:**     No to NOPD Sustainment

CAUTION - EXTERNAL:

Hello,

We need to continue the consent decree to ensure NOPD has fair and safe policing.

Please vote no to sustainment.

Lydia Curdts
70119
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**       Khalif Birden <███████████>
**Sent:**       Thursday, November 7, 2024 7:45 PM
**To:**         LAEDdb_Clerk
**Subject:**    New Orleans Federal Consent Decree

**CAUTION - EXTERNAL:**

To Whom it May Concern,

I am writing as a citizen of New Orleans, concerned with the current developments regarding the repeal of the federal consent decree under which the New Orleans Police Department currently serve. Entering sustainment at this point is more than premature, it is grossly inappropriate given that:

-NOPD's total use of force statistics from 2023 are higher than they were in 2013, when the consent decree first went into effect.

-Black citizens such as myself represent 90% of victims of police force despite being less than 60% of our city's population

-Use of force against Black women  increased 54% in 2023

-90% of stop and frisk searches during this past Mardi Gras were performed on Black people

Furthermore, I would raise the serious concern that other police forces, state and university-run, operate in this city without being subject to this consent decree. Making this city safe for all citizens will require that all police officers, regardless of their department, be subject to the same standards and monitoring which the consent decree ensures.

The NOPD is not close to being in compliance. This bid to enter sustainment is defended on grounds of good faith towards new NOPD and wider city leadership, but myself and other citizens require more than good faith, we require results.

Thank you for your time, I hope this comment helps the court to make the correct decision.

-Khalif Aziz Birden


Yahoo Mail: Search, Organize, Conquer
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Christine Bourge <████████████████████>
**Sent:**          Thursday, November 7, 2024 8:42 PM
**To:**            LAEDdb_Clerk
**Subject:**       Keep the Consent Decree

**CAUTION - EXTERNAL:**

I am writing to keep the consent decree in New Orleans and to not let it enter sustainment. It is essential that we maintain the consent decree because NOPD has huge issues of racist policing and overuse of force. These issues prove that New Orleans needs the consent decree.
Further, the deputy monitor has ties to the NOPD which is a clear conflict of interest. In order to solve the issues facing NOPD, we must maintain the consent decree and have a monitor that is free of bias. The citizens of New Orleans deserve better.
Christine Bourge 70118

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | PSL- Louisiana <███████████████████> |
| **Sent:** | Thursday, November 7, 2024 8:57 PM |
| **To:** | LAEDdb_Clerk; aburns@consentdecreemonitor.onmicrosoft.com |
| **Subject:** | Public Comment on Consent Decree |

**CAUTION - EXTERNAL:**

To whom it may concern,

The Louisiana branch of the PSL (Party for Socialism and Liberation) strongly urges against the New Orleans Police Department's exit from the Consent Decree Monitor. As a multiracial community organization of working class New Orleanians, we are deeply concerned with the NOPD's record of racially based policing. In 2023, 90% of NOPD use of force cases against men were against Black men, and between 2021-23, the rate of use of force against Black women increased by 54.9%.

Given the deeply troubling, decades-long record of misconduct — namely the use of excessive force, unconstitutional stops, and discriminatory policing targeting Black residents — we are not confident that the department will be able to maintain compliance with established benchmarks absent federal oversight.

Black, working class residents— who are the majority of our city — have suffered the brunt of racialized violence at the hands of the NOPD, just as Black working class communities across the country have been terrorized by their respective police departments. We reject the notion that these incidents of "misconduct" are isolated incidents; rather, it is a pattern of terror that has been carried out with near total impunity. We stand in absolute solidarity with all victims of racist police terror and demand that the City of New Orleans and Department of Justice hold the NOPD accountable by extending the consent decree.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Megan Bott <███████████████████> |
| **Sent:** | Thursday, November 7, 2024 9:01 PM |
| **To:** | LAEDdb_Clerk |
| **Cc:** | community.nola@usdoj.gov |
| **Subject:** | Comment Regarding the NOPD Consent Decree from a Concerned Citizen |

**CAUTION - EXTERNAL:**


Greetings to anyone whose eyes fall upon this email,

I am writing to express my objection to the NOPD Consent Decree entering a sustainment period. When I found out about Rodney Vicknair's sexual assault on a 15-year-old girl in 2020, I was horrified. I knew this story was made public but many other officer-involved sexual assault (SA) cases were not. My fears were confirmed when the OIPM discussed a few weeks another SA case involving a minor. This predatory behavior demonstrates to me that NOPD is still not to be trusted and has NOT met all the requirements of the consent decree.

Thank you for reading this and I hope you keep my comment in mind as you move forward with your proceedings.

All the best,
Megan Bott

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        Antonia Mar <█████████████████████>
**Sent:**        Thursday, November 7, 2024 9:18 PM
**To:**          LAEDdb_Clerk
**Subject:**     Consent decree public comment

**CAUTION - EXTERNAL:**

I urge the court to rule against sustainment until the NOPD rectifies its racist policing, and the corrupt monitor Deputy Douglass is replaced. I support the letter put forward by Eyes on Surveillance, but my comment will focus on racist policing and use of force.

The NOPD should not be allowed to move into sustainment while they fail to meet constitutional standards for policing. I have read the joint in motion and the sustainment plan, and **both the city and the DOJ admit that the police are not in compliance with the consent decree**. This is glaring issue #1. We cannot have Sustainment where there is not compliance.

#2 - According to the statistical analysis by the Office of the Independent Police Monitor, Recent data shows NOPD is doing worse, not better.

NOPD has higher use of force rates today than when the consent decree was put in place. In 2023, NOPD use of force against Black women went up 54%. Black people are over represented (relative to making up 56% of the city) in every category of Police stops, force, and arrests, etc. These facts do not inspire confidence.

#3 - As a community organizer with New Orleans for Community Oversight of Police, myself and my peers in other organizations have been harassed by NOPD officers during first amendment demonstrations, and victims of high use of force rates.

For example: Mike Glasser, who also happens to be the president of PANO, showed up to a peaceful demonstration for Palestine and antagonized us, even driving his car dangerously close and hitting someone on their bike. This was on October 29th 2023. We filed a report with the OIPM, but have seen not heard of any action taken. There is no accountability over the PIB and too many victims of Police violence have suffered because of this. I know because I do door-to-door canvassing work and hear of it all too often.

Additionally: in April 2024, NOPD horses pummeled people at a Tulane University rally and encampment for Palestine. During an intense moment, Officers rode their horses right through the crowd. People were sitting together and the horses narrowly missed stomping a demonstrator's head. Those police put people in danger of serious injury.

There is also NOPD's response to a solidarity encampment in the French quarter, which occurred also occurred in April 2024, days before the Tulane incident. Protestors were physically beaten while arrested. One person ended up with a broken leg, another got tased in the head, and there were several others with serious injuries. These folks came out of jail in wheelchairs and crutches.

**These kinds of outcomes make our communities less safe.** The NOPD still has to prove itself capable of sustainment, because as it stands, it looks scary for what comes next. Particularly as we have Trump in office, it will become even more important for federal oversight to ensure that NOPD is actually held to some standard of serious accountability, to

1

stop racist policing policing of our communities (including the immigrant community!), and for civilians to safely demonstrate without police escalating the situation.

For these reasons, **I urge you again to rule against sustainment and keep NOPD under federal oversight until they come into full compliance with the consent decree, and not a second before.**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**     Gina Kissee <███████████████>
**Sent:**     Thursday, November 7, 2024 9:25 PM
**To:**       LAEDdb_Clerk
**Subject:**  NOPD Federal Consent Decree Oversight

**CAUTION - EXTERNAL:**

To whom it may concern:

I am writing to express my concern and absolute disagreement with NOPD entering sustainment from federal consent decree oversight. NOPD has repeatedly demonstrated racially biased and excessively violent policing in recent years. I have personally witnessed needlessly violent arrests against community members, many of whom had all charges dropped after the fact.

I am especially concerned about the obvious conflict of interest in Deputy Monitor Douglas's business dealings. His motives should be questioned for all of his previous work as a monitor. Actions and decisions don't happen in a vacuum. His decision to employ former NOPD leadership needs to be properly investigated.

Further, there's been insufficient time for public input in this issue. There's also been an insufficient effort to educate and solicit input from the public. Information is not distributed effectively for people who don't speak English as a primary language.

I strongly oppose sustainment. NOPD has shown time and again their inability to address the racist and violent behavior within their own ranks.

Thank you,
Gina Kissee
███████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

| | |
|---|---|
| **From:** | Rachel Taber <​█████████████​> |
| **Sent:** | Thursday, November 7, 2024 9:51 PM |
| **To:** | LAEDdb_Clerk |
| **Cc:** | community.nola@usdoj.gov |
| **Subject:** | Please Continue the Consent Decree |

**CAUTION - EXTERNAL:**

Dear Honorable Judge and Consent Decree Team,

I write to you today to urge you to continue the Consent Decree. New Orleanians urgently need Federal oversight to ensure our civil rights are protected.

Firstly, it would be inappropriate to discontinue the Consent Decree as civil rights abuses have not improved. Data that are tracked and publicized only thanks to measures required by the Consent Decree show that use of force by officers has not been reduced - it has nearly doubled since the inception of data tracking under the consent decree, with use of force being 1.8 times higher in 2023 than in 2013 at the onset of the Consent Decree, despite the fact that crime overall was reduced during the same period. The aggregate data point to police misuse of force. Moreover, Black New Orleanian are more likely to be subject to force, while representing only 56 percent of the population at large, they comprised 89.5% of the people subject to use of force per the Independent Police Monitor. Black women in New Orleans fare even worse, facing use of force 54 % more often in 2023. Not only do your own data indicate misuse of force measures, they clearly indicate racial discrimination and racial disparity in its use.

It would also be premature to end the Consent Decree as New Orleans currently has multiple police payroll fraud scandals that the monitor has not even intervened in. For instance, the Public Integrity Bureau of NOPD failed to investigate corruption charges against Officer Jeffrey Vappie, an alleged participant in an affair with Mayor LaToya Cantrell and others. While Judge Susie MOrgan found NOPD not in compliance with the Consent Decree related to this misappropriation of funds, nothing was concretely done about it. How can we move to dismiss a tool for accountability that we haven't even employed effectively yet?

The Consent Decree is a tool that aims to keeps New Orleanian safe by helping to restore trust in the community in police. I have over a decade in working with immigrant populations in New Orleans. I have spoken with many Spanish language and immigrant survivors of crimes, including rape, sexual assault, child molestation, Domestic Violence and witnesses to murder. I cannot tell you emphatically enough, many immigrant neighbors are too terrified to come forward with valuable information that could help keep our community safe and even restore justice to themselves and their families because they are terrified that police will coordinate with Immigration and Customs Enforcement, leading to detention, deportation and family separation. Currently, thanks to the Consent Decree, NOPD does not ask about immigration status or collaborate with ICE. Even so, immigrant community members report receiving discriminatory treatment from officers. A common occurrence is that during an accident, rather than using interpretation, officers will ticket and charge the non English speaking driver without ever hearing their side of the story. I spoke with multiple Domestic Violence and Sexual Assault survivors who were doubted by police. One was told "Unless there's blood, don't call the police". Another two women I worked with, who were sexually assaulted but escaped penetration, were questioned by police as to whether their testimony was true and one was told "Why did you even call if nothing further happened?" This is truly horrific. These survivors did their part to help protect the people of New Orleans by reporting, even after a traumatic incident, to ensure that further New Orleanians would not be victimized. They were treated as less than credible, and as an inconvenience to officers, whose job it is to protect, investigate and prevent crime. Both individuals had to attend weeks of therapy to recover from what occurred, I would be happy to provide documentation

1

from their therapists as to the veracity of the incident to the court. While NOPD, since the inception of the Consent Decree, does not directly coordinate with ICE, the damage to police community caused by the period where they did caused great harm. Many people are afraid that they will. Especially in this political moment of anti-immigrant sentiment at both a state and federal level, checks and balances and insulation to protect civil rights within the judicial branch are essential. Immigrants are currently unable to obtain Louisiana license plates, and are reporting higher than ever stops by police. In a meeting with activists, Chief of Police Ann Kirkpatrick was discussing holding people with ICE holds during routine traffic stops for up to two hours for DHS to come pick them up - something that the Consent Decree does *not* allow for! If this were put into practice, it would have catastrophic impacts for families. We would see traffic court with a death sentence: many people stopped for minor infractions then taken into ICE custody and deported to countries far away where they fear for their lives. We would have more citizen children growing up without the addes stability of parents' presence in the home, which is a recipe for more delinquency, not less.

Another consideration when taking into account the possible negative impact of ending the Consent Decree in immigrant communities - the announcement calling for public comment has never been published in Spanish, even though that is the language many New Orleanians operate in with Law Enforcement, and no interpretation has been provided at any public forum related to the Consent Decree. That is wildly inappropriate, and embodies a standard of reckless disregard for non English speaking New Orleanians vis a vis law enforcement. The failure to make this announcement available in other languages commonly spoken by New Orleanians is a failure of justice in this process. It may also be illegal under Title 9.  No period of sustainment should be entered whatsoever until non English speaking New Orleanians have also been made aware of the Public Comment Period and their ability to participate in it.

In all languages, public comment has not been sought sufficiently for a sustainment period to be even be considered at this point. For an event on Monday, 10/28, the venue and time were only published on an obscure website Thursday, 10/24th. Even so, hoards of New Orleanians attempted to attend to share comment. I personally attempted to attend an event at Loyola on 10/28, and myself, along with multiple other concerned members of the public, including attorneys, Loyola students, community members and more, were denied entry as there was insufficient space to house all members of the public wishing to share comments. For other events I managed to attend, the public had to listen to over an hour of "data" from presenters, whereby they shared all the ways the Consent Decree has not yet met its goals, before the floor was even open for public comment. People have kids they have to care for, work they can't necessarily take off from for hours at a time on a week day. The format really should have been listening sessions where the public could come air grievances with law enforcement, the events should have been published on public pages, social media, and more weeks in advance, and they should have been hel in large public forums, such as neighborhood community centers or City Hall outside work hours. It seems that the whole process this round was set up to give the appearance of public input without adequate promotion, space, or timing for the public to actually participate.

In closing, I repeat, it would be premature to bring the Consent Decree to a close without an adequate process for further public comment. Moreover, in this moment where we have not yet begun to achieve the goals of the Consent Decree, and where we are seeing more, not less, looming attacks on civil rights and public confidence in officers, it is not appropriate to end the Consent Decree. Keep the Consent Decree. We must see improvements- actual lower numbers of use of force, more trust in the police, and a concretely improved standard of living when it comes to Civil Rights with Law Enforcement before this notion should even be entertained.

Thank you for your time and consideration,

Rachel Taber

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Leilani Sardinha <████████████████>
**Sent:** Thursday, November 7, 2024 11:54 PM
**To:** LAEDdb_Clerk
**Subject:** Public Comment on Consent Decree

CAUTION - EXTERNAL:

Hello,

The idea of the NOPD without the consent decree is a frightening one. As a member of the New Orleans community - I feel like the consent decree is an essential tool to keep the people of New Orleans safe from a long history of of NOPD's predatory policing. The NOPD has not yet reached the standards of policing required by the consent decree so the consent decree should absolutely NOT be allowed to enter the sustainment period and should be kept indefinitely.

- Leilani Sardinha
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1



**State of Louisiana**
OFFICE OF THE GOVERNOR
P.O. BOX 94004
BATON ROUGE
70804-9004

Jeff Landry
Governor

November 8, 2024

The Honorable Susie Morgan
United States District Judge
Eastern District of Louisiana
c/of Clerk of Court
500 Poydras St, Room C-151
New Orleans, LA 70130

RE:    Public Comment in the matter of United States of America v. The City of New Orleans,
       Case 2:12-cv-01924-SM-DPC

Dear Judge Morgan:

For almost a decade now, the New Orleans Police Department ("NOPD") has carried the burden of not only ensuring the safety of the City of New Orleans, but also with managing the oversight of the intrusive consent decree entered into in this case in January 2013. It has done so admirably. Following the issuance of the consent decree, the NOPD spent years improving its policies and practices, and by April 2022 achieved substantial compliance by satisfying 15 out of 17 categories set forth in the consent decree. That same year, the NOPD quelled any lingering doubt by demonstrating its compliance with the remaining two categories.

In August 2022, the City filed a motion to terminate the consent decree, both under the terms of the consent decree and Federal Rule of Civil Procedure 60(b)(5). This motion thoroughly analyzed the NOPD's tremendous strides to comply with the consent decree, and correctly demonstrated why this consent decree should be terminated. As Louisiana Attorney General, I supported the City's motion and unsuccessfully attempted to file an amicus brief on the City's behalf. See Docs 642 & 645. More than two years later, the motion to terminate remains pending.

Nonetheless, the United States Department of Justice now acknowledges the NOPD's significant improvements to its policies, practices and procedures. In fact, the monitor reported to this Court on July 3, 2024, that "the NOPD deserves great credit for its ongoing commitment to becoming a model for constitutional, safe, and effective policing practices." Yet, despite no ruling on the 2022 motion to terminate, the parties ask this Court to not only extend monitoring of the consent decree, but to impose additional standards on the NOPD. Even under the proposed sustainment plan, the NOPD will have to formally ask this Court to end the consent decree.

To be clear, I applaud the USDOJ's apparent recognition that the NOPD has substantially complied with the consent decree. However, to move the NOPD into a "sustainment period" for an additional two years, while imposing even more requirements on the NOPD, would demonstrate that there is truly no end in sight for this case. The NOPD achieved substantial compliance for over two years at the time that it filed the motion to terminate in August 2022. It continues to substantially comply with the consent decree to this day. This has long satisfied the NOPD's obligations under the consent decree.

The consent decree is continuing to be a burden to our taxpayers and strains the resources of the city of New Orleans and the State of Louisiana. This decree coupled with the last decade of anti-police sentiment have left NOPD severely undermanned, with recruitment lagging. I would remind the Court that two years ago the city ranked in both the top ten most dangerous cities in the country and in the world. These factors have required the State of Louisiana to commit additional resources and law enforcement to support the city in combating the violence.

Close to fourteen years since the Court first entered the consent decree, the time has come for the NOPD to dedicate its focus on providing safety and security to the people of New Orleans, without this Court's oppressive oversight. Accordingly, I urge the Court to grant the City's pending motion to terminate the consent decree in its entirety.

For Louisiana,

Jeff Landry
Governor

**From:**    Steve Guerra <█████████████>
**Sent:**    Friday, November 8, 2024 8:31 AM
**To:**    LAEDdb_Clerk
**Subject:**    Consent Decree - Submission of Public Comment

**CAUTION - EXTERNAL:**

To: Clerk of Court, U.S. District Court, EDLA

I am writing in support of the NOPD entering a "Sustainment Period" for the Consent Decree and the proposed Sustainment Plan of compliance. I work full time in the French Quarter of New Orleans. I have personally seen the improvement in our police department leadership and rank and file. I believe the department is ready to move into the Sustainment Period.

Thank you for our consideration.

**Stephen Guerra**
Director of Finance
Hotel Monteleone
214 Royal Street
New Orleans, LA 70130
████████████████

www.hotelmonteleone.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

| | |
|---|---|
| **From:** | Melanie Talia <​█████████████​> |
| **Sent:** | Friday, November 8, 2024 9:27 AM |
| **To:** | LAEDdb_Clerk |
| **Cc:** | Ashley Burns |
| **Subject:** | Comment on Motion to Enter Sustainment Period |
| **Attachments:** | Sustainment Period Comment Letter to The Honorable Judge Morgan.pdf |

**CAUTION - EXTERNAL:**

Clerk of Court
U. S. District Court, EDLA
500 Poydras Street, Room C-151
New Orleans, LA 70130

The Honorable Judge Morgan,

The time has come for the New Orleans Police Department (NOPD) to stand tall and to stand on its own merit. The Federal Consent Decree was a necessary oversight willingly entered by the City of New Orleans to reform policing practices and policies 12 years ago. The progress made in Constitutional Policing in that time as well as increases in transparency by the NOPD have become a model for police departments across the country. The New Orleans Police and Justice Foundation (NOPJF) urges the Court to move the City of New Orleans, more specifically the New Orleans Police Department, into the Sustainment Period of the Federal Consent Decree. This is not an abrupt end to the Consent Decree but a path toward becoming a department that is no longer under the intensive supervision of federal monitors.

It is easy to point to the mountains of compliance data showing reductions in use of force or the incredible progress in bias-free policing, de-escalation, and crisis intervention training. The historic decreases in violent crime speak for themselves; however, the NOPJF offers a view of a future that a successful exit of the Consent Decree may ultimately bring about:

1. **Restored Public Trust:** The NOPD can demonstrate its commitment to reform and rebuild trust within the community. This will undoubtedly lead to improved relationships between the police and the public, fostering further cooperation and support.

2. **Reduced Financial Burden:** Many of the financial burdens of staffing and oversight now totaling in the millions will be alleviated, thus enabling the department to allocate resources to other priorities focused on public safety.

1

3. **Increased Autonomy:** The department can regain more control over its operations, allowing for greater flexibility and innovation while still maintaining policies from the Consent Decree emphasizing transparency to the community.

4. **Recognition of Progress:** This achievement will boost the public perception of the department and enhance the department's standing both locally and nationally. Whereas the NOPD has trained other major metropolitan police departments, new opportunities for partnerships may be possible.

5. **Enhanced Officer Morale:** A Consent Decree can sometimes lead to low morale and job dissatisfaction. A successful exit may help to improve morale by demonstrating that the department's efforts to reform have been successful and that the department is moving forward in a positive direction.

6. **Improved Recruitment and Retention:** The department may become more attractive to potential recruits and may retain existing officers by demonstrating a commitment to professional standards and accountability.

7. **Increased Federal Funding Opportunities:** Departments under a Consent Decree may be ineligible for certain federal grants or funding programs. Successfully exiting the Decree may open new opportunities for funding that can be used to support community initiatives, officer training, and other important programs.

8. **Positive Impact on Local Economy:** A City such as New Orleans that thrives on tourism may see an increase in visitors upon public understanding that the City has reached a significant accomplishment demonstrating the New Orleans Police Department's commitment to reform and progress.

9. **Positive Impact on Future Generations:** A successful exit from a Consent Decree can leave a lasting legacy for future generations. By demonstrating that reform is possible and that departments can overcome challenges, the department can inspire others to strive for excellence and accountability.

It is important to note that the sustainment period and eventual exit of the Consent Decree should not be seen as a complete end to reform efforts. The department has a plan to continue the progress it has made and enact, in every bureau and district, ongoing improvement to ensure that the positive changes implemented during the Decree are sustained. The NOPD is demonstrating their commitment, and we believe the future holds much for which to stand.

Behind Every Badge

*Melanie A. Talia*

Melanie A. Talia, J.D.
President & CEO
New Orleans Police and Justice Foundation

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



NEW ORLEANS POLICE AND JUSTICE FOUNDATION, INC.

141 ALLEN TOUSSAINT BLVD., #210 • NEW ORLEANS, LA 70124 • (504) 558-9944

WWW.NOPJF.ORG

November 8, 2024

OFFICERS AND TRUSTEES

F. DARRAH SCHAEFER
*BOARD CHAIR*

JAMES J. REISS III
*VICE CHAIR*

"RECUSED FROM THIS TOPIC"
*TREASURER*

ELIZABETH A. BOH
JOHN CASBON
JIM COOK
SCOTT COUVILLON
MARTIN DE LAUREAL
LARRY DeMARCAY III
STACEY DORSEY
BROOKE DUNCAN III
ANN DUPLESSIS
BEN DUPUY
G. PERRY EASTMAN IV
DEAN T. FALGOUST
KEVIN FERGUSON
ROY A GLAPION
NOAH HARDIE
DANNY HARDMAN
MICHAEL HARRISON
DAWN HEBERT
ERIC HOFFMAN
CHABRE M JOHNSON
TODD JOHNSON
E. JAMES KOCK III
STEVE KUPPERMAN
PATH T. LAPEYRE
TONI MOBLEY
BERNARD ROBERTSON III
RICHARD ROTH
TARIK SEDKY
ELICIA BROUSSARD SHERIDAN
KRISTI TAGLAUER
SEAN TOOMEY
IAM C. TUCKER
JASON WAGUESPACK
T. SEMMES WALMSLEY


EMERITUS TRUSTEES
DAVID KERSTEIN
CARL MIXON
SANDY SHILSTONE
JIM WILKINSON
TOM WININGDER

Clerk of Court
U. S. District Court, EDLA
500 Poydras Street, Room C-151
New Orleans, LA 70130

The Honorable Judge Morgan,

The time has come for the New Orleans Police Department (NOPD) to stand tall and to stand on its own merit. The Federal Consent Decree was a necessary oversight willingly entered by the City of New Orleans to reform policing practices and policies 12 years ago. The progress made in Constitutional Policing in that time as well as increases in transparency by the NOPD have become a model for police departments across the country. The New Orleans Police and Justice Foundation (NOPJF) urges the Court to move the City of New Orleans, more specifically the New Orleans Police Department, into the Sustainment Period of the Federal Consent Decree. This is not an abrupt end to the Consent Decree but a path toward becoming a department that is no longer under the intensive supervision of federal monitors.

It is easy to point to the mountains of compliance data showing reductions in use of force or the incredible progress in bias-free policing, de-escalation, and crisis intervention training. The historic decreases in violent crime speak for themselves; however, the NOPJF offers a view of a future that a successful exit of the Consent Decree may ultimately bring about:

1. **Restored Public Trust:** The NOPD can demonstrate its commitment to reform and rebuild trust within the community. This will undoubtedly lead to improved relationships between the police and the public, fostering further cooperation and support.

2. **Reduced Financial Burden:** Many of the financial burdens of staffing and oversight now totaling in the millions will be alleviated, thus enabling the department to allocate resources to other priorities focused on public safety.

3. **Increased Autonomy:** The department can regain more control over its operations, allowing for greater flexibility and innovation while still maintaining policies from the Consent Decree emphasizing transparency to the community.

4. **Recognition of Progress:** This achievement will boost the public perception of the department and enhance the department's standing both locally and nationally. Whereas the NOPD has trained other major metropolitan police departments, new opportunities for partnerships may be possible.

5. **Enhanced Officer Morale:** A Consent Decree can sometimes lead to low morale and job dissatisfaction. A successful exit may help to improve morale by demonstrating that the department's efforts to reform have been successful and that the department is moving forward in a positive direction.

6. **Improved Recruitment and Retention:** The department may become more attractive to potential recruits and may retain existing officers by demonstrating a commitment to professional standards and accountability.

7. **Increased Federal Funding Opportunities:** Departments under a Consent Decree may be ineligible for certain federal grants or funding programs. Successfully exiting the Decree may open new opportunities for funding that can be used to support community initiatives, officer training, and other important programs.

8. **Positive Impact on Local Economy:** A City such as New Orleans that thrives on tourism may see an increase in visitors upon public understanding that the City has reached a significant accomplishment demonstrating the New Orleans Police Department's commitment to reform and progress.

9. **Positive Impact on Future Generations:** A successful exit from a Consent Decree can leave a lasting legacy for future generations. By demonstrating that reform is possible and that departments can overcome challenges, the department can inspire others to strive for excellence and accountability.

It is important to note that the sustainment period and eventual exit of the Consent Decree should not be seen as a complete end to reform efforts. The department has a plan to continue the progress it has made and enact, in every bureau and district, ongoing improvement to ensure that the positive changes implemented during the Decree are sustained. The NOPD is demonstrating their commitment, and we believe the future holds much for which to stand.


Behind Every Badge

Melanie A. Talia, J.D.
President & CEO

| **From:** | Brooke Randolph <▮▮▮▮▮▮▮▮▮▮▮▮> |
|---|---|
| **Sent:** | Friday, November 8, 2024 10:10 AM |
| **To:** | aburns@consentdecreemonitors.onmicrosoft.com; Community.nola@usdoj.gov; LAEDdb_Clerk |
| **Cc:** | Oliver M Thomas; Helena.moreno@nola.gov; jpmorrell@nola.com; Joseph I. Giarrusso; freddie.king@nola.gov |
| **Subject:** | New Orleans Police Department Consent Decree comments |

CAUTION - EXTERNAL:

To whom it may concern,

As a resident of the city of New Orleans, I would like to say that the Consent Decree has been of great benefit to us all here. It has made for much better, more responsible and more authentic policing in the city. Still I feel there is more to be done. I would add that one of the best outcomes is that of having mobile social workers come to the scene of an 'event'.

1) a **common definition of "use of force"** would be helpful as it is wide open as it stands, so there is no accurate way to evaluate how appropriate or not the force is, nor quantitatively how much has or should be used.

2) Being r**epresented by the City of New Orleans is truly an inadequate way** to speak for the residents of our city. It represents only a few and it represents the political "machine" not the actual residents. This is a time of much innovation in policing and this needs to be added to the consent decree so as to truly "speak" for the residents (mind you, the ones most likely to be on the receiving end of policing).

3) **Conflict of interest issues:** Federal police oversight in New Orleans is being run by an official with significant conflicts of interest. David L. Douglass, currently paid by the city of New Orleans to oversee the consent decree under the direction of the Department of Justice (DOJ), founded Effective Law Enforcement for All (ELEFA), where

1

he added several former NOPD leaders to his payroll - the very people he used to oversee. This is in direct violation of <u>paragraph 464</u> of the consent decree, which prohibits monitors from accepting employment or providing consulting services that present a conflict of interest. Therefore, **new monitors in New Orleans must be selected,** free from conflicts of interest.

4) Policing is changing rapidly and in order to insure transparency and accountability it would be wise to take this moment to **change and update many of NOPD's practices**.

5) Reducing the fees for the city who is under a consent decree so they are not inclined to rush the

Thank you,
Brooke Randolph

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

2

**From:** Craig Mouney <██████████████████>
**Sent:** Friday, November 8, 2024 11:22 AM
**To:** LAEDdb_Clerk
**Subject:** Consent Decree - Submission of Public Comment
**Attachments:** 3450_001.pdf

**CAUTION - EXTERNAL:**

Please see the attached for your records.

**Craig Mouney | General Manager**
Wyndham New Orleans French Quarter
124 Royal St., New Orleans, LA 70130
██████████████████████████████████

www.wyndhamfrenchquarter.com



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1



# WYNDHAM

New Orleans - French Quarter

**November 8, 2024**

Clerk of Court,
U.S. District Court, EDLA
500 Poydras Street – Room C-151
New Orleans, LA 70130

**RE:**   Consent Decree – Submission of Public Comment

As an agent of the owner for the Wyndham New Orleans French Quarter located at 124 Royal Street, New Orleans, Louisianan, I am writing in support of the NOPD entering a "Sustainment Period" for the Consent Decree and the proposed Sustainment Plan of compliance. I understand that a "Sustainment Period" would commence for a two-year period during which the City and NOPD must demonstrate they are sustaining the remedial measures identified in the Sustainment Plan. Further, I understand that there will be continued monitoring and Court oversight during the Sustainment Period and if the City or NOPD fails to comply with the Sustainment Plan, the court will take action as appropriate.

I have worked in the city of New Orleans since 2007 and I have witnessed significant improvement in police reform and compliance in the last ten years. I feel the NOPD leadership has become more transparent, accountable, responsive and safer than the previous decade.

With continued leadership, transparency, recruitment and retention, public collaboration, increased crisis intervention teams, interrogation and photo line-ups at a 100% compliance level, 95% of stop & search compliance, marked decline of use of force, improved performance evaluations and supervision and noteworthy compliance increases in other key areas. The Public Standards and Accountability Bureau has added much needed structure and consistency to policy decisions and internal accountability.

For these reasons and more, I strongly support a Consent Decree Sustainment Period and the proposed Sustainment Plan of compliance.

Thank you for all that you do!

Sincerely,

Craig Mooney
General Manager

**From:**      Patti Lapeyre <█████████████████>
**Sent:**      Friday, November 8, 2024 2:19 PM
**To:**        LAEDdb_Clerk
**Subject:**   Consent Decree Sustainment Plan

**CAUTION - EXTERNAL:**

Dear Judge Morgan,

I am writing to ask that you please start the Sustainment Plan to begin the process of ending the Consent Decree. For the past 20 years I have been advocating for victims of crime in Orleans Parish. I remember right after Katrina, I became a victim of police detail double dipping. There was no community policing and there was not a merit based promotion system.
Today things are different! I see a new department . Though the NOPD is very short staffed, the victims I work with are of all races and economic backgrounds. They have great respect for the officers and detectives they work with.
I hope you can find reasons to trust this department the way so many of us do. The money we are spending on this consent decree could be spent on our community, with more officers and resources for the city of New Orleans.

Respectfully yours,

Patti Lapeyre

███████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Barry Rodriguez < ███████████████ >
**Sent:** Friday, November 8, 2024 2:49 PM
**To:** LAEDdb_Clerk
**Subject:** Consent Decree - Submission of Public Comment

**CAUTION - EXTERNAL:**

November 8, 2024

Clerk of Court
U.S. District Court, EDLA 500 Poydras Street – Room C-151 New Orleans, LA 70130

Re: Consent Decree - Submission of Public Comment

We are writing in support of the NOPD entering a "Sustainment Period" for the Consent Decree and the proposed Sustainment Plan of compliance. We understand that a 'Sustainment Period" would commence for a two-year period during which the City and NOPD must demonstrate they are sustaining the reforms put in place to date and continue to diligently pursue the corrective actions and remedial measures identified in the Sustainment Plan. Further, we understand that there will be continued monitoring and Court oversight during the Sustainment Period and if the City or NOPD fails to comply with the Sustainment Plan, the court will take action as appropriate. The hospitality industry is one of the largest economic generators and job suppliers in the City of New Orleans. Successful law enforcement is among the most important of civic services for employees, visitors, resident and businesses, alike. We have seen significant improvement in police reform and compliance in the last ten years. We have seen NOPD become more transparent, accountable and the public safer than the decade before. We have seen outstanding leadership, recruitment, hiring and retention increases, interrogation and photo line-ups at a 100% compliance level, increased crisis intervention teams, 95% of stop & search compliance, a marked decline of use of force, notable increases in performance evaluations and supervision and noteworthy compliance increases in other key areas. The Public Standards and Accountability Bureau has added much needed structure and consistency to policy decisions and internal accountability.
For these reasons and more the Greater New Orleans Hotel & Lodging Association strongly supports a Consent Decree Sustainment Period and the proposed Sustainment Plan of compliance.

Sincerely,
Barry Rodriguez

**Barry Rodriguez**
Director of Sales & Marketing
Hotel Monteleone
214 Royal Street

1

New Orleans, LA 70130

*Hotel Monteleone*
N E W   O R L E A N S

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**       Thorn Chen <████████████████>
**Sent:**       Friday, November 8, 2024 4:36 PM
**To:**         LAEDdb_Clerk; aburns@consentdecreemonitor.onmicrosoft.com
**Subject:**    no to sustainment on consent decree

**CAUTION - EXTERNAL:**

Dear whom it may concern:

I am writing as a resident of New Orleans of six years urging the city NOT to phase out the federal consent decree oversight period for the NOPD. The racial disparity of NOPD's policing has not gone away: as of 2023, 90 percent of the NOPD's use of force cases were against Black men. NOPD will have to do much more than they have so far to demonstrate a reversal of the egregious decades long record of misconduct that led to the enactment of the consent decree to begin with.

Best,
Hongwei Thorn Chen
Zip code 70130

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Becka McLaughlin <​████████████​> |
| **Sent:** | Friday, November 8, 2024 4:54 PM |
| **To:** | LAEDdb_Clerk; aburns@consentdecreemonitor.onmicrosoft.com |
| **Subject:** | New Orleans needs the consent decree |

**CAUTION - EXTERNAL:**

Good afternoon,

I am writing to express my strong opposition as a resident of New Orleans to any ending of the consent decree and oversight of the NOPD. I have lived in New Orleans for 15 years and have never had a positive interaction with an NOPD officer. They regularly drive recklessly for no reason (like slowly rolling towards pedestrians while staring at their cell phones) and harass residents who are just going about their lives. In addition to the extreme racial bias demonstrated by any analysis of arrests and violent incidents, I have been present at many peaceful protests where the NOPD instigated violence, even under the eye of the consent decree. I can't imagine how racist, violent, and abusive they would be without it. I was on the bridge in July 2020 when they tear gassed us and sent people panicked running, if we hadn't kept each other safe people would have been trampled or fallen over the side. I was at a student protest of high schoolers uptown in 2020 when I saw NOPD officers speeding down the sidewalk on motorcycles as children and their families jumped out of the way to avoid being hit. And I witnessed NOPD officers pushing police horses into crowds of protestors, knocking people over who were only saved from being trampled by horses by other protestors, who were then violently arrested.

These are all incidents that I have personally witnessed, I know there are many many more, and so many people with stories of being racially profiled and abused by the NOPD. All of this occurs even with the Consent Decree. Clearly the reasons for the consent decree remain. Please help keep us safe from these out of control officers.

-Rebecca McLaughlin

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**      Samantha Hinds <███████████████>
**Sent:**      Friday, November 8, 2024 5:38 PM
**To:**        LAEDdb_Clerk; aburns@consentdecreemonitor.onmicrosoft.com
**Subject:**   Extend the Consent Decree, No to Sustainment

**CAUTION - EXTERNAL:**

I am writing to strongly urge against the New Orleans Police Department's exit from the Consent decree monitor.

In 2023 alone, 90% of use of force cases were against Black men. In the last 3 years, we have seen an increase in use of force against Black women by more than 54%. This is unacceptable and demonstrates the fact that the NOPD should not be losing any oversight.

Given the long and violent history of misconduct from NOPD, we are not convinced or confident that the department will be able to maintain compliance without federal oversight.

The Black citizens of New Orleans have suffered under the brutal violence of the NOPD for far too long. The people of this city demand that the City of New Orleans and the Department of Justice hold the NOPD accountable by extending the consent decree.

Samantha Hinds

██████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

| | |
|---|---|
| **From:** | Brungard, Morgan <██████████████████> |
| **Sent:** | Friday, November 8, 2024 6:14 PM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | Comment on the Proposed Sustainment Plan in United States v. City of New Orleans, No. 2:12-cv-01924 |
| **Attachments:** | The Attorney General's Comment Letter on the Proposed Sustainment Plan.pdf |

**CAUTION - EXTERNAL:**

Dear Ms. Michel,

Please find attached the Attorney General's comment on the proposed Sustainment Plan in *United States v. City of New Orleans*, No. 2:12-cv-01924.

Many thanks,



**Morgan Brungard**
Deputy Solicitor General
Office of Attorney General Liz Murrill

████████████████████

www.AGLizMurrill.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1



STATE OF LOUISIANA
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE, LA
70804-9005

LIZ MURRILL
ATTORNEY GENERAL

November 8, 2024

**VIA E-MAIL and POST**
Carol L. Michel
Clerk of Court
U.S. District Court
Eastern District of Louisiana
500 Poydras St., Room C-151
New Orleans, LA 70130
Clerk@laed.uscourts.gov

Re: *United States v. City of New Orleans*, No. 2:12-cv-01924 (E.D. La.),
Comment on the proposed Sustainment Plan

Dear Ms. Michel:

The Court has invited the public to submit written comments (ECF No. 795) on the pending Motion for Approval of Sustainment Plan (ECF No. 793). The deadline for submitting those comments is November 8, 2024. *See* ECF No. 797. Accordingly, I write to comment on the legal interest the State of Louisiana has in this case.

The agreement that the parties have reached in the Sustainment Plan, and now ask the Court to adopt as its own order, does not get this case any closer to the objective that the Supreme Court and the Fifth Circuit have set: to restore local control. In fact, the Sustainment Plan moves this case backward, even further away from that objective. But there is no legal authority to do that. There is no ongoing violation of federal law, which means keeping the Consent Decree in place any longer unduly usurps the State's sovereign prerogative to enforce state law within its borders—authority that it delegated to the City in that area of the State. Meanwhile, the bureaucratized system that manages the Consent Decree marches on—sucking up State and City resources and enriching DC lawyers with taxpayer dollars.

It is time to restore local control. At a very, very minimum, the Court should start the two-year clock now without imposing any new injunctions beyond what the Consent Decree already requires.

I. THIS CONSENT DECREE HAS A LONG HISTORY.

In 2012, the U.S. Department of Justice (DOJ) sued the City of New Orleans and alleged that law enforcement officers of the New Orleans Police Department

1

(NOPD) maintained an unconstitutional "pattern or practice of conduct." Compl. ¶ 2, ECF No. 1. That *same day*, the City signed a contract with DOJ to remedy the allegations with a lengthy and detailed list of new NOPD policies. *See* ECF No. 2. The parties had agreed to "the nation's most expansive" institutional overhaul of a state or local government agency. NOPD Consent Decree, https://nola.gov/nopd/nopd-consent-decree/ (last visited Nov. 1, 2024). The agreement contained "a broad array of separate tasks and goals detailed in more than 490 paragraphs and 110 pages." *Id.*

The parties immediately asked the Court to adopt their contract as an order of the Court, called a consent decree. *See* ECF No. 2. The Court granted that request six months later, *see* ECF No. 159, and amended the Consent Decree earlier this year, *see* ECF No. 778. The Consent Decree provides that "the Court shall retain jurisdiction of this action for all purposes until such time as the City has achieved full and effective compliance with this Agreement and maintained such compliance for no less than two years." *Id.* ¶ 486. The parties call that two-year "no backsliding" requirement the "Sustainment Period." ECF No. 793-1 at 3.

In 2022, two years ago and about ten years after the Court first adopted the Consent Decree, the City moved to end the Consent Decree under Federal Rule of Civil Procedure 60(b)(5). *See* ECF No. 629. Rule 60(b)(5) allows a party to move to terminate "a final judgment" or "order" (like a consent decree) when the order "has been satisfied, released, or discharged" or when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

The City believed then and believes now (and I agree) that it is legally entitled to end the Consent Decree, exit the Court's supervision, and regain full and independent control over NOPD—just as the State designed. I submitted an amicus brief on behalf of the State to support the City's Rule 60(b)(5) Motion. *See* Mot. for Leave to File an Amicus Brief, ECF No. 642; Proposed Amicus Brief, ECF No. 642-1. In that brief, I explained that the State has an independent interest in ending this Consent Decree because of the federalism problems that grow larger the longer the Consent Decree stays in place. *See* ECF No. 642-1. After all, the *State* delegated authority to the City/Parish of New Orleans[1] to enforce the *State's* laws in that area of the *State*. Thus the longer the federal court continues to superintend NOPD, the greater the harm to the structure contemplated under the State Constitution and statutes and the federal Constitution.

The Court rejected the brief. *See* ECF No. 645 at 5 (concluding "that participation by the A.G. as amicus curiae is not warranted"). The Court also has indicated it disagrees with the City's Rule 60(b)(5) Motion. What the Court should have done, then, is deny the City's Motion. But for over two years now, the Court has

---

[1] The City of New Orleans and the Parish of Orleans operate as a unified city-parish government.

2

refused to rule on the City's Rule 60(b)(5) Motion, and instead pressed the City to capitulate to entering *new* consent orders.

The Court's refusal to rule put the City in a stalemate, unable to regain control of NOPD as the law requires and unable to seek appellate review of the Court's inaction. In this way, the Court has insulated its actions from review by its superior courts—while the City continues bleeding *hundreds of thousands of dollars each month* in monitoring fees, attorney fees, and the expense of the Consent Decree itself.

After two years of costly court-imposed gridlock, the City finally gave in. The City's lawyers and DOJ lawyers reached a new agreement—the "Sustainment Plan"—and have asked the Court to approve it. *See* ECF No. 793.

In response, the Court has endeavored to determine what the public thinks of the Sustainment Plan. *See* ECF No. 795 at 2 ("The public is encouraged to submit written comments to the Court . . . ."). That is an unusual move, not least because the parties in this case (including the State as amicus) are the governments that bear responsibility for representing the public interest in litigation.

As I explained in the amicus brief I filed two years ago, the State has an independent legal interest in ending this case. *See* ECF No. 641-1. That interest remains unchanged. Accordingly, I urge the Court for the reasons that follow to grant the City's still-pending Rule 60(b)(5) Motion (ECF No. 629). Alternatively, the Court should issue a ruling substantially narrowing the scope of its continued supervision, returning self-governance to the City to the maximum degree possible, eliminating all matters that exceed constitutional minimums from this case, and correspondingly deny the Motion to Approve the Sustainment Plan (ECF No. 793).

## II.    CONSENT DECREES IN INSTITUTIONAL-REFORM CASES INCREASINGLY HARM STATE SOVEREIGNTY THE LONGER THEY STAY IN PLACE.

Consent decrees are contracts between parties to a lawsuit to resolve the suit through agreement rather than litigation—much like a settlement agreement. For both consent decrees and settlement agreements, the parties can agree to more or less than what the court otherwise could order if the case went to trial. *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("Naturally, the agreement reached [in a consent decree] normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 392 (1992) (explaining that "state and local officers in charge of institutional litigation may agree to do more than that which is minimally required by the Constitution to settle a case and avoid further litigation").

What distinguishes a consent decree from a settlement agreement is that the court adopts the parties' contract as a court order. That means that each of the terms

of the contract becomes a court-ordered injunction that can be enforced as such. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) ("[E]very order of a court which commands or forbids is an injunction . . . ." (quoting Black's Law Dictionary 800 (8th ed. 2004)); *see also id.* ("defining 'injunction' as '[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury'" (alteration in original) (quoting Black's Law Dictionary 784 (6th ed. 1990))). But "while consent decrees have elements of judicial decrees, they are, at their core, contracts." *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 318 (5th Cir. 2024) (en banc).

As contracts, consent decrees are interpreted according to "'general principles of contract interpretation' as expressed in state law." *Id.* (quoting *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006)). In *Chisom*, the Fifth Circuit, sitting en banc, applied "Louisiana contract law" to a consent decree between the State of Louisiana and DOJ (among others) to resolve a dispute over the State's Supreme Court voting district centering on New Orleans. *See id.* at 313, 318 & n.1. Under Louisiana law, "the appropriate standard in assessing the satisfaction of contractual terms is 'substantial compliance.'" *Id.* (citing *Dugue v. Levy*, 114 La. 21, 37 So. 995, 996 (1904)).

Likewise here, Louisiana's "substantial compliance" standard applies to this Consent Decree. The Consent Decree governs the State's general law enforcement power that it delegated to the City of New Orleans, which in turn established NOPD. The City's and NOPD's delegated law enforcement authority exists only in Louisiana. For these reasons, there is no other State's law but Louisiana's that could possibly govern this Consent Decree.

On the "decree" side, the Consent Decree is a court-ordered permanent injunction. But not all injunctions (whether housed in an adjudicated judgment or a consent decree) are created equal. An institutional-reform injunction is far more "pernicious[]" than a garden-variety injunction because it hands over the sovereign power of state and local government institutions to the federal judiciary, which may then dictate day-to-day operations on pain of contempt costs and monitoring fees like in this case. *Allen v. Louisiana*, 14 F.4th 366, 375 & n.* (5th Cir. 2021) (Oldham, J., concurring in the judgment) (collecting cases and scholarship).

In an ordinary case, the court does not keep the case open to monitor the agency's compliance with the injunction. The court does not condition dismissal of the litigation on the agency's ability to demonstrate a record of compliance with the injunction. Instead, the case is over, and the injunction stays. The plaintiffs can return to the district court to enforce the injunction through contempt proceedings. But ordinary injunctions generally do not require defendant agencies to take vaguely-defined affirmative actions into an indefinite future.

4

By contrast, institutional-reform injunctions arising from Consent Agreements often do. *See Horne v. Flores*, 557 U.S. 433, 448 (2009) ("[T]he dynamics of institutional reform litigation differ from those of other cases." (citing Michael W. McConnell, *Why Hold Elections? Using Consent Decrees to Insulate Policies from Political Change*, 1987 U. Chi. Legal Forum 295, 317)). In particular, rather than seek an injunction to get rid of a particular law or regulation, they seek "court-ordered injunctions aimed at reforming the day-to-day operation of government institutions that are accused of committing systemic violations of law." Jason Parkin, *Aging Injunctions and the Legacy of Institutional Reform Litigation*, 70 Vand. L. Rev. 167, 176, 182 (2017) (describing "institutional reform litigation [as] a radical departure from the traditional model of litigation"). By issuing such "institutional-reform injunctions," a federal judge essentially rewrites the policy handbook for the government institution, commands the institution to replace the old handbook with the new one, and dictates monitoring and reporting structures that the institution must create and pay for. Then the judge supervises the case to ensure all of that happens.

The upshot is judicial management of state and local institutions and the re-direction of hundreds of thousands of taxpayer dollars to maintain the court-created bureaucracy. Instead of the officials who were appointed or elected for that purpose, a district court effectively become the Chief of Police (like here), the warden of a State prison, the superintendent of a school district, or even the secretary of a State child-welfare agency. Judges in charge of supervising such cases often find no detail too minute for their oversight. *See, e.g., M.D. by Stukenberg v. Abbott (Stukenberg I)*, 907 F.3d 237, 271 (5th Cir. 2018) (more than 60 remedial orders in that case). Once a court has exercised that kind of power, it is often loath to give it up. *See, e.g., Smith v. Sch. Bd. of Concordia Parish*, 906 F.3d 327, 331 (5th Cir. 2018) ("Since 1970, Concordia Parish has operated under a desegregation order entered by the Western District of Louisiana.").

In practice, release from such institutional-reform injunctions can be virtually impossible. The path to freedom is supposed to be "substantial compliance," but in reality it requires establishing a lengthy record of near-perfect (if not perfect) compliance. That is what the City and NOPD have tried here. *See* ECF No. 629-1 at 2; ECF No. 629-24 (2022 Public Hearing Remarks from Lead Monitor: "After today, assuming the Court approves our recommendations, the NOPD will be left with [only] three [out of seventeen] areas of the [Consent Decree] not yet in full and effective compliance."). Given the comments of the Lead Monitor, the Court should grant the City's 60(b) motion because it has reached the goal of substantial compliance. At a minimum, however, those seventeen areas should be returned to local control in their entirety. But instead the Court has refused to rule on the City's Rule 60(b)(5) Motion *for two years.*

5

The Founders' worry that equity would swallow federalism regrettably has legs today. No doubt, federal courts have the "responsibility[,] . . . when appropriate, [to] issu[e] permanent injunctions mandating institutional reform." *Stukenberg I*, 907 F.3d at 271. But the Supreme Court and the Fifth Circuit have long instructed courts to be wary of the potential for sliding the balance of State and federal power too far. As to the *scope* of institutional-reform injunctions, the Supreme Court has reminded courts not to confuse best practices with constitutional minima:

- In 1974, the Court reminded lower courts that the scope of institutional-reform injunctions extends only to conditions that are caused by the violation. *See Milliken v. Bradley (Milliken I)*, 418 U.S. 717, 745 (1974) (discussing the permissible scope of institutional reform injunctions).

- In 1977, the Court explained that courts "must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Milliken v. Bradley (Milliken II)*, 433 U.S. 267, 280–81 (1977).

- In 1979, the Court expressed concern that federal courts were "becom[ing] increasingly enmeshed in the minutiae of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979).

- In 1981, the Court urged lower courts to limit their injunctions to constitutional requirements "rather than a court's idea of how best to operate a detention facility." *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981) (quoting *Bell*, 441 U.S. at 539)).

- In 1984, the Court emphasized "the very limited role that courts should play in the administration of detention facilities." *Block v. Rutherford*, 468 U.S. 576, 584 (1984).

Adding to these scope limitations, the Supreme Court also has limited the duration of institutional-reform injunctions:

- In 1992, concern for "the allocation of powers within our federal system" led the Court to decree that institutional-reform injunctions "are not intended to operate in perpetuity." *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248 (1991).

- In 2004, recognizing that institutional-reform injunctions "improperly deprive future officials of their designated legislative and executive powers," the Court required that, "when the objects of the decree have been attained, responsibility for discharging the State's obligations

6

[must be] returned promptly to the State and its officials." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441–42 (2004).

- In 2006, the Supreme Court "shaped substantive federal law around the assumption that it must avoid 'permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.'" *In re Gee*, 941 F.3d at 167–68 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)).

Together, these cases reflect a consistent effort by the Supreme Court to place federalism-protecting limits on the scope and duration of institutional-reform consent decrees. Properly respected, these limits offer courts sufficient room to remedy systemic violations of federal law, while ensuring that State sovereignty is not unduly abridged. This Court's failure to rule on the City's Rule 60(b) motion has effectively denied the City its requested relief but without the Court having to show its compliance with these directives. Instead, the City has been placed in between the proverbial "rock and a hard place" with the continued pressure to enter new orders "by consent."

### III.  CONSENT DECREES IN INSTITUTIONAL-REFORM CASES ARE SUPPOSED TO BE HARD TO GRANT AND EASY TO VACATE.

Because of the sovereignty-destroying danger presented by institutional-reform injunctions (whether by consent or otherwise), the Fifth Circuit rightly has established a presumption against granting them in the first place. After all, institutional-reform injunctions allow the federal government to do what it otherwise could not: "review and veto state [and local] enactments before they go into effect." *In re Gee*, 941 F.3d at 168 (quoting *Shelby Cnty. v. Holder*, 570 U.S. 529, 542 (2013)). Congress, too, shares this concern. In the Prison Litigation Reform Act (PLRA), enacted in 1996, Congress placed firm limits on courts' abilities to grant institutional reform-injunctions as well as on the scope of these injunctions. In other words, the Supreme Court, the Fifth Circuit, and Congress are acutely aware of the federalism dangers presented by institutional-reform cases—and the law rightly tilts against the issuance (or at least toward the cabining) of institutional-reform injunctions in the first place.

Rule 60(b)(5) gives parties the ability to move to vacate consent decrees if (among other things), the party has "satisfied its obligations under the consent decree," *Chisom*, 116 F.4th at 313, or if "applying" the consent decree "prospectively is no longer equitable,'" *Horne*, 557 U.S. at 447 (quoting Fed. R. Civ. P. 60(b)(5)). The purpose of Rule 60(b)(5) is not "to challenge the legal conclusions on which a [consent decree] rests," but instead to "ask a court to modify or vacate a [consent decree]" due to subsequent changes. *Id.* (quoting *Rufo*, 502 U.S. at 384). In *Horne*, the Supreme Court established a presumption in favor of vacating institutional-reform injunctions under Rule 60(b)(5), exactly what the City requested two years ago.

7

The Supreme Court has emphasized that, "in recognition of the features of institutional reform decrees, . . . courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such decrees." *Horne*, 557 U.S. at 450 (quoting *Rufo*, 502 U.S. at 381). And that means "ensur[ing] that 'responsibility for discharging the State's obligations is returned *promptly* to [state and local] officials when the circumstances warrant." *Id.* (quoting *Frew*, 540 U.S. at 442 (emphasis added)). "[T]he rule reiterated time and again in [the Fifth Circuit] and the Supreme Court [is] that control of core legislative functions must be returned to [State and local governments] as soon as possible." *Chisom*, 116 F.4th at 319 (citing *Frew*, 540 U.S. at 441).

Importantly, the Supreme Court has decided that "the public interest" weighs in favor of federalism: "[T]he public interest is a particularly significant reason for applying a flexible modification standard in institutional reform litigation because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'" *Rufo*, 502 U.S. at 381 (quoting *Heath v. De Courcy*, 888 F.2d 1105, 1109 (6th Cir. 1989)).

And in *Horne*, the Supreme Court extended *Rufo*'s "'flexible approach' to [all types of] Rule 60(b)(5) motions addressing such decrees," both motions to *modify* (like in *Rufo*) and motions to *vacate* (like in *Horne*). 557 U.S. at 450 (quoting *Rufo*, 502 U.S., at 381). That flexibility, *Horne* said, was necessary to preserve our federalist system: "A flexible approach . . . ensure[s] that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials.'" *Id.* (quoting *Frew*, 540 U.S. at 442).

Thus, although the Supreme Court did not put an end to institutional-reform litigation altogether, *Horne* makes clear that courts must favor vacating institutional-reform injunctions under Rule 60(b)(5).

Even in the context here—a motion to approve a new consent agreement—this Court is bound by these *same* precepts. They provide a foundational legal framework for the entire case.

IV.  THE FIFTH CIRCUIT HAS DIRECTED THIS COURT AND OTHERS TO END INSTITUTIONAL-REFORM CONSENT DECREES.

State and local governments in Louisiana have endured—and continue to battle—a range of injunctions administered by federal courts that refuse to relinquish their power over sovereign State functions. This phenomenon is an affront to our federalism and the State itself. *See, e.g., id.*, at 448 (explaining institutional-reform cases like this "raise sensitive federalism concerns" because they "involve[] areas of core state responsibility").

*Chisom* is a prime example. In the consent judgment, the State disclaimed any liability but, to settle the suit and dismiss the claims, agreed to pass legislation creating a majority-Black voting district around New Orleans. *See* Mot. Dissolve Consent Decree, Ex. C at 2, 7, *Chisom v. Edwards*, No. 2:86-cv-04075 (E.D. La. Dec. 2, 2021), ECF No. 257-4. For decades, everyone agreed the State had satisfied each of its obligations under the agreement. But in 2022, after the State filed a Rule 60(b)(5) motion to vacate the judgment), this Court denied that motion and required the State to show the impossible: *future* compliance with the consent judgment. *Chisom v. Louisiana ex rel. Landry*, 85 F.4th 288, 298 (5th Cir. 2023).

Three months ago, the full Fifth Circuit "reverse[d]" this Court's denial of the State's Rule 60(b)(5) motion and "render[ed] judgment in favor of the State" recognizing that the State had fulfilled its promises and satisfied its obligations. The Fifth Circuit clarified that the standard in these cases is doubly "flexible" in favor of vacating consent decrees. *Id.* at n.3.

The Fifth Circuit also installed itself "as a check on district courts to ensure that the above principles are followed." *Id.* at 317. As the Court explained, "Supreme Court precedent instructs not only that heightened deference to the district court is unwarranted in cases like [these] but, if anything, that deference should be lessened relative to an ordinary case." *Id.* To that end, the Court reminded this District Court (and others) that "the Supreme Court requires that [courts] refrain from applying 'a Rule 60(b)(5) standard that [is] too strict.'" *Id.* at 317 (quoting *Horne*, 557 U.S. at 452).

*Chisom* was not the last reminder. In a long-running institutional reform case involving Texas' foster care system, the Fifth Circuit has scaled back the district court's injunctions again and again and again. *See Stukenberg I*, 907 F.3d 237; *M.D. ex rel. Stukenberg v. Abbott (Stukenberg II)*, 929 F.3d 272 (5th Cir. 2019); *M.D. ex rel. Stukenberg v. Abbott (Stukenberg III)*, 977 F.3d 479 (5th Cir. 2020). On remand from the last appeal, Texas filed a Rule 60(b)(5) motion arguing it had substantially complied with certain remedial orders. *See M. D. by Stukenberg v. Abbott (Stukenberg IV)*, ___ F.4th ____, No. 24-40248, 2024 WL 4471977, at *15 (5th Cir. Oct. 11, 2024). Instead, that district court left the Rule 60(b)(5) motion "pending" (much like here) and held Texas in contempt for failing to fully comply with its orders. *Id.* When Texas appealed, the Motions Panel (Elrod, Haynes, Douglas, JJ.) administratively stayed both the contempt order and the district court proceedings. *See M. D. ex rel Stukenberg v. Abbott*, No. 24-40248, 2024 WL 1651273, at *1 (5th Cir. Apr. 17, 2024). The Merits Panel (Jones, Clement, Wilson, JJ.) later replaced those administrative stays with full stays. *See M. D. ex rel Stukenberg v. Abbott*, No. 24-40248, 2024 WL 2309123, at *6 (5th Cir. May 20, 2024).

Last month, the Fifth Circuit reversed the contempt order and *directed that the case be reassigned to another district judge. Stukenberg IV*, 2024 WL 4471977, at *17. The Fifth Circuit took that opportunity (again) to issue three reminders:

(1)    "[A]s a general rule of law federal judges are not allowed to become permanent de facto superintendents of major state [and local] agencies." *Id.* at *16 (citing *Horne*, 557 U.S. at 453; *United States v. Mississippi*, 82 F.4th 387, 400 (5th Cir. 2023)).

(2)    It is never "appropriate," "under the federalist structure," "for federal court intervention to thwart [state and local governments'] self-management, where [they are] taking strides to eliminate the abuses that led to the original decree." *Id.* (citing *Horne*, 557 U.S. at 448).

(3)    "[F]ederal judges [are not] even suited, by training or temperament, to manage institutions, personnel, or the provision of vital state [and local] services, even if counselled by monitors." *Id.*

<div align="center">*    *    *</div>

*Chisom* and *Stuckenberg* stand at the end of a string of recent Fifth Circuit decisions that put the brakes on institutional-reform cases.[2] Those opinions put an exclamation point on the Fifth Circuit's efforts to restore the proper balance between State sovereignty—which includes the right to set up state and local government as States see fit under their general police powers—and federal courts' "use of equity power." *In re Gee*, 941 F.3d at 167 (quoting *Jenkins*, 515 U.S. at 131 (Thomas, J., concurring)). This Court's bottom-line obligation is to "flexibl[y]" apply Rule 60(b)(5) so that it can "promptly return[]" responsibility to state and local governments "precisely because [of] federalism." *Horne*, 557 U.S. at 452 (quoting *Frew*, 540 U.S. at 442). And it is supposed to do that "as soon as possible." *Chisom*, 116 F.4th at 319.

*Flexibility* inherently means that state and local governments deserve play in the joints, as they, in good faith, seek to satisfy the terms of an institutional-reform consent decree. By definition, therefore, it does not require perfect compliance, or even near-perfect compliance. The City cleared that flexible standard two years ago.

---

[2] *See, e.g.*, Order, *Parker v. Hooper*, No. 23-30825 (5th Cir. Dec. 6, 2023) (Stewart, Graves, Oldham, JJ.), ECF No. 44-2 (granting an administrative stay of the Remedial Order); Order, *Parker v. Hooper*, No. 23-30825 (5th Cir. Mar. 6, 2024) (Jones, Haynes, Douglas, JJ.), ECF No. 156-2 (granting a full stay of the Remedial Order "pending further order of [that] court" just two days after oral argument); Order, *Charles v. LeBlanc*, No. 24-30484, 2024 WL 3842581 at *2 (5th Cir. Aug. 16, 2024) (directing that the district court rule "on the Plaintiffs' pending cross-motion . . . within 30 days of the date of this order"; allowing the State to "renew[]" its "stay motion" or "seek[] mandamus or other appropriate relief in the event that the district court effectuates its Remedial Order without first ruling on Plaintiffs' pending cross-motion"; and making clear that the same "panel" would hear "[a]ny subsequent stay motion or mandamus petition").

<div align="center">10</div>

*Promptly* inherently means that state and local governments deserve to recover their sovereign rights immediately—but immediately upon what? When there is no longer a current and ongoing violation of the federal right at issue that warrants prospective relief. That is the limit the Supreme Court and the Fifth Circuit have set: "Once the alleged constitutional deficiency has been remedied, it is the courts' duty to bring federal control over the issue to its proper end." *Chisom*, 116 F.4th at 316; *accord Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("[J]udicial powers may be exercised only on the basis of a constitutional violation."); *Frew*, 540 U.S. at 441 (warning against "federal-court oversight of state programs for long periods of time even absent an ongoing violation of federal law").

V.    THIS COURT IS EVADING THAT DIRECTIVE BY UNLAWFULLY REFUSING TO RULE ON THE CITY'S RULE 60(B)(5) MOTION AND, IN THE MEANTIME, FUNNELING HUNDREDS OF THOUSANDS OF CITY DOLLARS TO DC LAWYERS.

The directives of the Supreme Court and Fifth Circuit are clear and apply with special force here. Federal-court supervision of NOPD infringes on the State's sovereign prerogative to enforce its own laws and decide the structure of its law enforcement system. *See Rizzo v. Goode*, 423 U.S. 362, 380 (1976) ("The principles of federalism which play such an important party in governing the relationship between federal courts and state governments" apply "where injunctive relief is sought" against officials of "an agency of state or *local government* such as [a city police department]." (emphasis added); *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983) ("In exercising their equitable powers federal courts must recognize '[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" (quoting *Stefanelli v. Minard,* 342 U.S. 117, 120 (1951))).

Continuing to infringe on the State's sovereign prerogative to enforce its own laws is no longer warranted because there is no ongoing violation of the underlying federal rights or the Consent Decree. To the contrary, DOJ agrees that "NOPD and the City have achieved compliance sufficient to enter the [two-year] Sustainment Period set forth in Consent Decree Paragraph 491." ECF No. 793 at 1. DOJ is so impressed with the "progress" the City and NOPD have made with their *voluntary* efforts *that DOJ wants the Court to adopt those efforts as court-imposed injunctions,* ECF No. 793-1 at 6. That is clearly an improper request under the above-discussed limits of this Court's authority.

Post-*Chisom*, there is no question that the legal obligation of the Court is to *end* the Consent Decree: "[T]he starting point for courts in consent-decree cases is an understanding that the decree has an end, and it is the courts' duty to ensure that control is returned to the State when that end is reached." *Chisom*, 116 F.4th at 316. Yet for *over two years*, the Court has left the City's Rule 60(b)(5) Motion languishing on a shelf. That refusal and the substantial amount of money imposed upon city

11

taxpayers in the meantime has coerced the City into negotiating a new agreement with new obligations, effectively "consenting" to a new source of authority for continuing to supervise the City and NOPD. *See Borel ex rel AL v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307, 313 (5th Cir. 2022) (holding that a party's "assumption of obligations under [a new] consent order confers remedial jurisdiction on the district court to enforce those obligations").

The Court's decision to ignore the City's Rule 60(b)(5) Motion is as unlawful as it is extraordinary. "[W]here a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue [extraordinary relief] 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–63 (1978) (quoting *Ins. Co. v. Comstock*, 83 U.S. 258 (1873)); *accord Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996) ("[A]n appellate court may issue a writ of mandamus on the ground that undue delay is tantamount to a failure to exercise jurisdiction.").

The Fifth Circuit has granted extraordinary relief when district courts fail to rule on motions within as little as seven months. *See In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (per curiam) ("[W]rit of mandamus was appropriate to address district court's seven month delay in entering judgment." (discussing *In re Hood*, 135 Fed. Appx. 709, 711 (5th Cir. 2005))). Here, two-plus years is more than "ample time to consider" the City's "pending" Rule 60(b)(5) Motion.

The Court's unlawful refusal to rule on the City's Motion has massive financial consequences for the City and NOPD. The Court-imposed Monitor filled that role with not just one *but a whole group of Washington DC lawyers* charging Washington DC rates. The monitoring team bills the City a whopping "$115,000 per month (on average)." Notice of Full and Effective Compliance with the Consent Decree 3 (Nov. 30, 2020).[3] *Today, that monthly average, multiplied by the Consent Decree's 12-year lifespan, has climbed to an estimated $16.5 million in taxpayer dollars.* In the last twenty-seven months since the City's Rule 60(b)(5) Motion has been pending (August 2022 to now), the *monitoring fees exceed $3 million dollars.* And that is only for the Monitor. Under that kind of financial extortion, the City's current request can only be viewed as *capitulation* rather than consensual.

Now add in the costs of the Consent Decree "reforms." When the Court adopted the Consent Decree in 2012, the reforms it required were estimated to cost the City "$11 million a year." Charles Maldonado, *Paying for the Consent Decree*, Gambit, Aug. 13, 2012 (updated Nov. 20, 2019).[4] Today, that estimate (multiplied by the twelve

---

[3]https://bloximages.newyork1.vip.townnews.com/nola.com/content/tncms/assets/v3/editorial/a/4b/a4bb3818-40a4-11eb-8d39-fb0b472ad9a9/5fdbbcd6bafd9.pdf.pdf

[4]https://www.nola.com/gambit/news/paying-for-the-consent-decree/article_f243a99b-bfaa-5ebc-ab67-abffef42f956.html.

years the Consent Decree has been in place), has ballooned to *$132 million*. That fact alone should be grounds for substantial revisions to the decree.

Over the last decade, the monitoring fees and reform costs together are estimated to have cost the City a jaw-dropping *$150 million dollars*, which does not include the City's attorney fees for this case.

Those millions of dollars are the very funds NOPD needs to keep the City safe. The Consent Decree, far from improving public safety, has crippled NOPD's ability to recruit and retain officers, which in turn has sent the City's crime rate soaring. As Mayor Cantrell put it in 2022 when the City filed its Rule 60(b)(5) Motion: "The consent decree handcuffs our officers by making their jobs harder, pestering them with punitive punishment and burying them with paperwork that is an overburden." WDSU News (updated Aug 4, 2022 at 9:48 PM).[5] The "main" step that would "make conditions better on the job," said the Mayor, was *"ending the federal consent decree." Id.* New Orleans would be safer and the NOPD improved if the City could have invested those $150 million (plus attorney fees) into maintaining the existing police force and recruiting top talent. Instead, the State had to send in the Louisiana State Police to provide additional police support in the City to get crime under control.

The long running institutionalizing of the Consent Decree has given birth to an *entire court-run industry* unto itself—from the DC monitoring team, to the army of lawyers litigating this case, to the many new positions and internal committees NOPD has had to create just to manage the Consent Decree—all on the City's dime.

*That system is so bureaucratized that now the monitoring team is monetizing their involvement in this case for their own benefit.* Two members of the monitoring team "co-founded" a private company, recruited NOPD's former chief and deputy chief, and solicited contracts with other police departments "to bring lessons learned in the process of reforming the NOPD to communities nationwide." Missy Wilkinson, *Federal Monitor Overseeing NOPD Consent Decree Slammed by Colleague at Public Hearing*, The Advocate, Oct. 29, 2024.[6] This year, their company successfully sold their services to Minneapolis to be the independent evaluator of its new police reforms. *Id.*

This bureaucratized system provides zero value to New Orleans or Louisiana as a whole. It funnels millions of taxpayer dollars into private pockets while leaving the public exposed to exploding crime rates and ignoring the City's attempts to end this situation through litigation. Because NOPD's "outdated records system" could not "tell the feds how much crime the city had in 2021," "[v]ictim-serving organizations" that determine their share of federal funding based on the City's crime

---

[5] https://www.wdsu.com/article/new-orleans-nopd-policy-change/40808733

[6]    https://www.nola.com/news/crime_police/zero-integrity-federal-monitor-overseeing-nopd-consent-decree-slammed-by-colleague-at-public-hearing/article_ba9b8b92-9636-11ef-af69-9f80a8888aed.html.

13

rate, "will lose out on nearly $1 million [in federal funds] this year and next year." Ben Myers, *New Orleans crime victims are losing funding. Here's why*, The Advocate, Oct. 29, 2024.[7] Had the Court decided the City's Rule 60(b)(5) Motion in due course, the City would have had a path to stopping the million-dollar monitoring fees and could have used that money for things like updating its records system. Surely Louisianans living and working in New Orleans would be better served by keeping money for a safer City and improved victim services at home and out of DC lawyers' pockets.

## VI.    The Court Should Grant the City's Pending Rule 60(b)(5) Motion and Decline the Sustainment Plan.

The City *right now* is legally entitled to end the Consent Decree because it has substantially complied. Remember, the Lead Monitor told the Court in 2022 that NOPD had fully satisfied 14 out of the Consent Decree's 17 categories, which at the very least should have substantially narrowed the City's focus. Since then, the City and NOPD have maintained that level of compliance for the two-plus years that the City's Rule 60(b)(5) Motion has been pending. That is evidenced by the parties' agreement that the City is legally entitled to start the two-year countdown toward terminating the Consent Decree. *See* ECF No. 793 at 1. *There should be no need to restart the clock.*

The Court's refusal to decide the City's Rule 60(b)(5) Motion has left the City with few paths forward. But the new agreement solves nothing and piles on *new obligations* on top of the overbloated Consent Decree, *see* ECF No. 793-1. The City, however, has already sustained the requisite level of compliance for the requisite amount of time in the two years that its Rule 60(b)(5) Motion has been pending. There is no legal basis upon which new obligations should be assumed by or imposed upon the City.

*The Sustainment Plan piles on so many new obligations that it needs a two-page spreadsheet to track the City's and NOPD's "Sustainment Plan Deadlines,"* ECF No. 793-1 at 27–28, *and another two-page spreadsheet for the "Audit Schedule," id.* at 20–21. The City, of course, will have to foot the bill for all of that. More than money, however, the City has conceded that the Court's approval of the Sustainment Plan "will render the City's [Rule 60(b)(5)] Motion moot." ECF No. 794 at 3.

*This agreement achieves nothing for the City.* In exchange for voluntarily giving up its Rule 60(b)(5) Motion and taking on new obligations and expenses, I expected that the City would have negotiated the Sustainment Plan to say that the City has reached "full and effective" compliance with the Consent Decree and that maintaining that status quo for two years would automatically terminate the Consent Decree. The

---

[7] https://www.nola.com/news/politics/new-orleans-nonprofits-federal-grants-crime-victims/article_4fd4eb3a-92e6-11ef-a2e9-cf0e31ec2e38.html.

14

Sustainment Plan instead leaves the Consent Decree's provisions for termination in place. ECF No. 793-1 at 17 ("Nothing in this Plan modifies the Termination provisions (Paragraphs 491 and 492) of the Consent Decree."). The Sustainment Plan expressly leaves "the authority of the Court," "the authority of DOJ as set forth in the Consent Decree and applicable law," and "the authority of the Monitor as set forth in the Consent Decree" to their fullest reach. *Id.* And by its own terms, the sole "purpose" of the Sustainment Plan "is to present the City and the NOPD the opportunity to demonstrate that they have the systems in place to monitor their own compliance and to take meaningful corrective actions where such monitoring identifies areas in need of improvement." *Id.* at 5.

*The City has agreed to onerous new measures and expenses in exchange for something it has been legally entitled to for the past two years.* Sadly, two years from now, the City will be in the exact same position that it was in 2022 when it filed its Rule 60(b)(5) Motion and that it is in now. If it wants to terminate the Consent Decree at that time, it will have to again follow the termination procedures in Paragraphs 491 and 492 of the Consent Decree just like it did in 2022. Paragraph 491 allows the parties "to jointly ask the Court to terminate" the Consent Decree—which is a Rule 60(b)(5) request whether joint or solo—four years "after" the first effective date (January 2013), "provided that the City and NOPD have been in full and effective compliance with [the Consent Decree] for two years." ECF No. 778 ¶ 491. In the event the parties "disagree whether the City has been in full and effective compliance for two years," Paragraph 492 allows "either party" to "seek to terminate" the Consent Decree *six years* after the first effective date. *Id.* ¶ 492. There is no end in sight, and the costs are just increasing.

Whether jointly with DOJ under Paragraph 491 or solo under Paragraph 492, the City in two years will have to file and litigate a Rule 60(b)(5) Motion, and the Court will have full discretion to decide that motion as it does any other motion. *See* ECF No. 793-1 at 4. In the meantime, the City will have paid hundreds of thousands (perhaps millions) of dollars in additional expenses and will have extended the Court's supervision for at least another two to six years.

The Court should not do that for many, many reasons.

*For one*, the Court lacks jurisdiction to make the Sustainment Plan and its new requirements an order of the Court because there is no legal injury—no ongoing violation of federal law or of the Consent Decree. That is because a court has continuing jurisdiction in institutional-reform case to do two (and only two) things: (1) "continue to issue relief to cure" the underlying "constitutional violation" only so long as it "exist[s]" and (2) "enforce" "obligations" assumed in a "consent order." *Borel*, 44 F.4th at 313.

15

Here, the Consent Decree itself took care of the original allegations of an unconstitutional "pattern or practice of conduct by [NOPD] law enforcement officers"—the very reason "[t]he United States br[ought] this action," Compl. ¶ 2, ECF No. 1—by requiring NOPD to replace its old policies with new curative policies that its officers have to follow. As for violations of the Consent Decree, the exact opposite is true. ECF No. 793 at 1 ("The Parties agree that NOPD and the City have achieved compliance sufficient to enter the Sustainment Period set forth in Consent Decree Paragraph 491."). There may be some outstanding "specific elements of the Consent Decree," EFC No. 793 at 1, but they do not warrant new injunctions aimed at satisfying an entirely different purpose, *see* ECF No. 793-1 at 5 ("The purpose of the Sustainment Period is to present the City and the NOPD the opportunity to demonstrate that they have the systems in place to monitor their own compliance and to take meaningful corrective actions where such monitoring identifies areas in need of improvement."). There is, thus, no Article III injury that could justify granting additional injunctive relief (whether by consent or otherwise).

The fact that DOJ agrees the City has reached "sufficient" compliance to start the two-year countdown to termination, *id.*, presents a different jurisdictional problem: mootness. There is no "live" controversy for the Court to decide. *Chisom*, 116 F.4th at 315; *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990) ("An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome."); *accord U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980) ("The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions."). The two-year clock started by operation of law (with or without the Court's approval), which is yet another reason the Court lacks jurisdiction to expand the Consent Decree by adopting the Sustainment Plan's new remedies.

*For another*, by asking the Court to *add new* requirements to those of the existing Consent Decree, the parties are asking to modify the institutional-reform injunction. The "label[]" the parties chose for their motion is "immaterial; a motion's substance, and not its form, controls." *Charles v. LeBlanc*, No. 24-30484, 2024 WL 3842581, at *1 (5th Cir. Aug. 16, 2024) (quoting *Moody Nat'l Bank of Galveston v. GE Life & Annuity Assurance Co.*, 383 F.3d 249, 251 (5th Cir. 2004)). That request to expand the institutional-reform injunction is itself a Rule 60(b)(5) request. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008) ("A Rule 60(b)(5) motion is the appropriate vehicle for modifying a permanent injunction that has prospective effect, regardless of whether the modification expands restrictions or eliminates restrictions in the injunction."). And along with it come that Rule's federalism-protecting presumptions in favor of restoring State and local control in these types of cases.

16

*Even if all these legal obstacles are somehow overcome, the Sustainment Plan is riddled with subjective, undefined metrics that are wholly up to subjective interpretation.* Just a few of the many examples:

- The City and NOPD are "to take *meaningful* corrective actions where [their self-monitoring system] identifies areas *in need of improvement*." ECF No. 793-1 at 5 (emphasis added). Because the Sustainment Plan does not define the term "meaningful," the Court gets to decide if the actions were meaningful enough according to its subjective view.

- In addition to requiring corrective action, the Sustainment Plan imposes *new* "remedial measures" in areas like use-of-force investigations, stops and searches, and gender-bias policing (particularly in cases involving domestic violence and sexual assault). *Id.* at 9–15. NOPD must "continue to *diligently* pursue" both "the corrective actions" and the new "remedial measures." *Id.* at 9. As before, "*diligently pursue*" is subjective and undefined, so the Court gets to decide how hard NOPD must work for its pursuit of these new measures to qualify as "diligent."

- The City and NOPD must "maintain a *meaningful* Serious Discipline Review Board ("SDRB")" and "include a *clear* policy, *practical and detailed* Standard Operating Procedures, a *consistent* meeting schedule, and *periodic* reviews by the NOPD Professional Standards and Accountability Bureau ("PSAB")." *Id.* at 6. Once gain, these italicized terms are subjective, undefined, and therefore up to the Court's subjective interpretation.

- "NOPD agrees to continue using *trustworthy* data as a *meaningful* management tool." *Id.* at 6. As before, the failure to define the italicized, subjective terms leaves it to the Court to decide whether the data is trustworthy and meaningful enough.

- An offer's "violation of law, policy, or the Consent Decree" will not terminate "the Sustainment Period provided" that (among other conditions) the violation "is not indicative of *a pattern of violative behavior*" and "NOPD is *maintaining transparency* with the Monitor and DOJ regarding the violation, the discipline, and the remedial action." *Id.* at 17. The parties could have included objective measures. Instead, the Court gets to fill in those blanks. It is also unclear what "maintaining transparency" requires. The State has laws addressing public records and public meetings that apply to these public officials.

17

What obligations beyond those are being imposed here? Must NOPD report every officer's failure to follow any NOPD "policy," no matter how small or technical (*i.e.*, "wash your hands after using the bathroom and before returning to duty")? How soon after a violation must NOPD report before it is deemed a failure to maintain transparency? What happens if the officer's violation of policy is a failure to self-report? Is NOPD on the hook for a transparency failure and therefore subject to termination?

It would have been infinitely better if the Sustainment Plan had objective measures. Objective measures would go a long way to helping the Court, the parties, and the public determine compliance.

Yet another flaw in the Sustainment Plan is that it fails to explain what happens at the end of the two years if the City and NOPD have successfully complied with the Sustainment Plan. The Plan clearly explains that the Court can pause or exit the Sustainment Period (to be restarted at a later date). *See id.* at 17. But the Plan includes *no provisions in the opposite direction*—no sunset provision for example—*while at the same time making clear that the Plan has zero effect on the Consent Decree. See* id. at 4 ("[T]his Plan does not expand the existing terms of the Consent Decree."); *id.* at 17 ("Nothing in this Plan modifies the Termination provisions (Paragraphs 491 and 492) of the Consent Decree.").

## CONCLUSION

For all of these reasons, I urge the Court to grant the City's Rule 60(b)(5) Motion or at least deny it so that the City can appeal and deny the Motion to Approve the Sustainment Plan. There is no ongoing violation of federal law, which means keeping the Consent Decree in place any longer unduly usurps the State's sovereign prerogative to enforce state law within its borders—authority that it delegated to the City in that area of the State. Meanwhile, the bureaucratized system that manages the Consent Decree marches on—sucking up State and City resources and enriching DC lawyers with taxpayer dollars. It is time to restore local control. At a very, very minimum, the Court should start the two-year clock now without imposing any new injunctions beyond what the Consent Decree already requires.

Sincerely,

Liz Murrill
Louisiana Attorney General

**From:** Brooke Duncan <████████████████████>
**Sent:** Friday, November 8, 2024 6:31 PM
**To:** LAEDdb_Clerk
**Subject:** NOPD consent decree

CAUTION - EXTERNAL:

Dear Judge Morgan—

It's time to see if NOPD can manage itself appropriately without DOJ oversight. Current NOPD management is hugely incentivized out of pride in their professionalism to demonstrate their recognition of a new era in urban policing. If they fail or even stumble, the monitors will quickly step in.

Thank you.

Brooke Duncan III
████████████
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Glenn Goodier <████████████>
**Sent:** Thursday, November 14, 2024 8:55:50 AM
**To:** LAEDdb_Clerk <clerk@laed.uscourts.gov>
**Subject:** The Sustainment Plan

**CAUTION - EXTERNAL:**

I support the Sustainment Plan to help the City of New Orleans stay on track with improvements outlined in the Consent Decree.

Glenn Goodier

████████████

**Sent from my mobile device**
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | soofia khan <█████████████████> |
| **Sent:** | Wednesday, November 20, 2024 9:01 AM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | NO TO NOPD SUSTAINMENT! |

**CAUTION - EXTERNAL:**

My name is Soofia Khan, I am a New Orleans resident. NOPD is not ready to exit the consent decree. I have concerns about racially biased policing. Almost 90% of all UOF committed against black people despite the city being 56% black. NOPD has self-determined that they are bias free based on self reported data and shoddy methods. With the recent murder of Brandon Durham in his Las Vegas home after he called 911 to report a home invasion and the police shot him we need federal oversight to protect all citizens in all states. Especially in the south with its racial diversity and history.
Additionally, PCABs have been overlooked and ignored. Not a single proposal by the PCABs has been implemented by the NOPD. NOPD provides no funding for PCABs. In fact the PCABs are funded by the community despite not being independent from NOPD.

Thank you for your time.
Soofia Khan


Please excuse errors as this email was sent via iPhone.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Tiffany French <██████████████>
**Sent:**        Wednesday, November 20, 2024 9:08 AM
**To:**          LAEDdb_Clerk
**Subject:**     No to NOPD Sustainment

**CAUTION - EXTERNAL:**

Judge,

I am a New Orleans resident and do not want the NOPD consent decree to end. Their policing is clearly still racially biased, and their use of force is higher than it was when the consent decree started. We want a civilian oversight council.

Thank you,
Tiffany French

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Ross Quinn <█████████████████████>
**Sent:**         Wednesday, November 20, 2024 9:33 AM
**To:**           LAEDdb_Clerk
**Subject:**      NOPD Sustainment

CAUTION - EXTERNAL:


Hello!

I'm a Louisiana citizen writing you to please say no to NOPD sustainment. The NOPD already has too much unrestricted power, and I think that police oversight is key to ensuring that police officers are held accountable when they do bad things, which everyone does eventually.

Thank you,
ross
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          Anisah Sahibul <███████████████>
**Sent:**          Wednesday, November 20, 2024 11:43 AM
**To:**            LAEDdb_Clerk
**Subject:**       NOPD Consent Decree

**CAUTION - EXTERNAL:**

My name is Anisah Sahibul. I am a New Orleans resident. NOPD is not ready to exit the consent decree. I have concerns about the following:

1. PCABs have been overlooked and ignored. Not a single proposal by the PCABs has been implemented by the NOPD. NOPD provides no funding for PCABs. In fact the PCABs are funded by the community despite not being independent from NOPD.

2. This move to sustainment by the federal monitors constitutes a conflict of interest. Federal monitor Douglass could financially profit from NOPD moving to sustainment.

3. NOPD needs to stop its attack on immigrants. New NOPD policy allows officers to collaborate with ICE to pick up community members with immigration flags. Additionally non-English speaking community members report being dismissed or further abused by NOPD because of a language barrier.

4. NOPD practices racially biased policing with nearly 90% of all UOF committed against black people despite the city being 56% black. NOPD has self determined that they are bias free based on self reported data and shoddy methods.


Regards,


⎯⎯⎯⎯
Anisah Sahibul (she/they)
M.S. in Psychology
B.S. in Neuroscience and Psychology
████████████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**      Bernstein, Daniel I <███████████████>
**Sent:**      Wednesday, November 20, 2024 2:06 PM
**To:**        LAEDdb_Clerk
**Subject:**   NOPD Consent Decree

**CAUTION - EXTERNAL:**

Dear Court Clerk,

I am resident of New Orleans and a professor at Tulane University and I am deeply concerned over the possibility that our police department's consent decree may be overturned. Please do not let this happen. We NEED federal oversight to keep our police department in check. Even with the current consent decree, there have been many instances of brutal police misconduct that gets covered up by the department. I shudder to think of the unchecked police brutality that's to come if we loose federal oversight. Please KEEP our consent decree.

Best,
**Daniel Irving Bernstein, PhD**
Assistant Professor of Mathematics
Tulane University
███████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**     Nathan Moore <█████████████████>
**Sent:**     Wednesday, November 20, 2024 7:20 PM
**To:**       LAEDdb_Clerk
**Subject:**  NO TO NOPD SUSTAINMENT

**CAUTION - EXTERNAL:**

My name is Payton Rayne; I am a born a raised resident of the bayou state that be our home Louisiana more specifically Shreveport, La. NOPD is not ready to exist the consent degree. I personally have concerns with 1) PCABs- they have been overlooked and ignored. Not a single proposal by the PCABs has been implemented by the shameful nopd. NOPD provides no funding for the PCABs. In fact PCABs has been completely funded by the community despite not being independent of NOPD. 2) This move to sustainment by the federal monitors constitutes a conflict of interest. Federal Monitor Douglass could financially profit from NOPD moving to sustainment. 3) NOPD needs to stop its attack on immigrants. New NOPD policy allows officers to collaborate with ICE to pick up community members with immigration flags. Additionally non-english speaking community members report being dismissed or further abused by NOPD due to a language barrier. Furthermore im asking that the city of nola announce itself as a sanctuary city for lgbtq+ people and their community as the queer community also is expected to face harmful hate based behaviors if sustainment is allowed. 4) NOPD still to this very moment practicing racially based policing with nearly 90% of ALL UOF committed against black people despite the city being 56% black. NOPD has self-determined that they bias free based on self reported data and shoddy methods. These issues are deeply concerning seeing as the city of New Orleans is represented as one of the most diverse cities in our nation but yet this so called diverse nation is using racist, sexist, biased, homophobic, & transphobic policies to attack and discriminate against these marginalized communities.  How can the people meant to protect us use racist, hate based methods to protect us? This attempted at moving into sustainment shows the community of New Orleans and the wider community of Louisiana that NOPD IS NOT READY TO MOVE OUT OF THE CONSENT DEGREE! NOPD's over aggressive use of violence against these marginalized groups and the activist fighting to uphold justice, truth and equality within the city of New orleans shows us that the nopd has yet to develop a peace fulfilling passive way of protecting the people of New Orleans or the greater community of Louisiana. With NOLA being one of the largest cities in our state why are they not also the leading policing agency leading the way for peace, truth, and justice. NOPD IS NOT READY FOR SUSTAINMENT. END RACIST POLICING!

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Lionel Bailey <██████████████> |
| **Sent:** | Thursday, November 21, 2024 6:15 AM |
| **To:** | LAEDdb_Clerk; Ashley Burns; Charles Rice; governor@louisiana.gov; mayor@nola.gov; constituentservice@ag.louisiana.gov; Congressman Troy Carter; Harris, Sen. Jimmy (District Office); Helena N. Moreno; info@voiceoftheexperienced.org; info@promiseofjustice.org; info@innocenceproject.org; lesterlove@thecityoflove.com; SectionL; Simone Smith; jwilliams@theadvocate.com; poet.wolf@theadvocate.com; swind@coloradotech.edu |
| **Subject:** | NOFIPRJP CEO Public Comments |

**CAUTION - EXTERNAL:**

To Whom It May Concern:

Please find the attached opposition to the A.G. requests somewhat self explanatory.

With best regards, I am

Sincerely,
Lionel Bailey, NOFIPRJP CEO

https://docs.google.com/document/d/1_NdbkeYAlbQQZwPQKG_g2c-97IsZuk-T8pczfZW74tI/edit?usp=drivesdk

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Charlotte Clarke <noreply@adv.actionnetwork.org>
**Sent:** Sunday, November 24, 2024 9:29:19 PM (UTC+00:00) Monrovia, Reykjavik
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Subject:** Say NO to Ponzi Police Reform

**CAUTION - EXTERNAL:**

Judge Susie Morgan,

I'm very concerned at the conflicts of interest of Effective Law Enforcement for All (ELEFA), paid consent decree monitors who are disturbingly intertwined with police advocates in New Orleans and Minneapolis.

I write to oppose the end of the consent decree. I also demand that the Department of Justice conduct an investigation into all DOJ, NOPD, and Minneapolis employees that are now affiliated with ELEFA, and that new monitors in New Orleans and Minneapolis are selected, free from conflicts of interest.

Those overseeing the practices of the police should not be advocates for the interests of the police, but should instead be critical of our overinvestment in reactive safety measures. We deserve oversight from people who are willing to question why there have been increases in police use of force, not minimize the harm caused.

Thank you for your attention to this issue.

Charlotte Clarke

**From:**        Phoebus Apollo <​███████████████████>
**Sent:**         Friday, November 22, 2024 11:20 AM
**To:**             LAEDdb_Clerk
**Subject:**      Consent Decree

**CAUTION - EXTERNAL:**

I'd like to express my thoughts that the consent decree not be revoked. I think as important as it is that people are held accountable for their actions that police officers are also held accountable for theirs. I believe that any person in a position of power should also be aware of the responsibility of that power. I believe that that position should be incentivized to do the right thing no matter at what and that in choosing to do the wrong thing there are repercussions for actions. I believe that US citizens deserve the right to live out their lives with honor and dignity and that wrongdoing on their part should not be assumed. I believe that all hidden things come to the light eventually and that if someone is acting against the rights of humanity that those things will make themselves clear in time. I believe that if police officers are allowed to interfere into people's lives without just cause, it will create a larger gap of distrust with the individual s tasked with protecting and even more so serving the people. I think that a police officer's incentives should not be to find a problem but to solve a problem. I personally would like to see the police force more involved with community engagement and more money be funneling into building up communities and providing opportunities for people to get out of their situation and that some of the ways that policing is done does quite the opposite. I think that if people want Justice then we need to focus on the people who have been hurt and who have very little. We need to focus on the pain and suffering of people who the system has failed to serve. who the system has failed to serve or who have had to undergo severe limitations and traumas. I believe that providing a way out of their situations is a far better avenue than providing a way in for police to infiltrate their lives. Please I hope you find it in your heart to protect these people. Please, I hope that you find it in your heart to recognize that growth is not linear and that anyone can rise above their missteps. I think in many cases, not all, growing and healing within communities outside of the prison system and allowing people to have the opportunity to show their good side in a place where there are ways out is paramount. Thank you for taking the time to read these thoughts.

Apollo

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**      Tiernan Barrie <██████████████>
**Sent:**      Friday, November 22, 2024 11:57 AM
**To:**        LAEDdb_Clerk
**Subject:**   Comment on NOPD Consent Decree

CAUTION - EXTERNAL:


Hello,
I am writing to submit a comment on the upcoming determination of whether the NOPD can exit its
consent decree. I have a number of concerns about it doing so, including that expert
recommendations for the department's reform have been ignored, primarily from PCABs. I am also
aware that there is a conflict of interest on the part of Federal monitor Douglass by which he could
financially benefit from sustainment.
In addition, I recently read a report which examined the UOF data from the NOPD and was alarmed
at the very clear racial bias that exists in their policing. NOPD should not be allowed to exit the
consent degree until they fix what is an obvious and dangerous problem in their operations.
Thank you for extending the comment period and allowing me to voice my concerns.
Best,
James Barrie
Orleans Parish resident
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when
opening attachments or clicking on links.

**From:**
**Sent:** Saturday, November 23, 2024 4:06 PM
**To:** LAEDdb_Clerk
**Subject:** Project Nola, no policy, and still violating our rights

**CAUTION - EXTERNAL:**

Why are we still looking the other way? The city is still using project Nola, and project nola claims to use facial recognition on their site.

Facial Recognition

$350

Annual Upgrade Fee

Upgrade any Project NOLA Crime Camera to automatically search for active gang members, violent offenders, wanted subjects, missing adults and missing or exploited children

CALL NOW

who tells him these people? NOPD tells him thats who - how does work? NOPD just tells him whos in a gang? gangs is a term for black groups...so he targets blacks? violent offenders? why does he have this list - why cant we all? wanted subjects? is he the police? exploited children? does he work with the fbi????

Project nola is not subjected to the laws governing municipal parties. They actively use facial recognition, and the NOPD or the city have no policy with project nola. NOPD continues to violate the decree by working with them to get free facial recognition. and i bet you cant find one written policy against it!

project nola is clearly targeting black and brown communities. every image posted on their website is a person that is a minority. newsflash, not every black man has a gun or drugs on them despite how the site portrays us

1

now the city is allowing them to put private cameras on public streets. they put a trailer out for the swift concern and it is still out there today. why does a private company, who has no agreement with the city or NOPD even have the ability to put out a camera and track us. if the NOPD was wrong years ago for not having a policy with LSP for facial recognition, why is the lack of a policy with project nola any different? did he get a permit from the city? i cant put anything on city property without a permit- can he? is it because hes special or white?



and even the recent story in the news - who are these people and how are they used? a photo was placed of an alleged suspect before NOPD even had a case, but because this wannabe cop brian lagarde sent the photo to nola.com it made the paper.

mr lagard has documents and agreements with other cites, why does he not have one with new orleans? how is this possible? who are the people that have access to these cameras? who checked their connections? i suspect they are all white and racist because there isnt one white person on the site committing a crime.

then why is he allowed to also make false claims about what he has done, for other business opportunies? he claims project nola reduced the homicide rate in 2018, but we had the highest since katrina in 2023...can we also blame him?

as you can see there is no accountability for NOPD and their secret partners. i have written the OIG, IPM, and DOJ about this fake cop and his fake business. he was compensated by his own nonprofit over $170k in 2023...the same year we had the worst murder rate.

**Compensation**

| Key Employees and Officers | Compensation | Related | Other |
|---|---|---|---|
| Bryan Lagarde (Exec Director) | $175,385 | $0 | $0 |
| Hope Lagarde (Board Member) | $0 | $0 | $0 |
| Lawrence Lagarde (Scretary) | $0 | $0 | $0 |

+ View more people

so where is judge morgan? how has this been allowed? why the blind eye? why the pretending to say NOPD is doing better? they still use a for profit company that has no agreements with the city all the while he makes 6 figures?

go look at his site, or better yet let me help...you will see the similarities....a buncha people (likely just this one guy who was never good enough to be the police) who has never ever been on trial or had to testify...but watches lots of law and order and plays cop. if he has a staff what does he pay them? all he says is 'we' but at the end of the day "HE" is a voyeur who is obsessed with personal recognition. Law enforcemnbt is a selfless profession, cops never take credit for their hard work, but this narcissist does.

| (A) Name and title | (B) Average hours per week (list any hours for related organization below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee; | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) BRYAN LAGARDE<br>EXEC DIRECTOR | 40.00 | x | | x | x | x | | 175,385 | 0 | 0 |
| (2) HOPE LAGARDE<br>BOARD MEMBER | 10.00 | x | | | | | | 0 | 0 | 0 |
| (3) LAWRENCE LAGARDE<br>SCRETARY | 20.00 | x | | x | | | | 0 | 0 | 0 |
| (4) THOMAS MASILLA<br>TREASURER | 5.00 | x | | x | | | | 0 | 0 | 0 |
| (5) JOSEPH AGUDA<br>BOARD MEMBER | 2.00 | x | | | | | | 0 | 0 | 0 |

hes probably committing tax fraud yet yall just let him break the law. why is it okay for him to record my lic plate or my face on his servers? im well aware i have no right to privacy in public, but what governs him on how he handles my rights? can he just decide to publish a video on facebook if he wants? what stopps him from retaliation against someone else? he brags about how cheap his solution is while rolling in cash.

at the end of the day, we are supposed to look back and see how far NOPD has come since the consent decree, but we are supposed to ignore how they have gone around judge morgan with project nola? its even in the paper that the LSP use him for Troop NOLA, in NEW ORLEANS, to reduce crime in NEW ORLEANS --- and none of this without an agreement.

if this obvious public defiance of the consent decree is so big, then i have to believe the other violations are just as bad, but you want us to look the other way? the NOPD should be under consent decree forever. they are no better wtih their lies today than they were under serpas and landreu. those two brought this here to be the white knights for votes, and leave it a mess for the others.

im tired of being forced to just give into things. i have a hard enough time in life working two jobs and raising 3 boys with my wife while worrying about being the target of anyone because of the color of my skin....and now i have to worry about a system that is used by NOPD that targets people that look like me, by a man who just wants to play cop, but live the life of a king!

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Roger Erazo <████████████████████>
**Sent:** Saturday, November 23, 2024 5:45 PM
**To:** LAEDdb_Clerk
**Subject:** Immigrant workforce

**CAUTION - EXTERNAL:**

With great respect and appreciating your wise decisions, it is my duty to address your lordship and give my point of view on the actions that the new government will take starting January 20, 2025, forever New Orleans is the multicultural city rich in history, the immigrant Latino population is mostly honest, hard-working people, respectful of the laws of this great country, a country where we have known how to love, respect and defend if it were our turn to do so, many are parents who educate their children in state schools and making great and future good citizens who will study so that the country continues to be great, the Latino population is a very important part in the development and prosperity of Louisiana we pay taxes and work in construction sites or in different positions where citizens do not work, the family must stay together, the United States is a multicultural country of immigrants where history has taught us that great personalities have been part of generations that came to make a new life and that as a result many Latinos of those generations are part of the armed forces that with great  proudly defended and gave their lives for this country, let us continue to be part of the history of what we consider our new country. May God bless you and guide you to make wise decisions.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Pablo M. Zavala <▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Sent:** Saturday, November 23, 2024 7:11 PM
**To:** LAEDdb_Clerk
**Subject:** Please keep the Consent Decree between the DOJ and NOPD
**Attachments:** Please keep the Consent Decree between the DOJ and NOPD

CAUTION - EXTERNAL:

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**        Pablo M. Zavala <███████████████████>
**Sent:**        Saturday, November 23, 2024 7:11 PM
**To:**          LAEDdb_Clerk
**Subject:**     Please keep the Consent Decree between the DOJ and NOPD

Dear Clerk of Court,

I am extremely concerned about the possibility of the lifting of the Consent Decree that the Department of Justice imposed on the NOPD years ago. I urge our leaders to keep the Consent Decree in place.

I am a resident of New Orleans; my zip code is 70117.

Best Regards,
Pablo Zavala

Pablo Zavala
████████████████

1

**From:**      Carlos Rodríguez < ███████████████████████ >
**Sent:**      Sunday, November 24, 2024 5:05 PM
**To:**        LAEDdb_Clerk
**Subject:**   Hello, good afternoon, please do not remove the law. We are hard-working people who contribute to the community of New Orleans, Louisiana, with all due respect, Mr. Judge. Please help the immigrant community, God bless you.

**CAUTION - EXTERNAL:**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** Edith Romero <███████████████████>
**Sent:** Monday, November 25, 2024 7:27 PM
**To:** LAEDdb_Clerk <clerk@laed.uscourts.gov>
**Subject:** Stop the sustainment period

**CAUTION - EXTERNAL:**

Hello,

As a resident of New Orleans I write to oppose the sustainment of the consent decree. I also demand an investigation into the escalating use of force by NOPD and the conflicts of interest with our monitors.

Thank you,

Edith R

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Carmen Vescia <███████████████>
**Sent:** Tuesday, November 26, 2024 10:12 PM
**To:** LAEDdb_Clerk <clerk@laed.uscourts.gov>; community.nola@usdoj.gov
**Subject:** Do not sustain the consent decree -- NOPD needs oversight

**CAUTION - EXTERNAL:**

To whom it may concern:

My name is Carmen Vescia, and I live in New Orleans. I am writing to urge you to continue federal oversight of NOPD. They are still non-compliant with constitutional policing, and that puts our community at risk. We deserve a safe and just city, and the consent decree helps hold NOPD accountable until that goal is reached.

Thank you,

Carmen
███████████████████████

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:**          N.O. COP < ██████████████████ >
**Sent:**            Friday, November 29, 2024 7:52 AM
**To:**              LAEDdb_Clerk
**Subject:**      PUBLIC COMMENT: ANONYMOUS (7th Ward)

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Anonymous (7th Ward)
"Police make certain comments towards homeless people and target them specifically. They'll get on homeless people for "obstructing the sidewalk," but tourists will be doing the same thing, and the police won't say anything. This is just one example of police bias. They make a lot of comments towards Black people–the statistics [about use of force] don't surprise me because that's how the police treat Black people. This is why we can't let the NOPD get out of [the consent decree]."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 24th, 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        N.O. COP &lt;███████████████&gt;
**Sent:**        Friday, November 29, 2024 7:55 AM
**To:**          LAEDdb_Clerk
**Subject:**    PUBLIC COMMENT: Renata Tarré

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Renata Tarré ███████████

"I'm a teacher, and I'm concerned when I see 18 year olds get life sentences; even when 18 year olds get 20 year sentences, it causes them to lose hope and forces them to experience violence and terrible things in jails. I have worked in jail, and it is almost all populated with Black people and people who do not speak English. These police are supposed to be experts in restorative justice, but their main instinct and main attitude is just to call people guilty. It's all a farce, how they treat immigrants. I teach at the International High School and have worked as an interpreter as well. I see the same things happening in the school system, particularly to kids who don't speak English, and this city is not equipped to treat Hispanic people fairly. I have lived here for four years, and I notice that California is better prepared to handle Spanish speakers. Losing the consent decree is worrying because it will just make these problems worse."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 24th, 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | N.O. COP <██████████████████> |
| **Sent:** | Friday, November 29, 2024 7:57 AM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | PUBLIC COMMENT: Anonymous (6th Ward) |

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Anonymous (6th Ward)
"I've seen police turn off their cameras. I also have a question, are we allowed to record police officers when they talk to us? This new law against recording [within 25 feet] is also harmful for our community. I am against sustainment because the NOPD needs supervision to stop their racist attitudes and stop mistreating our immigrant community."

This comment was made by a New Orleans resident and collected by a NOCOP canvasser on November 24th, 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | N.O. COP <███████████████> |
| **Sent:** | Friday, November 29, 2024 7:59 AM |
| **To:** | LAEDdb_Clerk |
| **Subject:** | PUBLIC COMMENT: Anonymous (5th Ward) |

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Anonymous (5th Ward)
"I'm with what this report is saying 100%. All the statistics in this report about NOPD racial bias. That's why the police should stay in this [consent] decree."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 24th, 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**        N.O. COP < ████████████████ >
**Sent:**        Friday, November 29, 2024 8:03 AM
**To:**        LAEDdb_Clerk
**Subject:**        PUBLIC COMMENT: Anonymous (6th Ward) #2

**CAUTION - EXTERNAL:**

PUBLIC COMMENT:

Anonymous (6th ward) #2
"I see police people being racist to people out on the street all the time. Sometimes I don't want to speak up because police shot a kid one time while we were out playing basketball. He was defending his friend because they accused his friend of stealing. The kid was Black and Latino. I see police people being racist to Hispanics but I just let it be because I don't want to get shot or jailed."

This comment was made by a New Orleans resident and collected by NOCOP canvassers on November 24th, 2024.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:** cameron <█████████████████>
**Sent:** Friday, November 29, 2024 10:39 PM
**To:** LAEDdb_Clerk
**Subject:** Consent Decree

**CAUTION - EXTERNAL:**

Dear Judge Morgan,

I am writing to express my disagreement with the motion for a sustainment period to exit the consent decree. As it is, NOPD is not complying with federal decrees, as evidenced with some statistics from 2023 as provided by the Professional Standards and Accountability Bureau (August 2023 + January 2024), Federal Consent Decree Monitors Report (June 2024), and more:

- About 90% of NOPD's use of force was against Black people, despite only 56% of the city population being Black
- 90% of stop-and-frisk searches for firearms during Mardi Gras targeted Black civilians
- NOPD use of force against Black women rose by 54%
- NOPD subjected Black people to force at 11 times the rate of white people

Additionally, I have seen my Brown peers get kicked in the head by NOPD police horses as well as get hit in the back by an NOPD car that was trying to plow their way through a group of people at a protest. I, along with many other concerned New Orleans residents, demand an end to NOPD's racist policing, and the first step is increased accountability of the police to the people. This cannot be attained if there is a move to exit the consent decree. Therefore, I say NO to sustainment.

Thank you for your time.

Sincerely,
Cameron M.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**From:**       stephanie.crean█████████████
**Sent:**       Friday, November 29, 2024 10:00 PM
**To:**         LAEDdb_Clerk
**Subject:**    New Orleans Consent Decree

CAUTION - EXTERNAL:


Dear US Courts,
I am writing to demand that you reject the New Orleans Police Department's attempt to end the
consent decree it is under and enter into sustainment. The New Orleans Police Department is
attempting to enter into sustainment with the argument that it has accomplished all of the decree
objectives, but it is far from that goal in practice. The NOPD still is not communicating with the
communities it polices, and the systemic racism and xenophobia that the decree was made to combat
have not been abolished from NOPD Policing. Additionally, the accountability that the decree
provides is essentially to combating racism and police brutality in the city. Removing the decree
would mean losing all of the progress the decree was meant to achieve.

From,
Stephanie Crean
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when
opening attachments or clicking on links.

**From:**      Steph Bee <███████████████████>
**Sent:**      Saturday, November 30, 2024 12:29 AM
**To:**        LAEDdb_Clerk
**Subject:**   Public Comment for NOPD Consent Decree

**CAUTION - EXTERNAL:**

Dear US Courts,
I am writing to ask that you deny sustainment for the New Orleans Police Department and ask that you keep the consent decree they are under. We need police accountability.

From,
Stephanie Crean

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.