UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>      **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1924** |
| **CITY OF NEW ORLEANS,**<br>      **Defendant** | **SECTION "E"** |

### ORDER AND REASONS

In November 2024, Superintendent Anne Kirkpatrick shared the results of the New Orleans' Police Department's ("NOPD") most recent promotions examination for Captains and Majors with Mayor LaToya Cantrell prior to announcing the rankings to her officers. The Mayor expressed concern that some of the New Orleans Police Department Deputy Chief evaluators[1] may have been biased in their evaluations. The Superintendent promptly brought the matter to the attention of the Monitor, the Department of Justice, and the City Attorney, and explained that the NOPD planned to perform additional diligence to assess whether there may have been bias in the NOPD portion of the evaluation process.

NOPD's additional diligence primarily involved engaging five law enforcement leaders from outside New Orleans to conduct a "Test/Retest Reliability Assessment" to evaluate the possibility that NOPD's evaluations were biased. A "test/retest reliability

---

[1] As detailed below, the promotions process approved by the Monitor, the DOJ, and the Court called for a two part assessment. *Part 1* is conducted by the City of New Orleans Civil Service Commission. *Part 2* is conducted by a panel of NOPD Deputy Chiefs. The Deputy Chiefs who conducted the Part 2 assessment were Deputy Chief Keith Sanchez (Public Integrity Bureau), Deputy Chief Lawrence Dupree (Office of the Superintendent); Deputy Chief Jonette Williams (Management Services Bureau); Deputy Chief Hans Ganthier (Field Operations Bureau); Deputy Chief Ryan Lubrano (Investigations and Support Bureau).

1

assessment," as the name implies, is a test to assess the reliability of an original evaluation.

The five outside assessors were tasked with reviewing the materials submitted by the promotions candidates and coming up with their own independent scores and rankings using the same rules and processes as the NOPD Deputy Chiefs. Importantly, the outside assessors were not engaged as substitutes for the NOPD Deputy Chiefs, but rather solely as a check for bias. It was understood by the parties – and the Court – that, if the outside Reliability Assessment revealed no evidence of bias, the NOPD would move forward with its promotions *using the original New Orleans Police Department Deputy Chief rankings*.[2]

At the same time the outside assessors were conducting their evaluations, the Court directed the Monitors to conduct their own review of the NOPD Deputy Chiefs' results on Part 2 of the promotions examination.[3] Such reviews are contemplated by the Consent Decree.[4] The Monitoring Team's work included reviewing the NOPD Deputy Chiefs' scoring as well as the materials upon which the scoring was based. The Monitoring Team also reviewed the work product of the outside assessors.

---

[2] The Superintendent made this point in an email to all NOPD Deputy Chiefs, Captains, and Lieutenants on November 11, 2024: "The outside analysis will begin next week and should be completed within two weeks. While it is ongoing, we will pause all promotions to Captain and Major. But we are NOT throwing out the current rankings. And I have just been notified tonight that the Civil Service Commission has decided to extend the list for 3 years. *If the outside analysis demonstrates that the process was conducted in accordance with the approved rubric, we will promote from the current list (subject to the results of the cheating investigation, described below).*" (emphasis added)

[3] The Consent Decree covers NOPD's performance evaluations and promotions process in Section XIV. *See* R. Doc. 778.

[4] The Monitoring Team has authority to conduct – and is responsible for conducting – "compliance reviews or audits as necessary to determine whether the City and NOPD have implemented and continue to comply with the material requirements of this Agreement." R. Doc. 778 at 447. The Consent Decree expressly covers performance evaluations and promotions in Section XIV.#

**The City's Review**

The Court held a status conference with the parties on January 21, 2025, at which the Superintendent, the City Attorney, counsel for the United States, and the Monitor participated. At the status conference, the Superintendent shared the results of the reliability assessment performed by the outside assessors, as well as NOPD's review of those evaluations. The Superintendent confirmed the two groups (the NOPD Deputy Chiefs and the outside assessors) came to very similar conclusions during their respective Part 2 analyses, and that the outside assessors' work did not reveal or even suggest bias on the part of the NOPD Deputy Chiefs. The City offered no contrary evidence.[5]

**The Monitor's Review**

The Monitoring Team completed its review in December 2024. In a letter to the Court dated January 20, 2025, the Monitoring Team provided relevant background, explained the Monitoring Team's review methodology, and shared their observations. The Monitoring Team's letter is attached to this Order as Attachment A.

The Monitoring Team's letter begins by explaining the process agreed upon by the parties and approved by this Court for conducting promotions exams. The explanation is worth quoting at length:

> To comply with its Consent Decree obligations, the NOPD long ago worked with the Monitoring Team and DOJ to develop a promotions process that (a) met NOPD's internal needs and (b) met NOPD's obligations under the Consent Decree. The process approved by the Monitoring Team and DOJ – and still controlling today – includes two parts:
>
> **Part 1**, conducted by the New Orleans Civil Service, involves a written, multiple-choice exam and an oral, scenario-based

---

[5] DOJ likewise confirmed it was not aware of any evidence of bias. DOJ further confirmed the Monitoring Team's letter included as Attachment A accurately summarized the background of this matter.

3

> assessment conducted by outside law enforcement professionals.
>
> **Part 2**, conducted by NOPD Deputy Chiefs, includes a review of each officer's Performance Evaluations, Discipline, and Job History.[6]
>
> Each part determines one-half of a candidate's score.[7] Each of the three elements of the NOPD Deputy Chiefs' Part 2 evaluation is worth one-third of the total Part 2 score.
>
> As discussed below, Part 2 of the evaluation process performed by NOPD Deputy Chiefs was crafted to ensure fair, consistent, and merit-based evaluations of promotions candidates using objective factors to the extent practicable. Two of the three elements of the Part 2 evaluation – Performance Evaluations and Discipline – are entirely objective. In contrast, the Job History element of Part 2 allows for some subjectivity consistent with the guidelines reflected in the scoring rubric.

This is the process the City, NOPD, and DOJ agreed would guide promotions.[8] Any deviation from this approved process without the Court's approval will constitute a violation of the Consent Decree.

The Monitoring Team's letter goes on to recount that the approved process was first used by the NOPD for its 2021 Captains exam. The Monitoring Team reviewed the process at that time to ensure it was implemented consistent with the City's commitments, and found that it was. The New Orleans Independent Police Monitor also

---

[6] The original process approved by DOJ and the Monitoring Team also included an interview with a panel of NOPD Deputy Chiefs. In 2023, in an effort to reduce the perception of potential bias, and with the permission of the Court, the Monitoring Team, and DOJ, NOPD moved the interview component from Part 2 to Part 1 of the evaluation process.

[7] While Part 1 and Part 2 of the promotions evaluation process each is worth one half of a candidate's score, because the Civil Service adjusts a candidate's score based on how the score compares to all other candidates (i.e., Civil Service grades candidates on a curve), a candidate's Part 1 score actually influences a candidate's final ranking far more than his/her Part 2 score.

[8] In late June 2024, the Monitor reviewed the Civil Service test, developed by outside experts, before it was administered and identified nothing unreasonable or that conflicted with the Consent Decree.

reviewed the process and likewise concluded that the approved process was implemented fairly and properly.[9]

According to the Monitor, "While some officers in their communications with the Monitoring Team continued to express concern that any process that used NOPD Deputy Chiefs as evaluators is inherently biased, most agreed the new process was a vast improvement over the Department's prior approach."[10]

**The Monitor's Observations**

After providing the relevant background, the Monitoring Team described its review process and set out its observations. In relevant part, the Monitoring Team observed the following:

- "The Deputy Chiefs undertook their evaluations consistent with the process approved by the Court, the Monitor, and the DOJ, and consistent with the approved evaluation rubric developed to promote consistent and fair evaluations."

- "The Monitoring Team believes the findings of the outside assessors reveal no credible evidence of bias in the NOPD Deputy Chiefs' Part 2 evaluations."

- "The Monitoring Team's review found that the Deputy Chiefs followed the approved process, adhered to the approved scoring rubric, and conformed to the Consent Decree. We also found that the Deputy Chiefs were internally consistent in their evaluations. The Monitoring Team found no evidence the Deputy Chiefs were biased in their Part 2 assessment of the candidates for captain and major."[11]

The Monitoring Team identified one error on the part of the NOPD Deputy Chiefs. The NOPD Deputy Chiefs inadvertently failed to count one disciplinary event for one candidate for Major. The Monitor informed NOPD of the error and its impact. NOPD

---

[9] Https://nolaipm.gov/wp-content/uploads/2021/11/OIPM-Report-NOPD-Police-Captain-Promotions-2021.pdf
[10] Attachment A hereto.
[11] *Id.*

agreed with the Monitor's assessment and committed to correcting the error prior to making any promotions.

Having considered the comments of the parties and the Monitoring Team at the status conference, the Monitoring Team's letter, the NOPD Part 2 evaluation materials, the work product of the NOPD Deputy Chiefs and the outside assessors, and the relevant policies, procedures, and scoring rubrics, the Court agrees with the Monitoring Team's observation that there is no evidence of bias in the scoring of Part 2 of the Captain or Major exams. Indeed, it appears to the Court that the NOPD Deputy Chiefs took their task seriously and did a commendable job.

**<u>The Cheating Allegations</u>**

Subsequent to NOPD's decision to conduct additional diligence regarding potential bias in Part 2 of the Captain and Major promotions process, NOPD received several anonymous complaints alleging that one or more NOPD officers cheated on *Part 1* of the promotions exam (the portion administered by the City of New Orleans Civil Service Commission) by revealing or receiving questions and/or answers to the scenario-based portion of the exam. NOPD referred the complaints to the Office of the Inspector General for the City of New Orleans for investigation. On January 31, 2025, the Inspector General advised the NOPD and the Monitor that its investigation was complete and that it found all cheating allegations *unfounded*.[12]

Accordingly;

**IT IS ORDERED** that, to the extent the NOPD has Captain and Major positions to fill through the recent promotions process, it do so *using the New Orleans Police*

---

[12] Attachment E hereto.

*Department Deputy Chiefs' rankings* (Attachments C and D hereto), after correcting the one error identified by the Monitoring Team and confirmed by NOPD.[13]

**IT IS FURTHER ORDERED** that NOPD develop and publish to its employees its plan for making these promotions, attaching a copy of this Order and Reasons, with attachments.

**IT IS FURTHER ORDERED** that, NOPD, DOJ, and the Monitoring Team work together to make recommendations to the Court regarding steps that may be taken in the future to improve the promotions process, including the possibility of using outside assessors to conduct the Part 2 evaluation to avoid even the appearance of potential bias.

**New Orleans, Louisiana, this 7th day of February, 2025.**

*Susie Morgan* (signature)
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[13] On November 11, 2024, the Director of the City of New Orleans Civil Service Commission, Amy Trepagnier, notified the NOPD that she was "extending the current Police Captain and Police Major eligible list for three years." Attachment B hereto. Consequently, the expiration date for these lists is July 16, 2027. The Court commends the Civil Service Commission for its action to ensure the current lists did not expire during the various reviews discussed above.