# ATTACHMENT

# A



January 20, 2025

The Honorable Judge Susie Morgan
United States District Court, Eastern District of Louisiana
500 Poydras Street
New Orleans, Louisiana

Your Honor:

As you know, on November 11th, the Superintendent of the New Orleans Police Department announced a "pause" in pending captains and majors promotions to respond to concerns expressed by Mayor LaToya Cantrell that one or more of the NOPD Deputy Chiefs responsible for the NOPD portion of the promotions evaluation (referred to as "Part 2") may have introduced bias into that process.

To address the mayor's concern, the Superintendent proposed engaging a group of outside assessors to independently score Part 2 for all captain and major candidates following the same rules, rubric,[1] and guidelines used by the Deputy Chiefs.[2] The Monitoring Team and DOJ informed the NOPD and the City that they did not object to this additional due diligence to address the mayor's concern. The Monitoring Team further informed NOPD and the City that it would undertake an independent review of the Deputy Chiefs' scoring of the candidates and compare them to the outside assessors' scoring.[3]

This letter summarizes the results of our review.

---

[1] A "rubric" is an official scoring guide that defines how a review, test, or other assessment will be evaluated. It sets expectations for candidates and guides the evaluation of assessors.

[2] The technical name for this process is a "test/retest reliability assessment." The point of such an assessment, as the name implies, is to test the reliability of the original evaluation, not to serve as a substitute for the original evaluation.

[3] As the Court knows, the Monitoring Team has authority to conduct – and is responsible for conducting – "compliance reviews or audits as necessary to determine whether the City and NOPD have implemented and continue to comply with the material requirements of this Agreement." R. Doc. 778 (Consent Decree) at 447. The Consent Decree expressly covers performance evaluations and promotions in Section XIV. Likewise, the recently-ordered Sustainment Plan re-confirms the ongoing role the Monitoring Team plays in conducting reviews and audits. *See* R. Doc. 822.



## I. RELEVANT BACKGROUND

### A. The Consent Decree and the NOPD Promotions Process

As approved by the Court on January 11, 2023, the 2nd Amended and Restated Consent Decree[4] requires that "officers who lead effectively and ethically are identified and receive appropriate consideration for promotion." Paragraph 302 of the Consent Decree requires NOPD to "work with Civil Service to develop and implement fair and consistent promotions practices that comport with best police practices and the requirements of this Agreement and result in the promotion of officers who are both ethical and effective."[5] NOPD further is required to "provide clear guidance on promotional criteria, and to prioritize effective, constitutional, and community-oriented policing as criteria for promotion."[6]

Fundamental to these Consent Decree obligations is the principle that officer promotions be conducted fairly, free from bias, and that officers be promoted on the basis of merit alone.

### B. The Approved Promotions Process

To comply with its Consent Decree obligations, the NOPD long ago worked with the Monitoring Team and DOJ to develop a promotions process that (a) met NOPD's internal needs and (b) met NOPD's obligations under the Consent Decree. The process approved by the Monitoring Team and DOJ – and still controlling today – includes two parts:

- **Part 1**, conducted by the New Orleans Civil Service, involves a written, multiple-choice exam and an oral, scenario-based assessment conducted by outside law enforcement professionals.
- **Part 2**, conducted by NOPD Deputy Chiefs, includes a review of each officer's Performance Evaluations, Discipline, and Job History.[7]

Each part determines one-half of a candidate's score.[8] Each of the three elements of the Deputy Chiefs' Part 2 evaluation is worth one-third of the total Part 2 score.

---

4 R. Doc. 778.

5 R. Doc. 778 at para. 302.

6 *Id*.

7 The original process approved by DOJ and the Monitoring Team also included an interview with a panel of Deputy Chiefs. In 2023, in an effort to reduce the perception of potential bias, and with the permission of the Court, the Monitoring Team, and DOJ, NOPD moved the interview component from Part 2 to Part 1 of the evaluation process.

8 While Part 1 and Part 2 of the promotions evaluation process each is worth one half of a candidate's score, because the Civil Service adjusts a candidate's score based on how the score compares to all other candidates (i.e., Civil Service grades candidates on a curve), a candidate's Part 1 score actually impacts a candidate's final ranking far more than his/her Part 2 score.

As discussed below, Part 2 of the evaluation process performed by NOPD Deputy Chiefs was crafted to ensure fair, consistent, and merit-based evaluations of promotions candidates using objective factors to the extent practicable. Two of the three elements of the Part 2 evaluation – Performance Evaluations and Discipline – are entirely objective. In contrast, the Job History element of Part 2 allows for some subjectivity consistent with the guidelines reflected in the scoring rubric.

The City first used the approved process for captains in 2021. The Monitoring Team reviewed the process to ensure it was implemented consistent with the City's commitments. We found it was. The New Orleans Independent Police Monitor also reviewed the process and likewise concluded that it was implemented fairly and properly. In a note to the community following the 2021 captains exam, the IPM shared the following observation:

> The OIPM concludes this was a fair and consistent process to select the captain candidates, conducted in compliance with both the CAO Policy Memorandum 143(R) and NOPD policy.[9]

While some officers in their communications with the Monitoring Team continued to express concern that any process that used NOPD Deputy Chiefs as evaluators is inherently biased, most agreed the new process was a vast improvement over the Department's prior approach.

### C. The Cheating Allegations

Subsequent to the mayor's expression of concern regarding potential bias, and prior to the completion of the outside evaluators' assessment of Part 2, NOPD received several anonymous complaints alleging that one or more officers cheated on *Part 1* of the promotions evaluation (the portion run by Civil Service) by revealing to candidates questions and/or answers to the scenario-based (Part 1) portion of the exam. NOPD referred the complaints to the New Orleans Inspector General for a thorough investigation.

## II. THE MONITORING TEAM'S REVIEW OF PART 2

At the same time the NOPD was engaging a group of outside assessors to conduct its additional due diligence on Part 2, the Monitoring Team initiated an independent review of the Part 2 evaluations. The Monitoring Team has reviewed the process, work papers, and conclusions of the Deputy Chiefs and the outside assessors.

### A. The Monitoring Team's Review of the Deputy Chiefs' Evaluations

Our review revealed that the Deputy Chiefs undertook their evaluations consistent with the process approved by the Court, the Monitor, and the DOJ, and consistent with the approved scoring rubric developed to promote consistent and fair evaluations.

---

9 https://nolaipm.gov/wp-content/uploads/2021/11/OIPM-Report-NOPD-Police-Captain-Promotions-2021.pdf.

As noted above, Part 2 of the promotions process includes three separate assessments of the candidates:

- Performance Evaluations,
- Discipline, and
- Job History.

The first two, Performance Evaluations and Discipline, are purely ***objective***. For example, the rubric dictates how many "exceptional" ratings on Performance Evaluations an officer needs to receive a HIGH Performance Evaluation score. Similarly, the rubric dictates the Discipline score based on the number of sustained disciplinary violations and the level of each violation. As a result, all evaluators should give the same scores for Performance Evaluations and Discipline, which is what happened here.

The Job History assessment is more ***subjective,*** and gives the evaluators a bit more leeway. As a result, the evaluators' scores are less likely to align completely as they do in the objective categories. For example, one NOPD Deputy Chief gave lower grades than his colleagues in the Job History category.[10] The difference, however, had a minimal impact on candidates' rankings.

In any event, differences of opinion among the Deputy Chiefs in the area of Job History are contemplated by the approved promotions process. The rubric and the weight given to this portion of the evaluations are designed to prevent a single overly negative (or overly positive) view from having a disproportionate impact on any officer's ranking.[11]

Our analysis of the Deputy Chiefs' work papers and conclusions confirmed that the Deputy Chiefs followed the approved rubric. Consistent with the objective nature of the first two categories, all five evaluators assigned the same scores to their evaluations of Performance Evaluations and Discipline. In the more subjective area of Job History, there were differences of opinion among the Deputy Chiefs, but these were minor and infrequent – and, as noted above, are contemplated by the approved process and are not an indicator of bias.

### B. The Monitoring Team's Review of the Outside Assessor Evaluations

It is important to keep in mind the reason NOPD sought the outside assessment. The exercise was undertaken strictly to test the validity of the mayor's concern that the in-house Deputy Chief evaluators might be biased in their Part 2 evaluations. *It was not performed as a substitute for the*

---

10 We do not mean to suggest that such lower grades were improper or that any Deputy Chief's evaluations were wrong or unfair. We simply mean that one Deputy Chief found certain Job History elements less relevant than his colleagues.

11 Importantly, a single Deputy Chief's Job History evaluation accounts for only a small portion of a candidate's total score. Part 2 is 50% of the final score. Job History is 33% of that 50%. And each of the five Deputy Chiefs' scores is only 20% of that 33%. In other words, each Deputy Chief's Job History score accounts for less than 7% of a candidate's overall ranking.



*Deputy Chiefs' work.*[12] It was understood that, if the outside assessment did not reveal bias by the Deputy Chiefs, the Deputy Chiefs rankings would control – ***not*** the outside assessors' rankings.

For the reasons discussed, ***the Monitoring Team believes the findings of the outside assessors reveal no credible evidence of bias in the NOPD Deputy Chiefs' Part 2 evaluations***.

If the Deputy Chiefs had been biased, we would have expected to see material differences between the evaluations by the Deputy Chiefs and by the outside evaluators not tied to a misapplication of the rubric or a subjective evaluation of Job History. Instead, what we saw was agreement among both sets of assessors with a few differences driven by readily observable mistakes in the application of the rubric or by allowable subjective differences of opinion regarding Job History. The issues that collectively drove any differences in scoring between the Deputy Chiefs and the outside assessors were the following:

**Objective Factors**

- In two instances on the captains evaluation and one instance on the majors evaluation, the outside assessors treated Performance Evaluations that reflected an equal number of "exceeds" and "exceptionals" as warranting a HIGH score, whereas the Deputy Chiefs rated those candidates MEDIUM in that category. We note that all evaluators were told in training that the correct approach was the one employed by the Deputy Chiefs, *i.e.*, to score such cases MEDIUM, not HIGH.

- In three instances (all relating to aspiring captains), the outside assessors gave higher scores than the Deputy Chiefs to candidates who submitted the wrong performance evaluation form.[13] Specifically, the Deputy Chiefs rated such candidates LOW in the Performance Evaluation category, while the majority of the outside assessors rated such candidates MEDIUM.[14]

- In a small number of cases, the outside assessors simply made a mistake in their review of a candidate's Discipline file by failing properly to account for a given disciplinary matter.

---

[12] The Monitoring Team made this point clear to the City during a series of discussions prior to NOPD engaging the outside assessors. Likewise, the Superintendent made this point clear to the promotions candidates in her November 11th email to NOPD leaders and supervisors: "…If the outside analysis demonstrates that the process was conducted in accordance with the approved rubric, we will promote from the current list (subject to the results of the cheating investigation, described below)."

[13] NOPD's promotions policy requires officers to submit NOPD evaluations, not Civil Service evaluations.

[14] While the NOPD Deputy Chiefs and the outside assessors were given the same pre-assessment training, it is possible the NOPD evaluators were more familiar with the two different evaluations and more aware that candidates had been instructed on the correct form to use.



**Subjective Factor**

- The outside assessors gave lower scores in their evaluation of Job Histories than several of the Deputy Chiefs. This difference impacted the scores of 6 of the 11 major candidates and 13 of the 22 captain candidates. This appears to reflect a subjective difference of opinion regarding the relevance of certain experiences and activities and/or a subjective difference of opinion regarding *what is important to be a police leader in New Orleans*. Such subjective differences of opinion are contemplated by the process approved by the DOJ, the Monitoring Team, and the Court, and are not evidence of bias.

The differences we found are easy to identify and understand, and do not evidence bias on the part of the Deputy Chiefs.

## III. CONCLUSION

The Monitoring Team's review found that the Deputy Chiefs followed the approved process, adhered to the approved scoring rubric, and conformed to the Consent Decree. We also found that the Deputy Chiefs were internally consistent in their evaluations. The Monitoring Team found no evidence the Deputy Chiefs were biased in their Part 2 assessment of the candidates for captain and major.[15]

* * *

Thank you Your Honor for considering our observations.

Respectfully,

Jonathan S. Aronie
Consent Decree Monitor
Sheppard Mullin LLP

CC:

City Attorney Donesia Turner
DOJ Counsel Jonas Geissler
Deputy Monitor David Douglass

---

15 Additionally, as noted above, our identification of several errors made by the outside assessors, further supports using the original Deputy Chief evaluations for the forthcoming promotions.

# ATTACHMENT

# B



# CITY OF NEW ORLEANS

DEPARTMENT OF CITY CIVIL SERVICE
SUITE 900 – 1340 POYDRAS ST.
NEW ORLEANS LA 70112
(504) 658-3500 FAX NO. (504) 658-3598

CITY CIVIL SERVICE COMMISSION

BRITTNEY RICHARDSON, CHAIRPERSON
JOHN KORN, VICE-CHAIRPERSON
ANDREW MONTEVERDE
MARK SURPRENANT
RUTH WHITE DAVIS

AMY TREPAGNIER
DIRECTOR OF PERSONNEL

November 11, 2024

Superintendent Anne Kirkpatrick
1615 Poydras Street
New Orleans, LA 70112

Dear Superintendent Kirkpatrick,

Pursuant to the authority granted to me under Civil Service Commission Rule V, Section 5.3, I am extending the current Police Captain and Police Major eligible lists for three years. The new expiration date for these eligible lists is July 16, 2027. Please let me know if you have any questions.

Thank you,

Amy Trepagnier
Director, New Orleans Civil Service

cc: Brittney Richardson, Chairperson, New Orleans Civil Service Commission
John Korn, Vice-Chairperson, New Orleans Civil Service Commission
Mark Surprenant, Commissioner, New Orleans Civil Service Commission
Ruth White-Davis, Commissioner, New Orleans Civil Service Commission
Andrew Monteverde, Commissioner, New Orleans Civil Service Commission
Eric Hessler, Police Association of New Orleans
Paul Mitchell III, Black Organization of Police

# ATTACHMENT

# C

Captain's List:

| Last, First | Civil Service Exam Rank | Civil Service Exam Rank Score | Deputy Chiefs Promotional Committee Score | Overall Score | Overall Rank |
|---|---|---|---|---|---|
| Palumbo, Samuel | 1 | 100.00 | 83.33 | 183.33 | 1 |
| Gubert, Rebecca | 4 | 86.36 | 96.67 | 183.03 | 2 |
| Micheu IV, Anthony | 5 | 81.82 | 100.00 | 181.82 | 3 |
| Baldassaro, Octavio | 2 | 95.45 | 83.33 | 178.79 | 4 |
| Welch, Richard | 6 | 77.27 | 96.67 | 173.94 | 5 |
| Giroir, Jeffrey | 7 | 72.73 | 100.00 | 172.73 | 6 |
| Ward, Travis | 10 | 59.09 | 100.00 | 159.09 | 7 |
| Richardson, Sabrina | 3 | 90.91 | 66.67 | 157.58 | 8 |
| Prepetit, Kenny | 11 | 54.55 | 100.00 | 154.55 | 9 |
| Merricks, Merrell | 8 | 68.18 | 80.00 | 148.18 | 10 |
| Powell, Nicole | 13 | 45.45 | 96.67 | 142.12 | 11 |
| Luster, Ernest | 14 | 40.91 | 96.67 | 137.58 | 12 |
| Herrick, Dean | 16 | 31.82 | 100.00 | 131.82 | 13 |
| Jones, Ray | 12 | 50.00 | 80.00 | 130.00 | 14 |
| Cutno, Hudson | 9 | 63.64 | 63.33 | 126.97 | 15 |
| Helou, John | 18 | 22.73 | 96.67 | 119.39 | 16 |
| Brooks, Travis | 19 | 18.18 | 96.67 | 114.85 | 17 |
| Roach, Jamie | 20 | 13.64 | 96.67 | 110.30 | 18 |
| Anderson, Daniel | 15 | 36.36 | 66.67 | 103.03 | 19 |
| Matthews, Avery | 22 | 4.55 | 96.67 | 101.21 | 20 |
| Carter, Andre | 17 | 27.27 | 63.33 | 90.61 | 21 |
| Theard, Avery | 21 | 9.09 | 80.00 | 89.09 | 22 |

# ATTACHMENT

# D

Majors List:

| Last, First | Civil Service Exam Rank | Civil Service Exam Rank Score | Deputy Chiefs Promotional Committee Score | Overall Score | Overall Rank | Notes |
|---|---|---|---|---|---|---|
| Banks, Precious | 2 | 90.91 | 100.00 | 190.91 | 1 | |
| Roberts, LeJon | 3 | 81.82 | 100.00 | 181.82 | 2 | |
| Allen, Kendrick | 1 | 100.00 | 66.67 | 166.67 | 3 | |
| DeLarge II, Wayne | 3 | 81.82 | 83.33 | 165.15 | 4 | Eligible for promotion on 10/9/24 |
| Hill-Dupree, Jennifer | 5 | 63.64 | 100.00 | 163.64 | 5 | Eligible for promotion on 1/3/25 |
| Hart, Christian | 6 | 54.55 | 96.67 | 151.21 | 6 | |
| Nolan, Gwendolyn | 7 | 45.45 | 100.00 | 145.45 | 7 | |
| Glasser, Michael | 9 | 27.27 | 100.00 | 127.27 | 8 | |
| Bax Jr., Preston | 11 | 9.09 | 100.00 | 109.09 | 9 | |
| Burns, Kevin | 8 | 36.36 | 66.67 | 103.03 | 10 | Eligible for promotion on 1/3/25 |
| Stamp, Kevin | 10 | 18.18 | 83.33 | 101.52 | 11 | |

# ATTACHMENT

# E



Edward Michel, CIG
Inspector General

February 6, 2025

Jonathan Aronie, Esq., Lead Monitor
Office of the Consent Decree Monitor
Sheppard Mullin LLP
Washington, DC

Re: Conclusion of PIB-Referred Investigation into Allegations of Cheating on Promotions Exam

Dear Mr. Aronie:

As you know, the Office of Inspector General (OIG) was asked by the New Orleans Police Department (NOPD) Superintendent Anne Kirkpatrick to conduct an investigation into multiple anonymous complaints alleging cheating by members of the NOPD on the recent Captains and Majors promotions exams. The OIG completed its investigation on January 31, 2025, and has determined the allegations to be unfounded and promptly notified the accused members. The notification to the accused NOPD Officers constitutes the completion of our investigation of the referred matter pursuant to Louisiana R.S. 40:2531 (Rights of Law Enforcement Officers Under Investigation). Our office will issue a formal report to NOPD Superintendent Kirkpatrick within the statutory deadline for any action(s) she deems necessary.

If you have any questions, please contact me directly.

Sincerely,

Edward Michel

Edward Michel

Inspector General

CC: Superintendent of Police Anne Kirkpatrick

New Orleans Civil Service Personnel Director Amy Trepagnier